Rachel S. Doughty, Cal. Bar No. 255904
Jessica L. Blome, Cal. Bar No. 314898
GREENFIRE LAW
2550 Ninth St., Suite 204B
Berkeley, CA 96710
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
rdoughty@greenfirelaw.com
jblome@greenfirelaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASA NIDO PARTNERHSIP, a California Partnership,<br><br>Plaintiff,<br><br>v.<br><br>CATHERINE O'HANKS and JAE KWON aka JAY KWON aka JAY KWON SHIK aka JAY SHIK KWON,<br><br>Defendant. | Case No. 4:20-cv-7923<br><br>**COMPLAINT FOR COST RECOVERY AND INJUNCTIVE RELIEF**<br><br>42. U.S.C. § 9607(a); Cal. Health & Saf. Code, §§ 25300, 25363; Cal. Water Code, §§ 13050(M), 13304, 13350; Cal. Civil Code, § 3491; and Equitable Indemnity |

Plaintiff CASA NIDO PARTNERSHIP alleges that Defendants CATHERINE O'HANKS and JAE KWON (hereinafter collectively referred to as "Defendants") sequentially owned and operated a dry-cleaning facility located on San Pablo Avenue in Richmond, California over a forty-seven-year period from 1960 to 2007. In the operation of the dry-cleaning facility, Defendants released or caused the release of Tetrachloroethylene onto the floor, through the drains, and into the groundwater below the facility. Tetrachloroethylene, or PCE, is a manufactured chemical and hazardous substance and potential carcinogen. Plaintiff, an innocent landowner who only learned of the contamination when the facility closed in 2016, has spent hundreds of thousands of dollars remediating the site and files this cause of action for indemnification and contribution under the federal Comprehensive Environmental Response, Compensation, and Liability Act, California Hazardous Substance Account Act, California Water Code, California Civil Code, and California law. Plaintiff alleges the following:

**JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT**

1. This action primarily arises under the federal Comprehensive Environmental Response, Compensation, and Liability Act, or CERCLA, which is located at 42 U.S.C. §§ 9601 et seq. This Court therefore has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 2202, 42 U.S.C. §§ 9607, 9613, and Federal Rules of the Civil Procedure Rule 57. This Court has supplemental jurisdiction of the state claims asserted in this action pursuant to 28 U.S.C. § 1367. The federal and state claims alleged herein are based on the same set of operative facts. Judicial economy, convenience, and fairness to the parties will result if this Court assumes and exercises jurisdiction over the state claims. This Court has jurisdiction over the subject matter of these claims under the provisions of 42 U.S.C. § 9607; 42 U.S.C. § 6972(a) and 28 U.S.C. § 1367(a).

2. Venue is proper under the provisions of 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 9613, 6972(a) because the claims stated herein arose in this district. Intra-district assignment is proper in this Court under the local rules as the property that is the subject matter of this action and a substantial portion of the events or omissions giving rise to these claims occurred in this judicial district in Contra Costa County.

## THE PARTIES

3. Plaintiff CASA NIDO PARTNERSHIP is the current owner of real property (the "Property") located at 12210 San Pablo Avenue in the City of Richmond in Contra Costa County in the State of California. Plaintiff, the longtime owner of the property, is a consortium of multi-generational family members who inherited the property.

4. Defendant Catherine O'Hanks is a natural person residing in the State of California. From 1960 until 1992 Defendant O'Hanks owned and operated a dry-cleaning facility known at various times as One Hour Martinizing by Omo, Omo's Dry Cleaners, and Omo's Fabricare Cleaners on the Property, which released hazardous substances into the environment.

5. Defendant Jae Kwon is a natural person residing in the State of California. From 1992 to 2007 Defendant Kwon owned and operated a dry-cleaning facility on the Property, which released hazardous substances into the environment.

## GENERAL ALLEGATIONS

6. Plaintiff purchased the Property in 1976 and has owned the Property at all times relevant to this Complaint.

7. Defendant Catherine O'Hanks and her late husband owned and operated a dry-cleaning business at the Property from on or about 1960 until on or on about 1992.

8. Defendant Jae Kwon was a tenant on the Property and owned and operated a dry-cleaning business on the Property from 1992 to 2007.

9. Plaintiff is informed and believes that while Defendants O'Hanks and Kwon operated their dry-cleaning businesses at the Property, they utilized a hazardous substance within the meaning of 42 U.S.C. § 9601(14) called Tetrachloroethylene (more commonly known as "PCE") as part of the dry-cleaning process.

10. Plaintiff is informed and believes that between 1960 to at least 1997, significant amounts of PCE associated with these dry-cleaning operations were discharged or otherwise released into the soil and groundwater beneath the property.

11. Plaintiff is informed and believes that during the entire 32-year period that Defendant O'Hanks operated the dry-cleaning business on the Property, Defendant O'Hanks'

business relied on equipment that utilized the hazardous substance PCE as part of the dry-cleaning process.

12. Plaintiff is informed and believes that there were sudden and accidental spills and equipment overflows of PCE (due to equipment malfunction, equipment breakdown, or improper equipment usage) during the 32-year period that Defendant O'Hanks operated the dry-cleaning business on the Property (including during the 16-year period from 1976 to 1992 that Plaintiff Casa Nido owned the Property), and these sudden and accidental spills and overflows resulted in PCE being released onto the floors and into the drains in the building on the Property. From the floor and drains, PCE was released into the subsurface soils and groundwater beneath the Property.

13. On information and belief, during the 32-year period that Defendant O'Hanks operated the dry-cleaning business on the Property (including during the 16-year period from 1976 to 1992 that Plaintiff Casa Nido owned the Property), Defendant O'Hanks improperly disposed of fluids containing PCE in unpaved areas outside the building on the Property and that this improper disposal resulted in the release of PCE into the subsurface soils and groundwater beneath the Property.

14. Plaintiff is informed and believes that from 1992 to 2007 while Defendant Jae Kwon operated a dry-cleaning business on the Property, that this business relied on equipment that utilized the hazardous substance PCE as part of the dry-cleaning process.

15. Plaintiff is informed and believes that there were sudden and accidental spills and equipment overflows of PCE (due to equipment malfunction, equipment breakdown, or improper usage) during the initial 15-year period that Defendant Kwon operated the dry-cleaning business on the Property, and these sudden and accidental spills and overflows resulted in PCE being released onto the floor and into the drains in the building on the Property. From the floor and these drains, PCE was released into the subsurface soils and groundwater beneath the Property.

16. On information and belief, during the 15-year period that Defendant Kwon operated the dry-cleaning business on the Property, Defendant Kwon improperly disposed of fluids containing PCE in unpaved area outside the building on the Property and that this improper disposal resulted in the release of PCE into the subsurface soils and groundwater beneath the Property.

17. Another party operated the dry-cleaning business on the Property from 2007 to 2015, but, upon information and belief, this other party did not use PCE and therefore Plaintiff Casa Nido does not believe this other party contributed to releases of PCE into the Property's subsurface. There have been no further dry-cleaning operations on the Property since 2015.

18. Plaintiff Casa Nido in no way caused or contributed to the contamination of the Property.

19. In August 2016, Plaintiff Casa Nido first learned of the PCE subsurface contamination in a Site Assessment Report prepared by Pangea Environmental Services Inc. (Pangea). Plaintiff did not know, nor had any reason to know, before 2016, of the existence of the contamination and injury to Plaintiff.

20. According to testing from the August 2016 Site Assessment Report, there were elevated levels of PCE in the soil and groundwater beneath the building and just outside the building where the previous dry-cleaning operations on the Property had taken place, and according to Pangea Environmental these elevated PCE levels were attributable to releases on the Property rather than releases from off-site sources.

21. After receiving the results in the August 2016 Site Assessment Report, Plaintiff Casa Nido and its consultant Pangea contacted the California Department of Toxic Substances Control (DTSC) to discuss what further testing and remedial work would be required to address environmental conditions on the Property. To comply with and satisfy the requirements of the National Contingency Plan, and to avoid issuance of a formal cleanup and abatement order by DTSC, Plaintiff Casa Nido and Pangea developed plans to undertake further soil and groundwater testing related to PCE, to conduct soil vapor testing related to the PCE, to arrange for removal and proper disposal of soils contaminated with PCE, to treat the PCE in the groundwater, and to install and operate of soil vapor extraction system.

22. Plaintiff Casa Nido has already spent nearly one million dollars to comply with the National Contingency Plan's public notification, environmental investigation, and remediation requirements associated with the PCE releases caused by Defendants O'Hanks and Kwon. Based on information provided by Pangea, the total costs associated with such investigations and remediation

of this subsurface contamination and soil vapors will likely be as much as $1,000,000 (one million dollars) or more.

23. As a direct and proximate result of Defendant's conduct and failure to act, Plaintiff has been unable to lease the Property for several years due to the environmental conditions of the Property, including demolition of the building on the Property that housed the dry cleaning operation in 2017 at considerable expense to Casa Nido to enable access to remove PCE-contaminated soils that were beneath the building.

24. In early 2019, Plaintiff Casa Nido and Defendant O'Hanks entered into a Tolling and Standstill Agreement related to claims concerning PCE releases associated with Defendant O'Hanks operation of a dry-cleaning business on the Property. Among other things, the 2019 Tolling and Standstill Agreement between Plaintiff Casa Nido and Defendant O'Hanks provided: "The time period between the Effective Date of this Agreement and the Termination Date shall not be counted in determining the applicability of any statute of limitation or other time-based defenses in any action/litigation brought by the Parties relating to liabilities for PCE releases and PCE remediation on , below or emanating from the Richmond Property."

25. In August 2020, Plaintiff Casa Nido and Defendant O'Hanks entered into a second Tolling and Standstill Agreement related to claims concerning PCE releases associated with Defendant O'Hanks operation of a dry-cleaning business on the Property. The same operative language was included in the Second Tolling and Standstill Agreement.

**FIRST CLAIM FOR RELIEF**
(Cost Recovery: CERCLA, 42 U.S.C. § 9607(a))

26. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

27. The Property is a "facility" within the meaning of CERCLA, 42 U.S.C. § 9601(9).

28. The contaminants located in the soil and ground water at, on, or under the Property, including but not limited to PCE, are "hazardous substances" within the meaning of CERCLA, 42 U.S.C. § 9601(14).

29. Each Defendant is a liable or potentially liable person within the meaning of CERCLA, 42 U.S.C. § 9607(a) as a former owner and operator of the facility.

30. Under CERCLA, 42 U.S.C. § 9607, Plaintiff seeks recovery of necessary costs of responses and payment from Defendants, and each of them, for Plaintiff's outlays of all past, present, and future necessary response costs incurred in response to the release of hazardous substances at or affecting the Property or surrounding properties. The release and disposal of the hazardous substances in continuing in nature.

31. Defendants are the past operators of the Property. Defendants are liable for the contamination pursuant to CERCLA, 42 U.S.C. § 9607(a).

32. Plaintiff has incurred, and will continue to incur, necessary response costs, including costs of investigation, removal and/or remedial actions in the investigation, clean up and abatement of the releases and threatened releases of hazardous substances from Defendants' operations and activities at the Property. All of the necessary response costs incurred and to be incurred by Plaintiff are a result of the contamination of the Property, and surrounding properties, caused by Defendants.

33. All costs incurred, and to be incurred, by Plaintiff are necessary costs of response consistent with the provisions of CERCLA and the National Contingency Plan.

34. Plaintiff continues to incur response costs and other costs in connection with the investigation and remediation of the Property. There has been no completion of a removal action.

35. Defendants are jointly and severally liable to Plaintiff pursuant to CERCLA, 42 U.S.C. § 9607 for all of the past, present and future necessary costs of response including without limitations, investigation and remediation expenses, attorneys' fees, oversight costs and interest, in an amount to be determined at trial.

36. Pursuant to CERCLA, 42 U.S.C. § 9613(g)(2), Plaintiff is entitled to a declaratory judgment that Defendants, are jointly and severally liable in any subsequent action by Plaintiff to recover further responses costs or damages incurred as a result of hazardous substances at and around the Property.

**SECOND CLAIM FOR RELIEF**
(Indemnity, HSAA: Cal. Health & Saf. Code, §§ 25300, 25363)

37. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

- 6 -
COMPLAINT FOR COST RECOVERY AND INJUNCTIVE RELIEF CASE NO.4:20-cv-7923

38. The Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health & Safety Code Sections 25300, et seq. (HSAA) was enacted to encourage expedient clean-up of contaminated properties. To provide such encouragement, the legislature included the statutory right of indemnification for those parties who incur response costs and those parties who are responsible for the contamination. The responsible parties are similar to those under CERCLA and include owners and operators of the facilities at the time the alleged hazardous substance is allegedly discharged into the environment for such facility as well as the arrangers of the disposal and treatment of hazardous substances.

39. The Property is a "site" within the meaning of HSAA, section 25323.9.

40. The contaminants located in the soil and ground water at, on, or under the Property, including but not limited to PCE, are "hazardous substances" within the meaning of HSAA, section 25316.

41. Each Defendant is a "responsible party" within the meaning of HSAA, section 25323.5 as a former owner and operator of the facility.

42. Under HSAA, section 25363, subd. (d), a person who has incurred response or corrective action costs in accordance with the HSAA, or CERCLA, may seek contribution or indemnity from any person who is liable.

43. Plaintiff has and will continue to incur response or corrective action costs arising from the hazardous substance contamination of the soil and groundwater in and around the Property.

44. Defendants are responsible parties under the HSAA due to their status as either owners of the property or arrangers of the disposal and discharge of hazardous substances on account of said Defendants' actual and direct control of the method of disposal of PCE on the Property, and such liability has not previously been discharged pursuant to any state apportionment proceeding.

45. Plaintiff is entitled to indemnification and contribution for Defendants, in whole or in part, based upon HSAA, section 25363, subd. (d).

### THIRD CLAIM FOR RELIEF
(Innocent Landowner, Health & Saf. Code §§ 25395.80, 25395.84)

46. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

47. Plaintiff is eligible for immunity and contribution as an "innocent landowner" within the meaning of HSAA, § 25395.75 because it can establish by a preponderance of the evidence the following:

   A. Plaintiff made all appropriate inquiries into the previous ownership and uses of the site prior to acquiring it pursuant to HSAA, § 25395.80.

   B. Plaintiff exercised appropriate care with respect to the release of threatened release of hazardous material on the Property pursuant to HSAA, § 25395.80.

   C. Plaintiff provided full cooperation, assistance and access to all persons authorized to conduct response actions or natural resource restoration at the Property pursuant to HSAA, § 25395.80.

   D. Plaintiff complied with land use controls established or relied on, in connection with an approved response action at the Property and did not impede a remedy pursuant to HSAA, § 25395.80.

   E. Plaintiff complied with all requests for information or administrative subpoenas concerning the release or threatened release of hazardous substances by any agency with jurisdiction under an applicable statute pursuant to HSAA, § 25395.80.

   F. Plaintiff provided all notices and satisfied the reporting requirements of federal and state law with respect to the discovery or release of hazardous substances at the Property pursuant to HSAA, § 25395.80.

48. Plaintiff did not cause or contribute to the release or threatened release of hazardous substances at the Property.

49. Plaintiff is entitled to declaratory relief that it is entitled to Innocent Landowner Status.

50. Plaintiff is entitled to consequential damages, attorneys' fees, and expert fees under HSAA, § 25395.84 as an innocent landowner.

### FOURTH CLAIM FOR RELIEF
(Water Pollution: Cal. Water Code, §§ 13304, 13350)

51. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

52. Under the California Water Code, a person who has discharged or discharges waste, including hazardous substances like PCE, into the waters of the state is strictly liable for injunctive relief and civil penalties. (See Cal. Water Code, § 13304.)

53. In addition, a person who has caused or permitted or continues to cause or permit any waste to be discharged or deposited "where it is, or probably will be, discharged" into the waters of the state, thereby creating a condition of public nuisance must take necessary remedial action to abate the nuisance. (Cal. Water Code, § 13304, subd. (a).)

54. Defendants have caused and continue to cause the discharge and release of hazardous substances, such as PCE, from the Property into the waters of the state, including the groundwater connected to the Property or flowing under and through the subsurface of the Property in violation of California Water Code, section 13304.

55. Defendants' discharge and release of hazardous substances has caused pollution of waters of the state in a manner that has created a condition of public nuisance in violation of California Water Code, section 13304.

56. Under California Water Code, section 13350, subd. (i), Plaintiff has incurred liability related to contamination from pollutants, and this court is authorized to order contribution for that liability from Defendants, in accordance with the principles of comparative fault.

### FOURTH CLAIM FOR RELIEF
(Continuing Public Nuisance: Cal. Civil Code §§ 1021.5, 3479, 3480, 3491, 3493)

57. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

58. Defendants' discharge and release of hazardous substances, including but not limited to PCE, constitutes a continuing public nuisance within the meaning of California Civil Code, sections 3479 and 3480.

59. Plaintiff is informed and believes that the hazardous substance pollution from the Property is continuing and abatable and injurious to public health.

60. As a direct and proximate result of Defendants' actions and activities, Plaintiff has been, and will be, specially damaged within the meaning of California Civil Code, section 3493 and 1021.5 because it has incurred and will continue to incur response and corrective action costs to respond to the hazardous substance contamination in and around the Property in an amount to be established at trial.

61. Plaintiff has suffered, and will continue to suffer, harm as a result of the public nuisance, as alleged herein, because Plaintiff's property had been damaged, Plaintiff has been required to respond to the contamination and the contamination has interfered with Plaintiff's right to quiet enjoyment of the Property.

62. California Civil Code, section 3491 further gives this court authority to order Defendants to abate the continuing public nuisance that is occurring as a result of the release of hazardous substances from the Property and reimburse Plaintiff for costs incurred to abate Defendants' nuisance.

**FIFTH CLAIM FOR RELIEF**
(Per Se Nuisance: Cal. Civ. Code, § 3491)

63. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

64. Defendants' discharge and release of hazardous substances, including but not limited to PCE, constitutes a per se nuisance as operations at the Property has resulted in contamination of soil and groundwater on and about the Property, and surrounding properties, in violation of multiple laws.

65. Defendants' release of PCE to land also caused or resulted in the violation of various laws, including the California Fish & Game Code Sections 5650, et seq. (prohibition of placement of deleterious substances where they may pass to Waters of the State (includes groundwater).)

66. Plaintiff has suffered, and will continue to suffer, harm as a result of the public nuisance, as alleged herein, because Plaintiff's property had been damaged, Plaintiff has been

required to respond to the contamination and the contamination has interfered with Plaintiff's right to quiet enjoyment of the Property.

67. California Civil Code, section 3491 further gives this court authority to order Defendants to abate the continuing public nuisance that is occurring as a result of the release of hazardous substances from the Property and reimburse Plaintiff for costs incurred to abate Defendants' nuisance.

68. As a further direct and proximate cause of the public nuisance *per se* created by Defendants, and each of them, Plaintiff has suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial. Plaintiff seeks abatement of the public nuisance, and all other legally available costs and damages.

## SIXTH CLAIM FOR RELIEF
(Negligence)

69. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

70. A claim for negligence under California law requires that a plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." (*Wells Fargo Bank, N.A. v. Renz*, 795 F.Supp.2d 898, 924-25 (N.D. Cal. 2011)

71. Plaintiff can establish all four elements in this case.

   a. Defendants owed Plaintiff a duty of care as lessees of the Property. "A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties." (*The Ratcliff Architects v. Vanir Constr. Mgmt., Inc*. (2001) 88 Cal.App.4th 595, 604-05.)

   b. Defendants breached the duty of care they owed Plaintiff by contaminating the Property with PCE that leaked into the groundwater and subsurface of the Property. Defendants negligently used its dry cleaning equipment to safely store and dispose of PCEs.

   c. Defendants' breach of their duty of care caused hazardous substances to contaminate the Property.

      d. As a direct and proximate result of Defendants breach of their duty of care, Plaintiff has suffered, and will continue to suffer harm because Plaintiff's property had been damaged, Plaintiff has been required to respond to the contamination and the contamination has interfered with Plaintiff's right to quiet enjoyment of the Property. Moreover, Plaintiff would not have taken title had they been aware of Defendants negligence.

72. As a proximate result of Defendants' negligence, Plaintiff has suffered damages, including, but not limited to, damage and harm to Plaintiff's Property, response costs incurred and to be incurred in the future to properly respond to the alleged hazardous substance contamination in and around the Property, and related properties. Such costs also include attorneys' fees and consultants' fees incurred as a direct and proximate result of said negligence.

### SEVENTH CLAIM FOR RELIEF
(Negligence Per Se)

73. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs as though fully set forth herein.

74. Defendants discharge and release of hazardous substances, including but not limited to PCE, constitutes negligence per se.

75. To state a cause of action pursuant to the negligence per se doctrine, the plaintiff must show that (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of injury the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons it was intended to protect." (*Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069, 1083 (E.D. Cal. 2005)

76. Defendant's conduct has violated 42 U.S.C. §9607(a); Cal. Health & Saf. Code, §§ 25300, 25363; Cal. Water Code, §§ 13304, 13350; and Cal. Civil Code §§ 3479, 3480.

77. Defendant's violation of these laws caused the environmental damage to the Property.

78. The environmental damage suffered by the Property was the kind of result that these laws were intended to prevent.

79. Plaintiff, as owner of the Property, was a member of the class of persons that these laws were enacted protect.

80. Plaintiff has sustained injury as a result of Defendants' negligent conduct, including investigative costs, attorneys' fees, and other costs, as described herein. As a further direct and proximate cause of the negligence per se by Defendants, and each of them, Plaintiff has suffered damages as previously described herein, including other consequential, incidental, and general damages to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays to this Court for the following relief:

A. For recovery and contribution from Defendants of all response costs incurred, and to be incurred by Plaintiff, in response to the release of hazardous substances in and around the Property in an amount to be determined at trial;

B. For damages against Defendants, jointly and severally, in an amount equal to all response costs and all other costs incurred in investigating, removing, cleaning up and remediating the alleges hazardous substance contamination in an amount according to proof at trial;

C. For compensatory damages;

D. For incidental and consequential damages;

E. For a permanent injunction requiring Defendants to investigate and remediate contamination on and around the Property;

F. For prejudgment interest at the legal rate;

G. For attorneys' fees;

H. For consultants' fees and costs;

I. For a declaration that Defendants are jointly and severally liable for abating the nuisance on the Property and that Defendants are responsible and obligated to defend and indemnify Plaintiff from all third party claims and liabilities (including but not limited to "agency oversight costs" charged by the Regional Water Board or the Department of Toxic Substances Control) related to PCE contamination or soil vapors that may have migrated onto adjacent or nearby properties;

J.   For recoverable costs; and

K.   For such other and further relief as this Court deems just and proper.

DATED: November 6, 2020                    Respectfully submitted,

*[signature]*

Attorneys for Plaintiffs