United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASA NIDO PARTNERSHIP,<br><br>Plaintiff,<br><br>v.<br><br>JAE KWON, et al.,<br><br>Defendants. | Case No. 20-cv-07923-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED AND SUPPLEMENTAL COMPLAINT**<br><br>Docket No. 130 |

## I.    INTRODUCTION

This is an environmental cleanup case brought by Plaintiff Casa Nido Partnership ("Casa Nido") against several defendants, including Defendants Catherine O'Hanks ("O'Hanks") and Sentry Insurance Company ("Sentry"). Casa Nido is the owner of the building in which O'Hanks operated a dry-cleaning business from 1960 to 1992. *See* Docket No. 88 ("SAC"). Sentry issued an insurance policy to O'Hanks with Casa Nido listed as an "Additional Insured." *Id.* Casa Nido alleges O'Hanks, while operating the facility, released Tetrachloroethylene ("PCE") onto the floor and into the groundwater below the facility, for which Casa Nido spent hundreds of thousands of dollars remediating. *Id.* Casa Nido alleges it is entitled to indemnification and contribution from O'Hanks under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). *Id.*

O'Hanks counter-claimed against Casa Nido. *See* Docket No. 51 ("CC"). In response, Casa Nido sent a Tender of Defense and Indemnity to Sentry, claiming Sentry has a duty to defend Casa Nido against O'Hanks's counter-claim. SAC ¶¶ 34–40. In a letter sent to Casa Nido on March 25, 2021, Sentry informed Casa Nido that it determined it has no duty to defend or

1  indemnify.  *Id.*; *see also* Docket No. 64, Ex. E ("Denial Letter").  Casa Nido claims that Sentry's

2  denial of coverage constitutes breach of contract and a breach of the covenant of good faith and

3  fair dealing.  SAC ¶¶ 97–100, 103–14.  Sentry filed a motion to dismiss Casa Nido's breach of

4  contract claim, which the Court denied.  *See* Docket No. 104 ("MTD Order").

5  Now pending is Casa Nido's motion for leave to file a third amended and supplemental

6  complaint.  *See* Docket No. 130 ("TAC Mot."); Docket No. 130-1 Ex. A ("Proposed TAC").  Casa

7  Nido seeks to add allegations that Sentry breached the covenant of good faith and fair dealing.

8  Sentry argues the proposed amendments are futile because the allegations are legally and factually

9  incorrect.  *See* Docket No. 131 ("Opp.").  Sentry further argues the proposed supplemental

10  allegations are prejudicial because they involve activity protected by California's anti-SLAPP

11  statute.  *See id.*  The Court does not analyze Sentry's anti-SLAPP argument as each of Casa

12  Nido's disputed amendments and supplements are denied as futile.[1]

### II.  **RELEVANT BACKGROUND**

14  A.  Sentry's Motion to Dismiss

15  Previously, Sentry moved to dismiss Casa Nido's first amended complaint ("FAC"),

16  arguing its policy did not apply to the pollution at issue.  *See* Docket No. 71 ("FAC Reply").  The

17  basic Sentry policy excludes coverage of property damage caused by pollution.  *See* Docket No.

18  74-1 ("Sentry Policy") § (B)(1)(f).  However, Casa Nido has additional coverage through a Dry

19  Cleaners Endorsement ("DCE").  *See id.* § (II)(M).  The DCE provides an exception to the

20  pollution exclusion:

21  > 1. The pollution liability exclusion (B.1.f.) does not apply to "bodily
22  > injury" or "property damage" covered by the following paragraph.

23  > 2. This insurance applies to "bodily injury" or "property damage"
23  > arising from the actual, alleged or threatened discharge, dispersal,
24  > release or escape of pollutants.

---

[1] Though it does not address the merits, the Court notes its concern with the use of an anti-SLAPP claim in this context.  The Ninth Circuit has decided numerous conflicts between California's anti-SLAPP statute and the Federal Rules of Civil Procedure.  *See, e.g., CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140–41 (9th Cir. 2022).  In each, the Ninth Circuit has opted to apply the anti-SLAPP statute.  *See id.*  However, Sentry seeks to invoke the anti-SLAPP statute in response to litigation activity within this federal suit.  This raises serious questions about whether such potential interference with federal procedure may properly be countenanced.

United States District Court
Northern District of California

1   *Id.* §§ (II)(M)(1) –(2).

2          Even so, the Sentry policy only covers pollution-based property damage "[t]hat occurs

3   during the policy period," *id.* § (A)(1), and the DCE explains that "[f]or purposes of pollution

4   liability…" property damage "occurs" when it "first manifests itself." *Id.* §§ (II)(M)(1)-(2).  In

5   denying coverage, Sentry asserted that the California Supreme Court, in *Montrose Chem. Corp. v.*

6   *Admiral Ins. Co.*, 10 Cal.4th 645, 674 (1995), defined "manifest" as "that point in time when

7   appreciable damage occurs and is or should be known to the insured, such that a reasonable

8   insured would be aware that his notification duty under the policy has been triggered."  MTD

9   Order at 2.  Thus, because Casa Nido's FAC alleged the property damage was not and should not

10  have been known to Plaintiff prior to 2016—twenty-six years after the Policy expired on August

11  15, 1990—Sentry determined that the pollution did not manifest in the policy period, and therefore

12  the policy did not apply to Casa Nido.  *See* FAC Reply at 8; *see also* Docket No. 108 at 8–10

13  ("Hr'g Tr.").

14         Casa Nido opposed dismissal of the FAC on three grounds.  First, Casa Nido argued that

15  Sentry misinterpreted *Montrose* because the *Montrose* court specifically rejected the

16  "manifestation" standard in favor of the alternative "continuous injury trigger" theory.  MTD

17  Order at 1.  Second, Casa Nido argued *Montrose* was in the first party context, and therefore

18  inapplicable to its tender for defense in the third-party context.  *See* Hr'g Tr. at 8–10.  Third, Casa

19  Nido argued that the *Montrose* definition of the manifestation trigger did not apply because the

20  Sentry policy predates *Montrose*, and a "plain reading of the DCE makes clear that manifestation

21  occurs at the time of discharge or release of pollutants, not at the time pollution was discovered."

22  MTD Order at 2.

23         While the Court denied Sentry's motion to dismiss, it did not do so because it agreed with

24  Casa Nido's legal arguments.  *See* MTD Order.  Instead, the Court concluded that "*Montrose* is

25  inapposite because the California Supreme Court specifically noted that the insurance policy in

26  *Montrose* did not have language requiring manifestation.  In contrast, the DCE explicitly states:

27  'For purposes of pollution liability…occurrence is the date on which…property damage first

28  manifests itself.'" *Id.* at 1.  Nor did the Court determine the definition of manifest applied or

1    whether that definition would be affected by a third-party or first-party insurance context.  *Id.* at 2,

2    n.2.  Rather, the Court denied dismissal because the FAC plausibly alleged breach of contract

3    under either definition.  *Id.* at 2 ("These facts are sufficient for a plausible claim that there was

4    actual release within the policy period, as well as a plausible inference of appreciable damage

5    under *Montrose's* known or should have known standard.").

6    B.    Casa Nido's Proposed TAC

7          1.    Proposed Amendments

8          Casa Nido seeks to amend its complaint by adding three arguments to its claim that Sentry

9    breached the covenant of good faith and fair dealing: (1) Sentry consciously misrepresented the

10   applicability of *Montrose* by claiming it "applied to third party claims…even though *Montrose*

11   specifically held that it only applied to first party claims"; (2) Sentry "critically and fundamentally

12   misrepresented the terms of its own policies" by denying coverage based on the *extent* of

13   pollution; and (3), Sentry interpreted the term "expenses" in the DCE as including "legal costs

14   incurred by Sentry pursuant to its duty to defend," (thereby diminishing the sum available for

15   indemnification) despite the contrary holding in *Okada v. MGIG Indemnity Corporation*, 823 F.2d

16   276 (9th Cir. 1986).  *See* Proposed TAC ¶¶ 111–15.

17         2.    Supplement

18         Casa Nido seeks to supplement its complaint by adding the rather novel allegation that

19   Sentry breached the covenant of good faith and fair dealing by failing to fund the defense against

20   O'Hanks's counterclaim despite the Court's denial of Sentry's MTD.  *See id.* ¶¶ 117–21.  Casa

21   Nido's argument is as follows: (1) in California the duty to indemnify and defend arises if the

22   insured proves the "mere existence of a potential for coverage"; (2) this Court found Casa Nido's

23   claim was plausible when it denied Sentry's MTD; (3) the Court's denial of Sentry's MTD and

24   finding Casa Nido's claim was plausible proves "the mere existence of a potential for coverage";

25   and (4) therefore, Sentry breached the covenant of good faith and fair dealing by not then fulfilling

26   its duty to indemnify and defend once the MTD was denied.  *Id.*

27

28

4

### III.   <u>LEGAL STANDARD</u>

A.   <u>Leave to Amend</u>

A party may amend a pleading once as a matter of course within twenty-one days after serving it.  Fed. R. Civ. P. 15(a)(1).  Thereafter, amendment is only allowed after obtaining leave of the court, or by consent of the adverse party.  Fed. R. Civ. P. 15(a)(2).  Generally, Rule 15 advises the court that "leave shall be freely given when justice so requires."  *Id.*  However, "the grant or denial of a subsequent opportunity to amend is within the discretion of the District Court."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  In determining whether leave should be granted pursuant to a District Court's discretion, the Supreme Court has stated that:

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Id.*

In the Ninth Circuit, the above listed factors—often referred to as the *Foman* factors—are not weighted equally.  *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987)).  Rather, courts have held that "the crucial factor is the resulting prejudice to the opposing party."  *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).  However, a motion may be denied on grounds of futility of the proposed amendments irrespective of prejudice.  *See generally Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1103 (9th Cir. 2018); *see also Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013).  A proposed amendment is futile if "no set of facts can be proved under the amendment to the pleadings that would constitute a valid claim or defense."  *Miller*, 845 F.2d at 214.  Thus, "[f]or purposes of assessing futility…the legal standard is the same as it would be on a motion to dismiss under FRCP 12(b)(6)."  *Flores-Mendez v. Zoosk, Inc.*, No. C 20-04929 WHA, 2022 WL 357500, at *1 (N.D. Cal. Feb. 7, 2022) (citing *Miller*, 845 F.2d at 214).

B.     Leave to Supplement

Supplemental pleadings are governed by Rule 15(d), which provides, "[o]n motion and reasonable notice, the court may…permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).  New claims, new parties, and allegations regarding events that occurred after the original complaint was filed are all properly permitted under Rule 15(d).  *See Griffin v. Cnty. School Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226 (1964); *see also Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) ("Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed."); *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988) ("Rule 15(d) is intended to give district courts broad discretion in allowing supplemental pleadings.").  Importantly, Rule 15(d) "is a tool of judicial economy and convenience" and "is intended to give district courts broad discretion in allowing supplemental pleadings." *Keith*, 858 F.2d at 473.  The rule "enabl[es] a court to award complete relief, or more nearly complete relief, *in one action*, and to avoid the cost, delay and waste of separate actions which must be separately tried and prosecuted." *Id.* (emphasis added) (quoting *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963)).  Therefore, because the goal of Rule 15(d) is to promote judicial efficiency, supplementation is generally favored.  *See Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (citing *Keith*, 858 F.2d at 473).  "The legal standard for granting or denying a motion to supplement under Rule 15(d) is the same as for amending one under 15(a)." *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 214 (N.D. Cal. 2015).

C.     Breach of Insurance Contract

An insurer breaches its insurance contract if it withholds benefits due under the contract. *Evergrow Indus. Co. v. Travelers Ins. Co.*, 37 F. App'x 300, 301 (9th Cir. 2002).  An insurer has a duty to defend against lawsuits brought against its insured that potentially seek covered damages. *Id.* (citing *Collin v. Am. Empire Ins. Co.*, 21 Cal. App. 4th 787, 803 (Ct. App. 1994)).  "[T]he determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy.  Facts extrinsic to the

1    complaint give rise to a duty to defend when they reveal a possibility that the claim may be

2    covered by the policy."  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 19 (Cal. 1995).

3         The interpretation of the terms of an insurance policy is a question of law.  *Waller*, 11

4    Cal.4th at 18.  "Interpretation of insurance contracts under California law requires [that courts]

5    employ general principles of contract interpretation."  *Manzarek v. St. Paul Fire & Marine Ins.*

6    *Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citing *MacKinnon v. Truck Ins. Exch.*, 31 Cal.4th 635

7    (2003)).

8         The California Supreme Court explained:

9              The fundamental rules of contract interpretation are based on the
              premise that the interpretation of a contract must give effect to the
10             "mutual intention" of the parties.  "Under statutory rules of contract
              interpretation, the mutual intention of the parties at the time the
11             contract is formed governs interpretation.  Such intent is to be
              inferred, if possible, solely from the written provisions of the
12             contract.  The 'clear and explicit' meaning of these provisions,
              interpreted in their 'ordinary and popular sense,' unless 'used by the
13             parties in a technical sense or a special meaning is given to them by
              usage', controls judicial interpretation."  A policy provision will be
14             considered ambiguous when it is capable of two or more
              constructions, both of which are reasonable.  But language in a
15             contract must be interpreted as a whole, and in the circumstances of
              the case, and cannot be found to be ambiguous in the abstract.
16             Courts will not strain to create an ambiguity where none exists.

17   *Waller*, 11 Cal.4th at 18–19 (citations omitted).

18        In an insurance coverage dispute, "coverage is interpreted broadly so as to afford the

19   greatest possible protection to the insured, [whereas] exclusionary clauses are interpreted narrowly

20   against the insurer."  *Manzarek*, 519 F.3d at 1032 (citing *MacKinnon*, 31 Cal.4th at 648).  An

21   "exclusionary clause must be conspicuous, plain and clear."  *Manzarek*, 519 F.3d at 1032 (quoting

22   *MacKinnon*, 31 Cal.4th at 648) (internal quotation marks and citation omitted).

23        "The burden is on the insured to establish that the claim is within the basic scope of

24   coverage and on the insurer to establish that the claim is specifically excluded."  *MacKinnon*, 31

25   Cal.4th at 648.  If the insurer can show the occurrence is specifically excluded, the burden shifts

26   back to the insured to show an "exception affords coverage."  *Aydin Corp. v. First State Ins. Co.*,

27   18 Cal.4th 1183, 1192 (1998), *as modified on denial of reh'g* (Oct. 14, 1998).

28

United States District Court
Northern District of California

D.     Breach of the Covenant of Good Faith and Fair Dealing

"To establish breach of the implied covenant [of good faith and fair dealing], the insured must show that: (1) benefits due under the policy were withheld, and (2) such withholding was unreasonable." *O'Keefe v. Allstate Indem. Co.*, 953 F. Supp. 2d 1111, 1115 (S.D. Cal. 2013). Ordinarily, "reasonableness of an insurer's claims-handling conduct is…a question of fact [and only] becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence." *Nieto v. Blue Shield of California Life & Health Ins. Co.*, 181 Cal. App. 4th 60, 86 (2010) (citing *Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 90 Cal. App. 4th 335; *Carlton v. St. Paul Mercury Ins. Co.*, 30 Cal. App. 4th 1450, 1456 (1994)).  However, "[w]hen the issue of the insurer's objective reasonableness depends on an analysis of legal precedent, reasonableness is a legal issue" for the Court.  *See CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 287 (2005).  Thus, "a court may 'conclude as a matter of law that an insurer's denial of a claim is not unreasonable,' provided that 'there existed a genuine issue as to the insurer's liability.'" *SM 10000 Prop., LLC v. Allianz Glob. Risks US Ins. Co.*, No. 19-CV-03054-PJH, 2021 WL 1299071, at *19 (N.D. Cal. Apr. 7, 2021); *Mosley v. Pac. Specialty Ins. Co.*, 49 Cal. App. 5th 417, 435 (2020), *as modified on denial of reh'g* (June 24, 2020).  The standard for determining whether a genuine issue exists "is entirely objective." *Patel v. Am. Econ. Ins. Co.*, No. 12-CV-04719-WHO, 2014 WL 1862211, at *6 (N.D. Cal. May 8, 2014).  "Disposition turns on whether the insurer can establish that, at the time it disputed the claim, and given what it knew or should have known, a carrier, reasoning objectively, could rationally have taken the positions on the issues that the defendant took." *Id.* (internal citation and quotation marks omitted).

## IV.     ANALYSIS

A.     Leave to Amend

Casa Nido seeks to add allegations that Sentry breached the covenant of good faith and fair dealing.  Therefore, if Casa Nido's amendments do not plausibly allege that Sentry breached the covenant of good faith and fair dealing, *i.e.*, unreasonably withheld policy benefits, *see O'Keefe*, 953 F. Supp. 2d at 1115, the amendments are futile and leave to amend will be denied.

United States District Court
Northern District of California

8

1          1.    *Montrose*

Casa Nido's proposed amendment to paragraph 111 asserts Sentry breached the covenant of good faith and fair dealing because it "misrepresented to its insured Casa Nido that the *Montrose* decision applied to third party claims…even though *Montrose* specifically held that it only applies to first party claims."  Proposed TAC ¶ 111.  Sentry argues that this amendment would be futile because "a cursory reading of the *Montrose* decision makes clear that it was a third-party case."  Opp. at 7.

The central question in *Montrose* was which insurance coverage trigger applies to third-party comprehensive general liability ("CGL") policies.  *See Montrose*, 10 Cal.4th 645.  In reaching its decision, the court examined and defined four types of coverage triggers, including the manifestation trigger and the continuous liability trigger.  *Id.* at 673–74.  The court ultimately held that the continuous liability trigger applies to third-party CGL claims, *see id.* at 689, and thus its definition of the manifestation trigger is dictum.  *See Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal.4th 1109, 1158 (2013) ("Dicta consists of observations and statements unnecessary to the appellate court's resolution of the case.") (internal citation omitted).

Importantly, Sentry's policy at issue is not a CGL policy in which the continuous liability trigger applies under Montrose; rather, the DCE in Sentry's policy specifically provides that the manifestation trigger applies and thus differs from that in Montrose.  *See* MTD Order at 1.  Nonetheless, in denying coverage to Casa Nido, Sentry cited *Montrose* for its definition of the manifestation trigger.  *See* Denial Letter at 12.

To that end, Casa Nido's focus on whether *Montrose* was in the first or third-party context misses the point.  Sentry's letter explaining its denial of coverage does not refer to  the first or third-party context of *Montrose*.  *See generally* Denial Letter.  Instead, Sentry relied on *Montrose* solely for its definition of the manifestation trigger.  *Id.* at 12.  Hence, the relevant question here is whether Sentry's reliance on dictum from the Supreme Court of California was unreasonable.  *See O'Keefe*, 953 F. Supp. 2d at 1115.

It was not unreasonable to look to dictum from the Supreme Court of California when interpreting California insurance law.  "Even if properly characterized as dictum, statements of the

United States District Court
Northern District of California

1  Supreme Court [of California] should be considered persuasive." *United Steelworkers of Am. v.*

2  *Bd. of Educ.*, 162 Cal. App. 3d 823, 835 (1984) (citing *Nolan v. Transocean Air Lines*, 365 U.S.

3  293, 296 (1961) (affirming a decision that relied on dicta from the California Supreme Court)).

4  *Accord* Hubbard v. Superior Ct., 66 Cal. App. 4th 1163, 1169 (1997) ("Generally speaking, follow

5  dicta from the California Supreme Court."). Accordingly, the Court **DENIES** leave to amend.

6      2.   <u>Misrepresentation of the Sentry Policy</u>

7      Casa Nido argues Sentry breached the covenant of good faith and fair dealing by denying

8  coverage "on the basis that the *extent* of the PCE subsurface contamination was not determined

9  until after the policy period ended" even though "the [DCE] in the Sentry Policies…expressly

10  provided that it was the discharge or release of contaminants during the policy period that

11  triggered coverage." Proposed TAC ¶ 113 (emphasis added). Sentry argues that Casa Nido's

12  amendment is futile because its letter denying coverage makes clear that denial was based on the

13  fact "that the subject contamination did not <u>manifest</u> itself until after the Policy had expired…"

14  Opp. at 7 (quoting Denial Letter) (emphasis in original). In response, Casa Nido states that

15  "disputed issues of fact go to the merits of the pleadings and do not render the pleadings futile."

16  *See* Docket No. 132 at 6 ("Reply").

17      Here, the contents of the letter at issue are clear—Sentry denied coverage based on its

18  belief that the pollution manifested outside of the policy period, not because of the extent of the

19  pollution. *See generally* Denial Letter. Even viewing the letter in the light most favorable to Casa

20  Nido, it does not have a viable claim; Sentry consistently based its reasoning on when the

21  pollution manifested. *Id.* at 1, 7, 12–14. Accordingly, the Court **DENIES** leave to amend.

22      3.   *Okada*

23      Casa Nido argues Sentry breached the covenant of good faith and fair dealing by

24  unreasonably interpreting the term "expenses" in the DCE as including "legal costs incurred by

25  Sentry pursuant to its duty to defend," (thereby diminishing the sum available for indemnification)

26  despite the contrary holding in *Okada*. *See* Proposed TAC ¶¶ 114 (citing *Okada*, 823 F.2d 276).

27      The plaintiffs in *Okada*, insureds under a Directors and Officers Errors and Omissions

28  Policy ("D&O"), sought a declaratory judgment that the defendant insurer had a contemporaneous

duty to defend a pending legal action.  *Okada*, 823 F.2d at 279.  Section 1 of the *Okada* D&O included the cost of "defense of legal actions" in its definition of Loss.  *Id.* at 280.  However, the insurer argued Section 5(a) qualified the contemporaneous duty to pay costs by giving it the right of approval over such "costs, charges, and expenditures."  *Id.*  The insurer also argued that Section 5(c) further limited payments because payment of "expenses," unlike "costs, chargers, and expenditures," were not subject to contemporaneous payment requirements, but left entirely within the discretion of the insurer.  *Id.* at 280–81.  In sum, the insurer argued that "the defense of legal actions [was] covered by the policy, that costs, charges and expenses must be approved by [the insurer], but that expenses [were] excluded from the general duty of contemporaneous payment."  *Id.* at 281.  The Ninth Circuit held that the insurer had a contemporaneous duty to defend because the inconsistent use of the term "expenses" across different sections rendered it ambiguous, and ambiguities must be interpreted in the insured's favor.  *Id.*

  The issue here is whether costs of defense are included in the DCE's pollution limit of $100,000.  If it is, Sentry's liability would be substantially limited because the legal costs would erode the $100,000 limit; however, the erosion would leave Casa Nido uncovered for much of the pollution damage.  *See* Proposed TAC ¶ 114; *Id.* ¶ 121; *see also* Opp. at 9.  The DCE's "Pollution Liability Insurance" provision states that "a separate pollution limit of $100,000 applies to all damages, including sums paid under Coverage Extension – Supplementary Payments, for all occurrences during the policy period."  Sentry Policy § (II)(M)(2)(a).  The Supplementary Payments provision states that the insurer is responsible for "all expenses we incur."  Sentry Policy § (A)(1)(e).  Thus, "Sentry has taken the position that the $100,000 limit includes defense fees and costs."  Opp. at 9.

  Casa Nido contends this interpretation is unreasonable because the term "expenses" is ambiguous and should be interpreted in its, the insured's, favor.  *See* Proposed TAC ¶ 114 (citing *Okada*, 823 F.2d 276).  However, Casa Nido's reliance on *Okada* is misplaced.  "A provision of an insurance contract does not become ambiguous merely because the parties disagree about its meaning, or because they can point to conflicting interpretations of the clause by different courts."  *Jones v. IDS Prop. Cas. Ins. Co.*, 27 Cal. App. 5th 625, 637 (2018) (internal quotation marks and

1   citation omitted). Otherwise, "an insurance company could never argue in favor of its side in a

2   pure question of law if there were some court somewhere that had taken the opposite view." *Id.*

3   (internal quotation marks and citation omitted). Here, Sentry's interpretation is based on specific

4   language of the DCE which differs from the context and language at issue in *Okada*. *See* Sentry

5   Policy § (II)(M)(2)(a); § (A)(1)(e). Sentry's interpretation, whether ultimately correct or not, is

6   not unreasonable as a matter of law because Sentry has sufficiently established a "genuine issue"

7   of liability. *See SM 10000 Prop., LLC*, 2021 WL 1299071, at \*19. Accordingly, the Court

8   **DENIES** leave to amend.

9   B.   <u>Leave to Supplement</u>

10          Casa Nido seeks to file the following supplemental claim in their TAC. *See* Proposed

11   TAC ¶¶ 117–21. According to Casa Nido, the Court's denial of Sentry's motion to dismiss means

12   Casa Nido has stated a plausible claim that they are covered by the insurance policy, and because

13   Casa Nido's claim is plausible, there are not "undisputed facts" that "conclusively show liability

14   would be excluded under the policy." Reply at 10 (citing *Nat'l Auto. & Cas. Ins. Co.*, 223 Cal.

15   App. 3d at 463). Therefore, Casa Nido argues Sentry should be required to fund Casa Nido's

16   defense against O'Hanks's counterclaim because "[a]n insurer may properly refuse to defend only

17   where undisputed facts conclusively show liability would be excluded under the policy." *Id.* Casa

18   Nido essentially asserts that the Court's denial of Sentry's motion to dismiss is a "transaction,

19   occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R.

20   Civ. P. 15(d).

21          The Court's denial of Sentry's motion to dismiss in and of itself does not provide a

22   supplemental basis of Sentry's liability. There is no direct equivalence between the relatively

23   foregoing standard of 12(b)(6) plausibility for pleading purposes and the showing needed to

24   trigger coverage. Otherwise, a court's determination that a claim should move past the pleading

25   stage would, in coverage cases such as this, regularly and automatically result in a judgment for

26   the insured on the merits.

27          Furthermore, the denial of a 12(b)(6) motion is not a final determination on the merits.

28   *See, e.g.*, *Meek v. Cnty. of Riverside*, 183 F.3d 962 (9th Cir. 1999) ("a district court's denial of a

United States District Court
Northern District of California

12(b)(6) motion generally is not a reviewable final order"); *Linares v. McLaughlin*, 423 F. App'x 84 (2d Cir. 2011) ("The denial of a defendant's motion to dismiss is not a *final* determination on the merits barring further litigation of the claims in question under the doctrine of res judicata.") (emphasis in original).  Casa Nido's attempt to import final effect to this Court's denial of the prior 12(b)(6) motion fails.  The Court **DENIES** leave to supplement.

**V.**     **CONCLUSION**

The Court **DENIES** Casa Nido's motion for leave to file a third amended and supplemental complaint with regard to all disputed paragraphs.

The Court **GRANTS** Casa Nido's motion for leave to amend ¶¶ 107 and 108; these are uncontested.

This order disposes of Docket No. 130.


**IT IS SO ORDERED**.


Dated: November 21, 2022


_____
EDWARD M. CHEN
United States District Judge