1  Rachel S. Doughty, Cal. Bar No. 255904
   Richard Brody, Cal. Bar No. 100379
2  Jennifer Rae Lovko, Cal. Bar No. 208855
   GREENFIRE LAW
3  P.O. Box 8055
   Berkeley, CA 94707
4  Telephone: (510) 900-9502
   Facsimile: (510) 900-9502
5  rdoughty@greenfirelaw.com
   rbrody@greenfirelaw.com
6  rlovko@greenfirelaw.com

7  *Attorneys for Plaintiff/Counter-Defendant*
   *Casa Nido*

8                    **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
9                     **UNITED STATES DISTRICT COURT**

10

11  CASA NIDO PARTNERSHIP, a California Partnership,    Case No. 20-cv-07923-EMC

12        Plaintiff,

          v.                                           **DECLARATION OF RACHEL**
13                                                      **DOUGHTY IN SUPPORT OF**
                                                        **PLAINTIFF'S REPLY RE MOTION**
14  CATHERINE O'HANKS; JAE KWON aka JAY                 **TO SUBSTITUTE**
    KWON aka JAY KWON SHIK aka JAY SHIK KWON;
    LYNNE MARIE GARIBOTTI aka LYNNE                     DATE: March 21, 2024
15  GARIBOTTI BLOWER aka LYNNE G. BLOWER, as            TIME: 1:30 p.m.
    trustee the Claudio Garibotti Trust, dated May 1, 1952;  COURTROOM: 5
16  and SENTRY INSURANCE COMPANY; SANDRA                JUDGE: Hon. Edward M. Chen
    KATE VERNELL (f/k/a SANDRA KATE
17  ANDERSON) and EARL RAY ANDERSON,
                                                        Complaint Filed: November 10, 2020
18        Defendant.
    _____
19
    CATHERINE O'HANKS,
20
          Counter-Claimant,
21
          v.
22
    JAE KWON aka JAY KWON aka JAY KWON SHIK
23  aka JAY SHIK KWON; LYNNE MARIE
    GARIBOTTI aka LYNNE GARIBOTTI BLOWER
24  aka LYNNE G. BLOWER as trustee the Claudio
    Garibotti Trust dated May 1, 1952; and SENTRY
25  INSURANCE COMPANY,

26        Counter-Defendants.

27

28                                          1
    DECLARATION OF RACHEL DOUGHTY IN SUPPORT OF PLAINTIFF'S REPLY RE MOTION TO
    SUBSTITUTE—20-CV-07923-EMC

1    I, Rachel Doughty do declare and state:

2       1.      If sworn as a witness, I could and would testify to my personal knowledge of the

3    facts set forth herein.

4       2.      Attached hereto as **Exhibit A** is a copy of a letter produced by Defendant Sandra

5    Vernell in response to discovery which contains the following declination of coverage, at page 4:

6           Under California law, environmental response costs incurred by a
            policyholder in response to administrative directives like the DTSC
7           Order – as opposed to court orders – do not fall within the "duty to
            indemnify" language found in the standard-form general liability
8           policy, such as the one quoted above. Administratively imposed
            environmental liabilities do not constitute "damages" as that term is
9           used in the standard-form liability policy. Consequently, in
            California, insurers have no obligation to indemnify the
10          policyholder for claims.

11          The present DTSC Order is an administrative directive and is not
12          seeking sums that Vernell "shall become legally obligated to pay as
            damages" because of property damage to which this insurance
13          applies. The damages referred to in the above quoted insuring
            agreement refer to damages sought solely under the auspices of a
14          lawsuit against our insured, including any resulting judgment. To
            that end, the present claim against Vernell by DTSC does not
15          constitute a suit. Therefore, Allianz does not have a duty to defend
16          Vernell against the DTSC Order.

17      3.      We continue to look for insurance that might cover cleanup of contamination

18   during Mr. Kwon's tenure of ownership of Omo's Fabricare; we have yet to identify or

19   successfully tender such coverage.

20      4.      The letter attached as exhibit A to ECF 221-2, was a response from the

21   Department of Toxic Substances Control ("DTSC") to requests from Casa Nido and Catherine

22   O'Hanks to add Mr. Kwon's estate to the agency's enforcement action. The agency based its

23   immediate decision upon information provided by Casa Nido and O'Hanks to DTSC, which is

24   admittedly incomplete, as it has been very difficult to obtain information from Mr. Kwon and his

25   family about their assets, the operation of the site, or even where Mr. Kwon lived when the case

26   was initiated.

27

28

DECLARATION OF RACHEL DOUGHTY IN SUPPORT OF PLAINTIFF'S REPLY RE MOTION TO
SUBSTITUTE—20-CV-07923-EMC

1        I make this declaration under penalty of perjury under the laws of the United States of

2   America, executed this 19th day of March, 2024 in Berkeley, California

3

4                                          GREENFIRE LAW, PC

5                                   By:   /s/ Rachel Doughty
                                          RACHEL DOUGHTY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF RACHEL DOUGHTY IN SUPPORT OF PLAINTIFF'S REPLY RE MOTION TO
SUBSTITUTE—20-CV-07923-EMC

# Exhibit A



**Allianz Resolution Management®**

October 17, 2023

SENT TO sandravernell@sbcglobal.net
AND U.S. MAIL

Sandra Vernell
2739 Barnard Street
San Pablo, CA 94806


Insured:                Sandra Anderson dba Ono's One Hour Martinizing
Claim Number:      000-00-407708
Site:                    12210 San Pablo Ave., Richmond, CA
DTSC Order:        Issuance of Imminent and Substantial Endangerment determination
                           and order and remedial action order, docket no. HAS-FY23/24-022,
                           Omo Fabricare Dry Cleaner, 12210 San Pablo Avenue, Richmond,
                           Contra Costa County, California (site code 202453)


Dear Ms. Vernell:

This acknowledges defense counsel Sage Knauft's October 11, 2023, correspondence which forwarded the above referenced DTSC (Department of Toxic Substances Control) Order concerning docket no. HAS-FY23/24-022 and as further described above (hereinafter "DTSC Order") against Vernell and the parties to the Casa Nido suit (which we addressed in our March 17, 2023, correspondence to you.)  Please note that Allianz, and Fireman's Fund Insurance Company, being a company of Allianz (hereinafter together "Allianz") will address this matter and the relevant policy that we have located in this correspondence. Please direct all future correspondence concerning this matter to the undersigned.

As you are aware, Allianz previously agreed in its March 17, 2023, correspondence to participate in the defense of Sandra Anderson, Individually, and DBA: Ono's One Hour Martinizing (hereinafter referred to as "Vernell") in the Casa Nido suit subject to a reservation of rights as concerns policy MXP 3058489, and Allianz continues to do so, while also reserving its rights under policy MXP 3058489 as concerns any claim for indemnity arising  from the Casa Nido suit.

However, the DTSC Order that is the subject of this correspondence is not a suit. As discussed further below, the Allianz policy does not contain any obligation to defend Vernell against a DTSC Order.  We suggest that your tender the DTSC Order, and the Casa Nido suit, to all other

**Allianz Reinsurance America, Inc.**
1465 N. McDowell Blvd., Suite 201
Petaluma, CA 94954
USA

insurers for Vernell for their consideration.  We previously requested, and reiterate our request here, that please you advise of any records you may have concerning other insurance carriers for Sandra Anderson, Individually, and DBA: Ono's One Hour Martinizing.  If you are aware of any such carrier, please provide copies of any documents evidencing any such policy or policies.

The remainder of this correspondence will explain Allianz's coverage position, which is based upon the facts and/or allegations set forth below, and requests other pertinent information as it becomes available, that the DTSC Order does not constitute a suit and that as such Allianz does not have a duty to defend Vernell against the DTSC Order, and also does not have a duty to indemnify Vernell for the DTSC Order, for the reasons indicated below.

FACTS

The DTSC Order's Findings of Fact leading to it being issued to Vernell as a Respondent includes the following:

> Respondents are responsible parties or liable persons as defined in Health and Safety Code section 25323.5.
> Catherine O'Hanks operated a dry cleaner at the Site from approximately 1960 to 1990.
> Earl Anderson operated a dry cleaner at the Site from approximately 1978 to 1980.
> Sandra Vernell operated a dry cleaner at the Site from approximately 1978 to 1980.
> Casa Nido has owned the Site since approximately 1995.
>
> In 1945, the site was developed with a commercial building in which a dry cleaner was operated from about 1959 to 2015.  The site the location of registered hazardous waste generation from at least 1987 to 2017, under currently inactive EPA ID #s CAD981617681, CAC002872978, CAC002906367, and CAC002926055.
>
> Between at least 1960 and 2000, the dry cleaner used tetrachloroethylene (PCE) and/or generated hazardous wastes containing PCE. In the early 2000s, the dry cleaner transitioned to using non-chlorinated petroleum hydrocarbon-based solvents.
>
> The dry cleaner building was closed in 2015, decommissioned in 2016, and demolished in 2017. Since 2017, the Site has been fenced and unoccupied.
>
> From 2014 to 2016, Casa Nido tested soil, soil gas, and groundwater at the Site and confirmed a release of PCE at the Site, which had migrated to adjoining properties to the north, south, east, and west. PCE release(s) was/were identified beneath dry cleaning equipment and near damaged sewer pipes.
>
> In 2017, Casa Nido entered into an enforceable agreement with DTSC to investigate and cleanup the release of hazardous substances including PCE.

2

VERNELL 000095

From 2018 to 2020, Casa Nido conducted interim actions without DTSC review or approval, including treatment and/or removal of soil, soil gas, and groundwater. These interim actions require review by DTSC, and some are ongoing.

In 2018, interim actions included removal of soil on Site to depths of between 3 and 15 feet below ground surface (bgs), and treatment of groundwater with chemical amendments including zero-valent iron at 14.5 to 15 feet bgs.

Since 2020, interim actions have also included soil vapor extraction (SVE) on Site at 4.5 to 10 feet bgs, and sub-slab depressurization (SSD) at the off-Site south-adjoining restaurant property at 0.5 to 1.5 feet bgs. Since 2020, DTSC has required the interim SVE/SSD system to remain indefinitely operational.

On March 27, 2023, Casa Nido terminated its enforceable agreement with DTSC. Elevated PCE concentrations remain at the Site and/or off-Site properties in connection with the Site.

The primary hazardous substances found at elevated concentrations in soil, soil gas, and groundwater on site is PCE and trichloroethylene (TCE).

The DTSC Order indicates Respondent are responsible parties as defined by Health and Safety Code section 25323.5, that a response action is necessary because there has been a release and/or there is a threatened release of a hazardous substance, and that there may be an imminent and/or substantial endangerment to the public health or welfare or the environment.

The purpose of the DTSC Order is to require for the Site: implementation of any appropriate removal actions, completion of a Remedial Investigation/Feasibility Study (RI/FS), preparation of a Remedial Action Plan (RAP) or Removal Action Workplan (RAW), preparation of California Environmental Quality Act (CEQA) documents, and Design and Implementation of the removal or remedial actions approved in the RAW or RAP.  It continues indicate that Respondents shall perform various activities to address the contamination at the site, and associated timelines for said activity, and it indicates penalties for noncompliance.

It is our understanding from the Casa Nido suit, which is separate from the DTSC Order, where the suit alleges that Vernell operated a dry-cleaning facility at the site from August 1978 to August 1984, but the suit does not identify the name of the dry-cleaning facility during that time period.

The remainder of this letter will address the policy MXP 3058489 (the "Policy") as concerns the DTSC Order, with the assumption that you, Vernell, are making a claim against Allianz concerning the DTSC Order.  This letter also reserves all rights under any other policies issued to

VERNELL 000096

or naming Vernell as an insured as concerns the above captioned matter, though we are not aware of any others.

COVERAGE ANALYSIS

Policy – MXP 3058489

Policy MXP 3058489 contains the following insuring agreements:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A. bodily injury or Coverage B. property damage  to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false, or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

Under California law, environmental response costs incurred by a policyholder in response to administrative directives like the DTSC Order – as opposed to court orders – do not fall within the "duty to indemnify" language found in the standard-form general liability policy, such as the one quoted above. Administratively imposed environmental liabilities do not constitute "damages" as that term is used in the standard-form liability policy. Consequently, in California, insurers have no obligation to indemnify the policyholder for claims.

The present DTSC Order is an administrative directive and is not seeking sums that Vernell "shall become legally obligated to pay as damages" because of property damage to which this insurance applies.  The damages referred to in the above quoted insuring agreement refer to damages sought solely under the auspices of a lawsuit against our insured, including any resulting judgment. To that end, the present claim against Vernell by DTSC does not constitute a suit. Therefore, Allianz does not have a duty to defend Vernell against the DTSC Order.

The Policy contains the following definition of "property damage":

> injury to or destruction of tangible property.

As set forth in the insuring agreement and the definition of "property damage," liability coverage is only available under the Policy for damages that Vernell becomes legally obligated to pay because of "property damage" that occurs during the policy period to which this insurance

4

applies.  To the extent that any of the damages sought in this matter are not damages because of "property damage," as the term is defined in the Policy, no coverage will be available for any such damages.  Furthermore, if it is determined that the alleged "property damage" did not occur during the policy period, no coverage will be available under the Policy.

Here, the DTSC Order claims that Vernell is responsible under the Health and Safety Code section 25323.5 and that as there has been a "release" and/or there is a "threatened release" of "hazardous substance" as defined in the DTSC Order that may endanger the public health or welfare or to the environment, a response action is necessary to abate a public nuisance and/or to protect and preserve the public health.

The Policy contain the following definition of "occurrence":

> an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

In accordance with the definition of "occurrence" quoted above, the Policy provides coverage for "property damage" caused by an "occurrence," as defined in the Policy.  To the extent that the alleged damages did not arise out of an "occurrence" as defined in the Policy, there will be no coverage under the Policy for this claim.

The Policy contain the following pollution exclusion:

> (f)  to bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental;

Allianz reserves the right to disclaim coverage under the Policy for damages falling within the terms of the pollution exclusion.  We are aware that the Casa Nido suit alleges sudden and accidental spills and equipment overflows of PCE (due to equipment malfunction, equipment breakdown, or improper equipment usage) during the period that Defendants Vernell and Anderson operated.  At present we are unaware of any purported evidence to support those allegations, and accordingly reserve all rights.

The Policy contained the following "owned property" exclusion as revised under form 105201 of Section VI. Broad Form Property Damage" of the Policy.

> (y) to property damage
> (1) to property owned or occupied by or rented to the insured, …

5

…..

(2) (d) that particular part of any property, not on premises owned by or rented to the insured, ….

      (ii) out of which any property damage arises, or……

Allianz reserves the right to disclaim coverage under the Policy for damages falling within the terms of the owned property exclusion.

The Policy contain the following "alienated premises" exclusion:

      (l) to property damage to premises alienated by the named insured arising out of such premises or any part thereof;

Allianz reserves the right to disclaim coverage under the Policy for damages falling within the terms of the alienated premises exclusion.

The Policy contains the following "Insured's Duties In The Event Of Occurrence, Claim or Suit" provision:

      Insured's Duties in the Event of Occurrence, Claim or Suit

      a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.

      (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

      (c) The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of injury or damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

VERNELL 000099

Pursuant to this condition contained in the Policy, Vernell was required to notify Allianz of a claim or lawsuit as soon as practicable. Also as set forth in the above cited condition, Vernell shall not, except at their own expense, voluntarily make any payment, assume any obligation or incur any expense.  Allianz reserves the right to disclaim any fees, costs or expenses that were incurred prior to the tender or were voluntarily incurred by Vernell as concerns the DTSC Order.

The Policy contain the following "Other Insurance" provision:

> 6. Other Insurance.  The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
> (a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater pro-portion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
> (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.

This provision was revised under form 105201 of Section "VI. Broad Form Property Damage" of the Policy.

> B) The insurance afforded hereby shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof) available io the insured, such as but not limited to Fire and Extended Coverage, Builder's Risk Coverage or Installation Risk Coverage, and the "Other Insurance" Condition of the policy is amended accordingly.

Coverage for this claim may be limited by application of the above-referenced "Other Insurance" provision contained in the Policy as revised, and thus we reserve our rights under this provision as well.

VERNELL 000100

Allianz requests that Vernell provide us with a list of its other insurers, and their respective policy numbers, effective dates, limits of liability and contact information.  Allianz also requests that you advise us whether this matter has been tendered to these other carriers and the nature of their responses.  Allianz reserves the right to enter into a cost sharing agreement with Vernell's other insurers and/or seek contribution from other insurers.  In addition, Allianz reserves its right to seek an allocation of costs, subject to policy provisions and applicable law.

The Policy contains the following Limit of Liability provision:

> Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:
>
> Coverage A -The total liability of the Company for all damages, including damages for care and loss of services, because of bodily injury sustained by one or more persons as the result of any one occurrence shall not exceed the limit of bodily injury liability slated in the schedule as applicable to "each occurrence."
>
> Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of (1) all bodily injury included within the completed operations hazard and (2) all bodily injury included within the products hazard shall not exceed the limit of bodily injury liability stated in the schedule as "aggregate".
>
> Coverage B -The total liability of the Company for all damages because of all property damage sustained by one or more persons or organizations as the result of any one occurrence shall not exceed the limit of property damage liability stated in the schedule as applicable to "each occurrence".
>
> Subject to the above provision respecting "each occurrence'", the total liability of the Company for all damages because of all property damage to which this coverage applies and described in any of the numbered subparagraphs below shall not exceed the limit of property damage liability staled in the schedule as "aggregate": (1) all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including property damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph (2) below;
>
> (2) all property damage arising out of and occurring in the course of operations performed for the named insured by independent contractors and general supervision thereof by the named insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph (2) does not include property damage arising out of maintenance or repairs at premises owned by or rented to the named insured or structural alterations al such premises which do not involve changing the size of or moving buildings or other structures; (3) all

8

properly damage included within the products hazard and all property damage included within the completed operations hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraphs (1), (2) and (3) above, and under subparagraphs (1) and (2), separately with respect to each project away from premises owned by or rented to the named insured.

Coverages A and B-For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

Under no circumstances is there coverage under the Policy in excess of the limits of liability as stated in the Policy.  Other claims may be pending or may have been paid in the past that could reduce the policy limits available for this claim.  Allianz, therefore, reserves the right to decline to make any payment in excess of the remaining available insurance.  As such, Allianz seeks your cooperation and request that you place all of Vernell's other insurance carriers on notice of this claim if you have not already done so.  Vernell's failure to do so may prejudice Vernell's ability to obtain coverage from other insurance carriers.

In addition, the policy contains terms, conditions and exclusions, including those incorporated from the respective underlying policy which may further limit or preclude coverage for this matter.  Allianz reserves all of its rights under all policies of insurance it issued to Vernell at any time, whether or not such rights are specifically cited herein as pertains to this matter.

To the extent that the recovery of punitive or exemplary damages is sought, please note that punitive damages may not be insurable as a matter of public policy.  Therefore, Allianz reserves the right to deny coverage for punitive damages to the extent that these damages are not insurable.

Allianz also reserves the right to limit or preclude coverage to the extent that Vernell knew and/or should have known of the "property damage" at issue prior to inception of the Policy.

In summary, Allianz does not agree to defend Vernell in the DTSC Order under the Primary Policy MXP 3058489, for the reasons presented above.

Allianz also reserves the right to: (1) initiate a separate action to determine Allianz's duty to defend and/or indemnify Vernell for this matter; and (2) negotiate a settlement of the claim and then seek reimbursement of amounts paid in settling non-covered claims.  Any settlements, judgments, or defense fees and costs paid by Allianz shall not constitute a waiver of Allianz's right to later seek contribution or reimbursement of such settlements, judgments or defense fees and costs on the grounds that there is not a duty to defend or indemnify all or a portion of this claim.

VERNELL 000102

While we have not located any other policy naming Vernell as an insured, we do note concerns with and reserve our rights regarding what is deemed to be the prior policy to Policy MXP 3058489 which contains a reference to a Previous Policy listed as MXP 2585508, but that policy was issued to Roy Q. Hanks and Catherine O. Hanks dba Omo's One Hour Martinizing.  Policy MXP 2585508 does not name or include Vernell as an insured.

Allianz reserves all of its rights to disclaim coverage under any coverage or policy defense available to Allianz as concerns policy MXP 2585508 issued to Roy Q. Hanks and Catherine O. Hank dba Omo's One Hour Martinizing it if is later determined that Vernell is an insured under that policy, as concerns the above captioned matter.  If Vernell has information to suggest Vernell is an insured under that policy, please forward same for our review and consideration so that we may further address the policy with the claim.

This letter is based upon information Allianz has received to date and is not intended as an exhaustive recitation of all the provisions of the law or the Policy that might apply.  Allianz does not waive any other rights or defenses to coverage that may be applicable, whether or not such rights or defenses are specifically set forth in this letter.  Allianz specifically reserves the right to amend or supplement this letter based upon later-acquired information or for any other reason.  All of Allianz's rights in connection with this matter are expressly reserved, whether asserted herein or not.

If you believe that any aspect of this claim has been overlooked or have any additional factual material you would like us to consider, please notify me of your concerns and/or forward any additional information to my attention for consideration.

Neither this letter nor any investigation of this matter undertaken by Allianz is intended to waive any rights, defenses, or obligations of either Allianz under any insurance policy in connection with this matter.  All such rights are expressly reserved.

If you believe this claim has been wrongfully denied, or rejected, you may have the matter reviewed by calling the California Department of Insurance at 1-800 927 4357, or by writing to the California Department of Insurance; Claims Service Bureau, 11th Floor, 300 South Spring Street, Los Angeles, CA 90013.

If you have any questions regarding this correspondence, or should you wish to discuss it further, please contact the undersigned.

Sincerely,

10

VERNELL 000103

Daniel Kane
Claim Specialist
Allianz Reinsurance America, Inc.
Allianz Resolution Management
Fireman's Fund Insurance Company
Direct: (415) 899-3740
daniel.kane@allianzrm-us.com

VERNELL 000104