Rachel S. Doughty, Cal. Bar No. 255904
Richard Brody, Cal. Bar No. 100379
Jennifer Rae Lovko, Cal. Bar No. 208855
GREENFIRE LAW
2748 Adeline Street, Suite A
Berkeley, CA 94703
Telephone: (510) 900-9502
Facsimile: (510) 900-9502
rdoughty@greenfirelaw.com
rbrody@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASA NIDO PARTNERHSIP, a California Partnership,<br><br>Plaintiff,<br><br>v.<br><br>CATHERINE O'HANKS; SENTRY INSURANCE COMPANY; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON) and EARL RAY ANDERSON,<br><br>Defendants.<br><br>―――――――――――――――――――――<br><br>AND ALL RELATED COUNTER AND CROSS CLAIMS. | Case No. 3:20-CV-07923-EMC-TSH<br><br><br>**CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:         August 22, 2024<br>Time:         1:30 p.m.<br>Judge:        Edward M. Chen<br>Courtroom.:  5 – 17th Floor<br><br>Third Amended Complaint Filed: December 16, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT ........................................ 1

INTRODUCTION .................................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 4

    I.    Timeline and Damages .............................................................................. 4

    II.   PCE Contamination at the Site ................................................................. 8

    III.  Defendants' Affirmative Defenses .......................................................... 11

STANDARD OF REVIEW: MOTION FOR SUMMARY JUDGMENT ...................... 12

ARGUMENT ........................................................................................................................ 13

    I.    Summary Judgment is Appropriate for Plaintiff's First Claim for Relief Based on ............. 13

    CERCLA as Against Defendants O'Hanks, Vernell, and Anderson ........................................... 13

        A.   Facility ............................................................................................ 13

        B.   Potentially Responsible Parties .................................................... 14

        C.   Release of Hazardous Substance .................................................. 16

        D.   Incurred Costs ................................................................................ 16

        E.   Allocation ....................................................................................... 17

        F.   Affirmative Defenses ..................................................................... 19

    II.   Summary Judgment is Appropriate for Plaintiff's Second Claim for Relief Based on the Carpenter-Presley-Tanner Hazardous Substance Account Act (HSAA) as Against Defendants O'Hanks, Vernell, and Anderson ........................................... 20

    III.  Summary Judgment is Appropriate for Plaintiff's Fourth Claim for Relief Based on California Water Code §§ 13304 and 13350 as Against Defendants O'Hanks, Vernell, and Anderson ...................................................................................................................... 21

        A.   Discharge ........................................................................................ 21

        B.   Condition of Pollution or Nuisance ............................................. 22

    IV.  Summary Judgment is Appropriate for Plaintiff's Fifth Claim for Relief Based on Public Nuisance as Against All Defendants .......................................................... 23

    V.   Summary Judgment is Appropriate for Plaintiff's Sixth Claim for Relief Based on Nuisance Per Se as Against Defendants O'Hanks, Vernell, and Anderson .......................................... 24

    VI.  Summary Judgment is Appropriate for Plaintiff's Seventh Claim for Relief Based on Negligence as Against All Defendants .......................................................... 25

    VII. Summary Judgment is Appropriate for Plaintiff's Eighth Claim for Relief Based on Negligence Per Se as Against Defendants O'Hanks, Vernell, and Anderson ...................... 27

CONCLUSION ..................................................................................................................... 27

**TABLE OF AUTHORITIES**

**Cases**

*A & W Smelter & Refiners v. Clinton*, 146 F.3d 1107 (9th Cir. 1998) ............................................. 16

*Adobe Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188 (E.D. Cal. 2009) ........................................ 20

*Asarco LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859 (9th Cir. 2020) ............................................. 17

*Asarco LLC*, 975 F.3d at 868 ............................................................................................................ 18

*Atl. Richfield Co. v. Cal. Reg'l Water Quality Control Bd.*, 85 Cal. App. 5th 338 (2022) .......... 21, 22

*Bailey v. United States*, 516 U.S. 137 (1995) ................................................................................... 14

*Beck Development Co. v. Southern Pacific Transportation Co.*, 44 Cal.App.4th 1160 (1996) .. 23, 25

*Berg v. Kincheloe*, 794 F.2d 457 (9th Cir. 1986) .............................................................................. 13

*Birke v. Oakwood Worldwide*, 169 Cal.App.4th 1540 (2009) ........................................................... 24

*Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691 (9th Cir. 1988) .................. 2

*Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069 (E.D. Cal. 2005) ................................................................................................................................................. 27

*Cal. River Watch v. Fluor Corp.*, 119 F. Supp. 3d 1108 (N.D. Cal. 2015) ........................................ 2

*Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863 (9th Cir. 2001) ...................................... 16

*Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053 (C.D. Cal. 2003) ............... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................................................. 12

*Chee v. Amanda Goldt Prop. Mgmt.*, 143 Cal. App. 4th 1360 (2006) .............................................. 25

*City of Modesto Redevelopment Agency v. Sup. Ct.*, 119 Cal. App. 4th 28 (2004) .......................... 22

*City of Modesto Redevelopment Agency*, 119 Cal. App. 4th at 38 .................................................... 23

*Containerport Grp., Inc. v. Am. Fin. Grp., Inc.*, 128 F. Supp. 2d 470 (S.D. Ohio 2001) ................... 2

*Environmental Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503 (7th Cir. 1992) ...................... 18

*Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197 (E.D. Cal. 2003) ........................... 16

*Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534 (6th Cir. 2001) ....................................................................................................................................... 13

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

*Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888 (N.D. Cal. 2011) ... 13, 20, 21

*Hillman v. Newington* 57 Cal. 56, 59 (1880) ....................................................................... 22

*HLP Props., LLC v. Consol. Edison Co. of N.Y.*, 2015 U.S. Dist. LEXIS 114779 (S.D.N.Y. Aug. 28, 2015) ........................................................................................................................ 19

*Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, Civil Action No. 95-2097 (DMC), 2003 U.S. Dist. LEXIS 8898, at *195 (D.N.J. May 15, 2003) ....................................................................... 19

*Jones v. Union Pacific Railroad Co.*, 79 Cal.App.4th 1053 (2000) .................................... 25

*Jordan v. City of Santa Barbara*, 46 Cal. App. 4th 1245 (1996) ................................ 23, 25

*Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648 (6th Cir. 2000) ............... 16

*Lind v. San Luis Obispo*, 109 Cal. 340 (1895) .................................................................. 24

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ............... 13

*McLean v. Llewellyn Iron Works*, 2 Cal.App. 346 (1905) ................................................. 24

*Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377 (E.D. Cal. 1991) ........................... 2

*Newhall Land & Farming Co. v. Superior Court*, 19 Cal. App. 4th 334 (1993) ............... 25

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2d Cir. 2010) ......... 13, 14, 16

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099 (9th Cir. 2000) ................... 12

*Orange Cnty. Water Dist. v. MAG Aerospace Indus., Inc.*, 12 Cal. App. 5th 229 (2017)15, 16, 20, 21

*State of Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910 (9th Cir. 2010) ........................................................................................................................ 17

*Sweeney v. Cal. Reg'l Water Quality Control Bd.*, 61 Cal. App. 5th 1093 (2021) ........... 22

*Tesoro Ref. & Mktg. Co. LLC v. L.A. Reg'l Water Quality Control Bd.*, 42 Cal. App. 5th 453 (2019) ........................................................................................................................ 22

*The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595 (2001) ........ 25

*Trinity Indus. v. Greenlease Holding Co.*, 903 F.3d 333 (3d Cir. 2018) ......................... 17

*U.S. v. Burlington N. & Santa Fe Ry.*, 502 F.3d 781 (9th Cir. 2007) ................................. 13

*U.S. v. Fleet Factors Corp.*, 821 F. Supp. 707 (S.D. Ga. 1993) ....................................... 15

iv

*U.S. v. Honeywell Intern., Inc.,* 542 F.Supp.2d 1188 (E.D.Cal. 2008) ................................ 13

*United Artists Theatre Circuit, Inc. v. Cal. Reg'l Water Quality Control Bd.*, 42 Cal. App. 5th 851
    (2019) ................................................................................................................ 22

*United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir. 1992) ............................... 16

*United States v. Colorado & Eastern R.R. Co.* (10th Cir. 1995) 50 F.3d 1530............................ 18

*United States v. Davis*, 31 F.Supp.2d 45 (D. R.I. 1998) ................................................ 18

*United States v. Hardage*, 982 F.2d 1436 (10th Cir. 1992) ............................................. 2

*United States v. Mottolo*, 26 F.3d 261 (1st Cir. 1994) .................................................. 2

*United States v. Sterling Centrecorp Inc.*, 977 F.3d 750 (9th Cir. 2020) .......................... 14

*United States v. Stringfellow*, 661 F. Supp. 1053 (C.D. Cal. 1987)................................... 20

*Voggenthaler v. Md. Square LLC*, 724 F.3d 1050 (9th Cir. 2013) ................................... 15

*Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751 (7th Cir. 2021) ........................ 17

*Voorheis v. Tidewater S. R. Co.*, 41 Cal.App. 315 (1919) ............................................ 24

*Wade v. Campbell*, 200 Cal.App.2d 54 (1962) ........................................................ 24

*Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898 (N.D. Cal. 2011) ........................ 25

*Young v. United States*, 394 F.3d 858 (10th Cir. 2005) ............................................... 17

**Statutes**

40 C.F.R. § 302.4 .......................................................................................... 14

40 C.F.R. § 300.700 ....................................................................................... 17

42 U.S.C. § 6903(3) ....................................................................................... 15

42 U.S.C. § 9601(22) ..................................................................................... 16

42 U.S.C. § 9601(23)-(25) ............................................................................... 17

42 U.S.C. § 9601(29) ..................................................................................... 15

42 U.S.C. § 9601(8) ...................................................................................... 16

42 U.S.C. § 9607(a) ...................................................................... 4, 13, 14, 27

42 U.S.C. § 9607(a)(2) .................................................................................... 14

42 U.S.C. § 9707(b) ...................................................................................... 20

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

42 U.S.C.S. § 9601(14) ................................................................................................................ 14

42 U.S.C.S. § 9601(9) .................................................................................................................. 14

42 U.S.C.S. § 9613(f) .................................................................................................................. 17

Cal. Civil Code § 1021.5 ............................................................................................................... 3

Cal. Civil Code § 3333 ................................................................................................................ 26

Cal. Civ. Code, § 3491 .................................................................................................................. 3

Cal. Civil Code § 3479 ........................................................................................................... 24, 27

Cal. Civil Code § 3480 ............................................................................................................ 4, 24

Cal. Civil Code § 3493 ................................................................................................................ 24

Cal. Health & Saf. Code, § 25300 .......................................................................................... 4, 27

Cal. Health & Safety Code § 25323.9 ......................................................................................... 20

Cal. Water Code § 13050 ............................................................................................................. 21

Cal. Water Code § 13050(e) ........................................................................................................ 22

Cal. Water Code § 13050(l)(1) .................................................................................................... 23

Cal. Water Code § 13050(m) ................................................................................................. 23, 25

Cal. Water Code § 13304(a) ........................................................................................................ 21

Cal. Water Code § 13350 ..................................................................................................... 3, 4, 27

CERCLA, 42 U.S.C. § 9607(a) ..................................................................................................... 2

**Rules**

Fed. R. Civ. Proc. 56(a) .............................................................................................................. 12

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on August 22, 2024, at 1:30 p.m., or as soon thereafter as this matter may be heard, before the Honorable Judge Edward M. Chen, in the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Courtroom 5, 17th Floor, San Francisco, California, Plaintiff CASA NIDO PARTNERSHIP (CASA NIDO) will and hereby does move the Court for partial summary judgment as to Plaintiff's First, Second, Fourth, Fifth, Sixth, Seventh, and Eighth Claims for Relief against Defendants CATHERINE O'HANKS; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON), and EARL RAY ANDERSON. This motion is brought under Federal Rule of Civil Procedure 56. CASA NIDO supports its motion with the accompanying memorandum of points and authorities, the Declaration of Robert Clark-Riddell (Clark-Riddell Decl.), the Declaration of Rachel Doughty (Doughty Decl.), the Declaration of Marsha Conwill (Conwill Decl.), the Declaration of Sandra Kate Vernell (Vernell Decl.), and the exhibits contained in Plaintiff's Compendium of Exhibits.

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT

### INTRODUCTION

Plaintiff CASA NIDO seeks partial summary as to all causes of action averred in Plaintiff's Third Amended Complaint against Defendants O'HANKS, VERNELL, and ANDERSON. *See* **ECF 147**. Each cause of action is based upon damages resulting from the release of tetrachlorethylene (commonly known as perchloroethylene or PCE) at and from drycleaning operations at 12210 San Pablo Avenue in Richmond, California (Site).

To date, Plaintiff has sustained damages exceeding $1 million, as well as monetary damages related to the inability to lease the Site. Additional future costs are certain as the California Department of Toxic Substances Control (DTSC) has ordered CASA NIDO, O'HANKS, VERNELL, and ANDERSON to perform a number of activities related to the

---

investigation and remediation of PCE at the Site. Accordingly, Plaintiff seeks summary judgment as follows:

*First Claim for Relief (Cost Recovery: CERCLA, 42 U.S.C. § 9607(a); Plaintiff against Defendants O'HANKS, VERNELL, and ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's First Claim for Relief, with the Court finding that Plaintiff has incurred past necessary response costs consistent with the National Contingency Plan (NCP) in the amount of $1,346,911.97, that each Defendant is jointly and severally liable for past and future necessary response costs consistent with the NCP, and that allocation of liability is 10% for Plaintiff and 90% for Defendants O'HANKS, VERNELL, and ANDERSON.[1]

*Second Claim for Relief (Carpenter-Presley-Tanner Hazardous Substance Account Act, HSAA; Plaintiff against Defendants O'HANKS, VERNELL, and ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's Second Claim for Relief, mirroring the findings as to Plaintiff's First Claim for Relief.

---

[1] If this Court finds that a genuine issue of material fact exists as to the amount of past damages that are consistent with the NCP, Plaintiff asks that this Court grant partial summary judgment on the issue of liability under the CERCLA cause of action, with the amount of past damages to be addressed subsequently at trial. *See United States v. Mottolo*, 26 F.3d 261, 262 (1st Cir. 1994); *Cadillac Fairview/California, Inc. v. Dow Chemical Co.*, 840 F.2d 691, 695 (9th Cir. 1988); *United States v. Hardage*, 982 F.2d 1436, 1445 (10th Cir. 1992); *Containerport Grp., Inc. v. Am. Fin. Grp., Inc.*, 128 F. Supp. 2d 470, 481 (S.D. Ohio 2001); *Mid Valley Bank v. N. Valley Bank*, 764 F. Supp. 1377, 1389-90 (E.D. Cal. 1991). However, there may be no need for an NCP consistency determination as there are multiple theories/claims covering the same contamination (discussed below), the majority of which do not have an NCP-consistency contingency.

Similarly, if this Court finds that a genuine issue of material fact exists as to the proper allocation of liability under CERCLA, Plaintiff asks that this Court grant partial summary judgment on the issue of liability and amount of damages, finding each Defendant joint and severally liable with allocation to be addressed subsequently at trial. *See Cal. River Watch v. Fluor Corp.*, 119 F. Supp. 3d 1108, 1117 (N.D. Cal. 2015). Again, equitable allocation of liability is not a consideration for the other theories of liability (discussed below) that are not based on NCP consistency.

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

*Fourth Claim for Relief (Water Pollution: Cal. Water Code, §§ 13304, 13350; Plaintiff against Defendants O'HANKS, VERNELL, and ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's Fourth Claim for Relief, finding that each Defendant is liable under the Water Code for past and future damages suffered by Plaintiff. In addition, Plaintiff asks this Court to issue a permanent injunction requiring Defendants to investigate and remediate contamination on and around the Site.

*Fifth Claim for Relief (Continuing Public Nuisance: Cal. Civil Code §§ 1021.5, 3479, 3480, 3491, 3493; Plaintiff against Defendants O'HANKS, VERNELL, ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's Fifth Claim for Relief, finding that each Defendant created a continuing public nuisance and are jointly and severally liable to Plaintiff for all past and future damages, including the loss of rent associated with being unable to lease the Site. In addition, Plaintiff asks this Court to order that Defendants abate the continuing public nuisance.

*Sixth Claim for Relief (Per Se Nuisance: Cal. Civ. Code, § 3491; Plaintiff against Defendants O'HANKS, VERNELL, ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's Sixth Claim for Relief, finding that Defendants violation of California's Water Code constitutes per se nuisance, and as such, each Defendant created a continuing public nuisance and are jointly and severally liable to Plaintiff for all past and future damages, including the loss of rent associated with being unable to lease the Site. In addition, Plaintiff asks this Court to order that Defendants abate the continuing public nuisance.

*Seventh Claim for Relief (Negligence; Plaintiff against Defendants O'HANKS, VERNELL, ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's Seventh Claim for Relief, finding that Defendants were negligent and are jointly and severally liable to Plaintiff for all past and future damages, including the loss of rent associated with being unable to lease the Site.

*Eighth Claim for Relief (Negligence; Plaintiff against Defendants O'HANKS,*

*VERNELL, ANDERSON)* – Plaintiff's motion for summary judgment should be GRANTED as to Plaintiff's Eighth Claim for Relief, finding that Defendants conduct violated 42 U.S.C. § 9607(a); Cal. Health & Saf. Code, §§ 25300, 25363; Cal. Water Code, §§ 13304, 13350; and Cal. Civil Code §§ 3479, 3480, and as such, they are per se negligent and are jointly and severally liable for all past and future damages, including the loss of rent associated with being unable to lease the Site.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Timeline and Damages

The Site of this litigation was occupied by a commercial drycleaning facility from approximately 1960 through June 2015. *See* Clark-Riddell Decl. at ¶12. Defendant CATHERINE O'HANKS and her late husband, Roy O'Hanks, operated the drycleaning business at the Site from approximately 1960 to 1990. *See* Compendium, **Exh. 30** at Response to Nos. 1-4; Compendium, **Exh. 37** at p. 2; **ECF 150** at ¶17. Defendants VERNELL and ANDERSON entered into an agreement with the O'Hanks whereby they handled operation of the drycleaning business from approximately 1978 to 1980. *See* **ECF 177** at ¶8; Compendium, **Exh. 37** at p. 2; Vernell Decl. at ¶6.

CASA NIDO first retained Pangea Environmental Services, Inc. (Pangea) in 2014 for an initial investigation of volatile organic compounds at the Site. *See* Clark-Riddell Decl. at ¶28. In early 2015, consistent with the first step of NCP compliance, CASA NIDO asked Pangea to gather information for an initial scoping meeting. *See id.* at ¶¶29-30. The investigation documented the presence of elevated concentrations of hazardous substances related to prior dry-cleaning operations: PCE and its breakdown product trichloroethene (TCE). *See id.* at ¶31. The PCE and TCE presence was documented in soil, groundwater, and subslab gas. *See id.* Groundwater assessment also was conducted to help determine if agency oversight was appropriate by the San Francisco Bay Regional Water Quality Control Board. *See id.* A well survey, sanitary sewer video inspection, and an underground utility study were

conducted to identify potential sensitive receptors and potential preferential pathways for contaminant migration to assist with the initial scoping meeting. *See id.* The PCE and TCE presence was found beneath the Site building and immediately adjacent to the Thai restaurant located directly south of the Site. *See id.* The gathered information demonstrated the need for urgent response to hazardous substances at the Site. *See id.* Pangea prepared a Site Assessment Report on August 16, 2016 that contained Pangea's findings. *See id.* at ¶32. In that same month, Plaintiff submitted an application for agency oversight, and DTSC was selected as the oversight agency. *See id.* at ¶33.

In October of 2016, DTSC stated it currently did not have the staff to manage the project. *See* Clark-Riddell Decl. ¶33. In May of 2017, DTSC finally found staff to manage the project, and after additional agency interaction, CASA NIDO entered a Voluntary Cleanup Agreement with DTSC. *See id.* at ¶34.

As a result of PCE contamination, Plaintiff has been unable to lease the Site property, and in July of 2017, the building that housed the drycleaning business on the Site had to be demolished to enable access to remove PCE-contaminated soils. *See* Clark-Riddell Decl. at ¶11; Conwill Decl. at ¶4; Compendium, **Exh. 37** at p. 3.

In December of 2017, DTSC issued its first agency request for an investigation workplan. With this request, DTSC initiated the second procedural step of NCP Compliance, which focuses on evaluation/characterization. *See* Clark-Riddell Decl. at ¶35. In April of 2018, DTSC assigned a new caseworker to the Site and approved an extension for the requested plan. *See id.* at ¶36. CASA NIDO submitted the Offsite Vapor Intrusion Assessment Workplan to DTSC on July 17, 2018. *See id.* In September of 2018, DTSC issued a letter with comments and recommendations; DTSC also included a statement recommending interim hazard mitigation measures for the adjacent Thai restaurant. *See id.* at ¶37.

In August of 2018, Plaintiff's legal counsel contacted O'HANKS explaining the environmental testing and remedial work that had been done to address public health concerns related to PCE contamination at the Site, addressing past and anticipated costs associated with

such environmental testing and remedial work, and demanding that O'HANKS reimburse CASA NIDO for all or some of these costs. *See* Conwill Decl. at ¶5; Doughty Decl. at ¶2. At that time, CASA NIDO had already incurred costs in excess of $350,000 for work and labor by Pangea and DTSC, as well as for the cost of utilities. *See* Conwill Decl. at ¶¶7-12. Since that time, CASA NIDO has repeatedly tried to have Defendants cover unreimbursed response costs, but no Defendant has agreed to cover any of these costs.[2] *See* Conwill Decl. at ¶6; Doughty Decl. at ¶3.

In October 2018, Pangea implemented an interim action at the Site involving the removal of approximately 454 cubic yards of impacted soil and construction of a permeable reactive barrier to treat groundwater at the Site. This action was necessary to help safeguard human health and improve conditions in the soil, soil vapor, and groundwater. *See id.* at ¶38. Between 2018 and 2020, Pangea also designed and installed a combined interim soil vapor extraction remediation system and subslab depressurization mitigation system (SVE/SSD system) to limit off-site migration and exposure to vapor-forming chemicals. *See id.* at ¶¶39-41. For vapor intrusion mitigation, DTSC recognizes that the "most commonly accepted mitigation techniques are systems that dilute contamination by ventilation (SSV) and systems that reduce contamination by lowering pressure (SSD systems)." *See id.* at ¶40. Since 2020, DTSC has required that this SSV/SSD system remain indefinitely operational. *See* Compendium, **Exh. 37** at p. 3, 8.

On May 5, 2020, DTSC once again changed staff assigned to the Site. *See id.* at ¶42. On December 4, 2020, Pangea submitted a Draft Additional Characterization Report to DTSC as requested by DTSC staff. *See id.* In October of 2021, DTSC finally approved the Offsite Vapor Intrusion Assessment Workplan. *See id.* at ¶43. On December 4, 2020, Pangea issued an

---

[2] As of May 16, 2024, the O'HANKS, VERNELL, ANDERSON, and CASA NIDO were exchanging drafts of a cost sharing agreement, with each reserving rights as to ultimate liability, to enable shared payment to be made to DTSC in response to an order discussed further on in this brief. *See* Doughty Decl. at ¶3.

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

Additional Characterization Report, which contains additional assessment data for soil, groundwater, and subslab/soil gas. *See id.* at ¶44; Compendium, **Exh. 23**.

With neither Defendant O'HANKS nor any of her insurers willing to resolve the matter informally, Plaintiff filed the first complaint in this action on November 10, 2020. *See* **ECF 001**. Since that time, CASA NIDO has continued to incur necessary response costs for the maintenance and operation of the SVE/SSD system, implementation of the Offsite Vapor Intrusion Assessment Workplan, and other remediation activities. *See* Conwill Decl. at ¶¶7-12.

During a meeting with DTSC on August 4, 2022, DTSC Supervisor Whitney Smith, who has oversight of the Site thanked CASA NIDO for their initial response actions. *See* Clark-Riddell Decl. at ¶45. He confirmed that Casa Nido would get credit for the significant source removal, remediation, and mitigation measures undertaken, and that DTSC would eventually review response action documentation to determine if any additional removal or remediation is merited at the Site. *See id.*

In 2023, the VCA was terminated and DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order. *See* Compendium, **Exh. 37**; Doughty Decl. at ¶28. The VCA was terminated after O'HANKS would not commit to become an additional party to the VCA. *See* Doughty Decl. at ¶28.

The Imminent and Substantial Endangerment Determination and Order and Remedial Action Order found that Defendants are responsible parties or liable persons as defined in Health and Safety Code section 25323.5. *See* Compendium, **Exh. 37** at p. 62. The Order also found that there had been a "release" or "threatened release" of PCE at the Site, that this release may present an imminent and substantial endangerment to the public health or welfare or to the environment, and that action is necessary to abate a public nuisance and/or protect and preserve the public health. *See id.* Based on this, DTSC has ordered CASA NIDO, O'HANKS, VERNELL, and ANDERSON to engage in a number of future response actions, all of which will result in incurred costs consistent with the NCP. *See id.* at p. 27-29. DTSC also ordered that the SVE/SSD system continue to operate. *See id.* at p. 27.

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

To date, CASA NIDO has paid $145,732.05 to DTSC for project management; an additional $42,777.91 has been invoiced by DTSC but not yet paid. *See* Conwill Decl. at ¶¶7-12. CASA NIDO also has paid Pangea for its services and costs in the amount of $892,384.47; an additional $103,823.56 is outstanding. *See id.* The costs incurred and paid for utilities totals $20,678.98. *See id.* And, CASA NIDO also paid $141,515.00 to Innovative Construction Solutions for activities related to remedial excavation and SVE piping installation. *See id.*

The response action and associated costs, taken as a whole, were necessary and either consistent with the National Contingency Plan (NCP) or in substantial compliance with the NCP. *See* Clark-Riddell Decl. at ¶65; Compendium, **Exh. 40**. To date, no Defendant has paid for any necessary costs associated with the Site. *See* Doughty Decl. at ¶3.

In addition to discovery and cross-motions for summary judgment between Plaintiff and Defendant Sentry Insurance Company, the parties have participated in mediation. *See* Compendium, **Exhs. 1-21**; **ECF 196**; Doughty Decl. at ¶4. On March 26, 2024, this matter was referred to the Honorable Joseph C. Spero for a settlement conference. *See* **ECF 227**. As of the date of filing this motion for summary judgment, none of the Defendants or their insurers have committed themselves to any liability for past costs incurred by Plaintiff as a result of the discharge and release of PCE at the Site. However, the parties are actively negotiating coverage of future costs pursuant to direction given by Judge Joseph C. Spero, with reservation of right to argue ultimate liability and coverage. *See* Doughty Decl. at ¶3.

## II.       PCE Contamination at the Site

Defendants O'HANKS, VERNELL, and ANDERSON admit they used PCE as part of the drycleaning process at the Site. *See* **ECF 150** at ¶¶17, 19; **ECF 177** at ¶22; Compendium, **Exh. 30** at Response to No. 6; Compendium, **Exh. 4** at Responses to Interrogatory Nos. 18 and 25; Compendium, **Exh. 9** at Responses to Interrogatory Nos. 9-10, 18 and 22; Vernell Decl. at ¶7. PCE at the Site was delivered by a tanker truck, using a hose that ran from the truck through the facility to a holding tank located next to the drycleaning machines. *See* Compendium, **Exh. 30** at Responses to No. 4, 6 and Exhibit A diagram; Compendium, **Exh. 9**

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

at Response to Special Interrogatory No. 9; Vernell Decl. at ¶8.

PCE is a toxic chemical known to cause both short-term health effects, as well as long-term health effects. *See* Clark-Riddell Decl. at ¶17. It has been listed as a known carcinogen under Proposition 65 since 1988. *See id.* Once released into the environment, PCE can contaminate soil and groundwater for tens to hundreds of years. *See id.* at ¶18. It readily moves through concrete and cracks in concrete floors. *See id.* PCE evaporates at room temperature. *See id.*

Defendants used transfer machines (also known as first generation machines) from 1960 through 1990, which are drycleaning machines that require manual transfer of solvent-laden clothing between a separate washer and dryer. *See* Clark-Riddell Decl. at ¶13; Compendium, **Exh. 4** at Response to Interrogatory No. 25; Compendium, **Exh. 5** at p. COH-003792; Compendium, **Exh. 9** at Response to Interrogatory No. 22; Compendium, **Exh. 12** at Exhibit 3 (Bill of Sale), p. Casa Nido009485-Casa Nido009487; Vernell Decl. at ¶¶9-10. These machines were installed at the Site in 1958, and neither Ms. O'HANKS, SANDRA VERNELL nor EARL RAY ANDERSON replaced the equipment during the time that they owned and operated the drycleaning business. *See* Compendium, **Exh. 30** at Responses to Nos. 3 and 4; Compendium, **Exh. 9** at Response to Interrogatory No. 18; Vernell Decl. at ¶9.

Transfer machines use significantly more PCE than later generations of machines. *See* Clark-Riddell Decl. at ¶19. Their design necessarily leads to the release and discharge of PCE during operation, and historically, poor housekeeping, business, and maintenance practices contributed to a high frequency of additional spills and discharges. *See id.*

Specific to their design, the release and discharge of PCE from first generation machines necessarily occurred (1) from evaporation when transferring wet fabrics from the washer to the dryer unit, (2) from evaporation associated with the filter-cooker-still filtration system, (3) from dryer exhaust vented into the atmosphere, and (4) from contact water. *See id.* at ¶21. There also is residual vapor release from clothes after they are removed from the dryer,

1   at which time they contain at least 3-6 percent PCE by weight, and when pressed or steamed.

2   *See id.*

3          The transfer of wet fabrics is a significant source of PCE emissions in first generation

4   transfer systems as a result of evaporation. *See id.* at ¶22. In addition, Mr. O'Hanks was

5   witnessed to have accidentally dropped wet clothes on the ground while transferring them from

6   the washer to the dryer. *See* Compendium, **Exh. 13** at Response to Request No. 18; Vernell

7   Decl. at ¶11.

8          As regards the filter-cooker-still filtration system, the waste product generated

9   (sometimes referred to as muck) contained considerable solvent--as high as 56% by weight.

10  *See* Clark-Riddell Decl. at ¶23. At the Site, this muck was initially moved into a drum or

11  bucket, and subsequently moved outside to a dumpster for retrieval. *See* Compendium, **Exh. 9**

12  at Response to Interrogatory No. 13; Compendium, **Exh. 30** at Response to No. 6; Vernell

13  Decl. at ¶13. The amount of such waste being generated varied between 20 and 40 gallons per

14  month. *See* Compendium, **Exh. 9** at Response to Interrogatory No. 10; Compendium, **Exh. 31**;

15  Vernell Decl. at ¶14. Studies have shown that the disposal of waste materials (filters, spent

16  filtrate material or "muck," discharged water) is a significant source of PCE contamination at

17  drycleaning facilities. *See* Clark-Riddell Decl. at ¶25.

18         "Contact water is any water that has come into contact with drycleaning solvents or

19  drycleaning solvent vapors. Contact water will contain some concentration of dissolved

20  solvent." Clark-Riddell Decl. at ¶24. One type of contact water is the water ultimately

21  recovered after a drycleaning cycle has completed. This recovered water was "generally routed

22  to a five-gallon plastic bucket . . . [and was] saturated with respect to solvent." *Id.* Images from

23  the Site, which were produced by Defendant O'HANKS, show an open bucket that appears to

24  be the receptacle for the contact water issued from the drycleaning equipment's vapor

25  reclaimer and separator. *See id.* at ¶15.

26         PCE emissions associated with business and maintenance practices include the release

27

28

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

or discharge of PCE from (1) overfilling storage tanks, (2) dropping wet clothes on the floor when transferring from the washer unit to the dryer unit (3) solvent spills, leaks from valves, flanges, seals, covers, hoses, and ductwork associated with first-generation equipment, and (4) leaks from storage tanks or other storage containers. *See* Clark-Riddell Decl. at ¶26. At the Site, spilled PCE was cleaned up with rags. *See* Compendium, **Exh. 9** at Response to Interrogatory No. 16; Compendium, **Exh. 13** at Response to Request No. 16.; Vernell Decl. at ¶12.

Subsurface PCE contamination at the Site has been documented, and the contamination is the result of PCE release (a) that occurred near the Site's transfer machines, which penetrated the nearby concrete floor slab, (b) from the sanitary sewer pipes, and (c) from the rear yard, where PCE waste/muck was stored. *See* Clark-Riddell Decl. at ¶¶52-55. PCE releases at the Site occurred as the result of transfer machine operation and waste handling, periodic or ongoing spills and leaks, and one or more sudden and accidental releases. *See id.* at ¶3, 58. Discharges and releases necessarily occurred during each year from 1960 through 1990. *See id.*

### III.   Defendants' Affirmative Defenses

Defendant O'HANKS asserts as an affirmative defense that "[t]he existence of any PCE and/or hazardous substance releases was caused solely by one or more acts of God, an act of war, by the acts or omissions of a third party or parties, other than O'Hanks, or an agent of O'Hanks, and with whom O'Hanks had no contractual agreements." ECF 150 at ¶13. On September 23, 2023, Plaintiff served discovery on O'HANKS, asking her to identify any evidence in support of this affirmative defense. *See* Compendium, **Exh. 1** at Request for Admission No. 3. In response, O'HANKS stated "Responding Party has made a reasonable inquiry and the information Responding Party knows or can readily obtain is insufficient to enable Responding Party to admit or deny" that she has evidence to support this defense. Compendium, **Exh. 2** at Response to Request for Admission No. 3.

1    Defendants VERNELL and ANDERSON assert as an affirmative defense that

2    "Plaintiffs' injuries or damages, if and to the extent they occurred, which occurrence is

3    expressly denied, were caused solely by the faults of third parties for which Defendant is not

4    responsible." ECF 188 at ¶6. On September 23, 2023, Plaintiff served discovery on both

5    defendants, asking them to identify any evidence in support of this affirmative defense. *See*

6    Compendium, **Exh. 6** at Request for Admission No. 3; Compendium, **Exh. 8** at Interrogatory

7    Nos. 6-7; Compendium, **Exh. 10** at Request for Production No. 17; Compendium, **Exh. 16** at

8    Request for Admission No. 3; Compendium, **Exh. 18** at Interrogatory Nos. 6-7; Compendium,

9    **Exh. 20** at Request for Production No. 17. Neither VERNELL nor ANDERSON identified any

10   facts, witnesses, or documents to support their defense. *See* Compendium, **Exh. 7** at Response

11   to Request No. 3; Compendium, **Exh. 9** at Responses to Interrogatory Nos. 6-7; Compendium,

12   **Exh. 11** at Response to Request No. 17; Compendium, **Exh. 17** at Response to Request No. 3;

13   Compendium, **Exh. 19** at Responses to Interrogatory Nos. 6-7; Compendium, **Exh. 21** at

14   Response to Request No. 17.

15            **STANDARD OF REVIEW: MOTION FOR SUMMARY JUDGMENT**

16   Summary judgment or partial summary judgment is proper "if the movant shows that

17   there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

18   matter of law." Fed. R. Civ. Proc. 56(a). As to a nonmoving party's defenses, the moving party

19   "must produce either evidence negating an essential element of the nonmoving party's claim or

20   defense or show that the nonmoving party does not have enough evidence of an essential

21   element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v.*

22   *Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once this has been done, the moving party is

23   entitled to summary judgment if the non-moving party fails to present, by affidavits,

24   depositions, answers to interrogatories, or admissions on file, "specific facts showing that there

25   is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The opposing

26   party cannot rest solely on conclusory allegations. *See Berg v. Kincheloe*, 794 F.2d 457, 459

(9th Cir. 1986). It must designate specific facts showing there is a genuine issue for trial. *See id*. More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## ARGUMENT

I.      **Summary Judgment is Appropriate for Plaintiff's First Claim for Relief Based on CERCLA as Against Defendants O'Hanks, Vernell, and Anderson**

CERCLA imposes "super-strict" liability for environmental contamination upon specified entities. *U.S. v. Burlington N. & Santa Fe Ry.*, 502 F.3d 781, 792 (9th Cir. 2007). To obtain summary judgment, CASA NIDO must show that (a) the site is a "facility," (b) each defendant falls into one of the four classes of persons subject to liability, (c) a release or threatened release of a hazardous substance has occurred at the facility, and (d) the release or threatened release has caused the Plaintiff to incur necessary response costs consistent with the national contingency plan (NCP). *See id.; see also* 42 U.S.C. § 9607(a); *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011); *U.S. v. Honeywell Intern., Inc.,* 542 F.Supp.2d 1188, 1197 (E.D.Cal. 2008); *Castaic Lake Water Agency v. Whittaker Corp.*, 272 F. Supp. 2d 1053, 1059 (C.D. Cal. 2003).

For purposes of determining CERCLA liability, a court may base its finding "solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain." *Niagara Mohawk Power Corp.*, 596 F.3d at 131 (quoting *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534, 547 (6th Cir. 2001). "CERCLA liability may be inferred from the totality of the circumstances as opposed to direct evidence." *Id.* at 136.

A.      **Facility**

CERCLA defines "facility" broadly as:

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch,

landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

42 U.S.C.S. § 9601(9). The at-issue dry cleaning operations occurred in a building located at 12210 San Pablo. Additionally, as addressed further in section I.B., PCE has been deposited, stored, disposed of, or placed, or otherwise located at this site. PCE is included in the listing of CERCLA hazardous substances found in Table 302.4—List of Hazardous Substances and Reportable Quantities. 40 C.F.R. § 302.4. *See also* 42 U.S.C.S. § 9601(14). As such, the subject Site undoubtedly falls within the purview of CERCLA.

### B.    Potentially Responsible Parties

Under CERCLA, property owners are "strictly liable for the hazardous materials on their property, regardless of whether or not they deposited them there." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 120 (2d Cir. 2010). They may, however, "seek reimbursement of their cleanup costs from others in the chain of title or from certain polluters—the so-called potentially responsible parties ('PRP's')." *Id.* at 120 (citing 42 U.S.C. § 9607(a)). CERCLA identifies four classes of PRPs, including "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2).

Each of the Defendants—O'HANKS, VERNELL, and ANDERSON—were owners and/or operators of the drycleaning facility at 12210 San Pablo Avenue, Richmond, CA. *See* Compendium, **Exh. 30** at Response to Nos. 1-4; Compendium, **Exh. 37** at p.2; **ECF 150** at ¶17; **ECF 177** at ¶8; Vernell Decl. at ¶6. An operator is one who is involved in the management, direction, or conduct of "operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste." *Bailey v. United States*, 516 U.S. 137, 145 (1995); *see also United States v. Sterling Centrecorp Inc.*, 977 F.3d 750, 758 (9th Cir. 2020) (an operator is involved in the "hands-on, day-to-day participation in

the facility's management"). Here, each Defendant conducted drycleaning operations at the facility, and each admits they used PCE as part of these operations. As a result of these operations, the disposal of PCE occurred. *See* Compendium, **Exh. 4** at Responses to Interrogatory Nos. 18 and 25**;** Compendium, **Exh. 9** at Response to Interrogatory Nos. 9-10, 18, and 22; Compendium, **Exh. 30** at Response to Nos. 1-4, 6; Compendium, **Exh. 37** at p.2; **ECF 150** at ¶¶17, 19; **ECF 177** at ¶¶8, 22; Vernell Decl. at ¶¶6-7; Clark-Riddell Decl. at ¶¶3, 38-62.

"Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3); *see* 42 U.S.C. § 9601(29).) The term is interpreted broadly. *See Orange Cnty. Water Dist. v. MAG Aerospace Indus., Inc.*, 12 Cal. App. 5th 229, 247 (2017).

Disposal does not require that the hazardous waste actually be dispersed outside of the at-issue facility building because disposal need only be such that hazardous waste "may" enter the environment. *See id.* (citing *U.S. v. Fleet Factors Corp.*, 821 F. Supp. 707, 723 (S.D. Ga. 1993); *Voggenthaler v. Md. Square LLC*, 724 F.3d 1050, 1064 (9th Cir. 2013). Even the spilling of PCE onto the floor, rather than directly onto the land or water, constitutes a "disposal." *See Voggenthaler*, 724 F.3d at 1064.

> A "disposal" under the statute includes any discharge or spill of waste "into or on any land or water so *that* [the waste] *may* enter the environment . . . ." 42 U.S.C. § 6903(3) (emphasis added). Because the phrase "enter the environment" is qualified by the word "may" in the definition of "disposal," the statute cannot be interpreted to cover only spills that go directly and immediately into the groundwater. The statute contemplates that some spills may never enter the environment. The definition covers more than direct spills.

*Id.* To be clear, "liability is based on the defendant's relationship to the facility—not the

defendant's relationship to the release or threatened release that caused the incurrence of response costs." *Orange Cnty. Water Dist.*, 12 Cal. App. 5th at 242.

### C.   Release of Hazardous Substance

The term "release" is defined to include "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment" of a hazardous substance. 42 U.S.C. § 9601(22). "Release" is even broader a term than "disposal." *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 270 F.3d 863, 878 (9th Cir. 2001). "Environment," in turn, also is broadly defined to include surface waters, ground water, land surface or subsurface strata, or ambient air. *See* 42 U.S.C. § 9601(8).

Plaintiff is not required to present a minimum amount of hazardous substance released to establish its prima facie case. *See A & W Smelter & Refiners v. Clinton*, 146 F.3d 1107, 1110 (9th Cir. 1998). Plaintiff also need not show that such release was the result of any particular defendant's actions. *See Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 655-56 (6th Cir. 2000); *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197, 1207 (E.D. Cal. 2003).

Here, the evidence clearly demonstrates that a release occurred. PCE was released within and from the facility and has contaminated the below and surrounding soil and groundwater. *See* Clark-Riddell Decl. at ¶¶3, 38-62.

### D.   Incurred Costs

The fourth element of a CERCLA claim focuses on causation, where "[t]he traditional tort concept of causation plays little or no role." *Niagara Mohawk Power Corp.*, 596 F.3d at 131. "A party seeking to establish liability under CERCLA need not even show a specific PRP's waste caused cleanup costs." *Id.* Instead, the plaintiff need only show that a defendant was a PRP, that a hazardous substance of the same type as released by a defendant were found at the site, and that necessary response costs consistent with NCP costs were incurred. *See id.*; *see also United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 266 (3d Cir. 1992).

Response costs include a wide variety of investigative, removal, and remedial actions. *See* 42 U.S.C. § 9601(23)-(25); *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 770 (7th Cir. 2021); *Trinity Indus. v. Greenlease Holding Co.*, 903 F.3d 333, 352 (3d Cir. 2018). A cost is considered "necessary" if there is "some nexus between [it] and an actual effort to respond to environmental contamination." *Trinity Indus.*, 903 F.3d 333, 352 (3d Cir. 2018) (quoting *Young v. United States*, 394 F.3d 858, 863 (10th Cir. 2005)). Consistency with the NCP requires that the response action, when evaluated as a whole, is in "substantial compliance" with the NCP's requirements and "results in a CERCLA-quality cleanup." 40 CFR 300.700. "Perfect compliance is not the measuring stick." *Von Duprin LLC v. Major Holdings, LLC*, 12 F.4th 751, 770 (7th Cir. 2021).

Plaintiff has shown that each Defendant is a PRP and that the release of PCE has occurred. This release has caused necessary and reasonable response costs in the amount of $1,346,911.97. *See* Conwill Decl. at ¶¶7-12; Clark-Riddell Decl. at ¶¶28-65; 420 CFR Appendix D to Part 300. These costs were incurred for DTSC project management; initial site investigation and information gathering for scoping; building abatement and demolition; soil excavation; permeable reactive barrier construction; design, installation, maintenance, and operation of the SVE/SSD system; groundwater monitoring; and more. *See* Conwill Decl. at ¶¶7-12.

Future costs are certain, with DTSC ordering a number of further actions at the Site and surrounding area. *See* Compendium, **Exh. 37**.

### E.    Allocation

CERCLA liability is joint and several, but once liability has been adjudged, liable parties may seek to allocate contribution amongst the responsible parties. *See State of Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912 (9th Cir. 2010). In addressing allocation, courts often apply the "Gore factors." *See* 42 U.S.C.S. § 9613(f); *Asarco LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859, 868 n.7 (9th Cir. 2020); *United*

1   *States v. Colorado & Eastern R.R. Co.* (10th Cir. 1995) 50 F.3d 1530, 1536, fn. 5.).

2
> The Gore factors are: (i) the ability of the parties to demonstrate
3
> that their contribution to a discharge, release, or disposal of a
> hazardous waste can be distinguished; (ii) the amount of the
4
> hazardous waste involved; (iii) the degree of toxicity of the
> hazardous waste involved; (iv) the degree of involvement by the
5
> parties in the generation, transportation, treatment, storage, or
> disposal of the hazardous waste; (v) the degree of care exercised
6
> by the parties with respect to the hazardous waste concerned,
> taking into account the characteristics of such hazardous waste;
7
> and (vi) the degree of cooperation by the parties with federal, state,
8
> or local officials to prevent any harm to public health or the
> environment.

9   *See Asarco LLC*, 975 F.3d at 868 n. 7. Courts also may consider other equitable factors such as

10  the financial resources of the parties and the degree to which a party benefited from the at-issue

11  hazardous substance. *See United States v. Davis*, 31 F.Supp.2d 45, 63 (D. R.I. 1998);

12  *Environmental Transp. Systems, Inc. v. ENSCO, Inc.*, 969 F.2d 503, 509 (7th Cir. 1992).

13          Here, it appears fair and equitable that the lion-share of the cleanup costs related to

14  PCE releases at the Site be borne by the operators of the drycleaning business and their

15  insurance carriers rather than by CASA NIDO who played no active role in the business. It was

16  the activities and actions of O'HANKS, VERNELL, and ANDERSON that actually resulted in

17  the release of PCE, with O'HANKS operating the drycleaning business for almost 30 years and

18  ANDERSON/VERNELL operating the drycleaning business for approximately 2 years.

19  During this time, each Defendant purchased, used, discharged, and released PCE at the Site.

20  On the other hand, CASA NIDO never purchased, used, discharged, or released PCE at the

21  Site. *See* Conwill Decl. at ¶6. CASA NIDO owns the Site property but has never engaged in

22  the operation of the drycleaning business on the Site. *See id.* The contamination of the Site and

23  surrounding areas was due to the lack of care used by O'HANKS, ANDERSON, and

24  VERNELL. CASA NIDO was not involved in any of the decisions or actions that resulted in

25  the discharge or release of PCE.

26

27
28

In an effort to address environmental and public health concerns related to PCE at the Site, Plaintiff has spent over $1 million. *See* Conwill Decl. at ¶¶7-12. CASA NIDO has repeatedly been in communication with DTSC. Defendants, on the other hand, have refused to come to the table to address environmental and public health concerns, and they have refused to contribute to the costs incurred as a result of PCE release at the Site. *See* Conwill Decl. at ¶¶5-6; Doughty Decl. at ¶¶2-4. O'HANKS also has not claimed inability to pay. *See* Doughty Decl. at ¶3.

Each Defendant has been integrally and actively involved in the release of PCE at the Site; Plaintiff has not been involved in such manner. Where a property owner has not contributed to, profited from, or exacerbated the pollution, courts often allocate no more than 10 percent of response costs to the owner. *See HLP Props., LLC v. Consol. Edison Co. of N.Y.*, 2015 U.S. Dist. LEXIS 114779, at *16 (S.D.N.Y. Aug. 28, 2015); *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, Civil Action No. 95-2097 (DMC), 2003 U.S. Dist. LEXIS 8898, at *195 (D.N.J. May 15, 2003). Accordingly, Plaintiff requests that allocation of liability under CERCAL be 10% for Plaintiff and 90% for Defendants O'HANKS, VERNELL, and ANDERSON.

**F.    Affirmative Defenses**

Section 9607(b) provides that there shall be no liability for a PRP where a defendant demonstrates:

> by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting therefrom were caused solely by—
>
> …
>
> (3) an act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant (except where the sole contractual arrangement arises from a published tariff and acceptance for

> carriage by a common carrier by rail), if the defendant establishes
> by a preponderance of the evidence that (a) he exercised due care
> with respect to the hazardous substance concerned, taking into
> consideration the characteristics of such hazardous substance, in
> light of all relevant facts and circumstances, and (b) he took
> precautions against foreseeable acts or omissions of any such third
> party and the consequences that could foreseeably result from such
> acts or omissions…

42 U.S.C. §9707(b). For this defense, which is sometimes referred to as the innocent

landowner defense, each Defendant would need to prove that a totally unrelated third party is

the *sole* cause of the release of PCE. *See United States v. Stringfellow*, 661 F. Supp. 1053, 1061

(C.D. Cal. 1987). None of the Defendants can do this as their operation of a drycleaning

business with transfer machines necessarily caused the release of PCE. Further, in response to

discovery in this case, each Defendant has admitted that they have no evidence in support of an

innocent landowner defense.

## II.      Summary Judgment is Appropriate for Plaintiff's Second Claim for Relief Based on the Carpenter-Presley-Tanner Hazardous Substance Account Act (HSAA) as Against Defendants O'Hanks, Vernell, and Anderson

"Similar to CERCLA, California's HSAA provides for civil actions for indemnity and

contribution and expressly incorporates CERCLA's liability standards and defenses." *Adobe*

*Lumber, Inc. v. Hellman*, 658 F. Supp. 2d 1188, 1192 (E.D. Cal. 2009). The elements of an

HSAA claim are essentially the same as CERCLA and include that (a) the property is a "site,"

(b) each Defendants falls into one of the four classes of person subject to liability, (c) a release

or threatened release of a hazardous substance has occurred at the facility, and (d) the release

or threatened release has caused the Plaintiff to incur necessary response costs consistent with

the NCP. *See id.; see also Orange Cnty. Water Dist.*, 12 Cal. App. 5th at 240-41; *Gregory Vill.*

*Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 897 (N.D. Cal. 2011).

Under the HSAA, the term "site" has the exact same meaning as "facility" under

CERCLA. *See* Cal. Health & Safety Code § 25323.9. It defines the terms "responsible party"

or "liable person" as those persons described as PRPs in CERCLA. *See id.* at § 25323.5(a).

And accordingly, CERCLA's language regarding the release and threatened release of hazardous substances, resulting in necessary response costs consistent with the NCP, is also applicable to HSAA. *See id.; Orange Cnty. Water Dist.*, 12 Cal. App. 5th at 241-42; *Gregory Vill. Partners, L.P.*, 805 F. Supp. 2d at 897. The HSAA also provides that the defenses available to a responsible party or liable person are those specified in CERCLA. *See id.* at § 25323.5(b).

The facts supporting CASA NIDO's CERCLA claim, addressed above in Section I, apply equally to Plaintiff's HSAA claim, and therefore, CASA NIDO is entitled to summary adjudication as to their HSAA cause of action.

## III.   Summary Judgment is Appropriate for Plaintiff's Fourth Claim for Relief Based on California Water Code §§ 13304 and 13350 as Against Defendants O'Hanks, Vernell, and Anderson

Under the California Water Code, "[a]ny person . . . who has caused or permitted, causes or permits, or threatens to cause or permit any waste to be discharged or deposited where it is, or probably will be, discharged into the waters of the state and creates, or threatens to create, a condition of pollution or nuisance" is strictly liable, triggering injunctive relief and civil penalties. *See* Cal. Water Code § 13304(a). Thus, this claim has two elements: (a) a defendant caused or permitted the discharge of waste into state waters, and (b) a defendant's discharge created a condition of pollution or nuisance. *See id.; Atl. Richfield Co. v. Cal. Reg'l Water Quality Control Bd.*, 85 Cal. App. 5th 338, 374 (2022).

### A.   Discharge

Waste is defined as including:

> sewage and any and all other waste substances, liquid, solid, gaseous, or radioactive, associated with human habitation, or of human or animal origin, or from any producing, manufacturing, or processing operation, including waste placed within containers of whatever nature prior to, and for purposes of, disposal.

Cal. Water Code § 13050. Under this definition, PCE is considered waste. *See United Artists*

*Theatre Circuit, Inc. v. Cal. Reg'l Water Quality Control Bd.*, 42 Cal. App. 5th 851, 862 (2019); *City of Modesto Redevelopment Agency v. Sup. Ct.*, 119 Cal. App. 4th 28, 43 (2004).

The term "discharge" is not defined in the Water Code, but it has been held to mean "'[t]o allow (a liquid, gas, or other substance) to flow out from where it has been confined,' 'to give outlet or vent to,' and '[to] emit.'" *Sweeney v. Cal. Reg'l Water Quality Control Bd.*, 61 Cal. App. 5th 1093, 1120 (2021). Moreover, a discharge is not limited in time or space to its initial emission, but instead, it also encompasses the "continuous and ongoing movement of contamination from a source through the soil and into the groundwater." *Tesoro Ref. & Mktg. Co. LLC v. L.A. Reg'l Water Quality Control Bd.*, 42 Cal. App. 5th 453, 471 (2019); *see also* Cal. Water Code § 13050(e) (defining waters of the state to include both surface water and groundwater). "An actionable discharge, therefore, encompasses not simply the initial episode of contamination, but rather includes the time during which the waste uncontrollably flows or migrates from its source, through the soil, and into and within the groundwater." *Id.* at 472. By way of example, where "a pipeline leak puts forth or emits gasoline into the soil, and that unremediated gasoline waste continues to pour forth or to emit chemicals forming a toxic plume that actively threatens to pollute otherwise uncontaminated groundwater, the term 'discharge' necessarily encompasses this entire period." *Id.* at 473.

There is no real dispute that PCE from the drycleaning operations was discharged into the groundwater. And each of the Defendants is responsible as they allowed PCE to be emitted from the facility whereupon it uncontrollable migrated to soil and groundwater.

### B.     Condition of Pollution or Nuisance

The second element does not require that a defendant's discharge was a "substantial factor" or "but for" cause of any resulting condition of pollution or nuisance. *See Atl. Richfield Co.*, 85 Cal. App. 5th. At 374. All that is required is that the condition results from the combined effect of all defendants' operations; the condition is "the 'aggregate result' of all waste discharges." *Id. (*quoting *Hillman v. Newington* 57 Cal. 56, 59 (1880).)

A condition of pollution means "an alteration of the quality of the waters . . . by waste to a degree which unreasonably affects either . . . [t]he waters for beneficial uses . . . [or] [f]acilities which serve these beneficial uses." Cal. Water Code § 13050(l)(1). A condition of nuisance refers to:

> anything which meets all of the following requirements:
>
> (1) Is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.
>
> (2) Affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.
>
> (3) Occurs during, or as a result of, the treatment or disposal of wastes.

Cal. Water Code § 13050(m). "The first two paragraphs of this definition track relevant portions of the language of Civil Code sections 3479 and 3480, which define nuisance and public nuisance. The third paragraph establishes that the [the statute] regulates only nuisances that are connected with the treatment or disposal of wastes." *City of Modesto Redevelopment Agency*, 119 Cal. App. 4th at 38; *see also Jordan v. City of Santa Barbara*, 46 Cal. App. 4th 1245 (1996) (equating "disposal" with "discharge"). Thus, the Water Code "incorporates the general factual inquiry relating to and defining nuisances, limit[ing] its application to public nuisances." *Beck Dev. Co. v. S. Pac. Transp. Co.,* 44 Cal. App. 4th 1160, 1208 (1996).

As addressed below in Sections IV and V, the discharge of PCE constitutes both a continuing public nuisance and nuisance per se. Accordingly, Plaintiff has met its burden, establishing that each defendant is liable under the Water Code.

## IV.    Summary Judgment is Appropriate for Plaintiff's Fifth Claim for Relief Based on Public Nuisance as Against All Defendants

Defendants' discharge and release of hazardous substances, including but not limited to PCE, constitutes a continuing public nuisance within the meaning of California Civil Code

sections 3479 and 3480. Section 3479 states:

> Anything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any navigable lake, or river, bay, stream, canal, or basin, or any public park, square, street, or highway, is a nuisance.

Cal. Civil Code § 3479. Section 3480 provides:

> A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.

Cal. Civil Code § 3480.

A private party may maintain an action for a public nuisance if it is specially injured. *See* Cal. Civil Code § 3493. Such injury is one that is of a character different in kind from that suffered by the general public. Courts have repeatedly held that where a nuisance impacts a plaintiff's property rights, the nature of the injury is special. *See Lind v. San Luis Obispo*, 109 Cal. 340, 342-44 (1895)*; Birke v. Oakwood Worldwide*, 169 Cal.App.4th 1540, 1550-52 (2009)*; Wade v. Campbell*, 200 Cal.App.2d 54, 57-60 (1962)*; Voorheis v. Tidewater S. R. Co.*, 41 Cal.App. 315, 316-23 (1919)*; McLean v. Llewellyn Iron Works*, 2 Cal.App. 346, 347-49 (1905).

The PCE contamination caused by Defendants' operation of a drycleaning business on the subject site has spread throughout the Site and beyond, thereby posing both a risk to the general public as well as damage to CASA NIDO's property. This contamination has resulted in special injury to the Plaintiff, resulting in the building on the Site being demolished and Plaintiff's use of the premises undeniably affected.

**V.      Summary Judgment is Appropriate for Plaintiff's Sixth Claim for Relief Based on Nuisance Per Se as Against Defendants O'Hanks, Vernell, and Anderson**

Where a statute expressly declares that a particular condition constitutes a public

nuisance, a claim for nuisance per se lies. *See Jones v. Union Pacific Railroad Co.*, 79 Cal.App.4th 1053, 1068 (2000); *Beck Development Co. v. Southern Pacific Transportation Co.*, 44 Cal.App.4th 1160, 1207 (1996). California's Water Code defines nuisance as anything that "(1) is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property. . . . [and] (3) occurs during, or as a result of, the treatment or disposal of wastes." Cal. Water Code § 13050(m). This has been interpreted to mean that water pollution occurring as a result of the discharge of wastes in violation of Water Code section 13000 *et seq*. is a public nuisance per se. *See Jordan v. City of Santa Barbara*, 46 Cal. App. 4th 1245, 1257 (1996); *Newhall Land & Farming Co. v. Superior Court*, 19 Cal. App. 4th 334, 341 (1993).

## VI.    Summary Judgment is Appropriate for Plaintiff's Seventh Claim for Relief Based on Negligence as Against All Defendants

A claim for negligence under California law requires that a plaintiff "must establish four required elements: (1) duty; (2) breach; (3) causation; and (4) damages." *Wells Fargo Bank, N.A. v. Renz*, 795 F. Supp. 2d 898, 924-25 (N.D. Cal. 2011). Plaintiff can establish all four elements in this case.

As regards duty, each defendant owed Plaintiff a duty of care as lessees of the property. "A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties." *The Ratcliff Architects v. Vanir Constr. Mgmt., Inc.*, 88 Cal. App. 4th 595, 604-05 (2001).

Defendants breached the duty of care they owed Plaintiff by contaminating the Site with PCE that leaked into the groundwater and subsurface of the Site. "The general duty of care owed by a landowner in the management of his or her property is attenuated when the premises are let because the landlord is not in possession, and usually lacks the right to control the tenant and the tenant's use of the property." *Chee v. Amanda Goldt Prop. Mgmt.*, 143 Cal. App. 4th 1360, 1369 (2006). O'HANKS has provided a copy of a 1990 lease between Plaintiff

and O'HANKS which mirrors this general duty. *See* Compendium, **Exh. 42**. O'HANKS was responsible for all maintenance and repairs on the premises, including plumbing and heating installations and any other system or equipment upon the premises. *See id.* at p. 2. The lease also provided for indemnification of the owner, holding that CASA NIDO "shall not be liable for any damage or injury to Tenant, or any other person, or to any property, occurring on the premises or any part thereof, and Tenant agrees to indemnify and hold Owner harmless from any claims for damages and in no way accountable no matter how caused." *Id.*

Defendants negligently used their drycleaning equipment and allowed discharges, spills, and leaks of PCE. Defendants' breach of their duty of care caused hazardous substances to contaminate the Site and surrounding property. Furthermore, Defendants breached the duty of care owed by refusing to accept liability and contribute to the abatement and clean up of the Site. O'HANKS, in particular, was made aware of the PCE contamination as early as 2018 but has yet to engage in any actions to minimize harm.

The measures of damages in California for negligence is that amount which will compensate the plaintiff for all detriment sustained as the proximate result of a defendant's wrong, regardless of whether or not such detriment could have been anticipated by the defendant. *See* Civil Code § 3333. As a direct and proximate result of Defendants' breach of their duty of care, Plaintiff has suffered, and will continue to suffer harm because Plaintiff's property had been damaged, Plaintiff has been required to respond to the contamination, and the contamination has interfered with Plaintiff's right to quiet enjoyment of the Site. As a proximate result of Defendants' negligence, Plaintiff has suffered damages, including, but not limited to, damage and harm to Plaintiff's property, response costs incurred and to be incurred in the future to properly respond to the alleged hazardous substance contamination in and around the Site, and related properties.

CASA NIDO PARTNERSHIP'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

**VII.** **Summary Judgment is Appropriate for Plaintiff's Eighth Claim for Relief Based on Negligence Per Se as Against Defendants O'Hanks, Vernell, and Anderson**

To state a cause of action pursuant to the negligence per se doctrine, the plaintiff must show that (1) the defendant violated a statute or regulation, (2) the violation caused the plaintiff's injury, (3) the injury resulted from the kind of injury the statute or regulation was designed to prevent, and (4) the plaintiff was a member of the class of persons it was intended to protect." *Cal. Dep't of Toxic Substances Control v. Payless Cleaners*, 368 F. Supp. 2d 1069, 1083 (E.D. Cal. 2005)

Defendants' conduct has violated 42 U.S.C. § 9607(a); Cal. Health & Saf. Code, §§ 25300, 25363; Cal. Water Code, §§ 13304, 13350; and Cal. Civil Code §§ 3479, 3480. Defendants' violation of these laws caused the environmental damage to the Site. The environmental damage suffered by the Plaintiffs at the Site was the kind of result that these laws were intended to prevent. Plaintiff, as owner of the Site, was a member of the class of persons that these laws were enacted protect. Plaintiff has sustained injury as a result of Defendants' negligent conduct, including but not limited to damage and harm to Plaintiff's property, response costs incurred and to be incurred in the future to properly respond to the alleged hazardous substance contamination in and around the Site, and related properties.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this motion be granted, and that all costs be allocated to Defendants, including past and future costs of cleanup and regulatory compliance, the loss of income since the date the building at the Site was removed and through the date that DTSC issues a No Further Action letter.

DATED: 5/17/24

/s/ *J. Rae Lovko*

Jennifer Rae Lovko
ATTORNEY FOR PLAINTIFF

1    Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained

2  approval, on May 17, 2024, from Rae Lovko for the filing of this declaration.

3

4                                             /s/ *Rachel Doughty*
                                             Rachel S. Doughty

5