1  JAMES L. MINK, State Bar No. 219267
   jmink@wfbm.com
2  WFBM, LLP
   255 California Street, Suite 525
3  San Francisco, California 94111-4928
   Telephone:     (415) 781-7072
4  Facsimile:     (415) 391-6258

5  SAGE R. KNAUFT, State Bar No. 194396
   sknauft@wfbm.com
6  WFBM, LLP
   19900 MacArthur Blvd., Suite 1150
7  Irvine, California 92612-2445
   Telephone:     (714) 634-2522
8  Facsimile:     (714) 634-0686

9  Attorneys for Defendant
   SANDRA K. VERNELL, sued as SANDRA
10 KATE VERNELL (f/k/a SANDRA KATE
   ANDERSON)

11

12                    **UNITED STATES DISTRICT COURT**

13        **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

14

15  CASA NIDO PARTNERSHIP, a California          Case No. 3:20-cv-07923-EMC
    Partnership,
16                                               **DEFENDANT SANDRA KATE**
              Plaintiff,                          **VERNELL'S OPPOSITION TO**
17                                               **PLAINTIFF'S MOTION FOR PARTIAL**
         v.                                      **SUMMARY JUDGMENT**
18
    CATHERINE O'HANKS; JAE KWON aka
19  JAY KWON aka JAY KWON SHIK aka JAY
    SHIK KWON; LYNNE MARIE GARIBOTTI            Date:   August 22, 2024
20  aka LYNNE GARIBOTTI BLOWERS aka            Time:   1:30 p.m.
    LYNNE G. BLOWER, individually, and as
21  Trustee of the Claudio Garibotti Trust, dated
    May 1, 1952; SENTRY INSURANCE
22  COMPANY; SANDRA KATE VERNELL
    (f/k/a SANDRA KATE ANDERSON) and
23  EARL RAY ANDERSON,

24            Defendants.

25  _____

26  AND ALL RELATED COUNTER AND
    CROSS CLAIMS.
27

28

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

**Contents**

Authorities .................................................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 1

I.   Plaintiff's CERCLA Cause of Action Against Vernell Fails ................................................. 1

   A.   Plaintiff Has Not Shown Any Releases by Vernell ...................................................... 1

      1.   Plaintiff Has Not Shown "Occasional" Releases by Vernell ................................ 1

      2.   Plaintiff Has Not Shown Releases by Vernell From Waste Disposal ................... 2

      3.   Plaintiff Has Not Shown "Necessary" Releases by Vernell ................................. 3

   B.   Plaintiff Has Not Ruled Out Vernell's Defenses to Liability. ...................................... 7

   C.   Plaintiff Has Not Shown That its Costs Were Consistent with NCP ............................ 8

   D.   Any Liability of Vernell is Not Joint and Several ....................................................... 9

   E.   Most of Plaintiff's Cost Recovery Claim is Time-Barred ......................................... 10

II.   Plaintiff's HSAA Cause of Action Against Vernell Fails. ................................................. 11

III.   Plaintiff Cannot Recover From Vernell Under the Water Code ........................................ 11

   A.   There is No Private Right of Action Under Water Code Section 13304 ..................... 11

   B.   Plaintiff Has Not Incurred Liability Under Water Code Section 13350 ..................... 12

   C.   Plaintiff Has Not shown any releases by Vernell ...................................................... 13

   D.   Any Water Code Claims Would be Time-Barred ...................................................... 13

IV.   Plaintiff's Public Nuisance Cause of Action Against Vernell Fails .................................. 13

   A.   Plaintiff Has No Evidence of Releases by Vernell .................................................... 13

   B.   Plaintiff Has Not Shown a Nuisance to the Public .................................................... 13

V.   Plaintiff's Nuisance Per Se Cause of Action Against Vernell Fails .................................... 14

VI.   Plaintiff's Negligence Cause of Action Against Vernell Fails ......................................... 15

   A.   The Negligence Cause of Action is Time-barred ...................................................... 15

   B.   Plaintiff Cannot Show any Duty Beyond the Duty of Due Care ................................ 16

   C.   Plaintiff Does Not Show Release or Other Breach Causing its Harm ......................... 16

VII.   Plaintiff's Negligence Per Se Cause of Action Against Vernell Fails ............................. 17

   A.   The Negligence Per Se Cause of Action is Time-barred ........................................... 17

   B.   The Statutes Plaintiff Relies on Are Not Appropriate ............................................... 17

   C.   Plaintiff Has Not Shown Any Releases by Vernell ................................................... 17

CONCLUSION ........................................................................................................................... 17

WALSWORTH

2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL. (415) 781-7072

**Authorities**

**Cases**

*Ascomb Props. Inc. v. Mobil Co.*,
   866 F.2d 1149 (9th Cir. 1989) ............................................................................ 8

*Burlington Northern & Santa Fe Ry. Co. v. U.S.*,
   556 U.S. 599 (2009) ........................................................................................... 9

*Cal. Sansome Co. v. U.S. Gypsum*,
   55 F.3d 1402 (9th Cir. 1995) .......................................................................... 16

*California ex rel. California Dep't of Toxic Substances Control v. Neville Chem. Co.*,
   358 F.3d 661 (9th Cir. 2004) .......................................................................... 10

*CAMSI IV v. Hunter Tech. Corp.*,
   230 Cal. App. 3d 1525 (1991) ........................................................................ 15

*Coeur D'Alene Tribe v. Asarco Inc.*,
   280 F. Supp. 2d 1094 (D. Idaho 2003) ............................................................ 9

*Farmers Ins. Exch. v. Super. Ct.*,
   137 Cal. App. 4th 842 (2006) ........................................................................ 11

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal.4th 797 (2005) ..................................................................................... 16

*Kamb v. U.S. Coast Guard*,
   869 F. Supp. 793 (N.D. Cal. 1994) .................................................................. 9

*Matter of Bell Petroleum Servs., Inc.*,
   3 F.3d 889 (5th Cir. 1993) ................................................................................ 9

*Mendez v. Ishikawajima-Harima Heavy Indus. Co.*,
   52 F.3d 799 (9th Cir. 1995) ............................................................................ 15

*Moradi-Shalal v. Fireman's Fund Ins. Co.*,
   46 Cal. 3d 287 (1988) ..................................................................................... 11

*N. Cnty. Transit Dist. v. Atl. Richfield Co.*, No. 06CV0213 DMS (BLM),
   2006 WL 8455571 (S.D. Cal. Sept. 27, 2006) ............................................... 12

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*,
   70 Cal. App. 4th 55 (1999) ....................................................................... 11, 12

*Wilshire Westwood Assocs. v. Atlantic Richfield Co.*,
   20 Cal. App. 4th 732 (1993) .......................................................................... 15

**Statutes**

42 U.S.C. § 9601 ................................................................................................. 10
42 U.S.C. § 9607 ................................................................................................. 17
42 U.S.C. § 9613 ................................................................................................. 10
Civ. Code § 3479 .......................................................................................... 14, 17
Civ. Code § 3480 .......................................................................................... 14, 17
Code Civ. Proc. § 338 ................................................................................... 13, 15
Health & Safety Code § 25300 ........................................................................... 17
Health & Safety Code § 25363 ........................................................................... 17
Water Code § 13050 ............................................................................................ 14
Water Code § 13304 ............................................................................. 11, 12, 17
Water Code § 13350 ............................................................................. 12, 13, 17
Water Code § 13361 ............................................................................................ 12

**Regulations**

40 C.F.R. § 300.410 .............................................................................................. 8
40 C.F.R. § 300.415 .............................................................................................. 8

WALSWORTH
2955 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

Defendant Sandra Kate Vernell, F/K/A Sandra Kate Anderson ("Vernell") hereby submits her Opposition to Plaintiff Casa Nido Partnership ("Casa Nido"; "Plaintiff")'s Motion for Partial Summary Judgment.

## INTRODUCTION

Plaintiff moves for partial summary judgment against Vernell on a variety of causes of action.  All of them require evidence that, during the less than two years that Vernell operated the dry cleaner at Plaintiff's property (the Site), she caused a discharge or release of PCE that led to Plaintiff's damages.  But the only evidence of discharges that Plaintiff provides relates to Defendant O'Hanks, who operated the dry cleaner for more than 28 years.  The rest of Plaintiff's "evidence" consists of speculation and cannot support its claims.  For this reason, and others detailed below, Plaintiff's Motion should be denied.

## ARGUMENT

### I.     Plaintiff's CERCLA Cause of Action Against Vernell Fails

#### A.     Plaintiff Has Not Shown Any Releases by Vernell

In order to hold Vernell liable for cost recovery under CERCLA, Plaintiff must show that she caused a discharge or release of PCE.  Plaintiff attempts to show both "occasional" releases and releases that "necessarily" must have happened as a result of operation of the dry cleaning equipment and the handling of its waste.  As discussed below, Plaintiff fails to show that any of these occurred while Vernell served as operator.

#### 1.     Plaintiff Has Not Shown "Occasional" Releases by Vernell

Plaintiff claims that PCE could be released or discharged from dry cleaning facilities from four different "business and maintenance" activities.  Plaintiff's Motion (Mot.) at 10:26-11:7.  Plaintiff provides no evidence that the first activity, "overfilling storage tanks" ever occurred at the Site, let alone during the two years that Vernell operated the dry cleaner.  For the second activity, "dropping wet clothes on the floor when transferring from the washer unit to the dryer unit," Plaintiff provides evidence that O'Hanks's late husband did this, but no evidence that Vernell ever did.  Similarly, for the third activity, "solvent spills, leaks from valves, flanges, seals, covers, hoses, and ductwork," Plaintiff provides evidence that one of these, solvent spills (but not

WALSWORTH
2355 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL. (415) 781-7072

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1  any of the others) occurred when O'Hanks's late husband operated the dry cleaner, but no

2  evidence that this occurred when Vernell operated the dry cleaner.  Finally, for the fourth activity,

3  "leaks from storage tanks or other storage containers," Plaintiff provides no evidence that this ever

4  occurred at the Site, let alone when Vernell was operating the dry cleaner.  Thus, Plaintiff cannot

5  show that Vernell caused a discharge or release of PCE based on any of these business and

6  maintenance activities.

7          **2.**        **Plaintiff Has Not Shown Releases by Vernell From Waste Disposal**

8          Plaintiff claims that the disposal of PCE-containing waste product "is a significant source

9  of PCE contamination at drycleaning facilities."  Mot. at 10:15-17.  But Plaintiff has not shown

10  that disposal of waste product led to any discharge or release of PCE at this Site.  The evidence

11  shows that the waste product was collected in a sealed bucket or drum, and was moved to a

12  dumpster for retrieval by a vendor.  Plaintiff's Compendium (Comp.) Exh. 9, Resp. 13; Exh. 30

13  Resp. 6; Vernell Decl. ¶ 13.  Plaintiff provides no evidence that any waste product leaked from the

14  sealed buckets or drums before they were retrieved.  Plaintiff argues that the subsurface PCE

15  contamination found at the Site shows that the contamination resulted from releases near the

16  transfer machines, near sanitary sewer pipes, and "in the rear yard, where PCE waste/muck was

17  stored."  Mot. at 11:8-11, citing Clark-Riddell Decl. at ¶¶ 52-55.  Of the cited paragraphs, only

18  Paragraph 54 deals with the rear yard.  In it, Clark-Riddell writes that high concentrations of PCE

19  were found immediately beneath the yard, "where it appears drums of PCE waste water or other

20  PCE-bearing equipment and supplies were stored."  Notably, Clark-Riddell does not write that

21  PCE waste/muck was stored in the back yard.  Nor could he, given that the only evidence of where

22  it was kept before pickup shows that it was kept in a dumpster.  Comp. Exh. 9, Resp. 13; Vernell

23  Decl. Exh. 13.  Plaintiff provides no evidence that the dry cleaner kept a dumpster in the unpaved,

24  fenced-off back yard, rather than in a paved parking area where waste could be retrieved by a

25  vendor.  In any event, Clark Riddell cites no evidence in support of his conclusion that drums of

26  PCE waste water "appear" to have been stored in the back yard.  Plaintiff cannot rely on its

27  expert's speculation that PCE waste water was apparently stored in the back yard to prove

28  anything about Vernell's placement of sealed buckets of waste/muck into a dumpster for retrieval.

1  Thus, Plaintiff cannot show that Vernell caused a discharge or release of PCE based on her

2  handling of the waste product.

3       Nor has Plaintiff established that the waste product contained a significant percentage of

4  PCE, something it apparently believes will help it to show that the "muck" as Plaintiff calls it was

5  likely to account for contamination at the Site.  Plaintiff claims that the waste product—

6  generally—could be "as high as 56% by weight," citing the Clark-Riddell Declaration at ¶ 23.

7  That paragraph, in turn, cites Compendium Exhibit 26 at page 14.  The citation for the 56% figure

8  in that Exhibit is to a report entitled "Hazardous Waste Management Practices of the Ontario Dry

9  Cleaning Industry," a December 1990 report by Beak Consultants Limited.  That report, attached

10  to the Declaration of James Mink filed herewith ("Mink Decl.") as **Exhibit A**, concluded that

11  "there can be large variability in the values of perchloroethylene found in sludges and filter

12  muck," with the values in filter muck ranging from 2.1% up to 56.0%.  *Id.* at p. 5.6.  In a table on

13  the following page, the report distinguished between the percentages found in three types of dry

14  cleaning equipment: "hot," "refrigerated," and "transfer."  The filter muck from transfer

15  machines—the type used at the Site—had the lowest percentage of PCE, at 2.1% by weight.

16  Notably, this is less than the amount that Plaintiff claims is present in clothes after they are

17  removed from the dryer.  *See* Mot. at 9:25-10:2.  This is consistent with O'Hanks's response to

18  Special Interrogatory No. 18, which provided that the filter separated the filter muck from the

19  PCE, and the muck then consisted of "filter powder and gunk from the cleaned clothes."  Comp.

20  Exh. 4, Resp. 18.

21       **3.      Plaintiff Has Not Shown "Necessary" Releases by Vernell**

22       Nor has Plaintiff established that its response costs were caused by contamination that

23  necessarily occurred during operation of the dry cleaning equipment at the Site "during each year

24  from 1960 through 1990."  Mot. at 11:14-15.  Plaintiff cites five types of release and discharge of

25  PCE that it claims "necessarily" happen during operation of so-called "first generation machines."

26  Mot. at 9:21-10:2, citing Clark-Riddell Decl. ¶ 21.  But four of these result only in evaporation of

27  PCE into the air.  Even assuming that such evaporation meets the definition of release or

28  discharge, however, Plaintiff has not shown that it has incurred any response costs based on

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1   releases into the air.  Rather, Plaintiff's response costs have purportedly been based on alleged

2   releases into soil and/or groundwater.  Plaintiff has not provided any evidence or opinion that

3   evaporated PCE from the air led to the soil and groundwater contamination on which its claims are

4   based.  Thus, Plaintiff cannot rely on evaporation that it claims necessarily occurred during

5   operation to support its CERCLA claim.

6         The remaining type of release that Plaintiff claims necessarily occurred during operation of

7   first generation machines is from "contact water," which Plaintiff describes as "any water that has

8   come into contact with drycleaning solvents or drycleaning solvent vapors."  Plaintiff provides no

9   evidence that the machines actually used at the Site involved or produced contact water.  Plaintiff

10   merely discusses "[o]ne type of contact water," the water "recovered after a drycleaning cycle has

11   completed."  Mot. at 10:20-21.  Plaintiff claims, quoting an article quoted by its expert, that

12   "recovered water was 'generally routed to a five-gallon plastic bucket…[and was] saturated with

13   respect to solvent."  Mot. at 10:21-22, citing Clark-Riddell Decl. ¶24, which quotes Compendium

14   Exh. 26, p. 12.  But an expert witness cannot merely be a conduit for hearsay.  *Williams v. Illinois*,

15   567 U.S. 50, 79-81 (2012).  Plaintiff's expert does not claim to have observed contact water being

16   routed to a bucket at any dry cleaning site; he merely quotes someone who did.  Plaintiff then

17   speculates that a bucket in a photograph from the Site "appears to be the receptacle for the contact

18   water issued from the drycleaning equipment's vapor reclaimer and separator."  Mot. at 10:22-25,

19   citing Clark-Riddell Decl. at ¶ 15.  But Plaintiff has not established that the drycleaning equipment

20   at the Site had either a "vapor reclaimer" or a "separator," or that it produced or used contact

21   water.  The comparison of the image (a bucket) with the description in an article (a five-gallon

22   plastic bucket) is not based on Clark-Riddell's training, experience, or expertise; it is mere

23   speculation.  Moreover, even if Plaintiff had shown that contact water was collected at the Site in a

24   plastic bucket at some point, it has not shown that this occurred during Vernell's period of

25   operation.  Nor has Plaintiff shown that discharging contact water into a bucket would have led to

26   a release into soil or groundwater.  Presumably a release would have required the contact water to

27   spill out of the bucket, something for which Plaintiff has presented no evidence.

28         Later in the brief, Plaintiff repeats the general claim that, as a result of each Defendant's

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

WALSWORTH

2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111

TEL. (415) 781-7072

1  operations, disposal of PCE occurred at the Site, followed by a string citation to six discovery

2  responses, two pleadings in this action, two paragraphs of the Vernell Declaration, and ***twenty-five***

3  ***paragraphs*** of the Clarke-Riddell Declaration.  Mot. at 15:1-7.  But none of these citations

4  provide evidence showing that Vernell's operation resulted in a discharge or release of PCE at the

5  Site.

6  The O'Hanks discovery responses cited by Plaintiff provide that the dry cleaner used

7  transfer machines, and describe how filter muck was separated from PCE and then stored in sealed

8  drums for retrieval.  Comp. Exh. 4, Resps. 18, 25.  The Vernell discovery responses cited by

9  Plaintiff provide that the dry cleaning equipment was comprised of a separate washer and dryer,

10  used PCE, generated filter muck, and wasn't replaced while she worked at the Site.  Comp. Exh. 9,

11  Resps 9-10, 18, 22.  The O'Hanks responses to DTSC's questions cited by Plaintiff provide the

12  dates of O'Hanks's leasing of the property, the dates of her operation of the dry cleaners, that the

13  equipment was not changed from 1960 to 1990, that the Site had a holding tank for liquid PCE

14  (which an attached diagram shows was within the building), and provides a similar description of

15  the separation, composition, and storage of filter muck in a sealed drum.  Comp. Exh. 30, Resps.

16  1-4, 6.  The cited page of the DTSC Order provides the approximate dates of operation by

17  O'Hanks, Anderson, and Vernell (listing the Vernell period as "approximately 1978 to 1980").

18  Comp. Exh. 37, p. 2.  The cited paragraphs of the O'Hanks Answer state only that the dry cleaning

19  equipment at the Site used PCE.  ECF 150 at ¶¶ 17, 19.  The cited paragraphs of the Anderson-

20  Vernell Answer state that Anderson and Vernell operated the dry cleaner, using PCE, from

21  approximately 1978 to 1980, while they were married, and denies that they "released hazardous

22  substances into the environment."  ECF 177 at ¶¶ 18, 22.  In the cited paragraphs of the Vernell

23  Declaration, she describes the periods when she and Anderson operated the dry cleaner, which

24  amounted to a total of approximately 20.5 to 22.5 months, and states that PCE was used by the dry

25  cleaning equipment.  Vernell Decl. ¶¶ 6-7.  Simply put, none of these documents provide evidence

26  that Vernell caused a discharge or release of PCE at the Site.

27  Nor do any of the twenty-five cited paragraphs of the Clark-Riddell Declaration provide

28  evidence that Vernell's operation of the dry cleaning equipment at the Site cause a discharge or

-5-

Case No. 3:20-cv-07923-EMC

1   release of PCE at the Site.  Paragraphs 38-47 recite the investigation and cleanup activities that

2   have been performed at the Site.  In Paragraph 48, Plaintiff's expert recites four facts taken from

3   the Vernell Declaration: the PCE delivery method and schedule; the generation, collection, and

4   retrieval of muck from a dumpster; Mr. O'Hanks's use of rags to wipe up spilled PCE from May

5   1976 through September 1976; and Mr. O'Hanks's accidental dropping of wet clothes during this

6   same period.  Paragraph 49 concerns the amount of PCE O'Hanks used in 1984.  Paragraph 50

7   consists of an opinion that PCE was used at the Site 1960-1990.  Paragraph 51 is an opinion that

8   the "risk of PCE spills, leaks, and accidental and sudden releases at the Site" was "significant"

9   during the 1960s-1980s.  Paragraph 52 provides an opinion that, based on the 2014 subsurface

10  investigation, PCE releases occurred (at some point) near the dry cleaning equipment and

11  penetrated the concrete floor.  Paragraph 53 provides a general opinion that PCE readily moves

12  through concrete.

13         In Paragraph 54, Plaintiff's expert provides reasons why Pangea concluded that the

14  subsurface contamination at the Site came from drycleaning operations.  This includes the

15  unsupported conclusion that "PCE was necessarily discharged and released during the use of

16  transfer machines," and the statement, discussed above, that it "appears" that drums of PCE

17  wastewater or other PCE-bearing equipment and supplies were stored on the "unpaved/earthen

18  area" behind the building—speculation for which neither he nor Plaintiff cite any evidence.

19  Paragraph 55 describes test results and includes an opinion that PCE releases occurred near the dry

20  cleaning equipment, the storage area, and the sanitary sewer.  Paragraph 56 describes subsequent

21  test results, and includes an opinion that PCE releases likely occurred outside the rear door, near

22  the toilet/sink, from the sanitary sewer piping near the rear door, near the dry cleaning equipment,

23  and possibly near the storage area.  Paragraph 57 describes additional testing, and concludes that

24  the results are consistent with PCE releases near the dry cleaning equipment, outside the service

25  door in the rear yard, and possibly from the sanitary sewer.  Paragraph 58 provides Plaintiff's

26  expert's opinion that discharges and releases of PCE "necessarily occurred during each year from

27  1960 through 1990," as a result of transfer machine operation, waste handling, periodic or ongoing

28  spills and leaks, and one or more sudden and accidental releases.  Finally, in Paragraphs 59-62,

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL. (415) 781-7072

1  Plaintiff's expert opines that, based on the extent of the groundwater plume and the estimated

2  speed of groundwater movement, PCE releases at the Site began in the 1960s.

3      Plaintiff's expert has relied on evidence that there is PCE contamination at the Site, that

4  the spread of the contamination suggests that releases of PCE took place while Mr. O'Hanks

5  operated the site (long before Vernell started operation in 1978), that there were spills of PCE onto

6  the concrete floor while Mr. O'Hanks operated the dry cleaning equipment, and that Mr. O'Hanks

7  dropped wet clothes onto the concrete floor while transferring them from the washer to the dryer.

8  O'Hanks's decades of operation of the dry cleaner could easily account for the contamination he

9  describes.  He has not opined that the groundwater data show releases during the 1978-1980

10  timeframe, that any spills occurred during Vernell's operation, or that she ever dropped wet

11  clothes onto the floor.  Thus, the only material in the 25 paragraphs that could possibly relate to

12  Vernell is the unsupported conclusion that ordinary operation of the transfer machines, without

13  mistakes or accidents, necessarily resulted in discharges or releases.  Because, as discussed above,

14  this conclusion is unsupported by evidence, Plaintiff cannot rely on the Clark-Riddell Declaration

15  to establish that Vernell caused a discharge or release of PCE.

16      Plaintiff's cited evidence does not show that Vernell caused a discharge or release of PCE

17  at the Site.  Even if Plaintiff had cited such evidence, it attaches to its Motion evidence sufficient

18  to create a dispute of material fact.  *See* Comp. Exh. 9, Resps. 14-15 (Vernell's sworn

19  interrogatory responses, stating that, during the period Vernell operated the dry-cleaning facility,

20  there were no discharges or releases of PCE).  Thus, Plaintiff cannot rely on Vernell's mere

21  operation of the Site for between 20.5 and 22.5 months to show that she caused a discharge or

22  release of PCE at the Site.

23      **B.      Plaintiff Has Not Ruled Out Vernell's Defenses to Liability.**

24      Plaintiff claims that Vernell failed to identify any facts, witnesses, or documents to support

25  her defense that Plaintiff's injuries or damages, if any, were caused solely by the faults of third

26  parties for which she is not responsible.  Mot. at 12:1-14; 19:18-20:12.  But the discovery

27  responses Plaintiff cites show that this is untrue.  Vernell's response to Interrogatory No. 6 (in

28  Comp. Exh. 9) identified the other operator defendants as the cause of Plaintiff's alleged damages.

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL. (415) 781-7072

1    Vernell's response to Interrogatory No. 7 (in Comp. Exh. 9) identified the other parties to the

2    litigation as witnesses with information in support of the defense.  Finally, Vernell's response to

3    Request for Production No. 17 (in Comp. Exh. 11) identified documents regarding the

4    investigation of the Site.  Because Plaintiff has not established that Vernell cannot support her

5    affirmative defense, summary judgment is inappropriate.

6         **C.    Plaintiff Has Not Shown That its Costs Were Consistent with NCP**

7         Plaintiff has the burden of proving that its response costs were necessary and consistent

8    with the National Contingency Plan (NCP).  *Ascomb Props. Inc. v. Mobil Co.*, 866 F.2d 1149,

9    1154 (9th Cir. 1989).  Plaintiff notes that it only needs to show "substantial compliance" with the

10   NCP requirements, rather than "[p]erfect compliance."  Mot. at 17:6-10.  But Plaintiff makes no

11   effort to show that it complied *at all* with the NCP, let alone *substantially*.

12        *First*, for a removal action, a plaintiff must conduct a site evaluation, including a removal

13   preliminary assessment, which must be documented.  40 C.F.R. § 300.410(a).  Plaintiff does not

14   argue, let alone show, that it conducted a site evaluation.  The available evidence suggests that

15   Plaintiff did not do so.  *See* DTSC Letter to Casa Nido, Oct. 8, 2020, **Mink Decl. Exh. B** at p. 4

16   ("A Preliminary Endangerment Assessment (PEA) has not been completed for the Site[.]")

17   *Second*, a plaintiff must conduct an engineering evaluation/cost analysis (EE/CA) of removal

18   alternatives for the site.  40 C.F.R. § 300.415(b)(4)(i).  Plaintiff makes no mention of having

19   conducted an EE/CA.  *Third*, a plaintiff must designate a spokesperson to inform the community

20   of actions taken, respond to inquiries, and provide information concerning the hazardous substance

21   release; conduct interviews with local officials, community residents, public interest groups, or

22   other interested or affected parties to solicit their concerns; prepare a formal community relations

23   plan based on the interviews; and establish a local information repository at or near the location of

24   the response action.  40 C.F.R. § 300.415(n).  Plaintiff makes no attempt to show that it performed

25   any of these public involvement requirements, let alone that it did so before it commenced its

26   removal actions.

27        Finally, although Plaintiff notes in its Motion that it can only recover costs for a

28   "CERCLA-quality cleanup," it makes no effort to show that it met this standard.  The evidence

WALSWORTH

2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1   suggests that Plaintiff did not do so.  At a meeting on November 19, 2020, DTSC Project Manager

2   Ian Utz told Casa Nido that the cleanup work so far had not followed federal law, and that DTSC

3   could not determine whether the work was completed in compliance with the NCP.  *See* DTSC

4   Teleconference Meeting Minutes November 19, 2020, **Mink Decl. Exh. C** at p. 2.

5         **D.**      **Any Liability of Vernell is Not Joint and Several**

6         Contrary to Plaintiff's assertion, CERCLA liability is not joint and several where the harm

7   is "divisible."  *Burlington Northern & Santa Fe Ry. Co. v. U.S.*, 556 U.S. 599, 613 (2009).  The

8   "universal starting point for divisibility of harm analyses in CERCLA cases is § 433A of the

9   Restatement (Second) of Torts."  *Id.* at 614.  Under the Restatement, apportionment is proper

10  when "there is a reasonable basis for determining the contribution of each cause to a single harm."

11  *Id.* at 614, quoting Restatement (Second) of Torts §433A(1)(b), p. 434 (1963–1964).  The official

12  comments to Restatement section 433A point to successive operations over time as a paradigm

13  example of divisibility:  "c. Successive injuries. The harm inflicted may be conveniently severable

14  in point of time. Thus if two defendants, independently operating the same plant, pollute a stream

15  over successive periods, it is clear that each has caused a separate amount of harm, limited in time,

16  and that neither has any responsibility for the harm caused by the other."

17        Applying this approach, courts have held that CERCLA liability was divisible where

18  multiple defendants used the same chemical in similar operations at mutually exclusive times.  In

19  *Matter of Bell Petroleum Servs., Inc.*, 3 F.3d 889, 903 (5th Cir. 1993), for example, the court

20  reversed a finding that damages were joint and several where one chemical caused contamination

21  as a result of similar operations by three parties who operated at mutually exclusive times.  *See*

22  *also Kamb v. U.S. Coast Guard*, 869 F. Supp. 793, 799 (N.D. Cal. 1994) (rejecting joint and

23  several liability where there was a reasonable basis for apportioning liability based on (1) the

24  volume of contaminant each party contributed to the site and (2) the divisibility of the site into two

25  discrete sections); *Coeur D'Alene Tribe v. Asarco Inc.*, 280 F. Supp. 2d 1094, 1120 (D. Idaho

26  2003), *modified in part sub nom. United States v. Asarco Inc.*, 471 F. Supp. 2d 1063 (D. Idaho

27  2005) (CERCLA liability was several only with respect to multiple defendants based on times of

28  operation; "there is a reasonable relationship between the waste volume, the release of hazardous

1  substances and the harm at the site.").  Here, it is undisputed that, except for the 20.5 to 22.5

2  months that Vernell and Anderson operated the dry cleaner, O'Hanks operated it for the entire

3  period from 1960 to 1990, for a total of 337.5 to 339.5 months.  This independent operation of the

4  same plant over successive periods provides a reasonable basis for determining the contribution of

5  each to the alleged pollution.  In other words, if Plaintiff could show that Vernell (or Anderson)

6  contributed at all to the contamination at the Site, they would only be liable to Plaintiff for their

7  proportionate share, based on the proportion of time they operated the dry cleaner.

8        **E.**      **Most of Plaintiff's Cost Recovery Claim is Time-Barred**

9        An action for cost recovery under CERCLA must be brought within three years of

10  completion of a removal action (42 U.S.C. § 9613(g)(2)(A)), or within six years of the initiation of

11  physical on-site construction of a remedial action.  42 U.S.C. § 9613(g)(2)(B).  In order to

12  determine which limitations period applies, a court must determine whether the actions for which

13  the plaintiff seeks to recover costs constituted removal actions or remedial action.  "Remedial

14  action" is defined, in relevant part, as "those actions consistent with permanent remedy taken

15  instead of or in addition to removal actions in the event of a release or threatened release of a

16  hazardous substance into the environment[.]"  42 U.S.C. § 9601(24).  According to the Ninth

17  Circuit, in order "[f]or an action to be 'consistent with permanent remedy,' a permanent remedy

18  must already have been adopted."  *California ex rel. California Dep't of Toxic Substances Control*

19  *v. Neville Chem. Co.*, 358 F.3d 661, 667 (9th Cir. 2004).  This adoption takes place with final

20  approval of a Remedial Action Plan (RAP).  *Id.*; *see also* 42 U.S.C. sec. 9617(b) (requiring public

21  notice of the final RAP "before commencement of any remedial action").  Costs that are "incurred

22  before the remedial action plan was finally designated" constitute "removal" costs.  *Neville*, 358

23  F.3d 670 n.6.

24        Here, Plaintiff has not alleged that it has adopted a RAP.  Accordingly, it has not

25  sufficiently pled that it has properly initiated remedial action, and thus all of its costs constitute

26  removal costs, and are subject to a the three-year limitations period that runs from completion of a

27  removal action.

28        The two major interventions that Plaintiff cites in its Motion were both completed more

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

than three years before Plaintiff sued Vernell.  According to Plaintiff, in October 2018, its contractor removed 454 cubic yards of soil from the Site. Mot. at 6:8-10; *see also* Comp. Exh. 33, at p. 289 (excavation completed and submitted with Pangea invoice dated Nov. 27, 2018). According to the Declaration of Marsha Conwill, Plaintiff incurred the costs for the "final installation of SSD/SVE system" on December 19, 2019.  ECF 234-3, p. 7.  Thus, Plaintiff cannot recover for these removal actions from Vernell.  All told, $518,834.18 of the $996,208.03 in Pangea costs were incurred before December 22, 2019 (three years before Plaintiff sued Vernell). $24,142.65 of the DTSC oversight costs, and $3,870.52 of PG&E costs were incurred before that date, for a total of $546,847.35, all of which is time-barred as against Vernell.

## II.     Plaintiff's HSAA Cause of Action Against Vernell Fails

As Plaintiff concedes, the elements of a cost recovery cause of action under the Hazardous Substance Account Act (HSAA) are the same as those under CERCLA.  Plaintiff's HSAA cause of action against Vernell fails for the same reason as its CERCLA cause of action, for the reasons described above.

## III.    Plaintiff Cannot Recover From Vernell Under the Water Code

### A.     There is No Private Right of Action Under Water Code Section 13304

Under California law, "[a]doption of a regulatory statute does not automatically create a private right to sue for damages resulting from violations of the statute. Such a private right of action exists only if the language of the statute or its legislative history clearly indicates the Legislature intended to create such a right to sue for damages."  *Vikco Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999).  Moreover, when the Legislature intends to create a private right of action, it will do so "directly" and "in clear, understandable, unmistakable terms." *Id.* at 62-63 (*quoting Moradi-Shalal v. Fireman's Fund Ins. Co.*, 46 Cal. 3d 287, 294-295 (1988)). In addition, when a regulatory statute provides for enforcement by an administrative agency, California courts generally conclude that the Legislature intended the administrative remedy to be exclusive, unless the statutory language or legislative history clearly indicates otherwise.  *See id.* at 66; *see also Farmers Ins. Exch. v. Super. Ct.*, 137 Cal. App. 4th 842, 850 (2006).

Nothing in Water Code section 13304 allows or authorizes a private cause of action by any

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1   party other than the Regional Water Quality Control Board (Regional Board) or cooperating

2   government agency to recover cleanup or remediation costs from another person or entity.  Thus,

3   section 13304 does not contain any "direct" or "clear, understandable, unmistakable terms"

4   creating a private right of action.  *Vikco*, 70 Cal. App. 4th at 62.  The section instead vests

5   enforcement authority in the Water Board to issue clean-up orders (subdivision (a)), perform the

6   clean-up itself or with another governmental agency (subdivision (b)), and recover its reasonable

7   costs from the dischargers of the waste (subdivision (c)).  There does not appear to be any

8   legislative history suggesting that a private right of action was intended.  To the contrary, section

9   13304 is part of Chapter 5, Article 1 of the Porter-Cologne Water Quality Control Act (Porter-

10  Cologne Act), which is entitled "Administrative Enforcement and Remedies by Regional Boards."

11  Thus, section 13304 does not provide a private right of action.  *See id.*; *see also Farmers*, 137 Cal.

12  App. 4th at 850; *N. Cnty. Transit Dist. v. Atl. Richfield Co.*, No. 06CV0213 DMS (BLM), 2006

13  WL 8455571, at *5–6 (S.D. Cal. Sept. 27, 2006) (concluding that section 13304 does not provide

14  a private right of action).

**B.      Plaintiff Has Not Incurred Liability Under Water Code Section 13350**

16          Plaintiff cannot recover from Vernell under Water Code section§ 13350, because it has not

17  incurred liability under that section.  Plaintiff's cause of action relies on Water Code section

18  13350(i), which provides an action for contribution by "[a] person who incurs any liability

19  established under this section[.]"  The contribution action is not to recover any amounts *spent*, but

20  only to recover amounts *imposed as liability* under the section.  Liability under section 13350 can

21  happen in one of two ways:  the State Water Board or a Regional Board can administratively

22  impose civil liability (subd. (e)); or the Attorney General can petition the superior court to impose

23  civil liability (subd. (g)).  This limitation is confirmed by subdivision (h), which provides that

24  proceedings to impose, assess, and recover liability under the section are governed by Article 3

25  (judicial review and enforcement of agency orders) and Article 6 (review of enforcement actions

26  brought by the Attorney General); *see also* Water Code § 13361(a) ( "Every civil action brought

27  under the provisions of this division at the request of a regional board or the state board shall be

28  brought by the Attorney General in the name of the people of the State of California ....").  Only a

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1   person who has incurred liability in one of these fashions is entitled to bring an action for

2   contribution.  Water Code § 13350(i).  Plaintiff does not allege that any liability has been imposed

3   on it pursuant to section 13350, let alone by order of the State Water Board or a Regional Board,

4   or in a lawsuit brought by the Attorney General.  Thus, Plaintiff cannot bring a cause of action

5   against Vernell based on section 13350.

6          **C.      Plaintiff Has Not shown any releases by Vernell**

7          Even if there were a right to private action under the Water Code, Plaintiff's cause of

8   action would fail for lack of proof of contamination by Vernell.  Plaintiff claims that there is "no

9   real dispute" that each Defendant allowed PCE to be "emitted from the facility whereupon it

10  uncontrollabl[y] migrated to soil and groundwater."  Mot. at 22:18-20.  But as discussed above,

11  Plaintiff has not provided any evidence that Vernell caused any PCE to be discharged or released,

12  and cannot obtain summary judgment on its Water Code claims.

13         **D.      Any Water Code Claims Would be Time-Barred**

14         Finally, even if Plaintiff could bring a cause of action under the Water Code sections it

15  cites, such a claim would be time-barred.  The three-year limitations period for any cause of action

16  under the Porter-Cologne Act begins to run upon "the discovery by the State Water Resources

17  Control Board or a regional water quality control board of the facts constituting grounds for

18  commencing actions under their jurisdiction."  Code Civ. Proc. § 338(i).  Plaintiff submitted an

19  application for agency oversight to the Regional Water Board in August 2016, more than six years

20  before it sued Vernell in December 2022.  *See* ECF 147 (TAC, filed Dec. 16, 2022).

21  **IV.    Plaintiff's Public Nuisance Cause of Action Against Vernell Fails**

22         **A.      Plaintiff Has No Evidence of Releases by Vernell**

23         Plaintiff's public nuisance cause of action against Vernell fails because, as discussed

24  above, Plaintiff has not shown that Vernell caused any contamination.

25         **B.      Plaintiff Has Not Shown a Nuisance to the Public**

26         Plaintiff's continuing public nuisance claim also fails because it has not shown an impact

27  on the public.  The TAC provides only conclusory language, that the alleged discharge and release

28  of PCE "constitutes a continuing public nuisance within the meaning of California Civil Code,

WALSWORTH

2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL. (415) 781-7072

1   sections 3479 and 3480," and that, on information and belief, the alleged pollution is "injurious to

2   public health."  Plaintiff's Motion adds only that the contamination has allegedly spread

3   "throughout the Site and beyond, thereby posing both a risk to the general public as well as

4   damage to CASA NIDO's property."  Mot. at 24:19-22.  But Plaintiff has not provided any

5   evidence of injury to public health, and a "risk to the general public" from the presence of

6   contamination beyond the Site—even if Plaintiff provided evidence of this, which it does not—

7   does not meet the standard for public nuisance set forth in the statutes.

8        A public nuisance is one that affects "an entire community or neighborhood, or any

9   considerable number of persons[.]"  Civ. Code § 3480.  To prove a public nuisance then, Plaintiff

10  must show, at a minimum, that a considerable number of people are impacted by something that

11  either (1) is injurious to their health, or (2) is indecent or offensive to their senses, or (3) is an

12  obstruction of their free use of property, so as to interfere with the comfortable enjoyment of their

13  lives or property, or (4) unlawfully obstructs their free passage or use, in the customary manner, of

14  any navigable lake, or river, bay, canal, or basin, or any public park, square, street, or highway.

15  Civ. Code § 3479.  Plaintiff makes no attempt to satisfy this standard, instead focusing exclusively

16  on the way that the contamination has affected its use of the Site.  Plaintiff notes that the off-Site

17  contamination is in groundwater, but Plaintiff has not shown that anyone else has ever had contact

18  with or exposure to that groundwater, let alone on a continuing basis.  Without evidence that

19  anyone else is exposed to the groundwater, Plaintiff cannot establish that anyone else has had their

20  health injured, their senses offended, their free use of property obstructed, or their free passage

21  obstructed, let alone the entire community, the entire neighborhood, or a considerable number of

22  people.

23  **V.   Plaintiff's Nuisance Per Se Cause of Action Against Vernell Fails**

24       Plaintiff's cause of action for nuisance per se is based on Water Code section §13050(m),

25  which defines as a public nuisance pollution that occurs as a result of discharges of wastes in

26  violation of Water Code section 13000 *et seq*.  Mot. at 25:3-10.  As discussed above, however,

27  Plaintiff has not shown that Vernell caused any discharges of wastes.  Moreover, as discussed

28  above, Plaintiff's cause of action under the Water Code is untimely.  Plaintiff cannot revive its

1  time-barred cause of action under the Water Code by wrapping it in a cause of action for nuisance

2  per se.

3  **VI.   Plaintiff's Negligence Cause of Action Against Vernell Fails**

4      **A.   The Negligence Cause of Action is Time-barred**

5        Plaintiff's negligence cause of action against Vernell is barred by the applicable statute of

6  limitations.  Federal courts analyzing a slate law claim must apply the applicable statute of

7  limitations under that state's substantive law.  *See Mendez v. Ishikawajima-Harima Heavy Indus.*

8  *Co.*, 52 F.3d 799, 800 (9th Cir. 1995).  California's statute of limitations for actions for injury to

9  real property is three years.  Code Civ. Proc. § 338(b).  In addition, California case law holds that

10  a tort cause of action accrues upon the occurrence of the last element essential to the cause of

11  action, even if the plaintiff is unaware of its cause of action.  *Wilshire Westwood Assocs. v.*

12  *Atlantic Richfield Co.*, 20 Cal. App. 4th 732, 739 (1993).

13        Here, the limitations period would have begun to run at the time of Vernell's operation of

14  the dry cleaner in 1978-1980, more than 40 years ago.  *See* TAC ¶ 92 (alleging that Defendants

15  owed a duty of care as purported lessees of the property, and breached that duty by "negligently

16  us[ing] its dry-cleaning equipment to safely store and dispose of PCEs").  Plaintiff's purported

17  harm, the alleged property damage, would have occurred during this period of operation as well.[1]

18  Consequently, the statute of limitations would have begun to run more than four decades ago.

19  Plaintiff concedes that Vernell's activities at the Site ceased in 1980.  Mot. at 4:13-16.  *See CAMSI*

20  *IV v. Hunter Tech. Corp.*, 230 Cal. App. 3d 1525, 1534-1535 (1991) (three-year limitations period

21  commenced when defendant's operations—and thus its alleged improper discharge of hazardous

22  materials—ceased, and that limitations period expired three years later).  The statute of limitations

23  for Plaintiff's negligence claim thus ran in the 1980s, long before Plaintiff sued Vernell in 2022.

24  ECF 147 (TAC, filed Dec. 16, 2022).

25        Vernell anticipates that Plaintiff may seek to invoke the discovery rule to render timely its

26

27  [1] The fact that some of Plaintiff's harm, such as its response costs, happened later does not affect
this analysis.  Even if it did, Plaintiff alleges it began to incur response costs in 2014, eight years

28  before it sued Vernell.

WALSWORTH
2555 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1   negligence cause of action against her.  But the discovery rule is unavailable here, because

2   Plaintiff failed to plead any facts in support of its application.  California law provides that, in

3   order to invoke the benefit of the discovery rule, a plaintiff "must plead facts to show his or her

4   inability to have discovered the necessary information earlier despite reasonable diligence."  *Fox*

5   *v. Ethicon Endo-Surgery, Inc.*, 35 Cal.4th 797, 815 (2005).  This requirement applies to cases

6   heard in federal court as well; the Ninth Circuit has unequivocally held that in order to rely on a

7   defense to a statute of limitations challenge provided by state law, a plaintiff must meet the

8   pleading requirements of that state law.  *Cal. Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1407

9   (9th Cir. 1995).  Accordingly, Plaintiff cannot rely upon the discovery rule to save its untimely

10  negligence cause of action.

11      **B.      Plaintiff Cannot Show any Duty Beyond the Duty of Due Care**

12          Plaintiff argues that "each defendant owed Plaintiff a duty of care as lessees of the

13  property."  Mot. at 25:17.  But Plaintiff provides no evidence that Vernell was ever a lessee of the

14  property.  The lease it quotes is a 1990 lease between Plaintiff and O'Hanks, and has no bearing

15  on any contractual or leasehold duty owed by Vernell.  Mot. at 26:1-7.  Moreover, this means that

16  Plaintiff's claim of breach for refusing to accept liability and contribution does not apply to

17  Vernell (not that it could apply, given that Plaintiff does not contend that it notified Vernell of its

18  claims before suing her).  In the absence of any contractual or leasehold duty, the only duty

19  Vernell would have owed Plaintiff would be the general duty of due care.

20          Plaintiff fails to establish what a reasonable person would have done in Vernell's position

21  as an operator of a dry cleaning facility in 1978-1980, or that Vernell failed to comport with such

22  reasonable behavior.  Thus, Plaintiff has not established that Vernell breached the duty of due

23  care.

24      **C.      Plaintiff Does Not Show Release or Other Breach Causing its Harm**

25          Finally, Plaintiff has not established causation—that Vernell's conduct led to its claimed

26  damages—given that Plaintiff has not shown that Vernell was responsible for any releases of

27  contaminants at the Site.

28

**VII.    Plaintiff's Negligence Per Se Cause of Action Against Vernell Fails**

    **A.    The Negligence Per Se Cause of Action is Time-barred**

As discussed above, Plaintiff's negligence causes of action against Vernell are time-barred.

    **B.    The Statutes Plaintiff Relies on Are Not Appropriate**

None of the statutes Plaintiff cites can serve as a basis for its claim of negligence per se in this action.  Health & Safety Code section 25300 merely provides the title for the HSAA; it cannot be "violated."  Health & Safety Code section § 25363 and 42 U.S.C. section 9607(a) provide a plaintiff with a cause of action for cost recovery, but they are not statutes that can be "violated" by a defendant.  Moreover, as discussed above, Plaintiff's cost-recovery causes of action are time-barred.  Likewise, Plaintiff's claims that Vernell violated Water Code sections 13304 and 13350 are time-barred, as discussed above.  This leaves only Civil Code sections 3479 and 3480.  A cause of action for negligence per se based solely on these statutes would be duplicative of Plaintiff's cause of action for public nuisance, which in any event would fail for the reasons discussed above.

    **C.    Plaintiff Has Not Shown Any Releases by Vernell**

Even if Plaintiff could get around the time bar, and had found a proper statute to serve as a basis for its negligence per se cause of action, the cause of action would fail because, as discussed above, Plaintiff has not shown that Vernell caused any of the alleged contamination or property damage.  Accordingly, Plaintiff's motion for partial summary judgment must be denied with respect to the negligence per se cause of action.

**CONCLUSION**

For the foregoing reasons, Defendant Sandra Vernell respectfully requests that the Court deny Plaintiff's Motion for Partial Summary Judgment against her.

WALSWORTH
2255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072

1    DATED:  July 26, 2024                WFBM, LLP

2

3                                          By: */s/ James L. Mink*
                                               Sage R. Knauft
4                                              James Mink
                                               Attorneys for Defendant
5                                              SANDRA K. VERNELL, sued as SANDRA KATE
                                               VERNELL (f/k/a SANDRA KATE ANDERSON)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WALSWORTH
255 CALIFORNIA STREET, SUITE 525
SAN FRANCISCO, CALIFORNIA 94111
TEL (415) 781-7072