WILLIAM NOEL EDLIN, ESQ. (SBN 107796)
nedlin@eghblaw.com
CHRISTOPHER J. DOW, ESQ. (SBN 250032)
cdow@eghblaw.com
ANDREW D. PEREZ, ESQ. (SBN 348645)
aperez@eghblaw.com
EDLIN GALLAGHER HUIE + BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:    (415) 397-9006
Facsimile:    (415) 397-1339

Attorneys for Defendant
CATHERINE O'HANKS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CASA NIDO PARTNERSHIP, a California Partnership,<br><br>   Plaintiff,<br><br> vs.<br><br>CATHERINE O'HANKS; JAE KWON aka JAY KWON aka JAY KWON SHIK aka JAY SHIK KWON; LYNNE MARIE GARIBOTTI aka LYNNE G. BLOWER, individually and as Trustee of the Claudio Garibotti Trust, dated May 1, 1952; SENTRY INSURANCE COMPANY; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON) and EARL RAY ANDERSON,<br><br>   Defendants. | Case No. 3:20-cv-7923-EMC<br><br>**DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:  August 22, 2024<br>Time:  1:30 p.m.<br>Judge:  Edward M. Chen<br>Courtroom.: 5 – 17th Floor<br><br>Third Amended Complaint Filed: December 16, 2022 |

5583566

1

DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on August 22, 2024, at 1:30 PM, or as soon thereafter as the matter may be heard in Courtroom 5 of the United States District Court in and for the Northern District of California before the Honorable Edward M. Chen, Defendant CATHERINE O'HANKS ("Defendant" or "Ms. O'Hanks") will and hereby does Cross-Move for Partial Summary Judgment against Plaintiff CASA NIDO PARTNERSHIP's ("Plaintiff") First, Second, Fourth, Seventh, and Eighth Claims for Relief ("Cross-Motion").  Pursuant to the Memorandum of Law submitted concurrently herewith, Ms. O'Hanks requests this Cross-Motion for Partial Summary Judgment be granted.

This Cross-Motion is brought under Federal Rule of Civil Procedure 56 and is supported by the Memorandum of Law, Declaration of Christopher J. Dow ("Dow Decl."), the Declaration of Alborz Wozniak ("Wozniak Decl."), the records and files herein, and on such further oral and documentary evidence and other argument as the Court may consider or take judicial notice of in connection with the hearing on this Motion.

Date:    July 26, 2024                      EDLIN GALLAGHER HUIE + BLUM

By: _____
CHRISTOPHER J. DOW
ANDREW D. PEREZ
Attorneys for Defendant
CATHERINE O'HANKS

5583566

DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. LEGAL STANDARD ...........................................................................................2

III. STATEMENT OF FACTS.....................................................................................3

    A. PLAINTIFF DISCOVERS CONTAMINATION AT THE SITE AND COMMENCES ENVIRONMENTAL INVESTIGATION WITHOUT GOVERNMENT OVERSIGHT ..................................3

    B. PLAINTIFF ENTERS INTO A VOLUNTARY CLEANUP AGREEMENT WITH DTSC AND CONDUCTS WORK AT THE SITE WITHOUT DTSC OVERSIGHT OR APPROVAL .................3

    C. DTSC IS UNABLE TO DETERMINE IF PLAINTIFF'S WORK AT THE SITE COMPLIES WITH THE NATIONAL CONTINGENCY PLAN ...................................................5

    D. PLAINTIFF NEVER COMPLETED A PRELIMINARY ENDANGERMENT ASSESSMENT FOR THE SITE ..........................................................................6

    E. PLAINTIFF NEVER PROPERLY CHARACTERIZED THE CONTAMINATION AT THE SITE, NOR DID IT EVER PROPERLY SELECT A REMEDY FOR THE SITE ............................7

    F. PLAINTIFF PERFORMED WORK AT THE SITE WITHOUT A HEALTH AND SAFETY PLAN, DID NOT RECEIVE DTSC APPROVAL OF ITS VAPOR INTRUSION WORKPLAN FOR THE SITE UNTIL LATE 2021, AND NEVER FULLY IMPLEMENTED THE WORKPLAN ........................8

    G. UNDER THE VOLUNTARY CLEANUP AGREEMENT, PLAINTIFF CONTINUES TO CONDUCT WORK AT THE SITE WITHOUT DTSC APPROVAL, AND SUBMITS TO DTSC SAMPLING DATA THAT DEFIES INTERPRETATION DUE TO FUNDAMENTAL QUALITY CONTROL ISSUES ....................................................................................9

    H. PLAINTIFF CONTINUES TO SUBMIT INSUFFICIENT DATA REGARDING THE SITE TO DTSC AND ULTIMATELY TERMINATES THE VOLUNTARY CLEANUP AGREEMENT IN MARCH 2023 ...................................................................................10

    I. DTSC ISSUES AN IMMINENT AND SUBSTANTIAL ENDANGERMENT ORDER FOR THE SITE AND REJECTS PLAINTIFF'S CLAIM THAT IT HAS PROVIDED DTSC WITH MOST OF THE SITE DATA THE ORDER REQUIRES ...............................................11

IV. ARGUMENT .....................................................................................................13

5583566

A.    PLAINTIFF'S CERCLA COST RECOVERY CLAIM MUST FAIL BECAUSE IT CANNOT PROVE ITS ENVIRONMENTAL WORK AT THE SITE WAS NECESSARY AND CONSISTENT WITH THE NATIONAL CONTINGENCY PLAN ............................................................................13

    1.    Plaintiff Presents No Evidence of Documentation Supporting a Removal or Remedial Action Under CERCLA............................................................14

    2.    Even Assuming Plaintiff Complied with Some NCP Requirements (and Ms. O'Hanks Does Not Concede this Point),  No CERCLA-Quality Cleanup Has Begun....................................................................................................16

B.    PLAINTIFF' S HAZARDOUS SUBSTANCES ACCOUNT ACT CLAIM FAILS .........................17

C.    PLAINTIFF'S CLAIM FOR RELIEF UNDER WATER CODE SECTIONS 13304 AND 13350 FAILS BECAUSE THESE AUTHORITIES DO NOT CREATE A PRIVATE CLAIM FOR RELIEF..........18

D.    PLAINTIFF'S NEGLIGENCE AND NUISANCE CLAIMS FOR RELIEF MUST FAIL AS EITHER BARRED BY THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS, OR BECAUSE PLAINTIFF CANNOT NOW PROVE ITS ALLEGATIONS THAT THE CONTAMINATION AT THE SITE IS AN ABATABLE NUISANCE. ...........................................................................19

    1.    Plaintiff's Negligence and Negligence Per Se Causes of Action Are Time-Barred ....................................................................................................................19

    2.    To the Extent Plaintiff Argues that its Public Nuisance and Nuisance Per Se Claims May Not Be Barred by the Three-Year Statute of Limitations of Code of Civil Procedure Section 338(b) Because They Are Continuing, a Material Question of Fact Remains as to Whether the Contamination at the Site Is a Continuing Nuisance Because Plaintiff Has Never Fully Characterized the Site. ...............................................................................................................21

E.    PLAINTIFF'S NEGLIGENCE, NEGLIGENCE PER SE, PUBLIC NUISANCE AND NUISANCE PER SE CLAIMS EITHER FAIL SUBSTANTIVELY AND/OR ARE SUBJECT TO DEFENSES............22

    1.    Plaintiff Submits No Evidence Upon Its Motion that Ms. O'Hanks Breached a Duty of Care to Plaintiff and the Evidence It Does Submit Demonstrates Her Deceased Husband Exercising Reasonable Care...........................................22

5583566

TABLE OF CONTENTS

2.      Plaintiff Provides No Analysis Showing It Is Entitled to Summary Judgment on Its Claim for Negligence Per Se and the Issue of Causation Is Normally Left to the Jury....................................................................................................23

3.      Plaintiff's Public Nuisance Claim for Relief Fails Because Plaintiff Offers No Specific Proof of Injury to the Public.........................................................24

4.      Plaintiff's Claim for Nuisance Per Se Based on the Water Code Fails Because the Water Code Does Not Define a Per Se Nuisance .........................................25

V.      CONCLUSION ..............................................................................................25

5583566

TABLE OF CONTENTS

## TABLE OF AUTHORITIES

Page(s)

Other Authorities

Beck Development Co. v. Southern Pacific Transportation Co.,
  44 Cal. App.4th 1160 (1996)............................................................................. 2, 21, 24, 25

Capolungo v. Bondi,
  179 Cal. App. 3d 346 (1986)........................................................................................23

City of Colton v. American Promotional Events, Inc.,
  No. CV 05-1479-JFW (SSx), 2006 WL 5939684 (C.D. Cal. Oct. 31, 2006) ........................... 14, 15

City of Oakland v. Nestle USA, Inc.,
  No. C-98-3963 SC, 2000 WL 1130066 (N.D. Cal. Aug. 8, 2000)...............................................1, 15

Coppola v. Smith,
  935 F.Supp.2d 993 (E.D. Cal. 2013) ...........................................................................1, 17, 22

Csutoras v. Paradise High Sch.,
  12 F.4th 960 (9th Cir. 2021)............................................................................................2

Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two,
  249 F.3d 1132 (9th Cir. 2001) ........................................................................................3

Las Vegas Sands, LLC v. Nehme,
  632 F.3d 526 (9th Cir. 2011)...........................................................................................2

Long Beach Unified School District v. Santa Catalina Island Co.,
  Case No. CV 19-1139-JFW (ASx), 2021 WL 4706552 (C.D. Cal. Aug. 17, 2021)...........................14

Mangini v. Aerojet-General Corp.,
  12 Cal. 4th 1087 (1996)..............................................................................................21

Santa Clara Valley Water Dist. v. Olin Corp.,
  655 F.Supp.2d 1066 (N.D. Cal. 2009)...............................................................................14

Santa Clara Valley Water Dist. v. Olin Corp.,
  No. C-07-03756 RMW, 2007 WL 2890390 (N.D. Cal. Sept. 28, 2007) ........................................13

Schaeffer v. Gregory Village Partners, L.P.,
  105 F.Supp.3d 951 (E.D. Cal. 2015) .................................................................................23

SPPI-Somersville, Inc. v. TRC Companies, Inc., Nos. C 04–2648 SI, 07–5824 SI,
  2009 WL 2612227 (N.D. Cal. Aug. 21, 2009)......................................................................15

Sweeney v. Cal. Regional Water Quality Control Bd.,
  61 Cal.App.5th 1093 (2021) ..........................................................................................19

Taulbee v. EJ Distribution Corp.,
  35 Cal.App.5th 590 (2019)...........................................................................................24

Walnut Creek Manor, LLC v. Mayhew Center, LLC,
  622 F.Supp.2d 918 (N.D. Cal. 2009)............................................................................passim

Washington State Dept. of Transp. v. Washington Natural Gas Co.,
  59 F.3d 793 (9th Cir. 1995)...........................................................................................13

Statutes

42 U.S.C. § 9607(a)..........................................................................................................25

5583566

iv

TABLE OF AUTHORITIES

Cal. Civil Code §§ 3479, 3480 ................................................................................. 25, 26
Cal. Code Civ. Proc. §338(b) ................................................................................... 21, 22
Cal. Health & Saf. Code, §§ 25300, 25363 ...................................................................25
Cal. Water Code, § 13350 ...............................................................................................20
California Water Code section 13304(a) ................................................................. 19, 20
section 13304(b) ..............................................................................................................19
sections 13304 and 13350 ........................................................................................ 20, 25

Rules

Federal Rule of Civil Procedure 56 ..................................................................................1

Regulations

40 C.F.R. § 300.415(n) ...................................................................................................16
40 C.F.R. § 300.415(n)(3) ........................................................................................ 16, 17
40 CFR § 300.415(b)(4) ............................................................................................ 16, 17
40 CFR § 300.700(c)(3)(i) ..............................................................................................15

5583566

TABLE OF AUTHORITIES

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Upon its motion for partial summary judgment ("Plaintiff's Motion"), Plaintiff Casa Nido Partnership ("Plaintiff") seeks $1,346,911.97[1] under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") from Defendants Catherine O'Hanks ("Ms. O'Hanks") and two other Defendants for investigation and cleanup costs it allegedly incurred at its real property at 12210 San Pablo Avenue in Richmond, CA (the "Site"). Nevertheless, Plaintiff is not entitled to recover any monies from Ms. O'Hanks or the other Defendants as a matter of law because there can be no reasonable dispute that Plaintiff failed to substantially comply with the National Contingency Plan ("NCP"), an essential element of its CERCLA cost recovery case.  Walnut Creek Manor, LLC v. Mayhew Center, LLC, 622 F.Supp.2d 918, 925 (N.D. Cal. 2009).  This Court finds that failure to comply with the public participation requirements of the NCP alone is enough to conclude that s party seeking its cleanup costs did not substantially comply with the NCP (City of Oakland v. Nestle USA, Inc., No. C-98-3963 SC, 2000 WL 1130066 at **5-6 (N.D. Cal. Aug. 8, 2000)), and Plaintiff presents no evidence that it did so here.  While this failure alone is grounds enough for this Court to deny Plaintiff's motion for partial summary judgment and grant Ms. O'Hanks' motion for partial summary judgment as to Plaintiff's CERCLA claim (Plaintiff's First Clam for Relief in its Third Amended Complaint (ECF 147)), as argued in section IV(A) below there are other key requirements of the NCP with which Plaintiff did not bother to comply.

Next, as argued in section IV(B) below, because Plaintiff's CERCLA claim fails, so must its Second Claim for Relief under the state Hazardous Substances Account Act, as this statute is interpreted exactly the same as CERCLA. Coppola v. Smith, 935 F.Supp.2d 993, 1011-1012 (E.D. Cal. 2013).  As argued in section IV(C) below Plaintiff's Fourth Claim for Relief under Water Code sections 13304 and 13350 must fail because these statutes do not create a private party cause of action, but rather create enforcement authority exclusively for the state regional water quality control boards or the State Water Resources Board.

---

[1] See Declaration of Marsha Conwill (ECF234-3) at p. 12.

5583566

As argued in section IV(D) below, Plaintiff's negligence and negligence per se causes of action (Plaintiff's Seventh and Eight Claims for Relief, respectively) are time barred by the applicable three-year statute of limitations.

Finally, Plaintiff cannot be granted summary judgment on its Fifth Claim for Relief, Continuing Public Nuisance or Sixth Claim of Relief, per se nuisance, because a material question of fact remains as to whether the Site presents a continuing nuisance. This is because Plaintiff's Motion cannot now establish that any alleged nuisance at the Site is abatable. Beck Development Co. v. Southern Pacific Transportation Co., 44 Cal. App.4th 1160, 1222-1223 (1996) (where there is no substantial evidence of abatability, the alleged public nuisance is not continuing).

Based on the above, and additional arguments made below, Ms. O'Hanks requests that this Court deny Plaintiff's Motion in its entirety and grant Ms. O'Hanks cross-motion for summary judgment as to Plaintiff's First, Second, Fourth, Seventh and Eighth Claims for Relief.

## II.    LEGAL STANDARD

"Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law." Walnut Creek Manor, LLC v. Mayhew Center, LLC, 622 F.Supp.2d 918, 923-924 (N.D. Cal. 2009).  "The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material." Id. at 924.  "The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought." Id.  "Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case." Id.

When reviewing a district court's ruling on a cross-motion for summary judgment, the Ninth Circuit views "the evidence in the light most favorable to the nonmoving party," and considers "whether there are genuine issues of material fact and whether the district court correctly applied the relevant substantive law." Csutoras v. Paradise High Sch., 12 F.4th 960, 965 (9th Cir. 2021).  Where the parties file cross-motions for summary judgment, the court must consider each party's evidence, regardless under which motion the evidence is offered.  Las Vegas Sands, LLC v. Nehme, 632 F.3d 526 (9th Cir. 2011).

5583566

1  In other words, a party's cross-motion is not decided solely upon the evidence the party submits to the

2  court but may also be determined on an opposing party's submitted evidence.  Fair Hous. Council of

3  Riverside Cnty., Inc. v. Riverside Two, 249 F.3d 1132, 1135 (9th Cir. 2001).

4  **III.**     **STATEMENT OF FACTS**

5       **A.**     **PLAINTIFF DISCOVERS CONTAMINATION AT THE SITE AND COMMENCES**

6            **ENVIRONMENTAL INVESTIGATION WITHOUT GOVERNMENT OVERSIGHT**

7            Plaintiff was aware of the contamination at the Site for at least six years before it filed the instant

8  lawsuit on November 11, 2020 (ECF 1).  On June 4, 2020, Ron Piziali ("Mr. Piziali") of Plaintiff Casa

9  Nido Partnership wrote the following to Ian Utz ("Mr. Utz."), the DTSC Environmental Scientist and

10 project manager overseeing the investigation of the Site: "We are currently in our sixth year of working to

11 remove toxins from these properties."  Declaration of Christopher J. Dow ("Dow Decl."), ¶ A and Ex. 5.

12 In other words, Plaintiff knew of the contamination at its Site at least as early as 2014.  This fact is

13 confirmed by Plaintiff's environmental consultant, Pangea Environmental Services, Inc. and its principal,

14 Robert Clark-Riddell, who has performed investigation and cleanup work at the Site and who is also

15 serving as Plaintiff's expert witness in this litigation.  Mr. Clark-Riddell states: "In October 2014, Casa

16 Nido retained Pangea to perform an initial site investigation to determine if a past release of hazardous

17 substances had occurred at the Site."  Declaration of Robert Clark-Riddell ("Clark-Riddell Decl.") (ECF

18 234-2), ¶ 28.

19           At Plaintiff's direction, Pangea began its investigative work at the Site in October 2014 and

20 discovered tetrachloroethylene, aka PCE, in the Site's subsurface.  Id.  Pangea conducted further testing at

21 the Site in 2015 and early 2016.  Id. at ¶31.  Mr. Clark-Riddell states that the information gathered from

22 further testing "demonstrated the need for urgent response to the hazardous substances at the Site." Id.

23 On August 16, 2016, Pangea issued a Site Assessment Report (the "2016 Site Assessment Report"). Id. at

24 ¶ 32.

25      **B.**     **PLAINTIFF ENTERS INTO A VOLUNTARY CLEANUP AGREEMENT WITH DTSC AND**

26           **CONDUCTS WORK AT THE SITE WITHOUT DTSC OVERSIGHT OR APPROVAL**

27           Also in August 2016, one year and ten months after it began its environmental investigation at

28 the Site, Plaintiff sought agency oversight from the Regional Water Board who, in turn, referred Plaintiff

5583566

to DTSC oversight. Id. at ¶33.  On November 1, 2016, Mr. Pizialli and Mr. Clark-Riddell met with

Megan Indermill, the then DTSC project manager for the Site, to discuss Plaintiff entering into a

voluntary cleanup agreement ("VCA") for Site cleanup.  Dow Decl., ¶ 6, and Ex. B at DTSC000005105.

After the meeting, Mr. Pizialli informed Ms. Indermill "the [Casa Nido] partnership in not willing to sign

the proposed agreement" explaining

> [t]he agreement simply does not seem to us to be a sufficiently positive
> contribution to carrying out the action. **It is highly legalistic, and it places many
> burdensome requirements on the partnership that we feel will greatly
> increase costs, without providing real benefit. In addition, there are simply
> too many points in the agreement that seem unnecessary** -- either (1) to Casa
> Nido achieving the investigation and cleanup, paying for work and paying for
> Department oversight, or (2) to the Department doing its job of oversight to
> assure that Casa Nido does the work right.

Id. (bold added).  Nevertheless, despite Plaintiff's reservations concerning the terms of the VCA, in May

2017, Plaintiff entered into the VCA with DTSC for investigation and cleanup of the Site. Clark-Riddell

Decl., ¶ 34.

From 2017 to 2020, Plaintiff proceeded to perform investigation and cleanup work at the Site

without DTSC oversight as noted in Mr. Utz' meeting minutes documenting a November 9, 2020

meeting between DTSC and Plaintiff:

> Casa Nido entered into a Voluntary Cleanup Agreement (VCA, or Enforceable
> Agreement), intending to use about $1 million in available funding from the
> partnership's sale of another property to address all the contamination at this Site.
> **They then, without DTSC oversight, even though a VCA had been signed,
> made a business judgment to proceed quickly with several interim actions
> from 2017 to 2020, totaling almost $1 million**, to address the
> known/discovered risk that this property poses to adjacent properties and the
> environment.

Dow Decl., ¶ 7 and Ex. C at DTSC000000209 (bold added).  During his February 29, 2024

deposition in this matter, Mr. Utz confirmed that Plaintiff conducted investigation and removal

activities at the Site without DTSC oversight and stated that DTSC oversight of hazardous

substances cleanup is important because "DTSC is a regulator for the State of California, and its

oversight of hazardous substances cleanup sites is intended, in part, to ensure that cleanups occur

5583566

safely and legally." Dow Decl., ¶ 9 and Ex. E (excerpts from the February 29, 2024 Deposition of Ian Utz ("Utz Depo.")) at 46:1-47:14.

On March 17, 2022, in correspondence to the City of Richmond describing Plaintiff's work at the Site, Mr. Utz noted the following: "Previous work included building demolition (2017), soil removal and treatment to 15 feet below ground (2018), and installation of pipes for sucking air out of the ground (2018 to 2020).  But, a lot of this work happened without our approval, because the owner has been reluctant to communicate and plan with us, and is trying to save money." Id., ¶ 11 and Ex. F at DTSC000004740; Utz Depo. at 176:22-178:3.

**C.      DTSC IS UNABLE TO DETERMINE IF PLAINTIFF'S WORK AT THE SITE COMPLIES WITH THE NATIONAL CONTINGENCY PLAN**

Mr. Utz' November 9. 2020 meeting minutes also state that DTSC was unable to determine if Plaintiff's activities at the Site complied with the NCP, and that Plaintiff did not follow the rules for a time critical removal action at the Site:

> **The cleanup work has so far not followed State or federal law or the voluntary agreement**.  Therefore, DTSC cannot determine whether the work was completed <u>safely</u>, or whether the work was <u>effective</u>, or necessary, **or if that work would have been in compliance with National Contingency Plan (NCP).  In addition, there are already legal options to quickly completing emergency/time- critical removals.  The work performed by the Owner and consultant did not follow those legal options as they moved forward without input from DTSC even though they had signed an Enforceable Agreement that would if followed had led them to an NCP-compliant cleanup and been protective of human health and the environment**.  **The work that DTSC requested several years ago, which remains incomplete**, was intended to ascertain whether surrounding properties were endangered.  Casa Nido's exhaustion of the $1 million was a business decision.  Casa Nido should perform its obligations under the Enforceable Agreement Statement/Scope of Work.

Dow Decl., ¶ 7 and Ex. C at DTSC000000209-210 (underline in original, bold added).  Previously, on October 8, 2020, DTSC stated to Plaintiff that its DTSC-unapproved work at the Site would be referred to as "interim actions": "The unapproved remedial activities performed to date (e.g., soil excavation, soil amendments, permeable reactive barriers, soil vapor extraction, and sub-slab depressurization) shall hereafter be referred to as 'interim actions.'  DTSC did not oversee, evaluate, or approve the interim

1  actions." Dow Decl., ¶ 8 and Ex. D at DTSC000000182.  Mr. Utz confirmed in his deposition that

2  Plaintiff's excavation of soil at the Site was not performed under DTSC oversight (Utz Depo. at 50:21-

3  51:7), the soil vapor extraction system that Plaintiff installed at the Site was never evaluated by DTSC (id.

4  at 52:7- 52:18) and the sub-slab depressurization system Plaintiff installed at the Site was never evaluated

5  by DTSC (id. at 52:22-54:8).

6      **D.    PLAINTIFF NEVER COMPLETED A PRELIMINARY ENDANGERMENT ASSESSMENT FOR**

7          **THE SITE**

8      On October 8 2020, Mr Utz noted to Plaintiff that it had not completed a preliminary

9  endangerment assessment ("PEA") for the Site, "and therefore certain historical information remains

10  unknown." Dow Decl., ¶ 12 and Ex. D at DTSC000000185. On November 23, 2020, Mr. Utz further

11  explained that the PEA, which is Task 2 of Plaintiff's VCA,

12      has only partially been fulfilled through existing reports/information (e.g., the
13      2016 site assessment [report], groundwater data, and soil vapor data). Incomplete
        PEA elements include, but are not limited to:

14
15      • Historical evaluation of surrounding properties, including for
          owners/operators and known/threatened releases.

16      • Historical evaluation of the site, including for owners/operators, hazardous
          materials/waste use/generation, inspections, permits, etc.

17      • Development of conceptual site model that lists the potential exposure
18        pathways from contamination.

19      • Identification/listing of chemicals of potential concern (COPCs) through a
          screening evaluation process with data quality objectives.

20      • Human health and ecological screening evaluation, including calculation of
          cumulative risk and hazard.

21
22      While on the surface level some of these items have been contemplated or
        started, they have not been completed per our guidance.

23

24  Id., ¶ 13 and Ex. G at DTSC000009626.  Mr Utz also stated that "[b]ecause the PEA requirement has not

25  been fulfilled, DTSC does not have an adequate understanding of the owners/operators, nature or extent

26  of known/threatened releases, or potential exposure pathways at the site." Id.  At his February 29, 2024

27  deposition in this matter, Mr. Utz confirmed that Plaintiff never completed a preliminary endangerment

28

5583566

1    assessment for the Site. Utz Depo. at 51:20-52:5; 84:17-20.

2        **E.    PLAINTIFF NEVER PROPERLY CHARACTERIZED THE CONTAMINATION AT THE SITE,**

3        **NOR DID IT EVER PROPERLY SELECT A REMEDY FOR THE SITE**

4            On August 4, 2020, Jesse Negherbon, Ph.D., P.E., a Senior Hazardous Substances Engineer at

5    DTSC, informed Mr. Utz that the "areal and vertical extents of the groundwater, soil, and soil gas

6    contamination, on-site and off-site, should be delineated and I would recommend that a workplan is

7    drafted to describe the efforts and commitments that will be undertaken to complete this work." Dow

8    Decl., ¶ 15 and Ex. H at DTSC000013419.  Two years later, on August 4, 2022, Mr. Utz noted in

9    correspondence to Plaintiff and Pangea that the current phase of the work at the Site was

10   "characterization," and that "the directionality of future characterization" should include "adjoining

11   buildings" and the "groundwater plume moving southwest." Id., ¶ 16 and Ex. I at DTSC000009863.

12           In his deposition, Mr. Utz confirmed Plaintiff never completed characterization of the Site, and

13   stated the Site "remains in the site characterization phase of cleanup." Utz Depo. at 56:5-13.  Mr Utz also

14   stated that "site characterization is important for many reasons. One of them is to understand the scope of

15   the contamination, the types of contaminants, the lateral and vertical extent of the contaminants in

16   environmental media and the potential risks, for example, they impose to human health or the

17   environment." Id. at 55:20-56-2.

18           From the time of the 2017 VCA to its termination by Casa Nido in 2023, and through the date of

19   Mr. Utz's February 29, 2024 deposition, the remedy selection process for the Site had not been started.

20   Utz Depo. at 82:2-83:9 and errata sheet.  When asked if the DTSC-unapproved work, i.e., "interim

21   actions," Plaintiff conducted at the Site from 2017 to 2020 would become part of the final remedy at the

22   Site, Mr. Utz stated: "In the absence of a decision document, I can't tell you whether the SVE and/or SSD

23   systems or system would be selected as a removal or remedial action at that site." Id. at 81:21-24.  Also

24   on August 4, 2020, Mr. Negherbon informed Mr. Utz that the monitoring data from the remedial

25   technologies Plaintiff had installed at the Site "are not sufficient to demonstrate a protective impact on the

26   surrounding residences and places of business."  Dow Decl., ¶ 19 and Ex. H at DTSC000013419.

27   ///

28   ///

5583566

F.     **PLAINTIFF PERFORMED WORK AT THE SITE WITHOUT A HEALTH AND SAFETY PLAN, DID NOT RECEIVE DTSC APPROVAL OF ITS VAPOR INTRUSION WORKPLAN FOR THE SITE UNTIL LATE 2021, AND NEVER FULLY IMPLEMENTED THE WORKPLAN**

On October 19, 2020, Mr. Utz told Plaintiff to stop work at the Site due to the lack of a health and safety plan ("HASP") being in place to protect workers, stating "[t]he existing health and safety documentation are inadequate for the purposes of hazardous waste cleanup." Id., ¶ 20 and Ex. H at DTSC000009570-71; Utz Depo. at 58:22-60-12, 65:9-19.  Mr. Clark-Riddell stated that he would inquire about the HASP DTSC required. Dow Decl., ¶ 20 and Ex. J at DTSC000009570.  In December 2020, Mr. Utz threatened to stop granting Plaintiff extensions on VCA deadlines because "DTSC was concerned about the pace of -- of work being completed as requested by DTSC and the implications to human health and the environment." Id. at 85:13-87:11. Plaintiff eventually submitted a HASP to DTSC on December 15, 2020, but the Department determined the HASP was inadequate because it did not conform to state regulations regarding site control, worker training, engineering controls, work practices and personal protective equipment. Dow Decl., ¶ 22 and Ex. K at DTSC000004726-28.

On February 16, 2021, Mr Utz informed Mr. Clark-Riddell that the workplan for the Site had been in revision since 2018 and that Mr. Utz did not understand what was taking Plaintiff so long to complete the HASP.  Id., ¶ 23 and Ex. L at DTSC000005194.  On March 9, 2021, Mr. Utz informed another DTSC employee that because Plaintiff had not submitted revised versions of the workplan or HASP, it was "now out of compliance." Id., ¶ 24 and Ex. M at DTSC000005325.

On March 16, 2021 in view of Plaintiff's failure to submit a workplan or HASP for the Site, Mr. Utz stated that if Plaintiff did not submit the documents to DTSC by March 19, 2021, "I will petition that this matter be moved to our enforcement program, including termination of the governing Voluntary Cleanup Agreement (VCA) and issuance of an Imminent and Substantial Endangerment Order (l & SE Order)." Id., ¶ 25 and Ex. N at DTSC000005217.

On October 29, 2021, DTSC conditionally approved an off-site vapor intrusion workplan (the "2021 VI Workplan"). Id., ¶ 25 and Ex. O at DTSC000010105.  This is the only workplan that Plaintiff completed for the Site. Utz Depo. at 47:17- 48:12. The one HASP DTSC accepted for the Site was submitted in conjunction with the 2021 VI Workplan. Id. at 61:9-16.

5583566

The following December, DTSC expressed disappointment that the 2021 VI Workplan was not being implemented and stated that "[f]ailure to respond by 12/24/2021 will be considered noncompliance with the enforceable agreement (voluntary cleanup agreement). Continuing noncompliance with the enforceable agreement may result in termination of the agreement, followed by execution of an order that carries with it civil and/or administrative penalties of $25,000 per

violation per day of noncompliance for Casa Nido Partnership." Dow Decl., ¶ 27 and Ex. O at DTSC000010102.

On February 2, 2022, Mr. Utz informed Plaintiff that it was 14 weeks delayed according to its own schedule for implementing the 2021 VI Workplan and that DTSC was "extremely concerned about the pace and quality of this work implementation." Id., ¶ 28 and Ex. P at DTSC000016049.  By March 4, 2022, Plaintiff still had not implemented the VI 2021 Workplan and DTSC was threatening to carry the work out itself and find Plaintiff in noncompliance with the VCA. Id., ¶ 29 and Ex. Q at DTSC000010203.  In his February 2024 deposition in this matter, Mr. Utz stated that Plaintiff never fully implemented the 2021 VI Workplan. Utz Depo. at 175:23-176:4.

G.     **UNDER THE VOLUNTARY CLEANUP AGREEMENT, PLAINTIFF CONTINUES TO CONDUCT WORK AT THE SITE WITHOUT DTSC APPROVAL, AND SUBMITS TO DTSC SAMPLING DATA THAT DEFIES INTERPRETATION DUE TO FUNDAMENTAL QUALITY CONTROL ISSUES**

On March 17, 2022, Plaintiff provided in response to a DTSC request "sampling data not already provided to DTSC including laboratory results for soil, soil gas, groundwater and indoor air sampling for the site and adjoining properties." Dow Decl., ¶ 30 and Ex. R at DTSC000004659.  Upon receipt of this information, one of Mr. Utz colleagues at DTSC, Coby Graham, asked Mr. Utz if "these samples were collected under DTSC approved sampling plans and the required planning documents were submitted to DTSC for approval?"  Id. at DTSC000004658.  Mr. Utz replied, "No and no." Id.  Mr. Graham then asked, "Hmmm . . . what's the VCA say with regards to work plans and activities subject to DTSC review and comment?" Id.  Mr. Utz replied: "They have demonstrated a disregard for its scope." Id.  Mr. Utz confirmed at his deposition that Plaintiff demonstrated a disregard for the scope of the VCA. Utz Depo. at 175:13-20.

5583566

As late as March 21, 2022, Plaintiff through Pangea was submitting to DTSC sub-slab soil gas samples taken in September 2020 from a veterinary clinic and a private residence at 403 McLaughlin Street adjacent to the Site which DTSC noted were collected "without a workplan or DTSC approval." Dow Decl., ¶ 31 and Ex. S at DTSC000005721.  Further, DTSC noted that the samples submitted by Pangea to DTSC presented chain of custody issues such that DTSC could not confirm where the samples were taken or when the samples were collected and analyzed. Id.  On March 14, 2022, Mr. Utz confirmed with the homeowner of 403 McLaughlin Street that Pangea's testing of the indoor air of the residence was taking place without DTSC knowledge or approval:

> Casa Nido Partnership, who owns the former dry cleaner property, and its consultant PANGEA Environmental Services, Inc., have been working with you to sample your home sub-slab soil gas and indoor air. It sounds like they have also been installing some features in your basement and crawl space, without our knowledge or prior approval. We would like to speak with you about this, to make sure that we can still collect the data that we need, and ensure you are protected and not disturbed by the odors.

Id. at DTSC000005839 (underline added).  In his deposition, Mr. Utz confirmed that Pangea conducted work at 403 McLaughlin Street without DTSC approval. Utz Depo. at 179:22-180:7.  Mr. Utz also confirmed that DTSC could not discern from Pangea's documentation where the soil gas samples were taken and when they were collected and analyzed. Id. at 181:10-182:21.  Mr. Utz stated "[t]hese mistakes are fundamental mistakes and they represent an issue of quality control and quality assurance." Id. at 183:1-3.  By fundamental mistakes, Mr. Utz meant that "the existence of these mistakes prevents any interpretation of the results." Id. at 183:16-18.  He also stated Pangea's mistakes could have been avoided if "the work was planned in advance and documented in a work plan." Id. at 183:5-12.  Finally, Mr. Utz stated Pangea's mistakes "illustrate[] the importance of workplans." Id. at 183:14-20.

### H.   PLAINTIFF CONTINUES TO SUBMIT INSUFFICIENT DATA REGARDING THE SITE TO DTSC AND ULTIMATELY TERMINATES THE VOLUNTARY CLEANUP AGREEMENT IN MARCH 2023

On December 21, 2022, Plaintiff informed DTSC by letter that it was terminating the VCA on March 1, 2023.  Dow Decl., ¶ 34 and Ex. U.  The VCA was ultimately terminated on March 27, 2023. Id. at ¶35 and Ex. V.  When asked if the tasks in the VCA were completed by Casa Nido, Mr. Utz stated:

5583566

1    "To my knowledge, the tasks listed in [the VCA] in their totality were not completed by Casa Nido." Utz

2    Depo. at 24:21- 25:5; 35:24-36:4.

3        On March 9, 2023, Mr. Utz informed Casa Nido and Pangea of the following upon DTSC's

4    review of soil gas and indoor air data for work conducted by Plaintiff under the 2021 VI Workplan in

5    March and September 2022: "Despite the workplan requirement to have the data third-party validated

6    against laboratory reports and work plan data quality objectives, that has still not taken place.  This needs

7    to occur." Dow Decl., ¶ 37 and Ex. W at DTSC000006327.  Mr. Utz also noted "the absence of several

8    applicable SFRWQCB [San Francisco Regional Water Quality Control Board] or DTSC screening

9    criteria . . . . As a result, the table as submitted is insufficient for risk management (screening level)

10   purposes." Id.  In his deposition, Mr Utz stated it was typical of Pangea to submit to DTSC documents it

11   requested under the VCA which did not meet applicable regulatory requirements. Utz Depo. at 90:2-11.

12   **I.       DTSC ISSUES AN IMMINENT AND SUBSTANTIAL ENDANGERMENT ORDER FOR THE

13             SITE AND REJECTS PLAINTIFF'S CLAIM THAT IT HAS PROVIDED DTSC WITH MOST

14             OF THE SITE DATA THE ORDER REQUIRES**

15       On October 6, 2023, relative to the Site, DTSC issued the Imminent and Substantial

16   Endangerment Determination and Order and Remedial Action Order to Plaintiff and Defendants Ms.

17   O'Hanks, Ms. Sandra Vernell, and Mr. Earl Anderson (the "2023 ISE Order" or "Order").  Dow Decl., ¶

18   35 and Ex. V.  The Order states:

19               The purpose of this Order is to require for the Site: implementation of any
20               appropriate removal actions, completion of a Remedial Investigation/Feasibility
                 Study (RI/FS), preparation of a Remedial Action Plan (RAP) or Removal Action
21               Workplan (RAW), preparation of California Environmental Quality Act (CEQA)
                 documents, and Design and Implementation of the removal or remedial actions
22               approved in the RAW or RAP. An overall Site investigation and remediation
23               strategy shall be developed by Respondents in conjunction with DTSC which
                 reflects program goals, objectives, and requirements.
24

25   Id., Ex V at p. 7.  In its Findings of Fact, the 2023 ISE Order states that "[f]rom 2018 to 2020, Casa

26   Nido conducted interim actions without DTSC review or approval, including treatment and/or removal of

27   soil, soil gas, and groundwater." Id., Ex V at p. 3.  The Order includes the following as interim actions

28   unapproved by DTSC: "In 2018 . . . removal of soil on Site to depths of between 3 and 15 feet below

5583566

ground surface (bgs), and treatment of groundwater with chemical amendments including zero-valent

iron at 14.5 to 15 feet bgs and "[s]ince 2020 . . . soil vapor extraction (SVE) on Site at 4.5 to 10 feet bgs,

and sub-slab depressurization (SSD) at the off-Site south adjoining restaurant property at 0.5 to 1.5 feet

bgs." Id.

On October 16, 2023, one of Plaintiff's attorneys sent DTSC a letter about the Order stating that it

requires

> the improper inclusion of several requested studies and investigations in the
> Order which should not be required given that Casa Nido (operating pursuant to
> the Voluntary Cleanup Agreement) had to proceed with the remedial work
> without DTSC oversight due to the failure of DTSC to respond to requests for
> agency oversight, and given that Casa Nido's consultant Pangea has already
> provided DTSC with much if not most of the data, testing results and analysis
> that would be included in the studies and investigations requested in the Order.

Dow Decl., ¶ 39 and Ex. X.  To the extent Plaintiff's counsel claims that it communicated to DTSC that

the Department would not oversee its work, and therefore requested oversight of DTSC, Mr. Utz stated:

"I don't recall correspondence from Casa Nido representing that DTSC, during my time as project

manager, was failing to provide oversight." Utz Depo. at 112:8-113:24.  Mr. Utz further testified that to

the extent Plaintiff is claiming that it has submitted to DTSC "most of the data, testing results and analysis

that would be included in the studies and investigations requested in the Order," this claim is "incorrect."

Id. at 115:13-25.  When asked if any of Tasks 10 through 35 outlined in the Calendar of Tasks and

Schedules of the Order are fully complete, Mr. Utz replied, "No." Id. at 119:14-120:9.

On November 28, 2023, DTSC's Office of Legal Counsel wrote that the Department "rejects

Casa Nido's claim that the Order improperly requires several 'studies and investigations' that are

duplicative of work Casa Nido may have previously performed without DTSC approval."  ECF 204 at 6.

In sum, the Order forces Plaintiff and Defendants to complete the tasks that Plaintiff refused to complete

under the VCA for nearly seven years.

///

///

///

///

5583566

DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

IV.   **ARGUMENT**

A.   **PLAINTIFF'S CERCLA COST RECOVERY CLAIM MUST FAIL BECAUSE IT CANNOT PROVE ITS ENVIRONMENTAL WORK AT THE SITE WAS NECESSARY AND CONSISTENT WITH THE NATIONAL CONTINGENCY PLAN**

While "CERCLA generally imposes strict liability on owners and operators of facilities at which hazardous substances were disposed" and "authorizes private parties to institute civil actions to recover the costs involved in the cleanup of hazardous wastes from those responsible for their creation" (Walnut Creek Manor, supra, 622 F.Supp.2d at 925), a party must prove four elements to prevail on its CERCLA cause of action, and Plaintiff cannot do so here.  To prevail in a private cost recovery action, a plaintiff must establish the following: (1) the site on which the hazardous substances are contained is a "facility" under CERCLA's definition of that term; (2) a release or threatened release of any hazardous substance from the facility has occurred; (3) <u>such release or threatened release has caused the plaintiff to incur response costs that were necessary and consistent with the national contingency plan</u>; and (4) the defendant is within one of four classes of persons subject to CERCLA liability. Id. (underline added).  As argued in section IV(A)(1) below, Plaintiff cannot prove element (3).

This Court makes clear that a private party such as Plaintiff has the burden of proof to show it incurred response costs necessary and consistent with the NCP.  In a CERCLA cost recovery action, if a party seeking to recover its costs in cleaning up hazardous substances is "the United States Government or a State or an Indian tribe . . . its actions are presumed to comply with the NCP and the burden is on the defendant to demonstrate that the government is not entitled to their remediation costs." Santa Clara Valley Water Dist. v. Olin Corp., No. C-07-03756 RMW, 2007 WL 2890390 at *4 (N.D. Cal. Sept. 28, 2007) (citing Washington State Dept. of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 799-800 (9th Cir. 1995) (internal quotations omitted).  "On the other hand, any other party must prove that their actions were consistent with the NCP to entitle them to their costs." Id. (underline added).  Specifically, the NCP provides a private party response action, i.e., the investigation and cleanup of a given site "will be considered 'consistent with the NCP' if the action, when evaluated as a whole, is in substantial compliance" with the requirements applicable to a private party cleanup as set forth in the NCP "and results in a CERCLA-quality cleanup."  40 CFR § 300.700(c)(3)(i).  Here, Plaintiff as a private party

5583566

must prove that the roughly $1,346,911.97 in investigation and cleanup costs it seeks from Ms. O'Hanks and the other Defendants was in substantial compliance with the NCP.  This it cannot do based on the facts of this case.

### 1.  Plaintiff Presents No Evidence of Documentation Supporting a Removal or Remedial Action Under CERCLA

To determine whether a party's investigation and cleanup actions comply with the NCP, "as an initial matter, it is necessary to determine whether the [party's] response actions constitute "remedial actions" or "removal actions" to determine which portions of the NCP apply. Santa Clara Valley Water Dist. v. Olin Corp., 655 F.Supp.2d 1066, 1075 (N.D. Cal. 2009).  The Ninth Circuit has determined that "the need to take relatively prompt action" and "the immediacy of a threat" at a contaminated property are the key characteristics of a removal action which differentiate it from a longer term remedial action. Id. at 1076.  The NCP requirements for a removal action are more lenient than a remedial action, and where it is unclear whether a party undertook a removal action or remedial action at a property, a court may determine a motion for summary judgment under the more lenient standard if the Court can determine whether or not a party substantially complied with the removal action requirements. Id.

Here, there are no documents showing whether Plaintiff's DTSC-unsupervised efforts at the Site were a removal or remedial action, but it is clear the requirements for a removal action are not satisfied. A removal action requires a party to do the following:

- Conduct a removal site evaluation which must include a removal preliminary assessment and, if appropriate, a removal site inspection.  City of Colton v. American Promotional Events, Inc., No. CV 05-1479-JFW (SSx), 2006 WL 5939684 at *5 (C.D. Cal. Oct. 31, 2006) vacated in part on other grounds and remanded, 390 Fed.Appx. 749, 752 (9th Cir. 2010). The removal site evaluation must be documented. Id.

- Conduct an engineering evaluation/cost analysis ("EE/CA") of removal alternatives for a site. Long Beach Unified School District v. Santa Catalina Island Co., Case No. CV 19-1139-JFW(ASx), 2021 WL 4706552 at *10 (C.D. Cal. Aug., 17, 2021).  The EE/CA is conducted "[w]henever a planning period of at least six months exists before on-site activities must be initiated." 40 CFR § 300.415(b)(4).

5583566

DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

- In all cases, a removal action must include the following community relations requirements. City of Colton v. American Promotional Events, Inc., No. CV 05-1479-JFW (SSx), 2006 WL 5939684 at *6 (C.D. Cal. Oct. 31, 2006) vacated in part on other grounds and remanded, 390 Fed.Appx. 749, 752 (9th Cir. 2010). These include:

  o Designation of a spokesperson to inform the community of actions taken, to respond to inquiries, and to provide information concerning the hazardous substance release. Id. (citing 40 C.F.R. § 300.415(n)).

  o "Where on-site activities are expected to last more than 120 days from the time they are commenced, before the conclusion of that 120 day period, the [party] must conduct interviews with local officials, members of the community, public interest groups or other interested parties to solicit their concerns and to determine whether they need any additional information and how they might like to be involved in the cleanup process." Id. (citing 40 C.F.R. § 300.415(n)(3)).

  o "The [party] must then prepare a formal community relations plan based on the interviews and must specify the community relations activities to be undertaken." Id.

This Court has denied a plaintiff's motion for summary judgement to recover cleanup costs under CERCLA where "at minimum there are factual disputes regarding compliance with the public participation requirement of the NCP." SPPI-Somersville, Inc. v. TRC Companies, Inc., Nos. C 04–2648 SI, 07–5824 SI, 2009 WL 2612227 at **4-5 (N.D. Cal. Aug. 21, 2009). This Court has also granted CERCLA defendants' motion for summary judgment where defendants demonstrated the failure of plaintiff, the City of Oakland, to comply with the NCP's public participation requirements, stating "[f]ailure to comply with the public participation requirement alone is enough to conclude that the Port did not substantially comply with the NCP." City of Oakland, supra, 2000 WL 1130066 at **5-6. Public participation must allow the public to participate in selection of the cleanup action. Id. at *5.

As to the preliminary assessment of the Site required by the NCP, it is undisputed that Plaintiff never completed one. Statement of Facts ("SOF"), supra, sec. III(D). As to an EE/CA, it is undisputed that Plaintiff identified PCE contamination at the Site in 2014 but did not implement its DTSC-

5583566

unapproved interim actions at the Site until 2018.  Clark-Riddell Decl., ¶¶ 28, 38.  It therefore had "a

planning period of at least six months . . . before on-site activities must be initiated" under 40 CFR sec.

300.415(b)(4).  Nevertheless, there is no record that Plaintiff ever completed an EE/CA for the Site.  July

25, 2024 Declaration of Alborz Wozniak ("Wozniak Decl."), ¶¶ 30, 32, 45(c) and (f), and 50.  Finally,

because Plaintiff's interim actions at the Site spanned from October 2018 to 2020 (Clark-Riddell Decl., ¶¶

38, 39) such that on-site activities lasted more than 120 days from the time they were commenced,

Plaintiff should have completed all removal action public participation requirements bulleted above (40

C.F.R. § 300.415(n)(3)).  Nevertheless, there is no record that Plaintiff complied with the NCP's public

participation requirements. Wozniak Decl., ¶¶ 10, 14, 24, 31-32, 34, 45(e) and 51.  Therefore, Plaintiff's

motion for summary judgment as to its CERCLA claims should be denied, and Ms. O'Hanks' cross-

motion for summary judgment as to Plaintiff's CERCLA claims should be granted.

### 2. Even Assuming Plaintiff Complied with Some NCP Requirements (and Ms. O'Hanks Does Not Concede this Point),  No CERCLA-Quality Cleanup Has Begun.

This Court states that "[t]he clear language of the NCP reveals that a plaintiff cannot collect costs

when it has performed some of the NCP requirements" because this does not amount to substantial

compliance with the entirety of the NCP. Walnut Creek Manor, LLC, 622 F.Supp.2d at 930.  Further, a

plaintiff cannot collect costs "where a CERCLA-quality cleanup has not even begun." Id. at 930-931.

Here, it is clear there has never been a CERCLA-quality cleanup of the Site.  In November 2020,

DTSC stated the following about the quality of Plaintiff's cleanup work at the Site:

> **The cleanup work has so far not followed State or federal law or the voluntary agreement**.  Therefore, DTSC cannot determine whether the work was completed <u>safely</u>, or whether the work was <u>effective</u>, or necessary, **or if that work would have been in compliance with National Contingency Plan (NCP).  In addition, there are already legal options to quickly completing emergency/time-critical removals.  The work performed by the Owner and consultant did not follow those legal options as they moved forward without input from DTSC** even though they had signed an Enforceable Agreement that would if followed had led them to an NCP-compliant cleanup and been protective of human health and the environment**.**

5583566

SOF, supra, sec. III(c).  At his February 29, 2024 deposition in this matter, Mr. Utz confirmed that Plaintiff conducted its cleanup activities at the Site without DTSC oversight and stated that such oversight is important because "DTSC is a regulator for the State of California, and its oversight of hazardous substances cleanup sites is intended, in part, to ensure that cleanups occur safely and legally." Id. at sec. III(B).  Mr. Utz also stated at his deposition that he is unsure whether any of the remedial systems Plaintiff installed at the Site would ultimately be selected as the removal or remedial actions at the Site, and that the remedy selection process for the Site has yet to be started.  Id. at sec. III(E).  As to the remedial systems Plaintiff installed at the Site without DTSC oversight, a Senior Hazardous Substances Engineer at DTSC opined that these technologies "are not sufficient to demonstrate a protective impact on the surrounding residences and places of business." Id.

Further, Ms. O'Hanks' environmental cleanup technical expert in this litigation reached the following conclusion which dovetails with the views of DTSC regarding Plaintiff's work at the Site: "When evaluated as a whole, all of the response actions taken by Casa Nido between 2014 and 2024, were not consistent with the NCP and did not result in a CERCLA-quality cleanup." Wozniak Decl., ¶ 53.  Clearly, there has been no CERCLA-quality cleanup of the Site and Plaintiff submits no evidence to this Court to prove otherwise, nor can it.  Therefore, Plaintiff's motion for summary judgment as to its CERCLA cost recovery claim against Ms. O'Hanks should be denied, and Ms. O'Hanks' cross-motion for a judgment dismissing this claim should be granted.

## B.   PLAINTIFF'S HAZARDOUS SUBSTANCES ACCOUNT ACT CLAIM FAILS

"Although the HSAA is not identical to CERCLA, the HSAA expressly incorporates the same liability standards, defenses, and classes of responsible person as those set forth in CERCLA.  As such, the HSAA is generally interpreted consistent with CERCLA." Coppola, supra, 935 F.Supp.2d at 1011 (internal citations omitted).  Therefore, if a plaintiff's "CERCLA cause of action fails, so too fails the HSAA." Id. at 1011-1012.

As shown in section IV(A) above, Plaintiff's CERCLA claims must fail and, for this reason, so does its HSAA claims. Therefore, Plaintiff's motion for summary judgment as to its HSAA hazardous substance cleanup cost recovery claim against Ms. O'Hanks should be denied, and Ms. O'Hanks' cross-motion for a judgment dismissing Plaintiff's HSAA claim should be granted.

5583566

17

DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1

**C.**     **PLAINTIFF'S CLAIM FOR RELIEF UNDER WATER CODE SECTIONS 13304 AND 13350**

2

**FAILS BECAUSE THESE AUTHORITIES DO NOT CREATE A PRIVATE CLAIM FOR**

3

**RELIEF.**

4        Plaintiff's Fourth Claim for Relief asserts violations of the California Water Code section

5  13304(a), stating "'[a]ny person… who has caused or permitted, causes or permits, threatens to cause or

6  permit any waste to be discharged or deposited where it is, or probably will be discharged into the waters

7  of the state and creates, or threatens to create, a condition of pollution or nuisance' is strictly liable,

8  triggering injunctive relief and civil penalties. See Cal. Water Code, § 13304(a)." Plaintiff's Motion

9  (ECF 234), p. 21.  Plaintiff thus seeks civil penalties and injunctive relief against Defendant O'Hanks

10 under this section.

11        Nevertheless, an examination of section 13304(b) indicates it does not create a private right of

12 action because it provides:

13            "a person who discharges waste into the waters of this state… or threatens to
               create, a condition of pollution or nuisance, **shall, upon order of the regional**
14            **board**, clean up the waste or abate the effects of the waste, or, in the case of a
               threatened pollution or nuisance, take other necessary remedial action, including,
15            but not limited to, overseeing cleanup and abatement efforts . . . . **Upon failure of**
               **a person to comply with the cleanup or abatement order, the Attorney**
16            **General, at the request of the board**, shall petition the superior court for that
               county for the issuance of an injunction requiring the person to comply with the
17            order."

18

19

20 Cal. Water Code, § 13304(a) (emphasis added).  Similarly, section 13350, also relied upon by Plaintiff,

21 only creates civil liability for failure to comply with a cease and desist or abatement order of a regional

22 water quality control board or the State Water Resources Board.  Cal. Water Code, § 13350 ("a person

23 who (1) violates a cease and desist order . . . or (2) in violation of a waste discharge requirement . . . issued

24 by a regional board or state board").

25        That sections 13304 and 13350 do not create a private right of action is further buttressed by the

26 legislative intent expressly set forth in the Water Code: "It is the intent of the Legislature that the state

27 board and each regional board shall be the principal state agencies with primary responsibility for the

28 coordination and control of water quality.  **The state board and regional boards in exercising any**

5583566

1 **power granted in this division shall conform to and implement the policies of this chapter**." Water

2 Code, § 13001 (emphasis added).

3     Finally, judicial statements make clear that enforcement of the Porter-Cologne Water Quality

4 Control Act (Water Code section 13000 et seq.) is the province of the State Water Resources Control

5 Board and the regional boards.  "The Porter-Cologne Act recognizes that the protection of water quality

6 can best be accomplished by statewide regulation with regional administration.  Thus, under the act, the

7 State Water Resources Control Board (State Board) and nine regional boards are the principal state

8 agencies charged with enforcing state water pollution law."  <u>Sweeney v. Cal. Regional Water Quality</u>

9 <u>Control Bd.</u> 61 Cal.App.5th 1093, 1113 (2021).  Plaintiff's claim for relief under Water Code 13304 and

10 13350 must fail because these sections do not create a private right of action.  Therefore, as a matter of

11 law, Plaintiff's motion for summary judgment as to these claims should be denied, and Ms. O'Hanks'

12 motion for summary judgment as to these claims should be granted and the claims dismissed.

13     **D.    PLAINTIFF'S NEGLIGENCE AND NUISANCE CLAIMS FOR RELIEF MUST FAIL AS**

14     **EITHER BARRED BY THE APPLICABLE THREE-YEAR STATUTE OF LIMITATIONS, OR**

15     **BECAUSE PLAINTIFF CANNOT NOW PROVE ITS ALLEGATIONS THAT THE**

16     **CONTAMINATION AT THE SITE IS AN ABATABLE NUISANCE.**

17     **1.    Plaintiff's Negligence and Negligence Per Se Causes of Action Are Time-**

18     **Barred**

19     As shown in section III(A). above, Plaintiff knew of the PCE contamination at its property at least

20 six years before it filed the instant lawsuit. Specifically, the declaration of Mr. Clark-Riddell submitted

21 upon this motion states PCE, a chemical used in dry-cleaning, was discovered at the Site in October 2014,

22 and that in early 2015, Pangea met with Plaintiff for a meeting concerning Site information.  ECF 234-2,

23 ¶¶ 29-30.  Further, for many years prior to early 2015, Plaintiff knew Ms. O'Hanks and her husband were

24 leasing the Site from it to run a dry-cleaning business as indicated in a 1990 lease between Plaintiff and

25 the O'Hanks'.  Plaintiff's Compendium of Exhibits, Vol. 7 (ECF 234-11), Exhibit 42 at COH-003689

26 (referencing a "dry cleaning plant").  In other words, Plaintiff knew or should have known that it had a

27 potential claim for relief against Ms. O'Hanks no later than early 2015, and likely as early as October

28 2014.  The statute of limitations for a negligence or nuisance action for damage to real property is three

years. Cal. Code Civ. Proc. §338(b). This means that Plaintiff had until October 2017 (three years after October 2014 when Pangea, on Plaintiff's behalf, discovered PCE at the Site) or, at the latest, early 2018 (three years after early 2015 when Pangea and Plaintiff had a meeting about Site information), to bring suit against Ms. O'Hanks. Plaintiff did not file the instant lawsuit until November 11, 2020. ECF 1. Therefore, Plaintiff's negligence and nuisance claims against Ms. O'Hanks claims are time-barred.

Plaintiff may point to certain tolling agreements Ms. O'Hanks executed with Plaintiff to argue that its negligence and nuisance claims for relief against her are timely, but this argument will fail. The first of these tolling agreements was fully executed by Ms. O'Hanks and Plaintiff on April 20, 2019, the date of Plaintiff's signature. Dow Decl., ¶ 41 and Ex. Y at p. 3. The second tolling agreement makes clear that the first tolling agreement was executed "in early 2019" (id., ¶ 42 and Ex. Z at p. 1) although the first paragraph of the first tolling agreement states the effective date is December 2018. id., Ex. Y at p.1). The first tolling agreement further provides: "The time period between the Effective Date of this Agreement and the Termination Date shall not be counted in determining the applicability of any statute of limitation or other time-based defenses in any action/litigation brought by the Parties relating to liabilities for PCE releases and PCE remediation on, below or emanating from the Richmond Property." Id. at Ex. Y, p. 2, para. (2). Assuming for the sake of argument that the effective date of the first tolling agreement is December 1, 2018, this is the first day of the period that "shall not be counted in determining the applicability of any statute of limitations." Unfortunately for Plaintiff, the three-year statute of limitations for its negligence and nuisance claims had run by early 2018, if not by October 2017, three years after Plaintiff's consultant discovered PCE at the Site. For this reason, Plaintiff's negligence and negligence per se claims are time-barred, Plaintiff's motion for summary judgement on these claims should be denied, and Ms. O'Hanks' cross-motion for summary judgment dismissing these claims should be granted.

///
///
///
///
///

5583566

2.     **To the Extent Plaintiff Argues that its Public Nuisance and Nuisance Per Se Claims May Not Be Barred by the Three-Year Statute of Limitations of Code of Civil Procedure Section 338(b) Because They Are Continuing, a Material Question of Fact Remains as to Whether the Contamination at the Site Is a Continuing Nuisance Because Plaintiff Has Never Fully Characterized the Site.**

To enjoy a continuously accruing statute of limitations based on a claim of continuing nuisance, Plaintiff must show the alleged nuisance is abatable.  "Plaintiffs proceeding on a continuing nuisance theory bear the burden of establishing by substantial evidence that the nuisance is 'abatable' – i.e., that the environmental contamination can be remedied at a reasonable cost by reasonable means. California Practice Guide: Real Property Transactions, D. Common Law Environmental Hazards Liability, 5:158.1 (Sept. 2022 Update); Mangini v. Aerojet-General Corp., 12 Cal. 4th 1087, 1103-1104 (1996) ("Since plaintiffs failed to prove a continuing nuisance, damages awarded on that theory may not stand."). "Whether contamination by toxic waste is a permanent or continuing injury . . . turn[s] on the nature and extent of the contamination." Mangini, 12 Cal. 4th at 1097.  In a case where "the evidence clearly showed that no one knows how bad the contamination is or how to remedy it", there is "an absence of substantial evidence of abatability." Id.  Where a site "is not sufficiently characterized to draw firm conclusions with respect to the extent of the contamination, and the methods and costs of remediation. . . . the result of the uncertainty . . . is that there is no substantial evidence of abatability." Beck Development Co., supra, 44 Cal. App.4th at 1222. Where there is no substantial evidence of abatability, a court has found that an alleged public nuisance is not continuing and the three-year statute of limitations applies to bar the claim. Id. at 1222-1223.

Here, Mr. Utz and his DTSC colleague have made clear that Plaintiff has never properly characterized the contamination at the Site, and when Mr. Utz was asked in his deposition if the DTSC-unapproved work, i.e., "interim actions," Plaintiff conducted at the Site from 2017 to 2020 would become part of the final remedy at the Site, he stated: "In the absence of a decision document, I can't tell you whether the SVE and/or SSD systems or system would be selected as a removal or remedial action at that site." SOF, section III(C) supra.  Based on the foregoing, a disputed question of material fact remains as

1  to whether the alleged nuisance posed by the Site is abatable, and therefore whether Plaintiff may avail

2  itself of the continuous accrual rule.  Therefore, the Court should deny Plaintiff's motion for summary

3  judgment as to Plaintiff's continuing nuisance claim.

4  **E.  PLAINTIFF'S NEGLIGENCE, NEGLIGENCE PER SE, PUBLIC NUISANCE AND NUISANCE PER**

5  **SE CLAIMS EITHER FAIL SUBSTANTIVELY AND/OR ARE SUBJECT TO DEFENSES**

6  Even assuming Plaintiff's negligence and nuisance claims can overcome obvious statute of

7  limitations issues (and Ms. O'Hanks' makes no such concession) other issues of proof at the very least

8  prevent Plaintiff from obtaining summary judgment.  Therefore, the Court should deny Plaintiff's motion

9  for summary judgment as to these claims.

10  **1.  Plaintiff Submits No Evidence Upon Its Motion that Ms. O'Hanks**

11  **Breached a Duty of Care to Plaintiff and the Evidence It Does Submit**

12  **Demonstrates Her Deceased Husband Exercising Reasonable Care**

13  As pointed out in Plaintiff's Motion, Plaintiff must prove duty, breach, causation and damages to

14  prevail on its negligence claims. Plaintiff's Motion (ECF 234), sec. VI., 25:12-16.  Here, Plaintiff states

15  without factual argument and in conclusive fashion that "Defendants negligently used their drycleaning

16  equipment and allowed discharges, spills, and leaks of PCE. Defendants' breach of their duty of care

17  caused hazardous substances to contaminate the Site and surrounding property." Id. at 26:8-18.

18  Nevertheless, in the context of a case involving a dry cleaning business from which there was an alleged

19  leak of PCE,  a court has noted that "[s]imply because an injury occurs does not mean that a defendant

20  acted unreasonably." Coppola v. Smith, 935 F.Supp.2d 993, 1016 (E.D. Cal. 2013). In other words,

21  simply because there is PCE contamination at the Site doesn't mean Ms. O'Hanks breached a duty of

22  care to Plaintiff.  Further, on January 1, 2022, in response to a DTSC Request for Information and

23  Document to Catherine O'Hanks, Ms. O'Hanks stated under oath and under penalty of perjury that she

24  "is not aware of any disposal of perchlorotheylene [aka, PCE] at the Site" and stated that she has "no

25  personal knowledge of leaks, spills, releases or threats of releases of perchloroethylene at the Site."

26  Plaintiff's Compendium of Exhibits, Vol. 2 (ECF 234-6), Exhibit 30 at COH-000779, COH-000786.  Put

27  another way, Ms. O'Hanks is unaware of any act in which she engaged causing PCE to infiltrate the

28  subsurface of the Site, much less an unreasonable act.

5583566

1       Also, in the context of a case involving PCE contamination allegedly stemming from a dry-

2  cleaning business, this Court has noted "[t]he reasonableness of a defendant's actions is a quintessential

3  jury question" and "whether [defendant] acted reasonably under the circumstances . . . [is a] question[ ]

4  of fact to be resolved by trial, not summary judgment." Schaeffer v. Gregory Village Partners, L.P.,105

5  F.Supp.3d 951, 956, 963 (E.D. Cal. 2015) (underline added, internal citations and quotations omitted).

6       Here, Plaintiff submits no facts that eliminate issues of material fact as to Ms. O'Hanks' alleged

7  breach of a duty of care to Plaintiff.  Plaintiff acknowledges that Ms. O'Hanks ran a dry-cleaning business

8  with her late husband from 1960-1990 (Clark-Riddell Decl., ¶ 12) , but does not submit any evidence

9  showing that she failed to meet the standard of reasonable care for a dry-cleaning business owner during

10  that time period.  Rather, Plaintiff submits evidence showing Ms. O'Hanks late husband, Roy O'Hanks,

11  exercising reasonable care, i.e., a declaration from Sandra Vernell stating Mr. O'Hanks, cleaned up a spill

12  of PCE and that he trained Ms. Vernell to clean up spills of PCE. Declaration of Sandra Vernell ("Vernell

13  Decl.") (ECF 234-4), ¶ 12.  Clearly, whether Ms. O'Hanks breached a duty of care to Plaintiff should be

14  resolved at trial of this matter and cannot be resolved upon Plaintiff's Motion.

15       **2.**     **Plaintiff Provides No Analysis Showing It Is Entitled to Summary**

16              **Judgment on Its Claim for Negligence Per Se and the Issue of Causation Is**

17              **Normally Left to the Jury**

18       Plaintiff states the four elements for negligence per se and then without any analysis summarily

19  concludes that "Defendants' conduct has violated 42 U.S.C. § 9607(a); Cal. Health & Saf. Code, §§

20  25300, 25363; Cal. Water Code, §§ 13304, 13350; and Cal. Civil Code §§ 3479, 3480.  Defendants'

21  violation of these laws caused the environmental damage to the Site." Plaintiff's Motion (ECF 234), sec.

22  VII. 27:2-11.  Plaintiff does not show for each statute that Ms. O'Hanks (1) violated the statute or

23  regulation, (2) the violation caused Plaintiff's injury, (3) the injury resulted from the kind of injury the

24  statute or regulation was designed to prevent, and (4) the Plaintiff was a member of the class of persons it

25  was intended to protect.  Clearly, plaintiff must prove proximate cause under the doctrine of negligence

26  per se.Capolungo v. Bondi, 179 Cal. App. 3d 346, 349 (1986).  Here, Plaintiff sets forth no facts showing

27  that an act or omission of Ms. O'Hanks actually caused the contamination at the Site.  Further, the first

28  two elements, violation of a statute or regulation and proximate cause, "are normally considered questions

5583566

1   for the trier of fact." Id. at 350.

2       Further, "the presumption of negligence codified in Evidence Code section 669, subdivision (a),

3   may be rebutted by proof that '[t]he person violating the statute, ordinance, or regulation did what might

4   reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired

5   to comply with the law.'" Taulbee v. EJ Distribution Corp., 35 Cal.App.5th 590, 597 (2019). Assuming

6   Plaintiff can prove a prima facie case of negligence per se (and Plaintiff has not done so here), the Vernell

7   Decl. shows Roy O'Hanks exercising reasonable care in cleaning up a spill of PCE and training

8   employees to do the same. For these reasons, this claim for relief cannot be resolved upon Plaintiff's

9   Motion.

10          **3.      Plaintiff's Public Nuisance Claim for Relief Fails Because Plaintiff Offers**

11                  **No Specific Proof of Injury to the Public**

12      Without factual argument and in conclusory fashion, Plaintiff claims "[t]he PCE contamination

13  caused by Defendants' operation of a drycleaning business on the subject site has spread throughout the

14  Site and beyond, thereby posing . . .  a risk to the general public."  A claim for public nuisance does not lie

15  "merely because the public may be said to be affected in some tangential manner rather than specifically

16  in the manner set forth in Civil Code section 3479." Beck Development Co. v. Southern Pacific

17  Transportation Co., 44 Cal.App.4th 1160, 1209  (1996).  To prevail on this claim, plaintiff must submit to

18  the Court "evidence of a specific injurious impact on surrounding lands." Id.  Plaintiff sets for the no such

19  evidence here. In fact, here there is evidence to the contrary.  On or around March 2022, Mr. Utz

20  informed the owner of a private residence directly adjacent to the Site that the "dry cleaning chemical

21  PCE were detected beneath your building, and at very low concentrations in your indoor air. But, the

22  concentrations in your indoor air were below our conservative screening level of 0.46 micrograms per

23  cubic meter, and in fact low enough that the lab instrumentation doesn't give a precise measurement."

24  Dow Decl., Ex. T at DTSC000005837. Mr. Utz concludes, "[f]or now, the data are not a short term

25  concern." Id.  Further, Mr. Utz testified that while DTSC "continues to consider the possibility" that PCE

26  from the Site may be migrating to offsite areas, such migration has not been confirmed.  Utz Depo. at

27  66:24-67:24.  In the words of Beck Development, there is no "evidence of a specific injurious impact on

28  surrounding lands" emanating from the Site. Therefore, Plaintiff cannot be granted summary judgment on

5583566

its public nuisance claim.

        **4.**      **Plaintiff's Claim for Nuisance Per Se Based on the Water Code Fails Because the Water Code Does Not Define a Per Se Nuisance**

Contrary to Plaintiff's argument (Plaintiff's Motion (ECF 234), sec. VI), "the Water [Code] does not expressly declare anything to be a nuisance by its very existence; rather, it incorporates the general factual inquiry relating to and defining nuisances, limits its application to public nuisances, and establishes additional limiting factors." Beck Development Co., 44 Cal.App.4th at 1208.  For this reason, a nuisance under the Water Code is determined in the same way as a common law public nuisance. Because Plaintiff does not prove with specific evidence that the Site is a public nuisance, and because Ms. O'Hanks submits to the Court evidence it is not (see section IV(E)(3) above), Plaintiff is not entitled to summary judgment on its claim for public nuisance under the Water Code.

**V.**    **CONCLUSION**

Based on the foregoing, Ms. O'Hanks respectfully requests the Court deny Plaintiff's Motion for Partial Summary Judgment in its entirety and grant her Cross-Motion for Partial Summary Judgment in its entirety.

Date:    July 26, 2024

                                        EDLIN GALLAGHER HUIE + BLUM

                                        By: _____
                                          CHRISTOPHER J. DOW
                                        ANDREW D. PEREZ
                                        Attorneys for Defendant
                                        CATHERINE O'HANKS

**Re**:  <u>**Casa Nido Partnership v. Catherine O'Hanks, et al.**</u>
**United States District Court, Northern District Case No. 3:20-cv-7923**

### CERTIFICATE OF SERVICE – L.R. 5-3.2

I am a citizen of the United States and an employee in the state of California. I am over the age of eighteen (18) years and not a party to the within action. My business address is EDLIN GALLAGHER HUIE + BLUM, 515 S. Flower St. Ste. 1020. Los Angeles, California 90071.

I hereby certify that on July 26, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CATHERINE O'HANKS' NOTICE OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

  **X**   **BY ELECTRONIC SERVICE**:  I caused such document to be electronically served the United States District Court Case Filing website on the recipients designated on the electronic service list that is located on the Pacer website.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on July 26, 2024, at Los Angeles, California.

_____
ANAHIT AVETISYAN

5561867

1

CERTIFICATE OF SERVICE