WILLIAM NOEL EDLIN, ESQ. (SBN 107796)
nedlin@eghblaw.com
CHRISTOPHER J. DOW, ESQ. (SBN 250032)
cdow@eghblaw.com
ANDREW D. PEREZ, ESQ. (SBN 348645)
aperez@eghblaw.com
EDLIN GALLAGHER HUIE + BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:     (415) 397-9006
Facsimile:     (415) 397-1339

Attorneys for Defendant
CATHERINE O'HANKS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CASA NIDO PARTNERSHIP, a California Partnership,<br><br>        Plaintiff,<br><br>      vs.<br><br>CATHERINE O'HANKS; JAE KWON aka JAY KWON aka JAY KWON SHIK aka JAY SHIK KWON; LYNNE MARIE GARIBOTTI aka LYNNE G. BLOWER, individually and as Trustee of the Claudio Garibotti Trust, dated May 1, 1952; SENTRY INSURANCE COMPANY; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON) and EARL RAY ANDERSON,<br><br>        Defendants. | Case No. 3:20-cv-7923- EMC<br><br>**DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date: August 22, 2024<br>Time: 1:30 p.m.<br>Judge: Edward M. Chen<br>Courtroom.: 5 – 17th Floor<br><br>Third Amended Complaint Filed: December 16, 2022 |

5561859

1

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

## DECLARATION OF CHRISTOPHER J. DOW

I, Christopher J. Dow, declare:

1.      I am an attorney at law licensed to practice before all Courts of the State of California and admitted to practice law before the United States District Court of the Northern District of California.  I am a partner with the law firm Edlin Gallagher Huie & Blum, attorneys of record for Defendant Catherine O'Hanks.

2.      This declaration is submitted in support of Defendant Catherine O'Hanks' Cross-Motion for Summary Judgment and in Opposition to Plaintiff Casa Nido's Motion for Partial Summary Judgment.

3.      Unless a matter is averred to upon information or belief, I have personal knowledge of the facts stated herein.  If called and sworn as a witness, I could testify competently to the truth of the facts set forth in this declaration.

4.      To the best of my knowledge, all documents and other materials attached as Exhibits to this declaration are true and correct copies of these documents and materials.

5.      In a letter dated June 4, 2020 (attached hereto as **Exhibit A**), Ron Piziali ("Mr. Piziali") of Plaintiff Casa Nido Partnership wrote the following to Ian Utz ("Mr. Utz."), the DTSC Environmental Scientist and project manager overseeing the investigation of Plaintiff's real property at 12210 San Pablo Avenue in Richmond, CA ("the Site"): "We are currently in our sixth year of working to remove toxins from these properties."

6.      According to a December 22, 2016 letter (attached hereto as **Exhibit B**) from Ron Piziali to Megan Indermill, the then DTSC project manager for the Site, on November 1, 2016,  Mr. Pizialli and Mr. Clark-Riddell met with DTSC to discuss Plaintiff entering into a voluntary cleanup agreement ("VCA") for Site cleanup.  Ex. B at DTSC000005105.  After the meeting, Mr. Pizialli informed Ms. Indermill "the [Casa Nido] partnership in not willing to sign the proposed agreement" explaining

> [t]he agreement simply does not seem to us to be a sufficiently positive contribution to carrying out the action. **It is highly legalistic, and it places many burdensome requirements on the partnership that we feel will greatly increase costs, without providing real benefit. In addition, there are simply too many points in the agreement that seem unnecessary** -- either (1) to Casa Nido achieving the investigation and cleanup, paying for work and paying for

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

5561859

1

2

Department oversight, or (2) to the Department doing its job of oversight to
assure that Casa Nido does the work right.

3

Ex. B at DTSC000005105 (bold added).

4

      7.      From 2017 to 2020, Plaintiff proceeded to perform investigation and cleanup work at the

5

Site without DTSC oversight as noted in Mr. Utz' meeting minutes (attached hereto as **Exhibit C**)

6

documenting a November 9, 2020 meeting between DTSC and Plaintiff.  In the meeting minutes, Mr.

7

Utz notes that

8

9

10

11

12

Casa Nido entered into a Voluntary Cleanup Agreement (VCA, or Enforceable
Agreement), intending to use about $1 million in available funding from the
partnership's sale of another property to address all the contamination at this Site.
**They then, without DTSC oversight, even though a VCA had been signed,
made a business judgment to proceed quickly with several interim actions
from 2017 to 2020, totaling almost $1 million**, to address the
known/discovered risk that this property poses to adjacent properties and the
environment.

13

14

Ex. C at DTSC000000209 (bold added).  Mr. Utz' November 9. 2020 meeting minutes also state that

15

DTSC was unable to determine if Plaintiff's activities at the Site complied with the NCP, and that

16

Plaintiff did not follow the rules for a time critical removal action at the Site:

17

18

19

20

21

22

23

24

25

**The cleanup work has so far not followed State or federal law or the
voluntary agreement**.  Therefore, DTSC cannot determine whether the work
was completed <u>safely</u>, or whether the work was <u>effective</u>, or necessary, **or if that
work would have been in compliance with National Contingency Plan
(NCP).  In addition, there are already legal options to quickly completing
emergency/time- critical removals.  The work performed by the Owner and
consultant did not follow those legal options** as they moved forward without
input from DTSC even though they had signed an Enforceable Agreement that
would if followed had led them to an NCP-compliant cleanup and been
protective of human health and the environment.  **The work that DTSC
requested several years ago, which remains incomplete**, was intended to
ascertain whether surrounding properties were endangered.  Casa Nido's
exhaustion of the $1 million was a business decision.  Casa Nido should perform
its obligations under the Enforceable Agreement Statement/Scope of Work.

26

<u>Id</u>. at DTSC000000209-210 (underline in original, bold added).

27

      8.      On October 8, 2020, previous to the DTSC's Nov. 9 meeting with Plaintiff, Mr. Utz

28

stated in correspondence to Plaintiff (attached hereto as **Exhibit D**) that its DTSC-unapproved work at the

5561859

3

1   Site would be referred to as "interim actions."  In this correspondence, DTSC states: "The unapproved

2   remedial activities performed to date (e.g., soil excavation, soil amendments, permeable reactive barriers,

3   soil vapor extraction, and sub-slab depressurization) shall hereafter be referred to as 'interim actions.'

4   DTSC did not oversee, evaluate, or approve the interim actions." Ex. D at DTSC000000182.

5         9.     Mr. Utz, during his February 29, 2024 deposition in this matter (relevant excerpts

6   attached hereto as **Exhibit E**), confirmed that Plaintiff conducted investigation and removal activities at

7   the Site without DTSC oversight and stated that DTSC oversight of hazardous substances cleanup is

8   important because "DTSC is a regulator for the State of California, and its oversight of hazardous

9   substances cleanup sites is intended, in part, to ensure that cleanups occur safely and legally."  Ex. E ("Utz

10  Depo.")) at 46:1-47:14.

11        10.    Mr. Utz further confirmed in his deposition that Plaintiff's excavation of soil at the Site

12  was not performed under DTSC oversight (Utz Depo. at 50:21-51:7), the soil vapor extraction system

13  that Plaintiff installed at the Site was never evaluated by DTSC (id. at 52:7- 52:18) and the sub-slab

14  depressurization system Plaintiff installed at the Site was never evaluated by DTSC (id. at 52:22-54:8).

15        11.    On March 17, 2022, in correspondence to the City of Richmond (attached hereto as

16  **Exhibit F**) describing the work at the Site, Mr. Utz noted the following: "Previous work included

17  building demolition (2017), soil removal and treatment to 15 feet below ground (2018), and installation of

18  pipes for sucking air out of the ground (2018 to 2020). But, a lot of this work happened without our

19  approval, because the owner has been reluctant to communicate and plan with us, and is trying to save

20  money." Ex. F at DTSC000004740; Utz Depo. at 176:22-178:3.

21        12.    On October 8 2020, Mr Utz noted in correspondence to Plaintiff that it had not completed

22  a preliminary endangerment assessment ("PEA") for the Site, "and therefore certain historical

23  information remains unknown."  Ex. D, supra, at DTSC000000185.

24        13.    In correspondence date November 23, 2020 (attached hereto as **Exhibit G**), Mr. Utz

25  further explained that the PEA, which is Task 2 of Plaintiff's VCA,

26            has only partially been fulfilled through existing reports/information (e.g., the
2016 site assessment [report], groundwater data, and soil vapor data). Incomplete
27            PEA elements include, but are not limited to:

28  

5561859

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

- Historical evaluation of surrounding properties, including for owners/operators and known/threatened releases.
- Historical evaluation of the site, including for owners/operators, hazardous materials/waste use/generation, inspections, permits, etc.
- Development of conceptual site model that lists the potential exposure pathways from contamination.
- Identification/listing of chemicals of potential concern (COPCs) through a screening evaluation process with data quality objectives.
- Human health and ecological screening evaluation, including calculation of cumulative risk and hazard.

While on the surface level some of these items have been contemplated or started, they have not been completed per our guidance.

Ex. G at DTSC000009626.  Mr Utz also stated that "[b]ecause the PEA requirement has not been fulfilled, DTSC does not have an adequate understanding of the owners/operators, nature or extent of known/threatened releases, or potential exposure pathways at the site." Id.

14.     At his February 29, 2024 deposition in this matter, Mr. Utz confirmed that Plaintiff never completed a preliminary endangerment assessment for the Site. Utz Depo. at 51:20-52:5; 84:17-20.

15.     In correspondence dated August 4, 2020 (attached hereto as **Exhibit H**), Jesse Negherbon, Ph.D., P.E., a Senior Hazardous Substances Engineer at DTSC, informed Mr. Utz that the "areal and vertical extents of the groundwater, soil, and soil gas contamination, on-site and off-site, should be delineated and I would recommend that a workplan is drafted to describe the efforts and commitments that will be undertaken to complete this work." Ex. H at DTSC000013419.

16.     On August 4, 2022, Mr. Utz noted in correspondence to Plaintiff (attached hereto as **Exhibit I**) that the current phase of the work at the Site was "characterization," and that "the directionality of future characterization" should include "adjoining buildings" and the "groundwater plume moving southwest." Ex. I at DTSC000009863.

17.     In his deposition, Mr. Utz confirmed Plaintiff never completed characterization of the Site, and stated the Site "remains in the site characterization phase of cleanup." Utz Depo. at 56:5-13.  Mr Utz also stated that "site characterization is important for many reasons. One of them is to understand the scope of the contamination, the types of contaminants, the lateral and vertical extent of the contaminants in environmental media and the potential risks, for example, they impose to human health or the

5561859

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

1    environment." Id. at 55:20-56-2.

2         18.      From the time of the 2017 VCA to its termination by Casa Nido in 2023, and through the

3    date of Mr. Utz's February 29, 2024 deposition, the remedy selection process for the Site had not been

4    started. Utz Depo. at 82:2-83:9 and errata sheet.  When asked if the DTSC-unapproved work, i.e.,

5    "interim actions," Plaintiff conducted at the Site from 2017 to 2020 would become part of the final

6    remedy at the Site, Mr. Utz stated: "In the absence of a decision document, I can't tell you whether the

7    SVE and/or SSD systems or system would be selected as a removal or remedial action at that site."  Id. at

8    81:21-24.

9         19.      On August 4, 2020, Mr. Negherbon informed Mr. Utz that the monitoring data from the

10   remedial technologies Plaintiff had installed at the Site "are not sufficient to demonstrate a protective

11   impact on the surrounding residences and places of business." Ex. H, supra, at DTSC000013419.

12        20.      In correspondence dated October 19, 2020 (attached hereto as **Exhibit J**), Mr. Utz told

13   Plaintiff to stop work at the Site due to the lack of a health and safety plan ("HASP") being in place to

14   protect workers, stating "[t]he existing health and safety documentation are inadequate for the purposes of

15   hazardous waste cleanup." Ex. J at DTSC000009570-71; Utz Depo. at 58:22-60-12, 65:9-19.  Mr. Clark-

16   Riddell stated that he would inquire about the HASP DTSC required. Ex. J at DTSC000009570.

17        21.      In December 2020,  Mr. Utz threatened to stop granting Plaintiff extensions on VCA

18   deadlines because "DTSC was concerned about the pace of -- of work being completed as requested by

19   DTSC and the implications to human health and the environment." Utz Depo. at 85:13-87:11.

20        22.      Plaintiff eventually submitted a HASP to DTSC on December 15, 2020, but the

21   Department determined in a January 20, 2021 memorandum (attached hereto as **Exhibit K**) that the

22   HASP was inadequate because it did not conform to state regulations regarding site control, worker

23   training, engineering controls, work practices and personal protective equipment.  Ex. K at

24   DTSC000004726-28.

25        23.      In correspondence dated February 16, 2021 (attached hereto as **Exhibit L**), Mr Utz

26   informed Mr. Clark-Riddell that the workplan for the Site had been in revision since 2018 and that Mr.

27   Utz did not understand what was taking Plaintiff so long to complete the HASP.  Ex. L at

28   DTSC000005194.

5561859

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

24.      In correspondence dated March 9, 2021 (attached hereto as **Exhibit M**), Mr. Utz informed another DTSC employee that because Plaintiff had not submitted revised versions of the workplan or HASP, it was "now out of compliance." Ex. M at DTSC000005325.

25.      On March 16, 2021 in view of Plaintiff's failure to submit a workplan or HASP for the Site, Mr. Utz sent correspondence to Plaintiff (attached hereto as **Exhibit N**) that if it did not submit the documents to DTSC by March 19, 2021, "I will petition that this matter be moved to our enforcement program, including termination of the governing Voluntary Cleanup Agreement (VCA) and issuance of an Imminent and Substantial Endangerment Order (l & SE Order)." Ex. N at DTSC000005217.

26.      On October 29, 2021, DTSC sent correspondence to Plaintiff (attached hereto as **Exhibit O**) conditionally approving an off-site vapor intrusion workplan (the "2021 VI Workplan"). Ex. O at DTSC000010105. This is the only workplan that Plaintiff completed for the Site. Utz Depo. at 47:17-48:12. The one HASP DTSC accepted for the Site was submitted in conjunction with the 2021 VI Workplan. Id. at 61:9-16.

27.      The following December, DTSC expressed disappointment that the 2021 VI Workplan was not being implemented and stated that "[f]ailure to respond by 12/24/2021 will be considered noncompliance with the enforceable agreement (voluntary cleanup agreement). Continuing noncompliance with the enforceable agreement may result in termination of the agreement, followed by execution of an order that carries with it civil and/or administrative penalties of $25,000 per violation per day of noncompliance for Casa Nido Partnership." Ex. O at DTSC000010102.

28.      In correspondence dated February 2, 2022 (attached hereto as **Exhibit P**), Mr. Utz informed Plaintiff that it was 14 weeks delayed according to its own schedule for implementing the 2021 VI Workplan and that DTSC was "extremely concerned about the pace and quality of this work implementation." Ex. P at DTSC000016049.

29.      As reflected in correspondence dated March 4, 2022 (attached hereto as **Exhibit Q**), Plaintiff still had not implemented the VI 2021 Workplan and DTSC was threatening to carry the work out itself and find Plaintiff in noncompliance with the VCA. Ex . Q at DTSC000010203. In his February 2024 deposition in this matter, Mr. Utz stated that Plaintiff never fully implemented the 2021 VI Workplan. Utz Depo. at 175:23-176:4.

5561859

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

30.     In March 17, 2022 correspondence (attached hereto as **Exhibit R**), Plaintiff provided in response to a DTSC request "sampling data not already provided to DTSC including laboratory results for soil, soil gas, groundwater and indoor air sampling for the site and adjoining properties." Ex. R at DTSC000004659.  Upon receipt of this information, one of Mr. Utz colleagues at DTSC, Coby Graham, asked Mr. Utz if "these samples were collected under DTSC approved sampling plans and the required planning documents were submitted to DTSC for approval?" Id. at DTSC000004658.  Mr. Utz replied, "No and no." Id.  Mr. Graham then asked, "Hmmm . . . what's the VCA say with regards to work plans and activities subject to DTSC review and comment?" Id.  Mr. Utz replied: "They have demonstrated a disregard for its scope." Id.  Mr. Utz confirmed at his deposition that Plaintiff demonstrated a disregard for the scope of the VCA. Utz Depo. at 175:13-20.

31.     As reflected in correspondence dated March 21, 2022 (attached hereto as **Exhibit S**), Plaintiff through Pangea was submitting to DTSC sub-slab soil gas samples taken in September 2020 from a veterinary clinic and a private residence at 403 McLaughlin Street adjacent to the Site which DTSC noted were collected "without a workplan or DTSC approval." Ex. S at DTSC000005721. Further, DTSC noted that the samples submitted by Pangea to DTSC presented chain of custody issues such that DTSC could not confirm where the samples were taken or when the samples were collected and analyzed. Id.

32.     In correspondence date March 14, 2022 (attached hereto as **Exhibit T**), Mr. Utz confirmed with the homeowner of 403 McLaughlin Street that Pangea's testing of the indoor air of the residence was taking place without DTSC knowledge or approval:

> Casa Nido Partnership, who owns the former dry cleaner property, and its consultant PANGEA Environmental Services, Inc., have been working with you to sample your home sub-slab soil gas and indoor air. It sounds like they have also been installing some features in your basement and crawl space, <u>without our knowledge or prior approval</u>. We would like to speak with you about this, to make sure that we can still collect the data that we need, <u>and ensure you are protected and not disturbed by the odors</u>.

Ex T at DTSC000005839 (underline added).

33.     In his deposition, Mr. Utz confirmed that Pangea conducted work at 403 McLaughlin Street without DTSC approval. Utz Depo. at 179:22-180:7.  Mr. Utz also confirmed that DTSC could not

discern from Pangea's documentation where the soil gas samples were taken and when they were collected and analyzed. Id. at 181:10-182:21.  Mr. Utz stated "[t]hese mistakes are fundamental mistakes and they represent an issue of quality control and quality assurance." Id. at 183:1-3.  By fundamental mistakes, Mr. Utz meant that "the  existence of these mistakes prevents any interpretation of the results." Id. at 183:16-18.  He also stated Pangea's mistakes could have been avoided if "the work was planned in advance and documented in a work plan." Id. at 183:5-12.  Finally, Mr. Utz stated Pangea's mistakes "illustrate[] the importance of workplans." Id. at 183:14-20.

34.     On December 21, 2022, Plaintiff informed DTSC by letter (attached hereto as **Exhibit U**) that it was terminating the VCA on March 1, 2023.

35.     The VCA was terminated by Plaintiff on March 27, 2023 as indicated in the Finding of Fact section of DTSC's Imminent and Substantial Endangerment Determination and Order and Remedial Action Order to Plaintiff and Defendants Ms. O'Hanks, Ms. Sandra Vernell, and Mr. Earl Anderson (the "2023 ISE Order" or "Order") which was sent to my attention via email by Ian Utz on October 6, 2023. This transmittal email and the Order are attached hereto as **Exhibit V**.

36.     When asked if the tasks in the VCA were completed by Casa Nido, Mr. Utz stated: "To my knowledge, the tasks listed in [the VCA] in their totality were not completed by Casa Nido." Utz Depo. at 24:21- 25:5; 35:24-36:4.

37.     In correspondence dated March 9, 2023 (attached hereto as **Exhibit W**), Mr. Utz informed Plaintiff of the following upon DTSC's review of soil gas and indoor air data for work conducted by Plaintiff under the 2021 VI Workplan in March and September 2022: "Despite the workplan requirement to have the data third-party validated against laboratory reports and work plan data quality objectives, that has still not taken place.  This needs to occur." Ex W. at DTSC000006327.  Mr. Utz also noted "the absence of several applicable SFRWQCB [San Francisco Regional Water Quality Control Board] or DTSC screening criteria . . . . As a result, the table as submitted is insufficient for risk management (screening level) purposes." Id.  In his deposition, Mr Utz stated it was typical of Pangea to submit to DTSC documents it requested under the VCA which did not meet applicable regulatory requirements. Utz Depo. at 90:2-11.

38.     The 2023 ISE Order states:

5561859

9

The purpose of this Order is to require for the Site: implementation of any appropriate removal actions, completion of a Remedial Investigation/Feasibility Study (RI/FS), preparation of a Remedial Action Plan (RAP) or Removal Action Workplan (RAW), preparation of California Environmental Quality Act (CEQA) documents, and Design and Implementation of the removal or remedial actions approved in the RAW or RAP. An overall Site investigation and remediation strategy shall be developed by Respondents in conjunction with DTSC which reflects program goals, objectives, and requirements.

Ex. V at p. 7. In its Findings of Fact, the 2023 ISE Order states that "[f]rom 2018 to 2020, Casa Nido conducted interim actions without DTSC review or approval, including treatment and/or removal of soil, soil gas, and groundwater." Id. at p. 3. The Order includes the following as interim actions unapproved by DTSC: "In 2018 . . . removal of soil on Site to depths of between 3 and 15 feet below ground surface (bgs), and treatment of groundwater with chemical amendments including zero-valent iron at 14.5 to 15 feet bgs and "[s]ince 2020 . . . soil vapor extraction (SVE) on Site at 4.5 to 10 feet bgs, and sub-slab depressurization (SSD) at the off-Site south adjoining restaurant property at 0.5 to 1.5 feet bgs." Id.

39.     On October 16, 2023, one of Plaintiff's attorneys sent DTSC a letter (attached hereto as **Exhibit X**) regarding the 2023 ISE Order to DTSC stating that it requires

the improper inclusion of several requested studies and investigations in the Order which should not be required given that Casa Nido (operating pursuant to the Voluntary Cleanup Agreement) had to proceed with the remedial work without DTSC oversight due to the failure of DTSC to respond to requests for agency oversight, and given that Casa Nido's consultant Pangea has already provided DTSC with much if not most of the data, testing results and analysis that would be included in the studies and investigations requested in the Order.

40.     To the extent Plaintiff's counsel claims that it communicated to DTSC that the Department would not oversee its work, and therefore requested the oversight of DTSC, Mr. Utz stated: "I don't recall correspondence from Casa Nido representing that DTSC, during my time as project manager, was failing to provide oversight." Utz Depo. at 112:8-113:24. Mr. Utz further testified that to the extent Plaintiff is claiming that it has submitted to DTSC "most of the data, testing results and analysis that would be included in the studies and investigations requested in the Order," this claim is "incorrect." Id. at 115:13-25. When asked if any of Tasks 10 through 35 outlined in the Calendar of Tasks and Schedules of the Order are fully complete, Mr. Utz replied, "No." Id. at 119:14-120:9.

5561859

DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO PLAINTIFF CASA NIDO'S SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

41.     Attached as **Exhibit Y** hereto is a true and correct copy of the first tolling agreement Ms. O'Hanks entered into with Plaintiff relative to Plaintiff's claims in this litigation.  The first tolling agreement provides: "The time period between the Effective Date of this Agreement and the Termination Date shall not be counted in determining the applicability of any statute of limitation or other time-based defenses in any action/litigation brought by the Parties relating to liabilities for PCE releases and PCE remediation on, below or emanating from the Richmond Property." Ex. Y at p. 2, para. 2.

42.     Attached as **Exhibit Z** hereto is a true and correct copy of the second tolling agreement Ms. O'Hanks entered into with Plaintiff relative to Plaintiff's claims in this litigation.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on this 26th day of July 2024, in San Francisco, California.

_____

CHRISTOPHER J. DOW

5561859

11

**Re**:   <u>**Casa Nido Partnership v. Catherine O'Hanks, et al.**</u>
      **United States District Court, Northern District Case No. 3:20-cv-7923**

**CERTIFICATE OF SERVICE – L.R. 5-3.2**

I am a citizen of the United States and an employee in the state of California. I am over the age of eighteen (18) years and not a party to the within action. My business address is EDLIN GALLAGHER HUIE + BLUM, 515 S. Flower St. Ste. 1020. Los Angeles, California 90071.

      I hereby certify that on May July 26, 2024, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DECLARATION OF CHRISTOPHER J. DOW IN SUPPORT OF OPPOSITION TO**

**PLAINTIFF CASA NIDO'S SECOND MOTION FOR PARTIAL SUMMARY**

**JUDGMENT**

  **X**  **BY ELECTRONIC SERVICE**:  I caused such document to be electronically served the United States District Court Case Filing website on the recipients designated on the electronic service list that is located on the Pacer website.

      I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on July 26, 2024, at Los Angeles, California.

                              *Anahit A.*

                            ANAHIT AVETISYAN

5531004