# **EXHIBIT M**

Message

| | |
|---|---|
| **From:** | Utz, Ian@DTSC [Ian.Utz@dtsc.ca.gov] |
| **Sent:** | 3/9/2021 2:47:43 PM |
| **To:** | Brocales, Eric@DTSC [Eric.Brocales@dtsc.ca.gov] |
| **Subject:** | RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter |

I will, thanks. They still haven't submitted revised versions, so are now out of compliance.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>
**Sent:** Thursday, March 4, 2021 1:16 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Hi Ian,

Let me know if you need HSP support to review any revised HASPs or CAMPs for OMO Cleaners.


Thanks,

Eric

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Tuesday, February 16, 2021 9:50 AM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** mtc10860@aol.com; Rachel Doughty <rdoughty@greenfirelaw.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Hi Bob:

First, thank you for your continued communication. I'm going to compromise and approve an extension to **02/26/2021**, which will have allowed for 14 total business days for this revision. My justification for this is:

1. One goal of USEPA's data quality objectives process is to have workplans frontload decisions, so that the field work and data evaluation require fewer on-the-fly decisions. This is a workplan that will guide several months of work.

2. Several of the comments are repeat comments. This workplan has been in revision since 2018.

DTSC000005325

3. Work expands to fit the schedule. I'm going to be Casa Nido's advocate here and say that it took me about a day to review, and a day to write these comments, so shouldn't take much longer to make the edits, some of which consist of copying and pasting. Please call me if you have questions, or disagree with, a comment.

Second, it's not clear to me why the health and safety plan (HASP) is not yet complete. Why is it taking so long? Keep in mind that we didn't ask for two HASPs—we asked for one HASP, and now we are in a position of editing two. Thank you,

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Monday, February 15, 2021 11:11 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Ron Scheele <rscheele@pangeaenv.com>; Paul Kibel <pskibel@waterpowerlaw.com>
**Subject:** FW: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

EXTERNAL:

Mr. Utz,

Pangea prepared this email to request an extension for the revised workplan. Your February 5, 2021 letter provided 12 pages of comments on the *Draft Revised Off-site Vapor Intrusion Workplan* dated December 16, 2020. The letter provided only 5 business days to submit a revised workplan by February 15, 2021.

Pangea requires additional time respond to agency comments, which require the identification and use of subconsultant to assist with comments on the Quality Assurance Plan and the laboratory data validation aspect of the project. Based on the significant amount of remaining effort required to complete these tasks, Pangea requests an extension to submit the revised workplan by **March 15, 2020**.

Please note that this additional round of revisions further increases the cost to Casa Nido, due to workplan revision and DTSC review. Casa Nido requests that DTSC do everything in its capacity to help control cost related to workplan review and preparation. These additional costs further deplete the available resources for actual site work. Thank you for your consideration, Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Saturday, February 6, 2021 7:24 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** mtc10860@aol.com; Rachel Doughty <rdoughty@greenfirelaw.com>; Paul Kibel <pskibel@waterpowerlaw.com>;

DTSC000005326

Ron Scheele <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Thank you for confirming receipt. If you have questions about these comments, please call me on Monday. If PANGEA cannot meet this deadline, please request/justify an extension date.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Date:** Saturday, February 6, 2021 at 6:48 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>, Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** mtc10860@aol.com <mtc10860@aol.com>, Rachel Doughty <rdoughty@greenfirelaw.com>, Paul Kibel <pskibel@waterpowerlaw.com>, Ron Scheele <rscheele@pangeaenv.com>, Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>, Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>, Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>, Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>, Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>, Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>, Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>, Michael McCoy <mmccoy@exponent.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

EXTERNAL:

Hello Ian,

Pangea has received your comment letter. We are very glad to hear that DTSC appreciates our workplan changes and that the workplan may be final after this next round of revision. We will commence incorporation of the requested revisions. With all due respect, your February 15 deadline only provides 5 working days to incorporate 14 pages of comments. I suspect we will require additional time, and will email you next week about the anticipated completion date after reviewing our progress.

As an aside, I was asked to communicate that ongoing agency review and workplan revisions are diminishing limited available financial resources for the actual indoor air sampling and future site work. Any reduction in agency review and required document revision would help preserve these limited funds. Thank you for any consideration, Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

DTSC000005327

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, February 5, 2021 4:07 PM
**To:** Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** mtc10860@aol.com; Rachel Doughty <rdoughty@greenfirelaw.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Scheele <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Hello,

Enclosed is DTSC's comment letter on the revised workplan for vapor intrusion investigation transmitted 12/16/2020. These comments expand upon data validation, public participation, and scheduling—all of which are especially important during investigation of off-site indoor air. We hope that addressing these comments will result in a final draft, so that implementation can proceed in a timely manner. Thank you very much and please call me with any questions.

Sincerely,
Ian Utz

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

DTSC000005328

# Exhibit N

| Message | |
| --- | --- |
| **From:** | Brocales, Eric@DTSC [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8A90B0AEAC3947FF88C94BD9A523B46E-BROCALES, E] |
| **Sent:** | 3/26/2021 1:22:35 PM |
| **To:** | Utz, Ian@DTSC [Ian.Utz@dtsc.ca.gov] |
| **Subject:** | RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s) |

Thanks Ian! The Pangea COVID prevention plan is dated March 2020. It would be good to share the CalOSHA model CCP with Pangea to ensure that their plan is in accordance with the emergency regulations passed in December 1, 2020.

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 26, 2021 12:59 PM
**To:** Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

Thanks!

Look in the back here. There is a "supplemental" for this first draft HASP. This looks like it might be insufficient. This is the HASP that triggered Coby saying we needed to get them to subcontract their HASP.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

**From:** Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>
**Sent:** Friday, March 26, 2021 12:53 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

Hi Ian,

The work plan mentions that Pangea has a written COVID-19 Prevention Plan. It was not included in the HASP. They could attach it as an appendix to the HASP.

FYI... Cal OSHA released emergency standards on December 1, 2021. I attached a model plan that they could use so that there plan is in accordance with T8 CCR 3205.

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 26, 2021 12:39 PM
**To:** Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

DTSC000005214

Is there no inclusion of COVID protocols in the HASP or Work Plan?  If not, I've not been provided a separate plan, and I didn't request a separate plan.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>
**Sent:** Friday, March 26, 2021 12:36 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

Hi Ian,

Does Pangea have a Covid Prevention Plan?


Thanks,

Eric

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Thursday, March 25, 2021 2:23 PM
**To:** Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>
**Subject:** FW: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

Whoops!

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Friday, March 19, 2021 4:47 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Rachel Doughty <rdoughty@greenfirelaw.com>; mtc10860@aol.com; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

EXTERNAL:

Hello Ian,

As requested and discussed today, Pangea is providing these two HASPs for subject site. The first HASP pertains to the work scope specified in the Workplan. The second HASP pertains to O&M of the SVE/SSD system. We kept the O&M HASP separate to help ensure the HASP is easier to utilize in the field. Since most information is identical in each HASP, this will facilitate DTSC review and incorporation of DTSC input.

I will transmit the Workplan in a separate email very shortly. Bob

Bob Clark-Riddell, P.E.
Principal Engineer
Pangea Environmental Services, Inc.
1250 Addison Street, Suite 213
Berkeley, CA 94702
Mobile/Work (510) 435-8664
Main Office (510) 836-3700

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Wednesday, March 17, 2021 9:22 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Rachel Doughty <rdoughty@greenfirelaw.com>; mtc10860@aol.com; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

Received. Thank you and we look forward to what we hope will be the final revision.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Wednesday, March 17, 2021 9:18:12 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Rachel Doughty <rdoughty@greenfirelaw.com>; mtc10860@aol.com <mtc10860@aol.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

EXTERNAL:

Mr. Utz:

We expect to provide the requested revised Workplan and HASP by the 5 PM PDT on 03/19/2021 referenced in your email this morning. We have been working diligently to address the significant comments of your February 9, 2021 letter. Responding to DTSC comments required extra effort to:

- Expand the Site Conceptual Model,

- Enhance the public participation scope in accordance with the DTSC 2012 *Vapor Intrusion Public Participation Advisory*,
- Coordinate with the analytical laboratory to develop achievable quantitative data quality objectives based on laboratory reporting limits, and
- Address other comments within the 14-page letter.

We have also been managing Covid/personal issues affecting our ability to respond more expeditiously.  Thank you for your understanding.

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Tuesday, March 16, 2021 6:32 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Rachel Doughty <rdoughty@greenfirelaw.com>; mtc10860@aol.com; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Failure to Submit Revised Workplan and HASP(s)

Attention to Casa Nido Partnership and PANGEA:

As of 03/16/2021, DTSC is not in receipt of the revised Workplan or HASP(s).  If DTSC is unable to receive these revised documents by 5 PM PDT on 03/19/2021, I will petition that this matter be moved to our enforcement program, including termination of the governing Voluntary Cleanup Agreement (VCA) and issuance of an Imminent and Substantial Endangerment Order (I&SE Order).  At that stage, failure to come into compliance can result in penalties of $25,000 per day and the project will no longer be "voluntary."  Thank you and please confirm receipt

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov


**From:** Utz, Ian@DTSC
**Sent:** Tuesday, March 2, 2021 11:21 AM
**To:** 'Bob Clark-Riddell' <briddell@pangeaenv.com>
**Cc:** 'mtc10860@aol.com' <mtc10860@aol.com>; 'Rachel Doughty' <rdoughty@greenfirelaw.com>; 'Paul Kibel' <pskibel@waterpowerlaw.com>; 'Ron Scheele' <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; 'Michael McCoy' <mmccoy@exponent.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter
**Importance:** High

Hi Bob:

DTSC is not in receipt of the revised Workplan or HASP(s).  I just left you a voice mail message indicating such.  I also just spoke with Mike of Exponent.  Please advise on the status of these overdue documents.  Call or e-mail me today, please.

DTSC000005217

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Utz, Ian@DTSC
**Sent:** Tuesday, February 16, 2021 9:50 AM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** mtc10860@aol.com; Rachel Doughty <rdoughty@greenfirelaw.com>; Paul Kibel <pskibel@waterpowerlaw.com>;
Ron Scheele <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Jesse@DTSC
<Jesse.Negherbon@dtsc.ca.gov>; Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>; Theodore@DTSC
<Theodore.Mazzoli@dtsc.ca.gov>; Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Patricia@DTSC
<Patricia.Moran@dtsc.ca.gov>; Eric@DTSC <Eric.Brocales@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Hi Bob:

First, thank you for your continued communication. I'm going to compromise and approve an extension to **02/26/2021**,
which will have allowed for 14 total business days for this revision. My justification for this is:

1. One goal of USEPA's data quality objectives process is to have workplans frontload decisions, so that the field
   work and data evaluation require fewer on-the-fly decisions. This is a workplan that will guide several months
   of work.

2. Several of the comments are repeat comments. This workplan has been in revision since 2018.

3. Work expands to fit the schedule. I'm going to be Casa Nido's advocate here and say that it took me about a day
   to review, and a day to write these comments, so shouldn't take much longer to make the edits, some of which
   consist of copying and pasting. Please call me if you have questions, or disagree with, a comment.

Second, it's not clear to me why the health and safety plan (HASP) is not yet complete. Why is it taking so long? Keep in
mind that we didn't ask for two HASPs—we asked for one HASP, and now we are in a position of editing two. Thank
you,

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Monday, February 15, 2021 11:11 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Ron Scheele <rscheele@pangeaenv.com>; Paul Kibel
<pskibel@waterpowerlaw.com>
**Subject:** FW: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

EXTERNAL:

Mr. Utz,

Pangea prepared this email to request an extension for the revised workplan. Your February 5, 2021 letter provided 12 pages of comments on the *Draft Revised Off-site Vapor Intrusion Workplan* dated December 16, 2020. The letter provided only 5 business days to submit a revised workplan by February 15, 2021.

Pangea requires additional time respond to agency comments, which require the identification and use of subconsultant to assist with comments on the Quality Assurance Plan and the laboratory data validation aspect of the project. Based on the significant amount of remaining effort required to complete these tasks, Pangea requests an extension to submit the revised workplan by **March 15, 2020**.

Please note that this additional round of revisions further increases the cost to Casa Nido, due to workplan revision and DTSC review. Casa Nido requests that DTSC do everything in its capacity to help control cost related to workplan review and preparation. These additional costs further deplete the available resources for actual site work. Thank you for your consideration, Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Saturday, February 6, 2021 7:24 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** mtc10860@aol.com; Rachel Doughty <rdoughty@greenfirelaw.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Thank you for confirming receipt. If you have questions about these comments, please call me on Monday. If PANGEA cannot meet this deadline, please request/justify an extension date.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Date:** Saturday, February 6, 2021 at 6:48 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>, Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** mtc10860@aol.com <mtc10860@aol.com>, Rachel Doughty <rdoughty@greenfirelaw.com>, Paul Kibel <pskibel@waterpowerlaw.com>, Ron Scheele <rscheele@pangeaenv.com>, Graham, Doyle@DTSC

<Doyle.Graham@dtsc.ca.gov>, Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>, Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>, Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>, Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>, Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>, Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>, Michael McCoy <mmccoy@exponent.com>

**Subject:** RE: [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

EXTERNAL:

Hello Ian,

Pangea has received your comment letter. We are very glad to hear that DTSC appreciates our workplan changes and that the workplan may be final after this next round of revision. We will commence incorporation of the requested revisions. With all due respect, your February 15 deadline only provides 5 working days to incorporate 14 pages of comments. I suspect we will require additional time, and will email you next week about the anticipated completion date after reviewing our progress.

As an aside, I was asked to communicate that ongoing agency review and workplan revisions are diminishing limited available financial resources for the actual indoor air sampling and future site work. Any reduction in agency review and required document revision would help preserve these limited funds. Thank you for any consideration, Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, February 5, 2021 4:07 PM
**To:** Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** mtc10860@aol.com; Rachel Doughty <rdoughty@greenfirelaw.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Scheele <rscheele@pangeaenv.com>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Brocales, Eric@DTSC <Eric.Brocales@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** [202121] Omo Fabricare Dry Cleaners - Revised Workplan Comment Letter

Hello,

Enclosed is DTSC's comment letter on the revised workplan for vapor intrusion investigation transmitted 12/16/2020. These comments expand upon data validation, public participation, and scheduling—all of which are especially important during investigation of off-site indoor air. We hope that addressing these comments will result in a final draft, so that implementation can proceed in a timely manner. Thank you very much and please call me with any questions.

Sincerely,
Ian Utz

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control

California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

DTSC000005221

# **Exhibit O**

Message

| To: | Bob Clark-Riddell [briddell@pangeaenv.com] |
|---|---|
| CC: | Ron Piziali [ronaldpiziali@gmail.com]; Paul Kibel [pskibel@waterpowerlaw.com]; Smith, Whitney@DTSC [Whitney.Smith@dtsc.ca.gov]; Vivas, Alejandro@DTSC [Alejandro.Vivas@dtsc.ca.gov]; Moran, Patricia@DTSC [Patricia.Moran@dtsc.ca.gov]; Lin, Joann [Joann.Lin@dtsc.ca.gov] |
| Subject: | RE: [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan |

Ron, Paul, and Bob,

We are disappointed that Casa Nido Partnership, nor its counsel, nor its consultant, has confirmed that it is implementing the conditionally approved work plan.  Failure to respond by 12/24/2021 will be considered noncompliance with the enforceable agreement (voluntary cleanup agreement).  Continuing noncompliance with the enforceable agreement may result in termination of the agreement, followed by execution of an order that carries with it civil and/or administrative penalties of $25,000 per violation per day of noncompliance for Casa Nido Partnership.  Furthermore, if DTSC determines there is an endangerment to public health, DTSC could potentially execute the work itself and hold Casa Nido Partnership financially responsible for three times the value of the work.  Please confirm receipt of this e-mail.

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency



   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Wednesday, December 15, 2021 12:39 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Lin, Joann <Joann.Lin@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan

Hi there,

Please update us on this project.  We need confirmation that you are complying with your enforceable agreement.

What is the status of access agreements?

Ian Utz
Environmental Scientist

Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Wednesday, December 8, 2021 1:46 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Lin, Joann <Joann.Lin@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan

Bob,

It looks like you are supposed to be at the fourth scope item on this list.  Please let us know if you are off track.

Also, a side note from Whit regarding access agreements, if you are still working those.  All consultants and contractors doing physical work on the land of third-party landowners should provide certificates of insurance from their insurers, for their workman's comp, commercial liability, commercial automotive policies, that name the third-party landowner (and/or tenant/operator) as additional insureds on the policy, with a stated waiver of subrogation.  These would be project-specific insurance certificates for a specific address.

| Task / Deliverable | Estimated Task Duration | Estimated Completion Date (Weeks After Preceding Task) | Estimated Completion Date (Weeks after DTSC Approval) |
|---|---|---|---|
| DTSC Approval of Workplan | -- | -- | |
| **Wet Season Sampling** | | | |
| Planning, Order Lab Supplies, Well Permitting | 3 weeks | 3 weeks | 3 weeks |
| Access Agreement Completion | 4 weeks | 1 weeks | 4 weeks |
| Building Survey and Screening | 1 weeks | 1 weeks | 5 weeks |
| Sub-slab Vapor Probe / Soil Vapor Well Installation | 1 week | 1 week | 6 weeks |

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721

DTSC000010103

California Environmental Protection Agency





This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Tuesday, December 7, 2021 12:28 AM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Lin, Joann <Joann.Lin@dtsc.ca.gov>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan

EXTERNAL:

Ian,

I am coordinating with Casa Nido. Will send update soon. Bob

Sent from my iPhone

> On Dec 6, 2021, at 8:39 AM, Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov> wrote:
>
> What is the status of this work?
>
> Please advise.
>
> Ian Utz
>
> **From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
> **Sent:** Friday, December 3, 2021 8:28:49 AM
> **To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>
> **Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Lin, Joann <Joann.Lin@dtsc.ca.gov>
> **Subject:** Re: [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan
>
> What is the status of this work?
>
> Have you received site access to properties?
>
> Have you ordered supplies?

Have you scheduled the work?

Ian Utz

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Monday, November 22, 2021 7:37:59 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Lin, Joann <Joann.Lin@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan

EXTERNAL:

Ian,

Pangea is confirming receipt of the conditional approval.  We are reviewing the conditions and coordinating implementation with the client.

We also just receive the information requests in a separate email, so thank you for those.

Bob Clark-Riddell

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, October 29, 2021 7:41 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Vivas, Alejandro@DTSC <Alejandro.Vivas@dtsc.ca.gov>; Moran, Patricia@DTSC <Patricia.Moran@dtsc.ca.gov>; Lin, Joann <Joann.Lin@dtsc.ca.gov>
**Subject:** [202121] Omo Fabricare Dry Cleaner - Conditional Approval of Work Plan

Thank you for your submittal of the off-site vapor intrusion work plan.  Please confirm receipt of the attached conditional approval, and proceed in accordance with the work plan schedule.  We expect to send information requests to former owners/operators or other knowledgeable persons, as requested, in the next two to three business weeks.

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

<image001.png>

<image002.png>

<image003.png>

<image004.png>

<image005.png>

<image006.png>

<image007.png>

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

# **Exhibit P**

| Message | |
|---|---|
| From: | Utz, Ian@DTSC [/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=997116E6CE7D4A178736AF39716BA874-UTZ, IAN] |
| Sent: | 2/2/2022 9:53:57 AM |
| To: | Bob Clark-Riddell [briddell@pangeaenv.com] |
| CC: | Ron Scheele [rscheele@pangeaenv.com]; pskibel@waterpowerlaw.com; Smith, Whitney@DTSC [Whitney.Smith@dtsc.ca.gov]; Ron Piziali [ronaldpiziali@gmail.com]; Pettijohn, Julie@DTSC [Julie.Pettijohn@dtsc.ca.gov] |
| Subject: | RE: 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor Testing on Adjacent Properties |

Hi Bob,

What is the status of site access and sampling?

Casa Nido is almost 14 weeks delayed according to its own schedule, since we conditionally approved this work on Oct 29, 2021.

We are extremely concerned about the pace and quality of this work implementation.

PANGEA will provide a notification letter and schedule of planned work to the owner/occupant of an off-site adjoining properties and the DTSC prior to the start of the field work. PANGEA will provide written and/or telephonic reminders of planned work or any schedule changes to the owner/occupant of an off-site adjoining properties at least 24 hours in advance of field work.

DTSC000016049

| Task / Deliverable | Estimated Task Duration | Estimated Completion Date (Weeks After Preceding Task) | Estimated Completion Date (Weeks after DTSC Approval) |
|---|---|---|---|
| DTSC Approval of Workplan | -- | -- | |
| **Wet Season Sampling** | | | |
| Planning, Order Lab Supplies, Well Permitting | 3 weeks | 3 weeks | 3 weeks |
| Access Agreement Completion | 4 weeks | 1 weeks | 4 weeks |
| Building Survey and Screening | 1 weeks | 1 weeks | 5 weeks |
| Sub-slab Vapor Probe / Soil Vapor Well Installation | 1 week | 1 week | 6 weeks |
| Air, Sub-slab Vapor, and Soil Vapor Sampling | 1 week | 1 week | 7 weeks |
| Receipt of Laboratory results (cc DTSC) | 2 weeks | 2 weeks | 9 weeks |
| 1-Page Summary Letter with Initial Data Validation to DTSC | 2 weeks | 4 weeks | 11 weeks |
| Draft Report Preparation/Submittal | 6 weeks | 6 weeks | 17 weeks |
| **Dry Season Sampling** | | | |
| 30-day Letter to Offsite Owners/Occupants (cc DTSC). | 1 day | -- | 1 day |
| Planning, Order Lab Supplies | 3 weeks | 3 weeks | 3 weeks |
| Building Survey and Screening | 1 week | 1 week | 4 weeks |
| Air, Sub-slab Vapor, and Soil Vapor Sampling | 1 week | 1 week | 5 weeks |
| Receipt of Laboratory results (cc DTSC) | 2 weeks | 2 weeks | 7 weeks |
| Post-Validation 1-Page Summary Letter | 4 weeks | 4 weeks | 11 weeks |
| Draft Report Submittal | 4 weeks | 4 weeks | 15 weeks |

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Wednesday, January 19, 2022 10:39 AM

**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; pskibel@waterpowerlaw.com; Graham, Doyle@DTSC
<Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Wright, Olivia@DTSC
<Olivia.Wright@dtsc.ca.gov>; Ron Piziali <ronaldpiziali@gmail.com>
**Subject:** RE: 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor Testing on
Adjacent Properties

EXTERNAL:

Hello Ian,

Pangea has contacted all 5 offsite properties to arrange access for sampling. All offsite properties were emailed the
Community Update and separate Request for Access Letter. Two properties (403 MacLaughlin and 12226 San Pablo)
have responded and allowed access. We are following up with the other 3 offsite properties.

Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Bob Clark-Riddell
**Sent:** Monday, January 17, 2022 10:58 AM
**To:** Ian Utz <ian.utz@dtsc.ca.gov>
**Subject:** Re: 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor Testing on
Adjacent Properties

Ian,

Sorry for the delay getting back to you. I have been coordinating with my project manager remotely as our office is
locked down during this Covid spike. I am out today and will have an update for you later week. We understand this is a
priority.

Bob Clark-Riddell

Sent from my iPhone


> **From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
> **Sent:** Wednesday, January 12, 2022 6:51 PM
> **To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Paul Kibel <pskibel@waterpowerlaw.com>
> **Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC
> <Whitney.Smith@dtsc.ca.gov>; Wright, Olivia@DTSC <Olivia.Wright@dtsc.ca.gov>; Ron Piziali
> <ronaldpiziali@gmail.com>
> **Subject:** RE: 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor
> Testing on Adjacent Properties

Hi Bob,

Have you contacted the surrounding properties to request to sample, and if so which ones?

**Ian Utz**
Environmental Scientist

Site Mitigation and Restoration Program

510-540-3845

ian.utz@dtsc.ca.gov

Department of Toxic Substances Control

700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721

California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Wednesday, December 22, 2021 6:26 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Paul Kibel <pskibel@waterpowerlaw.com>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Wright, Olivia@DTSC <Olivia.Wright@dtsc.ca.gov>; Ron Piziali <ronaldpiziali@gmail.com>
**Subject:** RE: 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor Testing on Adjacent Properties

DTSC000016052

EXTERNAL:

Ian,

Pangea will provide you an update when we have scheduled dates for entering the off-site homes.  Bob

Bob Clark-Riddell, P.E.

Pangea Environmental Services, Inc.

Mobile/Work (510) 435-8664

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Wednesday, December 22, 2021 5:56 PM
**To:** Paul Kibel <pskibel@waterpowerlaw.com>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC
<Whitney.Smith@dtsc.ca.gov>; Wright, Olivia@DTSC <Olivia.Wright@dtsc.ca.gov>; Bob Clark-Riddell
<briddell@pangeaenv.com>; Ron Piziali <ronaldpiziali@gmail.com>
**Subject:** Re: 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor
Testing on Adjacent Properties

Received, thank you for the letter.

Your letter fails to state that this work plan has been under drafting since 2018, and by the time counsel
were involved in 2021, it was to request a scaling back of the work, and the involvement of other
PRPs.  The proposed work is consistent with contaminated dry cleaners across the state.

If the quality of technical work improves, then DTSC editing costs and turnaround time will reduce.   A
case in point is the rudimentary transcription errors that continued to exist in Table 1 in the work plan,
leading to incorrect screening values and soil vapor concentration values incorrectly copied and pasted
from other documents.  Another case in point is the health and safety plan that needed to be
subcontracted.  These are basic errors that shouldn't exist in state level cleanups and add unnecessary
costs to correct.

DTSC000016053

It's still unclear when PANGEA is intending to mobilize in January 2022, or if you ever executed access agreements. I assume that the entire work plan schedule is delayed by at least one month or two. It would be helpful to know more specifically when you will be entering off-site homes since DTSC is your public liaison. Please advise.

Thank you and happy holidays,

Ian Utz

---

**From:** Paul Kibel <pskibel@waterpowerlaw.com>
**Sent:** Wednesday, December 22, 2021 5:15:15 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Wright, Olivia@DTSC <Olivia.Wright@dtsc.ca.gov>; Bob Clark-Riddell <briddell@pangeaenv.com>; Ron Piziali <ronaldpiziali@gmail.com>
**Subject:** 12210 San Pablo Avenue in Richmond, California: Next Phase of Work Related to Soil Vapor Testing on Adjacent Properties

EXTERNAL:

Dear Mr. Utz,

Enclosed please find my letter sent on behalf of Casa Nido Partnership confirming that the soil vapor testing tasks in the Workplan approved late last month by DTSC will commence in early January 2022.

Thank you and have a happy and safe holidays.

Yours, Paul Kibel

**Paul Stanton Kibel**

**Water and Power Law Group PC**

2140 Shattuck Avenue, Ste. 801

Berkeley, CA  94704-1229

(510) 499-1649 (direct)

(510) 296-5588 (main)

(866) 407-8073 (e-fax)

pskibel@waterpowerlaw.com

www.waterpowerlaw.com

DTSC000016055

# Exhibit Q

California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Date:** Sunday, March 6, 2022 at 5:49 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Conwill Marsha <mtc10860@aol.com>, Ron Piziali <ronaldpiziali@gmail.com>, Ron Scheele
<rscheele@pangeaenv.com>, Karina Gillette <kgillette@pangeaenv.com>, Mazzoli, Theodore@DTSC
<Theodore.Mazzoli@dtsc.ca.gov>, Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>, Smith,
Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare - Follow Up Site Visit Notes 02-08-2022

EXTERNAL:

Hello Ian,

Pangea received your email on Friday afternoon. We will perform the requested sampling within 30 days and will
provide the requested information. Consistent with your requirement for written documentation, Pangea will provide a
detailed written response to your request within a couple days after our internal communication. Thank you. Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 4, 2022 4:24 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Conwill Marsha <mtc10860@aol.com>; Ron Piziali <ronaldpiziali@gmail.com>; Ron Scheele
<rscheele@pangeaenv.com>; Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC
<Theodore.Mazzoli@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Smith, Whitney@DTSC
<Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare - Follow Up Site Visit Notes 02-08-2022

Good Afternoon Bob,

1. **Do NOT proceed with installation of the epoxy flooring prior to DTSC concurrence.** DTSC needs to review the
   designs and concur prior to any mitigation feature installation. This might end up being an appropriate interim
   measure after our review, but you do not have our approval. We need to submit these designs to the
   Engineering and Special Projects Office (ESPO), who would need to know product specifications and installer
   qualifications/training. Please send those to us.

2. **Schedule indoor and sub-slab sampling at the Thai restaurant BEFORE installation of any mitigation
   features.** PANGEA is already behind on the schedule, as we have outlined in prior e-mails. PANGEA is proposing
   to install unapproved mitigative features prior to sampling subslab vapor and indoor air. This sub-slab and

indoor air sampling should take priority, particularly since the restaurant is not yet re-operating and you have not disturbed the flooring with new features. It is not appropriate to change the indoor air conditions of the site prior to sampling.

3. If PANGEA does not complete this work within 30 days at the Thai restaurant, since PANGEA has already been granted property access, I have authorization from our Unit Chief (Whit Smith) and Branch Chief (Julie Pettijohn) to require you to order the necessary supplies and have DTSC's Geological Services Branch and/or a State contractor to complete the sampling itself. This would likely significantly increase costs for Casa Nido.

4. Failure to proceed with the work plan as already conditionally approved, and the modifications outlined in our site visit related e-mails below, will be considered noncompliance with the enforceable agreement, and grounds to terminate the agreement and proceed with an imminent and substantial endangerment order that will carry civil penalties of $25,000 per day of noncompliance.

Here are some relevant excerpts of our existing enforceable agreement with Casa Nido Partnership:

- Section 8.2. In the event DTSC determines that any activity (whether or not pursued in compliance with this Agreement) may pose an imminent or substantial endangerment to the health or safety of people on the Site or in the surrounding area or to the environment, DTSC may order Proponent to conduct additional activities in accordance with Paragraph 7 of this Agreement or to stop further implementation of this Agreement for such period of time as may be needed to abate the endangerment. DTSC may request that Proponent implement interim measures to address any immediate threat or imminent or substantial endangerment

- Section 12. Notification of Field Activities. Proponent shall inform DTSC at least seven days in advance of all field activities pursuant to this Agreement and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by Proponent pursuant to this Agreement.

- Section 15. DTSC Review and Approval. All work performed pursuant to this Agreement is subject to DTSC's review and approval. If DTSC determines that any report, plan, schedule or other document submitted for approval pursuant to this Agreement fails to comply with this Agreement or fails to protect public health or safety or the environment, DTSC may (a) return comments to Proponent with recommended changes and a date by which the Proponent must submit to DTSC a revised document incorporating or addressing the recommended changes; or (b) modify the document in consultation with Proponent and approve the document as modified. All DTSC approvals and decisions made regarding submittals and notifications will be communicated to Proponent in writing by DTSC's Branch Chief or his/her designee. No informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by the Proponent shall be construed to relieve Proponent of the obligation to obtain such written approvals.

Ian Utz
Environmental Scientist

Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

<< OLE Object: Picture (Device Independent Bitmap) >>        << OLE Object: Picture (Device Independent Bitmap) >>
<< OLE Object: Picture (Device Independent Bitmap) >>

  << OLE Object: Picture (Device Independent Bitmap) >>        << OLE Object: Picture (Device Independent Bitmap)
>>       << OLE Object: Picture (Device Independent Bitmap) >>       << OLE Object: Picture (Device Independent Bitmap)
>>

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be
expected unless applicable law provides a valid basis for not releasing this document and its attachments.

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

<< OLE Object: Picture (Device Independent Bitmap) >>        << OLE Object: Picture (Device Independent Bitmap) >>
<< OLE Object: Picture (Device Independent Bitmap) >>

  << OLE Object: Picture (Device Independent Bitmap) >>        << OLE Object: Picture (Device Independent Bitmap)
>>       << OLE Object: Picture (Device Independent Bitmap) >>       << OLE Object: Picture (Device Independent Bitmap)
>>

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be
expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Thursday, March 3, 2022 6:43 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Conwill Marsha <mtc10860@aol.com>; Ron Piziali <ronaldpiziali@gmail.com>; Ron Scheele
<rscheele@pangeaenv.com>; Karina Gillette <kgillette@pangeaenv.com>
**Subject:** RE: [202121] Omo Fabricare - Follow Up Site Visit Notes 02-08-2022

EXTERNAL:

Ian - You are welcome.

**Wendy's:** The current contact is Josh Thomassen of East Bay Equities. jthomassen@eastbayequities.com (209)
914.4473.  See attached correspondence from 2/14/2022 that references 1/17/2022 access agreement submittal.

**Sa Wad Dee:** The flood restoration was completed last week.  Renovations are scheduled for the rest of the month and
into April.  Regarding the cracked flooring and subslab probe installation, here are the plans:

DTSC000010204

1. The renovation contractor will conduct initial preparation of the existing concrete for future vinyl tiles.  We have asked them to help level the floor and investigate with us any penetrations in the floor.  We will determine which subslab gas probes can remain, or need to be removed and sealed.

2. When ready, Pangea's specialty flooring company (American Industrial Coatings [AIC]) is scheduled to install a two coat 40mil thick epoxy coating to seal all cracks and provide a vapor barrier on top of the concrete.  AIC has extensive experience with installation of chemical vapor barriers to mitigate VOC intrusion. The bottom coat is 20 mil moisture mitigating primer.  Top coat is 100% solids epoxy.

3. Following the epoxy, the contractor will install the vinyl tiles.

4. Then Pangea will install any needed new subslab gas probes through the tile and epoxy.

This plan was determined by AIC and the renovation contractor as the best way to preserve the integrity of the epoxy vapor barrier and install the probes.  Please contact me with any questions or comments.  Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Thursday, March 3, 2022 6:21 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Conwill Marsha <mtc10860@aol.com>; Ron Piziali <ronaldpiziali@gmail.com>; Ron Scheele <rscheele@pangeaenv.com>; Karina Gillette <kgillette@pangeaenv.com>
**Subject:** RE: [202121] Omo Fabricare - Follow Up Site Visit Notes 02-08-2022

Thanks Bob.

Regarding Wendy's – Do you have their current contact information so we can check in with them?

Regarding Sa Wad Dee – Did you figure out what they would be doing with the cracked flooring during renovation?  Is their renovation already ongoing, is that why March 16/17 doesn't work?

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

<< OLE Object: Picture (Device Independent Bitmap) >>      << OLE Object: Picture (Device Independent Bitmap) >>
<< OLE Object: Picture (Device Independent Bitmap) >>

   << OLE Object: Picture (Device Independent Bitmap) >>      << OLE Object: Picture (Device Independent Bitmap)
>>      << OLE Object: Picture (Device Independent Bitmap) >>      << OLE Object: Picture (Device Independent Bitmap)
>>

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

# **Exhibit R**

Message

| | |
|---|---|
| **From**: | Graham, Coby@DTSC [Coby.Graham@dtsc.ca.gov] |
| **Sent**: | 3/18/2022 9:21:09 AM |
| **To**: | Utz, Ian@DTSC [Ian.Utz@dtsc.ca.gov] |
| **Subject**: | RE: Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data |

Deep breath...

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 9:01 AM
**To:** Graham, Coby@DTSC <Coby.Graham@dtsc.ca.gov>
**Subject:** Re: Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data

They have demonstrated a disregard for its scope.

Ian Utz

**From:** Graham, Coby@DTSC <Coby.Graham@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 8:49:19 AM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** RE: Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data

Hmmm... what's the VCA say with regards to work plans and activities subject to DTSC review and comment?

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 8:42 AM
**To:** Graham, Coby@DTSC <Coby.Graham@dtsc.ca.gov>
**Subject:** Re: Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data

No and no.

Agreed.

Ian Utz

**From:** Graham, Coby@DTSC <Coby.Graham@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 8:28:40 AM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** Re: Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data

I assume these samples were collected under DTSC approved sampling plans and the required planning documents were submitted to DTSC for approval? Typically, these plans will also discuss the reporting requirements.

Also, would it behoove the Department to henceforth request all sampling data be provided to DTSC such that copies of lab reports are transmitted to the Department within 3 business days of receipt and summary reports are provided within 10 business of receipt?

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 7:30:59 AM

DTSC000004658

**To:** Graham, Coby@DTSC <Coby.Graham@dtsc.ca.gov>
**Subject:** Fwd: Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data

See below.

Ian Utz

**From:** Paul Kibel <pskibel@waterpowerlaw.com>
**Sent:** Thursday, March 17, 2022 11:11:19 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>; Ron
Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** Response to DTSC' March 15th Request for Compilation and Submission of Additional Sampling Data

EXTERNAL

Dear Mr. Utz:

I am writing to on behalf of Casa Nido Partnership to respond to your email to Pangea's Bob Clark Riddell date
March 15, 2022. In your email to Pangea you requested all sampling data not already provided to DTSC
including laboratory results for soil, soil gas, groundwater and indoor air sampling for the site and adjoining
properties.

At the outset I would like to clarify that Casa Nido's Voluntary Cleanup Agreement (VCA) with DTSC provides
an obligation to provide such data "When requested by DTSC" rather than a unilateral obligation by Casa Nido
to submit any and all information to DTSC. You requested such data/information be submitted to DTSC in your
March 15, 2022 email and Casa Nido will comply with this request.

Pangea has indicated that the following sampling data has not yet been submitted to DTSC: (1) groundwater
data from on-site wells sampled on October 2, 2020; (2) SVE-SSP system influent data (for SVE-SSP system
operating on adjacent property where the Thai restaurant is located for the past 18 months; and (3) offsite
subslab gas sampling from September 23, 2021.  In regard to the September 23, 2021 subslab gas samples, it
was Pangea's view that the reported levels were within the range considered protective of human health
based on comparison to DTSC screening levels, and that more data was forthcoming following DTSC workplan
approval. The upcoming round of off-site soil gas sampling incorporated additional DTSC quality assurance
requirements and will supersede this preliminary subslab data.

Pangea is proceeding with compiling the above-described data for submission to DTSC and will do its best to
submit by the March 18, 2022 date you requested. Providing a mere 3 days for Pangea to compile and submit
this data (when Pangea has staff devoted to many other sites/matters other than this one) seems somewhat
unreasonable (your request was sent on March 15, 2022) but Pangea will nonetheless do its best to compile
and submit this by the date you have requested.

Thank you, Paul Kibel (on behalf of Casa Nido)

**Paul Stanton Kibel**
**Water and Power Law Group PC**
2140 Shattuck Avenue, Ste. 801
Berkeley, CA  94704-1229
(510) 499-1649 (direct)

DTSC000004659

(510) 296-5588 (main)
(866) 407-8073 (e-fax)
pskibel@waterpowerlaw.com
www.waterpowerlaw.com

DTSC000004660

Message

| | |
|---|---|
| **From:** | Utz, Ian@DTSC [Ian.Utz@dtsc.ca.gov] |
| **Sent:** | 3/21/2022 6:46:51 PM |
| **To:** | Bob Clark-Riddell [briddell@pangeaenv.com] |
| **CC:** | Karina Gillette [kgillette@pangeaenv.com]; Mazzoli, Theodore@DTSC [Theodore.Mazzoli@dtsc.ca.gov]; pskibel@waterpowerlaw.com; Ron Piziali [ronaldpiziali@gmail.com]; mtc10860@aol.com; Ron Scheele [rscheele@pangeaenv.com]; Smith, Whitney@DTSC [Whitney.Smith@dtsc.ca.gov]; Pettijohn, Julie@DTSC [Julie.Pettijohn@dtsc.ca.gov] |
| **Subject:** | Re: Former Omo's Cleaners: Data Report Package |

Bob, did PA

Ian Utz

------------------------------------------------------------------------------------------------

**From:** Utz, Ian@DTSC
**Sent:** Monday, March 21, 2022 10:47:17 AM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; pskibel@waterpowerlaw.com <pskibel@waterpowerlaw.com>; Ron Piziali <ronaldpiziali@gmail.com>; mtc10860@aol.com <mtc10860@aol.com>; Ron Scheele <rscheele@pangeaenv.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Subject:** RE: Former Omo's Cleaners: Data Report Package

Hello Bob,

This submittal suggests that Erik Lervaag of PANGEA Environmental Services, Inc. collected two sub-slab soil gas samples in September 2020 from the north-adjoining veterinary clinic at 1226 San Pablo Avenue (SS-11 and SS-12) and two samples from the east-adjoining residence at 403 McLaughlin Street (SS-13 to SS-14), without a work plan or DTSC approval, and after the SVE/SSD system had already begun operating in April 2020. PANGEA contracted one lab for these 2020 results (Pace Analytical, Mt. Juliet, Tennessee) and a different lab for the upcoming 2022 results (Eurofins Air Toxics, Folsom, California). It is unclear whether the canisters were clean certified, or whether there were manifold tests.

PCE was detected at SS-11 (1,070 ug/m3), SS-12 (1,070 ug/m3), SS-13 (21.5 ug/m3), and SS-14 (509 ug/m3), exceeding the default human health risk based screening criteria based on a cancer endpoint, for both properties (July 25, 2019 SFRWQCB ESLs). TCE was detected at SS-12 (2.73 ug/m3). Carbon tetrachloride was detected at SS-12 (3.57 ug/m3). TPH-g, benzene, toluene, and xylenes were detected at SS-11 and SS-12. Acetone, ethanol, Freon 11, Freon 21, and IPA (leak check compound) were detected at all locations, and there were also sporadic detections of other compounds. These results suggest that the dry cleaner contaminated soil gas at the north-adjoining, south-adjoining, and east-adjoining properties.

However, these sample names and locations are different from those in the work plan we conditionally approved in October 2021. Furthermore, the chain of custody on page 60 states these samples were collected 09/11/2020 and 09/14/2020, whereas the Draft Table 3 on page 5 states the samples were collected 09/21/2020, whereas page 39 figure 3 states the samples were collected on 09/23/2020, whereas the cover letter text indicates they were collected in 09/23/2021.

Question #1: Where were these samples located and do they correspond to any of the 2022 locations?

Question #2: When were these samples collected and analyzed?

Please respond today.

Ref 202121

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
Ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Friday, March 18, 2022 7:45 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; pskibel@waterpowerlaw.com; Ron Piziali <ronaldpiziali@gmail.com>; mtc10860@aol.com; Ron Scheele <rscheele@pangeaenv.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Subject:** RE: Former Omo's Cleaners: Data Report Package

EXTERNAL

Hello Ian,

Per your email of March 15, 2021, Pangea is providing the requested additional data that has not yet been provided to DTSC. Pangea prepared a 'data report' that includes the laboratory analytical reports, data tables, and accompanying figures. A brief summary of data is also included on the cover page. Please contact me with any questions or comments. Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Tuesday, March 15, 2022 5:08 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; pskibel@waterpowerlaw.com; Ron Piziali <ronaldpiziali@gmail.com>; mtc10860@aol.com; Ron Scheele <rscheele@pangeaenv.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** RE: Former Omo's Cleaners: Building Survey Information and Sampling Recommendations

Casa Nido, PANGEA, and Water Power Law Group,

Before March 18, 2022, pursuant to section 10 of the voluntary cleanup agreement, please provide DTSC all sampling data that you have not already provided to DTSC, including laboratory analytical results for soil, soil gas, sub-slab soil gas, groundwater, or indoor air, for both the site and off-site adjoining properties.  My understanding is that the most recent data is dated 2020 or before.  Thank you.

*Sampling, Data and Document Availability. When requested by DTSC, Proponent shall make available for DTSC's inspection, and shall provide copies of, all data and information concerning contamination at or from the Site, including technical records and contractual documents, sampling and monitoring information and photographs and maps, whether or not such data and information was developed pursuant to this Agreement. For all final reports, Proponent shall submit one hard (paper) copy and one electronic copy with all applicable signatures and certification stamps as a text-readable Portable Document Formatted (pdf) file compatible with Adobe Acrobat or a formatted file compatible with Microsoft Word.*

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Tuesday, March 15, 2022 3:01 PM
**To:** 'Bob Clark-Riddell' <briddell@pangeaenv.com>
**Cc:** 'Karina Gillette' <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; 'pskibel@waterpowerlaw.com' <pskibel@waterpowerlaw.com>; 'Ron Piziali' <ronaldpiziali@gmail.com>; 'mtc10860@aol.com' <mtc10860@aol.com>; 'Ron Scheele' <rscheele@pangeaenv.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>
**Subject:** RE: Former Omo's Cleaners: Building Survey Information and Sampling Recommendations

Hi Bob,

We just spoke with Wes of 403 McLaughlin Street to answer questions about tomorrow's sampling.

Please also provide us with specifications for the product that you partially installed beneath their building.

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program

DTSC000005723

510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Tuesday, March 15, 2022 2:18 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; pskibel@waterpowerlaw.com; Ron Piziali <ronaldpiziali@gmail.com>; mtc10860@aol.com; Ron Scheele <rscheele@pangeaenv.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Negherbon, Jesse@DTSC <Jesse.Negherbon@dtsc.ca.gov>; Mathrani, Vivek@DTSC <Vivek.Mathrani@dtsc.ca.gov>
**Subject:** RE: Former Omo's Cleaners: Building Survey Information and Sampling Recommendations

Hello Bob,

**We conclude that sampling of soil gas, sub-slab soil gas, crawl space air, indoor air, and sump water shall proceed as planned tomorrow, with no further delays.  We do not approve of any test run delays, or pre-installation of any additional features like epoxy, prior to sampling.**

Our geologist, engineer, and toxicologist have reviewed the documentation you provided yesterday (03/14/2022), including building screening forms for three of four properties, chemical safety data sheets for sealant and disinfectant products identified during screening, photographs, and laboratory correspondence.  We understand the blower can now be turned off at the residence, and the air purifier can be moved upstairs away from the sampling area.

The primary concern with the sealant (which Casa Nido has newly itself introduced to the sampling area) and disinfectant (which are not avoidable or removable), as evidenced by elevated ppbRAE 3000 photoionization detector readings (of 100s to 10,000s ppbv), is that the laboratory might seek to dilute the air samples, to protect instrumentation and modify reporting limits.  We do not expect confounding detections to be as much of a concern here, because the two screened products do not contain chlorinated compounds like PCE.  Instead, dilution is the concern, because our required indoor air reporting limits are low and dilution might increase these limits and fail the work plan data quality objectives (DQOs).  Therefore, our requirement to address this concern is to therefore:

1. Include copies of the target reporting limits and DQOs from the approved work plan with the chain of custody, so that the laboratory knows the reporting limit requirements, and can sequentially try different dilutions to reach the reporting detection limit goals at the lowest possible dilution.  Usually at additional cost, the laboratory can attempt multiple dilutions in order to achieve the lowest possible reporting limits.  We hereby require both of these tasks to be added to the scope.

Ref 202121

Ian Utz
Environmental Scientist

DTSC000005724

Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency



   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Monday, March 14, 2022 8:51 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; pskibel@waterpowerlaw.com; Ron Piziali <ronaldpiziali@gmail.com>; mtc10860@aol.com; Ron Scheele <rscheele@pangeaenv.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** FW: Former Omo's Cleaners: Building Survey Information and Sampling Recommendations

EXTERNAL:

Hello Ian,

Thanks for the discussion about the results of Friday's pre-sampling building survey and related vapor intrusion sampling issues. Here is a quick summary of some key issues, and recent correspondence with the laboratory per your request. Thank you in advance for your assistance with our efforts to expedite safeguarding of human health and control overall project costs. Enclosed with this email are the following:

- Indoor Air Reporting Limits for TO-15.
- Completed Building Survey Forms for select properties;
- Safety Data Sheets for and for Chlorhexidine (Fix Our Ferals) and offgassing construction sealant (403 McLaughlin)
- Photographs of sealed cracks and DragoWrap plastic sheeting partially installed at 403 McLaughlin.
- Qualifications of Sustainable Technologies who sealed cracks and commenced DragoWrap installation.

**PRE-SAMPLING AND OTHER INFORMATION**

PID Readings and Field Forms
During the surveys Pangea used a PPBRAE 3000 PID. Survey information and PID readings are included on the attached Building Survey forms.

Fix Our Ferals
For its neutering operations the facility uses 2% and 4% chlorhexidine products. Per the attached SDS, the chlorhexidine scrub 4% consists of 3-4% IPA; 1-5% other alcohols, and 10-20% ammonyx LO. Sampling is currently planned to start on Wednesday at 11 am and end about 9 am Thursday. This is about 36 hours after Monday operations and before or near the start of operations on Thursday.

DTSC000005725

In the email below, the lab stated the *isopropyl alcohol (IPA) may require dilutions* and 'we can try to analyze without dilutions, but no promises, we'll have to screen the samples and see how they look'. We are concerned that the IPA will not sufficiently attenuate before the indoor air sampling and will elevate the reporting levels. We have also asked the lab for greater information about our concerns, but not sure we will obtain a satisfactory response. For that reason, Pangea proposes we consider performing one *'test run' analysis* this Wednesday/Thursday' as clarified below.

403 McLaughlin

During our call, I also explained that Pangea recently coordinated sealing of cracks in the basement concrete retaining wall and the large crack in the concrete crawl space north of the basement area. These cracks were discovered during our site visit with DTSC on February 8, 2022. See attached photos. (By basement I am referred to the concrete lined area constructed within the crawl space by the owner.). The Loctite PL-S20 self-leveling product was used to seal these cracks (see attached SDS information), which contains 1-5% Stoddard solvent and 0.1-1% toluene-2,6-diisocyanate. A PID reading of 1,344 ppbv was obtained next to the sealed crack.

Pangea also explained that DragoWrap chemical vapor material was partially installed in the crawl space over the three exposed soil areas, and that installation/testing ceased following your email on 3/4/3022. The Loctite PL-S40 sealant was used to bond the DragoWrap to the concrete foundation (see attached SDS information), which also contains 1-5% Stoddard solvent and 0.1-1% toluene-2,6-diisocyanate. The future installation plans include smoke testing and using DragoTack Tape and Drago Tape to seal the edge terminations vertically up the foundation. The partial installation was conducted by Sustainable Technologies of Alameda (see attached 'Qualifications-' email about their experience as a remediation contractor for past 22 years).

Due to offgassing odor from the sealants, Pangea had our remedial contractor install an ventilation fan with ducting to create a negative vacuum in the basement/crawl space and vent them outdoors. Pangea also loaned them a large indoor air filter/fan for their bedroom (Oransi EJ120 air purifier). This evening, owner Wesley Skinner explained that he turned off the fans a few days ago (Saturday morning) and the sealant odor is no longer present within the house but is present in the basement crawl space. During the call I explained to Wesley that DTSC has requested information about the DragoWrap installation and will provide oversight for this mitigation measure going forward.

Pangea is concerned that residual offgassing from sealants could elevate the reporting levels during indoor air testing. In the email below, the lab stated the *Stoddard solvent may require dilutions* and 'we can try to analyze without dilutions, but no promises, we'll have to screen the samples and see how they look'. We have also asked the lab for greater information about our concerns, but not sure we will obtain a satisfactory response. For that reason, Pangea proposes we consider (1) performing one *'test run' analysis* this Wednesday/Thursday' as clarified below and (2) considering waiting longer for the full sampling scope for sealant offgassing to continue.

Sa Wad Dee Restaurant

The restaurant restoration demolition is complete and the interior is all sealed up with tape, plastic, and paper. The kitchen hood is taped up. Two areas with furniture and materials are taped up to the ceiling: one in the kitchen and one in the dining room. The renovation work has *not* commenced per restaurant owner Margaret. On 3/7 and 3/10 Pangea project manager Karina Gillette notified the owner that sampling was planned for this Wednesday/Thursday. Her contractor recently required that Pangea return the restaurant key, which we did. For the 3/11 survey we called Margaret who was available and let us into the building. If Margaret told you she was not aware of the upcoming sampling she likely did not recall. Karina will reach out to Margaret tomorrow to ensure we can get access Wednesday. On 3/11, Pangea installed the two new probes and relocated one probe at the approved locations and confirmed that all subslab probes are accessible.

Since the building has been closed for several weeks without any renovation, we are concerned that conditions are not near typical or conservative operational conditions. For this reason, for cost control, and for previously stated reasons, Pangea requests to delay the restaurant sampling until *after* the vapor intrusion coating (Retro-Coat) is complete and

DTSC000005726

the restaurant hood is working. This would allow us to obtain an excellent data set under typical conditions and would avoid the need for another sampling round soon after the vapor intrusion coating for 'performance monitoring'.

**RECOMMENDATIONS**

In summary based on the information above, Pangea offers the following recommendations:

- **Fix Our Ferals:** Perform one *'test run' analysis* this Wednesday/Thursday' at Fix Our Ferals and expedite analysis. Discuss the test run information with DTSC to augment the sampling plan as necessary to account for the VOC usage at Fix Our Ferals. Also determine if the laboratory can offer any recommendations.

- **403 McLaughlin:** Perform one *'test run' analysis* this Wednesday/Thursday' at 403 McLaughlin in the bedroom adjacent the basement (or in the kitchen overlying the basement) and expedite analysis. Discuss the test run information with DTSC to augment the sampling plan as necessary to account for the offgassing. Also determine if the laboratory can offer any recommendations. Retain crawl space ventilation fan and Oransi air purifier for future use as merited during review of test data.

- **Sa Wad Dee Restaurant:** Delay the restaurant sampling until *after* the vapor intrusion coating (Retro-Coat) is complete and the restaurant hood is working. Then perform sampling to provide a data set for 'performance monitoring' under typical conditions'. Try to coordinate this sampling with sampling at Wendy's or other sampling for cost control.

- **Remaining Sampling Scope:**
  - **423 McLaughlin:** Perform the crawl space sampling this Wednesday/Thursday.
  - **Soil gas sampling at SG-9A/B:** Perform this soil gas sampling since this well in near 423 McLaughlin this Wednesday/Thursday.
  - **Subslab gas sampling:** Wait until the full indoor air sampling to allow calculation of attenuation factors for concurrent indoor air sampling.
  - **Wendy's:** Still no access provided by Wendy's.

I recommend we touch base Tuesday, 3/15 in advance of planned sampling on 3/16 and 3/17. More to follow. Bob

Bob Clark-Riddell, P.E.
Principal Engineer
Pangea Environmental Services, Inc.
1250 Addison Street, Suite 213
Berkeley, CA 94702
Mobile/Work (510) 435-8664
Main Office (510) 836-3700

---

**From:** Bob Clark-Riddell
**Sent:** Monday, March 14, 2022 3:06 PM
**To:** Khorrami, Nazanin <Nazanin.Khorrami@eurofinset.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>
**Subject:** RE: Question about interfering chemicals - Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond CA PID 24846

Nina,

Per the attached Eurofins Hi/Lo dilution factor worksheet, the 'base reporting limit' for PCE O.14 ug/m3 (0.020 ppbv) and a 'sample RL' of 0.25 ug/m3.

DTSC000005727

This 0.020 ppbv base reporting limit suggests that the presence of 100+ ppbv Stoddard solvent would significantly interfere and require significant dilution, correct?

Please have someone contact me soon.  Thanks, Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

---

**From:** Bob Clark-Riddell
**Sent:** Monday, March 14, 2022 2:52 PM
**To:** Khorrami, Nazanin <Nazanin.Khorrami@eurofinset.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>
**Subject:** RE: Question about interfering chemicals - Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond CA PID 24846
**Importance:** High

Nina – Sorry, but we really an answer today or tomorrow at the latest.  Sampling is scheduled to start Wednesday.  Bob

---

**From:** Khorrami, Nazanin <Nazanin.Khorrami@eurofinset.com>
**Sent:** Monday, March 14, 2022 2:51 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>
**Subject:** RE: Question about interfering chemicals - Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond CA PID 24846

Hi Bob,
I have submitted the client inquiry ticket to the lab, of one our scientists will review the inquiry and after management review, I would get back to you with respond, it will take about 5 business days, probably 3/18/22.

Regards,
Nina

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Monday, March 14, 2022 11:25 AM
**To:** Khorrami, Nazanin <Nazanin.Khorrami@eurofinset.com>
**Cc:** Karina Gillette <kgillette@pangeaenv.com>
**Subject:** Re: Question about interfering chemicals - Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond CA PID 24846

EXTERNAL EMAIL*

Nina,

Thank you for calling. This project has close DTSC oversight. I really don't want to conduct sampling and need to resample later. We may be able to delay sampling to allow VOC off gassing from the construction sealant to offgas more before sampling. Please answer this questions at your earliest opportunity. Lab director can call me as well.

Question #1.  What RL for PCE is needed by DTSC per our prior email?  This is our primary concern.

Question #2. Is there any way to analyze (including with additional cost) to make sure we meet the RLs for PCE ...and secondarily for other risk-driving compounds (TCE, cis-1,2-DCE, vinyl chloride.)?    I ask because I recall the lab describing such a procedure during a visit to our office a few years ago.

Question #3.  i understand Stoddard solvent could interfere with TO-15, correct? Approximately how much dilution needed if near 250 ppbv/v Stoddard Solvent in sample (From direly PID ppbrae)? What would the new Approximate RL be for PCE?

Question #4. Would high levels non—TO-15 list chemicals such as Toluene-2,6-diisocyanate interference require dilution?

Question #5. Sounds like we should delay sampling for off gassing of construction materials to abate, correct?

Bob
Pangea
510.435.8664
-

- Sikaflex-1a (unknown if used at site)
-

Sent from my iPhone

On Mar 14, 2022, at 10:46 AM, Bob Clark-Riddell <briddell@pangeaenv.com> wrote:

 Nazanin,

Pease call me at +1510.435.8664 as soon as you can.

Bob

Sent from my iPhone

On Mar 14, 2022, at 10:39 AM, Khorrami, Nazanin <Nazanin.Khorrami@eurofinset.com> wrote:

Hi Karina,

DTSC000005729

Isopropyl alcohol, Benzene, Toluene and Stoddard solvent may cause us dilutions. We can try to analyze without dilutions, but no promises, we'll have to screen the samples and see how they look.

Regards,
Nina

**From:** Karina Gillette <kgillette@pangeaenv.com>
**Sent:** Friday, March 11, 2022 6:22 PM
**To:** Khorrami, Nazanin <Nazanin.Khorrami@eurofinset.com>
**Cc:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** Question about interfering chemicals - Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond CA PID 24846

EXTERNAL EMAIL*

Hi Nina,

We did PID surveys at the buildings we plan to sample next week. Would you please let me know if any of the chemicals we found recently used at the sites will interfere with either the reporting of one of the target compounds of TO-15, or will cause matrix interference such that dilution may be required?

I have attached the SDSs of the chemicals:
- Chlorohexidine gluconate (veterinary antiseptic-confirmed used)– also contains isopropyl alcohol
- Loctite polyurethane (2 types-confirmed used) – contains Stoddard solvent <0.1% Benzene and Toluene-2,6-diisocyanate
- Sikaflex-1a (unknown if used at site)

If there will potentially be interference, is there any way to analyze (including with additional cost) to make sure we meet the RLs for our main risk-driving compounds (PCE, TCE, cis-1,2-DCE, vinyl chloride, and benzene.)?

Thank you,
Karina

DTSC000005730

# **Exhibit S**

* WARNING - EXTERNAL: This email originated from outside of Eurofins Environment Testing America. Do not clic
links or open any attachments unless you trust the sender and know that the content is safe!

* WARNING - EXTERNAL: This email originated from outside of Eurofins Environment Testing America. Do not click any
links or open any attachments unless you trust the sender and know that the content is safe!

# Exhibit T

Message

| | |
|---|---|
| **To:** | Wesley Skinner [carnut17@gmail.com] |
| **Subject:** | RE: [202121] Omo Fabricare Dry Cleaner - 403 McLaughlin Street, Richmond |

Hi Wes,

It looks like PANGEA has received the laboratory results for sampling at your property. Based on our initial review, it looks like the dry cleaning chemical PCE were detected beneath your building, and at very low concentrations in your indoor air. But, the concentrations in your indoor air were below our conservative screening level of 0.46 micrograms per cubic meter, and in fact low enough that the lab instrumentation doesn't give a precise measurement (it's an estimate). For context, concentrations of PCE were actually higher in outdoor air than in your home indoor air. Several other volatile organic compounds (VOCs) were detected in your indoor air, which is not unexpected in residences with consumer products, and we will need to wait until PANGEA's third-party subcontractor validates the data and crunches some numbers before we make risk-based conclusions. For now, the data are not a short-term concern.

PANGEA is required to produce a summary of the data in plain English, which we will approve, within 30 days. So, we expect to get back to you in about 1 month. I will be out of office for 3 weeks, and will be available to answer questions when I return. In the meantime, my unit chief, Whit Smith, P.E. will me manning my projects. Thank you for providing site access during this round of sampling, we really appreciate it. We will get back to you.

Ian Utz

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency





This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Wednesday, March 30, 2022 10:52 AM
**To:** Wesley Skinner <carnut17@gmail.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - 403 McLaughlin Street, Richmond

Hi Wes,

Thanks for the call just now. The laboratory is supposed to send us the results from sampling two weeks ago sometime in the next few business days, probably early next week. We will let you know if we have any concerns. Appreciate you reaching out,

Ian

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency





This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Wesley Skinner <carnut17@gmail.com>
**Sent:** Wednesday, March 30, 2022 10:18 AM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaner - 403 McLaughlin Street, Richmond

EXTERNAL:

Ian-

Just a quick check-in.  Do you have an idea of when we might be able to know the results of the recent testing under our property?

Wes Skinner
(415) 309-7487
carnut17@gmail.com

On Mon, Mar 14, 2022 at 6:14 PM Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov> wrote:

Dear Wesley Skinner,

I hope all is well for you—I am the project manager for the state cleanup of your neighboring former dry cleaner (12210 San Pablo Avenue).   I met with Jill on February 8, when I dropped in to see how things were going next door, and to discuss sampling your property.  It was very nice to meet her and I appreciated the opportunity to inspect the basement.  We really appreciate your help.

Our job is to protect human health and the environment, and we want to make sure you folks are safe and undisturbed during the cleanup.

DTSC000005838

Casa Nido Partnership, who owns the former dry cleaner property, and its consultant PANGEA Environmental Services, Inc., have been working with you to sample your home sub-slab soil gas and indoor air.   It sounds like they have also been installing some features in your basement and crawl space, without our knowledge or prior approval.  We would like to speak with you about this, to make sure that we can still collect the data that we need, and ensure you are protected and not disturbed by the odors.

Please give me a call at 510-540-3845 at your earliest convenience.

Thank you very much,

Ian Utz

**Ian Utz**
Environmental Scientist

Site Mitigation and Restoration Program

510-540-3845

ian.utz@dtsc.ca.gov

Department of Toxic Substances Control

700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721

California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

# Exhibit U

**WATER AND POWER
LAW GROUP PC**

2140 SHATTUCK AVENUE, STE. 801
BERKELEY, CA 94704-1229
(510) 296-5588
(866) 407-8073 (E-FAX)

December 21, 2022

*Via Electronic Mail Only*
Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
California Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710
Email: Ian.Utz@dtsc.ca.gov

Julie Pettijohn
California Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710
Julie.Pettijohn@dtsc.ca.gov

Whitney Smith, Legal Counsel
California Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710
Whitney.Smith@dtsc.ca.gov

**Re:    DTSC Agency Oversight for 12200 San Pablo Avenue in Richmond, California**
        ***Notice of Termination of VCA Effective March 1, 2023***

Dear Mr. Utz, Ms. Pettijohn and Mr. Smith,

I am contacting you on behalf of Casa Nido Partnership ("Casa Nido") in connection with the
Voluntary Cleanup Agreement ("VCP") currently in place for remedial work and agency
oversight costs associated with releases on the above-reference site (commonly referred to as the
"**Omo Cleaners Site**").

1

Although Casa Nido had no involvement in any of the activities resulting in the releases, pursuant to the VCA, for more than five years Casa Nido has assumed sole financial responsibility for paying for all the remedial work and DTSC's agency oversight costs associated with this work (with such combined costs approaching $1.5 million). To date, the previous drycleaner operators that actually caused the releases and the previous property-owners who owned the property when much of the releases occurred have contributed **nothing** to these financial costs. Casa Nido has made contribution requests to other responsible parties, and is presently involved in litigation against these parties, but to date no contribution or reimbursement has been made. From Casa Nido's standpoint, and consistent with the CERCLA Gore Allocation factors, allocating 100% of the remedial costs and agency oversight costs to a current owner that was not involved in the releases is unfair and is unsupported by the law.

The VCA provides Casa Nido with a unilateral right of termination. In light of the circumstances by this letter Casa Nido is giving notice to DTSC of its intention to terminate the VCA effective March 1, 2023. Based on previous discussions with DTSC, it is Casa Nido's expectation that with the termination of the VCA DTSC will issue an administrative cleanup order for future remedial work and agency oversight costs that will name Catherine O'Hanks and other responsible parties. From Casa Nido's standpoint, it is time for these other responsible parties to contribute to the remedial work and agency oversight costs.

Below is a table listing the other responsible parties that Casa Nido maintains should be named in the cleanup order to be issued by DTSC (with contact information for each of these other responsible parties). Upon request, Casa Nido will provide DTSC with further documentation confirming why these other responsible parties properly need to be named in any cleanup order.

| Name | Address | Years of Ownership of Site | Years of Operation of Business at Site |
|------|---------|----------------------------|----------------------------------------|
| Catherine O'Hanks | 4407 Cutting Blvd. Richmond, CA 94804 | 0 | 1960-1992 (less Anderson/Vernell years) |
| Lynne Garibotti Blower (as trustee to the Garibotti Trust dated 5/1/52) | 617 Tunbridge Rd. Danville, CA 94526 | 1952-1976 | 0 |
| Jae Kwon | 3162 N. Front Street Hercules, CA 94547 | 0 | 1992-2007 |
| Sandra Kate Vernell | 2739 Barnard Street San Pablo, CA. 94806 | 0 | August 1978-August 1984 |
| Earl Ray Anderson | 2025 Cloud Crest Court Vacaville, CA. 95687 | 0 | August 1978-August 1984 |

2

DTSC000012833

Casa Nido will work cooperatively with DTSC staff over the coming months to try to ensure a smooth transition from remedial work done pursuant to the VCA to remedial work done pursuant to a cleanup order.


Yours,

*Paul Stanton Kibel*

Paul S. Kibel (on behalf of Casa Nido)


cc: Ron Piziali, Casa Nido
cc: Robert Clark-Riddell, Pangea Environmental Services

3

DTSC000012834

# **<u>Exhibit V</u>**

| | |
|---|---|
| **From:** | Utz, Ian@DTSC |
| **To:** | ronaldpiziali@gmail.com; mtc10860@aol.com; Christopher Dow; sabnis@khlaw.com; joseph@leperalaw.com; sknauft@wfbm.com; Paul Kibel; rdoughty@greenfirelaw.com |
| **Cc:** | Hughes, Marikka@DTSC |
| **Subject:** | [202453] OMO FABRICARE DRY CLEANER - ISSUANCE OF ORDER |
| **Date:** | Friday, October 6, 2023 1:20:04 PM |
| **Attachments:** | image001.png<br>image002.png<br>image003.png<br>20231006 OMO ORDER_enc_signed.pdf |
| **Importance:** | High |

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Hello,

**PLEASE CONFIRM RECEIPT OF THE ATTACHED.**

This notifies you that the California Department of Toxic Substances Control (DTSC) has issued Catherine O'Hanks, Earl Anderson, Sandra Vernell, and Casa Nido (Respondents) the attached Imminent and Substantial Endangerment Determination and Order and Remedial Action Order (Order).

The following shall be submitted by October 26, 2023.

1. Written Notice of Intent to Comply
2. Project Coordinator
3. Project Engineer/Geologist

A Site Remediation Strategy Meeting shall be held by October 31, 2023.

**Ian Utz**
Senior Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

This communication is subject to the California Public Records Act (Government Code § 7920 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**Value Science. Value Scientists!**



# Department of Toxic Substances Control



**Yana Garcia**
Secretary for
Environmental Protection

Meredith Williams, Ph.D., Director
700 Heinz Avenue
Berkeley, California 94710-2721



**Gavin Newsom**
Governor

October 6, 2023

**CERTIFIED MAIL #9589 0710 5270 0618 7306 24**
Catherine O'Hanks
4407 Cutting Boulevard
Richmond, California 94804

**CERTIFIED MAIL #9589 0710 5270 0618 7306 48**
Earl Anderson
2025 Cloud Crest Court
Vacaville, California 95687

**CERTIFIED MAIL #9589 0710 5270 0618 7306 55**
Sandra Vernell
2739 Barnard Street
San Pablo, California 94806

**CERTIFIED MAIL #9589 0710 5270 0618 7306 62**
Casa Nido c/o Ronald Piziali
13123 Regan Lane
Saratoga, California 95070

ISSUANCE OF IMMINENT AND SUBSTANTIAL ENDANGERMENT DETERINATION
AND ORDER AND REMEDIAL ACTION ORDER, DOCKET NO. HSA-FY23/24-022,
OMO FABRICARE DRY CLEANER, 12210 SAN PABLO AVENUE, RICHMOND,
CONTRA COSTA COUNTY, CALIFORNIA (SITE CODE 202453)

Dear Ms. O'Hanks, Mr. Anderson, Ms. Vernell, and Mr. Piziali:

The California Department of Toxic Substances Control (DTSC) has issued the
enclosed Imminent and Substantial Endangerment Determination and Order and
Remedial Action Order (Order) to you as a person responsible for cleaning up a release
of hazardous substances at the above-named site.  Please note that you may be liable

Ms. Catherine O'Hanks, Mr. Earl Anderson, Ms. Sandra Vernell, and Mr. Ronald Piziali
October 6, 2023
Page 2 of 2

for substantial penalties and punitive damages if you do not comply with the Order.  If
you have any questions, please contact me at marikka.hughes@dtsc.ca.gov or contact
Mr. Ian Utz, Project Manager, at 510-540-3845 or ian.utz@dtsc.ca.gov.

Sincerely,

Marikka Hughes, PG, Branch Chief
Site Mitigation and Restoration Program – Berkeley Office
Department of Toxic Substances Control

Enclosure (1):

1. *Imminent and Substantial Endangerment Determination and Order and Remedial
   Action Order, Docket No. HSA-FY23/24-022*

cc:    Via electronic mail only.

Mr. Christopher Dow, Esq., Counsel to O'Hanks
Edlin Gallagher Huie + Blum, LLP
cdow@eghblaw.com

Mr. Rohit Sabnis, Esq., Counsel to O'Hanks
Keller and Heckman, LLP
sabnis@khlaw.com

Mr. Joseph Lepera, Esq., Counsel to Anderson
Lepera + Associates, PC
joseph@leperalaw.com

Mr. Sage Knauft, Esq., Counsel to Vernell
WFBM, LLP
sknauft@wfbm.com

Mr. Paul Kibel, Esq., Counsel to Casa Nido
Water and Power Law Group, PC
pskibel@waterpowerlaw.com

Ms. Rachel Doughty, Esq., Counsel to Casa Nido
Greenfire Law, PC
rdoughty@greenfirelaw.com

**STATE OF CALIFORNIA**
**CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY**
**DEPARTMENT OF TOXIC SUBSTANCES CONTROL**

| | |
|---|---|
| In the Matter of: | Docket No. HSA-FY23/24-022 |
| OMO FABRICARE DRY CLEANERS<br>12210 San Pablo Avenue<br>Richmond, California 94804<br>APN: 519-290-026 | IMMINENT AND SUBSTANTIAL<br>ENDANGERMENT<br>DETERMINATION AND ORDER<br>AND REMEDIAL ACTION ORDER |
| | Health and Safety Code<br>Sections 25355.5(a)(1)(B),<br>25358.3(a), 58009 and 58010 |
| Respondents: | |
| Catherine O'Hanks, an individual | |
| Earl Anderson, an individual | |
| Sandra Vernell, an individual | |
| Casa Nido, a General Partnership | |

## I.  INTRODUCTION

1.1  <u>Parties</u>.  The California Environmental Protection Agency, Department of Toxic Substances Control (DTSC) issues this Imminent and Substantial Endangerment Determination and Order and Remedial Action Order (Order) to: Catherine O'Hanks, an individual; Earl Anderson, an individual; Sandra Vernell, an individual; and Casa Nido, a General Partnership (Respondents).

1.2  <u>Property/Site</u>.  This Order applies to the property located at 12210 San Pablo Avenue, Richmond, Contra Costa County, California 94804 (Site) and the greater areal extent of contamination that resulted from activities on the Site.  The Site consists of approximately 0.1 acres and is identified as Contra Costa County Assessor's Parcel Number (APN) 519-290-026, described as Lots 28 and 29, Block 3, Map of Richmond Traffic Center, recorded April 18, 1914 in Map Book 11, Page 256, Contra Costa County Records.  Maps showing the Site are attached as Exhibit A, Exhibit B, and Exhibit C.

1.3  <u>Jurisdiction</u>.  This Order is issued by DTSC to Respondents pursuant to its

authority under Health and Safety Code sections 25358.3(a), 25355.5(a)(1)(B), 58009 and 58010.

Health and Safety Code section 25358.3(a) authorizes DTSC to take various actions, including issuance of an Imminent or Substantial Endangerment Determination and Order, when DTSC determines that there may be an imminent or substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance.

Health and Safety Code section 25355.5(a)(1)(B) authorizes DTSC to issue an order establishing a schedule for removing or remedying a release of a hazardous substance at a site, or for correcting the conditions that threaten the release of a hazardous substance.  The order may include, but is not limited to requiring specific dates by which the nature and extent of a release shall be determined and the site adequately characterized, a remedial action plan prepared and submitted to DTSC for approval, and a removal or remedial action completed.

Health and Safety Code section 58009 authorizes DTSC to commence and maintain all proper and necessary actions and proceedings to enforce its rules and regulations; to enjoin and abate nuisances related to matters within its jurisdiction which are dangerous to health; to compel the performance of any act specifically enjoined upon any person, officer, or board, by any law of this state relating to matters within its jurisdiction; and/or on matters within its jurisdiction, to protect and preserve the public health.

Health and Safety Code section 58010 authorizes DTSC to abate public nuisances related to matters within its jurisdiction.

## II.  FINDINGS OF FACT

DTSC hereby finds:

2.1  Liability of Respondents.  Respondents are responsible parties or liable persons as defined in Health and Safety Code section 25323.5.

Catherine O'Hanks operated a dry cleaner at the Site from approximately 1960 to 1990.

Earl Anderson operated a dry cleaner at the Site from approximately 1978 to 1980.

Sandra Vernell operated a dry cleaner at the Site from approximately 1978 to 1980.

Casa Nido has owned the Site since approximately 1995.

Unilateral ISE Order
October 6, 2023

2.2  Site History.  In 1945, the Site was developed with a commercial building, which was subsequently operated as a restaurant, residence, and bank until the 1950s, and a dry cleaner from approximately 1959 to 2015.

The Site was the location of registered hazardous waste generation from at least 1987 to 2017, under currently inactive EPA ID #s CAD981617681, CAC002872978, CAC002906367, and CAC002926055.

Between at least 1960 and 2000, the dry cleaner used tetrachloroethylene (PCE) and/or generated hazardous wastes containing PCE.  In the early 2000s, the dry cleaner transitioned to using non-chlorinated petroleum hydrocarbon-based solvents.

The dry cleaner building was closed in 2015, decommissioned in 2016, and demolished in 2017.  Since 2017, the Site has been fenced and unoccupied.

In the 2000s, DTSC discovered downgradient groundwater contamination with PCE, at the Miraflores Housing Development, located approximately 1,000 feet to the southwest of the Site, and subsequently began investigating potential upgradient regional sources of PCE.

In 2011, DTSC determined that investigation of the Site was warranted, based on historical operations as a dry cleaner and use of PCE.

From 2014 to 2016, Casa Nido tested soil, soil gas, and groundwater at the Site and confirmed a release of PCE at the Site, which had migrated to adjoining properties to the north, south, east, and west.  PCE release(s) was/were identified beneath dry cleaning equipment and near damaged sewer pipes.

In 2017, Casa Nido entered into an enforceable agreement with DTSC to investigate and cleanup the release of hazardous substances including PCE.

From 2018 to 2020, Casa Nido conducted interim actions without DTSC review or approval, including treatment and/or removal of soil, soil gas, and groundwater. These interim actions require review by DTSC, and some are ongoing.

In 2018, interim actions included removal of soil on Site to depths of between 3 and 15 feet below ground surface (bgs), and treatment of groundwater with chemical amendments including zero-valent iron at 14.5 to 15 feet bgs.

Since 2020, interim actions have also included soil vapor extraction (SVE) on Site at 4.5 to 10 feet bgs, and sub-slab depressurization (SSD) at the off-Site south-adjoining restaurant property at 0.5 to 1.5 feet bgs.  Since 2020, DTSC has required the interim SVE/SSD system to remain indefinitely operational.

On March 27, 2023, Casa Nido terminated its enforceable agreement with DTSC.

Elevated PCE concentrations remain at the Site and/or off-Site properties in connection with the Site.

    2.3  <u>Hazardous Substances Found at the Site</u>.  PCE and trichloroethylene (TCE) are the primary hazardous substances found at elevated concentrations in soil, soil gas, and groundwater on Site.  Their release has been documented during various sampling events from 2014 to 2022 (Exhibit D).

    Both PCE and TCE are listed hazardous substances designated pursuant to 42 U.S.C. Sec. 9602.  TCE is an impurity in PCE, as well as a product of biological and/or abiotic degradation of PCE in the environment.

    Maximum reported concentrations of PCE at the Site and adjoining properties include 350 milligrams per kilogram (mg/kg) in soil, 14,000 micrograms per liter (μg/L) in groundwater, 23,900,000 micrograms per cubic meter ($μg/m^3$) in soil gas, 0.55 $μg/m^3$ in crawl space air as a surrogate for indoor air, and 0.41 $μg/m^3$ in indoor air.  The groundwater, soil gas, and crawl space air concentrations of PCE pose a threat to indoor air.  Except for the direct indoor air concentration, these PCE concentrations exceed certain residential screening levels, including the DTSC-Modified Screening Level dated May 2022 for soil (0.59 mg/kg), the federal Maximum Contaminant Level dated January 1991 for drinking water (5 μg/L), the Tier 1 San Francisco Bay Regional Water Quality Control Board Environmental Screening Level (ESL) dated July 2019  for groundwater (0.64 μg/L), the ESL dated July 2019 for soil gas (15 $μg/m^3$), and the DTSC-Modified Screening Level dated May 2022 for ambient air (0.46 $μg/m^3$).

    Maximum reported concentrations of TCE at the Site and adjoining properties include 0.0638 mg/kg in soil, 99 μg/L in groundwater, 34,600 $μg/m^3$ in soil gas, 0.38 $μg/m^3$ in crawl space air as a surrogate for indoor air, and 0.036 $μg/m^3$ (estimated) in indoor air.  The groundwater, soil gas, and crawl space air concentrations of TCE pose a threat to indoor air.  The TCE concentrations in groundwater and soil gas exceed certain residential screening levels, including the federal Maximum Contaminant Level dated June 1987 for drinking water (5 μg/L), the ESL dated July 2019 for groundwater (1.2 μg/L), and the ESL dated July 2019 for soil gas (16 $μg/m^3$).

    The lateral and vertical extent of PCE contamination in soil, soil gas, groundwater, crawl space air, and indoor air have not been defined.

    PCE contamination extends vertically down to at least 25.5 feet bgs in soil and at least 56 feet bgs in groundwater in the vicinity of the Site (through Zones A, B1, and B2 of groundwater).  PCE contamination has also been detected in regional groundwater to least 75 feet bgs (through Zones A, B1, B2, C1, and C2 of groundwater).

    PCE contamination extends laterally in groundwater to at least 250 feet southwest of the Site. PCE contamination has also been detected in groundwater more than 1,000 feet southwest of the Site.

PCE and TCE have been detected in crawlspace and/or indoor air at occupied neighboring buildings, to the north, south, and east of the Site.  No indoor air has been sampled to the west.

2.4   Health Effects.  PCE is a volatile, colorless liquid. Short-term exposure to PCE through ingestion of the liquid or inhalation of the vapors may cause nausea, vomiting, headache, dizziness, drowsiness, and tremors. Skin contact with the liquid induces irritation and blistering.  Both liquid and vapor forms of PCE are irritating to the eyes. Liver and kidney toxicity are potential chronic effects of exposure to PCE.  PCE is listed as a known carcinogen under Proposition 65.

TCE is a volatile, colorless liquid. Acute exposure to sufficient concentrations of TCE may depress the central nervous system, causing headaches, dizziness, vertigo, tremors, irregular heartbeat, fatigue, nausea, vomiting and blurred vision. TCE vapors and liquid may cause irritation of the skin, eyes, nose, and throat. Long-term effects may include liver and kidney injury. TCE is listed as a known carcinogen under Proposition 65.

2.5   Routes of Exposure.  Inhalation can be a route of exposure for PCE and TCE, creating a potential human health risk on Site and off Site. PCE and TCE in soil gas may enter construction trenches and/or indoor air of properties where soil or groundwater are impacted.  PCE and TCE in soil gas may spread through preferential pathways such as underground pipes and ventilation systems.

Direct contact and ingestion can be routes of exposure to PCE and TCE, creating a potential human health risk for areas in and around the Site.  Because PCE and TCE impact both soil and groundwater, there is a potential for PCE and TCE to be touched or consumed during soil disturbance or groundwater extraction.  Regional groundwater has designated beneficial uses, including for drinking water.

2.6   Public Health and/or Environmental Risk. The Site is a paved parking lot (north) and fenced lot (south).  The parking lot is publicly accessible.  The fenced lot is improved with the SVE/SSD system enclosure.

The Site and neighboring properties are zoned for residential use.  Certain of these properties are additionally zoned for commercial use.

All adjoining properties are occupied by humans who may be exposed to Site contaminants.  In addition, construction workers working at or near the Site may be exposed to Site contaminants.

2.7   Immediate Action May Reduce Migration.  PCE and TCE have been known to migrate in the shallow geology and groundwater typical of this region. Immediate response action could significantly reduce continued migration of PCE and

TCE in groundwater and/or subsurface soil gas.

### III. CONCLUSIONS OF LAW

3.1    Respondents are responsible parties as defined by Health and Safety Code section 25323.5.

3.2    Each of the substances listed in Section 2.4 is a "hazardous substance" as defined in Health and Safety Code section 25316.

3.3    There has been a "release" and/or there is a "threatened release" of hazardous substances listed in Section 2.4 at the Site, as defined in Health and Safety Code section 25320.

3.4    The actual and threatened release of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment.

3.5    Response action is necessary to abate a public nuisance and/or to protect and preserve the public health.

### IV. DETERMINATION

4.1    Based on the foregoing findings of fact and conclusions of law, DTSC hereby determines that response action is necessary at the Site because there has been a release and/or there is a threatened release of a hazardous substance.

4.2    Based on the foregoing findings of fact and conclusions of law, DTSC hereby determines that there may be an imminent and/or substantial endangerment to the public health or welfare or to the environment because of the release and/or the threatened release of the hazardous substances at the Site.

### V. ORDER

Based on the foregoing FINDINGS, CONCLUSIONS, AND DETERMINATION, IT IS HEREBY ORDERED THAT Respondents conduct the following response actions in the manner specified herein, and in accordance with a schedule specified by DTSC as follows:

5.1    All response actions taken pursuant to this Order shall be consistent with the requirements of Chapter 6.8 (commencing with section 25300), Division 20 of the Health and Safety Code and any other applicable state or federal statutes and regulations.

5.1.1 Site Remediation Strategy. The purpose of this Order is to require for the

Site: implementation of any appropriate removal actions, completion of a Remedial Investigation/Feasibility Study (RI/FS), preparation of a Remedial Action Plan (RAP) or Removal Action Workplan (RAW), preparation of California Environmental Quality Act (CEQA) documents, and Design and Implementation of the removal or remedial actions approved in the RAW or RAP.  An overall Site investigation and remediation strategy shall be developed by Respondents in conjunction with DTSC which reflects program goals, objectives, and requirements.  Current knowledge of the Site contamination sources, exposure pathways, and receptors shall be used in developing this strategy.

An objective of the Site investigations shall be to identify immediate or potential risks to public health and the environment and prioritize and implement response actions using removal actions and operable units, if appropriate, based on the relative risks at the Site.   Respondents and DTSC shall develop and possibly modify Site priorities throughout the course of the investigations.  If necessary for the protection of public health and the environment, DTSC will require additional response actions not specified in this Order to be performed as removal actions or separate operable units.  Removal actions shall be implemented in accordance with a workplan and implementation schedule submitted by Respondents and approved by DTSC.

5.1.2   Site Remediation Strategy Meeting.  Within 20 days from the effective date of this Order, and concurrent with the development of the RI/FS workplan, Respondents, including the Project Coordinator (Section 6.1) and Project Engineer/Geologist (Section 6.2), shall meet with DTSC to discuss the Site remediation strategy.  These discussions will include Site risks and priorities; project planning, phasing and scheduling, remedial action objectives, remedial technologies, data quality objectives, and the RI/FS workplan.  Results of the discussions will be included in the Scoping Document, Section 5.2.2(b) of this Order.

5.1.3   Removal Actions.    Respondents shall undertake removal actions if, during the course of the RI or FS, DTSC determines that they are necessary to mitigate the release of hazardous substances at or emanating from the Site.   DTSC may require Respondents to submit a removal action workplan that includes a schedule for implementing the workplan for DTSC's approval.  Either DTSC or Respondents may identify the need for removal actions.   Respondents shall implement the following removal actions.

(a)  Fence and Post.

1)  Within 60 days of the effective date of this Order, Respondents shall install a permanent/in-ground fence in accordance with the specifications attached as Exhibit E.  The fence shall secure, at a minimum, Lot 28 of the Site assessor's parcel.

2)  Within 60 days of the effective date of this Order, Respondents shall install signs which are visible from the area surrounding the contaminated Site

and posted at each route of entry into the Site, including those routes likely to be used by unauthorized persons.  Such routes of entry include: access roads leading to the Site, and facing rivers, creeks, lakes or other waterways which may provide a route of access to the Site.  The signs shall be in accordance with the specifications attached as Exhibit F.

3) The fence and signs shall be constructed of materials able to withstand the elements and shall be continuously maintained for as long as DTSC determines it to be necessary in order to protect public health and safety and the environment.

(b)  SVE/SSD Continued Operation.  Immediately, as of the effective date of this Order, the currently-installed SVE/SSD system shall continue to be operated until DTSC approves system shutdown.

5.1.4   Groundwater and Soil Gas Monitoring.  Several groundwater and soil gas monitoring wells are located at the Site and neighboring properties.  To evaluate potential off-Site migration of contaminated groundwater and soil gas, as well as potential indoor air vapor intrusion from soil and groundwater, Respondents shall perform regular soil gas and groundwater monitoring and reporting in a manner to be determined as part of the RI/FS.  Respondents shall perform such monitoring until DTSC determines it is appropriate to reduce frequency or terminate monitoring.

5.2   Remedial Investigation/Feasibility Study (RI/FS).  A RI/FS shall be conducted for the Site.  The RI/FS may be performed as a series of focused RI/FSs, if appropriate, based on Site priorities and any operable units.  The RI/FS shall be prepared consistent with the U.S. Environmental Protection Agency's "Guidance for Conducting Remedial Investigations and Feasibility Studies under CERCLA," October 1988.  The purpose of the RI/FS is to assess Site conditions and to evaluate alternatives to the extent necessary to select a remedy appropriate for the Site.  RI and FS activities shall be conducted concurrently and iteratively so that the investigations can be completed expeditiously.  Because of the unknown nature of the Site and iterative nature of the RI/FS, additional data requirements and analyses may be identified throughout the process.  Respondents shall fulfill additional data and analysis needs identified by DTSC; these additional data and analysis requests will be consistent with the general scope and objectives of this Order.

The following elements of the RI/FS process shall be preliminarily defined in the initial Site scoping and refined and modified as additional information is gathered throughout the RI/FS process.

(a)  Conceptual Site Model identifying contamination sources, exposure pathways, and receptors;

(b)  Federal, State and local remedial action objectives including applicable legal

requirements or relevant and appropriate standards;

(c)  Project phasing including the identification of removal actions and operable units;

(d)  General response actions and associated remedial technology types; and

(e)  The need for treatability studies.

5.2.1  RI/FS Objectives.  The objectives of the RI/FS are to:

(a)  Determine the nature and full extent of hazardous substance contamination of air, soil, surface water and groundwater at the Site.

(b)  Identify all actual and potential exposure pathways and routes through environmental media;

(c)  Determine the magnitude and probability of actual or potential harm to public health, safety or welfare or to the environment posed by the threatened or actual release of hazardous substances at or from the Site;

(d)  Identify and evaluate appropriate response actions to prevent or minimize future releases and mitigate any releases which have already occurred; and

(e)  Collect and evaluate the information necessary to prepare a RAP.

5.2.2  RI/FS Workplan.  Within 90 days from the effective date of this Order, Respondents shall prepare and submit to DTSC for review and approval a detailed RI/FS Workplan and implementation schedule which covers all the activities necessary to conduct a complete RI/FS of the Site.

The RI/FS Workplan shall include a detailed description of the tasks to be performed, information or data needed for each task, and the deliverables which will be submitted to DTSC.  Either Respondents or DTSC may identify the need for additional work.

These RI/FS Workplan deliverables are discussed in the remainder of this section, with a schedule for implementation, and monthly reports.  The RI/FS Workplan shall include all the sections and address each component listed below.

(a)  Project Management Plan.  The Project Management Plan shall define relationships and responsibilities for major tasks and project management items by Respondents, their contractors, subcontractors, and consultants.  The plan shall include an organization chart with the names and titles of key personnel and

a description of their individual responsibilities.

(b) <u>Scoping Document</u>.  The Scoping Document shall incorporate program goals, program management principles, and expectations contained in the National Contingency Plan (NCP) (40 Code of Federal Regulations (CFR) Part 300), as amended.  It shall include:

(1) An analysis and summary of the Site background and the physical setting.  At a minimum, the following information is required:

(A) A map of the Site, and if they exist, aerial photographs and blueprints showing buildings and structures;

(B) A description of past disposal practices;

(C) A list of all hazardous substances which were disposed, discharged, spilled, treated, stored, transferred, transported, handled or used at the Site, and a description of their estimated volumes, concentrations, and characteristics;

(D) A description of the characteristics of the hazardous substances at the Site; and

(E) If applicable, a description of all current and past manufacturing processes which are or were related to each hazardous substance.

(2) An analysis and summary of previous response actions including a summary of all existing data including air, soil, surface water, and groundwater data and the Quality Assurance/Quality Control (QA/QC) procedures which were followed;

(3) Presentation of the Conceptual Site Model;

(4) The scope and objectives of RI/FS activities;

(5) Preliminary identification of possible response actions and the data needed for the evaluation of alternatives.  Removal actions shall be proposed, if needed, based on the initial evaluation of threats to public health and the environment.  If remedial actions involving treatment can be identified, treatability studies shall be conducted during the characterization phase, unless Respondents and DTSC agree that such studies are unnecessary as set forth in Section 5.4; and

(6) If applicable, initial presentation of the Site Remediation Strategy.

Unilateral ISE Order
October 6, 2023

(c) Field Sampling Plan.  The Field Sampling Plan shall include:

(1)  Sampling objectives, including a brief description of data gaps and how the field sampling plan will address these gaps;

(2)  Sample locations, including a map showing these locations, and proposed frequency;

(3)  Sample designation or numbering system;

(4)  Detailed specification of sampling equipment and procedures;

(5)  Sample handling and analysis including preservation methods, shipping requirements and holding times; and

(6)  Management plan for wastes generated.

(d) Quality Assurance Project Plan.  The plan shall include:

(1)  Project organization and responsibilities with respect to sampling and analysis;

(2)  Quality assurance objectives for measurement including accuracy, precision, and method detection limits.  In selecting analytical methods, Respondents shall consider obtaining detection limits at or below potentially applicable legal requirements or relevant and appropriate standards, such as Maximum Contaminant Levels (MCLs) or Maximum Contaminant Level Goals (MCLGs);

(3)  Sampling procedures;

(4)  Sample custody procedures and documentation;

(5)  Field and laboratory calibration procedures;

(6)  Analytical procedures;

(7)  Laboratory to be used certified pursuant to Health and Safety Code section 25198;

(8)  Specific routine procedures used to assess data (e.g., precision, accuracy and completeness) and response actions;

(9)  Reporting procedure for measurement of system performance and data quality;

Unilateral ISE Order
October 6, 2023

(10) Data management, data reduction, validation and reporting. Information shall be accessible to downloading into DTSC's system; and

(11) Internal quality control.

(e)  Health and Safety Plan.  A site-specific Health and Safety Plan shall be prepared in accordance with federal (29 CFR 1910.120) and state (Title 8 CCR Section 5192) regulations.  This plan should include, at a minimum, the following elements:

(1)  Site Background/History/Workplan;

(2)  Key Personnel and Responsibilities

(3)  Job Hazard Analysis/Summary;

(4)  Employee Training;

(5)  Personal Protection;

(6)  Medical Surveillance;

(7)  Air Surveillance;

(8)  Site Control;

(9)  Decontamination;

(10) Contingency Planning;

(11) Confined Space Operations;

(12) Spill Containment;

(13) Sanitation;

(14) Illumination; and

(15) Other applicable requirements based on the work to be performed.

All contractors and all subcontractors shall be given a copy of the Health and Safety Plan prior to entering the Site.  Any supplemental health and safety plans prepared by any subcontractor shall also be prepared in accordance with the regulations and guidance identified above.  The prime contractor will be

Unilateral ISE Order
October 6, 2023

responsible for ensuring that all subcontractor supplemental health and safety plans will follow these regulations and guidelines.

(f)  Other Activities.  A description of any other significant activities which are appropriate to complete the RI/FS shall be included.

(g)  Schedule.  A schedule which provides specific time frames and dates for completion of each activity and report conducted or submitted under the RI/FS Workplan including the schedules for removal actions and operable unit activities.

5.2.3  RI/FS Workplan Implementation.  Respondents shall implement the approved RI/FS Workplan.

5.2.4  RI/FS Workplan Revisions.  If Respondents propose to modify any methods or initiates new activities for which no Field Sampling Plan, Health and Safety Plan, Quality Assurance Project Plan or other necessary procedures/plans have been established, Respondents shall prepare an addendum to the approved plan(s) for DTSC review and approval prior to modifying the method or initiating new activities.

5.3  Interim Screening and Evaluation of Remedial Technologies.  At the request of DTSC, Respondents shall submit an interim document which identifies and evaluates potentially suitable remedial technologies and recommendations for treatability studies.

5.4  Treatability Studies.  Treatability testing may be performed by Respondents to develop data for the detailed remedial alternatives.  Treatability testing will be required to demonstrate the implementability and effectiveness of technologies unless Respondents can show DTSC that similar data or documentation or information exists. The required deliverables are:  a workplan, a sampling and analysis plan, and a treatability evaluation report.  To the extent practicable, treatability studies will be proposed and implemented during the latter part of Site characterization.

5.5  Remedial Investigation (RI) Report.  The RI Report shall be prepared and submitted by Respondents to DTSC for review and approval in accordance with the approved RI/FS workplan schedule.  The purpose of the RI is to collect data necessary to adequately characterize the Site for the purposes of defining risks to public health and the environment and developing and evaluating effective remedial alternatives. Site characterization may be conducted in one or more phases to focus sampling efforts and increase the efficiency of the investigation.   Respondents shall identify the sources of contamination and define the nature, extent, and volume of the contamination.  Using this information, the contaminant fate and transport shall be evaluated.  The RI Report shall contain:

(a)  Site Physical Characteristics.  Data on the physical characteristics of the Site and surrounding area shall be collected to the extent necessary to define

potential transport pathways and receptor populations and to provide sufficient engineering data for development and screening of remedial action alternatives.

(b) <u>Sources of Contamination</u>.  Contamination sources (including heavily contaminated media) shall be defined.  The data shall include the source locations, type of contaminant, waste characteristics, and Site features related to contaminant migration and human exposure.

(c) <u>Nature and Extent of Contamination</u>.  Contaminants shall be identified and the horizontal and vertical extent of contamination shall be defined in soil, groundwater, surface water, sediment, air, and biota.  Spatial and temporal trends and the fate and transport of contamination shall be evaluated.

5.6  <u>Baseline Health and Ecological Risk Assessment</u>.  Within 30 days from the approval of the RI Report, or as otherwise required by DTSC, Respondents shall perform health and ecological risk assessments for the Site that meet the requirements of Health and Safety Code §25356.1.5(b).  Respondents shall submit a Baseline Health and Ecological Risk Assessment Report.  The report shall be prepared consistent with U.S. EPA and California Environmental Protection Agency guidance and regulations, including as a minimum:  Risk Assessment Guidance for Superfund, Volume 1; Human Health Evaluation Manual, December 1989; Superfund Exposure Assessment Manual, April 1988;  Risk Assessment Guidance for Superfund, Volume 2, Environmental Evaluation Manual, March 1989; Supplemental Guidance for Human Health Multimedia Risk Assessments of Hazardous Waste Sites and Permitted Facilities (DTSC, September 1993); and all other related or relevant policies, practices and guidelines of the California Environmental Protection Agency and policies, practices and guidelines developed by U.S.EPA pursuant to 40 CFR 300.400 et seq.  The Baseline Health and Ecological Risk Assessment Report shall include the following components:

(a) <u>Contaminant Identification</u>.  Characterization data shall identify contaminants of concern for the risk assessment process.

(b) <u>Environmental Evaluation</u>.  An ecological assessment consisting of:

(1)  Identification of sensitive environments and rare, threatened, or endangered species and their habitats; and

(2)  As appropriate, ecological investigations to assess the actual or potential effects on the environment and/or develop remediation criteria.

(c) <u>Exposure Assessment</u>.  The objectives of an exposure assessment are to identify actual or potential exposure pathways, to characterize the potentially exposed populations, and to determine the extent of the exposure.  Exposed populations may include industrial workers, residents, and subgroups that comprise a meaningful portion of the general population, including, but not limited

to, infants, children, pregnant women, the elderly, individuals with a history of serious illness, or other subpopulations, that are identifiable as being at greater risk of adverse health effects due to exposure to hazardous substances than the general population.

(d) Toxicity Assessment. Respondents shall evaluate the types of adverse health or environmental effects associated with individual and multiple chemical exposures; the relationship between magnitude of exposures and adverse effects; and related uncertainties such as the weight of evidence for a chemical's potential carcinogenicity in humans.

(e) Risk Characterization. Risk characterization shall include the potential risks of adverse health or environmental effects for each of the exposure scenarios derived in the exposure assessment.

5.7   Feasibility Study (FS) Report. Within 60 days from submittal of the RI Report, or as otherwise required by DTSC, the FS Report shall be prepared and submitted by Respondents to DTSC for review and approval. The FS Report shall summarize the results of the FS including the following:

(a) Documentation of all treatability studies conducted.

(b) Development of medium specific or operable unit specific remedial action objectives, including legal requirements and other promulgated standards that are relevant.

(c) Identification and screening of general response actions, remedial technologies, and process options on a medium and/or operable unit specific basis.

(d) Evaluation of alternatives based on the criteria contained in the NCP including:

Threshold Criteria:

(1) Overall protection of human health and the environment.

(2) Compliance with legal requirements and other promulgated standards that are relevant.

Primary Balancing Criteria:

(1) Long-term effectiveness and permanence.

(2) Reduction of toxicity, mobility, or volume through treatment.

Unilateral ISE Order
October 6, 2023

(3) Short-term effectiveness.

(4) Implementability based on technical and administrative feasibility.

(5) Cost.

Modifying Criteria:

(1) State and local agency acceptance.

(2) Community acceptance.

(e) Proposed remedial actions*.*

5.8 Public Participation Plan (Community Relations). Respondents shall work cooperatively with DTSC in providing an opportunity for meaningful public participation in response actions. Any such public participation activities shall be conducted in accordance with H&SC §§ 25356.1 and 25358.7 and DTSC's most current Public Participation Policy and Guidance Manual, and shall be subject to DTSC's review and approval.

 Respondents, in coordination with DTSC, shall conduct public participation activities consistent with a Public Participation Plan (PPP) that DTSC is in the process of finalizing. The PPP describes how, under this Order, the public and adjoining community will be kept informed of activities conducted at the Site and how Respondents will be responding to inquiries from concerned citizens. The PPP shall be revised by Respondents when deemed necessary by DTSC. Major steps in developing a PPP are as follows:

(a) Develop proposed list of interviewees;

(b) Schedule and conduct community interviews; and

(c) Analyze interview notes, and develop objectives.

Respondents shall conduct future updated baseline community surveys and submit the PPP for DTSC's review within 40 days of DTSC request.

Respondents shall implement any of the public participation support activities identified in the PPP, at the request of DTSC. DTSC retains the right to implement any of these activities independently. These activities include, but are not limited to, development and distribution of fact sheets; public meeting preparations; and development and placement of public notices. Fact sheets will be completed for projected or completed key milestones, as specified in Public Participation Plan, or when requested by DTSC.

Unilateral ISE Order
October 6, 2023

5.9 <u>California Environmental Quality Act (CEQA)</u>.  DTSC will comply with CEQA for all activities required by this Order that are projects subject to CEQA.  Upon DTSC request, Respondents shall provide DTSC with any information that DTSC deems necessary to facilitate compliance with CEQA.  The costs incurred by DTSC in complying with CEQA are response costs and Respondents shall reimburse DTSC for such costs pursuant to Section 6.19.

5.10 <u>Removal Action Workplan</u>  If DTSC determines a removal action is appropriate, Respondents will prepare and submit no later than 90 days after DTSC's approval of the FS a draft Removal Action Workplan (RAW) in accordance with Health and Safety Code sections 25323.1 and 25356.1.  The Removal Action Workplan will include:

(a) a description of the on-Site contamination;

(b) the goals to be achieved by the removal action;

(c) an analysis of the alternative options considered and rejected and the basis for that rejection.  This should include a discussion for each alternative which covers its effectiveness, implementability and cost;

(d) administrative record list;

(e) a description of the techniques and methods to be used in the removal action, including any excavating, storing, handling, transporting, treating, and disposing of material on or off the site;

(f) Sampling and Analysis Plan with corresponding Quality Assurance Plan to confirm the effectiveness of the RAW, if applicable;

(g) a brief overall description of methods that will be employed during the removal action to ensure the health and safety of workers and the public during the removal action.  A detailed community air monitoring plan shall be included if requested by DTSC.

In conjunction with DTSC, Respondents shall implement the public review process specified in DTSC's Public Participation Policy and Guidance Manual.  DTSC will prepare a response to the public comments received. If required, the Respondents shall submit within 10 days of the request the information necessary for DTSC to prepare this document.

Following DTSC's finalization of the Responsiveness Summary, DTSC will specify any changes to be made in the RAW.  Respondents shall modify the document in accordance with DTSC's specifications and submit a final RAW within 15 days of receipt of DTSC's comments.

Unilateral ISE Order
October 6, 2023

If the proposed removal action does not meet the requirements of Health and Safety Code section 25356.1(h), the Respondents will prepare a Remedial Action Plan (RAP) in accordance with Health and Safety Code section 25356.1(c) for DTSC review and approval.

5.11   Remedial Action Plan (RAP).  Except as specified in section 5.10 (RAW), no later than 90 days after DTSC approval of the FS Report, Respondents shall prepare and submit to DTSC a draft RAP.  The draft RAP shall be consistent with the NCP and Health and Safety Code section 25356.1.  The draft RAP public review process may be combined with that of any other documents required by CEQA.  The draft RAP shall be based on and summarize the approved RI/FS Reports, and shall clearly set forth:

(a) Health and safety risks posed by the conditions at the Site.

(b) The effect of contamination or pollution levels upon present, future, and probable beneficial uses of contaminated, polluted, or threatened resources.

(c) The effect of alternative remedial action measures on the reasonable availability of groundwater resources for present, future, and probable beneficial reuses.

(d) Site-specific characteristics, including the potential for off-Site migration of hazardous substances, the surface or subsurface soil, and the hydrogeologic conditions, as well as pre-existing background contamination levels.

(e) Cost-effectiveness of alternative remedial action measures.  Land disposal shall not be deemed the most cost-effective measure merely on the basis of lower short-term cost.

(f) The potential environmental impacts of alternative remedial action measures, including, but not limited to, land disposal of the untreated hazardous substances as opposed to treatment of the hazardous substances to remove or reduce their volume, toxicity, or mobility prior to disposal.

(g) A statement of reasons setting forth the basis for the removal and remedial actions selected.  The statement shall include an evaluation of each proposed alternative submitted and evaluate the consistency of the removal and remedial actions proposed by the plan with the NCP.

(h) A schedule for implementation of all proposed removal and remedial actions.

In conjunction with DTSC, Respondents shall implement the public review process specified in DTSC's Public Participation Policy and Guidance Manual.  DTSC will prepare a response to the public comments received. If required, the Respondents shall submit within 10 days of the request the information necessary for DTSC to prepare this document.

Following DTSC's finalization of the Responsiveness Summary, DTSC will specify any changes to be made in the RAP. Respondents shall modify the document in accordance with DTSC's specifications and submit a final RAP within 15 days of receipt of DTSC's comments.

5.12  Remedial Design (RD).  Within 60 days after DTSC approval of the final RAP, Respondents shall submit to DTSC for review and approval a RD describing in detail the technical and operational plans for implementation of the final RAP which includes the following elements, as applicable:

(a) Design criteria, process unit and pipe sizing calculations, process diagrams, and final plans and specifications for facilities to be constructed.

(b) Description of equipment used to excavate, handle, and transport contaminated material.

(c) A field sampling and laboratory analysis plan addressing sampling during implementation and to confirm achievement of the performance objectives of the RAP.

(d) A transportation plan identifying routes of travel and final destination of wastes generated and disposed.

(e) For groundwater extraction systems:  aquifer test results, capture zone calculations, specifications for extraction and performance monitoring wells, and a plan to demonstrate that capture is achieved.

(f) An updated health and safety plan addressing the implementation activities.

(g) Identification of any necessary permits and agreements.

(h) An operation and maintenance plan including any required monitoring.

(i) A detailed schedule for implementation of the remedial action consistent with the schedule contained in the approved RAP including procurement, mobilization, construction phasing, sampling, facility startup, and testing.

(j) A Community Air Monitoring Plan.

5.13  Land Use Covenant.  If the approved remedy in the final RAP or final RAW includes deed restrictions or land use restrictions, pursuant to California Code of Regulations, title 22, section 67391.1, the current owner(s) of the Site shall sign and record deed restrictions approved by DTSC within 90 days of DTSC's approval of the final RAP or final RAW.

5.14  Implementation of Final RAP or Final RAW.  Upon DTSC approval of the RD or final RAW, Respondents shall implement the final RAP or final RAW in accordance with the approved schedule in the RD or final RAW.  Within 30 days of completion of field activities, Respondents shall submit an Implementation Report documenting the implementation of the Final RAP and RD or final RAW.

5.15  Operation and Maintenance (O&M).  Respondents shall comply with all O&M requirements in accordance with the final RAP and approved RD or final RAW. Within 30 days of the date of DTSC's request, Respondents shall prepare and submit to DTSC for approval an O&M plan that includes an implementation schedule. Respondents shall implement the plan in accordance with the approved schedule.

5.16  Five-Year Review.  Respondents shall review and reevaluate the remedial action after a period of no more than five years from the completion of construction and startup, or as otherwise directed by DTSC, and every five years thereafter.  The review and reevaluation shall be conducted to determine if human health and the environment are being protected by the remedial action.  Within 30 days before the end of the time period approved by DTSC to review and reevaluate the remedial action, Respondents shall submit a remedial action review workplan to DTSC for review and approval. Within 60 days of DTSC's approval of the workplan, Respondents shall implement the workplan and shall submit a comprehensive report of the results of the remedial action review.  The report shall describe the results of all sample analyses, tests and other data generated or received by Respondents and evaluate the adequacy of the implemented remedy in protecting public health, safety and the environment.  As a result of any review performed under this Section, Respondents may be required to perform additional work or to modify work previously performed.

5.17  Changes During Implementation of the Final RAP or Final RAW.  During the implementation of the final RAP and RD or final RAW, DTSC may specify such additions, modifications, and revisions to the RD or final RAW as DTSC deems necessary to protect public health and safety or the environment or to implement the final RAP or final RAW.

5.18  Stop Work Order.  In the event that DTSC determines that any activity (whether or not pursued in compliance with this Order) may pose an imminent or substantial endangerment to the health or safety of people on the Site or in the surrounding area or to the environment, DTSC may order Respondents to stop further implementation of this Order for such period of time needed to abate the endangerment. In the event that DTSC determines that any site activities (whether or not pursued in compliance with this Order) are proceeding without DTSC authorization,  DTSC may order Respondents to stop further implementation of this Order or activity for such period of time needed to obtain DTSC authorization, if such authorization is appropriate. Any deadline in this Order directly affected by a Stop Work Order, under this Section, shall be extended for the term of the Stop Work Order.

Unilateral ISE Order
October 6, 2023

5.19  Emergency Response Action/Notification.  In the event of any action or occurrence (such as a fire, earthquake, explosion, or human exposure to hazardous substances caused by the release or threatened release of a hazardous substance) during the course of this Order, Respondents shall immediately take all appropriate action to prevent, abate, or minimize such emergency, release, or immediate threat of release and shall immediately notify the Project Manager.  Respondents shall take such action in consultation with the Project Manager and in accordance with all applicable provisions of this Order.  Within seven days of the onset of such an event, Respondents shall furnish a report to DTSC, signed by Respondents' Project Coordinator, setting forth the events which occurred and the measures taken in the response thereto.  In the event that Respondents fail to take appropriate response and DTSC takes the action instead, Respondents shall be liable to DTSC for all costs of the response action.  Nothing in this Section shall be deemed to limit any other notification requirement to which Respondents may be subject.

5.20  Discontinuation of Remedial Technology.  Any remedial technology employed in implementation of the final RAP or final RAW shall be left in place and operated by Respondents until and except to the extent that DTSC authorizes Respondents in writing to discontinue, move or modify some or all of the remedial technology because Respondents have met the criteria specified in the final RAP or final RAW for its discontinuance, or because the modifications would better achieve the goals of the final RAP or final RAW.

5.21  Financial Assurance.  Respondents shall demonstrate to DTSC and maintain financial assurance for operation and maintenance and monitoring.  Respondents shall demonstrate financial assurance prior to the time that operation and maintenance activities are initiated and shall maintain it throughout the period of time necessary to complete all required operation and maintenance activities.  The financial assurance mechanisms shall meet the requirements of Health and Safety Code Section 25355.2.  All financial assurance mechanisms are subject to the review and approval of DTSC.

## VI.  GENERAL PROVISIONS

6.1  Project Coordinator.  Within 15 days from the effective date of this Order, Respondents shall submit to DTSC in writing the name, address, and telephone number of a Project Coordinator whose responsibilities will be to receive all notices, comments, approvals, and other communications from DTSC.  Respondents shall promptly notify DTSC of any change in the identity of the Project Coordinator.  Respondents shall obtain approval from DTSC before the new Project Coordinator performs any work under this Order.

6.2  Project Engineer/Geologist.  The work performed pursuant to this Order shall be under the direction and supervision of a qualified professional engineer or a registered geologist in the State of California, with expertise in hazardous substance site cleanup.  Within 15 days from the effective date of this Order, Respondents must

submit:  a) The name and address of the project engineer or geologist chosen by Respondents; and b) in order to demonstrate expertise in hazardous substance cleanup, the resumé of the engineer or geologist, and the statement of qualifications of the consulting firm responsible for the work.  Respondents shall promptly notify DTSC of any change in the identity of the Project Engineer/Geologist.  Respondents shall obtain approval from DTSC before the new Project Engineer/Geologist performs any work under this Order.

6.3  Monthly Summary Reports.  Within 30 days from the effective date of this Order, and on a monthly basis thereafter, Respondents shall submit a Monthly Summary Report of their activities under the provisions of this Order.  The reports shall be received by DTSC by the 15th day of each month and shall describe:

(a) Specific actions taken by or on behalf of Respondents during the previous calendar month;

(b) Actions expected to be undertaken during the current calendar month;

(c) All planned activities for the next month;

(d) Any requirements under this Order that were not completed;

(e) Any problems or anticipated problems in complying with this Order; and

(f) All results of sample analyses, tests, and other data generated under this Order during the previous calendar month, and any significant findings from these data.

6.4  Quality Assurance/Quality Control (QA/QC).  All sampling and analysis conducted by Respondents under this Order shall be performed in accordance with QA/QC procedures submitted by Respondents and approved by DTSC pursuant to this Order.

6.5  Submittals.  All submittals and notifications from Respondents required by this Order shall be sent to the DTSC Project Manager, which as of the date of this Order is:

> Ian Utz, Project Manager
> Site Mitigation and Restoration Program
> Department of Toxic Substances Control
> 700 Heinz Avenue, Suite 200C
> Berkeley, California 94710
> ian.utz@dtsc.ca.gov

All reports shall be submitted in two hard (paper) copies and one electronic copy in searchable portable document format (PDF).

Unilateral ISE Order
October 6, 2023

6.6 <u>Communications</u>. All approvals and decisions of DTSC made regarding submittals and notifications will be communicated to Respondents in writing by the Site Mitigation Branch Chief, or his/her designee. No informal advice, guidance, suggestions or comments by DTSC regarding reports, plans, specifications, schedules or any other writings by Respondents shall be construed to relieve Respondents of the obligation to obtain such formal approvals as may be required.

6.7 <u>DTSC Review and Approval</u>.

(a) All response actions taken pursuant to this Order shall be subject to the approval of DTSC. Respondents shall submit all deliverables required by this Order to DTSC. Once the deliverables are approved by DTSC, they shall be deemed incorporated into, and where applicable, enforceable under this Order.

(b) If DTSC determines that any report, plan, schedule or other document submitted for approval pursuant to this Order fails to comply with this Order or fails to protect public health or safety or the environment, DTSC may:

(1) Modify the document as deemed necessary and approve the document as modified; or

(2) Return comments to Respondents with recommended changes and a date by which Respondents must submit to DTSC a revised document incorporating the recommended changes.

(c) Any modifications, comments or other directives issued pursuant to (a) above, are incorporated into this Order. Any noncompliance with these modifications or directives shall be deemed a failure or refusal to comply with this Order.

6.8 <u>Compliance with Applicable Laws</u>. Nothing in this Order shall relieve Respondents from complying with all other applicable laws and regulations, including but not limited to compliance with all applicable waste discharge requirements issued by the State Water Resources Control Board or a California Regional Water Quality Control Board. Respondents shall conform all actions required by this Order with all applicable federal, state and local laws and regulations.

6.9 <u>Respondent Liabilities</u>. Nothing in this Order shall constitute or be construed as a satisfaction or release from liability for any conditions or claims arising as a result of past, current or future operations of Respondents. Nothing in this Order is intended or shall be construed to limit the rights of any of the parties with respect to claims arising out of or relating to the deposit or disposal at any other location of substances removed from the Site. Nothing in this Order is intended or shall be construed to limit or preclude DTSC from taking any action authorized by law to protect public health or safety or the environment and recovering the cost thereof. Notwithstanding compliance with the terms of this Order, Respondents may be required to take further actions as are

necessary to protect public health and the environment.

6.10 <u>Site Access</u>. Access to the Site and laboratories used for analyses of samples under this Order shall be provided at all reasonable times to employees, contractors, and consultants of DTSC. Nothing in this Section is intended or shall be construed to limit in any way the right of entry or inspection that DTSC or any other agency may otherwise have by operation of any law. DTSC and its authorized representatives shall have the authority to enter and move freely about all property at the Site at all reasonable times for purposes including, but not limited to: inspecting records, operating logs, sampling and analytic data, and contracts relating to this Site; reviewing the progress of Respondents in carrying out the terms of this Order; conducting such tests as DTSC may deem necessary; and verifying the data submitted to DTSC by Respondents.

To the extent the Site or any other property to which access is required for the implementation of this Order is owned or controlled by persons other than Respondents, Respondents shall use best efforts to secure from such persons access for Respondents, as well as DTSC, its representatives, and contractors, as necessary to effectuate this Order. To the extent that any portion of the Site is controlled by tenants of Respondents, Respondents shall use best efforts to secure from such tenants, access for Respondents, as well as for DTSC, its representatives, and contractors, as necessary to effectuate this Order. For purposes of this Section, "best efforts" includes the payment of reasonable sums of money in consideration of access. If any access required to complete the Work is not obtained within forty-five (45) days of the effective date of this Order, or within forty-five (45) days of the date DTSC notifies Respondents in writing that additional access beyond that previously secured is necessary, Respondents shall promptly notify DTSC, and shall include in that notification a summary of the steps Respondents have taken to attempt to obtain access. DTSC may, as it deems appropriate, assist Respondents in obtaining access. Respondents shall reimburse DTSC in obtaining access, including, but not limited to, attorneys fees and the amount of just compensation.

6.11 <u>Site Access for Respondents</u>. The Site owner Respondents shall grant access to other Respondents who are in compliance with this Order for the purpose of conducting activities pursuant to this Order or for activities deemed necessary by DTSC to meet the objectives of this Order.

6.12 <u>Sampling, Data and Document Availability</u>. Respondents shall permit DTSC and its authorized representatives to inspect and copy all sampling, testing, monitoring or other data generated by Respondents or on Respondents' behalf in any way pertaining to work undertaken pursuant to this Order. Respondents shall submit all such data upon the request of DTSC. Copies shall be provided within 7 days of receipt of DTSC's written request. Respondents shall inform DTSC at least 7 days in advance of all field sampling under this Order, and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by Respondents pursuant to

this Order.  Respondents shall maintain a central depository of the data, reports, and other documents prepared pursuant to this Order.

6.13  Record Retention.  All such data, reports and other documents shall be preserved by Respondents for a minimum of ten years after the conclusion of all activities under this Order.  If DTSC requests that some or all of these documents be preserved for a longer period of time, Respondents shall either comply with that request or deliver the documents to DTSC, or permit  DTSC to copy the documents prior to destruction.  Respondents shall notify DTSC in writing at least six months prior to destroying any documents prepared pursuant to this Order.

6.14  Government Liabilities.  The State of California shall not be liable for any injuries or damages to persons or property resulting from acts or omissions by Respondents, or related parties specified in Section 6.26, Parties Bound, in carrying out activities pursuant to this Order, nor shall the State of California be held as party to any contract entered into by Respondents or their agents in carrying out activities pursuant to this Order.

6.15  Additional Actions.  By issuance of this Order, DTSC does not waive the right to take any further actions authorized by law.

6.16  Extension Requests.  If Respondents are unable to perform any activity or submit any document within the time required under this Order, Respondents may, prior to expiration of the time, request an extension of the time in writing.  The extension request shall include a justification for the delay.  All such requests shall be in advance of the date on which the activity or document is due.

6.17  Extension Approvals.  If DTSC determines that good cause exists for an extension, it will grant the request and specify a new schedule in writing.  Respondents shall comply with the new schedule incorporated in this Order.

6.18  Liability for Costs .  Respondents are liable for all of DTSC's costs that have been incurred in taking response actions at the Site (including costs of overseeing response actions performed by Respondents) and costs to be incurred in the future.

6.19  Payment of Costs.  DTSC may bill Respondents for costs incurred in taking response actions at the Site prior to the effective date of this Order.  DTSC will bill Respondents quarterly for its response costs incurred after the effective date of this Order.  Respondents shall pay DTSC within 60 days of receipt of any DTSC billing.  Any billing not paid within 60 days is subject to interest calculated from the date of the billing pursuant to Health and Safety Code section 25360.1.  All payments made by Respondents pursuant to this Order shall be by cashier's or certified check made payable to this "Department of Toxic Substances Control," and shall bear on the face the project code of the Site (Site Code 202453) and the Docket number of this Order.  Payments shall be sent to:

Unilateral ISE Order
October 6, 2023

Department of Toxic Substances Control
Accounting/Cashier
1001 I Street, 21st Floor
P.O. Box 806
Sacramento, California 95812-0806

A photocopy of all payment checks shall also be sent to the person designated by DTSC to receive submittals under this Order.

6.20 Severability. The requirements of this Order are severable, and Respondents shall comply with each and every provision hereof, notwithstanding the effectiveness of any other provision.

6.21 Incorporation of Plans, Schedules and Reports. All plans, schedules, reports, specifications and other documents that are submitted by Respondents pursuant to this Order are incorporated in this Order upon DTSC's approval or as modified pursuant to Section 6.7, DTSC Review and Approval, and shall be implemented by Respondents. Any noncompliance with the documents incorporated in this Order shall be deemed a failure or refusal to comply with this Order.

6.22 Modifications. DTSC reserves the right to unilaterally modify this Order. Any modification to this Order shall be effective upon the date the modification is signed by DTSC and shall be deemed incorporated in this Order.

6.23 Time Periods. Unless otherwise specified, time periods begin from the effective date of this Order and "days" means calendar days.

6.24 Termination and Satisfaction. Except for Respondents' obligations under Section 5.15 (Operation and Maintenance), Section 5.16 (Five-Year Review), Section 5.21 (Financial Assurance), Section 6.13 (Record Retention), Section 6.18 (Liability for Costs), and Section 6.19 (Payment of Costs), Respondents' obligations under this Order shall terminate and be deemed satisfied upon Respondents' receipt of written notice from DTSC that Respondents have complied with all the terms of this Order.

6.25 Calendar of Tasks and Schedules. This Section is merely for the convenience of listing in one location the submittals required by this Order. If there is a conflict between the date for a scheduled submittal within this Section and the date within the Section describing the specific requirement, the latter shall govern.

## Calendar of Tasks and Schedules

| TASK | SCHEDULE |
|---|---|
| 1. Notice of Intent to Comply (Section 7). | Within 15 days of the effective date of this Order. |
| 2. Identify Project Coordinator (Section 6.1). | Within 15 days of the effective date of this Order. |
| 3. Identify Project Engineer/Geologist (Section 6.2). | Within 15 days of the effective date of this Order. |
| 4. Provide a copy of this Order to all contractors, subcontractors, laboratories, and consultants which are retained to conduct any work performed under this Order (section 6.26). | Within 15 days of the effective date of this Order or the date of retaining their services, whichever is later. |
| 5. Attend Site Remediation Strategy Meeting (Section 5.1.2). | Within 20 days of the effective date of this Order. |
| 6. Submit overdue vapor intrusion investigation report, as required by the Final Draft Revised Off-Site Vapor Intrusion Investigation Workplan, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond, dated May 19, 2021. | Within 30 days of the effective date of this Order. |
| 7. Submit Monthly Summary Reports (Section 6.3). | Within 30 days from the effective date of this Order, and on a monthly basis thereafter, the 15th day of each month. |
| 8. Groundwater and Soil Gas Monitoring (Section 5.1.4). | As determined as part of RI/FS. |
| 9. Removal Actions: Fence and Post (Section 5.1.3(a)) and SVE/SSD Continued Operation (Section 5.1.3(b)). | Within 60 days of the effective date of this Order, install fencing and signage. Beginning the effective date of this Order, and until DTSC approves otherwise, continue to operate the SVE/SSD system. |

| TASK | SCHEDULE |
|---|---|
| 10. Submit RI/FS Workplan (Section 5.2.2). | Within 90 days of the effective date of this Order. |
| 11. Submit interim screening and evaluation document (Section 5.3). | As requested by DTSC. |
| 12. Complete Treatability Studies (Section 5.4). | As required during Site characterization or as requested by DTSC. |
| 13. Submit RI Report (Section 5.5). | Per approved RI/FS Workplan schedule. |
| 14. Submit Health and Baseline Risk Assessment (Section 5.6). | Within 30 days from approval of RI Report, or as otherwise required by DTSC. |
| 15. Submit FS Report (Section 5.7). | Within 60 days from submittal of RI Report, or as otherwise required by DTSC. |
| 16. Submit PPP (Section 5.8). | Within 40 days from DTSC request. |
| 17. Conduct public participation activities (Section 5.8). | As requested by DTSC. |
| 18. Submit and distribute Fact Sheets (Section 5.8). | For projected or completed key milestones, as specified in PPP, or when requested by DTSC. |
| 19. Submit CEQA Documentation (Section 5.9). | Upon DTSC request. |
| 20. Submit Draft RAP or Draft RAW (Section 5.10 or 5.11). | Within 90 days after approval of FS Report. |
| 21. Submit information needed to prepare the Responsiveness Summary (Section 5.10 or 5.11). | Within 10 days of DTSC request. |
| 22. Submit Final RAP or Final RAW (Section 5.10 or 5.11). | Within 15 days of receipt of DTSC's comments. |
| 23. Submit Remedial Design (Section 5.12). | Within 60 days after DTSC's approval of the Final RAP. |
| 24. Land Use Covenant (Section 5.13). | Within 90 days of approval of Final RAP or Final RAW. |

| TASK | SCHEDULE |
|---|---|
| 25. Implementation of Final RAW or Final RAP and RD (Section 5.14). | Per approved RAW/RD schedule. |
| 26. Submit Implementation Report (Section 5.14). | Within 30 days of completion of field activities for RAW/RD implementation. |
| 27. Submit O&M Plan (Section 5.15). | Within 30 days of DTSC's request. |
| 28. Submit Remedial Action Review Workplan (Section 5.16). | Within 30 days before the end of the time period approved by DTSC to review and reevaluate the remedial action. |
| 29. Submit Five-Year Review Report (Section 5.16). | Within 60 days of DTSC's approval of Remedial Action Review Workplan. |
| 30. Submit Emergency Response Action Report (Section 5.19). | Within 7 days of the onset of an emergency event. |
| 31. Demonstrate financial assurance for operation, maintenance, and monitoring (Section 5.21). | Prior to the time such activities are initiated, and throughout the period of time necessary to complete such activities. |
| 32. Provide copies of sampling data and documentation (Section 6.12). | Within 7 days of receipt of DTSC's request. |
| 33. Provide prior notice before conducting field sampling (Section 6.12). | At least 7 days in advance of field sampling. |
| 34. Maintain central depository of data, reports, and documentation (Section 6.13). | For minimum of 10 years after conclusion of all activities conducted pursuant to this Order. |
| 35. Provide prior written notice prior to destroying documents (Section 6.13). | At least 6 months prior to destroying any documentation prepared pursuant to this Order. |

6.26  Parties Bound.  This Order applies to and is binding upon Respondents, and their officers, directors, agents, employees, contractors, consultants, receivers, trustees, successors and assignees, including but not limited to, individuals, partners, and subsidiary and parent corporations.  Respondents shall provide a copy of this Order to all contractors, subcontractors, laboratories, and consultants which are retained to conduct any work performed under this Order, within 15 days after the effective date of this Order or the date of retaining their services, whichever is later.  Respondents shall condition any such contracts upon satisfactory compliance with this Order.  Notwithstanding the terms of any contract, Respondents are responsible for compliance with this Order and for ensuring that their subsidiaries, employees, contractors, consultants, subcontractors, agents and attorneys comply with this Order.

6.27  Change in Ownership.  No change in ownership or corporate or partnership status relating to the Site shall in any way alter Respondents' responsibility under this Order.  No conveyance of title, easement, or other interest in the Site, or a portion of the Site, shall affect Respondents' obligations under this Order.  Unless DTSC agrees that such obligations may be transferred to a third party, Respondents shall be responsible for and liable for any failure to carry out all activities required of Respondents by the terms and conditions of this Order, regardless of Respondents' use of employees, agents, contractors, or consultants to perform any such tasks.  Respondents shall provide a copy of this Order to any subsequent owners or successors before ownership rights or stock or assets in a corporate acquisition are transferred.

## VII.  NOTICE OF INTENT TO COMPLY

7.  Not later than 15 days after the effective date of this Order, Respondents shall provide written notice, in accordance with Section 6.5 (Submittals) of this Order, stating whether or not Respondents will comply with the terms of this Order.  If Respondents, or any one of them, do not unequivocally commit to perform all of the requirements of this Order, they, or each so refusing, shall be deemed to have violated this Order and to have failed or refused to comply with this Order.  Respondents' written notice shall describe, using facts that exist on or prior to the effective date of this Order, any "sufficient cause" defenses asserted by Respondents under Health and Safety Code sections 25358.3(a) and 25355.5(a)(1)(B) or CERCLA section 107(c)(3), 42 U.S.C. section 9607(c)(3).

## VIII.  EFFECTIVE DATE

8.  This Order is final and effective five days from the date of mailing, which is the date of the cover letter transmitting the Order to you.

Unilateral ISE Order
October 6, 2023

## IX.  PENALTIES FOR NONCOMPLIANCE

9.  Each Respondent may be liable for penalties of up to $25,000 for each day out of compliance with any term or condition set forth in this Order and for punitive damages up to three times the amount of any costs incurred by DTSC as a result of Respondents' failure to comply, pursuant to Health and Safety Code sections 25359, 25359.2, 25359.4, and 25367(c).  Health and Safety Code section 25359.4.5 provides that a responsible party who complies with this Order, or with another order or agreement concerning the same response actions required by this Order, may seek treble damages from Respondents who fail or refuse to comply with this Order without sufficient cause.

DATE OF ISSUANCE:  October 6, 2023

Marikka Hughes, PG
Branch Chief
Site Mitigation and Restoration Program – Berkeley Office
Department of Toxic Substances Control

cc:  Site Mitigation and Restoration Program
     Headquarters
     Office of Legal Counsel

EXHIBIT A



Contra Costa County Assessor's Office Map

Legend
Streets
Assessment Parcels
World Imagery
Low Resolution 15m Imagery
High Resolution 60cm Imagery
High Resolution 30cm Imagery
Citations

Notes
Contra Costa County -DOIT GIS

1: 2,204

SITE

Key Blvd
Prather Ave
Nevin Ave
McLaughlin St
State Hwy 123
State Hwy 123
Wilson Ave
I 80

This map is a user generated static output from an Internet mapping site and is for
reference only. Data layers that appear on this map may or may not be accurate,
current, or otherwise reliable.
THIS MAP IS NOT TO BE USED FOR NAVIGATION

0   0.03   0.1   Miles
0.1

WGS_1984_Web_Mercator_Auxiliary_Sphere

EXHIBIT B



EXHIBIT C



Site Map

**PANGEA**

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California

Fig 2 Site Map 2020-05-27 (T435)

EXHIBIT D

EXHIBIT D

Technical Reports

---

California Department of Toxic Substances Control (DTSC).  2011.  Site Screening Assessment, Omo Fabricare Cleaners, Richmond.  April 1.

**\*\*Exponent, Inc. (Exponent).  2020.  Health and Safety Plan (HASP), Former Omo's Cleaners, Pangea Environmental Services, Inc., for Subslab Depressurization/Soil Vapor Extraction System Operation & Maintenance. December 7.**

Exponent.  2021.  Health and Safety Plan (HASP), Former Omo's Cleaners, Pangea Environmental Services, Inc., for Site Characterization.  March 18.

Pangea Environmental Services, Inc. (Pangea).  2016.  Site Assessment Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  August 16.

**\*\*Pangea.  2017.  Groundwater Monitoring Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  June 19.**

**\*\*Pangea.  2020.  Groundwater Monitoring Report 2019, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  April 30.**

**\*\*Pangea.  2020.  SVE/SSD System Startup Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  June 30.**

**\*\*Pangea.  2020.  Additional Characterization Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  December 4.**

Pangea.  2021.  Final Draft Revised Off-Site Vapor Intrusion Investigation Workplan, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  March 19.

**\*\*Pangea.  2022.  Data Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  March 21.**

Pangea.  2022.  Preliminary Sampling Data Summary, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  May 23.

Pangea.  2023.  Preliminary Sampling Data Summary, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  January 25.

**\*\*Pangea.  2023.  Groundwater Monitoring Report 2022, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond.  January 26.**

Weiss Associates.  2008.  Ground Water Investigation Report for Macdonald-San Pablo-Wall-45th Plume Study Area, Richmond and El Cerrito, California.  May 16.

***(\*\* Unapproved/unreviewed by DTSC at the time of this order.)***

EXHIBIT E

EXHIBIT E

Standard Chain Link Fence Specifications

_____

1. The fence shall be a six foot high chain link fence topped with three (3) strands of barbed wire.  The barbed wire shall be placed outward from the fence at an angle of between 30 and 45 degrees.

2. The fence wire shall be at least eleven (11) gauge and woven into approximately two inch mesh.

3. The fencing should have a knuckled finish on the top and bottom edges.

4. The posts are to be made of galvanized metal and placed no more than ten (10) feet apart and set deeply enough to support the fencing.  Corner posts shall be set in concrete.

5. Any access gates are to be of the same material as the fence and shall be secured with an appropriate padlock.

6. The fence location shall be the same as the existing temporary fences located on the perimeter of Lot 28 of the Site but shall replace the existing temporary fences which are not set into the ground.


Reference:  DTSC OPP#89-1, Draft #2, Fence and Post Orders

EXHIBIT F

EXHIBIT F

Sign Specifications

---

1. The signs shall be in English and Spanish, and may include international symbols as may be required by Department.

2. The signs shall read: "Caution: Hazardous Substance Area, Unauthorized Persons Keep Out", and shall have the name and telephone number of the Department. The Department also recommends that the Respondents attach "do not enter" international symbol signs at appropriate intervals to the fence to prevent injury to individuals who cannot read the sign.

3. The lettering on the signs shall be legible from a distance of twenty-five (25) feet.

4. The signs shall be visible from the surrounding area and be posted at each route of entry into the Site. Signs shall be posted on the fence, facing outwards, at intervals of not more than 100 feet or less than 75 feet.

5. The signs shall be made of a material able to withstand the elements.

Reference: DTSC OPP#89-1, Draft #2, Fence and Post Orders

# **Exhibit W**

Message

| | |
|---|---|
| **From**: | Utz, Ian@DTSC [Ian.Utz@dtsc.ca.gov] |
| **Sent**: | 3/9/2023 1:35:50 PM |
| **To**: | Bob Clark-Riddell [briddell@pangeaenv.com]; Pettijohn, Julie@DTSC [Julie.Pettijohn@dtsc.ca.gov] |
| **CC**: | Ron Piziali [ronaldpiziali@gmail.com]; Paul Kibel [pskibel@waterpowerlaw.com]; Ron Scheele [rscheele@pangeaenv.com]; Hughes, Marikka@DTSC [Marikka.Hughes@dtsc.ca.gov] |
| **Subject**: | Re: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023 |
| **Attachments**: | Prel Sampling Data Summary_01.23.2023[20].pdf |

Mr. Clark-Riddell:

We have reviewed the soil gas and indoor air data for your March and September 2022 mobilizations, and have the following initial comments which need to be addressed in your forthcoming full report:

1. Despite the work plan requirement to have the data third-party validated against laboratory reports and work plan data quality objectives, that has still not taken place. This needs to occur.

2. We note the absence of several applicable SFRWQCB or DTSC screening criteria, for example for TCE (0.48 ug/m3). As a result, the table as submitted is insufficient for risk management (screening level) purposes. Data validation needs to include a review of DTSC's most recent HERO Note 3 for each detected constituent and including the associated screening criterion (e.g., ug/m3).

3. We noted exceedances of default residential or commercial screening criteria in both quantified detections (e.g., benzene) as well as reporting limits (e.g., vinyl chloride); however, there is no shading to highlight this exceedance, contrary to footnotes.. As a result, the table as submitted is insufficient for risk management (screening level) purposes. Data validation needs to include the addition of shading to highlight which value cells contain an applicable screening level exceedance.

4. Please comment on the presence of certain constituents in outdoor air, including PCE, including potential sources. Consider referencing BAAQMD's regional data for air toxics/VOCs.

5. Please note that certain constituents appear to be excluded from your definition of chlorinated VOCs, but have exceedances (e.g., chloroform). Please comment on the subsurface data to contextualize whether these are indoor or dry cleaner related contaminants.

Please confirm receipt. You can see we already sent this preliminary letter out to adjoining properties, so as not to withhold the draft data. Thank you.

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Date:** Wednesday, February 8, 2023 at 6:30 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>, Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>, Paul Kibel <pskibel@waterpowerlaw.com>, Ron Scheele <rscheele@pangeaenv.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

**This Message Is From an External Sender**
This message came from outside your organization.

Hello Ian,

Attached is the report with the reformatted data tables. As this is a preliminary report, please confirm that the reformatted tables are sufficient. If necessary, we can reformat further since some the final VOC names are split among two pages. Most importantly, you have the excel tables for your toxicologist review.

Please contact me with any questions or comments. Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Bob Clark-Riddell
**Sent:** Tuesday, February 7, 2023 7:32 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Scheele <rscheele@pangeaenv.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Ian,

Per your request, attached are the excel files for soil gas/sub-slab gas and indoor air.

We are also formatted the indoor air table PDF to revise the Preliminary Data Summary Report per your request.

Please contact me with any questions or comments. Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Tuesday, February 7, 2023 9:20 AM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>

**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Hello,

Bob Clark-Riddell – We are still waiting on the resubmitted tables. Please send us the Excel spreadsheet – it should take you about 10 minutes. We need to get our toxicologist to review your tables ASAP.

Paul Kibel – Your letter says "Upon request, Casa Nido will provide DTSC with further documentation confirming why these other responsible parties properly need to be named in any cleanup order." Please provide all supporting documentation electronically for all listed parties.

Thank you

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

---

**From:** Utz, Ian@DTSC
**Sent:** Wednesday, February 1, 2023 10:30 AM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Hello,

This confirms receipt.

However, this is not legible. Standard practice is to extend tables onto multiple printable pages to allow the reader to review them when printed.

As such, please submit the Excel spreadsheets associated with the tables, and resubmit with the table legibly on multiple printed pages.

Thank you.



Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Tuesday, January 31, 2023 1:11 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Paul Kibel <pskibel@waterpowerlaw.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Hello Mr Utz and Ms. Pettijohn,

Pangea is pleased to present the attached Preliminary Sampling Data Summary for the vapor intrusion evaluation conducted in September 2022.  Like the wet season sampling in March 2022, the assessment data was representative of acceptable risk in indoor air at all tested structures and did not trigger any contingency action.

There has been no change to the status of all interim engineering technologies at the site, including:
   a.   Soil-vapor extraction (SVE): the system remains at the Site property.

    b.   Sub-slab depressurization (SSD): the system remains beneath the Thai restaurant, although the restaurant remains closed for renovation.

    c.   Permeable reactive barriers (PRBs): the Daramend amendment remains in the trenches.

    d.   Passive vapor intrusion mitigation systems (VIMS):  no additional VIMS installation work has been done.

We look forward to our planned discussion on February 13, 2023.

Bob Clark-Riddell, P.E.
Principal Engineer
Pangea Environmental Services, Inc.
1250 Addison Street, Suite 213
Berkeley, CA 94702
Mobile/Work (510) 435-8664
Main Office (510) 836-3700

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Thursday, January 12, 2023 7:55 AM
**To:** Paul Kibel <pskibel@waterpowerlaw.com>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** Re: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Hello,

Please have PANGEA complete the below actions, and provide times that work to meet.  Thank you.

Ian Utz

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Sunday, January 8, 2023 5:41 PM
**To:** Paul Kibel <pskibel@waterpowerlaw.com>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Thank you.

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency





DTSC000006331

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Paul Kibel <pskibel@waterpowerlaw.com>
**Sent:** Sunday, January 8, 2023 5:40 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** Re: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Hello Ian,

I agree that setting up a virtual meeting for later this month is a good idea, to discuss how collectively we can best effect the transition from a VCA to a cleanup order. I will get back to you later this week with some proposed dates and times for this virtual meeting.

Thank you, Paul Kibel

**Paul Stanton Kibel**
**Water and Power Law Group PC**
2140 Shattuck Avenue, Ste. 801
Berkeley, CA  94704-1229
(510) 499-1649 (direct)
(510) 296-5588 (main)
(866) 407-8073 (e-fax)
pskibel@waterpowerlaw.com
www.waterpowerlaw.com


**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Wednesday, January 4, 2023 1:49 PM
**To:** Paul Kibel <pskibel@waterpowerlaw.com>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

One additional thing, please – we need to set up a virtual meeting to transition to the next phase of this project.  Could you please provide a few times that will work for Casa Nido and PANGEA to meet to discuss next steps – ideally during the last two weeks of this month (January 2023)?  Thanks in advance.

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

DTSC000006332

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Tuesday, January 3, 2023 10:15 AM
**To:** Paul Kibel <pskibel@waterpowerlaw.com>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** RE: Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

This confirms receipt. Please do the following by January 13, 2023:

1. Tabulate and transmit all remaining sampling and analytical data. Although we were copied on draft laboratory analytical data transmittal for September 2022 sampling events, these data were not presented to us by PANGEA in any way. It is also unclear whether additional data, such as groundwater monitoring data, have been collected since the last transmittal by PANGEA.

2. Please list the status of all interim engineering technologies at the site, including:
   a. Soil-vapor extraction (SVE)
   b. Sub-slab depressurization (SSD)
   c. Permeable reactive barriers (PRBs)
   d. Passive vapor intrusion mitigation systems (VIMS)

Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Paul Kibel <pskibel@waterpowerlaw.com>
**Sent:** Wednesday, December 21, 2022 7:01 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Pettijohn, Julie@DTSC <Julie.Pettijohn@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Cc:** Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Subject:** Casa Nido Notice of Termination of Voluntary Cleanup Agreement Effective March 1, 2023

Dear Mr Utz, Ms. Pettijohn and Mr. Whitney:

Attached please find Casa Nido's written notice for termination of the Voluntary Cleanup Agreement (VCP) for the Omo Cleaners Site effective March 1, 2023.

As indicated in the attached letter, Casa Nido will work cooperatively with DTSC staff to help effect the transition from remedial work done pursuant to the VCA to remedial work done pursuant to a DTSC administrative cleanup order issued to Casa Nido and other responsible parties.

Yours,

**Paul Stanton Kibel**
**Water and Power Law Group PC**
2140 Shattuck Avenue, Ste. 801
Berkeley, CA  94704-1229
(510) 499-1649 (direct)
(510) 296-5588 (main)
(866) 407-8073 (e-fax)
pskibel@waterpowerlaw.com
www.waterpowerlaw.com

DTSC000006334

# **Exhibit Z**

**WATER AND POWER
LAW GROUP PC**
57 POST STREET, SUITE 515
SAN FRANCISCO, CA  94104
(510) 296-5588
(866) 407-8073 (E-FAX)
WWW.WATERPOWERLAW.COM

OTHER OFFICES
BERKELEY
WASHINGTON, D.C.

October 16, 2023

*Via Electronic Mail Only*

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
California Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710
Email: Ian.Utz@dtsc.ca.gov

Julie Pettijohn
California Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710
Julie.Pettijohn@dtsc.ca.gov

Marikka Hughes, Alameda County Unit Chief
Site Mitigation and Restoration Program
California Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710
Marikka.Hughes@dtsc.ca.gov

**Re:    Omo Cleaners Site at 12200 San Pablo Avenue in Richmond, California:
Preliminary Response of Casa Nido to DTSC's October 6, 2023 Order**

Dear Mr. Utz, Ms. Pettijohn and Ms. Hughes:

I am contacting you on behalf of my client Casa Nido Partnership ("Casa Nido"), the current
owner of the above-referenced property (the "Property"). The purpose of this letter is to provide

1

a preliminary response from Casa Nido to the October 6, 2023 imminent endangerment order (the "Order") issued by the California Department of Toxic Substances Control ("DTSC") for the above-referenced site. As indicated at the close of this letter, pursuant to the California Health and Safety Code, Casa Nido requests an administrative hearing to challenge certain aspects of the Order discussed in further detail below.

**Responsible Parties Named in Order**

The Order issued by DTSC designates the following four (4) parties as responsible parties: Catherine O'Hanks, Casa Nido, Sandra Vernell and Earl Andersen.  As DTSC is aware, in connection with the issue of financial responsibility for the costs associated with environmental contamination of the Property, Casa Nido has filed a Complaint in federal district court in San Francisco that names the following six (6) defendants: Catherine O'Hanks, Jae Kwon, Lynn Garibotti (as trustee of the Garibotti Family Trust), Sentry Insurance, Sandra Vernell and Earl Andersen.

Jae Kwon was named as a defendant in the federal district court case because he operated the dry cleaners on the Property for several years when PCE was used (and "operators" are identified as responsible parties under CERCLA and the HSAA). Lynn Garibotti (in her prior capacity as Trustee of the Garibotti Family Trust) was named as a defendant in the federal district court case because the Garibotti Family Trust owned the Property when PCE releases occurred (and "owners" and "trustees" of trusts that are owners are identified as responsible parties under CERCLA and the HSAA).

As you may be aware, Jae Kwon passed away on August 23, 2023. Under California probate law, a claim related to the liabilities of a person now deceased may be brought against the estate or heirs of the deceased person provided such claims are brought within one (1) year of the person's death. The primary heirs of Jae Kwon appears to be his wife and children. Casa Nido will forward DTSC information on the name and contact information for Jae Kwon's heirs.

Quite apart from the assets Jae Kwon's estate and Lynn Garibotti may have to contribute to the remedial costs related to the Order, of equal importance is that Jae Kwon and Lynn Garibotti may have been issued insurance policies that could provide additional funds for the remedial costs related to the Order, and DTSC will only be able to trigger these insurance policies if the agency makes a claim against Jae Kwon and Lynn Garibotti. If DTSC does not add these parties to the Order the agency could be forgoing insurance monies that would otherwise be available to perform and remedial work.

For the reasons noted above and explained in more detail in the operative complaint in the pending litigation in federal district court, Casa Nido believes that Jae Kwon (and his heirs) and Lynn Garibotti (in her former capacity as trustee of the Garibotti Family Trust) need to be added as responsible parties in the Order. Please advise Casa Nido as to whether DTSC is amenable to issuing a revised order that adds these parties. If DTSC is initially not inclined to add these parties to the Order, please advise Casa Nido of the procedures for Casa Nido to administratively request modification of the Order to add these parties.

**Findings and Site History Described in Order**

Casa Nido has reviewed the findings and site history in the Order. As noted below, there are certain inaccurate statements in the findings and stie history and several important pieces of information that appear to be missing from the findings and site history in the order.

First, the findings and site history in the Order state that for many years Casa Nido performed remedial work pursuant to an "enforcement agreement." This is inaccurate. Casa Nido performed this remedial work pursuant to a Voluntary Cleanup Agreement ("VCA"). No enforcement order was previously issued by DTSC to Casa Nido in connection with the VCA.

Second, the findings and site history in the Order do not reflect that Casa Nido has already incurred more than $1,000,000 (one million dollars) in remedial costs and agency oversight costs in connection with remedial work performed pursuant to VCA. The inclusion of this finding regarding costs spent is important in terms of determining what is a fair allocation of future remedial costs/future agency oversight costs in connection with the remedial work proposed in the Order.

Third, in connection with previous work done under the VCA, Casa Nido arranged and paid for the demolition of the building on the Property where the former dry cleaners had operated. In doing so, Casa Nido not only incurred significant costs for the demolition but deprived itself of future rent payments (because there was no longer a building to rent). There is no mention of the building demolition in the Order.

Fourth, in connection with previous work done by Casa Nido and its consultants under the VCA, Casa Nido paid for the installation of a soil vapor extraction ("SVE") system for the restaurant adjacent to the Property and has voluntarily agreed to continue to pay for the operation of this SVE system even after the VCA was terminated. The inclusion of this finding regarding costs associated with the SVE system is important in terms of determining what is fair allocation of future remedial costs/future agency oversight costs in connection with the Order.

Finally, as noted above, in 2021 Casa Nido filed a lawsuit in federal district court in San Francisco. The defendants named in this case include Catherine O'Hanks, Jae Kwon, Lynn Garibotti (in her capacity as Trustee of the Garibotti Family Trust), Sentry Insurance, Sandra Vernell and Earl Andersen. The claims in this lawsuit involve responsibility for future remedial costs and agency oversight costs (which would include future remedial costs and agency oversight costs related to the work proposed in the Order). As this point, there are also now several insurance companies involved in defending claims, crossclaims and counterclaims in the lawsuit based on insurance policies that could provide millions of dollars in connection with remedial work. To date, however, none of the insurance companies involved in the case have yet acknowledged their responsibility for remedial costs and this may not be determined until trial (which has not yet been scheduled).

The operation of the October 6, 2023 Order issued by DTSC is therefore taking place against the background of an ongoing pending lawsuit (and the jurisdiction of the federal district court over

3

that lawsuit and over many of the same responsible parties listed in the Order) related to same environmental conditions covered by the Order. The lawsuit addresses the parties' respective liability for (among other things) anticipated future remedial costs and agency oversight costs (which are reflected in the proposed tasks in the Order just issued by DTSC). There should be an acknowledgment of the pending litigation (and the parties and claims involved) in the Order. Going forward, it will also be important that there are senior DTSC staff involved in and overseeing the implementation of the Order that have experience dealing with both the insurance coverage aspects of funding the proposed remedial work in the Order and of how the jurisdiction of the federal district court and the pending federal court litigation impacts the ways implementation of the Order will proceed.

By this letter, Casa Nido requests that DTSC revise and re-issue the Order to correct the inaccuracies noted above and to include the additional information noted above.

**Recommendation for Project Geologist/Project Engineer to Perform Work**

For the reasons explained above, because it appears that all of the appropriate parties have not been designated as responsible parties in the Order, it appears premature to designate a proposed Project Geologist/Project Engineer to perform the proposed remedial work in the Order. However, for the past seven (7) years (when Casa Nido and DTSC were operating under a Voluntary Cleanup Agreement or "VCA") the remedial work was performed by Pangea Environmental Services Inc. ("Pangea") under the direction of Robert Clark-Riddell at Pangea. Pangea has also continued to operate the soil vapor extraction ("SVE") system at the restaurant adjacent to the Property since the VCA was terminated.

Pangea and Mr. Clark-Riddell are highly qualified to perform the proposed remedial work in the Order and are already familiar with the site history and environmental conditions. This suggests that Pangea would be in a good position to perform the proposed remedial work in the Order in an efficient and cost-effective manner. For this reason, speaking only on behalf of itself rather than collectively on behalf of any of the other responsible parties listed in the Order, it would be Casa Nido's recommendation that Pangea serve as the Project Geologist/Project Engineer for the proposed remedial work in the Order. This is not something that Casa Nido can decide unilaterally.

**Designation of Project Coordinator by Responsible Parties Listed in Order**

The Order requests that the listed responsible parties designate a "Project Coordinator" to manage the proposed remedial work. For the reasons explained above, it is Casa Nido's position that the current Order needs to be revised and re-issued to name Jae Kwon (or his heirs) and Lynn Garibotti (in her prior capacity as Trustee of the Garibotti Family Trust) as responsible parties. Until such time as the proper responsible parties are included in the Order, it would seem to be premature to try to select a Project Coordinator (to which the parties that are added to the Order may object). Casa Nido therefore proposes that the selection of Project Coordinator (by the responsible parties listed in the Order) be postponed until the issue of adding Jae Kwon (or his heirs) and Lynn Garibotti to the Order has first been resolved.

4

When Casa Nido and DTSC were operating under the VCA, the point person for Casa Nido (in terms of coordinating with DTSC) was Ronald Piziali, Casa Nido's managing partner. For personal health reasons and obligations relating to his aging wife, Mr. Piziali will not be able to play this coordinating role going forward under the Order and there does not appear to be another person at Casa Nido that could play this role. However, Casa Nido will work cooperatively with whomever is selected as the Project Coordinator pursuant to the Order.

### Preparation of Documents and Studies Requested in Order

The Order described several technical documents and studies that DTSC would like performed and the dates by which DTSC would like these documents and studies to be completed. These technical documents and studies include a Remedial Investigation/Feasibility Study ("RI/FS"), Remedial Action Plan ("RAP") and Remedial Action Workplan ("RAW").

For the reasons explained above, Casa Nido believes the Order needs to be revised and re-issued to name Jae Kwon (or his heir) and Lynn Garibotti (in her prior capacity as Trustee of the Garibotti Family Trust) as responsible parties. As also explained above, until such time as the proper responsible parties are included in the Order, it would seem to be premature to try to select a Project Coordinator (to which the parties that are later added to the Order may object). Until such time as the proper responsible parties are included in the Order, it would also seem to be premature to try to negotiate a cost-sharing agreement among the responsible parties (to pay for the proposed remedial work) because of uncertainty as to which parties should be a party to the cost-sharing agreement. Casa Nido therefore proposes that the dates to begin and complete preparation of the technical documents and studies proposed in the Order be postponed until the issue of adding Jaw Kwon (or his heir) and Lynn Garibotti to the Order has first been resolved and a Project Coordinator can be designated.

### Continued Operation of Soil Vapor Extraction System

As noted above, since the VCA between Casa Nido and DTSC was terminated, Casa Nido has voluntarily agreed to keep operating the soil vapor extraction ("SVE") system at the restaurant adjacent to the Property. Until such time as the Order can be revised to add Jae Kwon (or his heirs) and Lynn Garibotti, which will then enable the responsible parties to the Order to designate a Project Coordinator and make arrangements to pay for the remedial work (including operation of the SVE system) proposed in the Order, Casa Nido agrees to voluntarily continue to operate the SVE system at the restaurant adjacent to the Property.

### Site Remediation Strategy Meeting with DTSC

The Order requests that the responsible parties schedule a Site Remediation Strategy Meeting with DTSC within 20 days of issuance of the Order. Casa Nido cannot speak on behalf of the other responsible parties named in the Order but Casa Nido is prepared to meet within the timeframe that DTSC has requested. However, for the reasons noted in this letter, it seems like it might be more productive to reschedule the initial Site Remediation Strategy Meeting for after the Order is revised to add Jae Kwon's heirs and Lynn Garibotti as responsible parties.

**Request for Administrative Hearing to Challenge Aspects of the Order**

Pursuant to California Health and Safety Code §§ 25187(b),(b)(2), (b)(3),(b)(5) and (b)(6), parties named in an order issued by DTSC have the right to an administrative hearing to challenge aspects of the order they believe to be improper. Pursuant to these provisions of the California Health and Safety Code, the request of such a hearing stays the enforcement of the DTSC order until such time as the hearing can take place and the challenges presented ruled upon.

To fully preserve its rights and those of the other parties named in the October 6, 2023 Order, by this letter Casa Nido requests an administrative hearing to challenge the following aspects of the Order:

(1) the Order's failure to name Jae Kwon (and his heirs) and the Trustee Lynn Garibotti (of the Garibotti Trust) as responsible parties in the Order;

(2) the Order's failure to accurately and completely describe the previous demolition and remedial work done by Casa Nido and its environmental consultants pursuant to the Voluntary Cleanup Agreement;

(3) the Order's failure to describe the monies (more than 1 million dollars) already spend by Casa Nido in connection with remedial work performed and the payment of agency oversight costs pursuant to the Voluntary Cleanup Agreement;

(4) the Order's failure to note that in 2021 a lawsuit was filed in federal district court in San Francisco by Casa Nido regarding (among other things) the allocation of future remedial and agency oversight costs between Casa Nido, Catherine O'Hanks and the other parties that are or need to be named in the DTSC Order; and

(5) the improper inclusion of several requested studies and investigations in the Order which should not be required given that Casa Nido (operating pursuant to the Voluntary Cleanup Agreement) had to proceed with the remedial work without DTSC oversight due to the failure of DTSC to respond to requests for agency oversight, and given that Casa Nido's consultant Pangea has already provided DTSC with much if not most of the data, testing results and analysis that would be included in the studies and investigations requested in the Order.

**Next Steps**

Thank you for your consideration of the preliminary response provided above and Casa Nido is available to discuss further appropriate next steps.

Yours,

Paul S. Kibel
On behalf of Casa Nido


Cc:     Ron Piziali, Casa Nido (via email)
        Marsha Conwill, Casa Nido (via email)
        Rachel Doughty, Greenfire Law (via email)
        Robert Clark-Riddell, Pangea Environmental Services (via email)

# Exhibit Y

## TOLLING AND STANDSTILL AGREEMENT BETWEEN
## CASA NIDO PARTNERSHIP AND CATHERINE O'HANKS

This Tolling and Standstill Agreement ("Agreement) is made and entered into as of December __, 2018 ("Effective Date") by and between the Casa Nido Partnership (the "Partnership") and Catherine O'Hanks (referred to in this Agreement as "O'Hanks).

WHEREAS, the Partnership is the owner of certain real property located at 12210 San Pablo Avenue in the City of Richmond, Contra Costa County, California (the "Richmond Property").

WHEREAS the Partnership alleges that during the period from approximately 1960-2002 O'Hanks operated a dry-cleaning business under various names, not necessarily known to the Partnership at this time, on the Richmond Property. This Agreement applies to and shall be binding upon any dry-cleaning business operated by O'Hanks on the Richmond Property.

WHEREAS the Partnership alleges that releases of Percholoroethylene ("PCE") resulted from the operations of the dry-cleaning business by O'Hanks on the Richmond Property, and these releases have resulted in contamination of groundwater and subsurface soils beneath the Richmond Property as well as the presence of soil vapors above the surface on the Richmond Property and potentially neighboring properties.

WHEREAS O'Hanks disputes the Partnership's allegations.

WHEREAS in August 2018 legal counsel for the Partnership sent a letter to O'Hanks explaining the environmental testing and remedial work that has been done by the Partnership to address alleged public health concerns related to the PCE contamination on and under the Richmond Party, and the past and anticipated costs associated with such environmental testing and remedial work, and demanding that O'Hanks reimburse the Partnership for all or some of these costs.

WHEREAS the Partnership and O'Hanks both believe it would be useful to have a 120-day period to exchange further information and to explore the possibility of arriving at an interim or final settlement without the need for litigation, such that during this 120-day period any and all statutes of limitations that may be running on claims/defenses the Partnership and O'Hanks may have against each other would be tolled.

THEREFORE, in order to facilitate orderly discussion and settlement negotiations between the parties, and in an effort to avoid immediate and potentially unnecessary litigation,

and in consideration of the mutual promises and agreements made herein, the Partnership and O'Hanks (hereinafter collectively the "Parties") agree as follows:

(1) The Parties agree not to commence any litigation against each other arising out of the dispute relating to liabilities for PCE releases and PCE remediation on, below or emanating from the Richmond Property between the Effective Date of this Agreement and the Termination Date defined in Paragraph (5) below.

(2) The time period between the Effective Date of this Agreement and the Termination Date shall not be counted in determining the applicability of any statute of limitation or other time-based defenses in any action/litigation brought by the Parties relating to liabilities for PCE releases and PCE remediation on, below or emanating from the Richmond Property, whether brought collectively or separately. This Agreement applies to any defenses, legal or equitable, based upon the lapse of time, including but not limited to the statute of limitations, laches, estoppel, waiver, timely action or notice.

(3) Nothing in this Agreement shall affect any defense available to any party as of the Effective Date of this Agreement, and this Agreement shall not be deemed to revive any claim that is or was already barred on that date. Nothing in this Agreement shall be construed as an acknowledgment by any party that any claim has or has not been barred, or is about to be barred, by the statute of limitations, laches, estoppel, waiver, timely action or notice, or any other defenses based on the lapse of time.

(4) This Agreement shall not operate as an admission of liability by any party. Neither shall this Agreement be offered as evidence in any action/lawsuit as an admission of liability or wrongdoing by any party or for any other purposes except to rebut a time-based defense asserted by a party to this Agreement.

(5) This Agreement shall terminate 120 (one hundred and twenty) days from the Effective Date ("Termination Date") unless the Termination Date is expressly extended or shortened by mutual agreement of all parties, with such mutual agreement evidenced by a written instrument executed by all of the parties.

(6) Each undersigned party represents, warrants and states that all legal actions necessary for the effectuation and execution of this Agreement have been validly taken and that the individuals whose signatures appear below on behalf of each party are duly authorized to execute this Agreement on behalf of their respective parties and to bind such parties to the terms of this Agreement.

(7) The consideration for this Agreement includes, but is not limited to, each party's forbearance from pursuing their claims against other parties to this Agreement at the present time and the parties' joint agreement to attempt to resolve the dispute through settlement discussions prior to resorting to litigation.

(8) This Agreement shall be interpreted in accordance with the substantive law of the State of California, without application of choice of law rules.

(9) The Agreement may be executed in counterpart originals, each of which shall be deemed to be an original by all parties signatory to the counterpart.


Date: 20 APR 2019

**Ron Piziali**, in his capacity as

Managing Partner of Casa Nida Partnership


Date: 14 Dec 2018

**Catherine O'Hanks**


4818-9248-1922, v. 1


I did NOT DATE it. PlEASE DATE AS you would AdviSE — I Got you text! THANKS

3

# **Exhibit Z**

TO: PAUL KIBEL      866 407-8073
Zachel DOUGHTY 510 900-9502


2nd  Tolling

## SECOND TOLLING AND STANDSTILL AGREEMENT BEWTWEEN
## CASA NIDO PARTNERSHIP AND CATHERINE OMO O'HANKS

This Second Tolling and Standstill Agreement ("Agreement) is made and entered into as of August *10*, 2020 ("Effective Date") by and between the Casa Nido Partnership (the "Partnership") and Catherine Omo O'Hanks ("O'Hanks"). .

WHEREAS, the Partnership is the owner of certain real property located at 12210 San Pablo Avenue in the City of Richmond, Contra Costa County, California (the "Richmond Property").

WHEREAS the Partnership alleges that during the period from approximately 1960-1992 O'Hanks operated a dry-cleaning business on the Richmond Property.

WHEREAS the Partnership alleges that releases of Percholoroethylene ("PCE") resulted from the operations of the dry-cleaning business by O'Hanks on the Richmond Property, and these releases have resulted in contamination of groundwater and subsurface soils beneath the Richmond Property as well as the presence of soil vapors above the surface on the Richmond Property and potentially neighboring properties.

WHEREAS O'Hanks disputes whether her operation of a dry-cleaning business on the Richmond Property resulted in releases of PCE into the soils and groundwater and resulting soil vapors.

WHEREAS in early 2019 the Partnership and O'Hanks entered into a Tolling and Standstill Agreement to facilitate the parties' discussions of settling the dispute without recourse to litigation.

WHEREAS, in order to help facilitate the continuance of settlement discussions, the Partnership and O'Hanks both believe it would be useful to have an additional 180-day period to exchange further information and to explore the possibility of arriving at an interim or final settlement, such that during this additional 180-day period any and all statutes of limitations that may be running on claims/defenses the Partnership and O'Hanks may have against each other would be tolled.

THEREFORE, the Partnership and O'Hanks agree as follows:

(1) The time period between the Effective Date of this Agreement and the Termination Date
shall not be counted in determining the applicability of any statute of limitation or other
time-based defenses in any action/litigation brought by the Parties relating to liabilities
for PCE releases and PCE remediation on, below or emanating from the Richmond
Property , whether brought collectively or separately. This Agreement applies to any
defenses, legal or equitable, based upon the lapse of time, including but not limited to the
statute of limitations, laches, estoppel, waiver, timely action or notice.

(2) Nothing in this Agreement shall affect any defense available to any party as of the
Effective Date of this Agreement, and this Agreement shall not be deemed to revive any
claim that is or was already barred on that date. Nothing in this Agreement shall be
construed as an acknowledgment by any party that any claim has or has not been barred,
or is about to be barred, by the statute of limitations, laches, estoppel, waiver, timely
action or notice, or any other defenses based on the lapse of time.

(3) This Agreement shall not operate as an admission of liability by any party. Neither shall
this Agreement be offered as evidence in any action/lawsuit as an admission of liability
or wrongdoing by any party or for any other purposes except to rebut a time-based
defense asserted by a party to this Agreement.

(4) This Agreement shall terminate 180 (one hundred and eighty) days from the Effective
Date ("Termination Date") unless the Termination Date is expressly extended or
shortened by mutual agreement of all parties, with such mutual agreement evidenced by a
written instrument executed by all of the parties.

(5) Each undersigned party represents, warrants and states that all legal actions necessary for
the effectuation and execution of this Agreement have been validly taken and that the
individuals whose signatures appear below on behalf of each party are duly authorized to
execute this Agreement on behalf of their respective parties and to bind such parties to
the terms of this Agreement.

(6) The consideration for this Agreement includes, but is not limited to, each party's joint
agreement to attempt to resolve the dispute through settlement discussions prior to
resorting to litigation.

(7) The terms of this Second Tolling and Standstill Agreement shall supersede any
inconsistent provisions in the prior Tolling and Standstill Agreement;

(8) This Agreement shall be interpreted in accordance with the substantive law of the State of
California, without application of choice of law rules.

(9) The Agreement may be executed in counterpart originals, each of which shall be deemed
to be an original by all parties signatory to the counterpart.

Date: 8/10/2020

**Ron Piziali**, in his capacity as

Managing Partner of Casa Nida Parternship

Date: 10 Aug 2020

**Catherine Omo O'Hanks**, in her individual capacity

4845-7574-3431, v. 1