# Exhibit B-19

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


CASA NIDO PARTNERSHIP, a         )
California Partnership,          )
                                )
            Plaintiff,          )
                                )
    vs.                         )
                                )
CATHERINE O'HANKS and JAE       )
KWON aka JAY KWON aka JAY       ) No.
KWON SHI aka JAY SHIK           ) 3:20-CV-7923-EMC
KWON; LYNNE MARIE
GARIBOTTI aka LYNNE
GARIBOTTI BLOWER aka
LYNNE G. BLOWER,
individually as trustee
the Claudio Garibotti
Trust, dated May 1, 1952;
and SENTRY INSURANCE
COMPANY,

            Defendants.


REMOTE DEPOSITION
OF IAN UTZ
VOLUME 1


DATE:          Thursday, February 29, 2024

TIME:          10:08 a.m. - 1:54 p.m.

LOCATION:      Via Web Video Conference




Magna Legal Services
866-624-6221
www.MagnaLS.com

REPORTED BY:   JAMIE DAVIS, CSR NO. 14209



Page 2

```
 1              APPEARANCES
 2   For the Plaintiff:
 3       Greenfire Law
         2748 Adeline Street, Suite A
 4       Berkeley, CA 94703
         (510) 900-9502
 5       rbrody@greenfirelaw.com
 6   BY:  Richard Brody, Esq.
 7   For Defendant, Counter-Claimant, and
     Cross-Complainant Catherine O'Hanks:
 8
         Edlin Gallagher Huie + Blum
 9       500 Washington Street, Suite 700
         San Francisco, CA 94111
10       (415) 397-9006
         Cdow@behblaw.com
11   BY:  Christopher Dow, Esq.
12
         Keller and Heckman LLP
13       Three Embarcadero Center, Suite 1420
         San Francisco, CA 94111
14       abnis@khlaw.com
     BY:  Rohit Sabnis, Esq.
15
16   For Defendant, Cross-Defendant and Cross-Complainant
     Lynne Marie Garibotti:
17
         Rossi Domingue LLP
18       3201 Danville Boulevard, Suite 172
         Alamo, CA 94507
19       (408) 495-3900
         shannon@rdlaw.net
20   BY:  Shannon Jones, Esq.
21   For Sentry Insurance Co.:
22       Sellman Leichenger Edson Hsu
         Newman & Moore LLP
23       33 New Montgomery, Suite 1850
         San Francisco, CA 94105
24       jbauman@selmanlaw.com
25   BY:  John Bauman, Esq.
```

Page 3

```
 1              APPEARANCES
 2   For Sandra Kate Vernell:
 3       WFBM, LLP
         255 California Street, Suite 525
 4       San Francisco, CA 94111
         jmink@wfbm.com
 5   BY:  James Mink, Esq.
 6   For Earl Ray Anderson:
 7       Gurnee Mason Rushford
         Bonotto & Forestie
 8       2240 Douglas Boulevard, Suite 150
         Roseville, CA 95661
 9       (916)797-3100
         abeam@gurneelaw.com
10   BY:  August Beam, Esq.
11   For the witness and the Department of Toxic
     Substances Control:
12
         Deputy Attorneys General
13       600 West Broadway, Suite 1800
         San Diego, CA 92101
14       (619)321-5780
         rafael.hurtado@doj.ca.gov
15   BY:  Rafael Hurtado, Esq.
16   Also present for the Department of Toxic Substances
     Control:
17
         Dakotah Benjamin, Esq.
18       Adrianna Lobato, Esq.
         Katie Lindsay, Esq.
19       Marikka Hughes
20              ---oOo---
21
22
23
24
25
```

Page 4

```
 1         INDEX OF EXAMINATIONS
 2                          PAGE
 3   IAN UTZ
         Examination by Mr. Dow          5
 4
 5              ---oOo---
 6         INDEX OF EXHIBITS
 7   EXHIBIT     DESCRIPTION        PAGE
 8    1     Deposition Notice           8
 9    2     Casa Nido VCA              20
10    3     Letter                     27
11    4     Letter                     32
12    5     E-mail                     37
13    6     August 14, 2020 Letter     40
14    7     October 8, 2020 Letter     49
15    8     E-mails                    58
16    9     E-mails                    68
17   10     Meeting Minutes            70
18   11     E-mail                     83
19   12     E-mails                    85
20   13     DTSC Memorandum            87
21   14     E-mails                    90
22
              ---oOo---
23
24
25
```

Page 5

```
 1         REMOTE DEPOSITION OF IAN UTZ, taken on
 2   behalf of the Defendant, commencing at 10:08 a.m.
 3   and terminating at 1:54 p.m. on Thursday,
 4   February 29, 2024, reported by JAMIE DAVIS, CSR No.
 5   14209, a Certified Shorthand Reporter in and for the
 6   State of California.
 7              ---oOo---
 8              IAN UTZ,
 9   having been duly sworn, was examined
10   and testified as follows:
11   THE WITNESS:  I do.
12   THE COURT REPORTER:  Thank you.
13              EXAMINATION
14   BY MR. DOW:
15       Q.  Good morning, Mr. Utz.  Am I pronouncing
16   your last name correctly?
17       A.  Yes.
18       Q.  Okay.  My name is Christopher Dow, and I
19   represent defendant, Catherine O'Hanks, in a
20   litigation that is in federal court for the Northern
21   District of California.  She is one of several
22   defendants being sued by the plaintiff, Casa Nido.
23          Mr. Utz, could you please state and spell
24   your name for the record, please?
25       A.  My name is Ian Utz, I-A-N, U-T-Z.
```



Page 6

1      Q. Mr. Utz, have you ever been deposed before?
2      A. No.
3      Q. Okay.  I am just going to go over a few
4   deposition ground rules.  First of all, do you
5   understand that you are giving testimony under oath
6   as if you were in court?
7      A. Yes.
8      Q. Okay.  My client, Catherine O'Hanks, is
9   entitled to your best answer, but we don't want you
10  to guess, but you are allowed to estimate.  And let
11  me briefly -- although the terms seem plain, let me
12  briefly describe what I mean as the difference
13  between guess and estimate.  If I asked you the size
14  of the desk I am sitting at, you would have to guess
15  because you have never seen my desk.
16      You know, if it is a thing, a person,
17  object, or whatever that you have seen, then you can
18  probably estimate the size.  So in other words,
19  right now you can estimate the size of the desk you
20  are sitting at, assuming you are sitting at a desk.
21      Do you understand, Mr. Utz?
22      A. Yes.
23      Q. Okay.  Thank you.
24      So this -- a deposition can be fairly
25  taxing.  This is not a marathon.  So if at any time

Page 7

1   you need a break, please let me know and we can
2   break.  I would not mind breaking ten minutes every
3   hour.  And later we can talk about if a lunch break
4   is needed.
5      The only thing I ask is that there is no
6   breaks between my question and your answer.
7      Do you understand?
8      A. Yes.
9      Q. Okay.  Okay.  I am going to show you -- I'm
10  going to drop into the chat box your notice of
11  deposition.
12      Mr. Utz, can you open -- excuse me.
13  Mr. Utz, can you open the notice of deposition I
14  just put into the chat box?
15      A. Yes.
16      Q. Okay.  Let's see.  I can also -- just bear
17  with me a moment here.  Sorry about that.
18      So Mr. Utz, can you see the deposition
19  notice up on the screen?
20      A. Yes.
21      Q. Okay.  And this is the deposition notice
22  that you are responding to today, correct?
23      A. Yes.
24      Q. Okay.  Thank you.
25      And during the course of this deposition,

Page 8

1   Mr. Utz, I am going to show documents on the screen.
2   I'm also going to drop them in the chat so you can
3   open them and manipulate them yourself.  Hopefully
4   that can speed things along.
5      MR. DOW:  So Madam Reporter, can we mark
6   this deposition notice as Exhibit A -- or rather I
7   think -- I think we will call it Exhibit 1, because
8   we might have quite a few exhibits today.
9      (Exhibit 1 marked.)
10      I'm sorry.  I am just looking for a
11  deposition subpoena.  Okay.
12  BY MR. DOW:
13      Q. Mr. Utz, are you aware that Ms. O'Hanks, my
14  client, served you with a subpoena for documents?
15      A. Yes.
16      Q. Okay.  The department or, rather, your
17  attorney, Mr. Hurtado, provided us documents
18  pursuant to the document subpoena we served.
19      Are you aware of that?
20      A. Yes.
21      Q. Okay.  Did you take any part in gathering
22  those documents?
23      A. Yes.
24      Q. And so are you aware that -- well, when I
25  say the department, I mean Department of Toxic

Page 9

1   Substances Control.  And so are you aware of the --
2   that the Department produced Bates-numbered
3   documents, Bates numbered from 1 to 21,736?
4      A. I don't know.
5      Q. You don't know.  Okay.  But you are aware
6   that the Department did produce documents?
7      A. Yes.
8      Q. Okay.  Did you review any documents in
9   preparation for this deposition?
10      A. Yes.
11      Q. Could you tell me what documents you
12  reviewed?
13      A. A voluntary cleanup agreement, also known
14  as an enforceable agreement with Casa Nido and an
15  imminent and substantial endangerment determination
16  and order and remedial action order.
17      Q. Okay.  Is that it?
18      A. Yes.
19      Q. Okay.  So Mr. Utz, I'd just like to briefly
20  go over your background.  Could you tell me a little
21  about your education after high school?
22      A. I earned a bachelor of science in
23  environmental sciences from the University of
24  California at Berkeley in 2016.
25      Q. Okay.  And excuse me.  Did you just tell me




Page 10

1   what your -- what was your bachelor of science in?
2       A. Environmental sciences with a concentration
3   in biology.
4       Q. Okay.  Did you seek employment after you
5   graduated from Berkeley?
6       A. Yes.
7       Q. And do you recall what your first work
8   position was after college?
9       A. Yes.
10      Q. And what was that?
11      A. I maintained two positions immediately
12  after college.  One of them was a laboratory
13  assistant to a laboratory at University of
14  California Berkeley.  The other was an environmental
15  consulting position at Basics Environmental,
16  Incorporated, in Oakland, California.
17      Q. Approximately how long were you at Basics?
18      A. Approximately two years.
19      Q. Okay.  And what was your title at Basics,
20  assuming you had one?
21      A. Project coordinator.
22      Q. And what did you do in your capacity as
23  project coordinator?
24      A. I performed environmental due diligence,
25  including all appropriate inquiries under ASTM

Page 11

1   E1527, for a number of properties in California.
2       Q. And was that due diligence, did that have
3   anything to do with hazardous substances?
4       A. Yes.
5       Q. So how so?  Were you in -- was this in
6   conjunction with property sales or business sales,
7   or what sort of transactions were you doing due
8   diligence on?
9       A. At Basics Environmental, I performed all
10  appropriate inquiries as part of primarily real
11  estate transactions and financial transactions,
12  including refinancing.
13      Q. When you used the phrase all appropriate
14  inquiries, where is that from?
15      A. The term is defined in federal regulation.
16  It is implementing federal statute regarding the
17  performance of environmental due diligence on
18  properties.
19      Q. Is that statute -- does that statute have
20  anything to do with the hazardous waste laws?
21      MR. HURTADO:  Objection.  Calls for a legal
22  conclusion.
23      THE WITNESS:  To some extent.
24  BY MR. DOW:
25      Q. Okay.  I'm just wondering as far as those

Page 12

1   regulations you spoke of, do you know, like, where
2   they are?  It is fine if you don't, but if you do,
3   could you let me know?
4       A. The regulations can be found in the United
5   States Code of Federal Regulations.
6       Q. Would that be within 40 -- Title 40?
7       MR. HURTADO:  Objection.  Calls for a legal
8   analysis.
9       THE WITNESS:  I do not know.
10  BY MR. DOW:
11      Q. Okay.  After Basics Environmental, did you
12  have any subsequent employment?
13      A. Yes.
14      Q. And where did you work after Basics
15  Environmental?
16      A. Ramboll Environ later known as Ramboll US
17  Corporation in Emeryville, California.
18      Q. And what was your capacity at Ramboll?
19      A. I was an environmental consultant.
20      Q. And what did you do at Ramboll particular
21  to being an environmental consultant?
22      A. I performed environmental due diligence as
23  well as environmental compliance reviews.
24      Q. And in that capacity, were you required to
25  generate any sorts of reports?

Page 13

1       A. Yes.
2       Q. And, like, what sorts of reports would you
3   generate?
4       A. Phase I environmental site assessments,
5   phase II environmental site assessments, and limited
6   environmental compliance reviews.
7       Q. After you were a -- well, after you worked
8   at Ramboll, did you have a subsequent position?
9       A. Yes.
10      Q. And may I ask if I could just go back, how
11  long were you at Ramboll approximately?
12      A. Approximately two years.
13      Q. Okay.  And after Ramboll, did you have
14  any -- did you go to another firm?
15      A. Yes.
16      Q. And where was that?
17      A. ERM-West, Incorporated, in Walnut Creek,
18  California, and San Francisco, California.
19      Q. And what was your title at ERM?
20      A. Project scientist.
21      Q. And as a project scientist at ERM, what did
22  you do?
23      A. I performed environmental due diligence and
24  environmental compliance reviews.
25      Q. And did that work involve hazardous -- or

4 (Pages 10 to 13)


MAGNA
LEGAL SERVICES

Page 14

1    investigation of hazardous substances?
2        A. Hazardous substances, yes.
3        Q. Up until and including ERM, had all your
4    work involved investigation into hazardous
5    substances at properties?
6        A. Can you repeat the question?
7        Q. Yes. Including your time at ERM and dating
8    back to your first professional position, would you
9    say a substantial part of your work involved
10   evaluating hazardous substances at contaminated or
11   potentially contaminated properties?
12       MR. HURTADO: Objection. Vague and
13   ambiguous.
14       THE WITNESS: The majority of my
15   professional experience relates in some way to
16   hazardous materials.
17   BY MR. DOW:
18       Q. Okay.
19       A. And environmental sciences.
20       Q. And would you say that a lot of your
21   professional experience involves hazardous
22   materials that have been somehow deposited in the
23   ground?
24       A. Can you repeat the question, please?
25       Q. Yes. I would say -- in terms of your work

Page 15

1    with hazardous substances, does a lot of that work
2    involve instances where hazardous substances have
3    infiltrated the ground at a piece of real property?
4        MR. HURTADO: Objection. Vague. Calls for
5    speculation.
6        THE WITNESS: I don't understand the
7    question.
8    BY MR. DOW:
9        Q. Let me ask it this way. During your work
10   as a private consultant, did you evaluate sites
11   where there was contamination by hazardous
12   substances in the ground?
13       A. Yes.
14       Q. Mr. Utz, how many years would you say you
15   spent in environmental consulting in the private
16   sector?
17       A. Over five years.
18       Q. What was your next position after ERM?
19       A. In April of 2020, I began working at the
20   State of California Environmental Protection Agency,
21   Department of Toxic Substance Control.
22       Q. And how many years have you worked at the
23   Department of Toxic Substances Control?
24       A. Approximately four years.
25       Q. And where is your office at the Department

Page 16

1    of Toxic Substances Control?
2        A. Berkeley, California.
3        Q. And what was your -- I am going to call --
4    is it okay if I call the Department of Toxic
5    Substance Control DTSC, Mr. Utz?
6        A. Yes.
7        Q. What was were first position at DTSC?
8        A. My first position at DTSC was environmental
9    scientist in the site mitigation and restoration
10   program also known as a project manager.
11       Q. Okay. And in that capacity, what sorts of
12   duties did you perform?
13       A. I was a project manager for hazardous
14   substance and hazardous waste cleanup sites.
15       Q. Have you ever received a promotion at DTSC?
16       A. Yes.
17       Q. And what was that promotion?
18       A. Approximately one year ago, I was promoted
19   to a senior environmental scientist position.
20       Q. And in your capacity as senior
21   environmental scientist at DTSC, what sort of duties
22   do you do?
23       A. I manage the clean up -- I oversee the
24   cleanup of hazardous substances and hazardous waste
25   cleanup sites.

Page 17

1        Q. Okay. Outside of your formal education at
2    Berkeley, have you ever taken any training courses
3    in hazardous substances or sites contaminated with
4    hazardous substances?
5        A. Yes.
6        Q. What sorts of courses have you taken?
7        A. I have taken a number of courses offered in
8    part by affiliates of the University of California
9    at Davis related to contaminate state and transport,
10   remedial technologies, contaminants of emerging
11   concern, remedial investigation. And I have also
12   received training on project management.
13       Q. As a -- and are you still a -- you are
14   still a project manager at DTSC; is that true?
15       A. Correct.
16       Q. As a project manager at DTSC, would you say
17   you have at least a general understanding of what
18   is -- of what -- or let me back up.
19       As a project manager at DTSC, would you say
20   you have some understanding of the monetary costs
21   associated with the investigation of a contaminated
22   property?
23       MR. HURTADO: Objection. Too general.
24       MR. BRODY: And objection. Vague.
25       THE WITNESS: Can you clarify general

5 (Pages 14 to 17)



Page 18

1  understanding of costs, please?
2  BY MR. DOW:
3      Q. Yeah.  Sure.  Well, let me try to be more
4  specific.  Have you ever -- have you ever -- in your
5  capacity as a project manager, do you ever have to
6  review invoices related to work done at a hazardous
7  substances site?
8      A. Please clarify what you mean by "work."
9      Q. Well, for instance, investigation of a
10  hazardous substances site.  Have you ever reviewed
11  any invoices related to the work associated with
12  that?
13      A. In my current role at DTSC, I do not review
14  invoices for investigation by private parties at
15  cleanup sites; however, I review invoices for DTSC
16  oversight costs.
17      Q. Okay.  All right.  I will get back to that
18  later.
19          Mr. Utz, are you familiar with something
20  called the National Contingency Plan?
21      A. Yes.
22      Q. Can you tell me what that is?
23          MR. HURTADO:  Objection.  Too general.
24  Legal conclusion.
25          THE WITNESS:  Could I tell you what it is

Page 19

1  in what sense?
2  BY MR. DOW:
3      Q. Well, I guess my question is -- is, what is
4  the National Contingency Plan?
5      A. The National Contingency Plan is a series
6  of federal regulations found in the United States
7  Code of Federal Regulations which at least in part
8  provides a step-wise procedure for hazardous
9  substances cleanup sites.
10      Q. Okay.  Thank you.
11          And so are you at least generally familiar
12  with that procedure?
13          MR. BRODY:  Objection.  Vague.
14  BY MR. DOW:
15      Q. Let me rephrase.  Mr. Utz, are you at least
16  generally familiar with the procedures of the
17  National Contingency Plan?
18      A. I am familiar with some of the procedures
19  in the National Contingency Plan.
20      Q. Okay.  Would it be fair to say that
21  National Contingency Plan is a framework for
22  investigating and remediating sites contaminated
23  with hazardous substances?
24          MR. BRODY:  Objection.  Calls for legal
25  opinion.

Page 20

1          MR. HURTADO:  Ambiguous in general.
2          THE WITNESS:  The National Contingency Plan
3  covers a wide variety of matters.  One of them is
4  the clean up of hazardous substances sites.
5  BY MR. DOW:
6      Q. Okay.  All right.  I am going to drop an
7  exhibit in the chat.  So Mr. Utz, I just dropped a
8  voluntary cleanup agreement into the chat, if you
9  can open that, please.
10          (Exhibit 2 marked.)
11      A. I have it open.
12      Q. Okay.  Great.  And I will have it up on the
13  screen too.  But again, I am providing these to you
14  so you can manipulate them yourself if you want to.
15          Do you recognize what this document is,
16  Mr. Utz?
17      A. Yes.
18      Q. And what is this document?
19      A. This document is a voluntary agreement, a
20  voluntary cleanup agreement also known as a VCA,
21  also known as an enforceable agreement between the
22  Department of Toxic Substance Control and Casa Nido.
23  It relates to -- it relates to the property located
24  at 12210 San Pablo Avenue in Richmond, California.
25      Q. And just like this document, Mr. Utz, I am

Page 21

1  going to refer to 12210 San Pablo Avenue, Richmond,
2  California, as the site.  Is that okay?
3      A. Yes.
4      Q. All right.  Mr. Utz, if we go to paragraph
5  six of the voluntary cleanup agreement, which is on
6  DTSC -- let's see, 8683, that is the Bates number.
7          But paragraph six says scope of work and
8  DTSC oversight.
9          Do you see that, Mr. Utz?
10          MR. HURTADO:  I think you were muted, Ian.
11          THE WITNESS:  Yes.
12  BY MR. DOW:
13      Q. And the document states, DTSC shall review
14  and provide proponent with written comments and all
15  proponent's deliverables as described in Exhibit C,
16  scope of work, correct?
17          MR. HURTADO:  Objection.  Document speaks
18  for itself.
19          MR. BRODY:  Join.
20          THE WITNESS:  Yes.
21  BY MR. DOW:
22      Q. Okay.  And the proponent in this case is
23  Casa Nido Partnership, correct?
24      A. I believe the proponent in this case is
25  described as only Casa Nido in this VCA.




Page 22

1      Q. Okay.  I would like to scroll down to
2  Exhibit C.  And Exhibit C is entitled scope of work.
3  And this Exhibit C lists out a number of tasks which
4  says they are to be followed as part of this
5  agreement if deemed necessary.
6      So what I would like to find out, Mr. Utz,
7  is to the extent any of these tasks were completed
8  under the VCA.  So I see task one is submittal of
9  existing data and scoping meeting.
10     And my question to you is, was task 1
11 completed by Casa Nido under this agreement?
12     MR. BRODY:  Objection.  Calls for
13 speculation in that it is asking about events
14 preceding Mr. Utz's time at the DTSC.
15     MR. HURTADO:  Same objection.
16     THE WITNESS:  I don't know.
17 BY MR. DOW:
18     Q. You don't know.  Okay.  Well, let's try
19 this.
20     So Mr. Utz, at some point you became
21 project manager for the site; is that correct?
22     A. Correct.
23     Q. Okay.  And would it be fair to say that you
24 became project manager as of April 5, 2018?
25     A. No.

Page 23

1      Q. Oh, you are correct.  Excuse me.  That was
2  another person.  Let's see.  Excuse me.
3      Would it be fair to say that you became
4  project manager for the site on or about May 19,
5  2020?
6      A. Yes.
7      Q. Okay.  So as project manager for the site,
8  what were your responsibilities?
9      A. I remained the project manager for the site
10 and my responsibilities include overseeing the
11 investigation and clean up of hazardous substances
12 or waste releases at the site.
13     Q. Did your duties include making sure that
14 the voluntary cleanup agreement was fulfilled by
15 Casa Nido?
16     MR. HURTADO:  Objection.  Calls for a legal
17 conclusion.
18     MR. BRODY:  Join.
19     THE WITNESS:  Can you repeat the question?
20 BY MR. DOW:
21     Q. Yes.  As project manager for the site, did
22 your duties include the administering of the
23 voluntary cleanup agreement with Casa Nido for the
24 site?
25     MR. BRODY:  Objection.  Vague.

Page 24

1      THE WITNESS:  To some extent.
2  BY MR. DOW:
3      Q. Okay.  As far as the tasks that are listed
4  in Exhibit C of the voluntary cleanup agreement, was
5  it your charge to see that those tasks were
6  fulfilled by Casa Nido?
7      A. I don't know what you are referring to.
8      Q. I'm referring to Exhibit C, scope of work
9  in the voluntary cleanup agreement and there is a
10 list of tasks.
11     And let me ask you this, Mr. Utz, are you
12 somebody that can tell me the extent to which these
13 tasks were completed under the voluntary cleanup
14 agreement by Casa Nido?
15     MR. BRODY:  Objection.  Overbroad.  Lacks
16 foundation.  Calls for speculation.
17     MR. HURTADO:  I will join in those.
18     THE WITNESS:  I don't fully understand the
19 question.
20 BY MR. DOW:
21     Q. Again, Mr. Utz, I am just asking you as to
22 Exhibit C, the voluntary cleanup agreement, do you
23 have any knowledge as to whether the tasks
24 enumerated in the agreement starting with task 1
25 were fulfilled by Casa Nido?

Page 25

1      MR. BRODY:  Objection.  Overbroad.  Lacks
2  foundation.  Calls for speculation.
3      THE WITNESS:  To my knowledge, the tasks
4  listed in Exhibit C in their totality were not
5  completed by Casa Nido.
6      MR. DOW:  Okay.
7      MR. HURTADO:  I'll also object to legal
8  conclusion.
9      THE WITNESS:  Based on the information
10 available to me.
11 BY MR. DOW:
12     Q. Okay.  So -- and I don't mean to make you
13 repeat yourself, Mr. Utz.  But -- so are you telling
14 me -- so we have from task 1 all the way to task 19.
15 You are telling me that none of these activities
16 were completed by Casa Nido under the VCA; is that
17 correct?
18     MR. BRODY:  Objection.
19     MR. HURTADO:  Misstates the deponent.
20     MR. BRODY:  Join.
21     MR. HURTADO:  Argumentative.
22     MR. BRODY:  I apologize.  I keep
23 interrupting.  Join.
24     MR. HURTADO:  Yeah.
25     THE WITNESS:  Your representation is not an





Page 26

```
1   accurate summary of what I just said.
2        MR. DOW:  Okay.  Jamie, could you read back
3   Mr. Utz's last answer to me or two answers ago, when
4   he mentioned the totality of the tasks?
5        (Record read.)
6   BY MR. DOW:
7        Q. Well, I guess, thank you for answering my
8   question, Mr. Utz.
9        All right.  We will move on.  Mr. Utz, are
10  you aware of Casa Nido completing or rather taking
11  part in remedial activities at the site before the
12  time the VCA was entered into?
13       MR. HURTADO:  Objection.  Vague.  Calls for
14  legal conclusion.
15       MR. BRODY:  Join.
16       THE WITNESS:  No.
17  BY MR. DOW:
18       Q. Oh, okay.  Okay.  I am going to drop
19  another exhibit in the chat.
20       THE COURT REPORTER:  Just to clarify,
21  Counsel, the last was 2 and the new one will be 3.
22       MR. DOW:  Yeah.  The last is 2.  The new
23  one will be 3.
24       Can you -- well, never mind.  I am having
25  problems today.  Oh, that is why.  All right.
```

Page 27

```
1        (Exhibit 3 marked.)
2   BY MR. DOW:
3        Q. Mr. Utz, I just dropped another exhibit in
4   the chat.  It is labeled 20200604.
5        MR. HURTADO:  Just for clarity, can we also
6   just state the Bates numbers when you start to
7   share?
8        MR. DOW:  State the Bates numbers?
9        MR. HURTADO:  Yeah.  I just want to make
10  sure that we are looking at the exact same document.
11  I am sure we are, but if you can just compare the
12  Bates number to the document you share on the screen
13  and confirm at the end that that is the document he
14  is looking at.
15       Does that make sense?
16       MR. DOW:  Well, I will confirm that he
17  is -- I will try to confirm that he is looking at
18  the same document; otherwise, it does not -- yeah.
19  I will try to do that.
20       MR. HURTADO:  Okay.  Thank you.
21  BY MR. DOW:
22       Q. Mr. Utz, can you see my screen?
23       A. Yes.
24       Q. Okay.  This is -- this starts with Bates
25  numbers DTSC 151, and this is a June 4, 2020, letter
```

Page 28

```
1   to Mr. Ian Utz from Ronald J Piziali.
2        Mr. Utz, have you seen this document
3   before?
4        A. Yes.
5        Q. Okay.  And, Mr. Utz, going back to the VCA,
6   do you know the date that that VCA was entered into
7   by DTSC and Casa Nido?
8        A. No.
9        Q. Let's see.  Would it be fair to say that
10  the VCA was entered into by the department and Casa
11  Nido on or about May 8, 2017?
12       MR. HURTADO:  Objection.  Calls for
13  speculation.
14       MR. BRODY:  Join.
15       THE WITNESS:  Can you scroll up, please, so
16  I can see the first page of the document?
17  BY MR. DOW:
18       Q. Yes.
19       A. I understand that the voluntary cleanup
20  agreement that you are showing me includes a
21  signature date by the Department of Toxic Substances
22  Control of May 8, 2017.
23       Q. Okay.  Do you also see a signature by
24  Ronald Piziali dated April 13, 2017?
25       A. Yes.
```

Page 29

```
1        Q. And, Mr. Utz, do you know who Ronald
2   Piziali is?
3        A. Yes.
4        Q. Have you ever spoken to him?
5        A. Yes.
6        Q. And who is Ronald Piziali?
7        A. Ronald Piziali is one of a number of
8   partners in Casa Nido, a general partnership.
9        Q. Okay.  So if we could go back to the
10  letter, which I just put back on my screen, the June
11  4, 2020, letter.
12       Can you see the highlight that says, We are
13  currently in our sixth year of working to remove
14  toxins from these properties?
15       A. Yes, I can see that on your screen.
16       Q. Okay.  Given that this letter is dated June
17  4, 2020, and given that Mr. Piziali says he is in
18  his sixth year into working to remove toxins from
19  these properties, would it be fair to say that Casa
20  Nido was working on removing toxins from the site
21  since the year 2014?
22       MR. HURTADO:  Objection.  Calls for
23  speculation.
24       MR. BRODY:  Join.
25       THE WITNESS:  I don't know.
```



1  BY MR. DOW:
2      Q. Are you aware of any work that Casa Nido
3  did on the site prior to entering into the VCA with
4  the Department in 2017?
5          MR. BRODY: Objection. No foundation.
6  Calls for speculation.
7          THE WITNESS: Please define "work."
8  BY MR. DOW:
9      Q. By work I mean investigation and clean up
10 of the site?
11         MR. HURTADO: Objection. General.
12         MR. BRODY: Join.
13         THE WITNESS: I don't know.
14 BY MR. DOW:
15     Q. Let me ask you this, Mr. Utz, have you ever
16 seen any documents that evidence that Casa Nido was
17 conducting work at this site before it entered the
18 VCA?
19         MR. HURTADO: Objection. Legal conclusion.
20         MR. BRODY: Join.
21         THE WITNESS: I don't know.
22 BY MR. DOW:
23     Q. You don't know.
24         Okay. Mr. Utz, I just put on my screen a
25 letter that Ronald Piziali sent to -- well, I really

1  can't tell. It is a mystery. It is dated June 25,
2  2020. This letter is Bates stamped DTSC 6939.
3          And in this letter in the fourth paragraph
4  Mr. Piziali references he stated, that oversight for
5  corrective action is being provided by the DTSC, and
6  he says, other interim action has included the
7  removal of approximately 450 tons of
8  chemical-impacted soil.
9          Can you see this letter, Mr. Utz?
10     A. Not really.
11         MR. BRODY: And, I'm sorry to interrupt,
12 Mr. Dow. Has this been marked as an exhibit, then?
13         MR. DOW: Yeah. I will put it in the chat
14 box.
15         MR. BRODY: Thank you.
16         MR. DOW: I will have to stop sharing for a
17 moment. There we go. All right. So I just put
18 that letter in the chat box. I will share it again.
19 Yeah. This will be my next exhibit.
20         Jamie, can you keep track -- are you able
21 to keep track of exhibit numbers? Or can you do
22 that later?
23         THE COURT REPORTER: Sorry. It wouldn't
24 let me unmute.
25         Yeah. This will be number 4.

1          (Exhibit 4 marked.)
2          MR. HURTADO: And, Chris, we don't see the
3  document anymore. We just see a band of your PDF
4  program.
5          MR. DOW: Oh, sorry. Wonder why that
6  happened. I'll figure it out. There we go.
7          Can you see the letter now?
8          MR. HURTADO: Yeah. We can see it now.
9  BY MR. DOW:
10     Q. Okay. Mr. Utz, can you please look at
11 paragraph 4 of this letter?
12     A. Can you please identify the letter, the
13 document you just sent includes several pages.
14     Q. Yeah. It is the first page. And it is --
15 the letter is dated June 25, 2020, and it is DTSC
16 6939.
17         Go ahead. I'm sorry.
18     A. Please repeat the number of the paragraph
19 you would like me to look at.
20     Q. Paragraph 4.
21     A. Beginning with?
22     Q. Well, actually would you mind reading that
23 paragraph and just telling me when you have read it?
24     A. Do you want me to read it out loud or read
25 it to myself?

1          MR. HURTADO: No, don't read it out loud.
2          MR. DOW: No, you can read it to yourself.
3          THE WITNESS: But I want to confirm, you
4  are asking me to read the paragraph beginning, The
5  environmental corrective action is being --
6          MR. DOW: Yes. I am happy to read it for
7  you, if you want me to.
8          MR. BRODY: And to save time, I will
9  interpose objections to all questions regarding this
10 document as lacking foundation. Calling for
11 speculation.
12         And, Mr. Dow, would you stipulate to a
13 continuing objection so I don't have to keep
14 making --
15         MR. DOW: Well, all the objection -- I
16 mean, all objections -- under the judge's rules, all
17 objections are preserved except for form and
18 privilege.
19         MR. BRODY: Right. I just --
20         MR. DOW: So you don't have to -- if you
21 don't make your objections, Richard, they are still
22 preserved. Unless it is foundation, you just made a
23 foundation objection, and unless it is privilege.
24 So you don't have to worry about -- you don't have
25 to worry about objections under the judge's rules.

9  (Pages 30 to 33)





Page 34

1    MR. BRODY:  I was trying not to assert a
2  foundational objections to each question about the
3  document, that is all.  I did not want to interrupt
4  your line of questioning.
5    MR. DOW:  Yeah.  Sure.
6    THE WITNESS:  When would you like me to
7  begin reading?
8    MR. HURTADO:  You can read it now, Ian.
9  BY MR. DOW:
10    Q. Yeah.  You can read it now, please.
11    A. I've read the paragraph.
12    Q. Okay.  Thank you.
13    What I want to ask you is, in this letter
14  Mr. Piziali states that 450 tons of chemical
15  impacted soil was removed from the site.
16    And what I am asking is, was that -- was
17  that removal of soil under DTSC supervision?
18    MR. BRODY:  Objection.
19    MR. HURTADO:  Objection.  Lacks foundation.
20  Assumes fact not in evidence.
21    MR. BRODY:  Join.
22    MR. HURTADO:  Calls for speculation.
23    THE WITNESS:  I don't know.
24  BY MR. DOW:
25    Q. You don't know.  If it was done under

Page 35

1  DTSC's supervision, would you know that?
2    MR. HURTADO:  Objection.  Calls for
3  speculation.
4    MR. BRODY:  Join.
5    THE WITNESS:  I don't know.
6  BY MR. DOW:
7    Q. Was it done pursuant to the voluntary
8  cleanup agreement?
9    MR. HURTADO:  Objection.  Legal conclusion.
10  Calls for speculation.  Lacks foundation.
11    MR. BRODY:  Join.
12    THE WITNESS:  I don't know.
13  BY MR. DOW:
14    Q. Well, earlier, Mr. Utz, you told me that
15  Casa Nido completed no task under the voluntary
16  cleanup agreement based on the information you have,
17  correct?
18    A. No.
19    MR. BRODY:  Misstates testimony.
20  BY MR. DOW:
21    Q. Okay.  Then what did you tell me, Mr. Utz?
22    MR. HURTADO:  Objection.  Asked and
23  answered.
24    THE WITNESS:  I believe I told you that the
25  scope of work listed in Exhibit C of the voluntary

Page 36

1  cleanup agreement dated 2017 in its totality,
2  meaning describing all of the items together not
3  individually, to my knowledge based on the
4  information available to me had not been completed.
5  BY MR. DOW:
6    Q. Okay.  But you're telling me you can't tell
7  me if that 450 tons of soil was removed under DTSC's
8  oversight, correct?
9    MR. HURTADO:  Objection.  Calls for
10  speculation.  Asked and answered.
11    MR. BRODY:  Join.  Lacks foundation.
12    THE WITNESS:  I believe my previous answer
13  was I don't know.
14  BY MR. DOW:
15    Q. Can you tell me why you don't know?
16    MR. HURTADO:  Objection.  Argumentative.
17    MR. BRODY:  Join.
18    THE WITNESS:  No, I can't tell you why I
19  don't know.
20  BY MR. DOW:
21    Q. Okay.  Mr. Utz, have you ever seen this
22  letter before I showed it to you today?
23    A. I'm not sure.
24    Q. Okay.  Okay.  I just dropped another letter
25  into the chat.  This will be the next exhibit.

Page 37

1    If you would open that, please, and I will
2  also share it on my screen.
3    (Exhibit 5 marked.)
4    THE COURT REPORTER:  This will be Exhibit
5  5.
6    THE WITNESS:  I believe I see a portion of
7  the first page on your screen.
8  BY MR. DOW:
9    Q. Okay.
10    A. And I have downloaded a two-page document.
11    Q. And this document, this is an August 4,
12  2020, e-mail, and it starts with DTSC 13419.  That
13  is the Bates number.
14    These are comments by Jesse Negherbon.  I
15  don't know how to pronounce Jesse's name.  It looks
16  like Jesse Negherbon, and it is to Ian Utz.
17    Have you seen this e-mail before, Mr. Utz?
18    A. Yes.
19    Q. Okay.  Mr. Utz, can you tell me what a SVE
20  is?
21    A. SVE stands for soil vapor extraction.
22    Q. And to your knowledge, was a soil vapor
23  extraction system ever installed at the site?
24    A. To my knowledge, yes, an SVE system was
25  installed at the site.



Page 38

```
 1       Q. Okay.  And could you please tell me what an
 2  SSDS is?
 3       A. I believe that acronym here represents
 4  sub-slab depressurization system.
 5       Q. Can you tell me what a sub-slab
 6  depressurization system does?
 7       A. A sub-slab depressurization system is an
 8  engineered technology that can be used to change air
 9  flow or pressure beneath a building slab, for
10  example.
11       Q. Okay.  And what is a PRB?
12       A. I believe that that acronym in this e-mail
13  refers to a permeable reactive barrier.
14       Q. And was that SSDS installed at this site?
15       A. To my knowledge, no, an SSDS was not
16  installed at the site.
17       Q. Is an SSDS something that can be installed
18  at a site?
19       A. An SSDS is something that can be installed
20  at a physical location, correct.
21       Q. Okay.  What about a PRB?  Do you know if a
22  PRB was ever installed at the site?
23       A. I do not know if a PRB, as I would
24  understand a PRB, was installed as the site.
25       Q. I'm sorry.  So is that a yes that a PRB was
```

Page 39

```
 1  installed at the site?
 2       (Court reporter interruption.)
 3       MR. HURTADO:  Objection.  Misquotes the
 4  deponent.
 5       MR. BRODY:  And join.
 6       THE WITNESS:  I do not know.
 7  BY MR. DOW:
 8       Q. Oh, okay.  Okay.  So as far as the SVE that
 9  was installed at the site, it appears here that --
10  well, first of all, could you tell me who Jesse
11  Negherbon is?
12       A. Jesse Negherbon --
13       Q. Yes.
14       A. -- is a senior hazardous substances
15  engineer in the engineering and special projects
16  office at the California Department of Toxic
17  Substance Control.
18       Q. Okay.  And it appears he is saying here
19  that the SVE -- that monitoring data collected from
20  the SVE is insufficient to demonstrate a protective
21  impact on the surrounding residences and places of
22  business.
23       Mr. Utz, what do you make of that
24  statement?  Do you agree with it?  Do you disagree
25  with it?  Or do you have an opinion on that?
```

Page 40

```
 1       MR. HURTADO:  Objection.  Calls for
 2  narration or lengthy explanation.  Legal conclusion
 3  or expert opinion.
 4       MR. BRODY:  And join.  Join.
 5       THE WITNESS:  Mr. Dow, I am not a licensed
 6  professional engineer in the State of California,
 7  and do not feel comfortable making such a
 8  determination.
 9  BY MR. DOW:
10       Q. Okay.  But is it fair to say that in this
11  e-mail Mr. Negherbon is making that determination?
12       MR. HURTADO:  Objection.  Calls for
13  speculation.  Document speaks for itself.
14       MR. BRODY:  Join.
15       THE WITNESS:  I agree that what you read
16  out loud is written on the page in front of me.
17  BY MR. DOW:
18       Q. All right.  Thanks.  Let's move on.
19       Okay.  I'm dropping the next exhibit in the
20  chat.
21       Mr. Utz, if you want to open that.  I will
22  also share it on my screen.
23       (Exhibit 6 marked.)
24       THE COURT REPORTER:  This will be 6.
25       MR. DOW:  Yeah.
```

Page 41

```
 1  BY MR. DOW:
 2       Q. Mr. Utz, can you see the letter that is up
 3  on my screen?
 4       A. I can see a portion of a letter dated
 5  August 14, 2020.
 6       Q. Okay.  Thank you.
 7       It appears you wrote this letter; is that
 8  correct?
 9       A. Yes.
10       Q. So would it be correct to say that you sent
11  this letter to Ronald Piziali on or about August 14,
12  2020?
13       A. Yes.
14       Q. Okay.  Mr. Utz, under the VCA for the site,
15  was one of the tasks to submit a work plan for the
16  site?
17       A. In what sense?
18       Q. Well, let me ask it this way.  In all the
19  tasks -- within all the tasks that the VCA lists, is
20  a work plan -- is submission of a work plan
21  something that is encompassed by those tasks?
22       A. Yes.
23       Q. Thank you.
24       So in this letter dated August 14, 2020,
25  you were seeking a work plan from Casa Nido; is that
```



MAGNA ▶

LEGAL SERVICES

Page 42

1  correct?
2       MR. BRODY:  Objection.  Misstates the
3  content of the document.  Calls for speculation.
4       MR. DOW:  You know, Richard, no, it does
5  not.  I am not misstating the contents of the
6  document.  I mean, all of your objections are
7  preserved so --
8       MR. BRODY:  I don't want to argue with you
9  on the record, Mr. Dow, but I am making that
10  objection because it is accurate.
11       MR. DOW:  Okay.  Well, I will also advise
12  you that Judge Chen (phonetic) said that needlessly
13  prolonging a deposition is actionable conduct under
14  his local rules.
15       MR. BRODY:  Mr. Dow --
16       MR. DOW:  All your objections except for
17  foundation and except for privilege, all your
18  projections -- all your objections are preserved.
19  Can we stipulate to that since it is judge's rule,
20  like, right now, please?
21       MR. BRODY:  Judge's rules speak for itself.
22  I am not trying to get into an argument with you.
23       MR. DOW:  Well, what you are doing is you
24  are delaying my deposition.
25       MR. BRODY:  No, I am not.

Page 43

1       MR. DOW:  And you are doing it by making
2  objections you don't need to make and that the
3  judge's rules say not to make.  So, you know, I
4  don't want to suspend this deposition and get a
5  protective order from the judge just so you can
6  follow his rules, okay?
7       So I would ask you to confine your
8  objections to foundation and privilege.  And all
9  this other stuff, you are just wasting our time.
10  Okay?  And I am stating that on the record.
11       And, you know, if this comes up down the
12  road for the Court or in front of the discovery
13  magistrate, I will bring it up.  But I don't want
14  you to interfere with my questioning, and that is
15  what you are doing.  You know, whatever you say
16  otherwise, I am fairly interpreting it with all your
17  unnecessary objections, which are unnecessary, by
18  the plain letter of the judge's rule, which I
19  provided to you in an e-mail this morning.
20       Any other objection you make not called for
21  in the judge's rules is a deliberate tactic on your
22  part to waste my time.  And it is also going to
23  interfere with your ability to ask questions later
24  because as Rachel pointed out, we are limited to
25  seven hours, so please take that under advisement.

Page 44

1  Thank you.
2  BY MR. DOW:
3     Q.  Okay.  Mr. Utz -- so Mr. Utz, this letter
4  says you are seeking an off-site vapor intrusion
5  work plan; is that correct?
6       MR. HURTADO:  Objection.  Letter speaks for
7  itself.
8       MR. BRODY:  Join.
9       THE WITNESS:  The purpose of the letter is
10  to request that proponent, Casa Nido, submit a work
11  plan for expedited offsite vapor intrusion
12  investigation.
13     Q.  Under the VCA -- well, could you tell me
14  what a work plan is, Mr. Utz?
15     A.  A work plan is a document, a type of
16  submittal to the department, in this case, which
17  outlines work proposed to be completed on behalf of
18  the -- on behalf of someone.  That work plan is
19  submitted for review prior to the work being
20  completed.
21     Q.  Can there be more than one work plan for a
22  site, Mr. Utz?
23     A.  Yes.
24     Q.  Okay.  And why would there be more than one
25  work plan for a site?

Page 45

1       And it is not a trick question.  I am just
2  asking, like, you know, like, why isn't there just
3  one overarching work plan?  Why are -- you know, for
4  you as a professional, why is it such that there is
5  more than one work plan for a site?  Can you just
6  please explain that for me?
7       MR. HURTADO:  Objection.  Incomplete
8  hypothetical.  Calls for expert opinion.  Vague and
9  ambiguous.
10       MR. BRODY:  Join.
11       THE WITNESS:  It is possible for a site, a
12  cleanup site to have multiple work plans outlining
13  work to be -- or outlining work proposed to be
14  completed in multiple mobilizations or phases for
15  discrete types of work.
16  BY MR. DOW:
17     Q.  Okay.  So could there be, like, a work plan
18  for soil -- that is dedicated to soil removal?
19       MR. HURTADO:  Objection.  Same objections
20  as before.
21       MR. BRODY:  Join.
22       THE WITNESS:  There are work plans that
23  exist that outline work to be completed for soil
24  removal.
25  BY MR. DOW:



Page 46

```
 1        Q. Okay.  Mr. Utz, if we look at page 2 of 3
 2   of this letter, it states the quote, However
 3   investigation and removal activities at the site,
 4   including the demolition of onsite structures,
 5   proceeded without DTSC oversight for nearly two
 6   years.
 7        Can you -- it says for nearly two years.
 8   Can you tell me what years you are referring to in
 9   this letter approximately?
10        A. The two years preceding my project
11   management role.
12        Q. Okay.  So you were -- I think we have
13   already established that you came on board sometime
14   in 2020.  So would it be fair to say that that two
15   years is 2019 and 2018 approximately?
16        A. It could be.
17        Q. Okay.  Thank you.
18        Mr. Utz, can you tell me why it is
19   important that DTSC have oversight of investigation
20   and removal activities?
21        MR. HURTADO:  Objection.  Too general.
22   Ambiguous.  Vague.
23        MR. BRODY:  Join.
24        THE WITNESS:  Can you repeat the question,
25   please?
```

Page 47

```
 1   BY MR. DOW:
 2        Q. Yes.  And the premise for the question is
 3   that here you are pointing out to Mr. Piziali that
 4   there were investigation and removal activities at
 5   the site for approximately two years without DTSC
 6   oversight.
 7        And I am just asking you:  Why is DTSC
 8   oversight important?
 9        MR. HURTADO:  Same objections.
10        THE WITNESS:  Why is DTSC oversight
11   important?  DTSC is a regulator for the State of
12   California, and its oversight of hazardous
13   substances cleanup sites is intended, in part, to
14   ensure that cleanups occur safely and legally.
15   BY MR. DOW:
16        Q. Thank you.
17        Mr. Utz, do you recall -- okay.  Let me
18   back up.
19        My understanding is that eventually an
20   offsite vapor intrusion and investigation work plan
21   was conditionally approved by DTSC for this site; is
22   that correct?
23        A. An offsite investigation work plan for
24   vapor intrusion investigation was ultimately
25   approved for this site, correct.
```

Page 48

```
 1        Q. Okay.  And at some point, it was not
 2   conditionally approved, it was just flat out
 3   approved; is that correct?
 4        A. I don't know.
 5        Q. Okay.  Can you tell me, were there any
 6   other work plans for the site that were approved by
 7   DTSC to your knowledge?
 8        MR. BRODY:  Objection.  Calls for
 9   speculation.  No foundation.
10        THE WITNESS:  I don't know of any other
11   work plans that DTSC approved for the site
12   personally.
13        MR. DOW:  Okay.  Thank you.
14        Okay.  I am going to need a ten-minute
15   break myself.
16        Does anyone mind if we take a ten-minute
17   break?
18        MR. HURTADO:  That's fine.
19        (Break taken.)
20   BY MR. DOW:
21        Q. Mr. Utz, did DTSC oversee any soil
22   excavation by Casa Nido at the site?
23        MR. BRODY:  Objection.  Vague as to time.
24        MR. HURTADO:  Calls for speculation.
25        THE WITNESS:  I don't know.
```

Page 49

```
 1   BY MR. DOW:
 2        Q. Okay.  Let's see here.  Okay.  I just
 3   dropped another letter into the chat.  It is a
 4   letter dated September 11, 2020.  You are -- feel
 5   free to open up that letter, Mr. Utz.  I am going to
 6   put it on my screen.
 7        (Exhibit 7 marked.)
 8        A. I think this thing you put in the chat is
 9   different from what you are sharing on your screen.
10        Q. Oh, is it -- let me see.  You are right.
11   I'm sorry.  Okay.  You can disregard that last --
12   actually, I just dropped it in the chat.  It is
13   October 8, 2020.
14        THE COURT REPORTER:  And just for the
15   record, it will be 7.
16   BY MR. DOW:
17        Q. Okay.  Mr. Utz, if you can see my screen
18   there is an October 8, 2020, letter.  There is a
19   comment in the letter that you wrote.  It is long.
20   Several-page letter that you wrote to Ron Piziali.
21        On the first page under the heading general
22   comments, the letter states -- well, first of all,
23   do you -- have you seen this letter before, Mr. Utz?
24        A. Yes.
25        Q. Okay.  And you sent this letter to
```

13  (Pages 46 to 49)


MAGNA
LEGAL SERVICES

1  Mr. Piziali, right?
2      A. Yes.
3      Q. Okay. So the letter under general comments
4  terminology it says, The unapproved remedial
5  activities performed to date, EG soil excavation,
6  soil amendments, permeable reactive barriers, soil
7  vapor extractions, and sub-slab depressurization,
8  shall hereafter be referred to "interim actions."
9  DTSC did not oversee, evaluate, or approve the
10  interim actions.
11      So based on your statement to Mr. Piziali,
12  I will ask you again. I just want to know, was
13  there any -- to your recollection, was there any
14  soil excavation that Casa Nido did that was approved
15  by DTSC?
16      MR. HURTADO: Objection. Calls for
17  speculation.
18      MR. BRODY: Join.
19      THE WITNESS: I don't know.
20  BY MR. DOW:
21      Q. Okay. Well, would it be accurate to say
22  that as of October 8, 2020, the soil excavation done
23  by Casa Nido at the site was not overseen by DTSC;
24  is that correct?
25      MR. HURTADO: Same objection.

1      MR. BRODY: Join.
2      THE WITNESS: The letter refers to work
3  that was referenced in a draft work plan. The work
4  referenced in the draft work plan, which was
5  referred to as whole excavation, to my knowledge at
6  this time had not been performed under DTSC
7  oversight.
8  BY MR. DOW:
9      Q. Okay. Thank you.
10      I'm scrolling down to page 4 of 17. And
11  again, I understand you are commenting on a work
12  plan. But it says here, A preliminary endangerment
13  assessment, PEA, has not been completed for the
14  site; and therefore, certain historical information
15  remained unknown.
16      My question is, to your knowledge, did Casa
17  Nido ever complete a preliminary endangerment
18  assessment for the site?
19      A. Can you repeat the question, please?
20      Q. Yes. To your knowledge -- well, strike to
21  your knowledge.
22      Did Casa Nido ever complete a preliminary
23  endangerment assessment for the site?
24      MR. HURTADO: Objection. Calls for
25  speculation.

1      MR. BRODY: No foundation. And join.
2      THE WITNESS: I'm not aware of any
3  submittals to the department with the name of the
4  submittal being a preliminary endangerment
5  assessment, and by department, I mean DTSC.
6  BY MR. DOW:
7      Q. And on page 5 of 17, it talks about the
8  installation -- well, you're suggesting revisions to
9  Mr. Piziali relative to the soil vapor extraction
10  system. And are you asking him to insert into this
11  document that you are commenting on that the interim
12  system has not yet been evaluated by DTSC?
13      My question is, was the SVE system ever
14  evaluated by DTSC to your knowledge?
15      MR. BRODY: Objection. Vague and
16  overbroad. Lacks foundation.
17      THE WITNESS: No. Not in the sense that I
18  meant in this letter here.
19  BY MR. DOW:
20      Q. Okay. I am just not super clear. So --
21  okay. No, I think I get your answer. Thanks.
22      What about the sub-slab depressurization
23  system? To your knowledge, was that ever evaluated
24  by DTSC?
25      MR. BRODY: Same objections.

1      THE WITNESS: Not in the sense that I
2  intended in this letter to mean by the term
3  evaluation.
4  BY MR. DOW:
5      Q. So your answer is no?
6      MR. HURTADO: Objection. Asked and
7  answered.
8      MR. BRODY: Join.
9      THE WITNESS: That is not the answer that I
10  gave you.
11  BY MR. DOW:
12      Q. Okay. Because you -- I'm not trying to
13  make you repeat yourself, Mr. Utz, but I am just
14  trying to -- I mean -- I mean, what does evaluation
15  mean to you in the context that you are talking
16  about it here?
17      A. In the context of this letter, evaluate
18  would have included a review of written
19  documentation, including engineering plans, permits,
20  other standard engineering documents for an
21  engineered system such as the one described here,
22  the SVE and SSD system.
23      Q. So in other words, for the SVE
24  system, DTSC did not evaluate any of the types of
25  documents you just mentioned, correct?



1    A. Based on the comments provided by Dr. Jesse
2  Negherbon, the professional engineer, the documents
3  required for such an evaluation had not been
4  provided.
5    Q. Okay.  And to your knowledge, had such
6  documents been provided for the sub-slab
7  depressurization system?
8    A. No.  That is what I meant by SVE and SSD,
9  so it would be for the depressurization system.
10  They are physically different and similar in some
11  ways.  At the site they are physically very close to
12  each other, but they are different engineered
13  systems.
14    Q. Okay.  Okay.  Scrolling down to page 8 of
15  17.  You state the site characterization is not
16  complete and substantial levels of chlorinated VOCs
17  have been observed in soil vapor and groundwater.
18    Mr. Utz, can you tell me what site
19  characterization is, please?
20    MR. HURTADO:  Objection.  Calls for a
21  lengthy explanation.
22  BY MR. DOW:
23    Q. It does not have to be lengthy.
24    A. As used in this letter, the term site
25  characterization is a term of art.  It refers to

1  investigation of hazardous substances or waste
2  release, including in some cases sampling data of
3  environmental media.
4    Q. And what is the point of site
5  characterization?  Like, what is the goal of site
6  characterization, assuming there is one?
7    MR. HURTADO:  Objection.  Vague.
8    MR. BRODY:  Join.
9    THE WITNESS:  There are a number of
10  potential or possible goals for site
11  characterization.
12  BY MR. DOW:
13    Q. Let me ask it this way, at the site we are
14  talking about, the site that is the subject of this
15  voluntary cleanup agreement, why is -- assuming site
16  characterization is necessary, why is it necessary?
17    MR. HURTADO:  Objection.  Vague.  Too
18  general.  Expert opinion.
19    MR. BRODY:  Join.
20    THE WITNESS:  As discussed or as it relates
21  to this letter, site characterization is important
22  for many reasons.  One of them is to understand the
23  scope of the contamination, the types of
24  contaminants, the lateral and vertical extent of the
25  contaminants in environmental media and the

1  potential risks, for example, they impose to human
2  health or the environment.
3  BY MR. DOW:
4    Q. Thank you.
5    Let me ask you this, was site
6  characterization ever completed for this site?
7    MR. HURTADO:  Objection.  Calls for expert
8  opinion.  Lacks foundation.
9    MR. BRODY:  Join.  And overbroad.
10    THE WITNESS:  Based on the information
11  available to me, this site remains in the site
12  characterization phase of cleanup, and therefore, it
13  was not completed at the site.
14  BY MR. DOW:
15    Q. Mr. Utz, over the course of a history of a
16  cleanup, from start to finish, would you say
17  characterization occurs early in the cleanup
18  process?
19    MR. HURTADO:  Objection.  Incomplete
20  hypothetical.  Vague and ambiguous.
21    MR. BRODY:  Join.
22    THE WITNESS:  Site characterization can
23  occur at any time in the cleanup process, including
24  before or after the cleanup process.
25  BY MR. DOW:

1    Q. Okay.  Within the context of the National
2  Contingency Plan, is site characterization an early
3  step in the cleanup process, or under the NCP, can
4  it occur at any time?
5    MR. HURTADO:  Objection.  Calls for a legal
6  conclusion.  And vague and ambiguous.
7    MR. BRODY:  Join.
8    THE WITNESS:  I'm not sure.  I'm not sure
9  if the term site characterization is used in the
10  National Contingency Plan.
11  BY MR. DOW:
12    Q. Okay.  Okay.  I guess I will just leave it
13  at that.  Let's see.
14    So, Mr. Utz, for a site such as this one,
15  is DTSC requiring that a health and safety plan be
16  completed in conjunction with any investigation or
17  clean up?
18    MR. HURTADO:  Objection.  Incomplete
19  hypothetical.  Lacks foundation.
20    MR. BRODY:  Join.  And objection.  Vague.
21    THE WITNESS:  So long as the site remains a
22  hazardous waste or hazardous substances cleanup
23  site, it is both DTSC policy and it is part of the
24  governing, in this case, order for the site that a
25  health and safety plan be prepared by workers



Page 58

```
1    completing hazardous waste operations as it is
2    defined.
3    BY MR. DOW:
4        Q. So you are saying that the VCA requires
5    that Casa Nido submit a health and safety plan; is
6    that correct?
7        MR. HURTADO: Objection. Misquotes the
8    deponent.
9        MR. BRODY: Join.
10       THE WITNESS: What I was just referring to
11   was the order for the site, the imminent and
12   substantial endangerment determination and order and
13   remedial action order.
14   BY MR. DOW:
15       Q. Okay. Let me show you a document. Okay.
16   This document is dated October 19, 2020. And this
17   will be the next exhibit.
18       (Exhibit 8 marked.)
19       THE COURT REPORTER: Just for the record,
20   it will be 8.
21   BY MR. DOW:
22       Q. Mr. Utz, can you see -- if you look at my
23   screen, Mr. Utz, you will see an e-mail from you
24   dated October 19, 2020, to Bob Clark-Riddell, and
25   some other folks.
```

Page 59

```
1        Can you tell me who Bob Clark-Riddell is?
2        A. In the context of this e-mail, Mr. Bob
3    Clark-Riddell is a licensed professional engineer
4    and a contractor with Pangea Environmental Services,
5    Inc., working on behalf of Casa Nido, a general
6    partnership.
7        Q. Thank you.
8        It appears here that you are asking Bob
9    Clark-Riddell and Ron Piziali to stop work at that
10   site; is that correct?
11       A. In this e-mail or the following e-mail? I
12   can't see what you are referring to on this.
13       Q. Can you see the highlight in yellow on my
14   screen?
15       A. Yes, I can see it.
16       Q. I'm sorry. I did not mean to interrupt
17   you. Oh, okay. You can see the highlight. This is
18   DTSC 14974.
19       And I will just cut to the chase, it looks
20   like -- it looks to me you are asking Bob and Ron to
21   stop work because there is no adequate health and
22   safety plans and procedures for the site; is that
23   correct?
24       A. Correct.
25       Q. So would it be correct to say that under
```

Page 60

```
1    the VCA, DTSC was requiring Casa Nido to submit
2    health and safety plans and procedures?
3        MR. BRODY: Objection.
4        MR. HURTADO: Objection. Calls for legal
5    conclusion.
6        MR. BRODY: And misstates prior testimony,
7    I believe.
8        THE WITNESS: The scope of work, I believe
9    listed in Exhibit C of the voluntary cleanup
10   agreement dated 2017 between Casa Nido and DTSC,
11   would have included health and safety plan or health
12   and safety plans and procedures.
13   BY MR. DOW:
14       Q. Thank you.
15       To your knowledge, Mr. Utz, did Casa Nido
16   ever submit health and safety plans and procedures
17   to DTSC for review?
18       MR. BRODY: Objection. No foundation.
19   Calls for speculation.
20       THE WITNESS: Yes. Pangea submitted -- I
21   should say Casa Nido submitted multiple health and
22   safety plans for DTSC review.
23   BY MR. DOW:
24       Q. And were any of those health and safety
25   plans ultimately approved by DTSC to your knowledge?
```

Page 61

```
1        A. DTSC does not approve health and safety
2    plans. DTSC accepts health and safety plans, which
3    are the responsibility of the employer of workers.
4        Q. Did DTSC ever accept any health and safety
5    plans from Casa Nido for the site?
6        MR. HURTADO: Objection. Calls for
7    speculation.
8        MR. BRODY: Join.
9        THE WITNESS: I recall one health and
10   safety plan being accepted in relation to vapor
11   intrusion investigation work offsite.
12   BY MR. DOW:
13       Q. And is that the only health and safety plan
14   you recall, Mr. Utz?
15       A. I recall only one being accepted under my
16   project management supervision.
17       Q. Thank you.
18       As project manager for the site, if any
19   other health and safety plans had been accepted for
20   the site before you became project manager, would
21   you have a record of that?
22       A. I don't know.
23       Q. When you became project manager for the
24   site, Mr. Utz, did you ever read or review any
25   records from prior project managers for the site?
```

16  (Pages 58 to 61)





Page 62

1        A. Yes.
2        Q. In the course of that review, did you note
3   that any other health and safety plans were accepted
4   in addition to this one?
5        A. I can't recall.
6        Q. Let me ask you this, Mr. Utz, obviously
7   there can be multiple health and safety plans for a
8   site; is that correct?
9        MR. HURTADO:  Objection.  Calls for
10  speculation.  Incomplete hypothetical.
11       MR. BRODY:  Join.
12       THE WITNESS:  It is conceivable that for a
13  hazardous substances or hazardous waste cleanup
14  site, there would be, for example, multiple health
15  and safety plans for multiple consultants.
16  BY MR. DOW:
17       Q. And do those health and safety plans for
18  multiple consultants, could they conceivably cover
19  different phases of work at the site?
20       MR. HURTADO:  Objection.  Incomplete
21  hypothetical.
22       MR. BRODY:  Join.
23       MR. HURTADO:  Lacks of foundation.
24       MR. BRODY:  Join.
25       THE WITNESS:  I'm sorry.  Can you please

Page 63

1   repeat the question?
2   BY MR. DOW:
3        Q. There can be more than one health and
4   safety plan for a site, correct?
5        MR. HURTADO:  Same objections.
6        THE WITNESS:  It is conceivable that there
7   can be multiple health and safety plans for a
8   hazardous substances or hazardous waste cleanup
9   site.
10  BY MR. DOW:
11       Q. And can you tell me why that is
12  conceivable?
13       MR. HURTADO:  Objection.  Vague and
14  ambiguous.  Overbroad.
15       THE WITNESS:  It is conceivable because
16  there can be multiple consultants at a site, each
17  representing a different employer, each having their
18  own respective obligations to their employees to
19  provide for a health and safety plan, for example,
20  among other reasons.
21  BY MR. DOW:
22       Q. And so does -- since different consultants
23  can be working under different health and safety
24  plans depending on what their role is, does that
25  mean that there can be separate health and safety

Page 64

1   plans for different phases of the work?
2        MR. HURTADO:  Objection.  Incomplete
3   hypothetical.  Vague and ambiguous.  Lacks
4   foundation.
5        MR. BRODY:  Join.
6        THE WITNESS:  It is conceivable that in the
7   course of a cleanup project with multiple phases of
8   work that a health and safety plan can be revised or
9   updated or replaced with other health and safety
10  plans to accommodate for that additional work.
11  BY MR. DOW:
12       Q. And if a consultant was doing work at this
13  site without a health and safety plan, would that be
14  something DTSC would know?
15       MR. HURTADO:  Objection.  Lacks foundation.
16  Calls for speculation.
17       MR. BRODY:  Join.
18       THE WITNESS:  I don't speculate whether or
19  not it is possible for workers to work at a site
20  without a health and safety plan.
21  BY MR. DOW:
22       Q. Okay.  Here you are saying -- like in this
23  stop work bullet, you are saying health and safety
24  is now the limiting factor to work continuing at the
25  site.  The implication being that you were aware

Page 65

1   that work was occurring without a health and safety
2   plan.
3        So what I will ask you is, you know, how
4   did you know that they were working -- they were
5   conducting work at the site without a health and
6   safety plan?
7        A. I don't agree with your representation of
8   my comments here.
9        Q. Okay.  Well, may I ask you what you meant
10  by H and S is now the limiting factor to work
11  continuing at the site?
12       A. I recall that at the time of this e-mail,
13  inadequate health and safety plans and procedures
14  had been submitted to the department, and at the
15  recommendation of my consulting certified industrial
16  hygienist, I asked that work stop -- physical work
17  stop at the site with regard to hazardous waste
18  operations until such a time that DTSC had accepted
19  health and safety plans for the site.
20       Q. Okay.  Thanks.
21       Mr. Utz, over the course of your role as
22  project manager at the site, did you ever direct
23  Casa Nido and its consultant, Pangea, to sources of
24  grant funding to complete work at the site?
25       A. You asked during my time as project



Page 66

1    manager, correct?
2        Q. Yes.  Yes.
3        A. I recall sharing examples of potential
4    grants that we were aware of, my supervisor and I,
5    for -- that had been available for, you know,
6    cleanup projects statewide and that may be an
7    applicable to this site, but that would require an
8    application.
9        Q. Was one of the grant programs the State
10   Water Resource Control Board's site Cleanup
11   Subaccount Program, the acronym being SCAP, S-C-A-P?
12       A. I recall at least sharing that grant name
13   in a meeting with Casa Nido.
14       Q. And do you know, to your knowledge, did
15   Casa Nido ever follow up on that suggestion, such as
16   submitting an application for the site Cleanup
17   Subaccount Program?
18       MR. HURTADO:  Objection.  Vague and
19   ambiguous.
20       MR. BRODY:  Join.
21       THE WITNESS:  I don't know.
22   BY MR. DOW:
23       Q. Okay.  Thank you.
24       Mr. Utz, relative to the site, are you
25   aware of a subterranean creek bed which DTSC

Page 67

1    believed may be serving as a conduit for migration
2    of PCE contamination at the property -- or, rather,
3    at the site?
4        MR. HURTADO:  Objection.  Lacks foundation.
5        THE WITNESS:  DTSC has considered and
6    continues to consider the possibility that there may
7    be natural preferential pathways for migration of
8    contaminants from the site to offsite properties
9    including a subterranean, one may call it a
10   palaeochannel.  I am not sure if I would call it a
11   streambed, but the site is in the vicinity of an
12   historical stream channel, and so it is one of the
13   conceivable preferential pathways for contaminant
14   migration beneath the site.
15   BY MR. DOW:
16       Q. Has that preferential pathway, the
17   subterranean creek bed, has that been confirmed by
18   DTSC through any investigations or studies or
19   otherwise?
20       MR. HURTADO:  Objection.  Lacks foundation.
21   Calls for speculation.
22       MR. BRODY:  Join.
23       THE WITNESS:  As part of my oversight of
24   the project, no.
25   BY MR. DOW:

Page 68

1        Q. Okay.  Thank you.
2        Mr. Utz, over the course of your project
3    management of the site, did Casa Nido ever claim to
4    you that it had an inability to pay for
5    investigation and/or remediation of the site?
6        A. No.
7        Q. Okay.  Let me show you a document.  Okay.
8    This is dated November 10, 2020.  And I just put it
9    in the chat, and I will share my screen.
10       (Exhibit 9 marked.)
11       THE COURT REPORTER:  For the record, it is
12   9.
13   BY MR. DOW:
14       Q. Okay.  So here is a -- Mr. Utz, I
15   understand a lot of what I am asking about happened
16   several years ago, so I am just going to use this
17   memo here to -- or e-mail to refresh your
18   recollection.  But this is an e-mail from you to
19   Paul Kibel dated November 10, 2020.
20       Did you send this e-mail to Mr. Kibel,
21   Mr. Utz?
22       A. It has been a while.  It looks like I did
23   send this e-mail.
24       Q. So as I read this e-mail -- and feel free
25   to correct me.  Casa Nido, which here is stated as a

Page 69

1    general partnership comprised of individuals, had
2    claimed an inability to pay, and you were asking
3    them if they will -- if they are intending to make
4    this claim formally, and you are showing them how to
5    do that.
6        And I am just wondering, did Casa Nido to
7    your knowledge ever submit the clear bulleted
8    information to DTSC that is outlined in this e-mail?
9        A. To my knowledge, Casa Nido never submitted
10   this information to me.
11       Q. Okay.  Sorry about that.  The wonderful
12   world of teens.
13       So anyway, and then in -- well, first of
14   all, do you know who Paul Kibel is, Mr. Utz?
15       A. I believe you are referring to Mr. Paul
16   Stanton Kibel who is an attorney for Casa Nido.
17       Q. Right.  Thank you.
18       And so you sent this e-mail to him,
19   correct?
20       A. Yes, I see his e-mail in the hyperlink
21   under his name, Paul Kibel.
22       Q. Okay.  Thank you.
23       And then at the bottom in the last bullet
24   of this e-mail you are saying, Work plan and HASP
25   still due.  And I assume HASP stands for health and

18  (Pages 66 to 69)




| Page 70 |
| --- |

```
 1    safety plan.
 2         Can you recall what work plan was still
 3    due?  Just the specifics of the work plan that you
 4    are saying is still due here, like, what that was?
 5         MR. HURTADO:  Objection.  Vague and
 6    ambiguous.  Compound.
 7         MR. BRODY:  Join.
 8         THE WITNESS:  I believe the work plan
 9    referenced in this e-mail is the offsite vapor
10    intrusion investigation work plan that we discussed
11    earlier in our deposition.
12         MR. DOW:  Okay.  Thank you.  Okay.  I am
13    going to drop another exhibit into the chat here.
14         Okay.  The next document is dated November
15    23, 2020.
16         THE COURT REPORTER:  It will be 10, for the
17    record.
18         (Exhibit 10 marked.)
19         MR. HURTADO:  I'm sorry.  Did you say that
20    this was number 10?
21         THE COURT REPORTER:  Yes.
22         MR. HURTADO:  Okay.  Thanks.
23    BY MR. DOW:
24         Q. So Mr. Utz, this is a teleconference
25    meeting minutes.
```

| Page 71 |
| --- |

```
 1         Do you know who created this document,
 2    Mr. Utz?
 3         A. Yes, I know who created this document.
 4         Q. Okay.  It is dated November 19, 2020.
 5    Could you please tell me who created this document?
 6         A. I created this document, but it was edited
 7    by multiple people.
 8         Q. Okay.  So did you create the initial --
 9    well, yeah.  Did you create the initial draft of
10    this document, Mr. Utz?
11         MR. HURTADO:  Objection.  Deliberative
12    process.  Privilege.
13    BY MR. DOW:
14         Q. Okay.  Well, I don't want to ask about
15    anything that has to do with attorneys or anything
16    else.  I am not asking you -- so if this document
17    was reviewed and edited by attorneys, I don't want
18    to know anything about that.
19         But Mr. Utz, is it fair to say that you
20    initiated this document?
21         A. I created the original draft.
22         Q. All right.  Thank you.
23         Okay.  So as I said, this document
24    indicates that the teleconference was on November
25    19, 2020.  Did you create this initial document at
```

| Page 72 |
| --- |

```
 1    the time or near the date of this teleconference on
 2    November 19, 2020?
 3         MR. HURTADO:  Objection.  Vague and
 4    ambiguous.
 5         THE WITNESS:  I believe that the meeting
 6    minutes were sent within about a month or less of
 7    the teleconference.
 8    BY MR. DOW:
 9         Q. They were sent.  So could you tell me where
10    they were sent?
11         A. I believe we transmitted the final
12    teleconference meeting minutes to -- we may have
13    transmitted it to Casa Nido, but I knew it was -- we
14    posted it to public envirastore, which is our online
15    database which at the time it became a publicly
16    disclosable document.
17         Q. And I don't mean to make you repeat
18    yourself, Mr. Utz, but would it be fair to say that
19    you started to draft this document soon after this
20    meeting was held?
21         MR. HURTADO:  Objection.  Vague.
22         THE WITNESS:  I would say I began drafting
23    this document soon after the teleconference.
24    BY MR. DOW:
25         Q. All right.  Thank you.
```

| Page 73 |
| --- |

```
 1         In the course of your role as the senior
 2    environmental scientist and project manager at DTSC,
 3    would it be usual for you to make memos such as this
 4    of teleconferences?
 5         MR. HURTADO:  Objection.  Vague and
 6    ambiguous.
 7         THE WITNESS:  Can you repeat the question,
 8    please?
 9    BY MR. DOW:
10         Q. Yeah.  Let me ask you this:  Was this
11    memorandum drafted by you as part of your role as a
12    project manager for the site?
13         A. These are meeting minutes, not a
14    memorandum.  And I drafted them as part of my role
15    as project manager for this site.
16         Q. Okay.  Thank you.  And I will refer to them
17    as meeting minutes.
18         Is it -- have you made meeting minutes
19    after calls and other matters?  Like, is this
20    something that you would do in your role as project
21    manager?
22         A. I can't recall any other instances where I
23    have written meeting minutes, but I can recall
24    instances where I have written meeting notes to be
25    shared with external parties.
```



1      Q. All right.  And would you say that these
2   particular meeting minutes -- would you say that
3   they are a reasonably accurate account of what
4   transpired at the November 29, 2020, teleconference?
5      A. Yes.
6      Q. All right.  Thank you.
7      Okay.  I want to ask you some questions
8   based on the highlights that are on this document.
9   Well, you actually have already told me that the
10  document is accurate.
11     But in this document, you make this
12  statement, you say that cleanup work has so far not
13  followed state or federal law or the voluntary
14  agreement.  This was as of November 2020.
15     I guess what I would ask you is -- and, you
16  know, you are not an attorney, but you make the
17  statement here, and so what I would ask you is that,
18  from the time while you took over as project manager
19  for the site until such time that the voluntary
20  agreement was terminated by Casa Nido, would you say
21  that the cleanup work did not follow state or
22  federal law or the voluntary agreement?
23     MR. HURTADO:  Objection.  Calls for legal
24  analysis and conclusion.
25     MR. BRODY:  Join.  And vague and ambiguous.

1      THE WITNESS:  I can't make legal
2   determinations.  I am not a lawyer.
3   BY MR. DOW:
4      Q. Well, let me ask you this.  Would you say
5   that Casa Nido's work did not follow the voluntary
6   agreement?
7      MR. HURTADO:  Objection.  Lacks foundation.
8   Calls for speculation.
9      MR. BRODY:  Also vague and ambiguous as to
10  the term "Casa Nido's work."
11     THE WITNESS:  Can you please describe what
12  you mean by "work"?
13  BY MR. DOW:
14     Q. Well, you know, if we get back to what you
15  told me earlier about the tasks -- and I don't want
16  to misquote you.  But you essentially -- and I am
17  not trying to invite an objection here, but you
18  essentially told me that, you know, sort of in
19  total, when I asked you about what tasks had been
20  completed and you offered the opinion -- and I don't
21  want to misquote you -- that in total the tasks had
22  not been completed.  You know, given that statement
23  that you made earlier in the deposition, that is
24  what I am asking you now, is if this opinion that
25  you gave in these meeting minutes back in November

1   2020 holds for the entirety of Casa Nido's work
2   under the voluntary agreement?
3      MR. HURTADO:  Objection.  Vague and
4   ambiguous.
5      MR. BRODY:  Join.
6      THE WITNESS:  I can't speak to the entirety
7   insofar as you are referring to each individual
8   item, but I can say that I believe that what I was
9   referring to here was the absence of DTSC oversight,
10  which was indeed part of the voluntary cleanup
11  agreement.  And in the voluntary cleanup agreement,
12  it requires DTSC review and approval.  And I say
13  here DTSC cannot determine whether the work was
14  completed safely or whether the work was effective
15  or necessary, et cetera.  And that relates to the
16  absence of DTSC review and approval under the
17  voluntary cleanup agreement for certain items.
18  BY MR. DOW:
19     Q. Okay.  Thank you.
20     And you were making this statement because
21  it appears here that you believe that work was done
22  at the -- done at the property without oversight,
23  correct?
24     Let me be more exact.  It appears you are
25  making these statements because work was done at the

1   site by Casa Nido without DTSC oversight, correct?
2      A. Casa Nido had represented to us at this
3   time that they had completed work that was in
4   satisfaction of scope of work and the voluntary
5   cleanup agreement, and it was in satisfaction in
6   spite of no DTSC review and approval.  And the mere
7   absence of DTSC review and approval suggested that
8   that element of the voluntary cleanup agreement had
9   not occurred for those items.
10     Q. Okay.  Thank you.
11     Mr. Utz, on page 3 of 3 near the top, the
12  second complete sentence, it states, Casa Nido's
13  exhaustion of $1 million was a business decision.
14     Could you expound on that statement?  Like,
15  what you mean by a business decision as opposed to
16  something else?  I just want to see if you would be
17  kind enough to unpack that statement a little for
18  me.
19     A. The scope of work that was being discussed
20  in this meeting that had been completed without DTSC
21  review and approval had as far as we knew at the
22  time of this meeting been completed unilaterally by
23  Casa Nido and, therefore, was not necessarily
24  completed under DTSC oversight.  Therefore, it could
25  be reasonably described as a business decision by



MAGNA
LEGAL SERVICES

1  Casa Nido Partnership, which is a general
2  partnership, that had up to this point operated as a
3  business deriving income from ownership and
4  operation of at least this property.
5     Q.  Okay.  Thank you.
6        MR. BRODY:  I need to move to strike the
7  last part of the testimony based on lack of
8  foundation and speculation.
9  BY MR. DOW:
10    Q.  Okay.  Well, let's go to foundation.  I
11 mean, I think Mr. Utz, as far as the attendees at
12 this meeting, we have got Ron Piziali, Paul Stanton
13 Kibel, Bob Clark-Riddell, Larry McDaniel, Whitney
14 Smith, yourself.
15       Is this an accurate bullet list of who was
16 in attendance at this November 19, 2020,
17 teleconference?
18    A.  Yes.
19    Q.  Okay.  Thank you.
20       And I will note that -- well, never mind.
21 I don't need to note anything.  Let me see.
22       And if we look at page 3 of 3, small letter
23 B that I am pointing my cursor at, you are stating
24 that DTSC is still expecting -- and "still" is
25 underlined.  So it says DTSC is still expecting a

1  sample and analysis work plan and health and safety
2  plan pursuant to the VCA which Casa Nido has already
3  agreed to complete and which DTSC for several years
4  ago.  And then you're listing out the PEA task to
5  work plan.
6        Is there -- when you -- the fact that the
7  word "still" is underlined here, Mr. Utz, is
8  there -- and I don't want to mischaracterize
9  anything, so you let me know.  But is there some
10 level of frustration here on your part with the
11 speed at which Casa Nido is working under the VCA?
12       MR. BRODY:  Objection.  Calls for
13 speculation.  Vague and ambiguous.
14       THE WITNESS:  DTSC was concerned about the
15 pace of work given that human health concerns raised
16 by the data collected to date at the time of this
17 letter or this -- excuse me, these meeting minutes
18 in the teleconference.
19 BY MR. DOW:
20    Q.  Okay.  Thank you.
21       And then below it says, The soil vapor
22 extraction and sub-slab depressurization systems may
23 or may not be the appropriate remedy and/or
24 mitigation for the site.
25       As current project manager for the site,

1  Mr. Utz, are you still of this opinion that it is
2  unknown whether the SVE system and SSD system may or
3  may not be appropriate remedies for the site?
4     A.  The term remedy is a term of art, and in
5  the absence of a decision document, I can't answer
6  that question.
7     Q.  What is a decision document, Mr. Utz?
8     A.  A decision document is a written document
9  which memorializes a response action, for example, a
10 removal action or a remedial action.  Right?  A
11 physical response to address and abate a release of
12 hazardous substances or hazardous waste as part of a
13 cleanup site.
14    Q.  Is a decision also known as a record of
15 decision?
16    A.  It can be.
17    Q.  Okay.  And what is the record of decision?
18 Does that occur at the end of a cleanup process, or
19 can you please tell me when the decision document
20 occurs in the typical cleanup process, if you don't
21 mind?
22       MR. HURTADO:  Objection.  Incomplete
23 hypothetical.  Calls for legal analysis and
24 conclusion.  Lacks foundation.
25       MR. BRODY:  Join.

1        THE WITNESS:  A remedy decision -- or
2  excuse me, a decision document can occur at a number
3  of different points in the cleanup lifecycle.  And
4  can also be -- can also occur at varying -- with
5  varying availability of data.
6  BY MR. DOW:
7     Q.  And is there a decision document for this
8  site, Mr. Utz, pertaining to the SVE and SSD
9  systems?
10       MR. BRODY:  Objection.  Vague.
11       THE WITNESS:  To my knowledge under DTSC
12 oversight, no.
13 BY MR. DOW:
14    Q.  So without that decision document, Mr. Utz,
15 is it fair to say we don't know at this time if the
16 SVE system and the sub-slab depressurization system
17 are an appropriate remedy for the site?
18       MR. HURTADO:  Objection.  Calls for legal
19 analysis and conclusion.  Expert opinion.
20       MR. BRODY:  Join.
21       THE WITNESS:  In the absence of a decision
22 document, I can't tell you whether the SVE and/or
23 SSD systems or system would be selected as a removal
24 or remedial action at that site.  That is part of
25 the decision document.



Page 82

1  BY MR. DOW:
2      Q. It goes on to say that -- well, I think it
3  is -- probably just states it on its face, but is
4  it -- by the time Casa Nido terminated the VCA up to
5  that point, would you say that the remedy selection
6  process had been followed or not?
7          MR. HURTADO: Objection. Legal analysis
8  and conclusion. Lacks foundation. Calls for
9  speculation.
10         MR. BRODY: Join.
11         THE WITNESS: At the time of the voluntary
12 cleanup agreement dated 2017 determination in 2023,
13 the remedy selection process had not been started.
14 BY MR. DOW:
15     Q. Okay. And then towards the end of the
16 paragraph, right before the last sentence, it says,
17 DTSC has not reviewed or approved these systems.
18 I assume "these systems" means the SVE
19 system and the sub-slab depressurization system.
20         (Court reporter lost Internet connection.)
21         (Record read.)
22 BY MR. DOW:
23     Q. Okay. Well, the question I asked -- feel
24 free to correct me if I'm wrong anybody, but my
25 question to Mr. Utz -- and I guess I will repeat

Page 83

1  it -- is that up until today, February 29, 2024, is
2  it still the case that DTSC has not reviewed or
3  approved the soil vapor extension system and the
4  sub-slab depressurization?
5          Mr. Utz, do you mind answering that again?
6  And you can give the exact same answer you just did
7  if you want. I mean, thank you.
8      A. I believe I said DTSC has not as of today
9  approved the SSD or SVE systems.
10     Q. Thank you.
11         Okay. That's it for this one. Okay. I am
12 going to drop the next exhibit into the chat. This
13 is dated November 23, 2020.
14         THE COURT REPORTER: And just for the
15 record, this will be 11.
16         (Exhibit 11 marked.)
17         MR. DOW: Thank you. Yes.
18 BY MR. DOW:
19     Q. So this is a November 23, 2020, e-mail we
20 can just go -- Mr. Utz, feel free to review this.
21 Is this a -- well, we know -- I think we can
22 determine that you sent this e-mail because it has
23 got your signature block at the bottom. And this is
24 to -- let's see, yeah, it is dated November 23,
25 2020, sent at 2:50 p.m., and seems to concern the

Page 84

1  preliminary endangerment assessment.
2          And if we go down to the last paragraph, it
3  says, Because the PEA requirement has not been
4  filed, DTSC does not have an adequate understanding
5  of the owners, operators, nature or extent of known
6  threaten releases or potential exposure pathways at
7  the site.
8          And my question, Mr. Utz, is as of today
9  regarding this site, is this highlighted statement
10 still true?
11     A. Which highlighted statement?
12     Q. Excuse me. The one at the last paragraph
13 that starts, Because the PEA requirements -- or
14 excuse me -- requirement has not been fulfilled.
15     A. I'm not sure whether DTSC has accepted the
16 information submitted to date as what we would call
17 a PEA equivalent, but I know that we have not
18 approved any documents during my time as project
19 manager with the title PEA or preliminary
20 endangerment assessment.
21     Q. Okay. Mr. Utz, is it true that over the
22 course of your work with Casa Nido under the VCA
23 that you granted several extensions for completion
24 of the health and safety plan for the site or one of
25 the health and safety plans?

Page 85

1      A. Yes, I believe I did at least once.
2      Q. Okay. Putting a document into the chat,
3  dated 12-08-2020.
4          THE COURT REPORTER: It will be 12, for the
5  record.
6          (Exhibit 12 marked.)
7          MR. DOW: Okay. So this is a long e-mail.
8  First page is DTSC 1729. It appears to involve a
9  submission of a work plan and a health and safety
10 plan. It appears it is a work plan and health and
11 safety plan were submitted and they were incomplete.
12 BY MR. DOW:
13     Q. Mr. Utz, looking at the very top of the
14 document, you sent an e-mail to Bob Clark-Riddell
15 and others on December 8, 2020, and you reference --
16 and correct me if I'm wrong, you believe you are
17 referencing an incomplete work plan, an incomplete
18 health and safety plan. You asked when these things
19 are going to be completed by Casa Nido and/or
20 Pangea. And then you state I am not granting any
21 more extensions.
22         So can you surmise from this, Mr. Utz, that
23 you had granted multiple extensions to Casa Nido to
24 complete these documents?
25     A. I don't know if I am referring to




Page 86

1    extensions on these documents or on other documents.
2        Q. Okay. So you could be referring to
3    extensions that you had granted in the past on
4    documents other than these, correct?
5        A. It is conceivable.
6        Q. Okay. And you say I am not granting any
7    more extensions. Does this reflect -- does that
8    statement reflect any frustration either on your
9    part or on DTSC's part with the pace of which Casa
10   Nido was attempting to complete work under the VCA?
11       MR. HURTADO: Objection. Calls for
12   speculation.
13       MR. BRODY: Join.
14       MR. HURTADO: Lacks foundation.
15       MR. BRODY: Join.
16       THE WITNESS: I can't recall.
17   BY MR. DOW:
18       Q. So you can't recall why you stated to them
19   I am not granting any more extensions?
20       MR. HURTADO: Objection. Misquotes the
21   deponent.
22       THE WITNESS: I said I can't recall. You
23   asked about frustration.
24   BY MR. DOW:
25       Q. Oh, okay.

Page 87

1        A. And with pace, and I -- my answer is I
2    cannot recall.
3        Q. Okay. Let me ask you this, do you know why
4    you wrote, I am not granting any more extensions?
5        A. In this case, I don't know, but typically
6    we grant extensions when there is sufficient cause
7    and also when -- when appropriate. And I know that
8    at the time of this e-mail, DTSC was concerned about
9    the pace of -- of work being completed as requested
10   by DTSC and the implications to human health and the
11   environment.
12       Q. Okay. Thank you.
13       All right. I just dropped another exhibit
14   into the chat. It is dated January 20, 2020.
15       THE COURT REPORTER: It will be 13.
16       (Exhibit 13 marked.)
17   BY MR. DOW:
18       Q. This is a memorandum, Mr. Utz, from Eric --
19   I'm not sure how to pronounce it -- Brocales for you.
20   It is a review of the health and safety plan for the
21   former Omo's cleaners.
22       Just let me ask, Mr. Utz, do you
23   remember -- do you recall receiving this -- do you
24   recognize this memorandum from Mr. Brocales?
25       A. It looks familiar.

Page 88

1        Q. And it looks like on this page, page 3 of
2    3, it looks as though Mr. Brocales is telling you
3    that the health and safety plan as submitted does
4    not meet certain regulatory requirements; is that
5    correct?
6        MR. HURTADO: Objection. Document speaks
7    for itself.
8        MR. BRODY: Join.
9        THE WITNESS: Mr. Brocales is representing
10   to me that the HASP as submitted does not meet the
11   minimum requirements as stated in Title 8 of
12   California Code of Regulations.
13   BY MR. DOW:
14       Q. I don't know if you can answer this,
15   Mr. Utz. Was it commonplace for Pangea to submit to
16   you documents that did not meet regulatory
17   requirements?
18       MR. HURTADO: Objection. Vague and
19   ambiguous. Calls for legal analysis and conclusion.
20       MR. BRODY: Join. Calls for speculation.
21       THE WITNESS: Can you repeat the question,
22   please?
23   BY MR. DOW:
24       Q. Well, in this instance Pangea has submitted
25   a document that does not meet certain requirements.

Page 89

1    And speaking from myself, having reviewed the
2    document produced by DTSC, it would appear that that
3    was the case on more than a few occasions.
4        So I am asking you as a general matter, was
5    it typical for Pangea to submit documents relative
6    to the site that has been requested by DTSC that did
7    not meet regulatory requirements?
8        MR. HURTADO: Objection. Vague and
9    ambiguous. Calls for speculation. Documents speak
10   for themselves. Too general.
11       MR. BRODY: Join.
12       MR. HURTADO: Calls for legal conclusion.
13       MR. BRODY: Sorry for the interruption.
14   Join.
15       THE WITNESS: Can you describe what you
16   mean by regulatory requirements, please?
17   BY MR. DOW:
18       Q. I would say requirements in the CCR for
19   really any -- any standard that DTSC would consider
20   necessary for a complete document. I mean, I am not
21   asking you for a legal opinion. Obviously, you have
22   other folks at the agency though it appears Eric
23   Brocales is not an attorney. I know you are not an
24   attorney.
25       In this instance he is informing you that




Page 90

1    in his opinion, the submitted health and safety plan
2    does not meet minimum requirements.  So what I am
3    asking you is to the extent you can recall, was it
4    typical for Pangea to submit documents requested by
5    DTSC relative to the site that were insufficient
6    because they did not meet requirements?  That could
7    be the CCR.  It could be any requirement that DTSC
8    considered mandatory.
9         MR. HURTADO:  Same objection as before.
10        MR. BRODY:  Join.
11        THE WITNESS:  Yes.
12   BY MR. DOW:
13        Q.  Thank you.
14        Okay.  Now, I am going to submit -- excuse
15   me, not submit.  Let's see.
16        Mr. Utz, do you recall instances where you
17   informed either Pangea or Casa Nido that given their
18   performance under the voluntary cleanup agreement,
19   you were considering recommending that the agreement
20   be converted to a more compulsory agreement such as
21   an INFC order?
22        (Exhibit 14 marked.)
23        A.  An INFC order is not an agreement.
24        Q.  Well, thank you for correcting me.  And let
25   me just give you the document I am referring to.  I

Page 91

1    was trying to -- probably better if you just see the
2    document.  It is dated May 2, 2021.  I will put it
3    up on my screen in a moment.
4         So here we have this e-mail from you,
5    Mr. Utz, is dated March 16, 2021, sent at 6:32 p.m.
6    DTSC 5217 is the Bates number.
7         And it states that -- and I understand the
8    document speaks for itself, but -- well, can you
9    just confirm Mr. -- well, can you first confirm,
10   Mr. Utz, that you sent this e-mail to Bob
11   Clark-Riddell and various other people on March 16,
12   2021?
13        A.  Yes.
14        Q.  Okay.  And it says -- well, I will just
15   read it.  It says, As of March 16, 2021, DTSC is not
16   in receipt of the revised work plan or health and
17   safety plans, singular or plural.
18        If DTSC is unable to receive these revised
19   documents by 5 p.m. on March 19, 2021, I will
20   petition that this matter be moved into our
21   enforcement program, including termination of the
22   governing voluntary cleanup agreement and issuance
23   of an imminent and substantial endangerment order.
24   And then you go on to advise of penalties.
25        My question is, is was this e-mail so

Page 92

1    advising Casa Nido -- well, what was the impetus for
2    this e-mail, Mr. Utz?  Why did you send it?
3         MR. HURTADO:  Ian, you are muted.
4         THE WITNESS:  Thank you.
5         As I represented in my e-mail dated March
6    16, 2021, DTSC was not in receipt of the revised
7    work plan or HASP or HASPs.
8    BY MR. DOW:
9         Q.  But it was more that you were just not in
10   receipt of the work plan or HASPs.  Was it the
11   case -- and correct me if I'm wrong, was it the case
12   that you and DTSC had shown leniency in terms of
13   extension and waiting for these documents and you
14   and/or the agency were just at -- the Department
15   were just at the point where you thought it would be
16   best, given the pace at which Casa Nido was working,
17   to convert the VCA into an ISE order?
18        MR. HURTADO:  Objection.  Argumentative.
19   Assumes facts not in evidence.  Ambiguous.
20   Incomplete hypothetical.  Calls for speculation.
21        MR. BRODY:  Join.
22        THE WITNESS:  DTSC sent this e-mail because
23   it was not in receipt of certain documents by a
24   certain date.
25   BY MR. DOW:

Page 93

1         Q.  Would you send this e-mail -- but what I
2    mean by "this e-mail" is would you send an e-mail to
3    a project proponent the first time they were late
4    with a submission to DTSC?
5         MR. HURTADO:  Objection.  Argumentative.
6    Incomplete hypothetical.
7         MR. BRODY:  Join.
8         THE WITNESS:  It depends.
9    BY MR. DOW:
10        Q.  And what would it depend on, Mr. Utz?
11        MR. HURTADO:  Objection.  Calls for lengthy
12   explanation.  Narrative.  Incomplete hypothetical.
13        MR. DOW:  Does not have to be lengthy.
14        MR. BRODY:  Join.
15        THE WITNESS:  DTSC policy is to pursue
16   informal dispute resolution prior to formal dispute
17   resolution or enforcement in my experience at DTSC
18   and it is -- yeah.
19   BY MR. DOW:
20        Q.  To this point, had you pursued informal
21   dispute resolution with Casa Nido as of the date of
22   this e-mail?
23        MR. BRODY:  Objection.  Vague.
24        THE WITNESS:  DTSC had attempted by the
25   time of this e-mail some informal dispute resolution

24  (Pages 90 to 93)



Page 94

1　strategies, including a teleconference, which we
2　discussed earlier in this deposition, which we would
3　call meet and confer.
4　BY MR. DOW:
5　　　Q. And would you say that meet and confer was
6　unsuccessful given this e-mail that you wrote on
7　March 16?
8　　　MR. HURTADO: Objection. Vague.
9　　　MR. BRODY: Join.
10　　THE WITNESS: I don't recall whether all of
11　the objectives of the meet and confer were met in
12　that instance.
13　BY MR. DOW:
14　　Q. Is it safe to say the objective of
15　receiving a timely work plan and a timely health and
16　safety plan were not achieved as a result of the
17　meet and confer?
18　　　MR. BRODY: Objection. Calls for
19　speculation.
20　　　THE WITNESS: I can't tell from review of
21　this e-mail alone if that is the case. I don't
22　know.
23　　　MR. DOW: Okay.
24　　　THE COURT REPORTER: Counsel, when it is
25　convenient, can we take a break?

Page 95

1　　　MR. DOW: Yeah. Sure. You want to take --
2　well, I'm sorry. I am not speaking for everybody.
3　Any opinions?
4　　　MR. HURTADO: Probably going to want a
5　substantial break, like 20, 30 minutes.
6　　　Ian, what about you?
7　　　THE WITNESS: 30 minutes for lunch.
8　　　MR. DOW: Okay. That's fine.
9　　　THE WITNESS: Maybe even 20, actually. I
10　agree with Rafael.
11　　　MR. BRODY: And 20 minutes would be fine
12　with me. I just want to indicate for the record
13　while we are on the record that we began at 10:00
14　this morning. It is 1:52 right now. We took a
15　short, ten-minute break, but we are almost four
16　hours into questioning.
17　　　I indicated during meet and confers prior
18　to this deposition that I would need approximately
19　two hours, perhaps more to question Mr. Utz. It
20　does not look like Mr. Dow is close to completion,
21　so I am concerned and just wanted to make a record
22　that I am concerned about getting the time required
23　in -- meaningful time required so that I am not
24　completely at the end of the day at dinner time with
25　an exhausted Mr. Utz.

Page 96

1　　　So hopefully we won't run into issues, but
2　I wanted to make a record that --
3　　　MR. DOW: Okay. I will try to -- I will
4　try to speed it up. I mean, there is a lot of
5　documents involved here. I mean, DTSC produced
6　21,000 pages of documents.
7　　　MR. BRODY: I understand. That's why I
8　initiated --
9　　　MR. DOW: I will try to --
10　　　MR. BRODY: -- the process.
11　　　MR. DOW: -- I will try to -- I am trying
12　to be reasonable, but I want to get through -- I
13　will see if I can take some shortcuts even if it
14　just means having Mr. Utz authenticate that he did
15　send and receive -- send or receive a document and
16　go from there. But I will try to speed it up.
17　　　THE COURT REPORTER: Okay. Off the record?
18　　　MR. BRODY: That is fine with me, if it is
19　with Mr. Dow.
20　　　MR. DOW: Yes. That is fine with me.
21　　　(Break taken.)
22　　　(CA Certified Court Reporter, Arleen
23　Jiminez, CSR No. 4240, relieved CA Certified Court
24　Reporter, Jamie Davis, CSR No. 14209.)
25　　　(End of Volume 1.)

Page 97

REPORTER'S CERTIFICATE

1
2　　　I, JAMIE DAVIS, CSR No. 14209, a Certified
3　Shorthand Reporter, do hereby certify:
4　　　That prior to being examined, the witness
5　named in the foregoing deposition, IAN UTZ, was by
6　me duly sworn to testify the truth, the whole truth,
7　and nothing but the truth;
8　　　That said deposition was taken before me at
9　the time and place set forth and was taken down by
10　me in shorthand and thereafter reduced to
11　computerized transcription under my direction and
12　supervision; and I hereby certify the foregoing
13　deposition is a full, true and correct transcript of
14　my shorthand notes so taken.
15　　　Further, that if the foregoing pertains to
16　the original transcript of a deposition in a federal
17　case, before completion of the proceedings, review
18　of the transcript [X] was [ ] was not requested.
19　　　I further certify that I am neither counsel
20　for nor related to any party to said action nor in
21　any way interested in the outcome thereof.
22　　　IN WITNESS WHEREOF, I have hereunto
23　subscribed my name on March 11, 2024.
24

　　　Jamie Davis,
25　　　CSR No. 14209

MAGNA
LEGAL SERVICES

```
1              PENALTY OF PERJURY
2        I, IAN UTZ, do hereby declare under penalty
3  of perjury that I have read the foregoing
4  transcript; that I have made any corrections as
5  appear noted, in ink, initialed by me, or attached
6  hereto; that my testimony as contained herein, as
7  corrected, is true and correct.
8
9
10        EXECUTED this _____day of _____,
11  20____, at _____, _____.
              (City)         (State)
12
13
14
                    _____
15                      IAN UTZ
16
17
18
19
20
21
22
23
24
25
```

```
1              DEPOSITION ERRATA SHEET
2   Page No. _____ Line No. _____ Change to: _____
3   Reason for change: _____
4   Page No. _____ Line No. _____ Change to: _____
5   Reason for change: _____
6   Page No. _____ Line No. _____ Change to: _____
7   Reason for change: _____
8   Page No. _____ Line No. _____ Change to: _____
9   Reason for change: _____
10  Page No. _____ Line No. _____ Change to: _____
11  Reason for change: _____
12  Page No. _____ Line No. _____ Change to: _____
13  Reason for change: _____
14  Page No. _____ Line No. _____ Change to: _____
15  Reason for change: _____
16  Page No. _____ Line No. _____ Change to: _____
17  Reason for change: _____
18  Page No. _____ Line No. _____ Change to: _____
19  Reason for change: _____
20  Page No. _____ Line No. _____ Change to: _____
21  Reason for change: _____
22  Page No. _____ Line No. _____ Change to: _____
23  Reason for change: _____
24  Page No. _____ Line No. _____ Change to: _____
25  Reason for change: _____
```

```
1              DEPOSITION ERRATA SHEET
2   Page No. _____ Line No. _____ Change to: _____
3   Reason for change: _____
4   Page No. _____ Line No. _____ Change to: _____
5   Reason for change: _____
6   Page No. _____ Line No. _____ Change to: _____
7   Reason for change: _____
8   Page No. _____ Line No. _____ Change to: _____
9   Reason for change: _____
10  Page No. _____ Line No. _____ Change to: _____
11  Reason for change: _____
12  Page No. _____ Line No. _____ Change to: _____
13  Reason for change: _____
14  Page No. _____ Line No. _____ Change to: _____
15  Reason for change: _____
16  Page No. _____ Line No. _____ Change to: _____
17  Reason for change: _____
18  Page No. _____ Line No. _____ Change to: _____
19  Reason for change: _____
20  Page No. _____ Line No. _____ Change to: _____
21  Reason for change: _____
22
23  SIGNATURE _____ DATE: _____
                IAN UTZ
24
25
```



**A**

**a.m**
1:19 5:2
**abate**
80:11
**abeam@gurneela...**
3:9
**ability**
43:23
**able**
31:20
**abnis@khlaw.com**
2:14
**absence**
76:9,16 77:7 80:5
    81:21
**accept**
61:4
**accepted**
61:10,15,19 62:3
    65:18 84:15
**accepts**
61:2
**accommodate**
64:10
**account**
74:3
**accurate**
26:1 42:10 50:21
    74:3,10 78:15
**achieved**
94:16
**acronym**
38:3,12 66:11
**action**
9:16 31:5,6 33:5
    58:13 80:9,10,10
    81:24 97:20
**actionable**
42:13
**actions**
50:8,10
**activities**
25:15 26:11 46:3,20
    47:4 50:5

**addition**
62:4
**additional**
64:10
**address**
80:11
**Adeline**
2:3
**adequate**
59:21 84:4
**administering**
23:22
**Adrianna**
3:18
**advise**
42:11 91:24
**advisement**
43:25
**advising**
92:1
**affiliates**
17:8
**agency**
15:20 89:22 92:14
**ago**
16:18 26:3 68:16
    79:4
**agree**
39:24 40:15 65:7
    95:10
**agreed**
79:3
**agreement**
9:13,14 20:8,19,20
    20:21 21:5 22:5,11
    23:14,23 24:4,9,14
    24:22,24 28:20 35:8
    35:16 36:1 55:15
    60:10 74:14,20,22
    75:6 76:2,11,11,17
    77:5,8 82:12 90:18
    90:19,20,23 91:22
**ahead**
32:17
**air**
38:8

**aka**
1:8,8,8,9,10
**Alamo**
2:18
**allowed**
6:10
**ambiguous**
14:13 20:1 45:9
    46:22 56:20 57:6
    63:14 64:3 66:19
    70:6 72:4 73:6
    74:25 75:9 76:4
    79:13 88:19 89:9
    92:19
**amendments**
50:6
**analysis**
12:8 74:24 79:1
    80:23 81:19 82:7
    88:19
**and/or**
68:5 79:23 81:22
    85:19 92:14
**Anderson**
3:6
**answer**
6:9 7:6 26:3 36:12
    52:21 53:5,9 80:5
    83:6 87:1 88:14
**answered**
35:23 36:10 53:7
**answering**
26:7 83:5
**answers**
26:3
**anybody**
82:24
**anymore**
32:3
**anyway**
69:13
**apologize**
25:22
**appear**
89:2 98:5
**APPEARANCES**

2:1 3:1
**appears**
39:9,18 41:7 59:8
    76:21,24 85:8,10
    89:22
**applicable**
66:7
**application**
66:8,16
**appropriate**
10:25 11:10,13 79:23
    80:3 81:17 87:7
**approval**
76:12,16 77:6,7,21
**approve**
50:9 61:1
**approved**
47:21,25 48:2,3,6,11
    50:14 60:25 82:17
    83:3,9 84:18
**approximately**
10:17,18 13:11,12
    15:24 16:18 31:7
    46:9,15 47:5 95:18
**April**
15:19 22:24 28:24
**argue**
42:8
**argument**
42:22
**Argumentative**
25:21 36:16 92:18
    93:5
**Arleen**
96:22
**art**
54:25 80:4
**asked**
6:13 35:22 36:10
    53:6 65:16,25 75:19
    82:23 85:18 86:23
**asking**
22:13 24:21 33:4
    34:16 45:2 47:7
    52:10 59:8,20 68:15
    69:2 71:16 75:24



89:4,21 90:3
**assert**
34:1
**assessment**
51:13,18,23 52:5
    84:1,20
**assessments**
13:4,5
**assistant**
10:13
**associated**
17:21 18:11
**assume**
69:25 82:18
**Assumes**
34:20 92:19
**assuming**
6:20 10:20 55:6,15
**ASTM**
10:25
**attached**
98:5
**attempted**
93:24
**attempting**
86:10
**attendance**
78:16
**attendees**
78:11
**attorney**
8:17 69:16 74:16
    89:23,24
**attorneys**
3:12 71:15,17
**August**
3:10 4:13 37:11 41:5
    41:11,24
**authenticate**
96:14
**availability**
81:5
**available**
25:10 36:4 56:11
    66:5
**Avenue**

20:24 21:1
**aware**
8:13,19,24 9:1,5
    26:10 30:2 52:2
    64:25 66:4,25

_____

**B**
**B**
78:23
**bachelor**
9:22 10:1
**back**
13:10 14:8 17:18
    18:17 26:2 28:5
    29:9,10 47:18 75:14
    75:25
**background**
9:20
**band**
32:3
**barrier**
38:13
**barriers**
50:6
**based**
25:9 35:16 36:3
    50:11 54:1 56:10
    74:8 78:7
**Basics**
10:15,17,19 11:9
    12:11,14
**Bates**
9:3 21:6 27:6,8,12,24
    31:2 37:13 91:6
**Bates-numbered**
9:2
**Bauman**
2:24
**Beam**
3:10
**bear**
7:16
**bed**
66:25 67:17
**began**
15:19 72:22 95:13

**beginning**
32:21 33:4
**behalf**
5:2 44:17,18 59:5
**believe**
21:24 35:24 36:12
    37:6 38:3,12 60:7,8
    69:15 70:8 72:5,11
    76:8,21 83:8 85:1
    85:16
**believed**
67:1
**beneath**
38:9 67:14
**Benjamin**
3:17
**Berkeley**
2:4 9:24 10:5,14 16:2
    17:2
**best**
6:9 92:16
**better**
91:1
**biology**
10:3
**block**
83:23
**BLOWER**
1:10,10
**Blum**
2:8
**board**
46:13
**Board's**
66:10
**Bob**
58:24 59:1,2,8,20
    78:13 85:14 91:10
**Bonotto**
3:7
**bottom**
69:23 83:23
**Boulevard**
2:18 3:8
**box**
7:10,14 31:14,18

**break**
7:1,2,3 48:15,17,19
    94:25 95:5,15 96:21
**breaking**
7:2
**breaks**
7:6
**briefly**
6:11,12 9:19
**bring**
43:13
**Broadway**
3:13
**Brocales**
87:19,24 88:2,9
    89:23
**Brody**
2:5 17:24 19:13,24
    21:19 22:12 23:18
    23:25 24:15 25:1,18
    25:20,22 26:15
    28:14 29:24 30:5,12
    30:20 31:11,15 33:8
    33:19 34:1,18,21
    35:4,11,19 36:11,17
    39:5 40:4,14 42:2,8
    42:15,21,25 44:8
    45:10,21 46:23 48:8
    48:23 50:18 51:1
    52:1,15,25 53:8
    55:8,19 56:9,21
    57:7,20 58:9 60:3,6
    60:18 61:8 62:11,22
    62:24 64:5,17 66:20
    67:22 70:7 74:25
    75:9 76:5 78:6
    79:12 80:25 81:10
    81:20 82:10 86:13
    86:15 88:8,20 89:11
    89:13 90:10 92:21
    93:7,14,23 94:9,18
    95:11 96:7,10,18
**building**
38:9
**bullet**
64:23 69:23 78:15



**bulleted**
69:7
**business**
11:6 39:22 77:13,15
77:25 78:3

---

**C**

**C**
21:15 22:2,2,3 24:4,8
24:22 25:4 35:25
60:9
**CA**
2:4,9,13,18,23 3:4,8
3:13 96:22,23
**California**
1:2,4 3:3 5:6,21 9:24
10:14,16 11:1 12:17
13:18,18 15:20 16:2
17:8 20:24 21:2
39:16 40:6 47:12
88:12
**call**
8:7 16:3,4 67:9,10
84:16 94:3
**called**
18:20 43:20
**Calling**
33:10
**calls**
11:21 12:7 15:4
19:24 22:12 23:16
24:16 25:2 26:13
28:12 29:22 30:6
34:22 35:2,10 36:9
40:1,12 42:3 45:8
48:8,24 50:16 51:24
54:20 56:7 57:5
60:4,19 61:6 62:9
64:16 67:21 73:19
74:23 75:8 79:12
80:23 81:18 82:8
86:11 88:19,20 89:9
89:12 92:20 93:11
94:18
**capacity**
10:22 12:18,24 16:11

16:20 18:5
**Casa**
1:4 4:9 5:22 9:14
20:22 21:23,25
22:11 23:15,23 24:6
24:14,25 25:5,16
26:10 28:7,10 29:8
29:19 30:2,16 35:15
41:25 44:10 48:22
50:14,23 51:16,22
58:5 59:5 60:1,10
60:15,21 61:5 65:23
66:13,15 68:3,25
69:6,9,16 72:13
74:20 75:5,10 76:1
77:1,2,12,23 78:1
79:2,11 82:4 84:22
85:19,23 86:9 90:17
92:1,16 93:21
**case**
21:22,24 44:16 57:24
83:2 87:5 89:3
92:11,11 94:21
97:17
**cases**
55:2
**Catherine**
1:7 2:7 5:19 6:8
**cause**
87:6
**CCR**
89:18 90:7
**Cdow@behblaw.c...**
2:10
**Center**
2:13
**certain**
51:14 76:17 88:4,25
92:23,24
**CERTIFICATE**
97:1
**certified**
5:5 65:15 96:22,23
97:2
**certify**
97:3,12,19

**cetera**
76:15
**change**
38:8 99:2,3,4,5,6,7,8
99:9,10,11,12,13,14
99:15,16,17,18,19
99:20,21,22,23,24
99:25 100:2,3,4,5,6
100:7,8,9,10,11,12
100:13,14,15,16,17
100:18,19,20,21
**channel**
67:12
**characterization**
54:15,19,25 55:5,6
55:11,16,21 56:6,12
56:17,22 57:2,9
**charge**
24:5
**chase**
59:19
**chat**
7:10,14 8:2 20:7,8
26:19 27:4 31:13,18
36:25 40:20 49:3,8
49:12 68:9 70:13
83:12 85:2 87:14
**chemical**
34:14
**chemical-impacted**
31:8
**Chen**
42:12
**chlorinated**
54:16
**Chris**
32:2
**Christopher**
2:11 5:18
**City**
98:11
**claim**
68:3 69:4
**claimed**
69:2
**clarify**
76:15

17:25 18:8 26:20
**clarity**
27:5
**Clark-Riddell**
58:24 59:1,3,9 78:13
85:14 91:11
**Claudio**
1:11
**clean**
16:23 20:4 23:11
30:9 57:17
**cleaners**
87:21
**cleanup**
9:13 16:14,24,25
18:15 19:9 20:8,20
21:5 23:14,23 24:4
24:9,13,22 28:19
35:8,16 36:1 45:12
47:13 55:15 56:12
56:16,17,23,24 57:3
57:22 60:9 62:13
63:8 64:7 66:6,10
66:16 74:12,21
76:10,11,17 77:5,8
80:13,18,20 81:3
82:12 90:18 91:22
**cleanups**
47:14
**clear**
52:20 69:7
**client**
6:8 8:14
**close**
54:11 95:20
**Code**
12:5 19:7 88:12
**collected**
39:19 79:16
**college**
10:8,12
**comes**
43:11
**comfortable**
40:7
**commencing**



5:2
**comment**
49:19
**commenting**
51:11 52:11
**comments**
21:14 37:14 49:22
   50:3 54:1 65:8
**commonplace**
88:15
**COMPANY**
1:13
**compare**
27:11
**complete**
51:17,22 54:16 65:24
   77:12 79:3 85:24
   86:10 89:20
**completed**
22:7,11 24:13 25:5
   25:16 35:15 36:4
   44:17,20 45:14,23
   51:13 56:6,13 57:16
   75:20,22 76:14 77:3
   77:20,22,24 85:19
   87:9
**completely**
95:24
**completing**
26:10 58:1
**completion**
84:23 95:20 97:17
**compliance**
12:23 13:6,24
**Compound**
70:6
**comprised**
69:1
**compulsory**
90:20
**computerized**
97:11
**conceivable**
62:12 63:6,12,15
   64:6 67:13 86:5
**conceivably**

62:18
**concentration**
10:2
**concern**
17:11 83:25
**concerned**
79:14 87:8 95:21,22
**concerns**
79:15
**conclusion**
11:22 18:24 23:17
   25:8 26:14 30:19
   35:9 40:2 57:6 60:5
   74:24 80:24 81:19
   82:8 88:19 89:12
**conditionally**
47:21 48:2
**conduct**
42:13
**conducting**
30:17 65:5
**conduit**
67:1
**confer**
94:3,5,11,17
**Conference**
1:20
**confers**
95:17
**confine**
43:7
**confirm**
27:13,16,17 33:3
   91:9,9
**confirmed**
67:17
**conjunction**
11:6 57:16
**connection**
82:20
**consider**
67:6 89:19
**considered**
67:5 90:8
**considering**
90:19

**consultant**
12:19,21 15:10 64:12
   65:23
**consultants**
62:15,18 63:16,22
**consulting**
10:15 15:15 65:15
**contained**
98:6
**contaminant**
67:13
**contaminants**
17:10 55:24,25 67:8
**contaminate**
17:9
**contaminated**
14:10,11 17:3,21
   19:22
**contamination**
15:11 55:23 67:2
**content**
42:3
**contents**
42:5
**context**
53:15,17 57:1 59:2
**Contingency**
18:20 19:4,5,17,19
   19:21 20:2 57:2,10
**continues**
67:6
**continuing**
33:13 64:24 65:11
**contractor**
59:4
**Control**
3:11,16 9:1 15:21,23
   16:1,5 20:22 28:22
   39:17 66:10
**convenient**
94:25
**convert**
92:17
**converted**
90:20
**coordinator**

10:21,23
**Corporation**
12:17
**correct**
7:22 17:15 21:16,23
   22:21,22 23:1 25:17
   35:17 36:8 38:20
   41:8,10 42:1 44:5
   47:22,25 48:3 50:24
   53:25 58:6 59:10,23
   59:24,25 62:8 63:4
   66:1 68:25 69:19
   76:23 77:1 82:24
   85:16 86:4 88:5
   92:11 97:13 98:7
**corrected**
98:7
**correcting**
90:24
**corrections**
98:4
**corrective**
31:5 33:5
**correctly**
5:16
**costs**
17:20 18:1,16
**counsel**
26:21 94:24 97:19
**Counter-Claimant**
2:7
**course**
7:25 56:15 62:2 64:7
   65:21 68:2 73:1
   84:22
**courses**
17:2,6,7
**court**
1:1 5:12,20 6:6 26:20
   31:23 37:4 39:2
   40:24 43:12 49:14
   58:19 68:11 70:16
   70:21 82:20 83:14
   85:4 87:15 94:24
   96:17,22,23
**cover**



62:18
**covers**
20:3
**create**
71:8,9,25
**created**
71:1,3,5,6,21
**creek**
13:17 66:25 67:17
**Cross-Complainant**
2:7,16
**Cross-Defendant**
2:16
**CSR**
1:25 5:4 96:23,24
97:2,25
**current**
18:13 79:25
**currently**
29:13
**cursor**
78:23
**cut**
59:19

—————————————
D
—————————————
**Dakotah**
3:17
**Danville**
2:18
**data**
22:9 39:19 55:2
79:16 81:5
**database**
72:15
**date**
1:18 28:6,21 50:5
72:1 79:16 84:16
92:24 93:21 100:23
**dated**
1:12 28:24 29:16
31:1 32:15 36:1
41:4,24 49:4 58:16
58:24 60:10 68:8,19
70:14 71:4 82:12
83:13,24 85:3 87:14

91:2,5 92:5
**dating**
14:7
**Davis**
1:25 5:4 17:9 96:24
97:2,24
**day**
95:24 98:10
**December**
85:15
**decision**
77:13,15,25 80:5,7,8
80:14,15,17,19 81:1
81:2,7,14,21,25
**declare**
98:2
**dedicated**
45:18
**deemed**
22:5
**defendant**
2:7,16 5:2,19
**defendants**
1:14 5:22
**define**
30:7
**defined**
11:15 58:2
**delaying**
42:24
**deliberate**
43:21
**Deliberative**
71:11
**deliverables**
21:15
**demolition**
46:4
**demonstrate**
39:20
**department**
3:11,16 8:16,25,25
9:2,6 15:21,23,25
16:4 20:22 28:10,21
30:4 39:16 44:16
52:3,5 65:14 92:14

**depend**
93:10
**depending**
63:24
**depends**
93:8
**deponent**
25:19 39:4 58:8
86:21
**deposed**
6:1
**deposited**
14:22
**deposition**
1:15 4:8 5:1 6:4,24
7:11,13,18,21,25
8:6,11 9:9 42:13,24
43:4 70:11 75:23
94:2 95:18 97:5,8
97:13,16 99:1 100:1
**depressurization**
38:4,6,7 50:7 52:22
54:7,9 79:22 81:16
82:19 83:4
**Deputy**
3:12
**deriving**
78:3
**describe**
6:12 75:11 89:15
**described**
21:15,25 53:21 77:25
**describing**
36:2
**DESCRIPTION**
4:7
**desk**
6:14,15,19,20
**determination**
9:15 40:8,11 58:12
82:12
**determinations**
75:2
**determine**
76:13 83:22
**Diego**

3:13
**difference**
6:12
**different**
49:9 54:10,12 62:19
63:17,22,23 64:1
81:3
**diligence**
10:24 11:2,8,17
12:22 13:23
**dinner**
95:24
**direct**
65:22
**direction**
97:11
**disagree**
39:24
**disclosable**
72:16
**discovery**
43:12
**discrete**
45:15
**discussed**
55:20 70:10 77:19
94:2
**dispute**
93:16,16,21,25
**disregard**
49:11
**District**
1:1,2 5:21
**document**
8:18 20:15,18,19,25
21:13,17 27:10,12
27:13,18 28:2,16
32:3,13 33:10 34:3
37:10,11 40:13 42:3
42:6 44:15 52:11
58:15,16 68:7 70:14
71:1,3,5,6,10,16,20
71:23,25 72:16,19
72:23 74:8,10,11
80:5,7,8,8,19 81:2,7
81:14,22,25 85:2,14



88:6,25 89:2,20
90:25 91:2,8 96:15
**documentation**
53:19
**documents**
8:1,14,17,22 9:3,6,8
9:11 30:16 53:20,25
54:2,6 84:18 85:24
86:1,1,4 88:16 89:5
89:9 90:4 91:19
92:13,23 96:5,6
**doing**
11:7 42:23 43:1,15
64:12
**Domingue**
2:17
**Douglas**
3:8
**Dow**
2:11 4:3 5:14,18 8:5
8:12 11:24 12:10
14:17 15:8 18:2
19:2,14 20:5 21:12
21:21 22:17 23:20
24:2,20 25:6,11
26:2,6,17,22 27:2,8
27:16,21 28:17 30:1
30:8,14,22 31:12,13
31:16 32:5,9 33:2,6
33:12,15,20 34:5,9
34:24 35:6,13,20
36:5,14,20 37:8
39:7 40:5,9,17,25
41:1 42:4,9,11,15
42:16,23 43:1 44:2
45:16,25 47:11,15
48:13,20 49:1,16
50:20 51:8 52:6,19
53:4,11 54:22 55:12
56:3,14,25 57:11
58:3,14,21 60:13,23
61:12 62:16 63:2,10
63:21 64:11,21
66:22 67:15,25
68:13 70:12,23
71:13 72:8,24 73:9

75:3,13 76:18 78:9
79:19 81:6,13 82:1
82:14,22 83:17,18
85:7,12 86:17,24
87:17 88:13,23
89:17 90:12 92:8,25
93:9,13,19 94:4,13
94:23 95:1,8,20
96:3,9,11,19,20
**downloaded**
37:10
**Dr**
54:1
**draft**
51:3,4 71:9,21 72:19
**drafted**
73:11,14
**drafting**
72:22
**drop**
7:10 8:2 20:6 26:18
70:13 83:12
**dropped**
20:7 27:3 36:24 49:3
49:12 87:13
**dropping**
40:19
**DTSC**
4:20 16:5,7,8,15,21
17:14,16,19 18:13
18:15 21:6,8,13
22:14 27:25 28:7
31:2,5 32:15 34:17
37:12 46:5,19 47:5
47:7,10,11,21 48:7
48:11,21 50:9,15,23
51:6 52:5,12,14,24
53:24 57:15,23
59:18 60:1,10,17,22
60:25 61:1,2,4
64:14 65:18 66:25
67:5,18 69:8 73:2
76:9,12,13,16 77:1
77:6,7,20,24 78:24
78:25 79:3,14 81:11
82:17 83:2,8 84:4

84:15 85:8 87:8,10
89:2,6,19 90:5,7
91:6,15,18 92:6,12
92:22 93:4,15,17,24
96:5
**DTSC's**
35:1 36:7 86:9
**due**
10:24 11:2,7,17
12:22 13:23 69:25
70:3,4
**duly**
5:9 97:6
**duties**
16:12,21 23:13,22

---

## E

**e-mail**
4:12,18 37:12,17
38:12 40:11 43:19
58:23 59:2,11,11
65:12 68:17,18,20
68:23,24 69:8,18,20
69:24 70:9 83:19,22
85:7,14 87:8 91:4
91:10,25 92:2,5,22
93:1,2,2,22,25 94:6
94:21
**E-mails**
4:15,16,19,21
**E1527**
11:1
**Earl**
3:6
**earlier**
35:14 70:11 75:15,23
94:2
**early**
56:17 57:2
**earned**
9:22
**edited**
71:6,17
**Edlin**
2:8
**Edson**

2:22
**education**
9:21 17:1
**effective**
76:14
**either**
86:8 90:17
**element**
77:8
**Embarcadero**
2:13
**emerging**
17:10
**Emeryville**
12:17
**employees**
63:18
**employer**
61:3 63:17
**employment**
10:4 12:12
**encompassed**
41:21
**endangerment**
9:15 51:12,17,23
52:4 58:12 84:1,20
91:23
**enforceable**
9:14 20:21
**enforcement**
91:21 93:17
**engineer**
39:15 40:6 54:2 59:3
**engineered**
38:8 53:21 54:12
**engineering**
39:15 53:19,20
**ensure**
47:14
**entered**
26:12 28:6,10 30:17
**entering**
30:3
**entirety**
76:1,6
**entitled**



6:9 22:2
**enumerated**
24:24
**envirastore**
72:14
**Environ**
12:16
**environment**
56:2 87:11
**environmental**
9:23 10:2,14,15,24
11:9,17 12:11,15,19
12:21,22,23 13:4,5
13:6,23,24 14:19
15:15,20 16:8,19,21
33:5 55:3,25 59:4
73:2
**equivalent**
84:17
**Eric**
87:18 89:22
**ERM**
13:19,21 14:3,7
15:18
**ERM-West**
13:17
**ERRATA**
99:1 100:1
**Esq**
2:5,11,14,20,24 3:5
3:10,15,17,18,18
**essentially**
75:16,18
**established**
46:13
**estate**
11:11
**estimate**
6:10,13,18,19
**et**
76:15
**evaluate**
15:10 50:9 53:17,24
**evaluated**
52:12,14,23
**evaluating**

14:10
**evaluation**
53:3,14 54:3
**events**
22:13
**eventually**
47:19
**everybody**
95:2
**evidence**
30:16 34:20 92:19
**exact**
27:10 76:24 83:6
**Examination**
4:3 5:13
**EXAMINATIONS**
4:1
**examined**
5:9 97:4
**example**
38:10 56:1 62:14
63:19 80:9
**examples**
66:3
**excavation**
48:22 50:5,14,22
51:5
**excuse**
7:12 9:25 23:1,2
79:17 81:2 84:12,14
90:14
**EXECUTED**
98:10
**exhausted**
95:25
**exhaustion**
77:13
**exhibit**
4:7 8:6,7,9 20:7,10
21:15 22:2,2,3 24:4
24:8,22 25:4 26:19
27:1,3 31:12,19,21
32:1 35:25 36:2
37:3,4 40:19,23
49:7 58:17,18 60:9
68:10 70:13,18

83:12,16 85:6 87:13
87:16 90:22
**exhibits**
4:6 8:8
**exist**
45:23
**existing**
22:9
**expecting**
78:24,25
**expedited**
44:11
**experience**
14:15 93:17
**experiences**
14:21
**expert**
40:3 45:8 55:18 56:7
81:19
**explain**
45:6
**explanation**
40:2 54:21 93:12
**exposure**
84:6
**expound**
77:14
**extension**
83:3 92:13
**extensions**
84:23 85:21,23 86:1
86:3,7,19 87:4,6
**extent**
11:23 22:7 24:1,12
55:24 84:5 90:3
**external**
73:25
**extraction**
37:21,23 52:9 79:22
**extractions**
50:7

---
**F**
---

**face**
82:3
**fact**

34:20 79:6
**factor**
64:24 65:10
**facts**
92:19
**fair**
19:20 22:23 23:3
28:9 29:19 40:10
46:14 71:19 72:18
81:15
**fairly**
6:24 43:16
**familiar**
18:19 19:11,16,18
87:25
**far**
11:25 24:3 39:8
74:12 77:21 78:11
**February**
1:18 5:4 83:1
**federal**
5:20 11:15,16 12:5
19:6,7 74:13,22
97:16
**feel**
40:7 49:4 68:24
82:23 83:20
**figure**
32:6
**filed**
84:4
**final**
72:11
**financial**
11:11
**find**
22:6
**fine**
12:2 48:18 95:8,11
96:18,20
**finish**
56:16
**firm**
13:14
**first**
6:4 10:7 14:8 16:7,8



28:16 32:14 37:7
39:10 49:21,22
69:13 85:8 91:9
93:3
**five**
15:17
**flat**
48:2
**flow**
38:9
**folks**
58:25 89:22
**follow**
43:6 66:15 74:21
75:5
**followed**
22:4 74:13 82:6
**following**
59:11
**follows**
5:10
**foregoing**
97:5,12,15 98:3
**Forestie**
3:7
**form**
33:17
**formal**
17:1 93:16
**formally**
69:4
**former**
87:21
**forth**
97:9
**found**
12:4 19:6
**foundation**
24:16 25:2 30:5
33:10,22,23 34:19
35:10 36:11 42:17
43:8 48:9 52:1,16
56:8 57:19 60:18
62:23 64:4,15 67:4
67:20 75:7 78:8,10
80:24 82:8 86:14

**foundational**
34:2
**four**
15:24 95:15
**fourth**
31:3
**framework**
19:21
**Francisco**
2:9,13,23 3:4 13:18
**free**
49:5 68:24 82:24
83:20
**front**
40:16 43:12
**frustration**
79:10 86:8,23
**fulfilled**
23:14 24:6,25 84:14
**full**
97:13
**fully**
24:18
**funding**
65:24
**further**
97:15,19

---

### G

**G**
1:10
**Gallagher**
2:8
**Garibotti**
1:9,10,11 2:16
**gathering**
8:21
**general**
3:12 17:17,23,25
18:23 20:1 29:8
30:11 46:21 49:21
50:3 55:18 59:5
69:1 78:1 89:4,10
**generally**
19:11,16
**generate**

12:25 13:3
**getting**
95:22
**give**
83:6 90:25
**given**
29:16,17 75:22 79:15
90:17 92:16 94:6
**giving**
6:5
**go**
6:3 9:20 13:10,14
21:4 29:9 31:17
32:6,17 78:10 83:20
84:2 91:24 96:16
**goal**
55:5
**goals**
55:10
**goes**
82:2
**going**
6:3 7:9,10 8:1,2 16:3
20:6 21:1 26:18
28:5 43:22 48:14
49:5 68:16 70:13
83:12 85:19 90:14
95:4
**Good**
5:15
**governing**
57:24 91:22
**graduated**
10:5
**grant**
65:24 66:9,12 87:6
**granted**
84:23 85:23 86:3
**granting**
85:20 86:6,19 87:4
**grants**
66:4
**Great**
20:12
**Greenfire**
2:3

**ground**
6:4 14:23 15:3,12
**groundwater**
54:17
**guess**
6:10,13,14 19:3 26:7
57:12 74:15 82:25
**Gurnee**
3:7

---

### H

**H**
65:10
**happened**
32:6 68:15
**happy**
33:6
**HASP**
69:24,25 88:10 92:7
**HASPs**
92:7,10
**hazardous**
11:3,20 13:25 14:1,2
14:4,10,16,21 15:1
15:2,11 16:13,14,24
16:24 17:3,4 18:6
18:10 19:8,23 20:4
23:11 39:14 47:12
55:1 57:22,22 58:1
62:13,13 63:8,8
65:17 80:12,12
**heading**
49:21
**health**
56:2 57:15,25 58:5
59:21 60:2,11,11,16
60:21,24 61:1,2,4,9
61:13,19 62:3,7,14
62:17 63:3,7,19,23
63:25 64:8,9,13,20
64:23 65:1,5,13,19
69:25 79:1,15 84:24
84:25 85:9,10,18
87:10,20 88:3 90:1
91:16 94:15
**Heckman**



2:12
**held**
72:20
**hereto**
98:6
**hereunto**
97:22
**high**
9:21
**highlight**
29:12 59:13,17
**highlighted**
84:9,11
**highlights**
74:8
**historical**
51:14 67:12
**history**
56:15
**holds**
76:1
**hopefully**
8:3 96:1
**hour**
7:3
**hours**
43:25 95:16,19
**Hsu**
2:22
**Hughes**
3:19
**Huie**
2:8
**human**
56:1 79:15 87:10
**Hurtado**
3:15 8:17 11:21 12:7
   14:12 15:4 17:23
   18:23 20:1 21:10,17
   22:15 23:16 24:17
   25:7,19,21,24 26:13
   27:5,9,20 28:12
   29:22 30:11,19 32:2
   32:8 33:1 34:8,19
   34:22 35:2,9,22
   36:9,16 39:3 40:1

40:12 44:6 45:7,19
   46:21 47:9 48:18,24
   50:16,25 51:24 53:6
   54:20 55:7,17 56:7
   56:19 57:5,18 58:7
   60:4 61:6 62:9,20
   62:23 63:5,13 64:2
   64:15 66:18 67:4,20
   70:5,19,22 71:11
   72:3,21 73:5 74:23
   75:7 76:3 80:22
   81:18 82:7 86:11,14
   86:20 88:6,18 89:8
   89:12 90:9 92:3,18
   93:5,11 94:8 95:4
**hygienist**
65:16
**hyperlink**
69:20
**hypothetical**
45:8 56:20 57:19
   62:10,21 64:3 80:23
   92:20 93:6,12

---

**I**

**I-A-N**
5:25
**Ian**
1:16 4:3 5:1,8,25
   21:10 28:1 34:8
   37:16 92:3 95:6
   97:5 98:2,15 100:23
**identify**
32:12
**II**
13:5
**immediately**
10:11
**imminent**
9:15 58:11 91:23
**impact**
39:21
**impacted**
34:15
**impetus**
92:1

**implementing**
11:16
**implication**
64:25
**implications**
87:10
**important**
46:19 47:8,11 55:21
**impose**
56:1
**inability**
68:4 69:2
**inadequate**
65:13
**include**
23:10,13,22
**included**
31:6 53:18 60:11
**includes**
28:20 32:13
**including**
10:25 11:12 14:3,7
   46:4 53:19 55:2
   56:23 67:9 91:21
   94:1
**income**
78:3
**incomplete**
45:7 56:19 57:18
   62:10,20 64:2 80:22
   85:11,17,17 92:20
   93:6,12
**Incorporated**
10:16 13:17
**INDEX**
4:1,6
**indicate**
95:12
**indicated**
95:17
**indicates**
71:24
**individual**
76:7
**individually**
1:11 36:3

**individuals**
69:1
**industrial**
65:15
**INFC**
90:21,23
**infiltrated**
15:3
**informal**
93:16,20,25
**information**
25:9 35:16 36:4
   51:14 56:10 69:8,10
   84:16
**informed**
90:17
**informing**
89:25
**initial**
71:8,9,25
**initialed**
98:5
**initiated**
71:20 96:8
**ink**
98:5
**inquiries**
10:25 11:10,14
**insert**
52:10
**insofar**
76:7
**installation**
52:8
**installed**
37:23,25 38:14,16,17
   38:19,22,24 39:1,9
**instance**
18:9 88:24 89:25
   94:12
**instances**
15:2 73:22,24 90:16
**insufficient**
39:20 90:5
**Insurance**
1:12 2:21



**intended**
47:13 53:2
**intending**
69:3
**interested**
97:21
**interfere**
43:14,23
**interim**
31:6 50:8,10 52:11
**Internet**
82:20
**interpose**
33:9
**interpreting**
43:16
**interrupt**
31:11 34:3 59:16
**interrupting**
25:23
**interruption**
39:2 89:13
**intrusion**
44:4,11 47:20,24
  61:11 70:10
**investigating**
19:22
**investigation**
14:1,4 17:11,21 18:9
  18:14 23:11 30:9
  44:12 46:3,19 47:4
  47:20,23,24 55:1
  57:16 61:11 68:5
  70:10
**investigations**
67:18
**invite**
75:17
**invoices**
18:6,11,14,15
**involve**
13:25 15:2 85:8
**involved**
14:4,9 96:5
**involves**
14:21

**ISE**
92:17
**issuance**
91:22
**issues**
96:1
**item**
76:8
**items**
36:2 76:17 77:9

---
**J**

**J**
28:1
**JAE**
1:7
**James**
3:5
**Jamie**
1:25 5:4 26:2 31:20
  96:24 97:2,24
**January**
87:14
**JAY**
1:8,8,8
**jbauman@selmanl...**
2:24
**Jesse**
37:14,16 39:10,12
  54:1
**Jesse's**
37:15
**Jiminez**
96:23
**jmink@wfbm.com**
3:4
**John**
2:24
**join**
21:19 23:18 24:17
  25:20,23 26:15
  28:14 29:24 30:12
  30:20 34:21 35:4,11
  36:11,17 39:5 40:4
  40:4,14 44:8 45:10
  45:21 46:23 50:18

51:1 52:1 53:8 55:8
55:19 56:9,21 57:7
57:20 58:9 61:8
62:11,22,24 64:5,17
66:20 67:22 70:7
74:25 76:5 80:25
81:20 82:10 86:13
86:15 88:8,20 89:11
89:14 90:10 92:21
93:7,14 94:9
**Jones**
2:20
**judge**
42:12 43:5
**judge's**
33:16,25 42:19,21
  43:3,18,21
**June**
27:25 29:10,16 31:1
  32:15

---
**K**

**Kate**
3:2
**Katie**
3:18
**keep**
25:22 31:20,21 33:13
**Keller**
2:12
**Kibel**
68:19,20 69:14,16,21
  78:13
**kind**
77:17
**knew**
72:13 77:21
**know**
6:16 7:1 9:4,5 12:1,3
  12:9 22:16,18 24:7
  28:6 29:1,25 30:13
  30:21,23 34:23,25
  35:1,5,12 36:13,15
  36:19 37:15 38:21
  38:23 39:6 42:4
  43:3,11,15 45:2,3

48:4,10,25 50:12,19
61:22 64:14 65:3,4
66:5,14,21 69:14
71:1,3,18 74:16
75:14,18,22 79:9
81:15 83:21 84:17
85:25 87:3,5,7
88:14 89:23 94:22
**knowledge**
24:23 25:3 36:3
  37:22,24 38:15 48:7
  51:5,16,20,21 52:14
  52:23 54:5 60:15,25
  66:14 69:7,9 81:11
**known**
9:13 12:16 16:10
  20:20,21 80:14 84:5
**KWON**
1:8,8,8,9

---
**L**

**labeled**
27:4
**laboratory**
10:12,13
**lack**
78:7
**lacking**
33:10
**Lacks**
24:15 25:1 34:19
  35:10 36:11 52:16
  56:8 57:19 62:23
  64:3,15 67:4,20
  75:7 80:24 82:8
  86:14
**Larry**
78:13
**late**
93:3
**lateral**
55:24
**law**
2:3 74:13,22
**laws**
11:20



**lawyer**
75:2
**leave**
57:12
**legal**
1:23 11:21 12:7
18:24 19:24 23:16
25:7 26:14 30:19
35:9 40:2 57:5 60:4
74:23 75:1 80:23
81:18 82:7 88:19
89:12,21
**legally**
47:14
**Leichenger**
2:22
**lengthy**
40:2 54:21,23 93:11
93:13
**leniency**
92:12
**let's**
7:16 21:6 22:18 23:2
28:9 40:18 49:2
57:13 78:10 83:24
90:15
**letter**
4:10,11,13,14 27:25
29:10,11,16 30:25
31:2,3,9,18 32:7,11
32:12,15 34:13
36:22,24 41:2,4,7
41:11,24 43:18 44:3
44:6,9 46:2,9 49:3,4
49:5,18,19,20,22,23
49:25 50:3 51:2
52:18 53:2,17 54:24
55:21 78:22 79:17
**level**
79:10
**levels**
54:16
**licensed**
40:5 59:3
**lifecycle**
81:3

**limited**
13:5 43:24
**limiting**
64:24 65:10
**Lindsay**
3:18
**line**
34:4 99:2,4,6,8,10,12
99:14,16,18,20,22
99:24 100:2,4,6,8
100:10,12,14,16,18
100:20
**list**
24:10 78:15
**listed**
24:3 25:4 35:25 60:9
**listing**
79:4
**lists**
22:3 41:19
**litigation**
5:20
**little**
9:20 77:17
**LLP**
2:12,17,22 3:3
**Lobato**
3:18
**local**
42:14
**located**
20:23
**location**
1:20 38:20
**long**
10:17 13:11 49:19
57:21 85:7
**look**
32:10,19 46:1 58:22
78:22 95:20
**looking**
8:10 27:10,14,17
85:13
**looks**
37:15 59:19,20 68:22
87:25 88:1,2

**lost**
82:20
**lot**
14:20 15:1 68:15
96:4
**loud**
32:24 33:1 40:16
**lunch**
7:3 95:7
**Lynne**
1:9,9,10 2:16

_____

M

**Madam**
8:5
**magistrate**
43:13
**Magna**
1:23
**maintained**
10:11
**majority**
14:14
**making**
23:13 33:14 40:7,11
42:9 43:1 76:20,25
**manage**
16:23
**management**
17:12 46:11 61:16
68:3
**manager**
16:10,13 17:14,16,19
18:5 22:21,24 23:4
23:7,9,21 61:18,20
61:23 65:22 66:1
73:2,12,15,21 74:18
79:25 84:19
**managers**
61:25
**mandatory**
90:8
**manipulate**
8:3 20:14
**marathon**
6:25

**March**
91:5,11,15,19 92:5
94:7 97:23
**Marie**
1:9 2:16
**Marikka**
3:19
**mark**
8:5
**marked**
8:9 20:10 27:1 31:12
32:1 37:3 40:23
49:7 58:18 68:10
70:18 83:16 85:6
87:16 90:22
**Mason**
3:7
**materials**
14:16,22
**matter**
89:4 91:20
**matters**
20:3 73:19
**McDaniel**
78:13
**mean**
6:12 8:25 18:8 25:12
30:9 33:16 42:6
52:5 53:2,14,14,15
59:16 63:25 72:17
75:12 77:15 78:11
83:7 89:16,20 93:2
96:4,5
**meaning**
36:2
**meaningful**
95:23
**means**
82:18 96:14
**meant**
52:18 54:8 65:9
**media**
55:3,25
**meet**
88:4,10,16,25 89:7
90:2,6 94:3,5,11,17



95:17
**meeting**
4:17 22:9 66:13
70:25 72:5,12,20
73:13,17,18,23,24
74:2 75:25 77:20,22
78:12 79:17
**memo**
68:17
**memorandum**
4:20 73:11,14 87:18
87:24
**memorializes**
80:9
**memos**
73:3
**mentioned**
26:4 53:25
**mere**
77:6
**met**
94:11
**migration**
67:1,7,14
**million**
77:13
**mind**
7:2 26:24 32:22
48:16 78:20 80:21
83:5
**minimum**
88:11 90:2
**Mink**
3:5
**minutes**
4:17 7:2 70:25 72:6
72:12 73:13,17,18
73:23 74:2 75:25
79:17 95:5,7,11
**mischaracterize**
79:8
**misquote**
75:16,21
**Misquotes**
39:3 58:7 86:20
**misstates**

25:19 35:19 42:2
60:6
**misstating**
42:5
**mitigation**
16:9 79:24
**mobilizations**
45:14
**moment**
7:17 31:17 91:3
**monetary**
17:20
**monitoring**
39:19
**Montgomery**
2:23
**month**
72:6
**Moore**
2:22
**morning**
5:15 43:19 95:14
**move**
26:9 40:18 78:6
**moved**
91:20
**multiple**
45:12,14 60:21 62:7
62:14,15,18 63:7,16
64:7 71:7 85:23
**muted**
21:10 92:3
**mystery**
31:1

_____

**N**

**name**
5:16,18,24,25 37:15
52:3 66:12 69:21
97:23
**named**
97:5
**narration**
40:2
**Narrative**
93:12

**National**
18:20 19:4,5,17,19
19:21 20:2 57:1,10
**natural**
67:7
**nature**
84:5
**NCP**
57:3
**near**
72:1 77:11
**nearly**
46:5,7
**necessarily**
77:23
**necessary**
22:5 55:16,16 76:15
89:20
**need**
7:1 43:2 48:14 78:6
78:21 95:18
**needed**
7:4
**needlessly**
42:12
**Negherbon**
37:14,16 39:11,12
40:11 54:2
**neither**
97:19
**never**
6:15 26:24 69:9
78:20
**new**
2:23 26:21,22
**Newman**
2:22
**Nido**
1:4 4:9 5:22 9:14
20:22 21:23,25
22:11 23:15,23 24:6
24:14,25 25:5,16
26:10 28:7,11 29:8
29:20 30:2,16 35:15
41:25 44:10 48:22
50:14,23 51:17,22

58:5 59:5 60:1,10
60:15,21 61:5 65:23
66:13,15 68:3,25
69:6,9,16 72:13
74:20 77:1,2,23
78:1 79:2,11 82:4
84:22 85:19,23
86:10 90:17 92:1,16
93:21
**Nido's**
75:5,10 76:1 77:12
**Northern**
1:2 5:20
**note**
62:2 78:20,21
**noted**
98:5
**notes**
73:24 97:14
**notice**
4:8 7:10,13,19,21 8:6
**November**
68:8,19 70:14 71:4
71:24 72:2 74:4,14
75:25 78:16 83:13
83:19,24
**number**
11:1 17:7 21:6 22:3
27:12 29:7 31:25
32:18 37:13 55:9
70:20 81:2 91:6
**numbered**
9:3
**numbers**
27:6,8,25 31:21

_____

**O**

**O'Hanks**
1:7 2:7 5:19 6:8 8:13
**Oakland**
10:16
**oath**
6:5
**object**
6:17 25:7
**objection**



11:21 12:7 14:12
15:4 17:23,24 18:23
19:13,24 21:17
22:12,15 23:16,25
24:15 25:1,18 26:13
28:12 29:22 30:5,11
30:19 33:13,15,23
34:18,19 35:2,9,22
36:9,16 39:3 40:1
40:12 42:2,10 43:20
44:6 45:7,19 46:21
48:8,23 50:16,25
51:24 52:15 53:6
54:20 55:7,17 56:7
56:19 57:5,18,20
58:7 60:3,4,18 61:6
62:9,20 63:13 64:2
64:15 66:18 67:4,20
70:5 71:11 72:3,21
73:5 74:23 75:7,17
76:3 79:12 80:22
81:10,18 82:7 86:11
86:20 88:6,18 89:8
90:9 92:18 93:5,11
93:23 94:8,18

**objections**
33:9,16,17,21,25
34:2 42:6,16,18
43:2,8,17 45:19
47:9 52:25 63:5

**objective**
94:14

**objectives**
94:11

**obligations**
63:18

**observed**
54:17

**obviously**
62:6 89:21

**occasions**
89:3

**occur**
47:14 56:23 57:4
80:18 81:2,4

**occurred**

77:9

**occurring**
65:1

**occurs**
56:17 80:20

**October**
4:14 49:13,18 50:22
58:16,24

**off-site**
44:4

**offered**
17:7 75:20

**office**
15:25 39:16

**offsite**
44:11 47:20,23 61:11
67:8 70:9

**Oh**
23:1 26:18,25 32:5
39:8 49:10 59:17
86:25

**okay**
5:18 6:3,8,23 7:9,9
7:16,21,24 8:11,16
8:21 9:5,8,17,19,25
10:4,19 11:25 12:11
13:13 14:18 16:4,11
17:1 18:17 19:10,20
20:6,12 21:2,22
22:1,18,23 23:7
24:3 25:6,12 26:2
26:18,18 27:20,24
28:5,23 29:9,16
30:24 32:10 34:12
35:21 36:6,21,24,24
37:9,19 38:1,11,21
39:8,8,18 40:10,19
41:6,14 42:11 43:6
43:10 44:3,24 45:17
46:1,12,17 47:17
48:1,5,13,14 49:2,2
49:11,17,25 50:3,21
51:9 52:20,21 53:12
53:23 54:5,14,14
57:1,12,12 58:15,15
59:17 64:22 65:9,20

66:23 68:1,7,7,14
69:11,22 70:12,12
70:14,22 71:4,8,14
71:23 73:16 74:7
76:19 77:10 78:5,10
78:19 79:20 80:17
82:15,23 83:11,11
84:21 85:2,7 86:2,6
86:25 87:3,12 90:14
91:14 94:23 95:8
96:3,17

**Omo's**
87:21

**once**
85:1

**online**
72:14

**onsite**
46:4

**oOo---**
3:19 4:5,22 5:7

**open**
7:12,13 8:3 20:9,11
37:1 40:21 49:5

**operated**
78:2

**operation**
78:4

**operations**
58:1 65:18

**operators**
84:5

**opinion**
19:25 39:25 40:3
45:8 55:18 56:8
75:20,24 80:1 81:19
89:21 90:1

**opinions**
95:3

**opposed**
77:15

**order**
9:16,16 43:5 57:24
58:11,12,13 90:21
90:23 91:23 92:17

**original**

71:21 97:16

**outcome**
97:21

**outline**
45:23

**outlined**
69:8

**outlines**
44:17

**outlining**
45:12,13

**Outside**
17:1

**overarching**
45:3

**overbroad**
24:15 25:1 52:16
56:9 63:14

**oversee**
16:23 48:21 50:9

**overseeing**
23:10

**overseen**
50:23

**oversight**
18:16 21:8 31:4 36:8
46:5,19 47:6,8,10
47:12 51:7 67:23
76:9,22 77:1,24
81:12

**owners**
84:5

**ownership**
78:3

---

**P**

**p.m**
1:19 5:3 83:25 91:5
91:19

**Pablo**
20:24 21:1

**pace**
79:15 86:9 87:1,9
92:16

**page**
4:2,7 28:16 32:14



37:7 40:16 46:1
49:21 51:10 52:7
54:14 77:11 78:22
85:8 88:1,1 99:2,4,6
99:8,10,12,14,16,18
99:20,22,24 100:2,4
100:6,8,10,12,14,16
100:18,20
**pages**
32:13 96:6
**palaeochannel**
67:10
**Pangea**
59:4 60:20 65:23
85:20 88:15,24 89:5
90:4,17
**paragraph**
21:4,7 31:3 32:11,18
32:20,23 33:4 34:11
82:16 84:2,12
**part**
8:21 11:10 14:9 17:8
19:7 22:4 26:11
43:22 47:13 57:23
67:23 73:11,14
76:10 78:7 79:10
80:12 81:24 86:9,9
**particular**
12:20 74:2
**parties**
18:14 73:25
**partners**
29:8
**partnership**
1:4,4 21:23 29:8 59:6
69:1 78:1,2
**party**
97:20
**pathway**
67:16
**pathways**
67:7,13 84:6
**Paul**
68:19 69:14,15,21
78:12
**pay**

68:4 69:2
**PCE**
67:2
**PDF**
32:3
**PEA**
51:13 79:4 84:3,13
84:17,19
**penalties**
91:24
**penalty**
98:1,2
**people**
71:7 91:11
**perform**
16:12
**performance**
11:17 90:18
**performed**
10:24 11:9 12:22
13:23 50:5 51:6
**perjury**
98:1,3
**permeable**
38:13 50:6
**permits**
53:19
**person**
6:16 23:2
**personally**
48:12
**pertaining**
81:8
**pertains**
97:15
**petition**
91:20
**phase**
13:4,5 56:12
**phases**
45:14 62:19 64:1,7
**phonetic**
42:12
**phrase**
11:13
**physical**

38:20 65:16 80:11
**physically**
54:10,11
**piece**
15:3
**Piziali**
28:1,24 29:2,6,7,17
30:25 31:4 34:14
41:11 47:3 49:20
50:1,11 52:9 59:9
78:12
**place**
97:9
**places**
39:21
**plain**
6:11 43:18
**plaintiff**
1:5 2:2 5:22
**plan**
18:20 19:4,5,17,19
19:21 20:2 41:15,20
41:20,25 44:5,11,14
44:15,18,21,25 45:3
45:5,17 47:20,23
51:3,4,12 57:2,10
57:15,25 58:5 60:11
61:10,13 63:4,19
64:8,13,20 65:2,6
69:24 70:1,2,3,8,10
79:1,2,5 84:24 85:9
85:10,10,11,17,18
87:20 88:3 90:1
91:16 92:7,10 94:15
94:16
**plans**
45:12,22 48:6,11
53:19 59:22 60:2,12
60:16,22,25 61:2,2
61:5,19 62:3,7,15
62:17 63:7,24 64:1
64:10 65:13,19
84:25 91:17
**please**
5:23,24 7:1 14:24
18:1,8 20:9 28:15

30:7 32:10,12,18
34:10 37:1 38:1
42:20 43:25 45:6
46:25 51:19 54:19
62:25 71:5 73:8
75:11 80:19 88:22
89:16
**plural**
91:17
**point**
22:20 48:1 55:4 78:2
82:5 92:15 93:20
**pointed**
43:24
**pointing**
47:3 78:23
**points**
81:3
**policy**
57:23 93:15
**portion**
37:6 41:4
**position**
10:8,15 13:8 14:8
15:18 16:7,8,19
**positions**
10:11
**possibility**
67:6
**possible**
45:11 55:10 64:19
**posted**
72:14
**potential**
55:10 56:1 66:3 84:6
**potentially**
14:11
**PRB**
38:11,21,22,23,24,25
**preceding**
22:14 46:10
**preferential**
67:7,13,16
**preliminary**
51:12,17,22 52:4
84:1,19



premise
47:2
preparation
9:9
prepared
57:25
present
3:16
preserved
33:17,22 42:7,18
pressure
38:9
previous
36:12
primarily
11:10
prior
30:3 44:19 60:6
    61:25 93:16 95:17
    97:4
private
15:10,15 18:14
privilege
33:18,23 42:17 43:8
    71:12
probably
6:18 82:3 91:1 95:4
problems
26:25
procedure
19:8,12
procedures
19:16,18 59:22 60:2
    60:12,16 65:13
proceeded
46:5
proceedings
97:17
process
56:18,23,24 57:3
    71:12 80:18,20 82:6
    82:13 96:10
produce
9:6
produced
9:2 89:2 96:5

professional
14:8,15,21 40:6 45:4
    54:2 59:3
program
16:10 32:4 66:11,17
    91:21
programs
66:9
project
10:21,23 13:20,21
    16:10,13 17:12,14
    17:16,19 18:5 22:21
    22:24 23:4,7,9,21
    46:10 61:16,18,20
    61:23,25 64:7 65:22
    65:25 67:24 68:2
    73:2,12,15,20 74:18
    79:25 84:18 93:3
projections
42:18
projects
39:15 66:6
prolonging
42:13
promoted
16:18
promotion
16:15,17
pronounce
37:15 87:19
pronouncing
5:15
properties
11:1,18 14:5,11
    29:14,19 67:8
property
11:6 15:3 17:22
    20:23 67:2 76:22
    78:4
proponent
21:14,22,24 44:10
    93:3
proponent's
21:15
proposed
44:17 45:13

Protection
15:20
protective
39:20 43:5
provide
21:14 63:19
provided
8:17 31:5 43:19 54:1
    54:4,6
provides
19:8
providing
20:13
public
72:14
publicly
72:15
purpose
44:9
pursuant
8:18 35:7 79:2
pursue
93:15
pursued
93:20
put
7:14 29:10 30:24
    31:13,17 49:6,8
    68:8 91:2
Putting
85:2

_____
Q
_____
question
7:6 14:6,24 15:7 19:3
    22:10 23:19 24:19
    26:8 34:2 45:1
    46:24 47:2 51:16,19
    52:13 63:1 73:7
    80:6 82:23,25 84:8
    88:21 91:25 95:19
questioning
34:4 43:14 95:16
questions
33:9 43:23 74:7
quite

8:8
quote
46:2

_____
R
_____
Rachel
43:24
Rafael
3:15 95:10
rafael.hurtado@d...
3:14
raised
79:15
Ramboll
12:16,16,18,20 13:8
    13:11,13
Ray
3:6
rbrody@greenfirel...
2:5
reactive
38:13 50:6
read
26:2,5 32:23,24,24
    33:1,2,4,6 34:8,10
    34:11 40:15 61:24
    68:24 82:21 91:15
    98:3
reading
32:22 34:7
real
11:10 15:3
really
30:25 31:10 89:19
Reason
99:3,5,7,9,11,13,15
    99:17,19,21,23,25
    100:3,5,7,9,11,13
    100:15,17,19,21
reasonable
96:12
reasonably
74:3 77:25
reasons
55:22 63:20
recall



10:7 47:17 61:9,14
61:15 62:5 65:12
66:3,12 70:2 73:22
73:23 86:16,18,22
87:2,23 90:3,16
94:10
**receipt**
91:16 92:6,10,23
**receive**
91:18 96:15,15
**received**
16:15 17:12
**receiving**
87:23 94:15
**recognize**
20:15 87:24
**recollection**
50:13 68:18
**recommendation**
65:15
**recommending**
90:19
**record**
5:24 26:5 42:9 43:10
49:15 58:19 61:21
68:11 70:17 80:14
80:17 82:21 83:15
85:5 95:12,13,21
96:2,17
**records**
61:25
**reduced**
97:10
**refer**
21:1 73:16
**reference**
85:15
**referenced**
51:3,4 70:9
**references**
31:4
**referencing**
85:17
**referred**
50:8 51:5
**referring**

24:7,8 46:8 58:10
59:12 69:15 76:7,9
85:25 86:2 90:25
**refers**
38:13 51:2 54:25
**refinancing**
11:12
**reflect**
86:7,8
**refresh**
68:17
**regard**
65:17
**regarding**
11:16 33:9 84:9
**regulation**
11:15
**regulations**
12:1,4,5 19:6,7 88:12
**regulator**
47:11
**regulatory**
88:4,16 89:7,16
**related**
17:9 18:6,11 97:20
**relates**
14:15 20:23,23 55:20
76:15
**relation**
61:10
**relative**
52:9 66:24 89:5 90:5
**release**
55:2 80:11
**releases**
23:12 84:6
**relieved**
96:23
**remained**
23:9 51:15
**remains**
56:11 57:21
**remedial**
9:16 17:10,11 26:11
50:4 58:13 80:10
81:24

**remediating**
19:22
**remediation**
68:5
**remedies**
80:3
**remedy**
79:23 80:4 81:1,17
82:5,13
**remember**
87:23
**REMOTE**
1:15 5:1
**removal**
31:7 34:17 45:18,24
46:3,20 47:4 80:10
81:23
**remove**
29:13,18
**removed**
34:15 36:7
**removing**
29:20
**repeat**
14:6,24 23:19 25:13
32:18 46:24 51:19
53:13 63:1 72:17
73:7 82:25 88:21
**rephrase**
19:15
**replaced**
64:9
**reported**
1:25 5:4
**reporter**
5:5,12 8:5 26:20
31:23 37:4 39:2
40:24 49:14 58:19
68:11 70:16,21
82:20 83:14 85:4
87:15 94:24 96:17
96:22,24 97:3
**REPORTER'S**
97:1
**reports**
12:25 13:2

**represent**
5:19
**representation**
25:25 65:7
**represented**
77:2 92:5
**representing**
63:17 88:9
**represents**
38:3
**request**
44:10
**requested**
87:9 89:6 90:4 97:18
**require**
66:7
**required**
12:24 54:3 95:22,23
**requirement**
84:3,14 90:7
**requirements**
84:13 88:4,11,17,25
89:7,16,18 90:2,6
**requires**
58:4 76:12
**requiring**
57:15 60:1
**residences**
39:21
**resolution**
93:16,17,21,25
**Resource**
66:10
**respective**
63:18
**responding**
7:22
**response**
80:9,11
**responsibilities**
23:8,10
**responsibility**
61:3
**restoration**
16:9
**result**



94:16
**review**
9:8 18:6,13,15 21:13
44:19 53:18 60:17
60:22 61:24 62:2
76:12,16 77:6,7,21
83:20 87:20 94:20
97:17
**reviewed**
9:12 18:10 71:17
82:17 83:2 89:1
**reviews**
12:23 13:6,24
**revised**
64:8 91:16,18 92:6
**revisions**
52:8
**Richard**
2:5 33:21 42:4
**Richmond**
20:24 21:1
**right**
6:19 18:17 20:6 21:4
26:9,25 31:17 33:19
40:18 42:20 49:10
50:1 69:17 71:22
72:25 74:1,6 80:10
82:16 87:13 95:14
**risks**
56:1
**road**
43:12
**Rohit**
2:14
**role**
18:13 46:11 63:24
65:21 73:1,11,14,20
**Ron**
49:20 59:9,20 78:12
**Ronald**
28:1,24 29:1,6,7
30:25 41:11
**Roseville**
3:8
**Rossi**
2:17

**rule**
42:19 43:18
**rules**
6:4 33:16,25 42:14
42:21 43:3,6,21
**run**
96:1
**Rushford**
3:7

_____
**S**
_____

**S**
65:10
**S-C-A-P**
66:11
**Sabnis**
2:14
**safe**
94:14
**safely**
47:14 76:14
**safety**
57:15,25 58:5 59:22
60:2,11,12,16,22,24
61:1,2,4,10,13,19
62:3,7,15,17 63:4,7
63:19,23,25 64:8,9
64:13,20,23 65:1,6
65:13,19 70:1 79:1
84:24,25 85:9,11,18
87:20 88:3 90:1
91:17 94:16
**sales**
11:6,6
**sample**
79:1
**sampling**
55:2
**San**
2:9,13,23 3:4,13
13:18 20:24 21:1
**Sandra**
3:2
**satisfaction**
77:4,5
**save**

33:8
**saying**
39:18 58:4 64:22,23
69:24 70:4
**says**
21:7 22:4 29:12,17
31:6 44:4 46:7 50:4
51:12 78:25 79:21
82:16 84:3 91:14,15
**SCAP**
66:11
**school**
9:21
**science**
9:22 10:1
**sciences**
9:23 10:2 14:19
**scientist**
13:20,21 16:9,19,21
73:2
**scope**
21:7,16 22:2 24:8
35:25 55:23 60:8
77:4,19
**scoping**
22:9
**screen**
7:19 8:1 20:13 27:12
27:22 29:10,15
30:24 37:2,7 40:22
41:3 49:6,9,17
58:23 59:14 68:9
91:3
**scroll**
22:1 28:15
**scrolling**
51:10 54:14
**second**
77:12
**sector**
15:16
**see**
7:16,18 21:6,9 22:8
23:2 24:5 27:22
28:9,16,23 29:12,15
31:9 32:2,3,7,8 37:6

41:2,4 49:2,10,17
57:13 58:22,23
59:12,13,15,17
69:20 77:16 78:21
83:24 90:15 91:1
96:13
**seek**
10:4
**seeking**
41:25 44:4
**seen**
6:15,17 28:2 30:16
36:21 37:17 49:23
**selected**
81:23
**selection**
82:5,13
**Sellman**
2:22
**send**
68:20,23 92:2 93:1,2
96:15,15
**senior**
16:19,20 39:14 73:1
**sense**
19:1 27:15 41:17
52:17 53:1
**sent**
30:25 32:13 41:10
49:25 69:18 72:6,9
72:10 83:22,25
85:14 91:5,10 92:22
**sentence**
77:12 82:16
**Sentry**
1:12 2:21
**separate**
63:25
**September**
49:4
**series**
19:5
**served**
8:14,18
**Services**
1:23 59:4



**serving**
67:1
**set**
97:9
**seven**
43:25
**Several-page**
49:20
**Shannon**
2:20
**shannon@rdlaw.net**
2:19
**share**
27:7,12 31:18 37:2
40:22 68:9
**shared**
73:25
**sharing**
31:16 49:9 66:3,12
**SHEET**
99:1 100:1
**SHI**
1:8
**SHIK**
1:8
**short**
95:15
**shortcuts**
96:13
**shorthand**
5:5 97:3,10,14
**show**
7:9 8:1 58:15 68:7
**showed**
36:22
**showing**
28:20 69:4
**shown**
92:12
**signature**
28:21,23 83:23
100:23
**similar**
54:10
**singular**
91:17

**site**
13:4,5 16:9 18:7,10
21:2 22:21 23:4,7,9
23:12,21,24 26:11
29:20 30:3,10,17
34:15 37:23,25
38:14,16,18,22,24
39:1,9 41:14,16
44:22,25 45:5,11,12
46:3 47:5,21,25
48:6,11,22 50:23
51:14,18,23 54:11
54:15,18,24 55:4,5
55:10,13,14,15,21
56:5,6,11,11,13,22
57:2,9,14,21,23,24
58:11 59:10,22 61:5
61:18,20,24,25 62:8
62:14,19 63:4,9,16
64:13,19,25 65:5,11
65:17,19,22,24 66:7
66:10,16,24 67:3,8
67:11,14 68:3,5
73:12,15 74:19 77:1
79:24,25 80:3,13
81:8,17,24 84:7,9
84:24 89:6 90:5
**sites**
15:10 16:14,25 17:3
18:15 19:9,22 20:4
47:13
**sitting**
6:14,20,20
**six**
21:5,7
**sixth**
29:13,18
**size**
6:13,18,19
**slab**
38:9
**small**
78:22
**Smith**
78:14
**soil**

31:8 34:15,17 36:7
37:21,22 45:18,18
45:23 48:21 50:5,6
50:6,14,22 52:9
54:17 79:21 83:3
**somebody**
24:12
**soon**
72:19,23
**sorry**
7:17 8:10 31:11,23
32:5,17 38:25 49:11
59:16 62:25 69:11
70:19 89:13 95:2
**sort**
11:7 16:21 75:18
**sorts**
12:25 13:2 16:11
17:6
**sources**
65:23
**speak**
42:21 76:6 89:9
**speaking**
89:1 95:2
**speaks**
21:17 40:13 44:6
88:6 91:8
**special**
39:15
**specific**
18:4
**specifics**
70:3
**speculate**
64:18
**speculation**
15:5 22:13 24:16
25:2 28:13 29:23
30:6 33:11 34:22
35:3,10 36:10 40:13
42:3 48:9,24 50:17
51:25 60:19 61:7
62:10 64:16 67:21
75:8 78:8 79:13
82:9 86:12 88:20

89:9 92:20 94:19
**speed**
8:4 79:11 96:4,16
**spell**
5:23
**spent**
15:15
**spite**
77:6
**spoke**
12:1
**spoken**
29:4
**SSD**
53:22 54:8 80:2 81:8
81:23 83:9
**SSDS**
38:2,14,15,17,19
**stamped**
31:2
**standard**
53:20 89:19
**stands**
37:21 69:25
**Stanton**
69:16 78:12
**start**
27:6 56:16
**started**
72:19 82:13
**starting**
24:24
**starts**
27:24 37:12 84:13
**state**
5:6,23 15:20 17:9
27:6,8 40:6 47:11
54:15 66:9 74:13,21
85:20 98:11
**stated**
31:4 68:25 86:18
88:11
**statement**
39:24 50:11 74:12,17
75:22 76:20 77:14
77:17 84:9,11 86:8



**statements**
76:25
**states**
1:1 12:5 19:6 21:13
34:14 46:2 49:22
77:12 82:3 91:7
**statewide**
66:6
**stating**
43:10 78:23
**statute**
11:16,19,19
**step**
57:3
**step-wise**
19:8
**stipulate**
33:12 42:19
**stop**
31:16 59:9,21 64:23
65:16,17
**strategies**
94:1
**stream**
67:12
**streambed**
67:11
**Street**
2:3,9 3:3
**strike**
51:20 78:6
**structures**
46:4
**studies**
67:18
**stuff**
43:9
**sub-slab**
38:4,5,7 50:7 52:22
54:6 79:22 81:16
82:19 83:4
**Subaccount**
66:11,17
**subject**
55:14
**submission**

41:20 85:9 93:4
**submit**
41:15 44:10 58:5
60:1,16 69:7 88:15
89:5 90:4,14,15
**submittal**
22:8 44:16 52:4
**submittals**
52:3
**submitted**
44:19 60:20,21 65:14
69:9 84:16 85:11
88:3,10,24 90:1
**submitting**
66:16
**subpoena**
8:11,14,18
**subscribed**
97:23
**subsequent**
12:12 13:8
**substance**
15:21 16:5,14 20:22
39:17
**substances**
3:11,16 9:1 11:3 14:1
14:2,5,10 15:1,2,12
15:23 16:1,24 17:3
17:4 18:7,10 19:9
19:23 20:4 23:11
28:21 39:14 47:13
55:1 57:22 62:13
63:8 80:12
**substantial**
9:15 14:9 54:16
58:12 91:23 95:5
**subterranean**
66:25 67:9,17
**sued**
5:22
**sufficient**
87:6
**suggested**
77:7
**suggesting**
52:8

**suggestion**
66:15
**Suite**
2:3,9,13,18,23 3:3,8
3:13
**summary**
26:1
**super**
52:20
**supervision**
34:17 35:1 61:16
97:12
**supervisor**
66:4
**sure**
18:3 23:13 27:10,11
34:5 36:23 57:8,8
67:10 84:15 87:19
95:1
**surmise**
85:22
**surrounding**
39:21
**suspend**
43:4
**SVE**
37:19,21,24 39:8,19
39:20 52:13 53:22
53:23 54:8 80:2
81:8,16,22 82:18
83:9
**sworn**
5:9 97:6
**system**
37:23,24 38:4,6,7
52:10,12,13,23
53:21,22,24 54:7,9
80:2,2 81:16,16,23
82:19,19 83:3
**systems**
54:13 79:22 81:9,23
82:17,18 83:9

_____
**T**
_____
**tactic**
43:21

**take**
8:21 43:25 48:16
94:25 95:1 96:13
**taken**
5:1 17:2,6,7 48:19
96:21 97:8,9,14
**talk**
7:3
**talking**
53:15 55:14
**talks**
52:7
**task**
22:8,10 24:24 25:14
25:14 35:15 79:4
**tasks**
22:3,7 24:3,5,10,13
24:23 25:3 26:4
41:15,19,19,21
75:15,19,21
**taxing**
6:25
**technologies**
17:10
**technology**
38:8
**teens**
69:12
**teleconference**
70:24 71:24 72:1,7
72:12,23 74:4 78:17
79:18 94:1
**teleconferences**
73:4
**tell**
9:11,20,25 18:22,25
24:12 31:1 35:21
36:6,15,18 37:19
38:1,5 39:10 44:13
46:8,18 48:5 54:18
59:1 63:11 71:5
72:9 80:19 81:22
94:20
**telling**
25:13,15 32:23 36:6
88:2



**ten**
7:2
**ten-minute**
48:14,16 95:15
**term**
11:15 53:2 54:24,25
57:9 75:10 80:4,4
**terminated**
74:20 82:4
**terminating**
5:3
**termination**
91:21
**terminology**
50:4
**terms**
6:11 14:25 92:12
**testified**
5:10
**testify**
97:6
**testimony**
6:5 35:19 60:6 78:7
98:6
**thank**
5:12 6:23 7:24 19:10
26:7 27:20 31:15
34:12 41:6,23 44:1
46:17 47:16 48:13
51:9 56:4 59:7
60:14 61:17 66:23
68:1 69:17,22 70:12
71:22 72:25 73:16
74:6 76:19 77:10
78:5,19 79:20 83:7
83:10,17 87:12
90:13,24 92:4
**Thanks**
40:18 52:21 65:20
70:22
**thereof**
97:21
**thing**
6:16 7:5 49:8
**things**
8:4 85:18

**think**
8:7,7 21:10 46:12
49:8 52:21 78:11
82:2 83:21
**thought**
92:15
**threaten**
84:6
**Three**
2:13
**Thursday**
1:18 5:3
**time**
1:19 6:25 14:7 22:14
26:12 33:8 43:9,22
48:23 51:6 56:23
57:4 65:12,18,25
72:1,15 74:18,19
77:3,22 79:16 81:15
82:4,11 84:18 87:8
93:3,25 95:22,23,24
97:9
**timely**
94:15,15
**title**
10:19 12:6 13:19
84:19 88:11
**today**
7:22 8:8 26:25 36:22
83:1,8 84:8
**told**
35:14,24 74:9 75:15
75:18
**tons**
31:7 34:14 36:7
**top**
77:11 85:13
**total**
75:19,21
**totality**
25:4 26:4 36:1
**Toxic**
3:11,16 8:25 15:21
15:23 16:1,4 20:22
28:21 39:16
**toxins**

29:14,18,20
**track**
31:20,21
**training**
17:2,12
**transactions**
11:7,11,11
**transcript**
97:13,16,18 98:4
**transcription**
97:11
**transmitted**
72:11,13
**transpired**
74:4
**transport**
17:9
**trick**
45:1
**true**
17:14 84:10,21 97:13
98:7
**Trust**
1:12
**trustee**
1:11
**truth**
97:6,6,7
**try**
18:3 22:18 27:17,19
96:3,4,9,11,16
**trying**
34:1 42:22 53:12,14
75:17 91:1 96:11
**two**
10:11,18 13:12 26:3
46:5,7,10,14 47:5
95:19
**two-page**
37:10
**type**
44:15
**types**
45:15 53:24 55:23
**typical**
80:20 89:5 90:4

**typically**
87:5

---
**U**

**U-T-Z**
5:25
**ultimately**
47:24 60:25
**unable**
91:18
**unapproved**
50:4
**underlined**
78:25 79:7
**understand**
6:5,21 7:7 15:6 24:18
28:19 38:24 51:11
55:22 68:15 91:7
96:7
**understanding**
17:17,20 18:1 47:19
84:4
**unilaterally**
77:22
**United**
1:1 12:4 19:6
**University**
9:23 10:13 17:8
**unknown**
51:15 80:2
**unmute**
31:24
**unnecessary**
43:17,17
**unpack**
77:17
**unsuccessful**
94:6
**updated**
64:9
**use**
68:16
**usual**
73:3
**Utz**
1:16 4:3 5:1,8,15,23



5:25 6:1,21 7:12,13
7:18 8:1,13 9:19
15:14 16:5 18:19
19:15 20:7,16,25
21:4,9 22:6,20
24:11,21 25:13 26:8
26:9 27:3,22 28:1,2
28:5 29:1 30:15,24
31:9 32:10 35:14,21
36:21 37:16,17,19
39:23 40:21 41:2,14
44:3,3,14,22 46:1
46:18 47:17 48:21
49:5,17,23 53:13
54:18 56:15 57:14
58:22,23 60:15
61:14,24 62:6 65:21
66:24 68:2,14,21
69:14 70:24 71:2,10
71:19 72:18 77:11
78:11 79:7 80:1,7
81:8,14 82:25 83:5
83:20 84:8,21 85:13
85:22 87:18,22
88:15 90:16 91:5,10
92:2 93:10 95:19,25
96:14 97:5 98:2,15
100:23
**Utz's**
22:14 26:3

---

**V**

**vague**
14:12 15:4 17:24
19:13 23:25 26:13
45:8 46:22 48:23
52:15 55:7,17 56:20
57:6,20 63:13 64:3
66:18 70:5 72:3,21
73:5 74:25 75:9
76:3 79:13 81:10
88:18 89:8 93:23
94:8
**vapor**
37:21,22 44:4,11
47:20,24 50:7 52:9

54:17 61:10 70:9
79:21 83:3
**variety**
20:3
**various**
91:11
**varying**
81:4,5
**VCA**
4:9 20:20 21:25 22:8
25:16 26:12 28:5,6
28:10 30:3,18 41:14
41:19 44:13 58:4
60:1 79:2,11 82:4
84:22 86:10 92:17
**Vernell**
3:2
**vertical**
55:24
**vicinity**
67:11
**Video**
1:20
**VOCs**
54:16
**Volume**
1:16 96:25
**voluntary**
9:13 20:8,19,20 21:5
23:14,23 24:4,9,13
24:22 28:19 35:7,15
35:25 55:15 60:9
74:13,19,22 75:5
76:2,10,11,17 77:4
77:8 82:11 90:18
91:22
**vs**
1:6

---

**W**

**waiting**
92:13
**Walnut**
13:17
**want**
6:9 20:14 27:9 32:24

33:3,7 34:3,13
40:21 42:8 43:4,13
50:12 71:14,17 74:7
75:15,21 77:16 79:8
83:7 95:1,4,12
96:12
**wanted**
95:21 96:2
**Washington**
2:9
**waste**
11:20 16:14,24 23:12
43:22 55:1 57:22
58:1 62:13 63:8
65:17 80:12
**wasting**
43:9
**Water**
66:10
**way**
14:15 15:9 25:14
41:18 55:13 97:21
**ways**
54:11
**Web**
1:20
**West**
3:13
**WFBM**
3:3
**WHEREOF**
97:22
**Whitney**
78:13
**wide**
20:3
**witness**
3:11 5:11 11:23 12:9
14:14 15:6 17:25
18:25 20:2 21:11,20
22:16 23:19 24:1,18
25:3,9,25 26:16
28:15 29:25 30:7,13
30:21 33:3 34:6,23
35:5,12,24 36:12,18
37:6 39:6 40:5,15

44:9 45:11,22 46:24
47:10 48:10,25
50:19 51:2 52:2,17
53:1,9 55:9,20
56:10,22 57:8,21
58:10 60:8,20 61:9
62:12,25 63:6,15
64:6,18 66:21 67:5
67:23 70:8 72:5,22
73:7 75:1,11 76:6
79:14 81:1,11,21
82:11 86:16,22 88:9
88:21 89:15 90:11
92:4,22 93:8,15,24
94:10,20 95:7,9
97:4,22
**Wonder**
32:5
**wonderful**
69:11
**wondering**
11:25 69:6
**word**
79:7
**words**
6:18 53:23
**work**
10:7 12:14 13:25
14:4,9,25 15:1,9
18:6,8,11 21:7,16
22:2 24:8 30:2,7,9
30:17 35:25 41:15
41:20,20,25 44:5,10
44:14,15,17,18,19
44:21,25 45:3,5,12
45:13,13,15,17,22
45:23 47:20,23 48:6
48:11 51:2,3,3,4,11
59:9,21 60:8 61:11
62:19 64:1,8,10,12
64:19,23,24 65:1,5
65:10,16,16,24
69:24 70:2,3,8,10
74:12,21 75:5,10,12
76:1,13,14,21,25
77:3,4,19 79:1,5,15



84:22 85:9,10,17
86:10 87:9 91:16
92:7,10 94:15
**worked**
13:7 15:22
**workers**
57:25 61:3 64:19
**working**
15:19 29:13,18,20
59:5 63:23 65:4
79:11 92:16
**world**
69:12
**worry**
33:24,25
**wouldn't**
31:23
**written**
21:14 40:16 53:18
73:23,24 80:8
**wrong**
82:24 85:16 92:11
**wrote**
41:7 49:19,20 87:4
94:6
**www.MagnaLS.com**
1:24

---
**X**
---
**X**
97:18

---
**Y**
---
**yeah**
18:3 25:24 26:22
27:9,18 31:13,19,25
32:8,14 34:5,10
40:25 71:9 73:10
83:24 93:18 95:1
**year**
16:18 29:13,18,21
**years**
10:18 13:12 15:14,17
15:22,24 46:6,7,8
46:10,15 47:5 68:16
79:3

**yellow**
59:13

---
**Z**
---

---
**0**
---

---
**1**
---
**1**
1:12,16 4:8 8:7,9 9:3
22:10 24:24 25:14
77:13 96:25
**1:52**
95:14
**1:54**
1:19 5:3
**10**
4:17 68:8,19 70:16
70:18,20
**10:00**
95:13
**10:08**
1:19 5:2
**11**
4:18 49:4 83:15,16
97:23
**12**
4:19 85:4,6
**12-08-2020**
85:3
**12210**
20:24 21:1
**13**
4:20 28:24 87:15,16
**13419**
37:12
**14**
4:13,21 41:5,11,24
90:22
**1420**
2:13
**14209**
1:25 5:5 96:24 97:2
97:25
**14974**
59:18

**150**
3:8
**151**
27:25
**16**
91:5,11,15 92:6 94:7
**17**
51:10 52:7 54:15
**172**
2:18
**1729**
85:8
**1800**
3:13
**1850**
2:23
**19**
23:4 25:14 58:16,24
71:4,25 72:2 78:16
91:19
**1952**
1:12

---
**2**
---
**2**
4:9 20:10 26:21,22
46:1 91:2
**2:50**
83:25
**20**
4:9 87:14 95:5,9,11
98:11
**2014**
29:21
**2016**
9:24
**2017**
28:11,22,24 30:4
36:1 60:10 82:12
**2018**
22:24 46:15
**2019**
46:15
**2020**
4:13,14 15:19 23:5
27:25 29:11,17 31:2

32:15 37:12 41:5,12
41:24 46:14 49:4,13
49:18 50:22 58:16
58:24 68:8,19 70:15
71:4,25 72:2 74:4
74:14 76:1 78:16
83:13,19,25 85:15
87:14
**20200604**
27:4
**2021**
91:2,5,12,15,19 92:6
**2023**
82:12
**2024**
1:18 5:4 83:1 97:23
**21,000**
96:6
**21,736**
9:3
**2240**
3:8
**23**
70:15 83:13,19,24
**25**
31:1 32:15
**255**
3:3
**27**
4:10
**2748**
2:3
**29**
1:18 5:4 74:4 83:1

---
**3**
---
**3**
4:10 26:21,23 27:1
46:1 77:11,11 78:22
78:22 88:1,2
**3:20-CV-7923-EMC**
1:8
**30**
95:5,7
**32**
4:11



**3201**
2:18
**33**
2:23
**37**
4:12
**397-9006**
2:10

---
**4**

**4**
4:11 27:25 29:11,17
  31:25 32:1,11,20
  37:11 51:10
**40**
4:13 12:6,6
**408**
2:19
**415**
2:10
**4240**
96:23
**450**
31:7 34:14 36:7
**49**
4:14
**495-3900**
2:19

---
**5**

**5**
4:3,12 22:24 37:3,5
  52:7 91:19
**500**
2:9
**510**
2:4
**5217**
91:6
**525**
3:3
**58**
4:15

---
**6**

**6**

4:13 40:23,24
**6:32**
91:5
**600**
3:13
**619)321-5780**
3:14
**68**
4:16
**6939**
31:2 32:16

---
**7**

**7**
4:14 49:7,15
**70**
4:17
**700**
2:9

---
**8**

**8**
4:8,14,15 28:11,22
  49:13,18 50:22
  54:14 58:18,20
  85:15 88:11
**83**
4:18
**85**
4:19
**866-624-6221**
1:23
**8683**
21:6
**87**
4:20

---
**9**

**9**
4:16 68:10,12
**90**
4:21
**900-9502**
2:4
**916)797-3100**
3:9

**92101**
3:13
**94105**
2:23
**94111**
2:9,13 3:4
**94507**
2:18
**94703**
2:4
**95661**
3:8

