Rachel S. Doughty (CBN 255904)
Jennifer Rae Lovko (SBN 208855)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
rdoughty@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASA NIDO PARTNERSHIP, a California Partnership,<br><br>Plaintiff,<br><br>v.<br><br>CATHERINE O'HANKS; SENTRY INSURANCE COMPANY; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON) and EARL RAY ANDERSON,<br><br>Defendants.<br><br>AND ALL RELATED COUNTER AND CROSS CLAIMS. | Case No. 20-cv-07923-EMC<br><br>PLAINTIFF'S REPLY TO DEFENDANT EARL RAY ANDERSON'S, DEFENDANT KATE VERNELL'S, AND DEFENDANT CATHERINE O'HANKS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF 241, 242, 243)<br><br>Date:    August 28, 2024<br>Time:    9:30 a.m.<br>Judge:   Edward M. Chen<br>Courtroom: 5 – 17th Floor<br><br>Third Amended Complaint Filed: December 16, 2022 |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................ 1

II. ARGUMENT .............................................................................................................................. 1

    A. No Genuine Dispute Exists as to Material Facts Supporting Plaintiff's CERCLA Claim ................................................................................................................................ 1

        1. Defendants VERNELL and ANDERSON Have Not Met their Burden Regarding Liability ........................................................................................................ 1

        2. Plaintiff's Cost Recovery Against Defendant VERNELL is Not Time-Barred ............. 2

        3. Anderson is a PRP ........................................................................................................ 2

        4. Plaintiff Has Demonstrated the Disposal of a Hazardous Substance, as Well as the Release or Threatened Release of a Hazardous Substance at the Site ................. 3

        5. Plaintiff Has Demonstrated Substantial Compliance with the NCP Resulting in a CERCLA-Quality Cleanup ..................................................................................... 4

            a) Plaintiff Completed a Site Evaluation and Preliminary Assessment ...................... 5

            b) No EE/CA Was Required, and Even if an EE/CA Was Required, Plaintiff Conducted its Equivalent ........................................................................................ 7

            c) Plaintiff and DTSC Have Engaged in Community Relations ................................. 9

            d) The Work Performed by Plaintiff Has Resulted in a CERCLA-Quality Cleanup 10

    B. No Genuine Dispute Exists as to Material Facts Supporting Plaintiff's Nuisance and Nuisance Per Se Claims ........................................................................................................ 13

    C. Defendant VERNELL Has No Defense to Liability ......................................................... 14

III. CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

Cases

*Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224 (9th Cir. 1988) .................................................. 3

*Asarco LLC v. Atl. Richfield Co.*, LLC, 975 F.3d 859 (9th Cir. 2020) ................................................ 2

*Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197 (E.D. Cal. 2003) .............................. 3

*Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc.*, 240 F.3d 534 (6th Cir. 2001) ....................................................................................................................................... 5

*Hensley v. San Diego Gas & Electric Co.*, 7 Cal.App.5th 1337 (2017) ............................................ 15

*Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648 (6th Cir. 2000) ............................... 3

*Kelley v. E.I. DuPont De Nemours & Co.*, 17 F.3d 836 (6th Cir. 1994) .............................................. 2

*Newhall Land & Farming Co. v. Superior Court,* 19 Cal.App.4th 334 (1993) ................................. 15

*Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2nd Cir. 2010) ..................... 5

*Orange Cnty. Water Dist. v. MAG Aerospace Indus., Inc.*, 12 Cal. App. 5th 229 (2017) .................. 4

*State of Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910 (9th Cir. 2010) ....................................................................................................................................... 1

*U.S. v. Fleet Factors Corp.,* 821 F. Supp. 707 (S.D. Ga. 1993) .......................................................... 4

*United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530 (10th Cir. 1995) ................................. 2

*Valerio v. Andrew Youngquist Constr.*, 103 Cal. App. 4th 1264 (2002) ............................................ 3

*Voggenthaler v. Md. Square LLC*, 724 F.3d 1050 (9th Cir. 2013) ...................................................... 4

*Von Duprin LLC v. Major Holdings, LLC,* 12 F.4th 751 (7th Cir. 2021) ........................................... 5

Statutes

42 U.S.C. § 6903(3) .............................................................................................................................. 4

42 U.S.C. § 9601 .................................................................................................................................. 4

42 U.S.C. § 9607(a)(2) ......................................................................................................................... 4

42 USC § 9613(f) ................................................................................................................................. 2

42 USC § 9613(g) ................................................................................................................................ 2

Fed. R. Evid. § 56 .............................................................................................................................. 16

Fed. R. Evid. § 56(c) .......................................................................................................................... 17

Fed. R. Evid. § 702 .................................................................................................................. 12

Fed. R. Evid. § 703 .................................................................................................................. 12

<u>Other Authorities</u>

40 CFR § 300.410(a)............................................................................................................. 6, 7

40 CFR § 300.430 .................................................................................................................. 14

40 CFR § 300.700 .................................................................................................................... 5

## I. INTRODUCTION

To date, Plaintiff has sustained damages exceeding $1 million for work associated with cleaning up PCE contamination at 12210 San Pablo Avenue in Richmond, California ("Site"). Defendants remain steadfast in their refusal to compensate Plaintiff for any of this work despite being responsible for the discharge of PCE while they owned or operated a drycleaning facility at the Site. Costs for cleanup and remediation are continuing and will continue to accrue. Accordingly, Plaintiff filed its Second Motion for Partial Summary Judgment to establish liability.

The evidence presented by Plaintiff demonstrates that no genuine dispute of material facts exists regarding Plaintiff's causes of action. Defendants' "evidence," on the other hand, consists of misinterpretations of the law, conclusions without evidence, and expert opinion that is speculative and without foundation. Such evidence does not create any genuine dispute.

## II. ARGUMENT

### A. No Genuine Dispute Exists as to Material Facts Supporting Plaintiff's CERCLA Claim[1]

Defendant ANDERSON argues that it is not a potentially responsible party ("PRP") under CERCLA. Defendants ANDERSON and VERNELL argue that Plaintiff has not established their release of PCE. Each Defendant asserts that Plaintiff's actions (and associated incurred costs) do not comply with CERCLA's requirement that incurred necessary costs be consistent with the National Contingency Plan ("NCP") and result in a CERCLA-quality cleanup. Defendant VERNELL also argues that her liability is not joint and several,[2] and most of Plaintiff's cost recovery is time-barred. As addressed below, all of these arguments fail.

#### 1. Defendants VERNELL and ANDERSON Have Not Met their Burden Regarding Liability

As noted in Plaintiff's MSJ, CERCLA liability is joint and several, but once liability has been adjudged, liable parties may seek to allocate contribution amongst the responsible parties. *See State of Cal. Dep't of Toxic Substances Control v. Hearthside Residential Corp.*, 613 F.3d 910, 912 (9th Cir. 2010). The Gore factors are taken into consideration when addressing such allocation. 42

---

[1] For the same reasons, no genuine dispute exists as to material facts supporting Plaintiff's Hazardous Substance Account Act claim.
[2] Defendant ANDERSON argued that equitable considerations should dictate joint and several liability applies.

1
PLAINTIFF CASA NIDO PARTNERSHIP'S REPLY AND OPPOSITION

USC § 9613(f); *Asarco LLC v. Atl. Richfield Co.*, LLC, 975 F.3d 859, 868 n.7 (9th Cir. 2020); *United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530, 1536, fn. 5 (10th Cir. 1995). Neither VERNELL nor ANDERSON have addressed these factors, and so the Court cannot grant Defendants' request.

### 2. Plaintiff's Cost Recovery Against Defendant VERNELL is Not Time-Barred

VERNELL states that CERCLA's three-year statute of limitations applies in this case, which provides that an initial action for recovery of costs recovery associated with a removal action must be brought "within 3 years after completion of the removal action." 42 USC § 9613(g)(2)(A). Defendant then divides Plaintiff's action into two separate "interventions," including the soil extraction action and the SVE/SSD system installation. This is improper. The statute does not allow division of removal action into individual, divisible components; there is only one removal action, and the statute of limitations runs from its completion. *See Kelley v. E.I. DuPont De Nemours & Co.*, 17 F.3d 836, 843-844 (6th Cir. 1994). Here, the removal action has not completed. As addressed below, the SVE/SSD system is still in operation, and the Imminent and Substantial Endangerment Determination and Order and Remedial Action Order issued by DTSC in October of 2023 did not consider the Site to have moved from a removal to a remediation phase. ECF 234-10, pp.20-64.

### 3. Anderson is a PRP

ANDERSON's position is untenable. Plaintiff's Second Motion for Summary Judgment (hereafter "MSJ") contains ample evidence that Anderson is a PRP. *See* ECF 234, pp.20-22. Further, in his Answer to Plaintiff's Third Amended Complaint, ANDERSON admitted that he and VERNELL "owned and operated a dry-cleaning facility on the Subject Property from approximately 1978 - 1980." ECF 177, ¶8.[3] This admission has "the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact… Factual assertions in pleadings … are considered judicial admissions conclusively binding on the party who made them." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *see also Valerio v. Andrew*

---

[3] On December 13, 2023, Plaintiff's counsel spoke to ANDERSON's counsel and specifically notified him that ANDERSON admitted to owning or operating the dry-cleaning facility at the Site. However, ANDERSON did not subsequently seek to withdraw or amend his Answer. Lovko Decl., ¶2.

*Youngquist Constr.*, 103 Cal. App. 4th 1264, 1271 (2002) ("Because an admission in the pleadings forbids the consideration of contrary evidence, any discussion of such evidence is irrelevant and immaterial."). Accordingly, ANDERSON is bound by the admission in his Answer.

### 4. Plaintiff Has Demonstrated the Disposal of a Hazardous Substance, as Well as the Release or Threatened Release of a Hazardous Substance at the Site

Defendants VERNELL and ANDERSON argue that Plaintiff has not demonstrated any release of PCE occurred during the time they owned and/or operated the drycleaning facility at the Site. This argument must necessarily fail as CERCLA does not require Plaintiff to do so.

CERCLA provides that a PRP who disposes of a hazardous substance at a facility is liable where Plaintiff has demonstrated a release or threatened release at the Site, and <u>Plaintiff need not show such release was the result of any particular PRP's actions</u>. *See Kalamazoo River Study Group v. Menasha Corp.*, 228 F.3d 648, 656 (6th Cir. 2000); *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F. Supp. 2d 1197, 1207 (E.D. Cal. 2003). Causation is not considered in determining liability. *See Kalamazoo River Study Group*, 228 F.3d at 656-57 (noting that the "introduction of a causation element into the liability standard" would thwart CERCLA's purpose and strict-liability scheme).

CERCLA does not require that "release" be demonstrated as to each defendant; however, it does require that each defendant have been a PRP at the time hazardous substances were "disposed" of.[4] *See* 42 U.S.C. § 9607(a)(2). Plaintiff provided ample evidence in its MSJ that disposal occurred during the years the Site was owned/operated by ANDERSON and VERNELL because the design of the drycleaning machines at the Site necessarily caused a disposal of PCE (1) from evaporation when transferring wet fabrics from the washer to the dryer unit, (2) from evaporation associated with the filter-cooker-still filtration system, (3) from dryer exhaust vented into the atmosphere, (4) from contact water, and (5) from residual vapor release from clothes after they are removed from the dryer and when pressed or steamed. ECF 234-2, ¶¶19-27. VERNELL argues that four of these categories result "only in evaporation of PCE into the air" and "Plaintiff has not shown that it has incurred any response costs" associated with such disposals or releases. Again, as just stated

---

[4] "Disposal" is defined as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters." 42 U.S.C. § 6903(3); *see* 42 U.S.C. § 9601(29).) The term is interpreted broadly. *See Orange Cnty. Water Dist. v. MAG Aerospace Indus., Inc.*, 12 Cal. App. 5th 229, 247 (2017).

above, Plaintiff need not show that such disposal is connected to incurred costs, and disposal does not require that the hazardous waste be dispersed outside of the at-issue facility building because disposal need only be such that hazardous waste "may" enter the environment. *See Orange Cnty. Water Dist.*, 12 Cal. App. 5th at 247 (citing *U.S. v. Fleet Factors Corp.,* 821 F. Supp. 707, 723 (S.D. Ga. 1993); *Voggenthaler v. Md. Square LLC*, 724 F.3d 1050, 1064 (9th Cir. 2013).

And, as addressed in Plaintiff's MSJ, for purposes of determining CERCLA liability, a court may base its finding "solely on circumstantial evidence, especially where the passage of time has made direct evidence difficult or impossible to obtain." *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112 (2nd Cir. 2010) at 131 (quoting *Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc*., 240 F.3d 534, 547 (6th Cir. 2001). "CERCLA liability may be inferred from the totality of the circumstances as opposed to direct evidence." *Id*. at 136.

### 5. Plaintiff Has Demonstrated Substantial Compliance with the NCP Resulting in a CERCLA-Quality Cleanup

Under CERCLA, necessary response costs must be in "substantial compliance" with the NCP; however, "[p]erfect compliance is not the measuring stick." *See* 40 CFR 300.700; *Von Duprin LLC v. Major Holdings, LLC,* 12 F.4th 751, 770 (7th Cir. 2021). Defendant VERNELL and O'HANKS both argue that Plaintiff has not demonstrated substantial compliance with the NCP that resulted in a CERCLA-Quality Cleanup, with both arguing that neither a site evaluation (with preliminary assessment) or engineering evaluation/cost analysis ("EE/CA") was done nor did Plaintiff adhere to CERCLA's community relations requirements.[5] Each of Defendants' arguments fails for the reasons addressed below.

For Plaintiff's MSJ, Robert Clark-Riddell demonstrated that its response costs,[6] including costs associated with work performed by Pangea and DTSC, taken as a whole, were necessary and either consistent with the NCP or in substantial compliance with the NCP. ECF 234-2, ¶¶28-65. This conclusion was based upon his experience (including his experience with the Site), review of

---

[5] Defendant ANDERSON's opposition did not address NCP compliance.
[6] There is some disagreement among the parties as to whether the costs incurred by Plaintiff involved removal or remedial actions; however, the DTSC has classified the work associated with these costs as "interim actions" (ECF 234-10 at p.24) – which are removal actions. See Santa Clara Valley Water Dist. V. Olin Corp., 655 F.Supp.2d 1066, 1075 (N.D. Cal. 2009). And, where the Court is unable to make a determination whether actions are removal or remedial, it may determine a motion for summary judgment under the analysis applicable to removal actions. See id. at 1076; 40 CFR 300.415.

invoices and costs, discussions with DTSC Supervisor Whitney Smith on August 4, 2022, DTSC's Imminent and Substantial Endangerment and Order and Remedial Action Order, and a September 20, 2022 letter written by Mr. Clark-Riddell on the subject of "Analysis of Remedial Work at Omo's Cleaners Site and NCP Compliance." *Id.*, ¶65 The Defendants' opposition to Plaintiff's MSJ completely ignore the foundation for Mr. Clark-Riddell's opinion.

Defendant VERNELL submits no expert declaration regarding Plaintiff's compliance with the NCP. Defendant O'HANKS submits the declaration of Alborz Wozniak. For purposes of replying to Defendants' oppositions, Mr. Clark-Riddell has issued another declaration (filed concurrently with this instant motion) that elaborates on work performed by Pangea and contact with the DTSC. It also addresses the opinions of Alborz Wozniak.

### a) Plaintiff Completed a Site Evaluation and Preliminary Assessment

CERCLA's NCP regulations state that a "removal site evaluation includes a removal preliminary assessment." 40 CFR 300.410(a). The regulations identify factors that "may" be included in such an assessment; however, the only mandatory requirement is that the assessment be based on "readily available information." *Id.* at (c). Thus, for example, a preliminary assessment might include data on the source and nature of the release or threat of release of hazardous substances, an analysis of its threat to public health, and historical information. *Id.* An actual site inspection also is not required, but it can occur "if warranted." *Id.* at (a).

Robert Clark-Riddell's declaration, filed concurrently with the MSJ, established that Plaintiff began evaluating the Site in late 2014 through site investigation and sampling, evaluation continued in 2015 and 2016, and then in 2016, Pangea produced a Site Assessment Report ("2016 Assessment Report"). ECF 234-2 at ¶¶28-29, 31-32. The 2016 Assessment Report contained a description of the Site and its history, DTSC interaction with the Site and nearby facilities, data on the source and nature of PCE and other volatile organic compounds ("VOCs") at the Site, membrane interface probe assessment at one onsite and three offsite locations, and more. Declaration of Robert Clark-Riddell, filed concurrently with this instant motion (hereafter "Clark-Riddell Decl."), ¶8; ECF 148-2, pp.92-534. The report is 442 pages in length. *Id.*

Thus, Plaintiff not only engaged in a site evaluation and preliminary assessment, as required

by the NCP, but went farther by actually conducting a site inspection and collecting samples. Clark-Riddell Decl., ¶66. DTSC even acknowledges that the Voluntary Cleanup Agreement's ("VCA") provision for site evaluation and preliminary assessment has been met, and the Imminent and Substantial Endangerment Determination and Order and Remedial Action Order issued by DTSC in 2023 does not require any PRP to comply with 40 CFR 300.410, as a result. *Id.*, ¶¶17, 23c, 36-39, 44, n.4. Nonetheless, Defendants argue otherwise based upon the deposition of Ian Utz and DTSC documents that he addressed in his testimony (specifically referring to Utz Depo at 51:20-52:5 and 84:17-20). This evidence does not establish what Defendants assert, however.

Ian Utz was appointed as the Project Manager for the Site in May of 2020. *Id.*, ¶13. He had just become an employee of DTSC and was placed under the supervision of Whitney Smith. *Id.*; Ian Utz Depo, Vol. I, p.15:19-24, attached as Exh. A to Lovko Decl. (hereafter, "Utz Depo"). On February 29, 2024, Defendant O'HANKS took the deposition of Mr. Utz. Utz Depo., Exh 1. At this deposition, Defendant addressed Task No. 2 of the VCA, which addressed preliminary endangerment assessment ("PEA"). Clark-Riddell Decl., ¶17. This task provides that a PEA report and PEA workplan "may be required" as part of the VCA task.[7] *Id.*

The testimony provided by Mr. Utz on pages 51-52 is based upon the October 8, 2020, letter written by Mr. Utz, which addressed revisions to the Offsite Vapor Assessment Workplan.[8] Utz Depo., Vol. 1, at p.49:14-52:5, Exh. 7. The testimony on page 84 is based upon a November 23, 2020, email written by Mr. Utz, which also addresses the same workplan. *Id.* at p. 83:11-84:20 and Exh. 11 thereto. The first document, written three months after Mr. Utz became Project Manager, noted: "A Preliminary Endangerment Assessment (PEA) has not been completed for the Site, and therefore certain historical information remains unknown." Utz Depo., Vol. 1, Exh. 7. Accordingly, Mr. Utz wanted the workplan to be revised with historical information. *Id.* The second document, issued the following month, noted that Plaintiff had completed part of Task No. 2 "through existing reports/information (e.g., the 2016 site assessment [report], groundwater data, and soil vapor data)" but reiterated that additional historical information needed to be provided. *Id.*, Exh. 11.

---

[7] The NCP does not require a workplan to satisfy 40 CFR 300.410; this requirement is only addressed in the VCA.
[8] Plaintiff initially submitted an Offsite Vapor Assessment Workplan on July 17, 2018. Suppl. Clark-Riddell Decl., ¶23c.

After attaching both documents and exhibits and showing them to Mr. Utz, Defendant asked whether Plaintiff CASA NIDO had ever completed a preliminary endangerment assessment, to which Mr. Utz replied: "I'm not aware of any submittals to the department with the name of the submittal being a preliminary endangerment assessment…[and DTSC has] not approved any documents during my time as project manager with the title PEA or preliminary endangerment assessment." *Id.* at 51:20-52:5 and 84:17-20.

Plaintiff agrees that it never submitted a document entitled "preliminary endangerment assessment." This is of no import. The question is whether Plaintiff substantially complied with 40 CFR 300.415, which Mr. Utz was not asked about. Defendant never asked Mr. Utz, for example, whether DTSC ever required Plaintiff to submit a document specifically entitled "preliminary endangerment assessment" or whether the 2016 Site Assessment Report and Vapor Intrusion Assessment Workplan issued by Pangea were considered to be in substantial compliance with either the VCA or CERCLA. Lovko Decl., ¶3.

Furthermore, after both the October 8, 2020, and November 23. 2020 correspondence, were sent, Plaintiff and DTSC agreed that rather than revise the workplan, the requested information could be included in documentation covered by Task No. 3 of the VCA, which addresses additional site characterization. Clark-Riddel Decl., ¶¶18, 38. On December 4, 2020, Plaintiff sent Mr. Utz an Additional Characterization Report, which contained the requested information. *Id.*

In conclusion, not only did Plaintiff comply with CERCLA, but they also complied with the VCA.

### b) No EE/CA Was Required, and Even if an EE/CA Was Required, Plaintiff Conducted its Equivalent

Defendants argue that Plaintiff has not provided any evidence that an EE/CA was conducted for removal actions conducted in 2018 (soil excavation and installation of the SVE/SSD system). CERCLA NCP regulations provide that for non-urgent removal actions (those where a planning period of at least six months exists before on-site activities must be initiated), the party initiating the removal action "shall conduct an engineering evaluation/cost analysis (EE/CA) <u>or its equivalent</u>." 40 CFR 300.415(b)(4) (emphasis added). An EE/CA is not required for time-critical removal actions. *Id.* Here, Plaintiff considers the soil extraction and installation of an SVE/SSD system to be

time-critical removal actions; therefore, no EE/CA was required. Further, even if these removal actions were considered not to be time-critical, Plaintiff conducted the equivalent of an EE/CA. Specifically:

(1) Plaintiff informed DTSC in November of 2016 that it intended to initiate removal actions in the form of soil extraction and an SVE/SSD system, and DTSC stated that these actions were reasonable and appropriate. Clark-Riddell Decl., ¶10. After conducting further testing of the Site in 2017 and 2018 to assess risk, it was confirmed that TCE concentrations at the Site were up to <u>43 times</u> the urgent response trigger levels established by DTSC Human and Ecological Risk Office ("HERO"), and PCE concentrations were up to <u>3,500 times</u> the remediation/mitigation response trigger levels established by DTSC's Vapor Intrusion Mitigation Advisory ("VIMA"). *Id.*, ¶¶21, 24, 26-28. This clearly established an imminent health risk that needed to be addressed quickly. Accordingly, Pangea drafted a workplan in 2018 to propose interim measures addressing vadose intrusion at the Site by removing source material (via excavation) and feasibility testing of a combined SVE/SSD system to mitigate vapor intrusion risk at the Thai restaurant located adjacent to the Site. *Id.*, ¶22.

(2) On September 7, 2018, DTSC issued a letter, noting that the DTSC HERO "<u>recommends interim hazard mitigation measures (e.g., ventilation) for the restaurant until subslab vapor samples are collected and vapor intrusion risk is assessed</u>." *Id.*, ¶23d.

(3) Prior to conducting soil extraction or installing the SVE/SSD system, Plaintiff considered various designs and plans, as well as cost estimates for all considered alternatives. *Id.*, ¶¶32-34, 70-72. These included consideration of various vadose-zone removal action technologies (in situ and ex situ soil treatment, soil vapor extraction, excavation) and saturated-zone (groundwater) removal actions (no action, institutional controls, groundwater extraction, permeable reactive Barrier ("PRB") with enhanced reductive dechlorination/enhanced biodegradation, in situ chemical oxidation). *Id.*

(4) In designing, planning, and actuating the removal actions, Plaintiff also took into consideration whether soil excavation and an SVE/SSD system were proportionate to the dangers posed by the property. *Id.*, ¶72.

(5) In determining the appropriateness of these time-critical removal actions, Plaintiff

considered the factors identified by CERCLA NCP regulations (codified in 40 CFR 300.415(b)(2)), including the actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants; the actual or potential contamination of drinking water supplies or sensitive ecosystems; and high levels of hazardous substances or pollutants or contaminants in soils largely at or near the surface, that may migrate. *Id.*, ¶¶70-71.

(6) Within six months of establishing that an imminent health risk existed and of HERO recommending interim hazard mitigation measures for the Thai restaurant (both of which occurred in 2018), Plaintiff excavate soil at the Site and began installing the SVE/SSD system. *Id.*, ¶¶21-22, 23d, 24, 25-28.

(7) In 2020, DTSC required Plaintiff to maintain operation of the SVE/SSD on a continuing and ongoing basis until otherwise told. *Id.*, ¶29.[9]

(8) The removal actions successfully addressed the risk to human health. *Id.*, ¶31.

### c) Plaintiff and DTSC Have Engaged in Community Relations

Defendants state that Plaintiff did not comply with the NCP because it did not designate a spokesperson, conduct interviews with various community groups, prepare a formal community relations plans, or establish a local information repository (referencing 40 CFR 300.415(n)). But, private parties are exempt from the administrative record requirements in 40 CFR 300.415(n). *See Santa Clara Valley Water Dist.*, 655 F.Supp.2d at 1076-77. And, for those requirements that do apply, Plaintiff need only substantially comply. *See id.*

Here, both Plaintiff and DTSC have communicated with the public concerning the Site, and DTSC's public participation specialist has monitored these communications, confirming that Plaintiff was in compliance. Clark-Riddell Decl., ¶¶46-47.

At various times in 2016, 2017, 2018, 2019, 2020, and 2021, Plaintiff communicated with members of the public and government agencies regarding contamination at the Site, beginning with notification to the owner and manager of the Thai restaurant and thereafter including

---

[9] After termination of the VCA in 2023, DTSC issued an Imminent and Substantial Endangerment Determination and Order and Remedial Action Order which mandates that "the currently-installed SVE/SSD system shall continue to be operated until DTSC approves system shutdown." ECF 234-10 at p.29.

communications with other adjacent addresses/owners, the City of Richmond, and the Bay Area Air Quality Management District. *Id.*, ¶48. Any community relations requirements not being addressed by Plaintiff were to be handled by DTSC. *Id.*, ¶46-47.

Plaintiff is aware that DTSC also communicated with members of the public, published a Community Update Bulletin (in 2020 and 2021), conducted a community survey, prepared a community relations plan, and conducted community interviews. Clark-Riddell Decl., ¶48, 60.

### d) The Work Performed by Plaintiff Has Resulted in a CERCLA-Quality Cleanup

Both VERNELL and O'HANKS argue that Ian Utz wrote in teleconference meeting minutes dated November 19, 2020, that DTSC could not yet determine whether cleanup work was completed in compliance with the NCP. This is not relevant. Not only has close to four years passed since this "evidence," but neither Ian Utz nor DTSC is the judge of NCP compliance. Clark-Riddell Decl. at ¶¶53-57, 58, 78.

Defendant O'HANKS' also argues that Mr. Utz testified in his deposition that Plaintiff conducted its cleanup activities at the Site without DTSC oversight, and such oversight is important to ensure "cleanups occur safely and legally." The testimony that Defendant refers to focuses on another 2020 letter by Ian Utz in which he states cleanup activities that occurred in the two years prior to his appointment as Project Manager were not done with DTSC oversight. *See* Utz Depo., Vol. 1, pp.46:1-14.

As addressed above in Section A.5.b., a DTSC supervisor was told in 2016 about the soil extraction and SVE/SSD system that Plaintiff was intending to implement, and the supervisor stated these actions were reasonable and appropriate. Further, Mr. Utz's deposition testimony indicates that despite his involvement with the Site since 2020, he demonstrated a lack of awareness of the Site and work completed there. Clark-Riddell Decl. at ¶¶57. For example, when asked whether it was his responsibility to oversee the VCA, Ian Utz was only able to say "To some extent." Utz Depo, Vol. 1, pp.23:21-24:1. He was asked whether he was aware of any work that Plaintiff did on the Site prior to entering into the VCA with DTSC in 2017, and he answered that he did not know. *See* Utz Depo., Vol. I, p.30:2-21. Mr. Utz was asked whether DTSC provided oversight of Plaintiff's removal of impacted soil (which occurred in 2018), whether this action was in

accordance with the VCA, and whether DTSC had approved the action. Again, he stated that he did not know. *See* Utz Depo., Vol I, pp.34:13-35:12, 50:3-19. Pangea installed a permeable reactive barrier at the Site in 2018 and the SVE/SSD system during the years 2018 through 2020; when asked about the permeable reactive barrier, he stated he did not know about its installation, and when asked about the SVE/SSD system, he stated a SSD system had not been installed. Utz Depo., Vol I at pp.37:19-38:10, 38:14-16.

Defendant O'HANKS also refers to a 2022 correspondence with the City of Richmond, referencing that work in 2018 through 2020 had been done without DTSC approval. Again, this is dated, and as Mr. Utz's deposition shows, his statements regarding this work do not appear to have any foundation. Clark-Riddell Decl. at ¶¶57; Utz Depo., Vol I, pp.34:13-35:12, 37:19-38:10, 38:14-16, 50:3-19.

Finally, Defendant O'HANKS argues that the cleanup work conducted by Plaintiff was not of CERCLA-quality based upon the declaration of Alborz Wozniak. Mr. Wozniak's declaration draws a number of conclusions that are speculative and lack foundation. Clark-Riddell Decl., ¶¶59-80. Additionally, rather than actually offer expert opinion, Mr. Wozniak simply recites what Ian Utz and DTSC have stated. Plaintiff therefore objects to this declaration based upon Federal Rules of Evidence 702 and 703.

Plaintiff's expert, Mr. Clark-Riddell, addresses Mr. Wozniak's declaration in his declaration. Clark-Riddell Decl., ¶¶59-80. Among his observations, Mr. Clark-Riddell notes that Mr. Wozniak did not review the entire record in this matter. *Id.*, ¶60. For example, Mr. Wozniak did not even review Mr. Clark-Riddell's MSJ declaration nor his Analysis of Remedial Work at Omo's Cleaners Site and NCP Compliance, which was an exhibit to the MSJ and which was identified as being relied upon in concluding that Plaintiff's incurred costs complied with the NCP. *Id.;* ECF 234-2, ¶65. Also, he did not review any documents related to Plaintiff's work with DTSC on HASPs subsequent to December 8, 2020; DTSC's 2006 Imminent and Substantial Endangerment Determination for the MacDonald-San Pablo-Wall-45th Plume Site, which was amended in March of 2022 and references both the Groundwater Monitoring Report and Off-Site Vapor Intrusion Investigation Workplan; Plaintiff's technical report containing updated soil vapor and groundwater data, which was provided to DTSC on March 22, 2022; DTSC's 2020 and 2021 Community Update

Bulletin; or DTSC's October 2023 Public Participation Plan.

Mr. Wozniak also apparently did not look at documents contained in DTSC's Envirostar website for the Site. *Id.*, ¶61. If he had, he would have seen documents that were more contemporary than those he reviewed, as well as documents regarding DTSC's role in community relations. Because Mr. Wozniak does not have a complete understanding of the contamination at the Site, nor has he reviewed the full record in the matter, he has an insufficient basis by which to evaluate the environmental response actions conducted by Casa Nido. *Id.*, ¶¶63, 77.

Further, Mr. Wozniak does not address the fact that a DTSC September 7, 2018, letter noted that the DTSC HERO recommended "interim hazard mitigation measures (e.g., ventilation) for the restaurant until subslab vapor samples are collected and vapor intrusion risk is assessed" (despite stating that he reviewed the September 7, 2018, letter). *Id.*, ¶62. He also does not refute that information regarding PCE levels at the Site (through the 2016 Site Assessment Report or otherwise) indicated an imminent threat to public health. He does not even mention any of the sampling data collected by Pangea. Mr. Wozniak states he is a civil and environmental engineer, but he never actually addresses the appropriateness or effectiveness of Plaintiff's removal actions in the face of a threat to public health. *Id.*, ¶62, 77. That is, he never analyzes for himself the data that Pangea used as the basis for its work (despite such data either being among the documents identified in Exhibit B of Mr. Wozniak's deposition and being available on DTSC's Envirostar website for the Site). Instead, Mr. Wozniak cites to Ian Utz's dissatisfaction with Casa Nido (as noted in several DTSC communications) and the failure of Plaintiff to comply with the VCA, *as interpreted by Mr. Utz*. *Id.*, ¶78. As addressed above, Ian Utz is not the final word on NCP compliance and has demonstrated significant unfamiliarity with the Site and work there, particularly as regards work performed before Mr. Utz became Project Manager.

Mr. Wozniak also attacks Pangea's SVE/SSD system based on Mr. Utz's correspondence, but there is no evidence indicating that Mr. Utz believes the soil extraction and SVE/SSD system were unnecessary or ineffective. *Id.*, ¶78. Defendant's expert also does not address the favorable comments of DTSC supervisor Whitney Smith regarding Plaintiff's work. *Id.*, ¶79. Finally, the record demonstrates that at no time did DTSC issue a notice of non-compliance with the VCA based on violations of NCP compliance or otherwise. *Id.*

Mr. Wozniak makes a number of statements regarding what was provided to DTSC by Plaintiff, what was said to DTSC by Plaintiff, and what Plaintiff's intentions were regarding NCP compliance. For example, he writes that Plaintiff never informed DTSC about its removal actions, "had no intention to comply with the NCP" and "failed to follow the required public and community involvement." ECF 245, ¶¶26, 31, 45. These statements are speculative and made without foundation. And, they are false, as attested to by Mr. Clark-Riddell in his original declaration accompanying Plaintiff's MSJ and declaration accompanying this instant motion.

Plaintiff's have demonstrated NCP compliance. Mr. Clark-Riddell examined CERCLA's NCP regulations and concluded that Plaintiff had complied with these regulations. *Id.*, ¶¶34, 69-70, 73-74 (referencing 40 CFR 300.415, 40 CFR 300.430).

Robert Clark-Riddell's declaration stands in stark contrast to Mr. Wozniak's declaration. Mr. Clark-Riddell has extensive experience at the Site, has collected and analyzed data at the Site and offsite multiple times over the years, and has personally interacted with DTSC staff since 2016 and observed their oversight practices.[10] Based upon his education, experience, actual inspection of the Site, data collected by Pangea at the Site, levels of PCE contamination at the Site and adjacent properties, it is Mr. Clark-Riddell's opinion that when viewed as a whole, the response actions taken by Casa Nido between 2014 and 2024 were consistent with the NCP and have resulted in a CERCLA-quality cleanup. *Id.*, ¶80.

**B.     No Genuine Dispute Exists as to Material Facts Supporting Plaintiff's Nuisance and Nuisance Per Se Claims**

Defendants contend that the nuisance claims must fail because there has been no showing that the alleged pollution is injurious to public health and because it has not yet been determined if the nuisance is abatable.

Pollution of water constitutes a public nuisance. *See Newhall Land & Farming Co. v. Superior Court,* 19 Cal.App.4th 334, 341 (1993). The California nuisance statutes have been construed, according to their broad terms, to allow an owner of property to sue for damages caused by a nuisance created on the owner's property. Under California law, it is not necessary that a

---

[10] For information regarding DTSC practices at the Site, including problems with their oversight, see paragraphs 23, 29, 49-56 of Mr. Clark-Riddell's declaration.

nuisance have its origin in neighboring property. *Id.* at 342.

Damages recoverable in a nuisance action are "damages that would reasonably compensate (the plaintiff) for the annoyance and discomfort, including emotional distress or mental anguish, caused by the injury, to (plaintiff's) peaceful enjoyment of the property that (plaintiff) has occupied". CACI 2031. These damages are recoverable even when the trespass or nuisance involves solely property damage. *Hensley v. San Diego Gas & Electric Co.*, 7 Cal.App.5th 1337, 1348-1349 (2017).

Plaintiff's claim is based on the PCE contamination constituting a continuing nuisance. As regards the first contention, the Imminent and Substantial Endangerment Determination and Order and Remedial Action Order issued by DTSC in 2023 states that "PCE and trichloroethylene (TCE) are the primary hazardous substances found at elevated concentrations in soil, soil gas, and groundwater on Site. Their release has been documented during various sampling events from 2014 to 2022." ECF 234-10, p.25; *see also* the 2016 Site Assessment Report at ECF 148-2, pp.92-534. "PCE contamination extends laterally in groundwater to at least 250 feet southwest of the Site. PCE contamination has also been detected in groundwater more than 1,000 feet southwest of the Site." *Id.* That is, the contamination has spread beyond the Site. "The Site and neighboring properties are zoned for residential use. Certain of these properties are additionally zoned for commercial use. All adjoining properties are occupied by humans who may be exposed to Site contaminants. In addition, construction workers working at or near the Site may be exposed to Site contaminants." *Id.*, p.26. Thus, it is clear that the contamination constitutes a continuing threat to public health.

As regards the second contention, DTSC believes the nuisance is abatable. In the Imminent and Substantial Endangerment Determination and Order and Remedial Action Order notes that "[r]esponse action is necessary to abate a public nuisance and/or to protect and preserve the public health." None of the PRPs has the luxury of ignoring an order by DTSC requiring that the Site must be abated.

C.  **Defendant VERNELL Has No Defense to Liability**

Defendant VERNELL averred an affirmative defense that Plaintiff's injuries or damages were caused solely by the faults of third parties for which VERNELL is not responsible. Defendant

VERNELL argues that Plaintiff has not established that she cannot support this affirmative defense, and thus, summary judgment is appropriate. More specifically, she argues that her responses to special interrogatories and requests for production of documents sufficiently demonstrate that her affirmative defense remains viable, and thus, summary judgment is proper.

In that discovery, Plaintiff asked VERNELL to identify all facts, witnesses, and documents supporting her affirmative defense. ECF 234-5, pp.59-60, 83. Defendant VERNELL responded that "[c]ircumstantial evidence suggests that the alleged contamination" at the Site was caused by other operators of the drycleaning facility. She referenced the parties and documents produced in the case as such evidence. *Id.*

Now, Plaintiff's MSJ has provided evidence regarding Defendant VERNELL's liability, as evidenced by documents produced in the case and the Declaration of Mr. Clark-Riddell. Defendant can no longer hide behind boilerplate discovery responses devoid of substance. Rule 56 provides that she must cite to particular parts of materials in the record "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Rule 56(c). Because VERNELL has not done so, summary judgment is appropriate.

## III.   CONCLUSION

Defendants have failed to show any genuine dispute regarding their liability. For the foregoing reasons, Plaintiff respectfully asks this Court to grant its motion.

Dated: 8/5/24

JENNIFER RAE LOVKO (SBN 208855)
rlovko@greenfirelaw.com
GREENFIRE LAW, PC
P.O. Box 8055
Berkeley, CA 96707
Telephone/Fax: (510) 900-9502
*Counsel for Plaintiff and Counter-Defendant, Casa Nido Partnership*