Rachel S. Doughty (CBN 255904)
Jennifer Rae Lovko (SBN 208855)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
rdoughty@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASA NIDO PARTNERSHIP, a California Partnership, | Case No. 20-cv-07923-EMC |
| Plaintiff, | DECLARATION OF ROBERT CLARK-RIDDELL |
| v. | Date: August 28, 2024 |
| CATHERINE O'HANKS; SENTRY INSURANCE COMPANY; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON) and EARL RAY ANDERSON, | Time: 9:30 a.m.<br>Judge: Edward M. Chen<br>Courtroom: 5 – 17th Floor |
| Defendants. | Third Amended Complaint Filed: December 16, 2022 |
| AND ALL RELATED COUNTER AND CROSS CLAIMS. | |

I, Robert Clark-Riddell do declare and state:

1.      If sworn as a witness, I could and would testify to my personal knowledge of the facts set forth herein.

2.      My opinions in this declaration are based upon my education and background, materials referenced herein, as well as my experience in assessing and remediating volatile organic compounds ("VOCs") at the subject location at 12210 San Pablo Avenue, Richmond, California ("Site").

3.      My education, background, and familiarity with the Site have been addressed in my declaration previously for Plaintiff's Second Motion for Partial Summary Judgment (**ECF 234-2**).

4.      This declaration elaborates on work performed by Pangea and contact with the DTSC. It also addresses the opinions of Alborz Wozniak, filed by Defendant O'HANKS in this case (**ECF 245**).

**Initial Evaluation and VCA Contents**

5.      In October 2014, Casa Nido retained Pangea to perform an initial site investigation to determine if a past release of hazardous substances had occurred at the Site. In 2015 and early 2016, additional testing was conducted to provide further characterization of the extent of volatile organic compounds ("VOCs").

6.      The site inspection and testing conducted from 2014 through 2016 including a sewer video inspection, sampling of soil and soil gas, groundwater sampling and monitoring, and investigation of the lateral and vertical extent of groundwater contamination.

7.      Dry-cleaning operations at the facility ceased and the facility was permanently closed in 2015 after the initial discovery of PCE.

8.      On August 16, 2016, Pangea issued a Site Assessment Report that contains (1) a Site Description and Dry Cleaner History, (2) information from the EnviroStor database managed by CalEPA/Department of Toxic Substances Control (DTSC), (3) information on DTSC's site screening assessment conducted in 2011, (4) nearby facilities under DTSC oversight, (5) information on the Site's geology and hydrogeology, and (6) information from (i) subslab gas sampling at seven semi-permanent probe locations within the site building; (ii) source area soil characterization via nine borings within the site building; (iii) MIP assessment at one onsite and

three offsite locations for source and plume delineation; (iv) shallow plume delineation via ten boring locations; (v) VOC plume delineation within intermediate-depth groundwater via grab groundwater sampling at three locations based on MIP data; (vi) installation and sampling of four shallow groundwater monitoring wells; (v) a sanitary sewer video inspection; (vi) a well survey, (vii) a underground utility study. This report can be found at **ECF 148-2** at pp.92-534. In the Site Assessment Report, Pangea reached a number of conclusions, including that the "assessment data indicates that one or more historic releases of PCE has impacted site soil, groundwater, and subslab/soil gas at the site." *See* ECF 148-2 at p.118. The Report, in total, consists of 442 pages.

9.      Thereafter, in August 2016, Plaintiff submitted an application for agency oversight from the Regional Water Board, who referred agency oversight to DTSC. In September of 2016, DTSC indicated determination of DTSC selection as the oversight agency; however, the following month, DTSC stated it currently did not have the staff to manage the project.

10.     On November 1, 2016, a Casa Nido representative and I met with DTSC Supervisor Daniel Murphy. During that meeting, Mr. Murphy was told of concerns regarding the risk associated with contamination at the Thai restaurant located adjacent to the Site, and we discussed the need for a vapor intrusion mitigation and vapor removal system – specifically referencing the intended interim soil vapor extraction system and sub-slab depressurization system ("SVE/SSD system"). Mr. Murphy stated that this approach was reasonable. Plaintiff also noted that it wanted to demolish the building at the Site and begin excavation, which Mr. Murphy agreed was appropriate. He also found reasonable Plaintiff's intention to use a vapor intrusion barrier.

11.     Unfortunately, after the November 1, 2016 meeting, DTSC still was unable to assign staff to the Site.

12.     Then, in May of 2017, DTSC reported it was finally able to find staff to manage the project, and after additional agency interaction, Plaintiff entered a Voluntary Cleanup Agreement ("VCA") with DTSC.

13.     On May 10, 2017, DTSC identified Megan Indermill as the Project Manager for the Site. *See* **ECF 234-11** at p.377. In April of 2018, Parag Shah became Project Manager, and in May of 2020, Ian Utz became the Project Manager for the Site. Whitney Smith was identified as Ian Utz's supervisor. True and correct copies of letters establishing first Parag Shah and then Ian Utz as

Project Manager are attached hereto as **Exhibits A and B**.

14.     The purpose of the VCA was to (1) investigate and/or remediate a release or threatened release of any hazardous substance at or from the Site under the oversight of DTSC, and (2) to obtain reimbursement from Plaintiff for DTSC's oversight costs incurred pursuant to the VCA.[1] *See* **ECF 234-11** at p.378.

15.     The scope of work and agency oversight for the VCA identified 19 different tasks that Plaintiff might be requested to perform, "if deemed necessary." **ECF 234-11** at pp.388-394. DTSC's role would be to review and provide Plaintiff with written comments on documents requested as part of these tasks[2] and "provide oversight of field activities, including sampling and remedial activities, as appropriate." *Id.* at p.378.

16.     Task No. 1 was for the parties to have a scoping meeting, and Plaintiff was to provide DTSC with all background reports and data in its possession. *See* **ECF 234-11** at p.388.

17.     Task No. 2 was to conduct a preliminary endangerment assessment ("PEA"), "if necessary." The VCA provided that documents "which may be required as part of the PEA are:"

> (a)     PEA Workplan. This workplan shall include a sampling plan designed to determine the type and general extent of contamination at the Site; a health and safety plan addressing health and safety issues and safe work practices; and a quality assurance/quality control plan to produce data of known quality.
> (b)     PEA Report. This report will document whether a release has occurred or threatened release exists, the threat the Site poses to human health and the environment, and whether further action is necessary.
> (c)     If existing data and reports are complete and consistent with information required in the PEA guidance, DTSC may at its discretion choose to consider existing data and reports as equivalent to a PEA.

*See* **ECF 234-11** at p.388.

18.     After completion of the PEA task, Task No. 3 under the VCA addressed additional site characterization. *See* **ECF 234-11** at pp.388-389. This contemplated a sampling and analysis

---

[1] As of April 3, 2024, I am aware that DTSC has charged $188,509.96 for oversight costs. *See* **ECF 234-3** at pp.3-4.

[2] Also, the VCA provided: <u>When requested by DTSC</u>, [Casa Nido] shall make available for DTSC's inspection, and shall provide copies of, all data and information concerning contamination at or from the Site, including technical records and contractual documents, sampling and monitoring information and photographs and maps, whether or not such data and information was developed pursuant to this Agreement." *See* **ECF 234-11** at pp.378-379 (emphasis added).

workplan "if necessary" and a site characterization report. *Id.*

19.     The last task, Task No. 19, addressed submission of a Health and Safety Plan.

**Urgent Removal Actions**

20.     As noted above in paragraph 10, DTSC was told in 2016 of the need for soil excavation and an SVE/SSD system, with a DTSC supervisor acknowledging that these were appropriate and reasonable.

21.     In addition to site inspection and testing done prior to the 2016 Site Assessment Report, Pangea conducted additional groundwater, soil, and subslab gas testing in 2017 and 2018 to further assess risk. Testing included testing of subslab gas at the Thai restaurant located adjacent to the Site (hereafter "Thai restaurant").

22.     A draft workplan was created by Pangea in 2018 to propose interim measures to address vadose intrusion at the Site by removing source material (via excavation) and feasibility testing of a combined SVE/SSD system to mitigate vapor intrusion risk at the Thai restaurant.

23.     During the initial DTSC oversight period, it became clear that DTSC had insufficient resources or ability to ensure an accelerated or urgent response to the imminent hazard to human health or the environment from hazardous substances at the Site. Specifically:

        a.     DTSC performed a Site Screening Assessment in April 2011 at the Site, recommending that DTSC pursue further action to determine if a past release of hazardous substances had occurred, and DTSC made no efforts to pursue further action. DTSC also did not contact the property owner at the Site.

        b.     Plaintiff tried to get agency oversight as soon as Pangea's 2016 Site Assessment Report was issued; however, it was not until May of 2017 – over 9 months later – that DTSC was able to assign staff to the Site.

        c.     In May of 2017, Plaintiff and DTSC entered into the VCA. Plaintiff and I attended scoping meetings and provided DTSC with a copy of the 2016 Site Assessment Report. DTSC took no substantive action as result until December 7, 2017, at which time, DTSC asked Casa Nido for an investigation workplan.[3] DTSC and Pangea

---

[3] This investigation workplan was requested as part of Task No. 2 of the VCA. DTSC did not ask for a PEA.

DECLARATION OF CLARK-RIDDELL

talked about the scope of this workplan thereafter, and it was agreed that it would only address offsite vapor intrusion. Accordingly, on July 17, 2018, Plaintiff submitted its first Offsite Vapor Intrusion Assessment Workplan.

d.  On September 7, 2018, DTSC issued a letter, noting that the DTSC Human and Ecological Risk Office ("HERO") "recommends interim hazard mitigation measures (e.g., ventilation) for the restaurant until subslab vapor samples are collected and vapor intrusion risk is assessed." This recommendation occurred almost two years after Plaintiff had first tried to get agency oversight to address the imminent hazard caused by contamination at the Site.

24.  Thus, in 2018, Casa Nido directed Pangea to undertake interim hazard mitigation measures to safeguard human health. The justification for such response action was based on hazardous compound (TCE) concentrations up to 43 times the urgent response trigger levels established by DTSC HERO Note 5 guidance, and hazardous compound ("PCE") concentrations up to 3,500 times the remediation/mitigation response trigger levels established by DTSC's Vapor Intrusion Mitigation Advisory ("VIMA"), as addressed below.

25.  Based upon the imminent hazard to public health and DTSC's statement that HERO was recommending interim hazard mitigation measures, Pangea took the following steps:

a.  In October 2018, Pangea designed and implemented an interim action at the Site involving the removal of approximately 454 cubic yards of impacted soil and construction of a permeable reactive barrier at the Site.

b.  Between 2018 and 2020, Pangea designed and installed a combined SVE/SSD system at the Site and the Thai restaurant which was intended to limit off-site migration and exposure to vapor-forming chemicals. The SVE/SSD system extracts vapor from onsite SVE wells and three SSD points located inside the Thai restaurant. On June 30, 2020, Pangea prepared an SVE/SSD System Startup Report, which was provided to Ian Utz with DTSC. *See* **ECF 248-1**.

c.  The air permit from the Bay Area Air Quality Management District was received in

September 2019. The system was put into operation in 2020, with the delay

attributed the delay in permits being issued and PG&E's delay in providing electrical

service connection.

26.     HERO has established response action levels for accelerated and urgent response action due

to TCE contamination, which is applicable to sites with vapor intrusion concerns and evaluation of

mitigation measures and response actions. *See* DTSC HERO Human Health Risk Assessment Note

5 (August 2014). A true and correct copy of this document is attached hereto as **Exhibit C**. Table

A, below, presents a comparison of key initial TCE characterization data at the Site to levels

identified by DTSC HERO in the Note 5 document. It shows that TCE concentrations in Site soil

vapor exceeded DTSC's urgent response action levels for 8-hr commercial site use by up to <u>43

times</u> in soil gas five feet below grade (at well SG-5A) and up to <u>14 times</u> in subslab gas

immediately below the building slab (probe SS-2). The highest TCE concentration during initial

sampling of 34,600 µg/m3 was <u>43 times</u> the urgent action response level of 800 µg/m3. This TCE

characterization data indicates that urgent action was merited to comply with DTSC guidance.

### Table A – Urgent Response Evaluation for TCE

| Location ID | TCE Concentration in Subslab or Soil Gas (µg/m³) | DTSC Derived Screening Level, Subslab/Soil Gas (Commercial, 8 hr) (µg/m³) | DTSC **Urgent** Response Action Level, Soil Gas*,** (Commercial, 8 hr) (µg/m³) | Comparison to Screening Levels | **Urgent** Response Required per HERO Note 5? (Yes/No) |
|---|---|---|---|---|---|
| **TCE** | | | | | |
| SS-2 | 11,400*** | 24 | 800 | **14x Urgent Response Level** | **Yes** |
| SS-5 | 2,200 | 24 | 800 | **2.8 x Urgent Response Level** | **Yes** |
| SG-5A | **34,600** | **24** | **800** | **43x Urgent Response Level** | **Yes** |

\*  =  Soil gas response level derived from DTSC HERO Note 5 indoor air urgent response level using default slab attenuation factor of 0.03.
\*\* = Urgent response action level specified in DTSC HERO Note 5 from October 2014.
\*\*\* = Estimated as 0.6% of PCE concentration per PCE/TCE ratio in soil gas well SG-5A. Lab reported TCE as <100,000 ug/m³.

27.     DTSC's VIMA, which was published in 2011, identifies potential response actions, based

on risk and hazard levels, to address the vapor intrusion ("VI") pathway. The VIMA states the need

for a specific response action should be made on a case-by-case basis using multiple lines of

evidence. And, for vapor intrusion mitigation, DTSC recognizes that "the most commonly

DECLARATION OF CLARK-RIDDELL

accepted mitigation techniques are systems that dilute contamination by ventilation (SSV) and systems that reduce contamination by lowering pressure (SSD systems)." The specific action(s) taken to address VI from a subsurface source will depend on the estimated risk and hazard levels. The point of departure for risk management decisions for cancer risk is 1x10-6 (one-in-a-million). Sites with risk or hazard from volatile chemicals in excess of these points of departure will require a response action and long-term environmental care. Potential response actions could include: continued monitoring of conditions, installation of a VI mitigation system (such as SSD system), and source remediation. For sites with an estimated risk of >1x10-4 from VI to indoor air concerns, both mitigation and source remediation may be needed. The timing of response action depends on building use, Site plans, and multiple lines of evidence to evaluate potential human health risks from VI. *See* **ECF 234-11 at** pp.286-357.

28.     To evaluate site-specific risk from PCE concentrations at the Site, key initial PCE characterization data at the Site is compared to DTSC screening levels (SL) and possible mitigation/remediation for risk >1x10-4 within Table B, below. These DTSC SL are derived from indoor air screening levels, use of default slab attenuation rate of 0.03, and are representative of an incremental lifetime cancer risk (LTCR) of 1-in-a-million (1 x 10-6). As shown in Table B, the highest PCE concentration in soil gas exceeds the DTSC SL by 350,000 times. Based on the DTSC SL, the 350,000 times data represents an estimated LTCR of 3.5 x 10-1, which is equivalent to 350,000-in-a-million (or 1 in 3 cancer risk). This value exceeds the >1x10-4 screening level by 3,500 times. Casa Nido and Pangea concluded that this extremely elevated level (1 in 3 cancer risk) of risk merited interim removal actions on an accelerated or urgent basis.

//

//

//

//

DECLARATION OF CLARK-RIDDELL

**Table B – Remediation/Mitigation Response Evaluation for PCE**

| Location ID | PCE Concentration in Subslab or Soil Gas (µg/m$^3$) | DTSC Derived Screening Level, Subslab/Soil Gas (Commercial, 8 hr) (µg/m$^3$) | DTSC Response Action Level (>1x10$^{-4}$ Risk), Soil Gas* (Commercial, 8 hr) (µg/m$^3$) | Comparison to DTSC Action Level for >1x10$^{-4}$ Risk | Remediation/ Mitigation Response Required per DTSC VIMA? (Yes/No) |
|---|---|---|---|---|---|
| **PCE** | | | | | |
| SS-2 | 1,900,000 | 67 | 6,700 | **280x** screening level | **Yes** |
| SS-5 | 28,000 | 67 | 6,700 | **4x** screening level | **Yes** |
| SG-3B | 23,900,000 | 67 | 6,700 | **3,500x** screening level | **Yes** |
| SG-5A | 5,850,000 | 67 | 6,700 | **870x** screening level | **Yes** |

\* = Soil gas response level corresponding to 1 x 10$^{-4}$ risk is derived from 100 times the DTSC SL that is based on 1 x 10$^{-6}$ risk.

**Continuance of SVE/SSD System**

29.     Although DTSC contends that it is still reviewing the interim removal actions taken by Plaintiff, DTSC ordered in 2020 that Plaintiff continue to operate the SVE/SSD system on a continual and ongoing basis.

30.     After termination of the VCA, DTSC's Imminent and Substantial Endangerment Determination and Order and Remedial Action Order mandates that "the currently-installed SVE/SSD system shall continue to be operated until DTSC approves system shutdown." *See* ECF **234-10** at p.29.

31.     The removal actions taken by Casa Nido and Pangea successfully addressed the risk to human health. During a meeting on August 4, 2022, DTSC Supervisor Whitney Smith thanked Casa Nido for their initial response actions at the Site. Supervisor Smith confirmed that the Casa Nido would get credit for the significant source removal, removal/remediation actions, and mitigation measures, and that DTSC will eventually review response action documentation to determine if any additional removal or remediation is merited at the Site. DTSC confirmed the future remedy for the Site might only involve "monitored natural attenuation" or continued operation of the existing system, without the need for additional soil or groundwater remediation. DTSC concurred that the recent assessment data performed with DTSC oversight did not find

significant human health risk, which is likely the result of successful early actions conducted by Casa Nido.

32.     Prior to conducting soil extraction or installing the SVE/SSD system, Plaintiff considered various designs and plans, as well as cost estimates for all considered alternatives.

33.     Various vadose-zone removal action technologies were considered and discussed.

    a.   *In Situ* Soil Treatment. One option discussed was *in situ* soil treatment alternatives. Casa Nido rejected these as unfeasible due to permitting and implementation costs, as well as effectiveness. Electrical Resistive Heating ("ERH") was found to be prohibitively expensive. *In situ* chemical flushing was determined to be an ineffective alternative due to the fine-grained soil at the Site. Solidification also was considered but deemed costly and to have limited effectiveness for the containment of VOCs.

    b.   *Ex Situ* Soil Treatment. Casa Nido rejected these as unfeasible due to permitting and implementation costs, as well as effectiveness. The Site also provided insufficient room for land farming and is too close in proximity to neighbors. There is insufficient room for SVE to thermal desorption of VOCs in fine-grained soil.

    c.   Soil Vapor Extraction. Soil vapor extraction is a presumptive remedy according to EPA guidance. It was determined to be feasible and selected as a cost-effective measure to target residual VOC impact after source area excavation, using an initial SVE/SSD layout for feasibility testing and initial operation.

    d.   Excavation. The excavation and offsite disposal that occurred at the Site is a presumptive remedy according to EPA guidance and is consistent with what Plaintiff and I discussed with DTSC Supervisor Daniel Murphy on November 1, 2016. Prior to this action, Casa Nido considered excavating soil with the building at the Site left in place. This option was not selected as demolition of the building actually reduced the cost of excavation and facilitated effective soil extraction. Casa Nido also considered excavation using open pit excavation and structural shoring to support the adjacent brick structure. This option was ruled out as unfeasible due to the significant cost of structural shoring and concern about vibration for the adjacent

masonry structure. Ultimately, Casa Nido selected excavation using slot trenching as the most effective and proportionate to the dangers posed by the property.

34.     Saturated zone excavation to remove groundwater within the Site perimeter was conducted at the same time that soil was extracted. Various saturated-zone (groundwater) removal action technologies were considered and discussed with Casa Nido.

a.  No action. This option was not deemed feasible due to the imminent public harm posed by PCE in the groundwater. While testing at the Site demonstrated that some migration had occurred, if saturated zone excavation occurred, it was determined that the risk of further migration would be mitigated. And, this would allow further investigation and work subsequently to address if any additional non-time-critical removal or remediation work was necessary.

b.  Institutional Controls. Institutional controls are non-engineered instruments such as administrative and legal controls that help minimize the potential for human exposure to contamination. They typically are designed to work by limiting land and/or resource use or by providing information that helps modify or guide human behavior at a site. They include, for example, zoning restrictions. The NCP emphasizes that institutional controls are meant to supplement engineering controls, and that they will rarely be the sole remedy at a site. *See* 40 CFR 300.430(a)(1)(iii). Here, Plaintiff determined that institutional controls alone were not feasible as they would not mitigate or remove the imminent public threat caused by contamination.

c.  Groundwater Extraction. Groundwater extraction involves using submersible pumps to pump out groundwater. This technique was used extensively in the 1980s until deemed of limited effectiveness. This option was considered unfeasible overall due to cost and being less effective than other techniques.

d.  Extraction at Capillary Fringe. Plaintiff selected extraction for a capillary fringe area on the Site because such extraction was effective and financially feasible due to its shallowness and fine-grained soil.

e.  Permeable Reactive Barrier ("PRB") with Enhanced Reductive Dechlorination ("ERD")/Enhanced Biodegradation ("EISB"). ERD is the process of modifying

chemical, physical, and biological conditions in the aquifer to stimulate the microbial degradation of contaminants under anaerobic conditions to harmless end products (e.g., carbon dioxide [$CO_2$] or ethene). It is commonly used to remediate VOCs. EISB uses naturally occurring microbes to remove PCE and other volatile VOCs from groundwater. The PRB was constructed to mitigate vapor migration toward adjacent properties. Approximately 3,300 pounds of Daramend™ (an ERD/EISB media) was placed in the bottom of the 15-foot deep excavation and within three 14.5foot deep permeable reactive barrier trenches totaling approximately 108 feet in length and backfilled with 3-inch minus base rock from approximately 10 to 14.5 ft depth. Daramend™ is a dry mixture of zero-valent iron (ZVI), and organic amendments that promotes the in situ chemical reduction of chlorinated VOCs in groundwater via both abiotic and biotic dechlorination pathways.  Within the PRB trenches a vapor barrier (DragoWrap) was placed vertically from approximately 14 ft depth to the ground surface. This PRB with ERD/EISB option was selected as a feasibility test/study, in conjunction with groundwater extraction at the capillary fringe, as being the most feasible option based upon its cost and determination to be the most effective in addressing the imminent public health threat posed by contaminated groundwater.

f.  ISCO. Plaintiff considered *in situ* chemical oxidation ("ISCO"), which involves injecting chemicals to help change harmful contaminants into less toxic ones using oxidation. This alternative was not considered feasible as the cost associated to deliver injection media was substantially higher than the option selected by Plaintiff, and it would have required additional testing design an ISCO approach and evaluate potential generation of deleterious byproducts in the subsurface. It also offered no benefits above the option selected by Plaintiff. I do note that in the future, remedial injections may warrant consideration; however, they were not warranted at the time that Plaintiff undertook time-critical removal action.

**Completion of VCA Tasks and Associated Work**

35.    As regards Task No. 1 of the VCA, Plaintiff and I complied with this, attending multiple

scoping meetings and providing DTSC with the 2016 Site Assessment Report.

36.     As regards Task No. 2, Plaintiff successfully issued a documented, preliminary assessment with the 2016 Site Assessment Report and Offsite Vapor Intrusion Assessment Workplan.

37.     During Mr. Utz's initial management, DTSC acknowledged that investigations conducted prior to the VCA addressed many elements usually contained in a PEA. Mr. Utz also stated that he recognized DTSC had not previously requested a PEA.

38.     On October 8, 2020 and November 23, 2020, Mr. Utz asked that the Offsite Vapor Intrusion Assessment Workplan be revised to include, among other things, information regarding historical owners/operators (e.g., contact information, relationship to site, proof of relationship to site). *See* Exhibits 7 and 11 to the Utz Depo., which are attached as Exhibit A to the Declaration of Rae Lovko (hereafter "Utz Depo"). Rather than revise this workplan, DTSC and I agreed that such information could be included in documentation covered by Task No. 3 of the VCA. On December 4, 2020, I sent Mr. Utz a Additional Characterization Report, which contained the requested information. A true and correct copy of an email exchange between Ian Utz and I in this regard is attached hereto as **Exhibit D**.

39.     In late 2020, and again in 2021, Mr. Utz indicated to me that he considered the PEA phase as complete.

40.     As regards Task No. 3, on October 15, 2020 and November 23, 2020, Mr. Utz directed Plaintiff to prepare a draft additional site characterization report, which was submitted to DTSC on December 4, 2020.

41.     Ian Utz also requested a health and safety plan. Exponent (who were retained by Pangea) prepared a draft Health and Safety Plan ("HASP") that covered activity related to operation and maintenance of the SVE/SSD system.

42.     Plaintiff submitted two draft HASPs to Mr. Ian Utz. The first was emailed to him in November of 18, 2020 and can be considered a SVE/SSD System or O&M HASP. The second was provided to him in 2021 and can be considered a Site Characterization HASP.

43.     On October 29, 2021, DTSC accepted the second HASP as part of DTSC's conditional approval of Plaintiff's Offsite Vapor Intrusion Workplan. At that time, DTSC had not yet completed review of the first HASP. Attached hereto as **Exhibit E** is a true and correct copy of a

1  screenshot taken of DTSC's Envirostar website for the Site (https://www.envirostor.dtsc.ca.gov/

2  public/profile_report?global_id=60001434), which demonstrates this status.

3  44.    In a telephone conversation that I had with Ian Utz on February 8, 2022, Mr. Utz confirmed

4  that the Project was no longer in the PEA stage but had moved into the supplemental investigation

5  stage.[4]

6  45.    In addition to the above work and documentation, Pangea prepared the following:

7          a.  Groundwater Monitoring Report. DTSC issued an Imminent and Substantial

8              Endangerment Determination for the MacDonald-San Pablo-Wall-45th Plume Site in

9              2006. This was amended in March of 2022 and references both the Groundwater

10             Monitoring Report and Off-Site Vapor Intrusion Investigation Workplan. The

11             amendment altered the boundaries of the Plume site to include the at-issue Site. A

12             true and correct copy of these documents is attached hereto as Exhibit F.

13         b.  Plaintiff provided DTSC with a technical report containing updated soil vapor and

14             groundwater data on March 22, 2022. This report can be viewed at the Envirostar

15             website at https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=

16             60001434.

17 46.    Both Plaintiff and DTSC have communicated with the public concerning the Site. Ian Utz

18 was involved in relaying such communication's to DTSC's public participation specialist. Casa

19 Nido and I also have met and talked to this public participation specialist.

20 47.    Based upon my communication with DTSC's public participation specialist, I understood

21 that Plaintiff was in compliance with requirements regarding public notification. Any additional

22 requirements would be handled by DTSC.

23 48.    As regards communication with the public, the following are known to have occurred:

24         a.  In 2016, the owner and manager of the Thai restaurant were contacted by Plaintiff

25             and Pangea, and they were told that some contamination had been found at the Site.

26             Thereafter, Pangea was granted access to the restaurant to conduct subslab gas

---

[4] DTSC's Imminent and Substantial Endangerment Determination and Order and Remedial Action Order also focuses on removal and remediation actions required after a site evaluation/preliminary assessment has been completed. Among the tasks mandated or considered by this document, DTSC does not ask for a site evaluation/preliminary assessment. **ECF 234-10** at pp.22-64.

sampling. The SSD component of the SVE/SSD system installed by Pangea is located on the restaurant property.

b.  In 2017, I was in communication with the City of Richmond regarding the need to demolish the building at the Site and excavate soil due to the presence of hazardous levels of VOCs at the Site.

c.  In late 2018 and early 2019, I communicated with the Bay Area Air Quality Management District to obtain a permit for operation of the SVE/SSD system.

d.  In June of 2020, Casa Nido sent a letter to the owners of the Thai restaurant to update them about chemicals found on their property. Attached hereto as Exhibit G is a true and correct copy of the June 2020 letter sent to the Thai Restaurant.

e.  In 2020, DTSC stated it would begin preparing Community Update Fact Sheets.

f.  In October of 2021, in accordance with the Offsite Vapor Intrusion Assessment Workplan, DTSC ordered Plaintiff to conduct testing at adjacent properties. That same month, DTSC published a Community Update bulletin that addressed contamination at the Site. A true and correct copy of this document is attached hereto as Exhibit H.

g.  Plaintiff communicated with the owners/residents at these five locations to explain that contamination had been found at the Site, and Plaintiff wanted access to collect subslab vapor and indoor air data. Such communication occurred by letter, email, and phone.

h.  For Wendy's restaurant, DTSC also was involved in the communication. A true and correct copy of emails related to communications with Wendy's is attached hereto as Exhibit I.

i.  In January of 2022, DTSC stated that it sent a community survey to 1,321 street addresses/recipients located within and beyond a ¼ mile radius of the Site. The mailing list went beyond the typical ¼ mile radius used by DTSC considering the gradient and potential addresses impacted. See Exhibit J at pp. 2-12 and Appendix A thereto.

j.  As of February 2022, the owners/residents at all locations except Wendy's had

granted Plaintiff access to conduct offsite testing.[5] A true and correct copy of a February 9, 2022 email from Ian Utz regarding this status is attached hereto as <u>Exhibit K</u>. At the beginning of this email, Mr. Utz also memorializes our meeting with him and DTSC's public participation specialist.

    k.   DTSC communicated with the City of Richmond about the Site and its contamination in March of 2022. See **Exhibit I**.

    l.   On March 7, 2023, DTSC issued a letter containing environmental testing results to adjoining residential and commercial property owners of the Site. A true and correct copy of this letter is attached hereto as **Exhibit L**.

    m.   DTSC prepared a public participation plan for the Site in October 2023. This plan was approved by DTSC's public participation specialist in February of 2024. The plan discusses past efforts to communicate with the public, as well as future plans to conduct further outreach. *See* **Exhibit J**.

    n.   DTSC interviewed 12 individuals between January 26, 2023 and February 27, 2023 to obtain information about the community characteristics, concerns, issues, and effective methods of public outreach as regards the Site. *See id.* at p.2-13.

**Ian Utz**

49.    When Ian Utz became Project Manager, DTSC become more responsive to contamination at the Site and provided more oversight. Casa Nido welcomed this.

50.    Generally, I have found Mr. Utz tries to be responsive to any questions that arise from his communications. I am frustrated, however, by the fact that he has both thanked Plaintiff and Pangea for their work at the Site while, at the same time, stating that actions taken by Plaintiff and Pangea were done without oversight prior to his assignment as the Site's Project Manager.

51.    Prior to Ian Utz stepping into the role of Project Manager, as addressed above, DTSC oversight of the Site was almost entirely absent. By way of comparison, prior to his involvement, DTSC oversight charges totaled $25,011.45. After Mr. Utz's involvement, DTSC oversight charges totaled $163,498.51. *See* ECF 234-3 at pp.3-4. Plaintiff tried to engage DTSC in oversight in

---

[5] DTSC subsequently ruled that due to failure to establish access agreement with the final property (Wendy's Restaurant, due to exorbitant cost of access), field work was considered complete as of 9/14/2022.

DECLARATION OF CLARK-RIDDELL

1    August of 2016 and thereafter, but DTSC was nonresponsive to the urgent public health hazard at

2    the Site.

3    52.    Once Ian Utz became Project Manager, I understood that DTSC would be reviewing the

4    interim actions taken by Plaintiff and Pangea, as well as technical reports produced by Plaintiff and

5    Pangea. Yet, more than four years have passed, and DTSC has still not reviewed most of the work

6    done and documents produced by Plaintiff and Pangea. For example, DTSC's Imminent and

7    Substantial Endangerment Determination and Order and Remedial Action Order contains the

8    following information:

Technical Reports

California Department of Toxic Substances Control (DTSC). 2011. Site Screening Assessment, Omo Fabricare Cleaners, Richmond. April 1.

**Exponent, Inc. (Exponent). 2020. Health and Safety Plan (HASP), Former Omo's Cleaners, Pangea Environmental Services, Inc., for Subslab Depressurization/Soil Vapor Extraction System Operation & Maintenance. December 7.

Exponent. 2021. Health and Safety Plan (HASP), Former Omo's Cleaners, Pangea Environmental Services, Inc., for Site Characterization. March 18.

Pangea Environmental Services, Inc. (Pangea). 2016. Site Assessment Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. August 16.

**Pangea. 2017. Groundwater Monitoring Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. June 19.

**Pangea. 2020. Groundwater Monitoring Report 2019, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. April 30.

**Pangea. 2020. SVE/SSD System Startup Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. June 30.

**Pangea. 2020. Additional Characterization Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. December 4.

Pangea. 2021. Final Draft Revised Off-Site Vapor Intrusion Investigation Workplan, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. March 19.

**Pangea. 2022. Data Report, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. March 21.

Pangea. 2022. Preliminary Sampling Data Summary, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. May 23.

Pangea. 2023. Preliminary Sampling Data Summary, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. January 25.

**Pangea. 2023. Groundwater Monitoring Report 2022, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond. January 26.

Weiss Associates. 2008. Ground Water Investigation Report for Macdonald-San Pablo-Wall-45th Plume Study Area, Richmond and El Cerrito, California. May 16.

(** Unapproved/unreviewed by DTSC at the time of this order.)

23    53.    Twelve of the technical reports identified in the preceding image were produced by Pangea

24    or its consultant, Exponent. Eight of them have double asterisks by them, indicating that DTSC was

25    "unable to identify an acceptance or approval letter" for them. See Utz Depo., Vol. 2, at p.118:3-8.

26    One of the documents was issued as far back as 2017 – but still, DTSC states it has not been

27    approved/reviewed.

28    54.    Not only has DTSC been slow to respond to documents produced by Plaintiff, but the above

image actually is incorrect in stating that the Groundwater Monitoring Report has not been approved/reviewed. As addressed above in paragraph 45a, DTSC relied upon this report in 2022 when determining that an amendment was needed for its Imminent and Substantial Endangerment Determination for the MacDonald-San Pablo-Wall-45th Plume Site.

55.     I have been further frustrated by Mr. Utz's approach to management insofar as he stated he would not look at documents drafted by Pangea prior to his assignment (such as the draft workplan created by Pangea in 2018 to propose interim measures). Instead, he stated he only wanted to look at the documents specifically requested by him, which focused on offsite vapor intrusion and additional characterization of the Site.

56.     Despite the fact that DTSC refused to engage in meaningful oversight from 2018 through early 2020, the fact that DTSC takes years to approve reports for the Site, and the fact that Mr. Utz would not look at previously documented work, in November of 2020, Mr. Utz complained about the pace of Plaintiff's work at the Site being too slow. Utz Depo., Vol. 1, at p.78:10-79:18. This was just 6 months after Mr. Utz had been appointed Project Manager.

57.     I have reviewed Exhibit A to Jennifer Lovko's Declaration, which contains excerpts from Ian Utz's February 29, 2024 deposition, taken in this case. Despite his involvement since 2020, his testimony indicates a lack of awareness of the Site and work completed there. It indicates that he did not review all communications sent to him. This is demonstrated by the following excerpts:

       a.   When asked whether it was his responsibility to oversee the VCA, Ian Utz was only able to say "To some extent." *See* Utz Depo, Vol. 1 at pp.23:21-24:1.

       b.   Mr. Utz stated that prior to his appointment as Project Manager in 2020, he had no involvement with the Site. *See* Utz Depo, Vol. 2 at p.123:21-24.

       c.   He was asked whether he was aware of any work that Casa Nido did on the Site prior to entering into the VCA with DTSC in 2017. He answered that he did not know. *See* Utz Depo., Vol I at p.30:2-21.

       d.   Mr. Utz was asked whether DTSC provided oversight of Plaintiff's removal of impacted soil (which occurred in 2018), whether this action was in accordance with the VCA, and whether DTSC had approved the action. He stated that he did not know. *See* Utz Depo., Vol I at pp.34:13-35:12, 50:3-19.

e.   As addressed above, Pangea installed a permeable reactive barrier at the Site in 2018. Pangea also designed and installed an SVE/SSD system from 2018 through 2020. It became operational in 2020. In his deposition, Mr. Utz testified that he did not know if a permeable reactive barrier had ever been installed at the Site. *See* Utz Depo., Vol I at pp.38:11-13, 38:21-39:6. He was aware that an SVE system had been installed, but he testified that an SVE had not been installed. *See* Utz Depo., Vol I at pp.37:19-38:10, 38:14-16.

f.   As addressed above, Plaintiff completed Task No. 1 of the VCA by participating in scoping meetings and producing the 2016 Site Assessment Report. Yet, when asked at deposition whether Plaintiff had completed this task, he replied "I don't know." *See* Utz Depo, Vol. 1 at p.22:10-16.

g.   As addressed above, Plaintiff completed Task No. 2 by issuing the 2016 Site Assessment Report and Offsite Vapor Intrusion Workplan. And, in 2020, 2021, and 2022, Mr. Utz confirmed that he considered this task done. But, in his deposition, when asked whether the requirements had been met for this task (referred to as the PEA requirement), he testified: "I'm not sure whether DTSC has accepted the information submitted to date as what we would call a PEA equivalent, but I know that we have not approved any documents during my time as project manager with the title PEA or preliminary endangerment assessment." *See* Utz Depo, Vol. 1 at p.84:8-20.

h.   Although Mr. Utz recognized HERO as a DTSC support unit, he was unaware whether HERO had ever published response action levels for accelerated and urgent response actions due to TCE contamination. *See* Utz Depo, Vol. 2 at pp.132:4-133:7.

i.   I am aware that when Casa Nido terminated the VCA in 2023, it was based upon the fact that parties (such as Defendant O'HANKS) had refused to contribute to cleanup at the Site. A letter stating this was sent to Ian Utz on December 21, 2022. *See* **ECF 248-5.** At his deposition (which occurred only two months later), Mr. Utz testified that he did not recall Casa Nido terminating the VCA based on other parties not contributing. *See* Utz Depo, Vol. 2 at pp.150:9-151:2.

DECLARATION OF CLARK-RIDDELL

**CERCLA-Quality Cleanup/Declaration of Alborz Wozniak**

58.     Cleanup at the Site is required to be of "CERCLA-Quality." DTSC is not the only governmental organization that provides guidance as regards what constitutes such quality. Other state and federal organizations issue guidance for cleanup of sites where toxic contaminants are present. Thus, the work performed by Plaintiff at the Site not only took into consideration DTSC oversight, but it also took into consideration CERCLA's NCP regulations and requirements.

59.     I was provided and have reviewed the Declaration of Alborz Wozniak filed on behalf of Defendant O'HANKS, as well as the index of documents that Mr. Wozniak compiled as Exhibit B to his declaration. *See* **ECF 245 and 246-1**.

60.     Mr. Wozniak's declaration is speculative and lacks foundation because Mr. Wozniak did not review the entire record in this matter. Most importantly, Mr. Wozniak did not review

    a.   My declaration submitted in support of Plaintiff's Second Motion for Summary Judgment (**ECF 234-2**);

    b.   The September 20, 2022 letter by Pangea re: Analysis of Remedial Work at Omo's Cleaners Site and NCP Compliance, which was referenced in **ECF 234-2** and provided as an Exhibit to Plaintiff's Second Motion for Summary Judgment (**ECF 234-11** at pp.359-373);

    c.   Any documents related to Plaintiff's work with DTSC on HASPs subsequent to December 8, 2020;

    d.   DTSC's 2006 Imminent and Substantial Endangerment Determination for the MacDonald-San Pablo-Wall-45th Plume Site, which was amended in March of 2022 and references both the Groundwater Monitoring Report and Off-Site Vapor Intrusion Investigation Workplan. *See* **Exhibit F**.

    e.   Plaintiff's technical report containing updated soil vapor and groundwater data, which was provided to DTSC on March 22, 2022.

    f.   DTSC's October 20, 2021 Community Update Bulletin. *See* **Exhibit H**. (DTSC also prepared a October 2020 Community Update Bulletin. *See* Utz Depo. at Exh. 7.

    g.   DTSC's October 2023 Public Participation Plan. *See* **Exhibit J**.

61.     Mr. Wozniak does not state that he looked at DTSC's Envirostar website for the Site. If he

had, he would have seen a multitude of documents and correspondence related to Plaintiff's work at the Site, including those contained as exhibits hereto and referenced in paragraph 60.

62.     Mr. Wozniak does not address the fact that a DTSC September 7, 2018 letter noted that the DTSC HERO recommended "interim hazard mitigation measures (e.g., ventilation) for the restaurant until subslab vapor samples are collected and vapor intrusion risk is assessed" (despite stating that he reviewed the September 7, 2018 letter).

63.     Because Mr. Wozniak does not have a complete understanding of the contamination at the Site, nor has he reviewed the full record in the matter, he has an insufficient basis by which to evaluate the environmental response actions conducted by Casa Nido.

64.     Mr. Wozniak addressed Plaintiff's work at the Site by dividing it into three timeframes. In paragraph 10 of his declaration, Mr. Wozniak states:

> During the first period, 2014 – 2017, Casa Nido performed response actions in an independent manner and with no agency or public involvement, and without preparing plans and documents that are required under the NCP procedures. In the second period, 2017 – 2021, Casa Nido had entered into a voluntary cleanup agreement (VCA) with the California Department of Toxic Substances Control (DTSC or Department) and was supposed to perform its response actions consistent with the requirements of the VCA.  However, Casa Nido ignored the VCA requirements and again conducted its work independent of the DTSC, without any public involvement, and without preparing the necessary plans and documents required under the NCP.  In the third and final period, 2021 – present, Casa Nido was under tight direction and close management by the DTSC due to its past failures to comply with the VCA, to involve the agency in its response actions, to prepare the necessary documentation, and to inform/involve the public.  During this third period, Casa Nido continued to fail to meet the necessary requirements for NCP consistency.

These dates are not in alignment with the facts. Casa Nido did not enter into the VCA until 2018. Casa Nido received closer management beginning in 2020, when Ian Utz became the Site Project Manager.

65.     For the first period of time, Mr. Wozniak makes several statements regarding the fact that Plaintiff did not engage any agency in the initial testing and evaluation of the Site. The CERCLA regulations, however, do not require that a private party engage any agency.

66.     For the first period of time, Mr. Wozniak concludes, without explanation, that "Casa Nido had not conducted a Removal Site Evaluation to determine whether there was an imminent threat or an exigency that would warrant a Removal Action (required under §300.410)." That is incorrect. As addressed above, Plaintiff conducted a removal site evaluation, including a removal preliminary

assessment (the 2016 Site Assessment Report), which meets the requirements of Section 300.410(a). Indeed, Section 300.410(c) states that an assessment need only be based on "readily available information." Plaintiff, on the other hand, went farther than this requirement by actually conducting a site inspection and collecting samples.

67.     For the second period of time, Mr. Wozniak notes that Plaintiff demolished the building at the Site in July of 2017 and engaged in soil excavation in 2018 without DTSC oversight. However, Plaintiff informed DTSC in 2016 that such work was necessary, and Daniel Murphy, a DTSC supervisor, stated such work was reasonable and appropriate. Further, Plaintiff developed a plan for this work and obtained permitting from the City of Richmond. As addressed above, for most of 2017, DTSC stated it had no staff to oversee the Site. In 2018, DTSC was not actively involved in oversight, requesting only an investigation workplan. Plaintiff responded to this by producing the Offsite Vapor Intrusion Investigation Workplan.

68.     For the second period of time, Mr. Wozniak also concludes that the SVE/SSD system installed between 2018 and 2020 is not NCP compliant. This also is not correct. Not only did Plaintiff provide DTSC with a workplan for this system, but it also complied with CERCLA's NCP regulations addressing removal actions.

69.     Removal actions include excavation or removal of highly contaminated soils and procedures designed to reduce the spread of contaminants off-site or lessen the likelihood of human exposure. *See* 40 CFR 300.415(e). The soil excavation conducted and SVE/SSD system installed by Plaintiff were removal actions according to this regulation.

70.     In determining the appropriateness of time-critical removal actions, various factors can be considered including:

> (i) Actual or potential exposure to nearby human populations, animals, or the food chain from hazardous substances or pollutants or contaminants;
> (ii) Actual or potential contamination of drinking water supplies or sensitive ecosystems;
> (iii) Hazardous substances or pollutants or contaminants in drums, barrels, tanks, or other bulk storage containers, that may pose a threat of release;
> (iv) High levels of hazardous substances or pollutants or contaminants in soils largely at or near the surface, that may migrate;
> (v) Weather conditions that may cause hazardous substances or pollutants or contaminants to migrate or be released;
> (vi) Threat of fire or explosion;
> (vii) The availability of other appropriate federal or state response mechanisms to respond to the release; and

(viii) Other situations or factors that may pose threats to public health or welfare of the United States or the environment.

40 CFR 300.415(b)(2).

71.     Prior to engaging in removal actions in 2017 through 2020, Plaintiff took into consideration these factors. As regards (i) and (iv), the information collected by Plaintiff indicated potential exposure to nearby humans, animals, and the food chain as a result of PCE in the soil and subslab gas. As addressed above, the levels of PCE at the Site and the Thai restaurant located adjacent thereto far exceeded thresholds established by HERO or the DTSC. As regards (ii), the groundwater monitoring conducted by Pangea indicated PCE-contaminate groundwater migration from the Site. Also relevant to Plaintiff's determination was the availability of other response mechanisms. As addressed above, during this time, DTSC had insufficient resources or ability to ensure an accelerated or urgent response to the imminent hazard to human health or the environment from hazardous substances at the Site.

72.     In designing, planning, and actuating the removal actions, I also took into consideration whether soil excavation and an SVE/SSD system were proportionate to the dangers posed by the property.

73.     Having determined that a time-critical removal action was required, Plaintiff acted as soon as possible to abate, minimize, and mitigate the threat to public health, as allowed by CERCLA regulation. *See* 400 CFR 300.415(b)(3).

74.     Because the removal actions were time-critical, CERCLA NCP regulations requiring an engineering plan/feasibility study did not apply to the actions. *See* 400 CFR 300.415(b).

75.     As addressed above, once the SVE/SSD system became operational in 2020, DTSC required its continued operation thereafter. At that point, DTSC began to increase its oversight activities, and Plaintiff responded by providing numerous documents (including revisions) regarding sampling done at the Site and adjacent properties, groundwater data, workplans, HASPs, and more.

76.     Mr. Wozniak opines that "no public participation was performed by Casa Nido between 2014 and 2021." This is untrue. As addressed above, Plaintiff did communicate with the public both prior to and at the direction of DTSC. Further, DTSC also engaged in public participation.

77.     Mr. Wozniak's opinions not only lack foundation, but he does not refute that information

regarding PCE levels at the Site (through the 2016 Site Assessment Report or otherwise) indicated an imminent threat to public health. He does not even mention any of the sampling data collected by Pangea. Mr. Wozniak never addresses the appropriateness or effectiveness of Plaintiff's removal actions in the face of a threat to public health.

78.     Instead, Mr. Wozniak cites to Ian Utz's dissatisfaction with Casa Nido (as noted in several DTSC communications) and the failure of Plaintiff to comply with the VCA, *as interpreted by Mr. Wozniak*. As addressed above, Ian Utz is not the final word on NCP compliance and has demonstrated significant unfamiliarity with the Site and work there. There is no evidence indicating that Mr. Utz believes the soil extraction and SVE/SSD system were unnecessary or ineffective. And, as addressed above, DTSC Supervisor Whitney Smith believes they are effective.

79.     At no time did DTSC issue a notice of non-compliance with the VCA based on violations of NCP compliance or otherwise. And, as addressed above, Supervisor Whitney Smith stated that he was pleased with Plaintiff's work at the Site.

80.     Based upon my education, experience, actual inspection of the Site, data collected by Pangea at the Site, levels of PCE contamination at the Site and adjacent properties, it is my opinion that when viewed as a whole, the response actions taken by Casa Nido between 2014 and 20024 were consistent with the NCP and have resulted in a CERCLA-quality cleanup.


I make this declaration under penalty of perjury under the laws of the United States of America, executed this 1st day of August, 2024, in Berkeley, California.

By:     /s/ Robert Clark-Riddell

Robert Clark-Riddell


Under N.D. Cal. Local Rule 5-1(i)(3), in lieu of a signature, I attest that I obtained approval, on August 1, 2024, from Robert Clark-Riddell for the filing of this declaration.


/s/ *Jennifer Rae Lovko*
Jennifer Rae Lovko
ATTORNEY FOR PLAINTIFF

# EXHIBIT A

**Declaration of Robert Clark-Riddell**





## Department of Toxic Substances Control



**Matthew Rodriquez**
Secretary for
Environmental Protection

Barbara A. Lee, Director
700 Heinz Avenue
Berkeley, California 94710-2721

**Edmund G. Brown Jr.**
Governor

April 05, 2018

Joe Conwill
Casa Nido
1117 Arlington Avenue
El Cerrito, California 94530
mtc10860@aol.com

Dear Mr. Conwill:

The Department of Toxic Substances Control (DTSC) hereby notifies you that as of April 05, 2018, there will be a new DTSC Project Manager for the OMO Fabricare Dry Cleaners located at 12210 San Pablo Ave., El Cerrito, California 94804. Please direct all further site-related communications to:

      Parag Shah, Project Manager,
      Brownfields and Environmental Restoration
      Department of Toxic Substances Control
      700 Heinz Avenue
      Berkeley, California 94710

      Phone:     Office: 510- 540-3827
      Email:      parag.shah@dtsc.ca.gov

If you have any questions, please feel free to contact me via email or phone.

Sincerely,

Parag Shah
Project Manager, Environmental Scientist
Brownfields and Environmental Restoration Program


cc:     see next page

Mr. Joe Conwill
April 05, 2018
Page 2


cc (via email):          Bob Clark-Riddell
                         PANGEA Environmental Services, Inc.
                         1710 Franklin Street, #200
                         Oakland, California 94612
                         briddell@pangeaenv.com

                         Ronald Patiala
                         Casa Nido
                         13123 Regan Lane
                         Saratoga, California 95070
                         ronaldpiziali@gmail.com

                         Joe Conwill
                         Casa Nido C/O B&T Bookkeeping
                         3060 El Cerrito Plaza #507
                         El Cerrito, California 94530
                         tgiles@btbookkeeping.com

# EXHIBIT B

**Declaration of Robert Clark-Riddell**



## Department of Toxic Substances Control





**Jared Blumenfeld**
Secretary for
Environmental Protection

Meredith Williams, Ph.D.
Director
700 Heinz Avenue
Berkeley, California 94710-2721

**Gavin Newsom**
Governor

20 May 2020

(via e-mail to: mtc10860@aol.com)

Joe Conwill
Casa Nido
1117 Arlington Avenue
El Cerrito, California 94530

Dear Joe Conwill,

This letter provides notification that the Department of Toxic Substances Control's Project Manager overseeing the Omo Fabricare Dry Cleaners site at 12210 San Pablo Avenue in El Cerrito (Site Code No. 202121) has changed to Ian Utz, under the supervision of Whitney Smith, P.E.  Please direct future correspondence and communications to:

Ian Utz
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
ian.utz@dtsc.ca.gov

Respectfully,

*[signature]*

Ian Utz, Project Manager
Environmental Scientist
Site Mitigation and Restoration Program

cc:     See next page.

Joe Conwill
20 May 2020
Page 2


cc:     Bob Clark-Riddell, P.E.
        Pangea Environmental Services, Inc.
        briddell@pangeaenv.com

        Ronald Piziali
        Casa Nido
        ronaldpiziali@gmail.com

# EXHIBIT C

## Declaration of Robert Clark-Riddell

# HUMAN HEALTH RISK ASSESSMENT (HHRA) NOTE NUMBER 5: Health-based Indoor Air Screening Criteria for Trichloroethylene (TCE)





## CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL (DTSC) HUMAN AND ECOLOGICAL RISK OFFICE (HERO)

## DATE:  August 23, 2014

### SUMMARY

The U.S. EPA Region 9 released trichloroethylene (TCE) guidance on December 3, 2013 for expanded sample collection in the investigation of the Vapor Intrusion (VI) exposure pathway at specific National Priority List (NPL) sites in the San Francisco, CA South Bay.  *Accelerated Response Action Levels* and *Urgent Response Level Action Levels* for indoor air concentrations of TCE under residential, commercial/industrial (8-hour workday), and commercial/industrial (10-hour workday) exposure scenarios were presented in this document.

Use of these Region 9 Interim Action Levels to sites beyond the NPL South Bay sites in San Francisco, California was provided in the June 30, 2014 U.S. EPA Region 9 Regional Toxicologist's memorandum, released under a July 9, 2014 transmittal memorandum from Enrique Manzanilla, Director of the Superfund Division, U.S. EPA Region 9.

Multiple emails have inquired whether HERO is implementing the recommendations contained in this guidance.  This notice is a response to those inquiries, specifically on the issues of: 1) applicability to all sites where VI is being evaluated; 2) Interim Measures; and, 3) response actions.

### HERO ISSUE CONTACT PERSON(S):

Kimberly Gettmann, Ph.D.
Staff Toxicologist
916.255.6685 Voice
916.255.6560 Facsimile
Kimberly.Gettmann@dtsc.ca.gov

**SOUTH BAY SUPERFUND SITE RECOMMENDATIONS**

The EPA Region 9 December 3, 2013 guidance is directed specifically at a group of NPL 'Superfund' sites under investigation and evaluation by the San Francisco Regional Water Quality Control Board (SFRWQCB) where a significant amount of sampling has been conducted at sites with shallow groundwater (5 feet below ground surface [bgs] to 35 feet bgs) known to be contaminated with trichloroethylene (TCE). At this time, the detailed data gap sampling recommendations and requirements outlined in this guidance are not directed to all sites where VI is under investigation. HERO has discussed the EPA Region 9 recommendations for TCE to clarify the steps recommended for an initial VI investigation as well as potential response actions.

Definition of a groundwater concentration of 5 µg/L TCE as the delimiter of the On-Site and Off-Site Study Area boundary for the South Bay Superfund sites (EPA Region 9 December 2013 memorandum) is based on site-specific characteristics of the South Bay Superfund sites, drinking water Maximum Contaminant Level (MCL) of 5 µg/L, as well as screening-level modeling of the groundwater to indoor air pathway by EPA Region 9. At this time HERO does not recommend eliminating indoor air measurements of TCE based solely on groundwater concentrations less than 5 µg/L at other sites.

**INDOOR AIR CONCENTRATIONS OF TRICHLOROETHYLENE (TCE)**

The EPA Region 9 identifies the following Interim Action Levels for indoor air concentrations of TCE under differing exposure scenarios:

| EPA Region 9 Interim TCE Indoor Air Response Action Levels - Residential and Commercial TCE Inhalation Exposure from Vapor Intrusion | | |
|---|---|---|
| *Exposure Scenario* | *Accelerated Response Action Level (HQ=1)* | *Urgent Response Action Level (HQ=3)[4]* |
| Residential * | 2 µg/m³ | 6 µg/m³ |
| Commercial/Industrial ** (8-hour workday) | 8 µg/m³ | 24 µg/m³ |
| Commercial/Industrial ** (10-hour workday) | 7 µg/m³ | 21 µg/m³ |

* The residential HQ=1 accelerated response action level is equivalent to the inhalation reference concentration (RfC) since exposure is assumed to occur continuously.

** Commercial/Industrial accelerated response action levels are calculated as a time-weighted average from the RfC, based on the length of a workday and rounding to one significant digit (e.g., for an 8-hour workday: Accelerated Response Action Level = (168 hours per week/40 hours per week) x 2 µg/m³ = 8 µg/m³). Time-weighted adjustments can be made as needed for workplaces with longer work schedules.

Note: Indoor air TCE exposures corresponding to these accelerated response action levels would pose cancer risks near the lower end of the Superfund target cancer risk range, considering the IRIS toxicity assessment; thus, the health protective risk range for both accelerated response actions and long-term exposures becomes truncated to: 0.5 – 2 µg/m³ for residential exposures and 3 – 8 µg/m³ for 8-hour/day commercial/industrial exposures.

HERO concurs with the use of the USEPA Region 9 *Accelerated Response Action Level* of 2 µg/m$^3$ for exposure to TCE under a residential exposure scenario.  However, the significance and potential health implications of individual indoor air measurements greater than 2 µg/m$^3$ of TCE in residential buildings may vary based on site-specific conditions.  On March 27, 2014, the Massachusetts Department of Environmental Protect (MassDEP) released a Fact Sheet "TCE Toxicity Information: Implications for Chronic and Shorter-Term Exposure."  For exposure under a residential exposure MassDEP's "Immediate Response Action" is > 6 µg/m$^3$.  MassDEP recommended actions are to reduce TCE to levels below 6 µg/m$^3$ as soon as possible (within several days if possible).  HERO strongly recommends consulting the HERO toxicologist assigned to the site for a case-by-case evaluation and aid in determining the potential immediate risk at residential sites with indoor air concentrations greater than 1 µg/m$^3$.

HERO concurs with the use of the USEPA Region 9 *Accelerated Response Action Level* of 8 µg/m$^3$ for exposure to TCE under a commercial/industrial 8-hour workday scenario.  The MassDEP "Immediate Response Action under a commercial/industrial 8-hour workday is >24 µg/m$^3$ and recommends an Immediate Response Action of reducing levels of TCE to less than 24 µg/m$^3$ as soon as possible (within several days to a week if possible).  HERO strongly recommends consulting the HERO toxicologist assigned to the site to review the site indoor air TCE concentrations with respect to site-specific conditions when TCE indoor air concentrations for commercial/industrial use are greater than 3 µg/m$^3$.

The recommendation for sampling during colder seasons of the year (EPA Region 9 December 2013 memo; Item 3) is directed toward filling the perceived data gap for the South Bay sites without multiple rounds of sampling.  Detailed evaluation of some cold weather sites (e.g., Indianapolis, Indiana; Layton, Utah) has shown a factor of ten difference in indoor air concentrations between warm and cold seasons.  However, much smaller seasonal variation has been seen in some California sites and some sites in Hawaii.  Sites where multiple rounds of indoor air sampling are planned should include both late summer/early autumn and late winter/early spring sampling (DTSC, 2011; EPA 2012) until the issue of seasonal variance for California sites is resolved.

The EPA Region 9 July 9, 2014 inclusion of long-term passive sampling of indoor air (EPA Region 9 July 2014 memorandum; Sampling Considerations) is based on experience with passive air samplers similar to the Radiello© brand of passive air sampler [http://www.sigmaaldrich.com/analytical-chromatography/air-monitoring/radiello/learning-center/what-is-radiello.html].  Conceptually, it would seem reasonable to deploy long-term passive air samplers in addition to TO-15 evacuated canister (e.g., Summa canister) sampling to decrease inter-sample variance and obtain long-term averaged samples of indoor air concentrations.  However, more experience has been developed for TO-15 canister sampling and passive air sampler deployment should be a site-specific decision.

For sites with TCE contamination of groundwater or soil deemed to be of concern due to potential migration into indoor air, HERO recommends at least two indoor air samples in

both warm and cool season regardless of the concentration detected in the first sample. If the first sample detects a 'relatively elevated' concentration, a second sample should be obtained more quickly than delaying for a seasonal change to occur. HERO would consider a sample result between 0.48 µg/m³ and 2.0 µg/m³ 'relatively elevated'.  A sample concentration of 0.48 µg/m³ is 3 times greater than the 90th percentile TCE concentration the CARB detected over the last 5 years (Attachment A). The speed with which the second sample should be taken should be dictated by the concentration of the first sample.  HERO recommends that a second indoor air sample be taken immediately where the first sample concentration is at or above 2.0 µg/m³ for a residential exposure scenario and above 8 µg/m³ for a commercial/industrial scenario, as a reasonable precaution.

EPA Region 9 recommends indoor air sampling with the HVAC off for a period of 36 hours as part of the data to be developed for the South Bay NPL sites (EPA Region 9 December 2013 memorandum; Item 4).  HERO recommends HVAC-off sampling on a site-specific basis, for example:  1) where there is a third shift night crew working with the HVAC shut off; 2) to determine an upper bound air concentrations where sampling with HVAC in operation indicates air concentrations of concern; or, 3) to determine the upper bound air concentrations when developing design specifications for VI mitigation systems.

## INTERIM MEASURES

The EPA Region 9 July 9, 2014 memorandum recommends the following interim measures to reduce TCE exposure where indoor air concentrations indicate interim steps to reduce exposure are prudent.
- Increasing building pressurization and/or ventilation
- Sealing potential conduits where vapors may be entering the building
- Treating indoor air (carbon filtration, air purifiers)
- Installing and operating engineered exposure controls (sub-slab/crawlspace, depressurization systems)
- Temporary relocating occupants

DTSC has successfully used stand-alone air purifiers, with carbon filter units and built-in air circulation fans (e.g., Electrocorp Air Rhino, AirMedic Vocarb), to immediately reduce air concentrations at sites with elevated indoor air concentrations of TCE and other Volatile Organic Compounds (VOCs).

## RESPONSE

HERO concurs, in general, with the concentration-based tiered response actions outline in the July 8, 2014 EPA Region 9 memorandum for elevated concentrations, specifically:
- Where Indoor air concentrations in a first sample are greater than 0.48 µg/m³ but less than the applicable *Accelerated Response Action Level* a second sample should be obtained more quickly than delaying for a seasonal change to occur.

HHRA Note Number 5 – TCE Screening Criteria Indoor Air – August 23, 2014
Page 5

- Indoor air concentrations greater than the applicable *Accelerated Response Action Level* should lead to evaluation and potential implementation of interim measures.  The effectiveness of any interim action should be evaluated based on resampling performed within a few weeks.
- Indoor air concentrations greater than the applicable *Urgent Response Action Level* should lead to immediate mitigation measures within a few days.  The effectiveness of the mitigation measures should be evaluated based on resampling performed within a few days.

**REFERENCES**

DTSC 2011.  Final Guidance for the Evaluation and Mitigation of Subsurface Vapor Intrusion to Indoor Air (Vapor Intrusion Guidance).  October, 2011. http://www.dtsc.ca.gov/wp-content/uploads/sites/31/2018/01/Final_VIG_Oct_2011.pdf.

Massachusetts Department of Environmental Protect (MassDEP).  Fact Sheet, TCE Toxicity Information: Implications for Chronic and Shorter-Term Exposure.  March 27, 2014.

USEPA.  2012.  Superfund Vapor Intrusion FAQs. http://www.epa.gov/superfund/sites/npl/Vapor_Intrusion_FAQs_Feb2012.pdf

USEPA.  2013.  EPA Region 9 Guidelines and Supplemental Information Needed for Vapor Intrusion Evaluations at the South Bay National Priorities List (NPL) Sites.  EPA Region 9 Memorandum, December 3, 2013.

USEPA.  2014.  EPA Region 9 Response Action Levels and Recommendations to Address Near-Term Inhalation Exposures to TCE in Air from Subsurface Vapor Intrusion.  EPA Region 9 Superfund Program Memorandum, July 9, 2014.

HHRA Note Number 5 – TCE Screening Criteria Indoor Air – August 23, 2014
Page 6

**Attachment A.**

California Air Resources Board 'Ambient' TCE by year collected over a 24-hour period (midnight to midnight) every 12 days at 18 sites (20 sites before July 1995, 21 sites from July 1995 through July 2000) throughout California.

Data is available at http://www.arb.ca.gov/adam/toxics/statepages/tcestate.html

Data description is available at http://www.arb.ca.gov/adam/toxics/toxfacts.html



# EXHIBIT D

**Declaration of Robert Clark-Riddell**

## RE: [202121] Omo Fabricare Dry Cleaner – Additional Information/Preliminary Endangerment Assessment

Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
Mon 12/7/2020 5:08 PM
To:Bob Clark-Riddell <briddell@pangeaenv.com>

OK, thanks.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Monday, December 7, 2020 5:05 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Additional Information/Preliminary Endangerment Assessment

EXTERNAL:

Ian,

Quick update.  I will email workplan and HASP information later this evening.  Bob

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Monday, December 7, 2020 12:22 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Piziali <ronaldpiziali@gmail.com>; Rachel Doughty <rdoughty@greenfirelaw.com>
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; McDaniel, Larry@DTSC <Larry.McDaniel@dtsc.ca.gov>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Additional Information/Preliminary Endangerment Assessment

Hi Ron, Bob, Paul, and Rachel,

Received.  Thank you for your project updates.  I hope you had a nice holiday.  We look forward to receiving the revised workplan and health and safety plan today.

Please note that I am henceforth removing Larry McDaniel, Esq. from copy list, and replacing him with Doyle Graham, Esq.  If attorneys are copied on your/proponent's end, kindly also copy Doyle Graham, Esq. of DTSC's Office of Legal Counsel.

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program
Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Friday, December 4, 2020 8:43 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>; Paul Kibel <pskibel@waterpowerlaw.com>; Ron Piziali <ronaldpiziali@gmail.com>
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; McDaniel, Larry@DTSC <Larry.McDaniel@dtsc.ca.gov>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Additional Information/Preliminary Endangerment Assessment

EXTERNAL:

Hello Ian,

Pangea is pleased to submit the link below to our Additional Characterization Report: Additional Characterization Report

This report was required by prior verbal correspondence and agency emails dated October 15 and November 23, 2020.  The report also includes select background research following guidance of the DTSC's *Preliminary Endangerment Assessment Manual*, that can assist with DTSC's request for information from other involved parties.  Please note that a Chain of Title Report has been requested by the owners and will be submitted shortly.   Also note that a human health and ecological screening evaluation, including calculation of cumulative risk and hazard, and related information can be prepared in the future.

Per prior direction from you, this historical research has been incorporated into the additional characterization report that summarizes additional assessment data for soil, groundwater, and soil gas prior to interim actions conducted at the site.

P.S. The documents DTSC required by Monday, December 7, 2020 are nearing completion.  Bob

Bob Clark-Riddell, P.E.

Principal Engineer
Pangea Environmental Services, Inc.
1250 Addison Street, Suite 213
Berkeley, CA 94702
Mobile/Work (510) 435-8664
Main Office (510) 836-3700

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>

**Sent:** Monday, November 23, 2020 5:41 PM
**To:** Paul Kibel <pskibel@waterpowerlaw.com>; Ron Piziali <ronaldpiziali@gmail.com>; Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; McDaniel, Larry@DTSC <Larry.McDaniel@dtsc.ca.gov>; Graham, Doyle@DTSC <Doyle.Graham@dtsc.ca.gov>
**Subject:** [202121] Omo Fabricare Dry Cleaner - Additional Information/Preliminary Endangerment Assessment

Hello:

This is the second of three follow-up e-mails to our teleconference of November 19, 2020.

On November 19, 2020, during our teleconference, I explained that the Preliminary Endangerment Assessment (PEA) scope requirement of the Voluntary Cleanup Agreement (scope task #2) has only partially been fulfilled through existing reports/information (e.g., the 2016 site assessment, groundwater data, and soil vapor data).  Incomplete PEA elements include, but are not limited to:

- Historical evaluation of surrounding properties, including for owners/operators and known/threatened releases.
- Historical evaluation of the site, including for owners/operators, hazardous materials/waste use/generation, inspections, permits, etc.
- Development of conceptual site model that lists the potential exposure pathways from contamination.
- Identification/listing of chemicals of potential concern (COPCs) through a screening evaluation process with data quality objectives.
- Human health and ecological screening evaluation, including calculation of cumulative risk and hazard.

While on the surface level some of these items have been contemplated or started, they have not been completed per our guidance:  https://dtsc.ca.gov/wp-content/uploads/sites/31/2018/01/PEA_Guidance_Manual.pdf

Casa Nido has stated that it acquired the Site in the 1970s, prior to the promulgation of certain environmental laws and regulations.   In addition, via e-mail on August 18, 2020, PANGEA indicated that it was not aware of any historical Phase I Environmental Site Assessments completed at the Site.  Finally, as of today, Casa Nido has not provided DTSC any owner/operator primary sources of information (e.g., deeds, chains of title, lease agreements, waste manifests, chemical inventories and purchasing records, etc.), but is currently seeking contribution from third parties who/which it alleges were owners/operators, and may have been involved with the release of hazardous substances (e.g., alleged dumping to an exterior area).

Because the PEA requirement has not been fulfilled, DTSC does not have an adequate understanding of the owners/operators, nature or extent of known/threatened releases, or potential exposure pathways at the site.  **Accordingly, by December 4, 2020, please forward me information regarding historical owners/operators (e.g., contact information, relationship to site, proof of relationship to site as contemplated above) that would enable DTSC to fill such data gaps through, for example, information requests.**

Ian Utz, Environmental Scientist
Site Mitigation and Restoration Program

Department of Toxic Substances Control
California Environmental Protection Agency
700 Heinz Avenue, Suite 200
Berkeley, California 94710-2721
510-859-8107 (mobile)
ian.utz@dtsc.ca.gov

# EXHIBIT E

**Declaration of Robert Clark-Riddell**

envirostor.dtsc.ca.gov/public/profile_report?global_id=60001434



| Title | Type | Date | Description |
|---|---|---|---|
| (Wet Season) | | | is considered complete for this season as of 3/14/2022. |
| Correspondence Between DTSC and Eastbay Equities, Inc. Regarding Sampling Site Access at Wendy's Restaurant (12201 San Pablo Avenue) | Correspondence | 3/18/2022 | No response as of 03/18/2022 |
| Correspondence Between DTSC- City of Richmond, City of Richmond Contractors, and Casa Nido Regarding Worker Safety and Required Perimeter Signage | Correspondence | 3/17/2022 | DTSC required installation of perimeter hazardous substance signage by April 4, and worker safety procedural changes. |
| Imminent and Substantial Endangerment Determination Amendment | Unilateral Order (I/SE, RAO, CAO, EPAAO) | 3/17/2022 | Signed 03/17/2022, based on updated groundwater and soil gas data collected since 2006. |
| Correspondence Between DTSC and Casa Nido Regarding Invoice Inquiry | Correspondence | 3/16/2022 | DTSC has denied requests to reduce sampling scope. In March 2022, at 403 McLaughlin Street, Casa Nido caused off-gassing and odor nuisance from sealants it added without DTSC oversight, and requested to use its own off-gassing nuisance as the basis for further delaying indoor air sampling. At 12000 San Pablo Avenue, Casa Nido intended to use new plans for unapproved epoxy flooring as the basis for further delaying required indoor air sampling, in order to avoid demonstrating any existing exposure. |
| Correspondence Between DTSC and Casa Nido Denying Requests to Reduce Sampling Scope | Correspondence | 3/16/2022 | |
| DTSC Site Visit Notes for Adjoining Property Inspection on 02-08-2022 | Site Inspections/Visit (Non LUR) | 2/9/2022 | Transmitted via e-mail on 02-09-2022. |
| Correspondence Between DTSC and Casa Nido Regarding Unacceptable Project Delays | Correspondence | 2/2/2022 | Proponent is delayed by 14 weeks and is providing unacceptable status updates. Proponent claims that delay is due to DTSC delay in reviewing work plan revision. DTSC notes that work plan was of insufficient quality and required unusually long times to review due to rudimentary errors. |
| 2021-2022 Annual Cost Estimate | Annual Oversight Cost Estimate | 12/15/2021 | |
| DTSC Letter to Surrounding Properties Requesting Access to Sample | Correspondence | 10/29/2021 | To be provided by PANGEA to five properties to be sampled. Transmitted as an attachment to DTSC's conditional work plan approval. |
| DTSC Community Update | Fact Sheets | 10/29/2021 | |
| Health and Safety Plans | Health & Safety Plan | 10/29/2021 | HASP #1 (Characterization Work) accepted as part of 10-29-2021 conditional approval of off-site vapor intrusion work plan. HASP #2 (SVE System) is still under review. |
| Off-Site Vapor Intrusion Investigation Work Plan | Site Characterization Workplan | 10/29/2021 | |
| Project Management | Project Management | 6/30/2021 | |
| DTSC Meeting with Casa Nido Partnership Regarding Off-Site Characterization | Meeting | 12/7/2020 | Following 11/19/2020 meeting, DTSC: 1) granted extension for revised HASP and VI Work Plan; 2) historical owner/operator information for PEA-equivalent; 3) provided meeting minutes. |
| Correspondence from Casa Nido Regarding Off-Site Characterization | Correspondence | 11/5/2020 | Per this request, DTSC met and conferred with RP on 11/19/2020. |
| 2020/2021 Annual Cost Estimate | Annual Oversight Cost Estimate | 10/1/2020 | Cost estimate e-mailed to Casa Nido c/o Ron Pizali. |
| Change of Project Manager Notice | Correspondence | 5/19/2020 | |
| 2019-2020 Annual Cost Estimate | Annual Oversight Cost Estimate | 2/7/2020 | |
| 2018-2019 Annual Cost Estimate | Annual Oversight Cost Estimate | 9/27/2018 | Final 2018 2019 cost estimate. |
| Change of Project Manager Notice | Correspondence | 4/5/2018 | Final Letter - Change of PM Letter |

# EXHIBIT F

**Declaration of Robert Clark-Riddell**

STATE OF CALIFORNIA
CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY
DEPARTMENT OF TOXIC SUBSTANCES CONTROL


| | | |
|---|---|---|
| In the Matter of: | ) | Docket No. IS/E 06/07-012 |
| | ) | |
| MacDonald-San Pablo-Wall-45th | ) | IMMINENT AND SUBSTANTIAL |
| Plume Site | ) | ENDANGERMENT DETERMINATION |
| El Cerrito and Richmond, | ) | |
| California  94804 | ) | |
| | ) | Health and Safety Code |
| | ) | Section 25355.5(b)(3) |
| _____ | ) | |


I.  INTRODUCTION

1.1  Site.  This Imminent and Substantial Endangerment Determination applies to the site which the Department of Toxic Substances Control (Department) has defined as the area bounded by MacDonald Avenue to the north, San Pablo Avenue to the east, Wall Avenue to the south and 45th Street to the West, in the City of Richmond and City of El Cerrito, Contra Costa County, California (Exhibit A).  This area is hereafter referred to as "the Site".

1.2  Jurisdiction.  Section 25355.5(b)(3) of the Health and Safety code authorizes the Department to expend funds from the Hazardous Substances Account and the Hazardous Substances Cleanup Fund without first taking actions specified in Health and Safety Code Section 25355.5(a), if the Department determines that removal or remedial action is necessary at a site because there may be an imminent and substantial endangerment to the public health or welfare or to the environment, because of a release or a threatened release of a hazardous substance.


II.  FINDINGS OF FACT

The Department hereby finds:

2.1  Physical Description of the Site.  The Site is primarily comprised of residential and commercial properties.  Interstate 80 runs through the Site in a in a north-south directions and separates the City of Richmond and City of El Cerrito.  The Miraflores Housing Development Site, which is comprised of the former Endo, Oishi, and Sakai properties is located in the southwest portion of the Site.  The Department has been overseeing investigation and cleanup activities at the Miraflores Housing Development Site under a Voluntary Cleanup Agreement.

2.2  Site History. Groundwater which is contaminated with chlorinated volatile organic

1

compounds (VOCs), including tetrachloroethylene (PCE), trichloroethylene (TCE), cis-1,2-dichloroethylene (cis-1,2-DCE), fuel-related VOCs, including benzene, toluene, ethylbenzene, and xylenes (BTEX), and total petroleum hydrocarbons (TPH) has been found at various locations within the Site. The Department focused attention on the area, which has been defined as the Site, because VOCs were found during the investigation of the Miraflores Housing Development, which appear to have been released from upgradient sources. The Department has provided oversight of the preparation of a Draft Remedial Action Plan for the Miraflores Housing Development Site under a Voluntary Cleanup Agreement with the City of Richmond Redevelopment Agency, Eden Housing, and Community Housing Development Corporation of North Richmond. Construction of the Miraflores Housing Development is planned after cleanup is completed. Chlorinated VOCs have been detected in the three groundwater-bearing zones that occur from depths of 15 to 74 feet beneath the Miraflores Housing Development Site. The chlorinated VOCs are attributed to an upgradient sources since no on-site sources were identified during the investigation and chlorinated VOCs are not known to have been used by the nurseries. Underground fuel storage tanks on the Miraflores Housing Development Site released TPH and BTEX to groundwater, although upgradient sources are believed to also be the source of some of the TPH and fuel-related VOCs detected in groundwater. In their May 6, 2005 Supplemental Investigation Report for the Miraflores Housing Development, PES Environmental identified upgradient properties with documented releases of hazardous substances or TPH and identified businesses which may have released hazardous substances because of the nature of their activities. However, the source of the chlorinated VOCs detected at the Miraflores Housing Development Site has not been determined.

2.3 <u>Hazardous Substances Found at the Site</u>. Hazardous substances that have been detected in groundwater at the Miraflores Housing Development Site or at upgradient locations along with the maximum detected concentrations include: TCE, 17 micrograms per liter (ug/L); PCE, 450 ug/L; and cis-1,2-DCE, 51 ug/L. The California Maximum Contaminant Levels for TCE, PCE and cis-1,2-DCE are 5 ug/L, 5 ug/L, and 6 ug/L, respectively.

2.4 <u>Health Effects</u>.

2.4.1 <u>Trichloroethylene (TCE)</u>. TCE is a volatile, colorless liquid. Acute exposure to sufficient concentrations of TCE may depress the central nervous system, causing headaches, dizziness, vertigo, tremors, irregular heartbeat, fatigue, nausea, vomiting and blurred vision. TCE vapors and liquid may cause irritation of the skin, eyes, nose and throat. Long-term effects may include liver and kidney injury. TCE is listed as a known carcinogen under Proposition 65.

2.4.2 <u>Tetrachloroethylene (PCE)</u>. PCE is a halogenated organic solvent which can have narcotic effects in high concentrations. Defatting action on the skin can lead to dermatitis. PCE is listed as a Class B-2, probable human carcinogen, by the U.S. Environmental Protection Agency. PCE is listed as a known carcinogen under Proposition 65.

2.4.3 <u>Cis-1,2-Dichloroethylene (1,2-DCE)</u>: Cis-1,2-DCE is a highly flammable, colorless liquid with a sharp, harsh odor. Breathing high levels of 1,2-DCE can make you feel nauseous, drowsy, and tired. Breathing very high levels can be fatal. Lower doses of cis-1,2-DCE causes effects on the blood, such as decreased numbers of red blood cells, and also effects on the liver.

2

2.5    Routes of Exposure and Public Health Risk. The plume is located in an area primarily with commercial land use which is surrounded by residential land use areas.  The workers or residents on or nearby the Site may be exposed to contaminants if they come into direct contact with groundwater. There is a potential for the VOCs present in groundwater to volatilize and migrate toward the ground surface into the indoor air of overlying buildings. Human exposure can then occur through inhalation of the VOCs in indoor air. Groundwater is not used as a drinking water source and businesses and residences in the area obtain their water supply from the East Bay Municipal Utility District. However, there is no current restriction on groundwater usage and production wells which are not currently being used have been identified in the area.  Groundwater is considered a potential source of drinking water.

## III.  CONCLUSIONS OF LAW

3.1   Each of the substances listed in Section 2.3 is a "hazardous substance" as defined in Health and Safety Code section 25316.

3.2    There has been a "release" and/or there is a "threatened release" of hazardous substances listed in Section 2.3 at the Site, as defined in Health and Safety Code section 25320.

3.3    The actual and/or threatened release of hazardous substances at the Site may present an imminent and substantial endangerment to the public health or welfare or to the environment.

## IV.  DETERMINATION

4.1    Based on the foregoing findings of fact and conclusions of law, The Department hereby determines that response action is necessary at the Site because there has been a release and/or there is a threatened release of a hazardous substance.

4.2    Based on the foregoing findings of fact and conclusions of law, The Department hereby determines that there may be an imminent and substantial endangerment to the public health or welfare or to the environment because of the release and/or the threatened release of the hazardous substances at the Site.

DATE OF ISSUANCE:  12-8-2006

Barbara J. Cook, P.E., Chief
Northern California
Coastal Cleanup Operations Branch
Department of Toxic Substances Control

cc:  Site Mitigation Program
     Headquarters, Planning & Policy
     Office of Legal Counsel

3

# EXHIBIT A

# Site Map



**PROJECT SITE**

**Note**
Numbered locations are sites identified with possible or known environmental concerns, discussed in Section 2.2.

0   1000   2000
**Scale in Feet**

① 

N

California State Automobile Association - West Contra County Communities, California, 1998.



**PES Environmental, Inc.**
Engineering & Environmental Services

**Site Location Map**
Eden Housing
Richmond, California

PLATE
**1**

| 956.001.01.020 | 956_site_AAA | *FAB* | 5/05 |
|---|---|---|---|
| JOB NUMBER | DRAWING NUMBER | REVIEWED BY | DATE |

**STATE OF CALIFORNIA**
**CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY**
**DEPARTMENT OF TOXIC SUBSTANCES CONTROL**

|  |  |
|---|---|
| In the Matter of:<br><br>MacDonald-San Pablo-Wall-45th<br>Plume Site, El Cerrito and Richmond,<br>California 94804 | Docket No. HSA-FY21/22-101<br><br>**IMMINENT AND SUBSTANTIAL**<br>**ENDANGERMENT DETERMINATION**<br>**AMENDMENT**<br><br>Health and Safety Code<br>Section 25355.5(b)(3) |

## I.     INTRODUCTION

The California Department of Toxic Substances Control (DTSC) herein amends its Imminent and Substantial Endangerment Determination for the MacDonald-San Pablo-Wall-45th Plume Site in El Cerrito and Richmond, California, dated December 8, 2006, Docket No. IS/E 06/07-012 (the "I&SE Determination"), to include additional areas north of MacDonald Avenue, up to the northern edge of the property line of 12226 San Pablo Avenue (Assessor's Parcel Number 519-290-027), and east to McLaughlin Street, in Richmond, Contra Costa County, California (Exhibit A).

## II.     FINDINGS OF FACT

First, on June 4, 2008, in connection with the I&SE Determination, DTSC approved a report prepared by Weiss Associates on behalf of DTSC, entitled *Ground Water Investigation Report for MacDonald-San Pablo-Wall-45th Plume Study Area, Richmond and El Cerrito, California*.  The report found that regional groundwater flows southwest, from the Richmond and El Cerrito Hills toward San Francisco Bay, and was impacted along the upgradient side of the Miraflores Housing Development Site (groundwater monitoring wells MS01, MS02, MS03, and MS04) with hazardous substances including the volatile organic compounds (VOCs) tetrachloroethylene (PCE; up to 170 µg/L), trichloroethylene (TCE; up to 4.3 µg/L), and cis-1,2-dichloroethylene (cis-1,2-DCE; up to 5.1 µg/L), in multiple water-bearing zones, between depths of 17 and 75 feet below ground surface (bgs).  The report also found that these impacts were "consistent with an origin to the northeast along the segment of San Pablo Avenue north of MacDonald Avenue" and identified Omo Fabricare Dry Cleaner Site (12210 San Pablo Avenue), approximately 1,000 feet northeast and hydraulically upgradient from the I&SE Determination Site/Study Area, as a potential source for the downgradient groundwater impacts.

Second, groundwater monitoring sampling events conducted between 2008 and 2020 at the Miraflores Housing Development Site continued to find VOCs in groundwater, including PCE (up to 169 µg/L), TCE (up to 9.5 µg/L), and cis-1,2-DCE (up to 14.9 µg/L) in 2020.

Third, according to a draft groundwater monitoring report prepared by PANGEA Environmental Services, Inc., entitled *Groundwater Monitoring Report 2019, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond, California 94805*, dated April 30, 2020, shallow groundwater collected from between approximately 11 and 15 feet bgs at, and downgradient from, the Omo Fabricare Dry Cleaner Site contained PCE (up to 14,000 µg/L), TCE (up to 99 µg/L), and cis-1,2-DCE (up to 66.5 µg/L) during sampling events conducted between 2015 and 2019. The report identified the Omo Fabricare Dry Cleaner Site as a source for chlorinated VOC contamination to soil and groundwater. Shallow groundwater flowed west-southwest, consistent with the slope of regional topography, and followed southerly utility corridors, including an engineered channel for Baxter Creek running from Omo Fabricare Dry Cleaner Site to the north, down through the Miraflores Housing Development Site to the south.

Fourth, according to a work plan prepared by PANGEA Environmental Services, Inc., entitled *Final Revised Off-Site Vapor Intrusion Investigation Workplan, Former Omo's Cleaners, 12210 San Pablo Avenue, Richmond, California 94805*, dated March 19, 2021, which DTSC conditionally approved on October 29, 2021, soil gas collected from between 0.3 and 11 feet bgs at and adjoining the Omo Fabricare Dry Cleaner Site contained PCE (up to 23,900,000 µg/m$^3$), TCE (up to 34,600 µg/m$^3$), and cis-1,2-DCE (up to 1,930 µg/m$^3$) during sampling events conducted between 2017 and 2020.

## III.   AMENDMENT

Based on the foregoing findings of fact, DTSC amends the I&SE Determination as follows:

1. Section 1.1 (Site) of the order is hereby amended to read:

   This Imminent and Substantial Endangerment Determination applies to the site which the Department of Toxic Substances Control (Department) has defined as the area bounded by 1) the projection of the northern edge of the property line of 12226 San Pablo Avenue to the north, 2) the eastern edge of Right-of-Way of McLaughlin Street and San Pablo Avenue to the east, 3) the southern edge of Right-Of-Way of Wall Avenue to the south, and 4) the western edge of Right-of-Way of South 45th Street to the west, in the City of Richmond and City of El Cerrito, Contra Costa County, California (Exhibit A). This area is hereafter referred to as "the Site."

2. Exhibit A (Site Map) of the order is hereby replaced by the enclosed Exhibit A.

DATE OF ISSUANCE: _____3/17/2022_____    _____

Juliet C. Pettijohn, MPH, CIH, Branch Chief
Site Mitigation and Restoration Program
Berkeley Office, DTSC

cc: DTSC Office of Legal Counsel

# EXHIBIT A

# Site Map



**Weiss Associates**

Referenced Properties

1. Sakai Nursery
2. Oishi Nursery
3. Endo Nursery
4. Home Depot #643
5. Montgomery Ward
6. Winston Tire #142
7. Chevron #90600
8. Busy Bee Cleaners
9. J&R Transmission
10. Steve's Ultimate Auto Body
11. Miravista Tire & Brake
12. McDonalds
13. East Bay Mitsubishi
14. Omo Fabricare Cleaners
15. Ben's Auto Repair
16. Harbor Plastic Mfg. Co.
17. AAMCO Transmissions
18. Payless Cleaners & Alterations
19. Nino's Quality Motors
20. West Coast Motors
21. Daytona Motors / Steve's Auto Care
22. BP Mobile
23. Auto Expert
24. Yes Auto Center
25. MacDonald Auto Sales
26. Pars' Auto Sales
27. Richmond Gas & Mart

Shallow Ground Water Flow Direction
Based on Site Specific Water Level
Elevation Data

STUDY AREA

Figure 2.   Study Area Vicinity Map Showing Nearby Properties, MacDonald-San Pablo-Wall - 45th Plume Site, Richmond and El Cerrito, California

DTSC-1812-02.ai

05/19/08

photo source: Google Earth

# EXHIBIT G

**Declaration of Robert Clark-Riddell**

Casa Nido
## c/o Ronald Piziali
## 13123 Regan Lane
## Saratoga, CA 95070

VIA REGISTERED/CERTIFIED MAIL

June 25, 2020

Mr. Boone Chommanard          Margaret Kanchong

1201 Rosewood Way             Sa Wad Dee Thai

Alameda, California 94501     12200 San Pablo Avenue

Richmond, California 94805

Re:   **Environmental Corrective Action Update**

Former Omo's Cleaners at 12210 San Pablo Avenue, Richmond

Dear Mr. Chommanard and Ms. Kanchong:

I am contacting you again to provide an update on our environmental corrective action conducted for the former Omo's Cleaners adjacent to the property/restaurant that you own at 12200 San Pablo Avenue in Richmond. My name is Ron, and I am one of the partners with the Casa Nido Partnership that owns 12210 San Pablo Avenue, next door to your property.

As described in our prior correspondence, many years ago there was a dry cleaner tenant that operated on our property. In connection with our possible interest in selling our property, we did some subsurface testing and unfortunately learned that some of the chemicals associated with this former dry cleaner are in the soils under our property. We then learned that these chemicals have created some soil gas under our property.

To evaluate if these chemicals were present on your property, we obtained access to your property from your manager Margaret Kanchong. Our testing confirmed that chemicals were found in subslab gas at your property. To help mitigate potential intrusion of subsurface chemical vapors into your restaurant, we arranged the installation of a subslab depressurization (SSD) system. After a long delay coordinating electrical service from PG&E with permitting with the City of Richmond, the SSD system commenced operation in April 2020. Initial data indicates the system is performing as intended. Additional data will be collected to evaluate the system's performance over time.

The environmental corrective action is being coordinated by our environmental consultant, Robert Clark Riddell of Pangea Environmental Services, Inc. Oversight for corrective action is being provided by the California Department of Toxic Substances Control (DTSC). Other interim action has included the removal of approximately 450 tons of chemical-impacted soil, installation of a vapor barrier to mitigation vapor migration toward your property, and installation/operation of an SVE system to remove chemicals and improve soil vapor conditions beneath our property and adjacent properties.

Environmental information and records can be found at the Envirostor website located at https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60001434. For more information, please feel free to contact Mr. Clark-Riddell at (510) 435-8664 and by email at briddell@pangeaenv.com. You can also reach me by phone at (408) 499-5723 and by email at ronaldpiziali@gmail.com.

Sincerely,

*Ronald Piziali*

Ronald Piziali
General Partner

DTSC000009501

# EXHIBIT H

**Declaration of Robert Clark-Riddell**

**CLEANUP PROGRAM**

October 2021

# COMMUNITY UPDATE

**Department of Toxic Substances Control** – Our mission is to protect the people, communities, and environment of California from harmful chemicals by cleaning up contaminated sites, enforcing hazardous waste laws, and compelling the development of safer products.

# FORMER OMO FABRICARE DRY CLEANERS

The California Department of Toxic Substances Control (DTSC) is overseeing hazardous substance cleanup at the Former Omo's Dry Cleaner at 12210 San Pablo Avenue in Richmond, California (site).

Underground soil, soil vapor, and groundwater at the site are contaminated with volatile organic compounds (VOCs).  The project is still in the investigation phase.  Based on testing so far, DTSC is now requiring the owner of the former dry cleaner to test air at five neighboring properties for VOCs.

**SITE HISTORY**

The former dry cleaner site is an approximately 5,000-square-foot vacant property, next to a veterinary clinic (north), residences (east), and two restaurants (south and west).  The Site is owned by Casa Nido Partnership, a private landowner.  The site was undeveloped until 1940, when a commercial building was constructed.  Then, the site was used by commercial businesses (1940s to 1950s) and a dry cleaner (1960s to 2015).  The dry cleaner was known by several names, including Omo's Fabricare Cleaners, Inc.  In 2017, the building was demolished.

**CONTAMINATION**

When it was operating, the dry cleaner handled hazardous chemicals, including halogenated solvents from the 1980s to 2000s, and hydrocarbon-based solvents from the 1990s to 2015.  So far, testing suggests that the dry cleaner contaminated the soil, soil vapor, and groundwater with chemicals such as tetrachloroethylene (PCE), trichloroethylene (TCE), cis-1,2-dichloroethene (cis-1,2-DCE), vinyl chloride, and benzene.  Casa Nido is still testing, and additional chemicals might be added to this list.

**TESTING AND CLEANUP**

Since 2005, DTSC has investigated nearby groundwater contamination with VOCs.  In 2011, DTSC identified the dry cleaner as a potential source of this nearby groundwater contamination.  Since 2014, tests have found underground VOC contamination at other nearby properties, including the north-adjoining veterinary clinic, and the south-adjoining restaurant.  In 2017, Casa Nido entered into a *Voluntary Cleanup Agreement* with DTSC, to clean up the chemicals.  Since 2017, Casa Nido has also completed independent work at the site and at the neighboring restaurant, such as soil removal and treatment, groundwater treatment, soil vapor extraction, and sub-slab depressurization.

Department of Toxic Substances Control

**WHAT HAPPENS NEXT?**

In 2020, because of the high concentrations of VOCs at the former dry cleaner, DTSC required testing of five neighboring properties:

1. Animal Fix Clinic (Fix Our Ferals) at 12226 San Pablo Avenue
2. Sa Wad Dee Thai Restaurant at 12200 San Pablo Avenue
3. Wendy's Restaurant at 12201 San Pablo Avenue
4. Residence at 423 McLaughlin Street
5. Residence at 403 McLaughlin Street

The purpose of this testing is to find what the contamination is, where it has gone, and if there are any public health concerns.  On October 29, 2021, DTSC approved a work plan for this testing.  Testing will involve sampling soil vapor, sub-slab soil vapor, crawl space air, and/or indoor air.  Casa Nido, through its contractor PANGEA Environmental Sciences, Inc., will pay for, schedule, and complete the testing.  Work will start in about December 2021, then again about six months later, and include:

- Requesting property access.
- Inspecting the properties.
- Installing sampling equipment.
- Sampling air belowground and aboveground.
- Sending samples to a laboratory.
- Reporting results to the occupants.

After this testing, DTSC will decide if more work is needed.  DTSC's goal during all steps in this process is to protect human health and the environment.

**WHERE CAN I FIND MORE INFORMATION?**

You have a right to stay informed about this work.  You can review paper records for this site at our office at 700 Heinz Avenue in Berkeley, California, by requesting files or making an appointment with the Public Records Coordinator at (510) 540-3800 or BerkeleyFileRoom@dtsc.ca.gov.  We also store electronic files on our public EnviroStor database:

- http://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60001434

To sign up for e-mail alerts for new documents, select the top-right link on the EnviroStor page. For more information about DTSC, visit our website (www.dtsc.ca.gov).

**WHO CAN I CONTACT ABOUT THIS SITE?**

For more information about the cleanup process or related documents, please contact:

Ian Utz, Project Manager, at ian.utz@dtsc.ca.gov and (510) 540-3845, or

Alejandro Vivas, Public Participation Specialist, at alejandro.vivas@dtsc.ca.gov and (510) 540-3911

Si desea información en español, comuníquese con Alejandro Vivas al: alejandro.vivas@dtsc.ca.gov.

Department of Toxic Substances Control

## SITE MAP



All locations are approximate.

 **Hearing impaired** individuals may use the California Relay Service at 711 or 800-735-2929 TTY/VCO/HCO to voice. 

 Additional information on DTSC sites can be found through our **EnviroStor**.  (rev. 5-2020)

# EXHIBIT I

**Declaration of Robert Clark-Riddell**

# Utz, Ian@DTSC

| | |
|---|---|
| **From:** | Utz, Ian@DTSC |
| **Sent:** | Friday, March 18, 2022 3:15 PM |
| **To:** | 'jthomassen@eastbayequities.com' |
| **Cc:** | Vivas, Alejandro@DTSC |
| **Subject:** | RE: [201121] Omo Fabricare - Vapor Intrusion Sampling Site Access at Wendy's |

Hello Mr. Thomassen,

I hope all is well.

I just left you a voice mail message.  Please let us know if you have questions about the Casa Nido Partnership/PANGEA request for site access.

Casa Nido Partnership/PANGEA has already started sampling four of the five neighboring properties that we required.  The Wendy's is the only remaining property.

We have reason to believe that groundwater beneath the Wendy's is contaminated with hazardous substances, and we would like Casa Nido/PANGEA to sample the soil gas and indoor air at the Wendy's to determine if site occupants, including workers, are exposed to these hazardous substances.

Please let me know if you have any questions.  We really appreciate your time.

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Friday, March 4, 2022 8:59 AM
**To:** jthomassen@eastbayequities.com
**Subject:** [201121] Omo Fabricare - Vapor Intrusion Sampling Site Access at Wendy's

Hello Mr. Thomassen,

Do you have any questions about the Wendy's soil vapor/indoor air sampling work that PANGEA is hoping to complete this month?  PANGEA should be working with your schedule and tenant to ensure this work is completed safely and expeditiously.

We are told your attorney is still reviewing.  Please let us know if you have any questions at all about this work.

We very much appreciate your help in getting this data collected, and are here to help you understand the results.


**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

## Utz, Ian@DTSC

| | |
|---|---|
| **From:** | Utz, Ian@DTSC |
| **Sent:** | Friday, March 25, 2022 2:34 PM |
| **To:** | Bob Clark-Riddell; Jon Wactor; jthomassen@eastbayequities.com |
| **Cc:** | pskibel@waterpowerlaw.com; Ron Piziali; mtc10860@aol.com; Ron Scheele; Karina Gillette; Smith, Whitney@DTSC; Mazzoli, Theodore@DTSC |
| **Subject:** | RE: [202121] Omo Fabricare Dry Cleaner - Sampling at Wendy's  TIME SENSITIVE |

**Mr. Wactor and/or Mr. Thomassen, could you please provide us with the contact information of the site owner, so that we may expeditiously request property access from the owner of the parcel (APN 517-100-027)?**

We understand that Eastbay Equities, Inc., an Ohio corporation doing business in California, is a site operator, whereas "W&C Equities, LLC," an entity which is not registered to conduct business in the State of California, is the property owner.  W&C acquired the property on November 13, 2012.  The building was constructed in 1981.

We note that the Eastbay Equities, Inc. is subject to OSHA's General Duty Clause, which requires it to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees."  One of our responsibilities is to notify you of such potential hazards, in this case a potential chemical hazard.  The chemical in question, tetrachloroethylene (PCE), is a Proposition 65 chemical known to the State of California to cause cancer.  Based on upgradient and downgradient sampling in groundwater, it appears the Wendy's property contaminated by PCE-containing groundwater that may off-gas and enter indoor air through the vapor intrusion exposure pathway (e.g., through cracks in foundations, utility penetrations, etc.), and expose on-site workers and/or customers.

PANGEA needs to collect subslab vapor and indoor air data to rule out this exposure pathway.  So far, sub-slab vapor data collected to the north (at vet), east (at residence), and south (at restaurant) of the dry cleaner have identified PCE exceedances of our screening criteria, and we do not yet have indoor air data to demonstrate whether indoor air vapor intrusion is occurring there.  Even so, indoor air data at those other adjoining properties to the dry cleaner (to north, south, and east) will be insufficient to rule out vapor intrusion downgradient at Wendy's (to the west), because the buildings are constructed differently, and the properties are hydraulically distinct from the Wendy's.  Let me know if you have any questions.

1





Former Omo's Cleaners
12210 San Pablo Avenue
Richmond, California

PANGEA

Lateral Distribution
Shallow A Zone Gr
(1




**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Friday, March 25, 2022 11:34 AM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Jon Wactor <jonwactor@ww-envlaw.com>; pskibel@waterpowerlaw.com; Ron Piziali <ronaldpiziali@gmail.com>; mtc10860@aol.com; Ron Scheele <rscheele@pangeaenv.com>; Karina Gillette <kgillette@pangeaenv.com>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>
**Subject:** FW: [202121] Omo Fabricare Dry Cleaner - Sampling at Wendy's TIME SENSITIVE

EXTERNAL:

Hello Ian,

I left you a voicemail just now about issues relating to access for sampling Wendy's.  I have copied Wendy's environmental attorney Jon Wactor who states below that an access decision is not expected anytime soon.  This is a time sensitive issue since Casa Nido will incur extra cost to return our sampling containers and perform sampling later, as well as separate reporting later for just Wendy's.  Note that Casa Nido will need to incur additional costs for a special mobilization to sample at Wendy's since all other access and approved sampling was recently completed.

I understand there are a few issues to discuss with Wendy's from my talk with Mr. Wactor.  First, Wendy's expressed reluctance for subslab gas or indoor air sampling inside their building, so we ask if the need for such sampling can be re-evaluated after performing other sampling/monitoring of surrounding soil gas and groundwater.

Second, if DTSC firmly requires indoor air and subslab gas at Wendy's, it would be more cost effective to perform within the next couple of weeks using  the sampling supplies on hand.

We look forward to your assistance on this matter as appropriate.  Bob

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664


**From:** Jon Wactor <JonWactor@ww-envlaw.com>
**Sent:** Thursday, March 24, 2022 4:58 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; Karina Gillette <kgillette@pangeaenv.com>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaner - Sampling at Wendy's TIME SENSITIVE

Bob, we are still considering the sampling request but don't expect a decision anytime soon.  We are interested in seeing the results of the sampling you recently performed.  Jon

Get Outlook for iOS

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Thursday, March 24, 2022 4:02:26 PM
**To:** Jon Wactor <JonWactor@ww-envlaw.com>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; Karina Gillette <kgillette@pangeaenv.com>
**Subject:** FW: [202121] Omo Fabricare Dry Cleaner - Sampling at Wendy's TIME SENSITIVE

Hello Jon,

Any update on allowing access for sampling at the Wendy's restaurant?  DTSC has approved the workplan involving sampling of subslab gas and indoor air at three co-located areas.

This is time sensitive because the lab can no longer guarantee the sampling containers may hold their vacuum, and the lab will charge us approximately $1,000 if we do not return the canisters within a couple weeks. Please provide me an update at your earliest convenience.  Thank you, Bob

Bob Clark-Riddell, P.E.
Principal Engineer
Pangea Environmental Services, Inc.
1250 Addison Street, Suite 213
Berkeley, CA 94702
Mobile/Work (510) 435-8664
Main Office (510) 836-3700

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 5:39 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; ronaldpiziali@gmail.com; mtc10860@aol.com; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** Re: [202121] Omo Fabricare Dry Cleaner - Field Work

Thank you.  We are happy to talk directly to the owner and their attorney once you have their contact information.

Ian Utz

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Friday, March 18, 2022 4:51:10 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; ronaldpiziali@gmail.com <ronaldpiziali@gmail.com>; mtc10860@aol.com <mtc10860@aol.com>; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Field Work

EXTERNAL:

Ian,

Yes, Pangea just finished all planned field work (the one resampling of indoor air and the remaining subslab gas samples) other than at Wendy's.

Regarding access for Wendy's, attorney Jon Wactor for Wendy's called me today to discuss the need for sampling at Wendy's.  I explained that DTSC is requiring the subslab gas and indoor air sampling work scope in the approved workplan.  The attorney wondered if DTSC be open to a different work scope that does not involve sampling inside the building. I can relay some information to Mr. Wactor and get his email information when he returns my call.

Please contact me with any questions or comments.  Bob

4

Bob Clark-Riddell, P.E.
Pangea Environmental Services, Inc.
Mobile/Work (510) 435-8664

---

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Friday, March 18, 2022 4:32 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; ronaldpiziali@gmail.com; mtc10860@aol.com; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Sewer Repair Work

Bob,

Thank you.  Let me know when you've wrapped up field work at the adjoining properties.  My understanding was that there were some remaining activities to complete today.  Once complete, I can mark it as complete in our tracking system, and can inform our public participation specialist.

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency





This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

---

**From:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Sent:** Thursday, March 17, 2022 6:48 PM
**To:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; ronaldpiziali@gmail.com; mtc10860@aol.com; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** RE: [202121] Omo Fabricare Dry Cleaner - Sewer Repair Work

EXTERNAL:

Ian – Thank you for providing the information to the City of Richmond.  We will obtain and post the required signage.

Bob

**From:** Utz, Ian@DTSC <Ian.Utz@dtsc.ca.gov>
**Sent:** Thursday, March 17, 2022 2:40 PM
**To:** Bob Clark-Riddell <briddell@pangeaenv.com>
**Cc:** Ron Scheele <rscheele@pangeaenv.com>; ronaldpiziali@gmail.com; mtc10860@aol.com; Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Michael McCoy <mmccoy@exponent.com>
**Subject:** FW: [202121] Omo Fabricare Dry Cleaner - Sewer Repair Work

Hi Bob,

We learned during our visit yesterday that there was ongoing sewer repair work on site and next to the site.  PANGEA's sub-contracted 2014 sewer survey identified sewer offsets along this rear sewer that extends down to Nevin Avenue.  Apparently, this sewer backed up a few months ago, causing the Thai restaurant sewer issues that are now being remediated.  The City and its contractors weren't aware the dry cleaner property was contaminated, so our e-mail below provides them trench worker safety information.

INFORM INDUSTRIAL HYGIENIST AND FUTURE SITE WORKERS

If any additional construction work is planned at the site, you need to inform your industrial hygienist and the workers, as there are worker safety concerns for people working in trenches on site or near the site.  This site is a HAZWOPER site, so workers inside the site should be HAZWOPER certified, as your HASP explains.  Keep in mind that your HASP did not plan for trenching or excavation activities.  Casa Nido and/or PANGEA are likely the "creating employer" and "controlling employer" under OSHA's multi-employer work site doctrine, so are partially responsible for visiting worker safety.

INSTALL SIGNAGE AROUND SITE PERIMETER

The site is a contaminated site, with an operating treatment system, and needs hazardous substance area signage, so that future workers are totally aware of the chemical hazards going forward.  Here are our signage requirements derived from state law.  Please provide us a sign design, with a map of where you will place signs.  The signs should be installed before April 4.

(1) The signs shall be bilingual, appropriate to the local area, and may include international symbols, as required by the department.  (We recommend Spanish and English)
(2) The signs shall have lettering which is legible from a distance of at least 25 feet.
(3) The signs shall read: "Caution: Hazardous Substance Area, Unauthorized Persons Keep Out" and shall have the name and phone number of DTSC (510-540-2122).
(4) The signs shall be visible from the surrounding contaminated area and posted at each route of entry into the site, including those routes which are likely to be used by unauthorized persons, at access roads leading to the site.
(5) The signs shall be of a material able to withstand the elements.


Ian Utz
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency




   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

**From:** Utz, Ian@DTSC
**Sent:** Thursday, March 17, 2022 2:10 PM
**To:** Mary Phelps <Mary_Phelps@ci.richmond.ca.us>; daniel@wrforde.net; jalopez@carollo.com
**Cc:** Smith, Whitney@DTSC <Whitney.Smith@dtsc.ca.gov>; Graham, Coby@DTSC <Coby.Graham@dtsc.ca.gov>; Mazzoli, Theodore@DTSC <Theodore.Mazzoli@dtsc.ca.gov>
**Subject:** [202121] Omo Fabricare Dry Cleaner - Sewer Repair Work

Hi Mary, Daniel, and Jayne,

It was great to speak to you all about the former dry cleaner site at 12210 San Pablo Avenue, Richmond, and your ~300 feet of sewer main repair work north of Nevin Avenue, along San Pablo Avenue.  We understand this work has been planned for about 2 years, but did not start until last week.

## BACKGROUND

Since 2017, the State of California has been overseeing cleanup of this former dry cleaner, which is now just fenced open lot.  Yesterday, we were visiting to inspect soil gas and indoor air sampling at the neighboring residences, restaurant, and veterinary clinic.  Previous work included building demolition (2017), soil removal and treatment to 15 feet below ground (2018), and installation of pipes for sucking air out of the ground (2018 to 2020).  But, a lot of this work happened without our approval, because the owner has been reluctant to communicate and plan with us, and is trying to save money.

## WEBSITE FOR OUR CLEANUP SITE

https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60001434

## RECOMMENDATIONS

I spoke with Jayne and Mary this afternoon, and I understand that Daniel and his team are wrapping up work this week (backfilling, concrete pouring, manhole installation).  Laterals were repaired yesterday, and work already occurred inside the dry cleaner site.  No new excavation will happen.  Please let us know if you need to dig again, so that we can work with you.

For City of Richmond, this is about the contract.  We are available to help introduce your staff to Envirostor, so that work capital projects include "stop work" options and plan for "contingencies" or "lump sums"  in case there are contamination concerns.

For W.R. Forde Associates, Inc. and Carollo Engineers, Inc. this is a matter of worker protection and waste management.  For any future work planned at or near this site, we want you to know:

1. **Worker Hazards.**  There are chemical hazards in environmental media (soil, groundwater, soil gas) in/near work area. Chemicals include dry cleaning chemicals like volatile organic compounds (VOCs):  tetrachloroethylene (PCE) and breakdown chemicals like trichloroethylene (TCE), cis-1,2-dichloroethylene (cis-1,2-DCE), and vinyl chloride, as well as benzene.

7

2. **Soil Testing.**  Soil removed within the dry cleaner parcel next to the dry cleaner might contain chemicals, and should be tested before disposal at a landfill.  Tell the landfill that the material is from near a dry cleaner, and ask what testing they require.  You need to make sure it is not hazardous waste.  One option is laboratory testing by USEPA Method 8260.

3. **Website.**  There are additional maps available on our project website.

4. **Worker Exposure Limits.**  OSHA has worker air limits for VOCs, called permissible exposure limits (PELs) and short-term exposure limits (STELs), that the construction work must follow.  Construction companies must protect their workers from a maximum 15-minute exposure to the STEL.

5. **Industrial Hygienist.**  For any future work at this site, you should hire an in-house or consulting certified industrial hygienist (CIH) to the project.  The CIH can help make sure that the OSHA worker exposure limits are not exceeded.  Workers at this site can have exposure (breathing, maybe skin), but all of this should be manageable under planning/oversight of a qualified CIH.  CIH should prepare some sort of construction Safe Work Plan or Health and Safety Plan.  DTSC can help comment on these, but we cannot approve the Safe Work Plan or Health and Safety plan, since they're employer's responsibility.  At this site, for example, we suggest that the CIH consider a photoionization detector (PID) device, and carefully check the ionization potential of PID lamp vs. tetrachloroethylene (PCE), and determine a response factor correction for PCE vs. their calibration gas.  The CIH should make the final decision on monitoring equipment, and pre-construction testing, etc.

Please forward this e-mail to your employer's health & safety program.  Let me know if you have any questions.





**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California

PANGEA

**Proposed Sampling Locations**

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721
California Environmental Protection Agency









This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.

# EXHIBIT J

**Declaration of Robert Clark-Riddell**



**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**



CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY
# Department of Toxic Substances Control

# PUBLIC PARTICIPATION PLAN

## OMO FABRICARE DRY CLEANERS

### 12210 SAN PABLO AVENUE,
### RICHMOND, CONTRA COSTA COUNTY, CALIFORNIA

### October 2023

*Approved by:*

_____

James Gambrell, Public Participation Specialist

02/26/2024
_____

Date

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## Table of Contents

SECTION                                                                    PAGE

**1.0   INTRODUCTION** ...............................................................**1-2**

    1.1   PURPOSE OF THE PUBLIC PARTICIPATION PLAN .................................... 1-2

    1.2   DTSC OVERSIGHT RESPONSIBILITIES ................................................ 1-2

    1.3   SOURCES OF INFORMATION FOR THE COMMUNITY ASSESSMENT ....... 1-3

    1.4   ORGANIZATION OF THE PUBLIC PARTICIPATION PLAN ........................... 1-3

**2.0   SITE AND COMMUNITY DESCRIPTION** ...............................................**2-1**

    2.1   SITE LOCATION AND DESCRIPTION ................................................. 2-1

    2.2   HISTORY AND LOCATION OF CITY OF RICHMOND .................................. 2-1

    2.3   LAND USE DESIGNATION ............................................................. 2-2

    2.4   DEMOGRAPHICS ...................................................................... 2-3

        2.4.1   RACE, EDUCATIONAL ATTAINMENT, AND AGE ............................. 2-3

        2.4.2   LINGUISTIC ISOLATION .................................................... 2-6

    2.5   SENSITIVE RECEPTORS .............................................................. 2-7

    2.6   TRIBAL OUTREACH ................................................................... 2-7

    2.7   KEY CONTACTS ....................................................................... 2-8

    2.8   MEDIA INTEREST ..................................................................... 2-12

    2.9   COMMUNITY SURVEY AND INTERVIEWS ............................................ 2-12

**3.0   PUBLIC PARTICIPATION** ...............................................................**3-14**

    3.1   RECOMMENDED PUBLIC PARTICIPATION ACTIVITIES ............................. 3-14

    3.2   INFORMATION REPOSITORY ........................................................ 3-15

    3.3   DTSC PROJECT CONTACTS ........................................................ 3-15


APPENDICES

    A      Community Cover Letter and Survey Results

    B      Site Location Maps

    C      Key Contacts Distribution List

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 1.0   INTRODUCTION

### 1.1   PURPOSE OF THE PUBLIC PARTICIPATION PLAN

The California Department of Toxic Substances Control (DTSC) prepared this Public Participation Plan for the former Omo's Fabricare Dry Cleaner (Site) at 12210 San Pablo Avenue in Richmond, Contra Costa County, California 94804. The purpose of this document is to describe the community, potential community concerns regarding possible health risks associated with the Site, public participation activities, key contacts and sensitive receptors within the community. This document satisfies DTSC's requirement under California Health and Safety Code section 25358.7 to conduct a baseline community survey, solicit concerns and information regarding the Site from the affected community, and develop a public participation plan to establish communication and outreach measures.

### 1.2   DTSC OVERSIGHT RESPONSIBILITIES

DTSC is a state government agency responsible for regulating the manufacture, use, and cleanup of hazardous substances throughout the State of California. As of 2022, DTSC is the lead regulatory agency overseeing cleanup at the Site. However, other regulatory involvement to date has included the consultation with and/or permitting by the San Francisco Regional Water Quality Control Board, Bay Area Air Quality Management District, Contra Costa County Department of Health Services, and City of Richmond.

DTSC's public participation activities are intended to ensure the public has an opportunity to be involved in DTSC's decision making process. DTSC is required under state law to conduct public participation activities including:

1. Inform the public of the existence of the Site.

2. Inform the public of DTSC's intent to conduct response actions.

3. Determine the level of public interest and desire for involvement in DTSC's work.

4. Establish appropriate communication and outreach measures.

5. Provide affected persons the opportunity to participate in DTSC's decision making.

6. Provide fact sheets, in nontechnical and non-English languages, as appropriate.

7. Provide notification, upon request, of public meetings held by DTSC.

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

8.  Provide the opportunity to attend and participate in public meetings.

9.  Provide opportunities for public involvement at key project stages/reports.

10. Provide a schedule of activities.

11. Respond in writing to public comments during decision making.

## 1.3    SOURCES OF INFORMATION FOR THE COMMUNITY ASSESSMENT

This Public Participation Plan is based on information obtained from a variety of sources, including Site visits, demographic research, results of a Community Survey (Appendix A), review of previous Site investigations, and historical information about the Site and Community Interviews.

## 1.4    ORGANIZATION OF THE PUBLIC PARTICIPATION PLAN

The Public Participation Plan is organized in three sections: 1) Introduction, 2) Site and Community Description, and 3) Project Public Participation.

## 2.0    SITE AND COMMUNITY DESCRIPTION

## 2.1    SITE LOCATION AND DESCRIPTION

The Site is an approximately 5,000-square-foot vacant and fenced property, adjoined by a veterinary clinic (north), a residence (east), and two restaurants (south and west). The Site is owned by Casa Nido, a general partnership. The Site was undeveloped until the 1940s, when a commercial building was constructed. Subsequent occupants included various commercial businesses (1940s to 1950s) and a dry cleaner (1959 to 2015). The dry cleaner was located at 12210 San Pablo Avenue, Richmond, CA 94804 and known by several names, including Omo's Fabricare Cleaners, Inc.  In 2017, the building was demolished.

The dry cleaner produced hazardous wastes during its operations, including chlorinated solvents from the 1980s to 1990s, and hydrocarbon-based solvents beginning in the 1990s. Known contamination at the Site includes chlorinated solvents, petroleum-related compounds, and breakdown chemicals, including the volatile organic compounds (VOCs): tetrachloroethylene (PCE), trichloroethylene (TCE), vinyl chloride, and benzene. Casa Nido is still investigating, and additional chemicals might be added to this list.

Since the 2000s, DTSC has investigated regional groundwater contamination with VOCs. In 2011, DTSC identified the Site as a potential source of this regional groundwater contamination. Since 2014, investigations have found VOC impacts at other nearby properties, including the north-adjoining veterinary clinic, and the south-adjoining restaurant, and the two east-adjoining residences. In 2017, Casa Nido entered into a Voluntary Cleanup Agreement with DTSC, then terminated the Agreement in 2023.  Since 2017, Casa Nido has completed limited sampling and cleanup activities at the Site, which are still under review by DTSC.  In 2023, DTSC ordered the Site to be investigated and cleaned up.

As of 2023, the Site remains in the "characterization" phase of cleanup, and DTSC has not yet approved a final cleanup remedy for the Site.

## 2.2    HISTORY AND LOCATION OF CITY OF RICHMOND[1]

The City of Richmond is located 16 miles northeast of San Francisco, directly across San Francisco Bay. Richmond is on a peninsula separating San Francisco Bay (on the south) and San Pablo Bay (to the north), and the city has 32 total miles of bay shoreline. The city's total area is 56 square miles, of which 33.7 are land area and 22.3 are water area.

The City of Richmond is situated near major metropolitan cities and major new growth areas. San Francisco is within 35 minutes from Richmond by freeway; Oakland is 20 minutes; San Jose is approximately one hour's drive to the south; and Sacramento, the

---

[1] Taken and modified from:  https://www.ci.richmond.ca.us/112/History-of-Richmond

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

state capital, is approximately 90 minutes to the east.  The freeways provide direct access from Richmond to major new growth areas along Interstate 80 north and east to Vallejo, Fairfield, and Sacramento; along Interstate 680 in central Contra Costa County; and south along Interstate 880 to the San Jose area. The population within a 30-mile radius of Richmond is over 3.7 million, and within a 70-mile radius is approximately 7.8 million.

Richmond is located on the western shore of Contra Costa County and is the largest city in the "West County" region consisting of five cities: Richmond, El Cerrito, San Pablo, Hercules, and Pinole.

The earliest known inhabitants of Richmond were the Ohlone Native Americans, who settled the area approximately 5,000 years ago. The Ohlone built sacred shell mounds along the Bay and remain part of the local community.

The Spanish began settling Richmond by 1770s.  Following Mexican independence, Richmond was made part of the Rancho San Pablo land grant in the 1820s.  Following the Mexican-American War, California became a U.S. state in 1850.  Richmond incorporated as a city in 1905, and has undergone several periods of development:

- Early Industry (1890s-1900s) resulting in the construction of railways.

- Industrial Growth (1900s-1940s) resulting in the construction of factories.

- World War II (1940s) resulting in the construction of shipyards and public housing.

- Postwar Adjustment (1940s-1960s) resulting in conversion of shipyards to industry.

- Suburban Redevelopment (1960s-1990s) resulting in construction of new residential communities and commercial shopping centers.

As of 2020, Richmond had a population estimated at 116,448. Richmond's economy is currently undergoing a major transition from its former heavy industrial character toward more high technology and light industrial companies with new business parks accommodating light industrial and office/flex land uses such as biotechnology.

## 2.3    LAND USE DESIGNATION[2]

The City of Richmond has zoned the Site and north-adjoining, south-adjoining, and west-adjoining properties as mixed commercial, light industrial, and high density residential (CM-

---

[2] https://library.municode.com/ca/richmond/codes/code_of_ordinances

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

3), and the east-adjoining properties as single-family residential (RL2). These land use designations are defined more particularly in the City of Richmond Code of Ordinances section 15.04.202.010 and 15.04.201.010, respectively.

## 2.4    DEMOGRAPHICS[3]

According to CalEnviroScreen 4.0, the Site is in Census tract 6013370000, which has a population of 2,850 people.  Its overall CalEnviroScreen 4.0 Percentile is 55.

### 2.4.1   RACE, EDUCATIONAL ATTAINMENT, AND AGE

DTSC has collected and modified the following self-defined demographic information from the United States Census Bureau Decennial Census Public Law 94-171 database for the 2020 Census Redistricting Data survey, released on August 12, 2021.[4]

Table 1.1: Racial Demographics of Richmond, CA

| Demographic Description | Number of People in Richmond, California |
|---|---|
| Total Population | 116,448 |
| Population of one race | 101,213 |
| White alone | 23,452 |
| Black or African American alone | 22,254 |
| American Indian and Alaska Native alone | 2,395 |
| Asian alone | 16,740 |
| Native Hawaiian and Other Pacific Islander alone | 652 |
| Some Other Race alone | 35,720 |
| Population of two or more races: | 15,235 |
| Population of two races: | 13,777 |

---

[3] https://oehha.ca.gov/calenviroscreen

[4] https://data.census.gov/cedsci/table?q=richmond,%20california&tid=DECENNIALPL2020.P1

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

Table 1.2: Educational Demographics of Richmond, CA

| EDUCATIONAL ATTAINMENT | Number of People in Richmond, California | Percentage of Population |
|---|---|---|
| Population 25 years and over | 79,667 | 68.40% |
| Less than 9th grade | 9,753 | 12.2% |
| 9th to 12th grade, no diploma | 6,708 | 8.4% |
| High school graduate (includes equivalency) | 16,446 | 20.6% |
| Some college, no degree | 15,337 | 19.3% |
| Associate's degree | 5,953 | 7.5% |
| Bachelor's degree | 15,916 | 20.0% |
| Graduate or professional degree | 9,554 | 12.0% |
| High school graduate or higher | 63,206 | 79.3% |
| Bachelor's degree or higher | 25,470 | 32.0% |

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

Table 1.3: Age Demographics of Richmond, CA

| AGE | Number of People in Richmond, California | Percentage of Population |
|---|---|---|
| Under 5 years | 7,106 | 6.1% |
| 5 to 9 years | 7,287 | 6.3% |
| 10 to 14 years | 8,342 | 7.2% |
| 15 to 19 years | 5,032 | 4.4% |
| 20 to 24 years | 6,850 | 5.9% |
| 25 to 29 years | 8,152 | 7.0% |
| 30 to 34 years | 10,308 | 8.9% |
| 35 to 39 years | 8,432 | 7.3% |
| 40 to 44 years | 8,174 | 7.1% |
| 45 to 49 years | 7,113 | 6.2% |
| 50 to 54 years | 6,947 | 6.0% |
| 55 to 59 years | 6,926 | 6.0% |
| 60 to 64 years | 6,882 | 6.0% |
| 65 to 69 years | 7,286 | 6.3% |
| 70 to 74 years | 4,815 | 4.2% |
| 75 to 79 years | 2,619 | 2.3% |
| 80 to 84 years | 2,132 | 1.8% |
| 85 years and over | 1,239 | 1.1% |

Table 1.4: Age Demographics continued for Richmond, CA

| Median age (years) | 37.5 |
|---|---|

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 2.4.2   LINGUISTIC ISOLATION[5]

Linguistic isolation is a term used by the United States Census Bureau for limited English-speaking households. DTSC collects linguistic isolation information available from the United States Census Bureau to determine whether to translate public participation documents to languages other than English.

Adults who are not able to speak English well often have trouble talking to the people who provide social services and medical care. Linguistically isolated households may also not hear or understand important information when there is an emergency like an accidental chemical release or spill. More than 40 percent of Californians speak a language other than English at home. About half of those do not speak English well or at all. The United States Census Bureau's American Community Survey maintains information on the rate of linguistic isolation in different areas in California. The indicator is the percent of limited speaking households, which are households where no one over age 14 speaks English well, and the data are from the years 2015 to 2019.

According to CalEnviroScreen 4.0, for the Site Census tract (6013370000):

- **9%** of households in this census tract do not speak English well. The percentile for this census tract is 57, meaning the percent of linguistically isolated households is higher than 57% of the census tracts in California.

- Of the total population of 2,850 people, approximately 853 people (30%) in this census tract speak a language other than English, and approximately 362 people (13%) do not speak English "very well."  The top three languages spoken by people who are linguistically isolated are:

  o **Spanish** (~126 people, or 4%)
  o **Other Indo-European Languages** (~115 people, or 4%)
  o **Chinese Including Mandarin and Cantonese** (~69 people, or 2%)

During DTSC's community interviews the following languages were suggested as potentially applicable to this Site and the surrounding area:  Portuguese, Laotian, Hmong, Tagalog, Cantonese, Mandarin, Arabic, and Hindi.  However, based on the available demographic information, written materials will be limited to English and Spanish.

---

[5] https://oehha.ca.gov/calenviroscreen

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 2.5    SENSITIVE RECEPTORS

DTSC searched within an approximately 0.25-mile radius of the Site for hospitals, schools, community centers, or any other sensitive receptors near the Site and identified an Animal Clinic and Care Home Facility. However, this area is heavily trafficked, because west-adjoining San Pablo Avenue is a major street connecting multiple cities in the East San Francisco Bay Area.

## 2.6    TRIBAL OUTREACH

In 2021, DTSC's Tribal Affairs Program conducted formal outreach to California Native American Tribes that could have interest in, and/or cultural affiliation, to the Site, consistent with DTSC Policy 20-038 and California Public Resources Code section 21080.3.1. DTSC requested that the California Native American Heritage Commission search the Sacred Lands File for the Site on November 9, 2021, and conducted formal outreach to Tribes on November 24, 2021. Formal Tribal engagement ended on February 1, 2021, and DTSC received no formal requests for consultation. However, certain Tribe(s) were interested in being updated on project activities.

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 2.7   KEY CONTACTS

Table 2: Key Site Contacts

| Name and Relationship to Site | Mailing address | | | |
|---|---|---|---|---|
| U.S. Senator Alex Padilla | 333 Bush Street Suite 3225 | San Francisco | CA | 94104 |
| U.S. Senator Laphonza Butler | G12 Dirksen Senate Office Building | Washington | DC | 20510 |
| U.S. Representative Mark DeSaulnier | 440 Civic Center Plaza | Richmond | CA | 94804 |
| State Assembly Member Tim Grayson (District 15) | 1515 Clay Street, Suite 2201 | Oakland | CA | 94612 |
| State Senator Nancy Skinner (District 9) | 1515 Clay Street, Suite 2202 | Oakland | CA | 94612 |
| City of Richmond Mayor Eduardo Martinez | 450 Civic Center Plaza | Richmond | CA | 94804 |
| City of Richmond Council Member Soheila Bana (District 4) | 440 Civic Center Plaza | Richmond | CA | 94804 |
| City of Richmond Council Member Claudia Jimenez (District 6) | 440 Civic Center Plaza | Richmond | CA | 94804 |
| City of Richmond Council Member Doria Robinson (District 3) | 440 Civic Center Plaza | Richmond | CA | 94804 |
| City of Richmond Council Member Cesar Zepeda (District 2) | 440 Civic Center Plaza | Richmond | CA | 94804 |
| City of Richmond Vice Mayor at Large Gayle McLaughlin (District 5) | 440 Civic Center Plaza | Richmond | CA | 94804 |
| City of Richmond Council Member Melvin Willis (District 1) | 440 Civic Center Plaza | Richmond | CA | 94804 |

### PUBLIC PARTICIPATION PLAN
### OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA

| Name and Relationship to Site | Mailing address | | | |
|---|---|---|---|---|
| Sa Wad Dee Thai Restaurant (closed) | 12200 San Pablo Avenue | Richmond | CA | 94805 |
| Animal Fix Clinic (formerly Fix Our Ferals) | 12226 San Pablo Avenue | Richmond | CA | 94805 |
| Mr. Wesley Allen Skinner | 403 McLaughlin Street | Richmond | CA | 94805 |
| Wendy's Restaurant | 12201 San Pablo Avenue | Richmond | CA | 94805 |
| Mr. Robert Herbert & Mrs. Helen Herbert | 413 McLaughlin Street | Richmond | CA | 94805 |
| Madalyn Law - Park Plaza Neighborhood Council | 4808 Reece Ct | Richmond | CA | 94804 |
| Jim Hanson – President Richmond Heights Neighborhood Council | | Richmond | CA | 94804 |
| Supervisor, District I-Chair Contra Costa County John M. Gioia | 11780 San Pablo Avenue, Suite D | El Cerrito | CA | 94530 |
| Communities for a Better Environment (CBECAL) NorCal Program Co-Director Zolboo Namkhaidorj | 340 Marina Way | Richmond | CA | 94801 |
| CBECAL Kim Ryan | 340 Marina Way | Richmond | CA | 94801 |
| CBECAL Staff Researcher Tessa Wardle | 340 Marina Way | Richmond | CA | 94801 |
| Hazmat Ombudsperson Contra Costa County Michael Kent | 597 Center Ave., Suite 110 | Martínez | CA | 94553 |
| Resident Dan Holzner | 428 McLaughlin Street | Martínez | CA | 94805 |

## PUBLIC PARTICIPATION PLAN
## OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA

| Name and Relationship to Site | Mailing address | | | |
|---|---|---|---|---|
| Phyllis Weinstock - Resident | 5010 Nevis Ave | Richmond | CA | 94805 |
| Richmond Organizing Director- Asian-Pacific Environmental Network (APEN) Megan Zapanta | 3060 Hilltop Mall Road | Richmond | CA | 94806 |
| APEN -Richmond Organizing Director Megan Zapanta | 3060 Hilltop Mall Road | Richmond | CA | 94806 |
| Marsha Conwill – Casa Nido Partnership | 1117 Arlington Boulevard | El Cerrito | CA | 94538 |
| Ronald Piziali – Managing Partner Casa Nido Partnership | 13123 Regan Lane | Saratoga | CA | 95070 |
| San Francisco Bay Regional Water Quality Control Board | 1515 Clay Street | Oakland | CA | 94612 |
| Bay Area Air Quality Management District | 375 Beale Street, Suite 600 | San Francisco | CA | 94105 |
| Contra Costa County Health Services Environmental Health Division | 2120 Diamond Blvd, Suite 100 | Concord | CA | 94520 |
| City of Richmond City Manager Shasa Curl | 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| City of Richmond Public Works Department Director Daniel Chavarria | 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| City of Richmond Community Development Director Lina Velasco | 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| DTSC Site Mitigation and Restoration Program Berkeley Unit | 700 Heinz Ave | Berkeley | CA | 94710 |

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

| Name and Relationship to Site | Mailing address | | | |
|---|---|---|---|---|
| Chief Kimberly A. Walsh | | | | |
| DTSC Site Mitigation and Restoration Project Manager Ian Utz | 700 Heinz Ave | Berkeley | CA | 94710 |
| DTSC Public Participation Specialist James Gambrell | 700 Heinz Ave | Berkeley | CA | 94710 |

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 2.8   MEDIA INTEREST

DTSC searched internet-based sources, local newspapers, and broadcast media that serve the Richmond and greater San Francisco Bay Area and found no recent media coverage regarding the Site. DTSC will continue to monitor any media coverage related to environmental and community issues at the Site throughout the duration of the project.

## 2.9   COMMUNITY SURVEY AND INTERVIEWS

As of 2023, DTSC is cooperatively working over e-mail, phone, mail, and/or in-person with five adjoining properties (north-adjoining veterinary clinic, two east-adjoining residences, south-adjoining restaurant, and west-adjoining restaurant) to conduct off-Site sampling at the properties. All adjoining properties have expressed some interest with the Site cleanup and its impact on their properties. Certain downgradient properties, where groundwater contamination has been identified, have also expressed interest in the status of Site cleanup.

On January 27, 2022, DTSC sent the community survey included in Appendix A to the mailing list included in Appendix C, which included 1,321 street addresses/recipients. The mailing list area went beyond the typical ¼ mile radius used by DTSC considering the gradient and potential addresses impacted. A map indicating the mailing list boundaries is included in Appendix B. The deadline for responses was February 14, 2022. DTSC received 79 responses, which represents a 5.9% response rate, indicating a moderate level of community interest and concern in the Site. Survey response included the following summarized information:

- 86% of respondents have heard about the Site, whereas 14% have heard of the Site but have little or no information about it.

- 52% of respondents do not know anything about the Site and cannot yet determine whether they are interested, 32% have some interest and would like to hear more, and 6% are very interested and would like to engage. Only 9% have no interest in the site.

- 29% of respondents might attend an online meeting about the Site, whereas 67% would not. 91% of respondents would need no help accessing an online meeting, whereas 1% would need help.

- 56% of respondents would prefer e-mail communication, 17% would prefer mail, and 1% would prefer newspaper.

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

- 74% of respondents prefer English language materials, and 7% prefer Spanish.

- 28% of respondents are willing to speak with DTSC about the Site.

- No respondents expressed comments or concerns in the baseline survey.

**Community Interview Participants**

- DTSC interviewed 12 individuals between January 26, 2023, and February 27, 2023, to obtain information about the community characteristics, concerns, issues, and effective methods of public outreach:

  o Dan Holzner – Resident at 428 McLaughlin Street

  o Wesley Skinner – Resident at 403 McLaughlin Street

  o Michael Kent – Contra Costa County Hazardous Materials Ombudsman

  o Phyllis Weinstock – Resident at 5010 Nevis Ave

  o John Gioia – Contra Costa County Supervisor

  o Zolboo Namkhaidorj – Northern California Program Co-Director CBECAL

  o Tessa Wardle – CBECAL Staff Researcher

  o Kim Ryan – CBECAL Staff

  o Doria Robinson – City of Richmond Council Member, District 3

  o Claudia Jimenez – City of Richmond Council Member, District 6

  o Jim Hanson – President, East Richmond Neighborhood Council

  o Megan Zapanta – APEN Richmond Organizing Director

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 3.0   PUBLIC PARTICIPATION

## 3.1   RECOMMENDED PUBLIC PARTICIPATION ACTIVITIES

DTSC will work with the public to ensure the community will have the opportunity to be involved in the cleanup decision-making process. Public participation activities are designed according to the nature of the community surrounding the Site and level of community interest. Based on the community survey process that the community has a moderate interest at this Site. DTSC recommends the following public participation activities during the investigation and cleanup process.

- DTSC will publish an English and Spanish public notice in a local newspaper such as the *East Bay Times* before our final cleanup decision for the Site. In this public notice, we will announce a minimum 30-day public comment period on the draft cleanup plan.  DTSC will ensure the public notice appears no later than the first day of the public comment period.

- DTSC will hold one or more public meetings to discuss the proposed cleanup decision.

- DTSC will make sure that copies of the draft cleanup plan and the Public Participation Plan are in the information repositories for public review during the public comment period.

- DTSC will review public comments, revise the draft cleanup decision as necessary, and respond to public comments in writing.

- DTSC will prepare Public Notices, Community Updates, and Fact Sheets during the project, to provide the public with historical information, describe the current Site conditions and cleanup activity, provide contacts for additional information, and announce public comment periods. DTSC will distribute these to the project mailing list, key contacts, and DTSC mandatory mailing lists.  These mailers will be sent in both English and Spanish.

**PUBLIC PARTICIPATION PLAN**
**OMO FABRICARE DRY CLEANERS, RICHMOND, CALIFORNIA**

## 3.2    INFORMATION REPOSITORY

To facilitate community access to key project documents and information, DTSC will establish a local information repository and we will make sure that the public has access to the full project Administrative Record. The repository will include copies of key technical documents, the community profile, fact sheets, and other Site-related documents.

Richmond Public Library                 Berkeley Regional Office
325 Civic Center Plaza                     700 Heinz Avenue
Richmond CA, 94804                        Berkeley, California 94710
(510) 620-6561: call for hours         (510) 540-2122; call for an appointment

Information can also be found online at DTSC's EnviroStor database:
https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60001434

## 3.3    DTSC PROJECT CONTACTS

James Gambrell                              Ian Utz
Public Participation Specialist          Project Manager
Department of Toxic Substances Control          Department of Toxic Substances Control
Berkeley Regional Office                  Berkeley Regional Office
700 Heinz Avenue                          700 Heinz Avenue
Berkeley, California 94710              Berkeley, California 94710
James.Gambrell@dtsc.ca.gov          Ian.Utz@dtsc.ca.gov

# Appendix A

Community Survey and Interviews



## Department of Toxic Substances Control

**Jared Blumenfeld**
Secretary for
Environmental Protection

Meredith Williams, Ph.D., Director
700 Heinz Avenue
Berkeley, California 94710-2721



**Gavin Newsom**
Governor

January 27, 2022

Dear Community Member:

The purpose of this letter is to inform you of an environmental cleanup project in your area and invite you to fill out the enclosed community survey. The California Department of Toxic Substances Control (DTSC) oversees environmental investigation and cleanup work related to Omo Fabricare Dry Cleaners, located at 12210 San Pablo Avenue in Richmond, California, 94804 (the "site").

The site is an approximately 0.1-acre unoccupied parcel surrounded by a veterinary clinic (north), residences (east), and restaurants (south and west). Historically, the site was undeveloped until 1940, when a commercial building was constructed. Site occupants included a restaurant (1940s to 1950s), a bank (1950s), and a dry cleaner (1960s to 2010s). The dry cleaner was known by several names, including Omo's One Hour Martinizing, Omo's Dry Cleaners, Inc., and Omo's Fabricare Cleaners, Inc. In 1996, Casa Nido, a general partnership, acquired the Site.

The dry cleaner produced hazardous waste in its operations, including volatile organic compounds (VOCs). In particular, the site generated tetrachloroethylene (or "PCE") wastes from at least the 1980s to 1990s. The dry cleaner was closed in 2015, decommissioned in 2016, and demolished in 2017. Since 2014, contractors have identified VOC contamination in soil, soil vapor, and groundwater at the Site, and at certain adjoining properties (the north-adjoining veterinary clinic, and south-adjoining restaurant). In 2017, Casa Nido entered into a voluntary cleanup agreement with DTSC to complete investigation and cleanup.

DTSC is conducting this community survey to better understand the community's interest in this project and how best to share future updates and any potential opportunities for public feedback. Please share as much information as you can and return the attached survey by February 14, 2022 in the enclosed envelope.

Sincerely,

Alejandro Vivas, Public Participation Specialist
DTSC Office of Environmental Equity
700 Heinz Avenue, Berkeley, CA 94710
Direct: 510.540.3911  Toll free: 1.866.495.5651

♻ Printed on Recycled Paper

January 2022

# COMMUNITY SURVEY

**Department of Toxic Substances Control** – Our mission is to protect the people, communities, and environment of California from harmful chemicals by cleaning up contaminated sites, enforcing hazardous waste laws, and compelling the development of safer products.

## Omo Fabricare Site

### 12210 San Pablo Avenue

### Richmond, California, 94804

Thank you for your interest in the Omo Fabricare (Site) project. Please return the survey in the enclosed envelope by **February 14, 2022** to Alejandro Vivas, Public Participation Specialist.

1. Please mark your current knowledge about the Site.
   - ☐ I do not know anything about this Site.          86%
   - ☐ I have heard about this Site but have little or no information on it.  14%
   - ☐ I know a lot about this Site.

2. How interested are you in learning about future activities at this Site?
   - ☐ I do not know anything about this Site and cannot tell you if I am interested or not.  52%
   - ☐ I have no interest and don't want to receive additional information about this Site.   9%
   - ☐ I have some interest and would like to hear or read more about this Site.  32%
   - ☐ I am very interested. I would read information and talk to people about this Site.  6%

3. Please mark if you would attend an online meeting regarding the Site.
   - ☐ No  67%
   - ☐ Maybe  9%
   - ☐ Yes  20%

4. How would you prefer to receive information about this Site?
   - ☐ Mail  17%
   - ☐ Email (List email address) _56%_____
   - ☐ Newspaper (What newspaper do you read?) ___1%_____
   - ☐ Community meetings (When would be the best time?) ☐ Day  ☐ Evenings  ☐ Weekends

5. In what language would you like to receive information about this Site?
   - English 74%
   - Spanish 7%
   - Other: _____

6. Given the COVID-19 physical distancing requirements, do you have internet access that would allow you to view project documents or participate in an online meeting if scheduled?
   - Yes 89%
   - No  5%

Department of Toxic Substances Control

7. Would you need help accessing an online meeting?
   - ☐ Yes. 1%
   - ☐ No. 91%
   - ☐ I do not have internet access.

8. We sometimes need to talk with community members to learn more about the Site or your communication preferences. Would you be willing to talk with us?
   - ☐ No.
   - ☐ Yes. (Please provide your contact information) 28%

   Name _____

   Address _____

   Phone Number _____

   Email _____

9. Are there any groups or individuals that you would suggest we contact?

   Name _____

   Address _____

   Phone Number _____

   Email _____

Please feel free to add any other comments you may have about the Site or DTSC's process.

_____

_____

_____

We appreciate the time you have taken to complete this survey. If you have any questions or concerns regarding the community survey or the Site, please contact us.

Alejandro Vivas, PPS
700 Heinz Avenue, Berkeley CA 94710
Alejandro.Vivas@dtsc.ca.gov
(510) 540-3911 or toll-free at: (866) 495-5651

Ian Utz
DTSC Project Manager
700 Heinz Avenue, Berkeley, CA 94710
Ian.Utz@dtsc.ca.gov

**Hearing impaired** individuals may use the California Relay Service at 711 or 800-735-2929 TTY/VCO/HCO to voice.

Additional information on DTSC sites can be found through our **EnviroStor**. (rev. 5-2020)

  

Department of Toxic Substances Control

**Jared Blumenfeld**
Secretary for
Environmental Protection

Meredith Williams, Ph.D., Director
700 Heinz Avenue
Berkeley, California 94710-2721

**Gavin Newsom**
Governor

27 de enero de 2022

Estimado Miembro de la Comunidad:

El propósito de esta carta es informarle sobre un proyecto de limpieza medioambiental en su zona e invitarle a completar la encuesta comunitaria adjunta. El Departamento de Control de Sustancias Tóxicas de California (DTSC) supervisa la investigación medioambiental y los trabajos de limpieza relacionados con Omo Fabricare Dry Cleaners, ubicada en 12210 San Pablo Avenue en Richmond, California, 94804 (el "Sitio").

El sitio es una parcela vacante de aproximadamente 0,1 acres, rodeada por una clínica veterinaria (al norte), residencias (al este) y restaurantes (al sur y al oeste). A lo largo del tiempo, el sitio estuvo sin desarrollar hasta 1940, cuando se construyó un edificio comercial. Entre los ocupantes del Sitio se encontraban un restaurante (de 1940 a 1950), un banco (en la década de 1950) y una tintorería (de 1960 al 2010). La tintorería era conocida por varios nombres, entre ellos Omo's One Hour Martinizing, Omo's Dry Cleaners, Inc. y Omo's Fabricare Cleaners, Inc. En 1996, Casa Nido, una sociedad colectiva, adquirió el Sitio.

La tintorería producía residuos peligrosos en sus operaciones, incluidos los compuestos orgánicos volátiles (VOCs). En particular, el sitio generó residuos de tetracloroetileno (o "PCE") al menos desde la década de 1980 hasta la de 1990. La tintorería fue clausurada en 2015, desmantelada en 2016 y demolida en 2017. Los contratistas han identificado contaminación por VOC en el suelo, el vapor del suelo y el agua subterránea en el Sitio desde el 2014, y en ciertas propiedades colindantes (la clínica veterinaria colindante al norte y el restaurante colindante al sur). En 2017, Casa Nido celebró un acuerdo de limpieza voluntaria con el DTSC para completar la investigación y limpieza.

Atentamente,

Alejandro Vivas
Especialista en Participación Pública
Oficina de Equidad Ambiental del DTSC
700 Heinz Avenue, Berkeley, CA 94710
Línea Directa: 510.540.3911 Línea gratuita: 1.866.495.5651

♻ Printed on Recycled Paper

enero 2022

# ENCUESTA COMUNITARIA

**Departamento de Control de Sustancias Tóxicas**, Nuestra misión es proteger a las personas, las comunidades y el medio ambiente de California de las sustancias tóxicas, mejorar la vitalidad económica al restaurar la tierra contaminada y obligar a los fabricantes a fabricar productos de consumo más seguros.

## El Sitio Omo Fabricare
### 12210 San Pablo Avenue
### Richmond, California, 94804

Gracias por su interés en el proyecto de El Sitio Omo Fabricare (el Sitio). Por favor, envié la encuesta en el sobre adjunto antes de 14 de febrero de 2022 a Alejandro Vivas, Especialista en Participación Pública.

1. Marque su conocimiento actual sobre el Sitio.
   - ☐ No sé nada del Sitio.
   - ☐ He oído de este Sitio, pero sé poca o ninguna información sobre este Sitio.
   - ☐ Sé mucho sobre este Sitio.

2. ¿Qué tan interesado está en aprender de las actividades futuras en este Sitio?
   - ☐ No sé nada sobre este Sitio y no puedo decirles si estoy interesado o no.
   - ☐ No tengo interés y no quiero recibir información adicional sobre este Sitio.
   - ☐ Tengo cierto interés y me gustaría escuchar o leer más sobre este Sitio.
   - ☐ Estoy muy interesado. Leería información y hablaría con la gente sobre este Sitio.

3. Marque si atendería una reunión sobre este Sitio en línea.
   - ☐ No
   - ☐ Quizás
   - ☐ Sí

4. ¿Como preferiría recibir información sobre este Sitio?
   - ☐ Correo
   - ☐ Correo Electrónico (escriba su dirección de correo electrónico) _____
   - ☐ Periódico (¿Que periódico lees?) _____
   - ☐ Reuniones comunitarias (¿Cuándo sería el mejor tiempo de día?) ☐ Día   ☐ Noche
         ☐ Fin de Semana

5. ¿En qué idioma le gustaría recibir información de este Sitio?
   - ☐ English
   - ☐ Español
   - ☐ Otra idioma:_____

6. Dado los requisitos de distanciamiento físico, ¿tiene acceso al internet que le permite ver los documentos del proyecto o participar en una reunión en línea si está programada?
   - ☐ Sí.
   - ☐ No.

Department of Toxic Substances Control

7. ¿Necesitaría ayuda en acceder una reunión en línea?
   ☐ Sí.
   ☐ No.
   ☐ No tengo acceso al internet.

8. A veces necesitamos hablar con miembros de la comunidad para obtener más información sobre el Sitio o su preferencia de comunicación. ¿Estarías dispuesto a hablar con nosotros?
   ☐ No.
   ☐ Sí. (Escriba su información de contacto)
   Nombre_____

   Dirección_____

   Número de teléfono_____

   Dirección de correo
   electrónico_____

9. ¿Hay grupos o individuos que sugiere que contactemos?
   Nombre_____

   Dirección _____

   Número de teléfono_____

   Dirección de correo electrónico_____

No dude en agregar cualquier otro comentario que pueda tener sobre el Sitio o el proceso de DTSC.

_____

_____

_____

Le agradecemos el tiempo que se ha tomado en completar esta encuesta. Si tienen preguntas o preocupaciones con respecto a la encuesta de la comunidad o el Sitio, comuníquese con nosotros.

Alejandro Vivas
DTSC Especialista en Participación Pública
700 Heinz Avenue, Berkeley, CA 94710
(510) 540-3911 o llamada gratuita: (866) 495-5651
Alejandro.Vivas@dtsc.ca.gov

Ian Utz
DTSC Gerente de Proyectos
700 Heinz Avenue, Berkeley, CA 94710
Ian.Utz@dtsc.ca.gov



Las Personas con Discapacidad Auditiva pueden usar el Servicio de Retransmisión de California en el 711 o en el 800-735-2929 TTY/VCO/HCO para expresar su opinión.



Se puede encontrar información adicional sobre los sitios del DTSC a través de nuestro **EnviroStor.**   (rev. 5-2020)

**Community Survey and Interviews**





Department of Toxic Substances Control



Yana Garcia
Secretary for
Environmental Protection

Meredith Williams, Ph.D.
Director
700 Heinz Avenue
Berkeley, California 94710-2721

Gavin Newsom
Governor

### Omo Fabricare Interview Questions for Targeted Outreach

1. Are you familiar with the site/facility?
   a. Where have you received your information about the site/facility?
   b. How and when did you first become aware of the site/facility?

2. Based on the site location, are there any other groups that may be interested in the cleanup?
   a. Can you suggest any environmental or community groups in the area?

3. Now that we have discussed the site, do you have any thoughts or concerns that you would like to share?
   a. Which of these concerns is most important to you?

4. For this cleanup, the law requires a virtual public meeting. Are you wiling to attend or have a representative attend on behalf of your organization?

5. It has been great to speak with you and gather your input. Is there anything else you would like to add?

♻ Printed on Recycled Paper

# Appendix B
## Site Location Maps



**Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California



Vicinity Map

**SITE MAP**



All locations are approximate.

# Appendix C
## Mailing List

**Appendix C**                                                    **Site Location and Maps**



| Street Name | City | State | ZIP |
|---|---|---|---|
| 501 I Street Suite 7-800 | Sacramento | CA | 95814 |
| One Post Street, Suite 2450 | San Francisco | CA | 94105 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 1515 Clay Street, Suite 2202 | Oakland | CA | 94612 |
| 2151 Salvio Street, Suite P | CONCORD | CA | 94520 |
| 11780 San Pablo Avenue, Suite D | El Cerrito | CA | 94530 |
| 11780 San Pablo Avenue, Suite D | El Cerrito | CA | 94530 |
| 309 Diablo Road | Danville | CA | 94526 |
| 3361 Walnut Blvd, Suite 140 | Brentwood | CA | 94513 |
| 2151 Salvio St. Suite R | Concord | CA | 94520 |
| 1025 Escobar Street | Martinez | CA | 94553 |
| 1025 Escobar Street | Martinez | CA | 94553 |
| 1025 Escobar Street | Martinez | CA | 94553 |

| | | | |
|---|---|---|---|
| 1025 Escobar Street | Martinez | CA | 94553 |
| 555 Escobar Street | Martinez | CA | 94553 |
| 1025 Escobar Street | Martinez | CA | 94553 |
| 2120 Diamond Boulevard, Suite 200 | Concord | CA | 94520 |
| 4005 Port Chicago Highway Suite 250 | Concord | CA | 94520 |
| 150 CITY PARK WAY | Brentwood | CA | 94513 |
| 1850 Muir Road | Martinez | CA | 94553 |
| 255 Glacier Drive | Martinez | CA | 94553 |
| 4585 Pacheco Boulevard, Suite 100 | Martinez | CA | 94553 |
| 4585 Pacheco Boulevard, Suite 100 | Martinez | CA | 94553 |
| 40 Douglas Drive | Martinez | CA | 94553 |
| 4585 Pacheco Boulevard, Suite 100 | Martinez | CA | 94553 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 2121 N. California Blvd. Suite 290 | Walnut Creek | CA | 94596 |
| 360 14th Street | Oakland | CA | 94612 |
| 450 Civic Center Plaza Ste 300 | Richmond | CA | 94804 |
| 700 Heiz Ave | Berkeley | CA | 94710 |
| 700 Heiz Ave | Berkeley | CA | 94710 |
| 12230 San Pablo Ave | Richmond | CA | 94805 |
| 2916 Morro Drive | Antioch | CA | 94531 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 440 Civic Center Plaza | Richmond | CA | 94804 |
| 11780 San Pablo Avenue, Suite D | El Cerrito | CA | 94530 |
| 340 Marina Way | Richmond | CA | 94801 |
| 597 Center Ave., Suite 110 | Martinez | CA | 94553 |
| 111 Valmar Terrace | San Francisco | CA | 94112 |
| 12200 San Pablo Avenue | Richmond | CA | 94805 |
| 4808 Reece Ct | Richmond | CA | 94804 |
| 325 Civic Center Plaza | Richmond | CA | 94804 |

| | | | |
|---|---|---|---|
| 12226 San Pablo Ave | Richmond | CA | 94805 |
| 403 McLaughlin Street | Richmond | CA | 94805 |
| 399 Taylor Blvd. Suite 103 | Pleasant Hill | CA | 94523 |
| 12201 San Pablo Avenue | Richmond | CA | 94805 |
| 413 McLaughlin Street | Richmond | CA | 94805 |
| 413 McLaughlin Street | Richmond | CA | 94805 |
| 428 McLaughlin Street | Richmond | CA | 94805 |
| 5010 Nevis Ave | Richmond | CA | 94805 |
| 3060 Hilltop Mall Road | Richmond | CA | 94806 |
| 3060 Hilltop Mall Road | Richmond | CA | 94806 |
| 3060 Hilltop Mall Road | Richmond | CA | 94806 |

# EXHIBIT K

## Declaration of Robert Clark-Riddell

**Utz, Ian@DTSC**

| | |
|---|---|
| **From:** | Utz, Ian@DTSC |
| **Sent:** | Wednesday, February 9, 2022 8:00 PM |
| **To:** | Bob Clark-Riddell; Ron Scheele |
| **Cc:** | Ron Piziali; Paul Kibel; Smith, Whitney@DTSC; Mazzoli, Theodore@DTSC |
| **Subject:** | [202121] Omo Fabricare - Follow Up Site Visit Notes 02-08-2022 |
| **Attachments:** | Photo+9.jpg; Photo+10.jpg; Photo+1.jpg; Photo+6.jpg; Photo+7.jpg; Photo+11.jpg |

Bob and Ron, nice to speak with you in person yesterday with our public participation specialist Alejandro Vivas.

DTSC observed the following during its site visit 02/08/2022 from 11 AM to 2 PM:

| Table 1 – Adjoining Properties to Omo Fabricare Dry Cleaner Site, Richmond, CA (Site Code 202121) | | | |
|---|---|---|---|
| **Street Address** | **Direction** | **Access Granted?** | **Notes** |
| 12226 San Pablo Avenue | North | Yes – need to schedule | Animal clinic.  DTSC did not inspect or meet site contact. |
| 403 McLaughlin Street | East | Yes – need to schedule | Residence.  Site is occupied as a residence, with rear chicken coop.  Building has four interior levels:  1) basement (about 4 feet below ground surface, paved, and connected to unpaved adjoining crawl space), 2) ground level (street level slab-on-grade), 3) raised level (about 1 to 2 feet above ground surface, with crawl space), and 4) second story.  Ground-level bedroom and restroom (both with tile flooring) are directly connected to the basement (which has concrete flooring) via door and stairwell.  Basement is contiguous with surrounding crawlspace along upper sidewalls, and its base is concrete and had grouting and some cracking (see attached).  Basement has a sump and pump filled with water, which fills with water following rains, covered with wooden paneling (see attached).  Occupants noted headaches when waking up in ground-level bedroom.  A new hot water heater has a fan that recirculates air inside the basement/crawlspace area.  Occupants have lived here for eight years. |
| 423 McLaughlin Street | East | Yes – need to schedule | Senior care residential facility.  DTSC did not inspect, but provided information to site contact. |
| 12200 San Pablo Avenue | South | Yes – need to schedule | Thai restaurant.  Site is closed and under renovation due to water/sewer damage, and has not been used by a restaurant since May 2021.  DTSC observed chemical storage throughout (e.g., cleaning supplies such as grout and floor cleaners, paint/primer, hand sanitizer, degreasers, oils, pesticides, etc.), aboveground grease trap, operating refrigeration units, 3 x extant soil vapor probes, 3 x extant sub-slab depressurization vent riser pipes, prevalent surface staining and extensive foundation cracking, many vertical utility penetrations, open walls between some rooms, exposed building materials (wood, insulation, etc.), many open passive (no fan) and active (with fan) ventilation roof penetrations including hoods and standalone ducting, |

| Table 1 – Adjoining Properties to Omo Fabricare Dry Cleaner Site, Richmond, CA (Site Code 202121) | | | |
|---|---|---|---|
| Street Address | Direction | Access Granted? | Notes |
| | | | damaged and degraded wooden flooring between rooms (unclear whether there are some areas of crawl space?), open and taped foundation penetrations at restroom where there is sewer work being done.  Restaurant has occupied site for several decades. |
| 12201 San Pablo Avenue | West | No – need to finalize agreement | Wendy's restaurant.  DTSC did not inspect, but provided information to site contact, the district manager, who would provide it today (02-09-2022) to the owner. |

1. We are concerned about the basement at 403 McLaughlin Street.  Please ensure that data collection in that area is a priority.  PANGEA said it would modify the sampling locations at this house as follows:  sub-slab probes at 1) ground-floor bathroom (tile), 2) ground-floor bedroom closet (tile), and 3) basement floor (concrete); one <u>non</u>-sub-slab soil vapor probe at upper crawlspace floor (bare ground next to basement); and indoor air canisters at 1) basement, 2) ground-floor bedroom, 3) ground-floor basement, and 4) raised kitchen.  This appropriately biases toward the western dry-cleaner side of the house, at lower levels, and near vertical penetrations and areas of high occupancy.

2. We are concerned about the significant foundation cracking and vertical penetrations throughout 12200 San Pablo Avenue.  Please ensure that all existing soil vapor probes are sampled (as planned), and that the two additional soil vapor probes are still sampled (now that owner has agreed to allow it).  Consider moving SS-8 (kitchen hall) to within the kitchen, where there is a floor drain and significant utility penetrations, and where it would be more centrally positioned.  We concur with moving SS-11 north to the men's bathroom instead of the southern women's bathroom, to be farther from building corner and within a room with greater foundation penetrations.  Ensure the doors/windows are all closed and the vents are off during sampling.

3. PANGEA should not wait for 100% of sites to provide overlapping site access before proceeding.  That is, if necessary, PANGEA should proceed with multiple mobilizations to accommodate the various schedules of the property owners/occupants, as well as site-specific COVID protocols.  Please let us know if you are having issues with Wendy's.

4. PANGEA should collect and analyze two preserved **water samples** by USEPA Method 8260 from the sump pit at the basement of 403 McLaughlin.  Ensure the sample has no bubbles in it, to extent practicable.

5. PANGEA should prioritize, especially for this first sampling season, most conservative building conditions, taking care to keep doors and windows closed, air conditioning and other ventilation units off, and sampling near preferential pathways such as penetrations (e.g., ground pipes, toilets, floor drains).

6. PANGEA needs to ensure that it is properly screening out interior confounding sources such as cleaning products or other household chemicals at these properties.  We observed several chemicals likely containing vapor forming chemicals (e.g., isopropyl alcohol, ethanol, degreaser, paint primer, aerosols) and PANGEA noted the presence of refrigeration units (e.g., containing refrigerants).  The onus is on PANGEA to show that there are confounding sources, so the incentive is high to remove them so they don't affect results.

**Ian Utz**
Environmental Scientist
Site Mitigation and Restoration Program
510-540-3845
ian.utz@dtsc.ca.gov
Department of Toxic Substances Control
700 Heinz Avenue, Suite 200, Berkeley, California 94710-2721

California Environmental Protection Agency

 

   

This communication is subject to the California Public Records Act (Government Code § 6250 et seq.). Public disclosure may be expected unless applicable law provides a valid basis for not releasing this document and its attachments.



## LEGEND

| | | | |
|---|---|---|---|
| IA-1 | Proposed Indoor Air Sample | SVE-1 | Soil Vapor Extraction Well (~6-10 ft bgs) |
| CS-1 | Proposed Crawlspace Air Sample | SSD-1 | Sub-slab Depressurization Point (0.5-1.5 ft bgs) |
| AA-1 | Proposed Outdoor Ambient Air Sample | 390,000 | PCE in Sub-slab Vapor, Shallow Soil Vapor and SVE Wells (µg/m³), collected 6/8/20, 6/10/20. |
| SS-11 | Proposed Sub-slab Vapor Probe Sample | ⌐ 1,000 ⌐ | PCE Isoconcentration in Sub-slab Vapor and Shallow Soil Vapor in micrograms per cubic meter (µg/m³); dashed where inferred; queried where uncertain. Based on samples collected 6/8/20, 6/10/20. |
| SG-9A | Proposed Soil Vapor Well Sample | 1,000 | PCE Isoconcentration contour in groundwater (µg/L), dashed where inferred; queried where uncertain. Based on samples collected 9/16/16. |
| SS-8 | Sub-slab Vapor Probe (0.5 ft bgs) | | |
| SG-1A | Shallow Soil Vapor Well (6 ft bgs) | | |

| | | | |
|---|---|---|---|
| ▨ | Soil Excavation 3 to 15 ft (October 2018) | P/L | Site Property Line |
| ▩ | Permeable Reactive Barrier with Daramend Application (15 feet deep) | SAN | Sanitary Sewer Line |
| | | ABN | Abandoned Sanitary Sewer Line |
| | Vapor Barrier Wall (Drago Wrap) | SD | Storm Drain Line |
| | SVE/SSD piping (underground SVE onsite, above ground SSD offsite) | 12" | Pipe Diameter |

| | |
|---|---|
| ○ | Manhole |
| ■ | Curb Inlet |
| □ | Catch Basin |
| GW | Groundwater Flow Direction 9/16/16 |

Note: All features are approximate.
Sources: City of Richmond for Sanitary and Storm Utilities, Pangea 2020 for PCE Data, Contra Costa Internet GIS Map.

Approximate Scale (in Feet)   0 — 40

**Figure 3**

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California



**Proposed Sampling Locations**











Case 3:20-cv-07923-EMC   Document 252-2   Filed 09/05/24   Page 118 of 140



# EXHIBIT L

**Declaration of Robert Clark-Riddell**





# Department of Toxic Substances Control

Meredith Williams, Ph.D.
Director
700 Heinz Avenue
Berkeley, California 94710-2721



*Yana Garcia*
Secretary for
Environmental Protection

*Gavin Newsom*
Governor

March 7, 2023

<u>VIA US POST</u>

Wesley Skinner Trust
403 McLaughlin Street
Richmond, California 94805

Robert Herbert Jr. & Helen Herbert Trust
423 McLaughlin Street
Richmond, California 94805

Chavanavalal Chommanard Trust
12200 San Pablo Avenue
Richmond, California 94805

Casa Nido Partnership
12226 San Pablo Avenue
Richmond, California 94805

TRANSMITTAL OF DRAFT ENVIRONMENTAL TESTING RESULTS TO ADJOINING
RESIDENTIAL AND COMMERCIAL PROPERTY OWNERS, OMO FABRICARE DRY
CLEANERS, RICHMOND, CALIFORNIA (SITE CODE 202121)

Dear Community Member:

This is an update from the California Department of Toxic Substances Control (DTSC)
regarding the 2022 environmental testing that took place at the following properties in
Richmond, California, as part of the former Omo Fabricare Dry Cleaner cleanup project:

- 403 McLaughlin Street
- 423 McLaughlin Street
- 12200 San Pablo Avenue
- 12226 San Pablo Avenue

Adjoining Property Owners
Page 2 of 3
March 7, 2023

WORK COMPLETED

DTSC oversaw testing by PANGEA Environmental Services, Inc. in March 2022, and September 2022, to confirm that there were no unsafe levels of volatile organic compounds (VOCs) in indoor air or soil gas coming from the adjoining former dry cleaner at 12210 San Pablo Avenue.

RESULTS

At these four properties, after two rounds of testing, DTSC has not identified any urgent indoor air issues related to the former dry cleaner.

Although some VOCs were detected (e.g., tetrachloroethylene, benzene, and chloroform), the concentrations were low.  Also, the concentrations were below health risk-based screening levels and/or some appear unrelated to the former dry cleaner.  Finally, please keep in mind that it is not unusual for consumer products like cleaning supplies, or urban outdoor air pollution, to affect the results.

FUTURE PLANNED WORK

More work is needed at the dry cleaner cleanup site in the coming months and years.  Future work will focus on soil and groundwater contamination at the dry cleaner and any place where it has traveled.  No additional work is planned at your property at this time.  We will keep you updated as the cleanup progresses.

CONTACT INFORMATION

Thank you very much for your cooperation and help in this matter.  Our goal is to keep you safe and informed.  If you have any questions or feedback about the attached, please feel free to contact the following DTSC staff, or visit the project website at: https://www.envirostor.dtsc.ca.gov/public/profile_report?global_id=60001434

**Ian Utz**
Project Manager
510-540-3845
ian.utz@dtsc.ca.gov

**James Gambrell**
Public Participation Specialist
510-529-7199
james.gambrell@dtsc.ca.gov

Sincerely,

Marikka Hughes, PG, Unit Chief
Site Mitigation and Restoration Program – Berkeley Office
Department of Toxic Substances Control

Adjoining Property Owners
Page 3 of 3
March 7, 2023


Enclosures (2):

1.  *Preliminary Sampling Data Summary—Second Phase (Dry Season), 01/25/2023*
2.  *Preliminary Sampling Data Summary—First Phase (Wet Season), 05/23/2022*

Copy to:        (via electronic mail only)

Ronald Piziali
Casa Nido Partnership
ronaldpiziali@gmail.com

Marsha Conwill
Casa Nido Partnership
mtc10860@aol.com

Bob Clark-Riddell, PE
PANGEA Environmental Services, Inc.
briddell@pangeaenv.com

Councilmember Claudia Jimenez
City of Richmond
claudia_jimenez@ci.richmond.ca.us

Ian Utz, Project Manager
Department of Toxic Substances Control
ian.utz@dtsc.ca.gov

James Gambrell, Public Participation Specialist
Department of Toxic Substances Control
james.gambrell@dtsc.ca.gov



January 25, 2023

Mr. Ian Utz
Department of Toxic Substances Control
700 Heinz Avenue
Berkeley, California 94710-2721

Re:     **Preliminary Sampling Data Summary – Second Phase (Dry Season)**
Former Omo's Cleaners
12210 San Pablo Avenue
Richmond, California 94805
DTSC Case No. 202121-11

Dear Mr. Utz:

On behalf of Casa Nido, PANGEA Environmental Services, Inc. (PANGEA) is providing the following *Preliminary Sampling Data Summary* for the environmental case at 12210 San Pablo Avenue, Richmond, California (Site). The following second phase (dry season) of field sampling activities was conducted as part of the DTSC-approved *Off-Site Vapor Intrusion Investigation Workplan* (Workplan) dated March 19, 2021. The first phase (wet season) data from March 2022 sampling was summarized in the *Preliminary Sampling Data Summary* dated May 23, 2022. On September 27 and 28, 2022, indoor/outdoor air, sub-slab vapor, and soil vapor sampling data was collected from four properties adjacent to the Site consisting of the following: 12200 San Pablo Avenue (Sa Wad Dee restaurant), 12226 San Pablo Avenue (Fix Our Ferals commercial building), 403 McLaughlin Street (residential house), and 423 McLaughlin Street (residential house). The sampling was conducted during operation of the existing soil vapor extraction remediation and sub-slab depressurization mitigation system present at the Site. Select sampling results for primary target compounds related to the former dry cleaning facility at the Site, specifically chlorinated volatile organic compounds (cVOCs) consisting of tetrachloroethene (PCE), trichloroethene (TCE), and vinyl chloride, along with benzene, were compared to Department of Toxic Substances Control (DTSC) risk-based screening levels for either a residential or commercial scenario, as appropriate. Sampling results are summarized below and on the attached figures and tables. Since the sampling data has not yet been fully validated, the following data evaluation is preliminary.

## INDOOR AIR / CRAWLSPACE AIR SAMPLING DATA

During this second phase of sampling (dry season), lower concentrations of cVOCs and benzene were detected in all indoor, crawlspace and outdoor air samples as compared to the first phase of sampling (wet season). No cVOCs were detected *above* DTSC screening levels in any of the indoor/crawlspace air samples. Similar to the previous sampling event, low levels of benzene were detected in indoor/crawlspace air samples similar to background outdoor air samples. The benzene in outdoor air is likely attributable to automobile exhaust or other gasoline fuel sources. Based on a comparison to the DTSC's risk-based screening levels, subsurface cVOCs do not represent a significant vapor intrusion risk/hazard (e.g., VI <1.0E-06 and HI <1.0) to offsite building occupants with the remediation/mitigation system operational.

Preliminary Sampling Data Summary – Second Phase (Dry Season)
Former Omo's Cleaners
12210 San Pablo Avenue, Richmond California
January 25, 2023

Based on the contingency plan in Section 6.1 of the Workplan, the current risk management decision for the wet season and dry season indoor air/crawl space data is 'low priority' with a response action of 'no immediate response required'.

## SUB-SLAB VAPOR / SOIL VAPOR SAMPLING DATA

Generally low concentrations of cVOCs and benzene were detected in all sub-slab vapor/soil vapor samples. No cVOCs or benzene were detected *above* DTSC screening levels, except for PCE at select locations at 12226 San Pablo Avenue (Fix Our Ferals) and 403 McLaughlin Avenue (residence). PCE concentrations at these two properties only slightly exceeded DTSC's conservative risk-based commercial and residential screening levels, respectively, which are derived from risk/hazard levels of <1.0E-06 and HI <1.0. However, the indoor air data suggests that the PCE concentrations in sub-slab gas and soil vapor does not pose a significant vapor intrusion risk/hazard (<1.0E-06 and HI <1.0) to Site building occupants with the remediation/mitigation system operational.

## CONCLUSIONS

The information from the first phase (wet season) and second phase (dry season) sampling in 2022 indicates that no additional mitigation measures are warranted at this time for the adjacent offsite properties, or for the vacant unoccupied subject Site.

If you have any questions, please contact Bob Clark-Riddell with PANGEA at (510) 435-8664, briddell@pangeaenv.com. The public can also contact Ian Utz with the DTSC at 510-540-3845, ian.utz@dtsc.ca.gov.

Sincerely,
**PANGEA Environmental Services, Inc.**

Bob Clark-Riddell, P.E.
Principal Engineer

## Attachments

Figure 1 – Vicinity Map
Figure 2 – Site Map
Figure 3 – Air and Sub-slab/Soil Vapor Sampling Locations
Figure 4 – PCE in Sub-slab and Soil Vapor, September 2022
Figure 5 – PCE in Indoor/Crawlspace Air and Ambient Air, September 2022

Table 1 – Sub-slab/Soil Vapor Analytical Data
Table 2 – Indoor Air/Crawlspace and Ambient Air Analytical Data



Site

**Figure**

**1**

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California


**PANGEA**

**Vicinity Map**



**Figure 2**

**Site Map**

**PANGEA**

**LEGEND**

| | | |
|---|---|---|
| SG-6A | ▲ | Soil Vapor Well |
| SS-8 | ▲ | Sub-slab Soil Vapor Probe |
| SG-2 | ⊗ | Destroyed Soil Vapor Well |
| SS-1 | ▲ | Destroyed Sub-slab Soil Vapor Probe |
| MW-1 | ✦ | Groundwater Monitoring Well |
| B-6 | ● | Grab Groundwater Boring |
| HP-1 | ✚ | Hydropunch Boring |
| MP-1 | ✖ | MIP Boring |

| | | |
|---|---|---|
| SVE-1 | ▣ | Soil Vapor Extraction Well (~6–10 ft bgs) |
| SSD-1 | ▣ | Sub-slab Depressurization Point (0.5–1.5 ft bgs) |
| | ▨ | Permeable Reactive Barrier with Diamond Application (15 feet deep) |
| | ▬ | Vapor Barrier Wall (Drago Wrap) |
| | ▬ | SVE/SSD piping (underground SVE onsite, above ground SSD offsite) |

| | | |
|---|---|---|
| ○ | Manhole | |
| ◱ | Curb Inlet | |
| ◲ | Catch Basin | |

| | |
|---|---|
| ▬ P/L ▬ | Site Property Line |
| — SAN — | Sanitary Sewer Line |
| — ABN — | Abandoned Sanitary Sewer Line |
| — SD — | Storm Drain Line |
| 12" | Pipe Diameter |

Note: All features are approximate.

Sources: City of Richmond for Sanitary and Storm Utilities, Contra Costa Internet GIS Map.

Approximate Scale (in Feet)
0        50

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California

Fig 2 Site Map 2020-05-27 (T435)

**Figure 3**

**Air and Sub-slab/Soil Vapor Sampling Locations**

March 2022

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California

PANGEA

LEGEND

| IA-1 | Indoor Air Sample |
| CS-1 | Crawlspace Air Sample |
| AA-1 | Outdoor Ambient Air Sample |
| SS-8 | Sub-slab Vapor Probe (0.5 ft bgs) |

| SG-1A | Soil Vapor Well (6 ft or 11 ft bgs) |
| SWE-1 | Soil Vapor Extraction Well (~6-10 ft bgs) |
| SSD-1 | Sub-slab Depressurization Point (0.5–1.5 ft bgs) |

| P/L | Site Property Line |
| SAN | Sanitary Sewer Line |
| ABN | Abandoned Sanitary Sewer Line |
| SD | Storm Drain Line |
| 12" | Pipe Diameter |

| | Soil Excavation 3 to 15 ft (October 2018) |
| | Permeable Reactive Barrier with Daramend Application (15 feet deep) |
| | Vapor Barrier Wall (Drago Wrap) |
| | SVE/SSD piping (underground SVE onsite, above ground SSD offsite) |

Manhole
Curb Inlet
Catch Basin
GW Groundwater Flow Direction 9/16/16

Notes: All features are approximate.
Sources: City of Richmond for Sanitary and Storm Utilities.
Pangea 2020 for PCE Data. Contra Costa Internet GIS Map.

Approximate Scale (in feet)



**Figure 4**

**PCE in Sub-slab and Soil Vapor**
September 2022

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California

**PANGEA**

### LEGEND

| | |
|---|---|
| IA-1 | Indoor Air Sample |
| CS-1 | Crawlspace Air Sample |
| AA-1 | Outdoor Ambient Air Sample |
| SS-8 | Sub-slab Vapor Probe (0.5 ft bgs) |
| SG-1A | Soil Vapor Well (6 ft or 11 ft bgs) |
| SVE-1 | Soil Vapor Extraction Well (~4–10 ft bgs) |
| SSD-1 | Sub-slab Depressurization Point (0.5–1.5 ft bgs) |

| | |
|---|---|
| 130 | PCE Concentration in Sub-slab Vapor or Soil Vapor in micrograms per cubic meter (µg/m³). Estimated values are J-flagged. |
| 15 SL | PCE Isoconcentration in Sub-slab vapor (µg/m³), residential SL, dashed where inferred, queried where uncertain. |
| 67 SL | PCE Isoconcentration in Sub-slab vapor (µg/m³), commercial SL, dashed where inferred, queried where uncertain. |
| SL | Screening Level (DTSC) |
| NS | Not Sampled |

**Site Property Line** — P/L
**Sanitary Sewer Line** — SAN
**Abandoned Sanitary Sewer Line** — ABN
**Storm Drain Line** — SD
**Pipe Diameter** 12"

**Permeable Reactive Barrier with Daramend Application** (15 feet deep)

**Vapor Barrier Wall** (Drago Wrap)

**SVE/SSD piping** (underground SVE onsite, above ground SSD offsite)

○ Manhole
◎ Curb Inlet
□ Catch Basin
**GW** Groundwater Flow Direction 9/16/16

Notes: All features are approximate.
Sources: City of Richmond for Sanitary and Storm Utilities.
Pangea 2020 for PCE Data, Contra Costa Internet GIS Map.

Approximate Scale (in Feet)

Fig 4 Sub-slab and Soil Vapor 2023-01-23 (T445)

### Site Features (labels)

- 423 McLaughlin Street (Residence with crawl space) (D-story, 1,877 sq ft)
- CS-2
- AA-2
- Garage
- 403 McLaughlin Street (1,472 sq ft)
- SG-9A 130
- SG-9B 160
- SS-17 12
- SS-17SG 3.3
- IA-9 3.8
- SS-1
- Fix Our Ferals (12226 San Pablo) 130 Office
- IA-6
- SS-14 97
- IA-5
- SS-15 16
- SS-13 16
- IA-4
- IA-1
- 67 SL / 146 Outline
- SVE-5
- SVE-3
- SVE-4
- SVE-2
- SVE-1
- SVE/SSD System
- SS-16 1
- Lit-2 / Lit-3/Lit-3R
- SS-11 3
- SS-10
- SS-9
- SS-8 8.0
- SS-12
- IA-2
- SG-7A
- SG-6A
- Former Omo's Cleaners (12210 San Pablo)
- Sai Wad Dee Thai Restaurant (12212 San Pablo)
- SSD-1
- SSD-2
- SSD-3
- 15 SL
- Nevin Avenue
- San Pablo Avenue
- Nevin Avenue
- Wendy's Restaurant (12220 San Pablo) (D-story, 3,215 sq ft)
- McLaughlin Street

**PANGEA**

# Figure 5

PCE in Indoor/Crawlspace Air and Ambient Air
September 2022

**Former Omo's Cleaners**
12210 San Pablo Avenue
Richmond, California

## LEGEND

IA-1 — Indoor Air Sample

CS-1 — Crawlspace Air Sample

AA-1 — Outdoor Ambient Air Sample

SS-8 — Sub-Slab Vapor Probe (0.5 ft bgs)

SG-1A — Soil Vapor Well (6 ft or 11 ft bgs)

SVE-1 — Soil Vapor Extraction Well (~6–10 ft bgs)

SSD-1 — Sub-Slab Depressurization Point (0.5–1.5 ft bgs)

0.31 — PCE Concentration in either Indoor Air, Crawlspace Air or Ambient Air in micrograms per cubic meter (μg/m³). Estimated values are J-flagged.

P/L — Site Property Line

SAN — Sanitary Sewer Line

ABN — Abandoned Sanitary Sewer Line

SD — Storm Drain Line

12" — Pipe Diameter

Permeable Reactive Barrier with Daramend Application (15 feet deep)

Vapor Barrier Wall (Drago Wrap)

SVE/SSD piping (underground SVE onsite, above ground SSD offsite)

● Manhole

● Curb Inlet

■ Catch Basin

**GW** Groundwater Flow Direction 9/16/16

Notes: All features are approximate.
Sources: City of Richmond for Sanitary and Storm Utilities.
Pangea 2020 for PCE Data, Contra Costa Internet GIS Map.

Fig 5 PCE in Indoor/Crawlspace Air Ambient Air 2020-11-17 (T44S)

Pangea

DRAFT Table 1. Sub-Slab Soil Vapor and Soil Vapor Analytical Data – 1221D San Pablo Avenue, Richmond, California

Pangea

DRAFT Table 1, Sub-Slab Soil Vapor and Soil Vapor Analytical Data – 122

Pangea

DRAFT Table 1, Sub-Slab Soil Vapor and Soil Vapor Analytical Data - 122

# Pangea

DRAFT Table 1, Sub-Slab Soil Vapor and Soil Vapor Analytical Data – 1221 San Pablo Avenue, Richmond, California

# Pangea

DRAFT  Table 1. Sub-Slab Soil Vapor and Soil Vapor Analytical Data - 122

# Pangea

DRAFT Table 1. Sub-Slab Soil Vapor and Soil Vapor Analytical Data - 122

Notes:
All samples were collected in a labeled SUMMA canisters and analyzed by USEPA Method TO-15 (1999 version) or TO-17.
PCE = Tetrachloroethene (aka Perchloroethylene)
TCE = Trichloroethene
DCE = Dichloroethene
TPHg = Total Petroleum Hydrocarbons as gasoline
MTBE = Methyl Tertiary-Butyl Ether
IPA = Isopropyl Alcohol (aka Isopropanol or isopropanol). Used as a leak detectant
V = vapor intrusion
SL = Screening Level
AISL = Accelerated Response Action Level
ug/m3 = Micrograms per cubic meter of air
B flag = See below ground surface
-- = Not Analyzed or not available
< = analyte not detected above laboratory reporting limit
J = Estimated value above the laboratory Method Detection Limit (MDL), but below the laboratory Reported Detection
Footnote 1 = Detected screening levels for sub-slab soil vapor and soil vapor calculated by multiplying indoor air sub-slab attenuation sub-1
Footnote* = detected TCE screening level for sub-slab soil vapor and soil vapor is based on action an screening levels
Detections above the laboratory Reporting Detection Limit or J-flagged are shown in BOLD

Pangea

**DRAFT Table 2: Indoor/Crawlspace Air and Ambient Air Analytical Data –** 1220 East Yuba Avenue, Richmond, California

Notes:
All samples were collected in Indoor SUMMA canisters and analyzed by USEPA Method TO-15 SIM. Analyte concentrations reported in µg/m3 (ug/m3).
PCE = Tetrachloroethene (aka Perchloroethylene)
TCE = Trichloroethene
DCE = Dichloroethene
PID = Photo Ionization Detector
J = The result is an estimated value.
U = Not detected above the laboratory reporting limit.

Pangea

DRAFT Table 2: Indoor/Crawlspace Air and Ambient Air Analytical Data

Pangea

DRAFT Table 2: Indoor/Crawlspace Air and Ambient Air Analytical Data

| Pangea Sample ID | Date Sampled | Sample Depth Screen Interval (ft bgs) | | TCE (µg/m³) | Vinyl chloride (µg/m³) | Notes |
|---|---|---|---|---|---|---|



May 23, 2022

Mr. Ian Utz
Department of Toxic Substances Control
700 Heinz Avenue
Berkeley, California 94710-2721

Re:    **Preliminary Sampling Data Summary**
        Former Omo's Cleaners
        12210 San Pablo Avenue
        Richmond, California 94805
        DTSC Case No. 202121-11

Dear Mr. Utz:

On behalf of Casa Nido, PANGEA Environmental Services, Inc. (PANGEA) is providing the following *Preliminary Sampling Data Summary* for the environmental case at 12210 San Pablo Avenue, Richmond, California (Site).  The following field activities were conducted as part of the approved *Off-Site Vapor Intrusion Investigation Workplan* (Workplan) dated March 19, 2021. Between March 16 and 18, 2022, indoor/outdoor air, sub-slab vapor, and soil vapor sampling data was collected from four properties adjacent to the Site consisting of the following: 12200 San Pablo Avenue (Sa Wad Dee restaurant), 12226 San Pablo Avenue (Fix Our Ferals), 403 McLaughlin Street (residential house), and 423 McLaughlin Street (residential house). The sampling was conducted during operation of the existing soil vapor extraction remediation and sub-slab depressurization mitigation system present at the site. Select sampling results for primary target compounds related to the former dry cleaning facility at the Site, specifically chlorinated volatile organic compounds (cVOCs) consisting of tetrachloroethene (PCE), trichloroethene (TCE), and vinyl chloride, along with benzene, were compared to Department of Toxic Substances Control (DTSC) risk-based screening levels for either a residential or commercial scenario as appropriate. Sampling results are summarized below. Since the sampling data has not yet been fully validated, the following data evaluation is preliminary.

**Indoor Air / Crawlspace Air Sampling Data**

Generally low concentrations of cVOCs and benzene were detected in all indoor, crawlspace and outdoor air samples. No cVOCs were detected *greater* than DTSC screening levels except for low levels of PCE and vinyl chloride in a crawlspace air sample collected from 423 McLaughlin Avenue, as well as low levels of benzene in all indoor/crawlspace air samples. Because similar low concentrations of PCE, vinyl chloride and benzene were detected in indoor, crawlspace and outdoor ambient air samples, these three compounds are likely sourcing from outdoor air. The benzene in outdoor air is likely attributable to automobile exhaust or other source. The PCE and vinyl chloride in outdoor air could be attributable to concurrent earthwork for sewer line replacement near the site. Based on a comparison to the DTSC's risk-based screening levels, subsurface cVOCs do not represent a significant vapor intrusion risk to offsite building occupants with the remediation/mitigation system operational.

Preliminary Sampling Data Summary
Former Omo's Cleaners
12210 San Pablo Avenue, Richmond California
May 23, 2022

**Sub-Slab Vapor / Soil Vapor Sampling Data**

Generally low concentrations of cVOCs and benzene were detected in the sub-slab vapor/soil vapor samples. No cVOCs or benzene were detected *greater* than DTSC screening levels, except for PCE at 12226 San Pablo Avenue (Fix Our Ferals) and at 403 McLaughlin Avenue (residence). PCE concentrations at these properties only slightly exceeded DTSC's conservative risk-based screening levels. The indoor air data suggests that the PCE concentrations in sub-slab gas and soil vapor does not pose a significant vapor intrusion risk to these properties with the remediation/mitigation system operational.

**Next Steps**

The above information indicates that no additional mitigation measures are warranted at this time for the subject adjacent offsite properties. Consistent with the DTSC-approved Workplan, Pangea recommends completing the planned second round of air/vapor sampling in September 2022 to evaluate seasonal conditions during the dry season.

If you have any questions, please contact Bob Clark-Riddell with PANGEA at (510) 435-8664, briddell@pangeaenv.com.  The public can also contact Ian Utz with the DTSC at 510-540-3845, ian.utz@dtsc.ca.gov.

Sincerely,

**PANGEA Environmental Services, Inc.**

Bob Clark-Riddell, P.E.
Principal Engineer