WILLIAM NOEL EDLIN, ESQ. (SBN 107796)
nedlin@eghblaw.com
CHRISTOPHER J. DOW, ESQ. (SBN 250032)
cdow@eghblaw.com
ANDREW D. PEREZ, ESQ. (SBN 348645)
aperez@eghblaw.com
EDLIN GALLAGHER HUIE + BLUM
500 Washington Street, Suite 700
San Francisco, CA 94111
Telephone:      (415) 397-9006
Facsimile:      (415) 397-1339

Attorneys for Defendant
CATHERINE O'HANKS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CASA NIDO PARTNERSHIP, a California Partnership, | Case No. 3:20-cv-7923-EMC |
| Plaintiff, | **DEFENDANT CATHERINE O'HANKS' REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | |
| CATHERINE O'HANKS; JAE KWON aka JAY KWON aka JAY KWON SHIK aka JAY SHIK KWON; LYNNE MARIE GARIBOTTI aka LYNNE G. BLOWER, individually and as Trustee of the Claudio Garibotti Trust, dated May 1, 1952; SENTRY INSURANCE COMPANY; SANDRA KATE VERNELL (f/k/a SANDRA KATE ANDERSON) and EARL RAY ANDERSON, | Date:            August 28, 2024<br>Time:            9:30 a.m.<br>Judge:           Edward M. Chen<br>Courtroom.:      5 – 17th Floor<br><br>Third Amended Complaint Filed: December 16, 2022 |
| Defendants. | |

5600209

---

**REPLY MEMORANDUM OF LAW**

**I.     INTRODUCTION**

Upon its opposition to Ms. O'Hanks' Cross-motion for Partial Summary Judgment, and as shown in detail below, it is clear Plaintiff submits no evidence demonstrating that it substantially complied with the National Contingency Plan ("NCP"), i.e., the rules governing cleanup and cost recovery under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").  First, Plaintiff submits to this Court no evidence showing it provided for public participation from 2014 to 2020 when it proceeded to perform investigation and cleanup work at its property at 12210 San Pablo Avenue in Richmond, CA (the "Site") without oversight from the Department of Toxic Substance Control ("DTSC").  Second, Plaintiff submits no evidence showing that it complied with the NCP requirements for a removal action. Third, Plaintiff provides no admissible, non-hearsay evidence that it complied with DTSC's request for a Preliminary Endangerment Assessment ("PEA") which would have fulfilled the NCP's requirement for a removal preliminary assessment.  Next, no evidence submitted upon this Cross-motion shows that a CERCLA-quality cleanup -- the goal of the NCP -- has occurred at the Site.  For these and other reasons discussed below, Ms. O'Hanks requests the Court grant her Cross-motion in its entirety.

**II.    ARGUMENT**

    **A.     UPON ITS OPPOSITION, PLAINTIFF PRESENTS THIS COURT WITH NO EVIDENCE THAT IT SUBSTANTIALLY COMPLIED WITH THE NCP**

        **1.     Plaintiff Submits No Evidence that it Provided for Public Participation from 2014 to 2020 When It Proceeded to Perform Investigation and Cleanup Work at the Site Without DTSC Oversight**

Plaintiff argues that it "substantially complied with the NCP's Community Relations provisions," arguing that "most of the NCP's requirements were handled by DTSC" (Opposition at 19:9-25), but this argument fails because Plaintiff ignores the importance of when DTSC became involved in community relations relative to the Site and what constitutes meaningful public participation under CERCLA.  Plaintiff relies on a case reversed on appeal, Morrison

5583566

1  Enterprises v. McShares, Inc., 13 F. Supp.2d 1095 (D. Kan. 1998), rev'd, 302 F.3d 1127 (10th

2  Cir.2002), for the proposition that where a lead agency (such as DTSC), dictates the terms of

3  community relations obligations, a plaintiff is allowed to assume compliance with community

4  relations requirements.  Nevertheless, even assuming Morrison Enterprises is good precedent (it

5  isn't), the district court found that plaintiff "Morrison agreed to follow KDHE [Kansas

6  Department of Health and Environment] which, in turn, agreed to follow CERCLA and NCP."

7  Morrison Enterprises v. McShares, Inc., 13 F. Supp. 2d 1095, 1118 (D. Kan. 1998), rev'd, 302

8  F.3d 1127 (10th Cir. 2002).

9          Here, it cannot be reasonably disputed that Plaintiff conducted its investigation and

10  cleanup work at the Site from 2014 to 2020 without DTSC oversight.  Defendant Catherine

11  O'Hanks' Notice of Cross-motion for Partial Summary Judgment and Memorandum of Law in

12  Support of Cross-motion for Partial Summary Judgment and in Opposition to Plaintiff's Motion

13  for Partial Summary Judgment  (ECF 243) ("O'Hanks' Memo of Law") at 3:15-4:26.  Because

14  the lead agency in this case, DTSC, was not dictating community relations obligations on behalf

15  of Casa Nido from 2014 through 2020, Plaintiff is not allowed to assume compliance with public

16  participation requirements through DTSC participation.

17          Further, Morrison Enterprises states "KDHE expressly dictated the terms of any required

18  public comment program and Morrison complied.  In doing so, Morrison was entitled to assume

19  that such compliance would meet its public comment obligations under CERCLA and the NCP.

20  To hold otherwise would destroy any incentive for a PRP like Morrison to voluntarily cooperate

21  with and follow the directions of state enforcement authorities, one of the goals of CERCLA."

22  Morrison Enterprises v. McShares, Inc., 13 F. Supp. 2d at 1118 (citing Am. Color & Chem.

23  Corp. v. Tenneco Polymers, Inc., 918 F. Supp. 945, 955 (D.S.C. 1995)).  Here, Plaintiff showed

24  intent to be uncooperative with DTSC as evidenced by Plaintiff's managing partner informing

25  DTSC in 2016 that the voluntary cleanup agreement ("VCA")  and its terms were "highly

26  legalistic," burdensome without providing real benefits, and unnecessary.  O'Hanks Memo of

27  Law at 4:6-9.  Plaintiff's intent to be uncooperative was realized when Ian Utz, the current DTSC

28  project manager for the Site, stated in 2022 (and confirmed in 2024) that Plaintiff demonstrated a

5583566

1    disregard for the scope of the VCA. Id. at 9:25-28.  In view of these facts and the many other

2    facts evidencing Plaintiff's lack of cooperation with DTSC (id. at sec. III), it becomes clear that

3    allowing Plaintiff to recover its investigation and cleanup costs under CERCLA may work

4    against any incentive for private PRPs to cooperate with lead agencies such as DTSC who are

5    charged with protecting human health and the environment.

6           Even assuming, as Plaintiff states, DTSC in 2021 issued a Community Fact Sheet

7    relative to the Site (August 5, 2024 Declaration of Bob Clark-Riddell ("Aug. 5 Clark-Riddell

8    Decl.") at 48(f)), this took place after Plaintiff completed the bulk of its investigation and

9    cleanup work at the Site in 2014 through 2020 without DTSC oversight (O'Hanks' Memo of

10   Law at 4:15-5:8).  The timing of fulfillment of the NCP's public participation requirements is

11   crucial.  Where a plaintiff seeking its costs for cleanup of lead contamination claimed NCP

12   compliance, this Court found that two environmental impact statements published before

13   plaintiff actually discovered the lead contamination, and a press release made the day before

14   excavation began, did not fulfill the NCP's public participation requirements where the reports

15   and press release discussed only the possibility of contamination. City of Oakland v. Nestle

16   USA, Inc., No. C-98-3963 SC, 2000 WL 1130066 at *5 (N.D. Cal. Aug. 8, 2000).  Under these

17   facts, this Court noted that there were "no meetings open to the public at which the options for

18   dealing with the lead contaminated fill were discussed" and "[n]o evidence has been submitted to

19   show that the public was able to comment upon the options that were available and/or considered

20   after the time that the lead contamination was discovered." Id.  The Court concluded "the public

21   did not participate in the selection of the response action." Id.

22          Here, DTSC releasing a Community Fact Sheet regarding the Site in 2021, the year after

23   Plaintiff completed the bulk of its investigation and remediation activities in 2020, provided the

24   public with no chance to attend a meeting where cleanup alternatives for the Site were discussed,

25   much less an opportunity to comment on these alternatives.  Based on the foregoing, this Court

26   should conclude the residents of the City of Richmond had no opportunity to learn of, much less

27   comment on, Plaintiff's entirely self-selected response actions at the Site.  Therefore, under City

28

5583566

1    of Oakland, Plaintiff did not substantially comply with the NCP's public participation

2    requirements and cannot recover its costs from Ms. O'Hanks or any Defendant in this action.

3            In another case, this Court held "[a] party must, at a minimum . . .  provide a meaningful

4    opportunity for public involvement . . . .  'Failure to provide a meaningful opportunity for public

5    participation and comment in the selection of a remedial action at a particular cleanup site is

6    inconsistent with the NCP.'" Waste Management of Alameda County, Inc. v. East Bay Regional

7    Park District, 135 F.Supp.2d 1071, 1101 (N.D. Cal. 2001).  In Waste Management of Alameda

8    County, this Court found that plaintiff failed to provide a meaningful opportunity for public

9    participation where it did not develop or implement a community relations plan at any point,

10   "much less prior to beginning the field work" for its investigation, published a public notice

11   designed to discourage public participation three years after the proposed remedy had been all

12   but decided upon, and never held a public meeting on its remedial plan. Id. at 1101-1102.  Here,

13   Plaintiff submits to this court no evidence of a community relations plan, much less a plan

14   implemented prior to its Site work; the DTSC Community Fact Sheet was published in the year

15   after Plaintiff performed its DTSC-unapproved and unsupervised investigation and cleanup

16   activities at the Site, and Plaintiff submits no evidence of a public meeting being held on its

17   cleanup plan assuming it ever authored such a plan.  There is no evidence it did.

18           Further, the fact that DTSC published the Community Fact Sheet in 2021, and the fact

19   that Plaintiff in 2017 through 2019 sought local permits and approvals as it began its

20   investigation and cleanup activities at the Site (Aug. 5 Clark-Riddell Decl. at ¶ 48(b)-(c)), does

21   not rise to the level of meaningful public participation that allows Plaintiff to rely on lead agency

22   activity in fulfillment of the NCP's public participation requirements.  Where government

23   involvement at a contaminated property is not "unusually extensive," and does not "lead to

24   comparable opportunities for public input," but rather involves "routine consideration of permits,

25   variances, approvals, and the like," this is no substitute for "an opportunity for meaningful public

26   input into . . . consideration of remedial alternatives." Waste Management of Alameda County,

27   135 F.Supp.2d at 1103.  Here, Plaintiff conducted investigation and cleanup work at the Site

28   from 2014 through 2020 without DTSC oversight, and the Community Fact Sheet was released,

5583566

1  again, <u>after</u> Plaintiff had, on its own, selected a remedy and completed most of its remedial work

2  at the Site.  Plaintiff's contact with local government and agencies during this time was to seek

3  permits and approvals for its work. None of this amounts to meaningful public participation that

4  gave the public notice of what was happening at the Site, much less input into remedial

5  alternative for the Site.

6        In <u>Waste Management of Alameda County</u>, this Court found that plaintiff's "failure to

7  provide any meaningful opportunity for public participation was more than a technical or de

8  minimis deviation from the NCP . . . [a]s such, [plaintiff] has not met is burden of demonstrating

9  that its incurred response costs were 'consistent' with the NCP, and thus recoverable under

10  CERCLA.  Here, Plaintiff in 2016 informing the Thai Restaurant adjacent to the Site "that some

11  contamination had been found" so that Plaintiff could collect samples, and then sending the

12  restaurant an update in 2020 (Aug. 5 Clark-Riddell Decl. at ¶ 48(a), (d)) cannot be a substitute

13  for providing the citizens of Richmond with a meaningful opportunity to learn about the Site and

14  to have input into the remedy selection process. Plaintiff upon its Motion, and upon Ms.

15  O'Hanks Cross-motion, does not submit to this Court any evidence of it giving the citizens of the

16  City of Richmond notice of its actions at the Site, much less opportunity for meaningful input

17  into selection of remedial alternatives, before, or even during, the time it conducted its the bulk

18  of it investigation and work at the Site during the years 2014 to 2020.

19        Further, the NCP itself makes clear that meaningful public participation is an important

20  component of a CERCLA-quality cleanup:

21                Public participation. One commenter asserted that EPA is misapplying

22                statutory requirements by stating that private parties must engage in the
              full panoply of public participation procedures under CERCLA, even

23                though the statute imposes these requirements only on EPA. Because no

24                governmental actions are involved, no public process should be required
              as a precondition of cost recovery.

25

26                EPA disagrees. <u>Public participation is an important component of a</u>
              <u>CERCLA-quality cleanup, and of consistency with the NCP.</u> The public—

27                both PRPs and concerned citizens—have a strong interest in participating
              in cleanup decisions that may affect them, and their involvement helps to

28                ensure that these cleanups—which are performed without governmental

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

supervision —are carried out in an environmentally sound manner. <u>Thus,</u>
<u>EPA has decided that providing public participation opportunities should</u>
<u>be a condition for cost recovery under CERCLA.</u> The rule does not,
however, require rigid adherence to a set of procedural requirements. For
instance, § 300.700(c)(6) (proposed NCP § 300.700(c)(3)(ii)(B)) provides
that state or local public participation procedures may be followed,
consistent with the NCP, if they provide a substantially equivalent
opportunity for public involvement.

National Oil and Hazardous Substances Pollution Contingency Plan, Final Rule, 55 Fed. Reg.
8795 (March 8, 1990) (underline added).  Here, Plaintiff afforded concerned citizens of
Richmond no public participation opportunities relative to its activities at the Site from 2014
through 2020.  Plaintiff has thus failed to fulfill this condition of CERCLA cost recovery.
Therefore, under this Court's rationale and rulings in <u>City of Oakland</u> and <u>Waste Management of</u>
<u>Alameda County</u>, as well as the NCP regulations, Plaintiff did not substantially comply with the
NCP's public participation requirements, in this way did not substantially comply with the NCP,
and therefore cannot collect its claimed $1,346,911.97 in investigation and cleanup cost from
Ms. O'Hanks or any other Defendant in this action. Ms. O'Hanks' Cross-Motion as to Plaintiff's
First Claim for Relief under CERCLA should be granted.

## 2.      **Plaintiff Submits to this Court No Evidence that It Complied with the NCP Requirements for a Removal Action**

Plaintiff argues that it was not required to perform an engineering evaluation/cost
analysis ("EE/CA") of removal alternatives for the Site before it removed 450 tons of soil from
the Site and installed a soil vapor extraction (SVE) and sub-slab depressurization system (SSD)
at the Site, and even if it was required to do so, it conducted the equivalent of an EE/CA.
Opposition at IV(A)(2).  Plaintiff is incorrect.

The undisputed facts show that the timing of Plaintiff's activities at the Site was such that
it should have conducted an EE/CA as part of its removal action.  Plaintiff does not dispute that
it identified PCE contamination at the Site in 2014 but did not begin to implement its DTSC-
unapproved cleanup actions at the Site until 2018.  Declaration of Robert Clark-Riddell ("Clark-
Riddell Decl.") (ECF 234-2), ¶¶ 28, 38.  Further, Plaintiff's environmental cleanup consultant,

5583566

DEFENDANT CATHERINE O'HANKS' REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT

1 Mr. Clark-Riddell, states that in October 2014, he found that the "highest PCE concentrations of

2 1,700,000 and 1,900,000 µg/m exceeded the DTSC-derived screening level of 67 µg/m3 by

3 approximately 28,000 times and exceeded the DTSC response action level of 6,700 µg/m3 by

4 approximately 280 times, indicating the need for additional and urgent action." Id. at ¶ 32

5 (underline added).  In other words, Plaintiff knew a removal action was necessary for the Site in

6 2014.  It therefore strains credulity for Plaintiff to state that it did not need to complete an EE/CA

7 because it did not have "a planning period of at least six months . . . before on-site activities must

8 be initiated" under the removal action requirements at 40 CFR section 300.415(b)(4) when it

9 waited approximately four years to implement this removal action.  Ignoring this timeline,

10 Plaintiff states, without supporting citation, that "it considers the soil extraction and installation

11 of an SVE/SSD system to be time-critical removal actions; therefore, no EE/CA was required."

12 Opposition at 18:7-8.  In other words, Plaintiff asks this Court to ignore the factual timeline as

13 laid out in Mr. Clark Riddell's declaration and find that an EE/CA was not required simply

14 because Plaintiff says so.  Suffice it to say, this Court now has evidence before it showing that it

15 is more likely than not that Plaintiff was required to perform an EE/CA.

16       Next, Plaintiff argues that if an EE/CA was required, it conducted the equivalent of an

17 EE/CA, yet it presents this Court with no documentation of the equivalent process it says it

18 followed.  The NCP provides:

19             (a) For releases of a hazardous substance, pollutant, or contaminant, the
20             following provisions apply:

21             (1) During all phases of response, the lead agency shall complete and
22             maintain documentation to support all actions taken under the NCP and to
             form the basis for cost recovery. In general, documentation shall be
23             sufficient to provide the source and circumstances of the release, the
             identity of responsible parties, the response action taken, accurate
24             accounting of federal, state, or private party costs incurred for response
             actions, and impacts and potential impacts to the public health and welfare
25             and the environment.

26 40 C.F.R. § 300.160(a)(1) (Westlaw 2024) (Documentation and cost recovery).  The NCP is

27 clear that Plaintiff had to document its EE/CA or its equivalent process.  Instead, Plaintiff

28

5583566

DEFENDANT CATHERINE O'HANKS' REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT

1  provides this Court with only Mr. Clark-Riddell's averments upon its Opposition to this Cross-

2  motion that Plaintiff followed an EE/CA-like process for the Site back in the period of 2014 to

3  2020. Opposition at 18:27-19:9.  Therefore, Plaintiff presents no credible evidence that it

4  followed an EE/CA-like process at the Site.

5      Further, even if this Court accepts Mr. Clark-Riddell's averments as an EE/CA equivalent

6  (it should not), Plaintiff still will not have fulfilled the removal action requirements because it

7  fulfilled none of the NCP community relations requirements for removal actions. <u>See</u> 40 C.F.R. §

8  300.415(n) (Westlaw 2024) (Community relations in removal actions). And even if, as Plaintiff

9  claims, it had less than a six month period to conduct its removal action at the Site (again, it

10  appears Plaintiff afforded itself four years to commence its removal action after determining an

11  urgent need for action in October 2014), the NCP's community relations rules for removal

12  actions required Plaintiff to "[p]ublish a notice of availability of the administrative record file

13  established pursuant to § 300.820 in a major local newspaper of general circulation or use one or

14  more other mechanisms to give adequate notice to a community within 60 days of initiation of

15  on-site removal activity." <u>Id</u>. at (n)(2)(i). Again, there is no evidence before this Court that

16  Plaintiff, when it conducted its activities at the Site from 2014 to 2020 without DTSC approval

17  or supervision, gave notice to the community at large as to what it was doing at the Site, or when

18  it was doing it.

19      **3.    <u>Plaintiff Submits to this Court No Evidence that It Complied with</u>**
20          **<u>DTSC's Request for a Preliminary Endangerment Assessment</u>**

21      As of October 8, 2020, Plaintiff had not completed a Preliminary Endangerment

22  Assessment for Site. O'Hanks' Memo of Law at IV(D).  Plaintiff admits that Mr. Utz, in his

23  deposition testimony, does not recall ever receiving a document or documents from Plaintiff

24  representing completion of the PEA requirement. Opposition at 12:26-13:7.  Plaintiff presents no

25  documentary evidence to this Court that the requirement for a Preliminary Endangerment

26  Assessment ("PEA") was fulfilled.  Aug. 5 Clark-Riddell Decl.") at Exhibit D (correspondence

27  showing only that additional information was submitted to DTSC, not that DTSC accepted such

28  information as Plaintiff's completion of the PEA requirement).  Rather, the only evidence

5583566

Plaintiff presents as to the PEA requirement being fulfilled are hearsay statements of Mr. Utz, i.e., "[i]n late 2020, and again in 2021, Mr. Utz indicated to me that he considered the PEA phase as complete" and "[i]n a telephone conversation that I had with Ian Utz on February 8, 2022, Mr. Utz confirmed that the Project was no longer in the PEA stage but had moved into the supplemental investigation stage." <u>Id</u>. at ¶39, ¶ 44.  Plaintiff presents to the Court no argument as to how this hearsay statement may be treated as admissible evidence of its PEA completion.  In any event, given that the NCP requires Plaintiff to keep documentation of all actions that form the basis for cost recovery (40 C.F.R. § 300.160(a)(1)), and given there is no record of Plaintiff fulfilling the PEA requirement, Plaintiff's arguments that this requirement was fulfilled should be rejected by the Court. Plaintiff's failure to fulfill this requirement is an additional basis to find that it did not substantially comply with the NCP and to grant the instant Cross-motion relative to Plaintiff's CERCLA claim.

### 4. <u>The Evidence Shows that Plaintiff Did Not Conduct a CERCLA-Quality Cleanup</u>

While it is clear Plaintiff presents no evidence that it has conducted a CERCLA-quality cleanup at the Site, and Ms. O'Hanks has submitted evidence that there has been no such cleanup (O'Hanks' Memo of Law at V(A)(2)), an additional basis for this Court to conclude that no CERCLA-quality cleanup has occurred at the Site is the fact that the U.S.E.P.A. has stated "[p]ublic participation is an important component of a CERCLA-quality cleanup." National Oil and Hazardous Substances Pollution Contingency Plan, Final Rule, 55 Fed. Reg. 8795 (March 8, 1990).  As made clear in section II(A)(1) above, Plaintiff fulfilled no NCP requirements for public participation such that there is no doubt that the Site is still awaiting a CERCLA-quality cleanup.

///
///
///
///
///

5583566

**B.    PLAINTIFF CANNOT NOW PREVAIL ON ITS CONTINUING NUISANCE CLAIM BECAUSE IT DOES NOT ELIMINATE A TRIABLE ISSUE OF MATERIAL FACT AS TO WHETHER THERE HAS BEEN A SPECIFIC INJURY TO THE PUBLIC OR WHETHER THE ALLEGED NUISANCE AT THE SITE IS ABATABLE.**

Plaintiff argues that Ms. O'Hanks' Cross-motion for partial summary judgment should be denied "as the undisputed facts show PCE contamination has created a continuing public nuisance" (Opposition at IV(B)), but Ms. O'Hanks' is not moving for summary judgment on Plaintiff's continuing nuisance claim for relief (see [Proposed] Order Granting Defendant Catherine O'Hanks' Cross-motion for Partial Summary Judgment Against Plaintiff Casa Nido Partnership (ECF 243-1) at 2). Rather, Ms. O'Hanks argues that there are genuine issues of material fact precluding Plaintiff from obtaining judgment on its continuing public nuisance claim because the following are open questions: (1) whether there has been a specific injury to the public and (2) whether the alleged public nuisance is abatable. O'Hanks' Memo of Law at IV(E)(3) and IV(D)(2). Those arguments need not be repeated in this reply memorandum.

## III.    CONCLUSION

Based on the foregoing, Ms. O'Hanks respectfully requests the Court grant her Cross-Motion for Partial Summary Judgment in its entirety and enter judgment for her on the following claims: (1) First Claim for Relief under CERCLA, (2) Second Claim for Relief under the California Hazardous Substance Account Act, (3) Fourth Claim for Relief under Water Code sections 13304 and 13350, (4) Seventh Claim for Relief for negligence, and (5) Eighth Claim for Relief for negligence per se.

Respectfully submitted,

Date:    August 13, 2024                    EDLIN GALLAGHER HUIE + BLUM


By:    _/s/ Christopher J. Dow_
     CHRISTOPHER J. DOW
     ANDREW D. PEREZ
     Attorneys for Defendant
     CATHERINE O'HANKS

5583566

**Re**:   **Casa Nido Partnership v. Catherine O'Hanks, et al.**
**United States District Court, Northern District Case No. 3:20-cv-7923**

### CERTIFICATE OF SERVICE – L.R. 5-3.2

I am a citizen of the United States and an employee in the state of California. I am over the age of eighteen (18) years and not a party to the within action. My business address is EDLIN GALLAGHER HUIE + BLUM, 515 S. Flower St. Ste. 1020. Los Angeles, California 90071.

I hereby certify that on the date set forth below, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CATHERINE O'HANKS' REPLY MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

  **X   BY ELECTRONIC SERVICE**:  I caused such document to be electronically served the United States District Court Case Filing website on the recipients designated on the electronic service list that is located on the Pacer website.

I declare under penalty of perjury that the foregoing is true and correct and that this document is executed on August 13, 2024, at Los Angeles, California.

_____
DESIREE CAUDILLO

5561867